# No. 26-830

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SAIFULLAH KHAN,
*Plaintiff-Appellant,*

*v.*

YALE UNIVERSITY,
PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN,
JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN,
LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER,
SARAH DEMERS, JANE DOE, CAROLE GOLDBERG,
AND UNKNOWN PERSONS,
*Defendants-Appellees.*

*ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT*
(*Dooley, J.*), *No. 3:19-cv-1966* (*KAD*)

# Brief for Plaintiff-Appellant

Alexander T. Taubes, Esq.
LAW OFFICES OF ALEXANDER T. TAUBES, PLLC
470 James Street, Suite 007
New Haven, CT 06513
Tel. 203-909-0048
Email: alextt@gmail.com

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................................v

Preliminary Statement.............................................................................1

Jurisdictional Statement..........................................................................4

Statement of Issues Presented for Review............................................4

Statement of the Case..............................................................................6

    A.    The accusation, the acquittal, and the expulsion..............................6

    B.    The claims—and their preservation by two appellate courts...........7

    C.    The pseudonym—requested by Mr. Khan, entered "without prejudice"...................................................................................7

    D.    Christmas 2023 and the March 18, 2024 hearing: no order prohibited the disclosure...................................................8

    E.    The June 19, 2024 order: no time limit, no findings...........................8

    F.    The objections—and the rulings that never came............................9

    G.    The public record: the certified transcript names Doe....................10

    H.    The January 29, 2025 ruling: violation found, dismissal denied, a lesser remedy identified.................................................11

    I.    The third motion for dismissal: five accusations, none adjudicated.....................................................................12

    J.    The December 22, 2025 hearing: standards unengaged, no cross-examination....................................................................15

    K.    The dismissal—fourteen months after dismissal was denied........16

Summary of Argument............................................................................16

Standard of Review.................................................................................19

Argument..................................................................................................21

    I.    THE SPEECH CANNOT SUPPORT THE SANCTION: MR. KHAN VIOLATED NO ORDER, NO JUDGE EVER REVIEWED THE ORDER, AND THE CONSTITUTION PROTECTS WHAT HE SAID.......................21

        A.    Mr. Khan violated no order: his posts never named Doe, and the "violations" were built from third parties' lawful speech................................................................................21

B. No Article III judge ever reviewed the order—despite timely objections, written promises, and this Court's stated expectation..................................................................25

C. The June 19 Order is a content-based prior restraint on truthful speech about a public criminal trial.............................29

D. The constitutional challenge is preserved.................................31

II. **THE DISCOVERY CONDUCT CANNOT SUPPORT THE SANCTION EITHER: NO ORDER WAS VIOLATED, AND NO RULE OR INHERENT POWER SUPPLIES ANOTHER PATH.........................................................32**

A. Rule 37(b)'s first principle: no order, no dismissal.................32

B. The interrogatory: a disputed reading converted into "perjury" without a motion to compel, an order, or adversarial testing...........................................................................34

C. The privilege log: a disclosed legal claim, withdrawn before any ruling, recast as fraud because the messages were inflammatory......................................................................37

D. The production: defendants wrote the searches, received the hits in their own vendor's database, and called the yield a "dump."............................................................................39

E. The recording, the Formica statement, and the residual "dishonesty" findings: self-disclosed evidence and untested inferences....................................................................41

III. **EVERY GOVERNING FACTOR CONDEMNS THIS DISMISSAL—AND THE OPINION WEIGHED NONE OF THEM..............................................44**

A. Duration: nothing here resembles the canon of sustained defiance.....................................................................................45

B. Notice: the warnings concerned the speech, not the discovery conduct...............................................................................46

C. Prejudice: speculation layered on cured harms.........................46

D. The balance of interests: exceptional claims against defendants who stopped defending..........................................47

E. Lesser sanctions: one sentence, nothing analyzed....................48

IV. **THE DISMISSAL IS PUNISHMENT UNTETHERED TO THE MERITS— IMPOSED WITHOUT THE FINDINGS OR PROCESS DUE.......................50**

    A.   Due process permits merits-terminating sanctions only on a merits presumption—not as punishment................................50

    B.   The sanction bears every mark of punishment—and none of its safeguards...............................................................53

    C.   The court abandoned its own announced standard without notice.......................................................................53

    D.   The required findings were never made..................................55

**V.**    AT MINIMUM, THE JUDGMENT CANNOT STAND AS TO SCOPE— AND ANY REMAND SHOULD BE REASSIGNED.....................................**56**

    A.   Partial invalidity requires vacatur..........................................56

    B.   The Yale claims cannot be extinguished by Doe-related conduct.....................................................................56

    C.   Any remand should go to a different district judge.................57

**Conclusion**.................................................................................**58**

**Certification of Compliance**...............................................**60**

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agiwal v. Mid Island Mortg. Corp.,*
555 F.3d 298 (2d Cir. 2009)................................................................44, 45

*Anderson v. City of Bessemer City,*
470 U.S. 564 (1985).............................................................................20

*Baptiste v. Sommers,*
768 F.3d 212 (2d Cir. 2014)...........................................................19, 44

*Bobal v. Rensselaer Polytechnic Inst.,*
916 F.2d 759 (2d Cir. 1990).........................................................33, 46

*Bose Corp. v. Consumers Union of U.S., Inc.,*
466 U.S. 485 (1984)................................................................19, 20, 32

*Brandenburg v. Ohio,*
395 U.S. 444 (1969) (per curiam)...................................................23

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.,*
710 F.2d 940 (2d Cir. 1983)..............................................................9, 30

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991)..............................................................................34

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,*
602 F.2d 1062 (2d Cir. 1979).............................................................50

*Citizens United v. Schneiderman,*
882 F.3d 374 (2d Cir. 2018)...............................................................29

*Clientron Corp. v. Devon IT, Inc.,*
894 F.3d 568 (3d Cir. 2018)...............................................................56

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)............................................................................25

*Cox Broad. Corp. v. Cohn,*
420 U.S. 469 (1975)....................................................................2, 23, 30

*Crosby v. Bradstreet Co.,*
312 F.2d 483 (2d Cir. 1963)...............................................................31

*Daval Steel Prods. v. M/V Fakredine*,
　951 F.2d 1357 (2d Cir. 1991)......................................17, 25, 32, 56

*Design Strategy, Inc. v. Davis*,
　469 F.3d 284 (2d Cir. 2006)...................................................33

*Dodson v. Runyon*,
　86 F.3d 37 (2d Cir. 1996).......................................................38

*Doe v. Mast*,
　173 F.4th 524 (4th Cir. 2026)......................................24, 27, 29

*Fielding v. Tollaksen*,
　510 F.3d 175 (2d Cir. 2007)..............................................17, 26

*Fjelstad v. Am. Honda Motor Co.*,
　762 F.2d 1334 (9th Cir. 1985)...............................................51

*Fla. Star v. B.J.F.*,
　491 U.S. 524 (1989)..........................................................20, 30

*Foman v. Davis*,
　371 U.S. 178 (1962)................................................................59

*Gleason v. Jandrucko*,
　860 F.2d 556 (2d Cir. 1988).....................................................37

*Goodyear Tire & Rubber Co. v. Haeger*,
　581 U.S. 101 (2017)..........................................................18, 53

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*,
　415 U.S. 423 (1974)................................................................22

*Gulf Oil Co. v. Bernard*,
　452 U.S. 89 (1981)..................................................................31

*Hammond Packing Co. v. Arkansas*,
　212 U.S. 322 (1909)................................................................50

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
　491 U.S. 657 (1989)..........................................................20, 30

*Hess v. Indiana*,
　414 U.S. 105 (1973) (per curiam)..........................................23

*Hickman v. Taylor*,
　329 U.S. 495 (1947)................................................................40

*Hovey v. Elliott*,
   167 U.S. 409 (1897)..................................................................................50

*Hull v. Municipality of San Juan*,
   356 F.3d 98 (1st Cir. 2004)......................................................................56

*In re Application of Dow Jones & Co.*,
   842 F.2d 603 (2d Cir. 1988)...............................................................29, 31

*In re Fannie Mae Sec. Litig.*,
   552 F.3d 814 (D.C. Cir. 2009)..................................................................40

*In re Green*,
   369 U.S. 689 (1962)..................................................................................29

*In re Khan*,
   No. 24-2794 (2d Cir. Nov. 15, 2024)............................................2, 10, 27

*In re Providence Journal Co.*,
   820 F.2d 1354 (1st Cir. 1987) (en banc)..............................................29, 40

*In re Reassignment of Cases: Ligon v. City of New York*,
   736 F.3d 118 (2d Cir. 2013) (per curiam)................................................57

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)...............................................................18, 50, 51, 56

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
   991 F.3d 361 (2d Cir. 2021).....................................................................37

*Int'l Union, UMW v. Bagwell*,
   512 U.S. 821 (1994)..................................................................................53

*Israel Aircraft Indus., Ltd. v. Standard Precision*,
   559 F.2d 203 (2d Cir. 1977)......................................................................32

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*,
   845 F.2d 1172 (2d Cir. 1988)....................................................................45

*Khan v. Yale Univ.*,
   27 F.4th 805 (2d Cir. 2022)...............................................................passim

*Khan v. Yale Univ.*,
   85 F.4th 86 (2d Cir. 2023)......................................................................1, 7

*Khan v. Yale Univ.*,
   347 Conn. 1 (2023)............................................................................passim

*Khan v. Yale Univ.*,
511 F. Supp. 3d 213 (D. Conn. 2021)..........................................................7

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995)................................................................22, 55

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
880 F.3d 620 (2d Cir. 2018)...............................................................41, 49

*Koehl v. Bernstein*,
740 F.3d 860 (2d Cir. 2014) (per curiam)...................................................52

*Koon v. United States*,
518 U.S. 81 (1996)..........................................................................18, 56

*Liebowitz v. Bandshell Artist Mgmt.*,
6 F.4th 267 (2d Cir. 2021).................................................................25, 55

*Lucas v. Miles*,
84 F.3d 532 (2d Cir. 1996)......................................................................47

*Lyell Theatre Corp. v. Loews Corp.*,
682 F.2d 37 (2d Cir. 1982).............................................................46, 51

*Mackler Prods., Inc. v. Cohen*,
146 F.3d 126 (2d Cir. 1998)....................................................................53

*Mandala v. NTT Data, Inc.*,
88 F.4th 353 (2d Cir. 2023)....................................................................47

*Maness v. Meyers*,
419 U.S. 449 (1975)..........................................................................10, 28

*Manigaulte v. C.W. Post Campus of Long Island Univ.*,
533 F. App'x 4 (2d Cir. 2013) (summary order)...................................45

*Marquez v. Silver*,
96 F.4th 579 (2d Cir. 2024)....................................................................25

*Martens v. Thomann*,
273 F.3d 159 (2d Cir. 2001)....................................................................28

*McClarin v. City of New York*,
No. 23-7310 (2d Cir. July 13, 2026).........................................................33

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
55 F.3d 34 (2d Cir. 1995).............................................44, 45, 55, 56

*Mitchell v. Lyons Prof'l Servs., Inc.*,
   708 F.3d 463 (2d Cir. 2013).........................................4, 18, 46, 49

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982)...............................................................17, 23

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
   427 U.S. 639 (1976) (per curiam).............................................52

*Nat'l Socialist Party of Am. v. Village of Skokie*,
   432 U.S. 43 (1977) (per curiam)................................................26

*Outley v. City of New York*,
   837 F.2d 587 (2d Cir. 1988).................................................51, 58

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*,
   682 F.2d 802 (9th Cir. 1982)................................................46, 51

*Raysor v. Port Auth.*,
   768 F.2d 34 (2d Cir. 1985).........................................................51

*Regal Knitwear Co. v. NLRB*,
   324 U.S. 9 (1945)........................................................................23

*Rossbach v. Montefiore Med. Ctr.*,
   81 F.4th 124 (2d Cir. 2023)..................................................19, 37

*S. New England Tel. Co. v. Global NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010)..................................................44, 45

*Sakon v. Andreo*,
   119 F.3d 109 (2d Cir. 1997)..................................................34, 56

*Salahuddin v. Harris*,
   782 F.2d 1127 (2d Cir. 1986)................................................32, 33

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984)................................................................30, 51

*SEC v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009).................................................39

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007)..................................................57, 58

*Shepherd v. Annucci*,
   921 F.3d 89 (2d Cir. 2019)....................................................18, 37

ix

*Shomo v. Eckert*,
    345 F.R.D. 570 (W.D.N.Y. 2024)..................................................45

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979)......................................................................23

*Societe Internationale v. Rogers*,
    357 U.S. 197 (1958).............................................17, 32, 33, 51

*Spencer v. Doe*,
    139 F.3d 107 (2d Cir. 1998)..............................................44, 48

*State v. Khan*,
    No. NNH-CR15-0162194 (Conn. Super. Ct. Jan. 31, 2025)..............1, 11

*Ted Lapidus, S.A. v. Vann*,
    112 F.3d 91 (2d Cir. 1997).................................................18, 53

*Theilmann v. Rutland Hosp., Inc.*,
    455 F.2d 853 (2d Cir. 1972) (per curiam)...............................19

*United States Catholic Conference v. Abortion Rights Mobilization, Inc.*,
    487 U.S. 72 (1988)......................................................................25

*United States ex rel. Drake v. Norden Sys., Inc.*,
    375 F.3d 248 (2d Cir. 2004)......................................................20

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987).............................................29, 40

*United States v. Constr. Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996)...............................................28, 38

*United States v. Cutler*,
    58 F.3d 825 (2d Cir. 1995)........................................................28

*United States v. Dickinson*,
    465 F.2d 496 (5th Cir. 1972)............................................28, 29

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)......................................................37

*United States v. Procter & Gamble Co.*,
    356 U.S. 677 (1958)....................................................................58

*United States v. Quattrone*,
    402 F.3d 304 (2d Cir. 2005)..................................................9, 29

x

*United States v. Quintieri,*
 306 F.3d 1217 (2d Cir. 2002)......................................................................54

*United States v. Raddatz,*
 447 U.S. 667 (1980).......................................................................................26

*United States v. Robin,*
 553 F.2d 8 (2d Cir. 1977) (en banc).........................................................57

*United States v. Spallone,*
 399 F.3d 415 (2d Cir. 2005)........................................................................20

*United States v. United Mine Workers,*
 330 U.S. 258 (1947).......................................................................................28

*Virginia Props., LLC v. T-Mobile Ne. LLC,*
 865 F.3d 110 (2d Cir. 2017)........................................................................55

*Walker v. City of Birmingham,*
 388 U.S. 307 (1967).........................................................................17, 28, 29

*West v. Goodyear Tire & Rubber Co.,*
 167 F.3d 776 (2d Cir. 1999)..................................................................43, 49

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage,*
 564 F.3d 110 (2d Cir. 2009).................................................................passim

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,*
 694 F.3d 155 (2d Cir. 2012)........................................................................38

*Yee v. City of Escondido,*
 503 U.S. 519 (1992).......................................................................................32

*Yukos Capital S.A.R.L. v. Feldman,*
 977 F.3d 216 (2d Cir. 2020).............................................................33, 34, 53

*Zervos v. Verizon N.Y., Inc.,*
 252 F.3d 163 (2d Cir. 2001)........................................................................19

**Statutes**

28 U.S.C. § 636(b)(1)(A)................................................................................9, 27

28 U.S.C. § 1291...................................................................................................4, 8

28 U.S.C. § 1331......................................................................................................4

28 U.S.C. § 1367................................................................................................4, 25

**Rules**

Fed. R. App. P. 4(a)(1)(A)..................................................................................4

Fed. R. Civ. P. 26..................................................................................passim

Fed. R. Civ. P. 37..................................................................................passim

Fed. R. Civ. P. 41(b)..............................................................................passim

Fed. R. Civ. P. 58....................................................................................4

Fed. R. Civ. P. 65(d)(2)........................................................................16, 23

Fed. R. Civ. P. 72(a)..............................................................................passim

D. Conn. L. Civ. R. 72.2..........................................................................9

## PRELIMINARY STATEMENT

The only jury ever to hear Jane Doe's accusation acquitted Saifullah Khan of every count, in less than a day. *Khan v. Yale Univ.*, 27 F.4th 805, 811 (2d Cir. 2022). Yale expelled him anyway, through a proceeding so defective that a unanimous Connecticut Supreme Court listed its failures: no oath, no cross-examination, no right to call witnesses, counsel reduced to "the proverbial potted plant," and no record of any kind. *Khan v. Yale Univ.*, 347 Conn. 1, 39, 44 (2023). This Court then returned his claims to the district court for discovery and trial. *Khan v. Yale Univ.*, 85 F.4th 86, 100 (2d Cir. 2023). That trial never happened. On March 27, 2026, the district court dismissed the entire case, with prejudice, as a "sanction." (SPA-1.)

This judgment cannot stand. To begin with, Mr. Khan violated no order. His posts after June 19, 2024 never said Jane Doe's name. (SPA-66–67.) Other people said it: strangers bound by no order repeated a name a Connecticut judge has called "public information" and "common knowledge." *State v. Khan*, No. NNH-CR15-0162194 (Conn. Super. Ct. Jan. 31, 2025) (Vitale, J.). The name was spoken in open court at Mr. Khan's own public criminal trial and is printed hundreds of times in the State's certified public transcript. (SPA-71; A-184–185.) So far as defendants' briefing and our research disclose, he is the first litigant in American appellate reporting to lose his entire case as punishment for other people's lawful speech.

The order behind those "violations" is a magistrate judge's command that Mr. Khan never, anywhere, "directly or indirectly" utter the name of the

1

woman whose accusation the State could not prove to a jury. (SPA-49.) No Article III judge has ever reviewed it. He challenged it by timely Rule 72(a) objections invoking *Cox Broadcasting v. Cohn*, 420 U.S. 469 (1975). (A-124; A-172.) The district court promised in writing, repeatedly, to decide them "in a separate decision." (SPA-65 n.10, 16 n.14; SPA-53.) Denying mandamus, this Court "expect[ed]" "appropriately expeditious" consideration. *In re Khan*, No. 24-2794 (2d Cir. Nov. 15, 2024) (SPA-52). Twenty months of silence. At the final hearing: "That issue was decided. It is on appeal." (A-314:7–9.) Neither was true. Then the case was dismissed over asserted violations of that order, in an opinion never mentioning the objections. If this judgment stands, no court will ever review the order.

The dismissal rescued defendants who had stopped defending. Having lost in two appellate courts, they turned to prosecuting the plaintiff: three dismissal motions in twenty-six months, while Yale produced 400 pages of discovery in four years (A-249), while seven motions to compel—several his own—sat undecided until dismissal mooted them (SPA-74), and while the documents supposedly proving the "false" interrogatory answer sat only in Yale's files.

The discovery "violations" are thinner still. Mr. Khan violated no discovery order. Defendants never even moved to compel a further interrogatory answer. The privilege claim was withdrawn, and every text produced, before any ruling—a course the court itself called "Attorney Taubes's sound legal judgment carrying the day." (A-341:17–20.) The

2

alleged "document dump"—about 18,000 documents (A-323:15–19), responsive to defendants' own search terms (A-318:13–14)—drew an express judicial refusal to find intent to delay. (SPA-27.) We cannot find any reported decision, in any circuit, dismissing a case for producing what the adversary's own search terms retrieved.

The "findings" arose from a process that requires review. The court declared "the evidence is pretty compelling that he lied" before Mr. Khan was sworn. (A-328:14–15.) As it had announced (A-297:10–13), the court alone examined him; the movants never sought to. It stopped his answer to the dispositive question: "No. And would Your Honor like deeper explan—" "No, you have a lawyer to make the arguments for you." (A-372:14–16.) Where his sworn denials were heard, they prevailed: two of seven accusations argued at the hearing vanish from the dismissal order.

Even so, this Court need not disturb a single finding: taken at face value, the findings cannot lawfully carry this sanction. In January 2025 the court held cross-examination at trial the remedy for this plaintiff's alleged conduct, dismissal the "sanction of last resort," and prejudice "reduce[d]" by the public transcript. (SPA-70–71.) Fourteen months later it reversed itself and imposed the ultimate sanction—with no disclosed application of the factors, no clear-and-convincing finding on any predicate, one sentence on lesser sanctions, and a candid admission: "I don't know what the answer is." (A-394:19.)

3

This Court vacates dismissals imposed with far more process. *E.g.,* *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463 (2d Cir. 2013). The judgment should be reversed—at minimum vacated, and the case remanded for adjudication, at last, of the objections the district court promised to decide, and for the trial of the claims two appellate courts preserved.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 (Title IX) and § 1367 (state-law claims). On March 27, 2026, it dismissed the entire action with prejudice as a sanction (SPA-1); judgment entered under Rule 58 on March 30, 2026 (SPA-32); Mr. Khan timely appealed on April 1, 2026 (A-267). Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291. The appeal challenges the judgment of dismissal; the lawfulness of the orders behind the sanction, and the process afforded Mr. Khan's challenges to them, are reviewed as ingredients of that judgment. *See infra* Point I.B.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the June 19, 2024 order—forbidding Mr. Khan from "directly or indirectly" revealing the identity of an accuser who testified under her own name at his public criminal trial, whose certified public transcript prints her name—could constitutionally be enforced by a merits-terminating sanction, where the "violations" found were posts that never

4

stated her name, followed by lawful posts of third parties bound by no order?

2. Whether dismissal with prejudice may rest on asserted violations of a magistrate judge's speech-restraining order whose timely Rule 72(a) objections no district judge ever decided, despite written promises and this Court's stated expectation of expeditious consideration?

3. Whether Rule 37, Rule 41(b), or inherent authority permits dismissal predicated on discovery conduct that violated no court order—a sworn interrogatory answer never made the subject of a motion to compel, a privilege assertion withdrawn (with full production) before any ruling, and a document production the court expressly declined to find dilatory?

4. Whether the district court abused its discretion by dismissing without any disclosed application of the governing factors, without predicate-specific clear-and-convincing findings of bad faith, and with one conclusory sentence on lesser sanctions—fourteen months after itself identifying a workable lesser remedy for the same categories of conduct?

5. Whether the dismissal violated due process as punishment unrelated to the merits of the extinguished claims; whether it could sweep in the claims against the Yale defendants; and whether any remand should be assigned to a different district judge?

## STATEMENT OF THE CASE

Record citations: "SPA" refers to the separately filed Special Appendix and "A" to the Appendix. Transcripts are cited by appendix page and line: the December 22, 2025 evidentiary hearing transcript (ECF No. 397) appears at A-294–397, and the March 18, 2024 hearing transcript (ECF No. 94) at A-268–293.

### A. The accusation, the acquittal, and the expulsion

Saifullah Khan came to Yale from Afghanistan on a scholarship. On Halloween night 2015, he and a classmate, appellee Jane Doe, attended a party and a concert; a sexual encounter in her room followed. (A-69–70 ¶¶ 39–43.) Doe accused him of rape; Yale suspended him; and the State of Connecticut charged him with sexual assault. (A-70 ¶¶ 45–48.) After a two-week trial at which both testified under oath and subject to cross-examination, "a Connecticut jury acquitted Khan of all charges after less than a full day's deliberations." *Khan v. Yale Univ.*, 27 F.4th 805, 809–11 (2d Cir. 2022).

Yale readmitted him, then suspended him again, and in November 2018 convened a University-Wide Committee ("UWC") hearing on Doe's 2015 allegation; the panel voted to expel him. (A-72–78 ¶¶ 56–80.) The Connecticut Supreme Court would later catalogue what that proceeding lacked: an oath, cross-examination, a fair opportunity to call witnesses, the active assistance of counsel (Khan's lawyer was "relegat[ed] . . . to the status

6

of the proverbial potted plant"), and any record or transcript. 347 Conn. at 39, 44.

## B. The claims—and their preservation by two appellate courts

In December 2019, Mr. Khan sued Yale and twelve officials for Title IX gender discrimination and state-law claims, and sued Doe for defamation and tortious interference over her 2018 UWC statements. (A-78–86 ¶¶ 82–121.) The district court dismissed the Doe claims on quasi-judicial-immunity grounds, *Khan v. Yale Univ.*, 511 F. Supp. 3d 213 (D. Conn. 2021); this Court certified the immunity questions, 27 F.4th at 833–34; the Connecticut Supreme Court answered that the UWC proceeding "did not qualify as quasi-judicial" and that the malice allegations "are sufficient to defeat Doe's entitlement to qualified immunity as a matter of law," 347 Conn. at 46, 57; this Court vacated and remanded, 85 F.4th at 100. The mandate issued November 15, 2023. (A-100.)

## C. The pseudonym—requested by Mr. Khan, entered "without prejudice"

At filing, Mr. Khan himself moved to litigate against Doe under a pseudonym, honoring Yale confidentiality policies while he hoped for readmission (A-89); the court granted it "without prejudice insofar as Jane Doe has not yet appeared." (SPA-33.) That order was a filing convention, as the court later explained: "That was the only order I had entered. . . . I

7

certainly didn't sua sponte issue a prior restraint with respect to anybody as to Jane Doe's identity." (A-272:10–17.)

## D. Christmas 2023 and the March 18, 2024 hearing: no order prohibited the disclosure

Weeks after the mandate restored his case, Mr. Khan named his accuser on his own X account. No order of any court forbade it: the court denied Doe's ensuing motion for judgment of dismissal because no order prohibited the disclosure. (SPA-4; A-272:10–25.) The court reviewed Doe's full submission—earlier communications and settlement contact included (SPA-62)—and "no sanction was imposed." (SPA-70.) The most it could locate was a violated "spirit" (SPA-4)—of an "order" it called that morning a pleading convention, "the only order I had entered." (A-272:10–17.) What followed was neither contempt, sanction, nor bad-faith finding: an interim directive not to identify her again "until those rulings are issued" (A-290:21–291:1) and an order to remove the posts (SPA-34), obeyed. He offered to "completely oblige" any "gag order"; counsel preserved objection. (A-289:14–19.) The dismissal order reaches back to this hearing for a footnoted "dishonesty" charge made in no reasoned order—answered at Point II.E. (SPA-5 nn.6–7.)

## E. The June 19, 2024 order: no time limit, no findings

Mr. Khan's motion to vacate the pseudonym (A-103) and Doe's motions for a protective order and continued anonymity (A-101, A-111)

were referred to Magistrate Judge Garcia. On June 19, 2024, she continued Doe's pseudonymity and entered the order at the center of this case:

> "I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal." (SPA-49.)

The order has no time limit and no subject-matter limit. The magistrate judge acknowledged the "unique" "procedural posture concerning Jane Doe's anonymity" (SPA-45), her lack of "authority to involuntarily dismiss an action, see 28 U.S.C. § 636(b)(1)(A)" (*id.*), and that Rule 26(c) supplied no authority because "Plaintiff knew Jane Doe's identity before litigation." (SPA-46 (citing *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983)).) She nonetheless deemed the order "Not a Prior Restraint," principally because "Plaintiff did not object"—construing his offer of compliance as concession while acknowledging that counsel "preserved his objection to future 'gag orders.'" (SPA-47–48.)

## F. The objections—and the rulings that never came

On July 3–4, 2024, Mr. Khan filed a timely Local Rule 72.2 objection and supplement seeking de novo review. (A-124, A-137.) The objection argued that "[t]he order is plainly a prior restraint on its face" under *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005); that it "cannot be squared with

9

*Cox* or *Florida Star*" because "Doe's true name is a true fact in a public, criminal court record." (A-126–134.)

The objections were never decided. In January 2025, the district court declared the constitutional challenge "irrelevant to whether Plaintiff was bound by [the order] or did something to violate it," citing *Maness v. Meyers*, 419 U.S. 449 (1975), and promised: "Plaintiff's objection will be taken up in a separate decision." (SPA-57 n.3, 10 n.10.) It repeated the promise for the October 21, 2024 transcript-restriction order (SPA-71 n.14; *see* SPA-51, A-172); a November 2024 electronic order said both "will be addressed together." (SPA-53.) This Court denied mandamus because "adequate, alternative means of obtaining relief" existed. Order, *In re Khan*, No. 24-2794 (2d Cir. Nov. 15, 2024) (SPA-52).

No decision ever issued. The docket contains no ruling on A-124, A-137, or A-172; the dismissal opinion does not mention them. When counsel pressed the point at the final hearing, the court answered: "But I'm not here to decide that issue, Mr. Taubes. That issue was decided. It is on appeal." (A-314:7–9.) The objections had been decided by no one, and no appeal from them was pending.

**G. The public record: the certified transcript names Doe**

In November 2024, the Connecticut Superior Court certified the official transcript of Mr. Khan's criminal trial. As the district court found: "Therein, Doe is identified by name." (SPA-71.) A Connecticut Superior Court judge has since described Doe's identity as "public information" and "common

10

knowledge." *State v. Khan*, No. NNH-CR15-0162194 (Conn. Super. Ct. Jan. 31, 2025) (Vitale, J.) (quoted at A-242).

## H. The January 29, 2025 ruling: violation found, dismissal denied, a lesser remedy identified

Within hours of the June 19 Order, Mr. Khan posted that he had been "gagged," stated that the order "only applies to me," expressed hope that "others contribute in their own way," and tagged a user who then posted Doe's name and photograph. (SPA-65–67.) Doe and Yale again moved for judgment of dismissal. On January 29, 2025, the district court found that Mr. Khan had willfully violated the June 19 Order "indirectly," through his followers—and denied dismissal. (SPA-68–71.)

The court's reasons matter. Dismissal is "the least-favored sanction, and the sanction of last resort." (SPA-70.) No sanction had ever been imposed: "Although no sanction was imposed, Plaintiff was clearly advised that his conduct was both troubling and inappropriate." (SPA-70.) The violation "has not recurred over the ensuing seven plus months." (SPA-71.) "[S]ubsequent events reduce the prejudice to Doe": the certified public transcript names her. (SPA-70–71.) A lesser remedy lay at hand: "Plaintiff's conduct throughout the litigation is an appropriate subject for his cross-examination at trial." (SPA-71.) And "Defendants do not, in the alternative, seek any sanction other than dismissal." (*Id.*)

11

## I. The third motion for dismissal: five accusations, none adjudicated

Discovery proceeded—in one direction. By counsel's unchallenged account, when present counsel appeared "four years into this case, only 400 pages had been produced" by defendants (A-249), while Mr. Khan produced his devices, his social-media credentials, and tens of thousands of pages. (A-383:23–385:18.) The documents that would later anchor the dismissal—Yale's Title IX files on other accusations—were among those "Yale withheld for years." (A-250.)

On May 20, 2025, rather than answer the discovery they owed, Doe and Yale filed their third dismissal motion since the mandate. (A-202, A-239, A-263.) Its predicates, on the record:

**The production.** Mr. Khan's final February 27, 2025 production was "about 18,000 documents" (72,000 pages), as Yale's counsel corrected the record. (A-323:15–19.) Counsel represented without contradiction that every document responded to defendants' own search terms, in a searchable database maintained by the same vendor Yale uses. (A-317:5–18, A-318:13–18, A-319:2–22.) Doe's counsel conceded roughly 15 percent was relevant "being overly generous"—a figure that "includes a lot of reproduced documents." (A-322:19–24.) And the court "d[id] not, on the present record, infer that it was Plaintiff's intent to forestall impending depositions or the conclusion of discovery." (SPA-27.)

**The reposted interview; "operation dragonfire."** Days after the January 29 denial, Mr. Khan re-posted a blogger's interview of him—built on

12

BBC-documentary footage (A-313:2–6)—captioning one repost "Next, naming the infamous Jane Doe!" Followers again posted the name; neither man spoke it. (A-302:14–19.) His opposition tied the caption to his pending motion to end pseudonymity—"If the motion is granted, Ms. Doe will be named" (A-243)—which the court dismissed as "the same specious argument" it had rejected before. (SPA-15.) In June 2025 he posted that "the pseudonym is on the chopping block. Once that happens, operation dragonfire will start"; the court read a threat (SPA-73; SPA-5 n.6); under oath, he testified it named "the next stage of motion practice." (A-371:18–372:2.)

**The interrogatory.** Doe's Interrogatory No. 10 asked Mr. Khan to "identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them." His May 17, 2024 answer named Jane Doe and Peter Roe. Defendants' exhibits showed other accusations, drawn from Yale's own files and news articles. (A-250.) Their deficiency letter was dated August 6, 2024 (A-337:8–15); counsel met, conferred, and, after consulting Mr. Khan, confirmed the answer. (SPA-18–19.) Defendants never moved to compel—then or ever—and no order ever addressed the interrogatory. (A-381:1–382:7.) He testified he read the question to reach formal charges—"a clumsy approach" (A-373:8–24); the court found that not credible. (SPA-18–19.)

**The Peter Roe texts.** Counsel withheld texts between Mr. Khan and Peter Roe—a former friend who later accused him—on privilege grounds,

13

on the theory that Roe, under contract with Attorney Valois, functioned as a paralegal to the then-legal team. (A-368:20–369:16.) Counsel litigated the question, then withdrew it and produced every message before defendants' motion to compel was argued—a sequence the court itself called "Attorney Taubes's sound legal judgment carrying the day." (A-341:17–20.) No court ever adjudicated it. (A-381:1–2.) The messages—private 2018 exchanges predating this lawsuit, which the court quoted at length—are now defendants' trial exhibits, delivered by his own production. (SPA-20–24.)

**The recording.** Yale's procedures prohibited any record of the UWC hearing; the panel denied Mr. Khan's request for a transcript or recording. 347 Conn. at 45–46. Facing expulsion in a proceeding with no oath, no counsel, and no record, the student made one himself, telling the panel otherwise, so no one could later misstate what he said—the only accurate account of the UWC hearing in existence. He disclosed it himself: it was logged on the agreed July 1, 2024 privilege-log deadline, a timeline defense counsel confirmed (A-363:22–364:10), and a redacted transcript was produced in February 2025 through an agreed, docketed, cost-shared process. (SPA-54; A-359:8–10; A-253–254.)

**The Formica statement.** Separately, in an emergency motion concerning a Department of Homeland Security records request, Mr. Khan represented that "retained immigration counsel" had advised resubmitting his criminal transcripts; the court found the statement false because Attorney Formica no longer represented him. Mr. Khan's position—never tested—

was that the advice came from Attorney Charnin of Formica's office. (A-252.) The episode occurred in fall 2024, months before the January 29, 2025 denial.

## J. The December 22, 2025 hearing: standards unengaged, no cross-examination

The court held a two-hour, 58-minute hearing. (A-266.) The standards, fully briefed, went unengaged: not one mention of willfulness, bad faith, or clear-and-convincing evidence, and no analysis of alternatives; the only one proposed was Doe's counsel's fallback, "a do-over to challenge privilege logs." (A-381:6–23.) Before he was sworn, the court stated: "the evidence is pretty compelling that he lied." (A-328:14–15.) He then testified, examined by the court alone, as the court had announced (A-297:10–13); the movants neither deposed him nor sought to question him. (A-373:25–374:2.) Asked the dispositive intent question, he answered "No," and his offer of a "deeper explan[ation]" was stopped: "you have a lawyer to make the arguments for you." (A-372:14–16.) Two accusations he denied under oath (A-365:1–366:3) appear nowhere among the dismissal order's grounds.

The court reserved decision, emphasizing that it had "not made any decision" and would "go back and look at everything." (A-316:13–14, A-392:5–6, A-393:24–101:6.) It acknowledged candidly: "I don't know what the answer is because I haven't decided this motion." (A-394:8–20.) On delay: "at least the last six months is on me, because I sua sponte stayed this case in light of this motion." (A-379:3–5.) On causation, when counsel observed that

15

disclosure of Doe's name "is going to happen even if he makes no comments on the media," the court answered: "That may be true." (A-388:6–10.) Counsel added, unrebutted: "Reading one of Your Honor's decisions on the motion to dismiss could lead a discerning reader to Jane Doe's name. It's a fact." (A-388:13–16.)

## K. The dismissal—fourteen months after dismissal was denied

On March 27, 2026, the court dismissed the entire action with prejudice under its inherent authority, Rule 41(b), and Rule 37. (SPA-1.) The opinion recites the standards, states "the Court relies to varying degrees on the misconduct detailed above" (SPA-27), and disposes of alternatives in one sentence: "The Court can discern no lesser sanction to address the repeated and escalating misconduct by Plaintiff in this case." (SPA-30.) It contains no *Spencer* analysis, no predicate-specific bad-faith finding, no mention of the pending Rule 72 objections, and no explanation why the January 2025 calculus—trial, with cross-examination—became inadequate. Judgment entered March 30, 2026 (SPA-32); this appeal followed (A-267).

## SUMMARY OF ARGUMENT

**I.** The speech cannot lawfully support any sanction, let alone dismissal. Mr. Khan violated no order: his posts never stated Doe's name, and the "violations" rest on a construction—punishing him because unenjoined strangers lawfully posted a public name—that fails the requirement that a penalized order say "precisely what acts are forbidden," exceeds Rule 65(d)

16

(2), and collides with *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). His timely Rule 72(a) objections were never decided, despite written promises and this Court's "appropriately expeditious" expectation—the posture *Walker v. City of Birmingham* reserved for challengers "met with delay or frustration of their constitutional claims." 388 U.S. 307, 318 (1967). The objections are here as of right: a judgment entered over undecided objections "functions as a final order overruling" them. *Fielding v. Tollaksen*, 510 F.3d 175, 178–79 (2d Cir. 2007). He was punished under a prior restraint he never violated—for speech *he* never uttered, said by other people.

**II.** The discovery "violations" fail at the threshold: Mr. Khan violated no order, and under Rule 37(b) no order means no dismissal. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991); *Societe Internationale v. Rogers*, 357 U.S. 197, 207 (1958) (discovery dismissal "depends exclusively upon Rule 37"). The interrogatory answer never faced a motion to compel; the privilege claim was withdrawn, with full production, before any ruling; no order governed the production, which answered defendants' own search terms. Neither Rule 37(c)(1), Rule 26(g)(3), Rule 41(b), nor inherent authority supplies another path.

**III.** Under this Court's governing *Spencer* factors, the dismissal was an abuse of discretion. The opinion recites the factors and weighs none; recites the clear-and-convincing standard and makes no predicate-specific bad-faith finding; and disposes of lesser sanctions in one sentence—fourteen months after the same court denied dismissal and prescribed cross-examination at

17

trial for the same categories of conduct. This Court vacates dismissals—even willful, warned, repeated ones—absent genuine consideration of alternatives. *Shepherd v. Annucci*, 921 F.3d 89, 98 (2d Cir. 2019); *Mitchell*, 708 F.3d at 468–69.

**IV.** Due process independently forbids the judgment. A court may terminate the merits only where the misconduct supports the *Hammond Packing* presumption that the extinguished claims lacked merit, and the sanction must be "specifically related to the particular 'claim'" at issue. *Ins. Corp. of Ireland*, 456 U.S. at 705–07. The presumption cannot operate: nothing remains hidden—every document, text, and recording is in defendants' hands, produced years before trial. What remains is punishment, imposed without the heightened findings punishment requires, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–09 (2017), under an announced standard abandoned without notice. *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997).

**V.** At minimum, the judgment cannot stand as to scope. The court relied on its predicates "to varying degrees," finding none independently sufficient; if any material predicate falls, vacatur follows unless this Court can say the same sanction would have issued "absent reliance on the invalid factors." Cf. *Koon v. United States*, 518 U.S. 81, 113 (1996). And the claims against the thirteen Yale appellees cannot be extinguished by conduct concerning Doe's pseudonymity. At the very least, dismissal of *all* claims was an error of law.

18

## STANDARD OF REVIEW

Sanctions are reviewed for abuse of discretion, but a district court abuses its discretion when its decision "rests on an error of law . . . or a clearly erroneous factual finding," or "cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

Five caveats apply to this case.

First, where the district court acts as "'accuser, fact finder and sentencing judge' all in one, . . . review is 'more exacting than under the ordinary abuse-of-discretion standard,'" *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009)—review *Rossbach v. Montefiore Med. Ctr.* applied to a sanctioned party. 81 F.4th 124, 134–35 (2d Cir. 2023).

Second, dismissal with prejudice is "the harshest of sanctions," *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014), reserved for "extreme situations." *Theilmann v. Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972) (per curiam).

Third, because the sanction penalizes expression, this Court has "an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984).

19

Fourth, no drafter's deference attaches to the district court's construction of an order the magistrate judge—not the district judge—drafted. *See United States v. Spallone*, 399 F.3d 415, 423–24 (2d Cir. 2005).

Fifth, this appeal can be decided without disturbing a single finding: the errors are legal and structural, and compel reversal with the findings taken at face value. The material findings are also independently challenged as clearly erroneous. *See infra* Points I.A, II.B–.E, IV.D. "[D]ocuments or objective evidence may contradict the witness' story," and this Court "may well find clear error even in a finding purportedly based on a credibility determination." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). The movants called no witnesses; every finding rests on a paper record equally legible here, where deference "has lesser force." *Bose*, 466 U.S. at 500; *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) ("need not blindly defer"). And on whether facially compliant speech was "designed to" cause others' disclosure, this Court examines the statements and circumstances for itself. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).

20

## ARGUMENT

**I. The speech cannot support the sanction: Mr. Khan violated no order, no judge ever reviewed the order, and the Constitution protects what he said.**

The district court's account of "repeated and escalating misconduct" begins and escalates with one thing: his speech about his own case. The Christmas 2023 posts violated no order—the court said so. (A-272:10–25.) Every subsequent "violation" was "indirect": speech that never stated Doe's name, followed by other people's speech that did. Even apart from the Constitution, causing others to repeat a true name the State itself published cannot carry the forfeiture of claims worth trying. The speech predicate fails —and because it cannot be said the court would have dismissed without it, the sanction must be vacated.

### A. Mr. Khan violated no order: his posts never named Doe, and the "violations" were built from third parties' lawful speech.

Mr. Khan's post-order posts did not state Doe's name. (SPA-66–67.) The "violations" found below consist of this sequence: Mr. Khan spoke, and other people, bound by no order, then posted the name. The district court reasoned that "one method of acting 'indirectly' is through the conduct of others" and found that Mr. Khan "manipulated his 'followers.'" (SPA-69–70.)

21

The intent finding was inferred, never proven. The movants bore the clear-and-convincing burden yet never sought to examine him; the only direct evidence—his sworn denial—was stopped mid-answer. (A-372:14–16.) His explanation—"[i]f the motion is granted, Ms. Doe will be named" (A-243)—was contradicted by no evidence. An inference maintained against the only sworn testimony is not clear and convincing proof, *see Wolters Kluwer*, 564 F.3d at 114, and "manipulated" is a label, not a finding. His posts complied with the order's text; the "violations" exist only under a construction holding him answerable for strangers' speech, which fails three ways as a matter of law.

**First, clarity.** No one may be penalized under an order that is not "clear and unambiguous"—whose addressees "must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 444 (1974) ("fair and precisely drawn notice"). An order whose reach turns on predicting strangers' reactions tells the obedient nothing: he could not safely say he had been gagged, lest his audience respond with the name. If whatever he says is indirect disclosure whenever strangers answer with the name, he cannot speak about the case at all—and the order nowhere says that. (A-314:11–17.) The court's own limiting principle—"if there . . . doesn't appear to be a direct line from what he says to their disclosure, then that's not on him" (A-315:13–15)—locates the line in strangers' conduct, not *the order's text*.

**Second, attribution.** An order binds parties, their agents, and those "in active concert or participation" with them, Fed. R. Civ. P. 65(d)(2); courts "may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently . . . ." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945). The followers were bound by nothing and their speech was lawful: the name lawfully obtained, the trial public, the transcript public. *Cox*, 420 U.S. at 495; *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104–05 (1979).

The theory reduces to attributing third parties' lawful speech to a speaker because his advocacy intentionally prompted it—what the First Amendment forbids short of incitement under *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam). "Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982). In *Claiborne*, boycott violators' names were read aloud and published, violence followed, and the speeches remained protected: "no evidence—apart from the speeches themselves"—tied Evers to the violence. *Id.* at 903–04, 929. Advocacy of unlawful action "at some indefinite future time" is protected, *Hess v. Indiana*, 414 U.S. 105, 108–09 (1973) (per curiam)—and what the followers did here was not even unlawful.

True threats, defamation, and harassment remain fully actionable; what is not allowed is enforced silence in advance, on pain of losing one's claims. The order made Mr. Khan the one person in the world forbidden to

say who accused him—while his name filled every newspaper, 77,000 people petitioned against his readmission, 27 F.4th at 811–12, and her name sat in the State's certified transcript. The First Amendment forbids refereeing a public controversy by silencing one side—then destroying his claims when the silence proves imperfect.

**Third, causation.** The court's own record forecloses the causal premise. When counsel observed that disclosure of Doe's name "is going to happen even if he makes no comments on the media," the court answered: "That may be true." (A-388:6–10.) Counsel added, unrebutted, that a discerning reader could deduce the name from the court's own decisions. (A-388:13–16.) On that concession, the commenters' conduct is not fairly traceable to him. And the "tagged" user said to have posted Doe's name and photograph "on cue" had posted both seven months earlier. (SPA-7.) Nothing is "revealed" to a person already publishing it; what remains is republication of an already-public fact—the injury the court had found "reduce[d]" by the certified transcript. (SPA-70–71.)

Even the one appellate decision sustaining such an order marks this line: in *Doe v. Mast*, 173 F.4th 524 (4th Cir. 2026), the district court declined contempt for a national-television interview because the enjoined parties never disclosed the protected names—forbearance the Fourth Circuit cited as lawful tailoring. Under *Mast*, speech that names no one is compliance. Here it was branded "indirect" violation—and answered not with contempt but with the destruction of the speaker's case.

**B. No Article III judge ever reviewed the order—despite timely objections, written promises, and this Court's stated expectation.**

This Court has jurisdiction to decide everything the judgment rests on. Mr. Khan appeals from the judgment of dismissal—the one thing the appellant in *Marquez v. Silver* did not challenge: she "d[id] not challenge the sanction dismissal," 96 F.4th 579, 581 (2d Cir. 2024), and sought review only of unrelated merits rulings the Court deemed "immaterial" if the sanction stood. *Id.* at 583. *Marquez* preserved review of those orphan rulings for "a single appeal" after an eventual merits judgment, *id.* at 584–85—possible there because the dismissal was without prejudice; impossible here, where the judgment is with prejudice and the challenged order is not an orphan but the judgment's predicate.

Review of a sanction has always included review of what the sanction rests on. On appeal from Rule 37(b) sanctions, this Court asks whether "a valid court order" was "in force," adjudicating challenges to the predicate order and reversing where it fails. *Daval Steel*, 951 F.2d at 1363–64, 1367–68. A sanction resting "on an erroneous view of the law" is "necessarily" an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). And where the sanction is remedial—a judgment extinguishing claims for the adversaries' benefit—the sanction falls with the order: appellate arguments may not "be so confined that the power of the issuing court remains untested." *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 80 (1988) (reversing this Court).

25

The objections themselves are also before this Court as of right: "when a district judge enters an order disposing of a case without expressly ruling on a pending objection filed pursuant to Federal Rule of Civil Procedure 72(a), the judgment entered pursuant to that order functions as a final order overruling the objection"—and this Court then "ha[s] jurisdiction to review" the magistrate judge's order. *Fielding v. Tollaksen*, 510 F.3d 175, 178–79 (2d Cir. 2007). The judgment silently overruled objections twice promised a reasoned decision—there was never an interlocutory ruling to appeal, only its absence. *Fielding* makes the deemed denial reviewable now.

The alternative has no stopping point. On any contrary theory, no court will ever review the June 19 Order: the district court never did, though it twice promised to; this Court could not; and because the dismissal is with prejudice, the eventual merits judgment through which *Marquez* preserves review will never exist. A speech-restraining order would become unreviewable by construction—the one result the First Amendment forbids. *See Nat'l Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43, 44 (1977) (per curiam) (restraints on expression require "strict procedural safeguards," including "immediate appellate review").

Rule 72(a) is not precatory: the district judge "*must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a) (emphasis added). The magistrate-judge system's constitutionality depends on that review. *United States v. Raddatz*, 447 U.S. 667, 683 (1980). An order restraining a party's out-

of-court speech about independently acquired information is an injunction and a prior restraint. *Doe v. Mast*, 173 F.4th 524 (4th Cir. 2026). If that is what this order is, a magistrate judge could not finally enter it, 28 U.S.C. § 636(b)(1)(A); if it was an ordinary pretrial order, Rule 72(a) review was mandatory. Either way, an Article III determination was required. None occurred.

Mr. Khan invoked that mechanism under the Rules—he made timely objections (A-124, A-137), a renewed supplement (A-172), and, when nothing happened, he filed a mandamus petition. What followed was a promise, twice written, that the objections would be decided separately (SPA-65 n.10, 16 n.14; SPA-53), and this Court's expectation—denying mandamus precisely because "adequate, alternative means" of relief existed —of "appropriately expeditious" consideration. Order, *In re Khan*, No. 24-2794 (2d Cir. Nov. 15, 2024) (SPA-52).

The objections were still pending—twenty months after filing—when the court dismissed the case over asserted violations of the very order challenged, in an opinion that never mentions them. The court's only account: "That issue was decided. It is on appeal." (A-314:7–9.) Neither was true. The related charge—that Mr. Khan "did not seek reconsideration of this Court's decision or findings, he simply chose to ignore them" (SPA-28)— inverts the record: his objections were pending the entire time, twice promised a decision; sustaining them would have dissolved the pseudonymity regime he was accused of subverting. A litigant awaiting a

27

twice-promised ruling is not "ignoring" findings; he is testing them in the only lawful way the Rules provide.

The consequences are two. First, the unexplained non-decision of a fully briefed, outcome-critical motion is itself reversible error. *Martens v. Thomann*, 273 F.3d 159, 172–73, 179 n.14 (2d Cir. 2001). Second, the collateral-bar principle the court invoked—validity "is irrelevant" to violation (SPA-57 n.3 (citing *Maness v. Meyers*, 419 U.S. 449 (1975)))—does not apply. Even assuming a violation, the obey-first rule presupposes functioning review: an order "must be obeyed until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process." *United States v. Dickinson*, 465 F.2d 496, 511–12 (5th Cir. 1972). *Maness* itself excuses compliance where "appellate courts cannot always 'unring the bell.'" 419 U.S. at 460. *Walker* reserved precisely this case—the challenger "met with delay or frustration of their constitutional claims." 388 U.S. at 318. Mr. Khan is that litigant: unlike the marchers in *Walker* or the lawyer in *United States v. Cutler*, 58 F.3d 825 (2d Cir. 1995), he pursued the prescribed remedy and was still waiting, twice promised a ruling, when his case was ended. And whatever the bar's force in criminal contempt, this was a civil, remedial disposition of the merits. *United Mine Workers*, 330 U.S. at 294–95.

The sequence matters. The June 2024 posts were adjudicated in January 2025—and dismissal was denied. The speech predicate that drove this judgment is the February 2025 conduct (SPA-14–15, SPA-28): reposts made seven months into the objections' pendency, after two written

28

promises of a ruling and the mandamus denial premised on adequate alternative means. The conduct punished here postdates the review system's default, not his. *See In re Green*, 369 U.S. 689, 690–92 (1962) (review sought and refused before the violation); *Walker*, 388 U.S. at 315 n.6 (distinguishing *Green*); *In re Providence Journal Co.*, 820 F.2d 1354, 1355 (1st Cir. 1987) (en banc) (validity open where "timely decision is not forthcoming"); *Dickinson*, 465 F.2d at 513–14.

### C. The June 19 Order is a content-based prior restraint on truthful speech about a public criminal trial.

**1.** A prior restraint is a "judicial order that suppresses speech . . . on the basis of the speech's content and in advance of its actual expression," bearing "a heavy presumption against its constitutional validity." *Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018) (quoting *Quattrone*, 402 F.3d at 309). The June 19 Order is such an order on its face: it singles out one message—anything that would "directly or indirectly" reveal Doe's identity—and forbids him to utter it, anywhere, forever. An order "objected to by the [person gagged] is properly characterized as a prior restraint." *In re Application of Dow Jones & Co.*, 842 F.2d 603, 609 (2d Cir. 1988). *Mast* held the same of a materially identical order—upheld only on national-security findings with no analogue here, and vindicated through contempt, not destruction of the restrained party's case. 173 F.4th 524.

**2.** No discovery-order deference is available. *Seattle Times* protects only orders "limited to the context of pretrial civil discovery" that do "not restrict

the dissemination of the information if gained from other sources." 467 U.S. 20, 34, 37 (1984). Mr. Khan learned Doe's identity as her classmate in 2015 and as the accused at her public trial in 2018—not through discovery. A court "generally has no . . . power to prohibit dissemination of the information itself . . . if that information has been gathered independently of judicial processes." *Bridge C.A.T. Scan*, 710 F.2d at 945–46. The magistrate judge conceded principle and fact—"Plaintiff knew Jane Doe's identity before litigation" (SPA-46)—and entered the restraint anyway.

**3.** The suppressed fact is a public court record. The First and Fourteenth Amendments forbid "sanctions on the publication of truthful information contained in official court records open to public inspection"— announced in a case about a sexual-assault complainant's name. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975). Doe testified under her own name at his public trial, 27 F.4th at 809–10; the State certified the transcript; the district court found her "identified by name" in it. (SPA-71.) *Florida Star* held privacy "highly significant"—and still barred punishment where the government itself made the name available and the restriction was underinclusive. 491 U.S. 524, 537–41 (1989). Underinclusiveness here is total: the order restrains exactly one person—the acquitted accused—while the transcript remains public and everyone else may speak.

**4.** The order was entered without the constitutionally required findings—no compelling interest, no alternatives, no tailoring. Even orders restricting litigants' own communications must be "carefully drawn" on "a

clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981) (invalidating an order that—like this one—forbade communication "directly or indirectly"); *Dow Jones*, 842 F.2d at 611–12 (alternatives must be "explored and ultimately rejected as inadequate"). The stated interest—"a reasonable likelihood this case could be litigated on social media" (SPA-49)—is no fair-trial finding; no jury was impaneled or imminent. And the participant gag sustained in *Dow Jones* exempted "information contained in the public record," 842 F.2d at 605–06; this order prohibits what that one permitted.

**5.** The waiver rationale fails on the record and in law. The no-prior-restraint holding's linchpin—"Plaintiff did not object" (SPA-48)—is refuted by the same ruling's acknowledgment that counsel "preserved his objection to future 'gag orders'" (*id.*), by the transcript (A-289:14–19), and by the objections filed within two weeks calling the order "plainly a prior restraint on its face." (A-126.) Consent could not validate it anyway—"[t]he court was without power to make such an order; that the parties may have agreed to it is immaterial." *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963). And the 2019 request that Doe be pseudonymous in the caption waived nothing: a filing convention (A-272:10–17) is not a lifelong gag.

**D. The constitutional challenge is preserved.**

The constitutional challenge was pressed in the proper vehicles—the Rule 72(a) objections (A-124, A-137, A-172) and the opposition to the second

dismissal motions (SPA-57 n.3; A-161–168). The court deferred it, declared it "irrelevant" to violation, and promised a separate decision; no one need re-brief an argument definitively set aside. A refinement is a new argument for a preserved claim, available "for the first time on appeal," *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992), and *Bose* independent review applies regardless. 466 U.S. at 499.

## II. The discovery conduct cannot support the sanction either: no order was violated, and no rule or inherent power supplies another path.

The district court stacked three sources of authority—Rule 37, Rule 41(b), inherent power—atop five "buckets" of conduct. (SPA-11.) Neither the facts nor the law supports it. A whole made of zeroes sums to zero.

### A. Rule 37(b)'s first principle: no order, no dismissal.

Whether a complaint may be dismissed for noncompliance with discovery obligations "depends exclusively upon Rule 37." *Societe Internationale v. Rogers*, 357 U.S. 197, 207 (1958). And under Rule 37, "there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)"—an order "clearly articulated" and "requiring specified discovery." *Daval Steel*, 951 F.2d at 1363. This Court enforces the requirement by reversal: *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) (quoting *Israel Aircraft Indus., Ltd. v. Standard Precision*, 559 F.2d 203, 208 (2d Cir. 1977)).

These channels are not optional. In *Societe Internationale* itself, the Supreme Court reversed a dismissal rested below on Rule 41(b) and "inherent power": "[r]eliance upon Rule 41 . . . or upon 'inherent power,' can only obscure analysis." 357 U.S. at 207. This Court enforces the channeling. *Salahuddin*, 782 F.2d at 1133–34; *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763–64 (2d Cir. 1990). There is no dishonesty exception—even a movant alleging perjury and concealment must show a violated order, *Yukos*, 977 F.3d at 235—and Rule 37(a)(4) treats an evasive or incomplete answer as a failure to answer—remedied by motion, order, sanction. Rule 37(c)(1) does not fill the gap: its "self-executing sanction" is "automatic exclusion" of undisclosed material—meaningless where the material sits in the movants' files—and never operates where the failure "was substantially justified or is harmless." *McClarin v. City of New York*, No. 23-7310, slip op. at 60–61 (2d Cir. July 13, 2026); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294–98 (2d Cir. 2006). No decision of this Court has ever affirmed dismissal under Rule 37(c)(1)(C); and Rule 26(g)(3) aims certification sanctions at "the signer" or his party—the order allocated responsibility to no one.

No alleged discovery predicate to the dismissal involves a violated order:

*Interrogatory 10*: defendants sent a deficiency letter and met and conferred—and then stopped. No motion to compel was filed; no order ever addressed the answer. (A-381:1–382:7.)

*The Roe texts*: defendants' motion to compel was never decided (A-381:1–2); Mr. Khan withdrew the privilege claim and produced everything before argument—a sequence the Rules price at the movant's "reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A).

*The production*: no order governed its form or volume.

*The recording*: no order compelled it; it was logged on the agreed deadline, transcribed through an agreed, docketed process, and disclosed without any order or even motion needing to be filed. (A-363:22–364:10; SPA-54.)

Inherent authority cannot fill the gap. It is "not a primary mechanism by which a party can obtain relief for a discovery abuse," only "a useful backstop," *Yukos*, 977 F.3d at 235, and when conduct "could be adequately sanctioned under the rules, the court ordinarily should rely on the rules, rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (a fee award, not a dismissal). A sanctions order resting on an inapplicable source of power "will rarely be upheld." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997). The order invoked Rule 37(b)'s framework alone (SPA-10–11); affirmance theories the district court never adopted cannot supply discretion it never exercised.

## B. The interrogatory: a disputed reading converted into "perjury" without a motion to compel, an order, or adversarial testing.

No Rule 37(a) adjudication ever established that the answer was deficient—much less a lie—and no adversarial examination tested the

premise. The interrogatory asked Mr. Khan to identify *individuals* who, "to your knowledge," alleged that *he* "engaged in sexual misconduct *with them*" (emphasis added); his sworn answer named Doe and Roe. Best reading or not, his was linguistically available, and disclosure duties are measured by the demand's "actual language" as "a competent attorney could reasonably have interpreted it." *McClarin*, slip op. at 63–64. The imported definition of "sexual misconduct" broadens the noun but leaves the operative limits untouched—*identify* the individuals, within his *knowledge*, who alleged misconduct *with them*. The broader the definition, the more construction the question demanded, and the less a two-name answer resembles perjury.

Into one finding the court swept direct and third-party reports, newspaper accounts, informal complaints, and allegations whose speakers and particulars it found uncertain. The order's footnote concedes the premise away: "[i]t is unclear the extent to which Plaintiff knew the identities of these women or the specifics of their allegations," and "[i]t is not obvious . . . that such generic knowledge would have triggered his disclosure obligations as to Interrogatory 10." (SPA-18 n.10; *see* SPA-17.)

Taken category by category, on the order's own terms, the mass disintegrates. The 2014 campus-newspaper episode: the order concedes "it is unclear whether Plaintiff knew the identities of these other women" (SPA-17)—and no one can "identify" individuals he cannot name; the November 2017 article likewise reported unnamed students. (*Id.*) "Sophie": the sworn answer disclosed the episode itself by naming Peter Roe, whose complaint

35

arises from the same June 2018 encounter; the order nowhere finds that Sophie complained at all. (SPA-17–18.) What remain are two residential-college matters from 2013 and 2014—a decade old, resolved informally through a dean-suggested apology and training referral, memorialized in Yale's own files. (SPA-16–17.)

The deficiency letter the court treated as the clincher (SPA-18–19) in fact proves the opposite of concealment. Its centerpiece was a video of Mr. Khan publicly announcing "about twenty different complaints against him." (SPA-18.) A litigant bent on hiding accusations does not broadcast their number to the internet. And the announcement maps onto the very category the footnote concedes away. (SPA-18 n.10.) Public candor about complaints he could not name is not sworn concealment of individuals he could.

Uncertainty cannot become clear-and-convincing falsity by aggregation. An assertedly deficient answer is remedied by Rule 37(a) motion, order, and, upon violation, sanctions. Defendants skipped every rung—a disputed interrogatory was worth more as guillotine than as discovery. The "concealment" concealed nothing: the omitted accusations sat in Yale's own Title IX files and published articles. (A-250.) The court never addressed Rule 26(e)(1)(A)'s "made known" exception, nor found any supplementation failure harmful. Defendants themselves said the February 2025 production included "an email about one of the Sally Roe alleged incidents"—"highly detrimental to the plaintiff's case." (A-322:25–323:4.) One cannot conceal accusations by interrogatory while delivering the

36

accusers' documents by production; on either telling the information was "made known," and the concealment finding is clearly erroneous.

Cases affirming a dismissal sanction in our Circuit are of a different kind. *Rossbach* involved a plaintiff who fabricated the central evidence of her claims, perjured herself, and destroyed the devices—with clear-and-convincing findings and an enumerated rejection of lesser sanctions. *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 129–35 (2d Cir. 2023). *Shepherd v. Annucci* affirmed dismissal where a serial litigant lied to obtain in forma pauperis status. 921 F.3d at 97–98. Fabrication manufactures a false merits record; IFP fraud corrupts access; an under-inclusive answer about accusations the adversary already possessed does neither. Even proven falsity draws remedies short of execution: "neither perjury nor nondisclosure, by itself," rises to fraud on the court, *Gleason v. Jandrucko*, 860 F.2d 556, 559–60 (2d Cir. 1988), and when this Court confronted an adjudicated lie under inherent power, the sanction was monetary. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 364–65 (2d Cir. 2021).

## C. The privilege log: a disclosed legal claim, withdrawn before any ruling, recast as fraud because the messages were inflammatory.

No court ruled on the privilege claim, ordered production, or decided defendants' motion to compel. (A-381:1–2.) The log was disclosure, not concealment: it announced the communications, their participants, and grounds. The assertion was counsel's, on a disclosed theory—Roe's contract with Attorney Valois, grounded in *United States v. Kovel*, 296 F.2d 918, 921–22

37

(2d Cir. 1961)—and withdrawn, with complete production, before argument. Nor was the relationship hidden: both defense teams had received Roe productions—"I know because I got them." (A-347:24–25; 57:15–58:5.) The finding of "an intent to conceal from the fact finder" (SPA-22) is clearly erroneous: concealment was neither achieved, attempted, nor possible. The colorability the order denies, the court acknowledged on the record: "a small fraction of them . . . at least arguably implicate" the voluntary-paralegal theory. (A-341:8–14.) Mr. Khan's sworn account—a "good faith belief" resting on a signed contract—went untested (A-369:9–21); counsel's allocation was categorical: "that's on me. It was not Mr. Khan telling me to make a frivolous privilege claim." (A-345:17–25.)

The remedies the law supplies for contested privilege assertions are waiver, motion fees, in camera review, and supervised re-review, *see United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)—defendants cited no case dismissing an action over a privilege log, and we have found none.

Counsel accepted responsibility on the record (A-343:9–11, A-345:22–25), and where fault is counsel's, "any sanction should ordinarily be directed against the attorney rather than the party, absent strong justification." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012); *see Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996).

The dismissal order fills the missing adjudication with the messages' content: it quotes the most inflammatory passages and treats their usefulness

38

to defendants as proof that litigating their status was fraud. Yet its own survey concedes the thread ranged over "finances, taxes, the stock market, investing and other personal matters" (SPA-23)—mixed correspondence with a man under contract with the then-legal team (A-368:20–369:16)—and whether any entry fairly described a mixed thread was exactly the question the never-decided motion to compel existed to answer. That is circular— revulsion substituting for a privilege ruling. And the concern that "the entirety of the privilege log is now subject to challenge" (SPA-29) had the graduated answer Doe's counsel proposed: "a do-over to challenge privilege logs." (A-381:6–23.) Using the log to support dismissal instead was legal error.

### D. The production: defendants wrote the searches, received the hits in their own vendor's database, and called the yield a "dump."

The cases identify two hallmarks of an abusive "document dump": delivery of "large quantities of unrequested materials," and deliberate mixing of "critical documents with others in the hope of obscuring significance." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409–10 (S.D.N.Y. 2009). Mr. Khan did neither. Every document hit defendants' own search terms, within their date ranges—"Nothing I produced to them did not come up as a hit" (A-318:13–18), never contradicted—no order, cap, or protocol required different culling, and the production arrived searchable in the vendor database Yale itself uses (A-317:5–18, A-319:2–22). Contrast the

paradigm "dump": 4,000 pages handed over four days before trial with no guidance. *United States v. Bortnovsky*, 820 F.2d 572, 574–75 (2d Cir. 1987).

The order supplements the epithet with an inference from a calendar: by joining a motion giving defendants three days after the production to disclose experts, Mr. Khan "implicitly assur[ed]" them the production could be "meaningfully reviewed in three days." (SPA-13 n.9.) An "implicit assurance" extracted from a jointly drafted schedule is neither representation, agreement, nor order—and its only work, proof of purpose to disrupt, is the finding the court declined to make. (SPA-27.)

The ~85 percent irrelevance figure is the ordinary output of the requesting parties' own instrument: when search terms swept in roughly 80 percent of an agency's email, the D.C. Circuit held the yield "far from showing bad faith"—it "may simply indicate that most of the emails actually bear some relevance." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 821 (D.C. Cir. 2009). Erring toward disclosure to foreclose any withholding accusation (SPA-14) is what the Rules encourage: discovery "is not a one-way proposition." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). It was one-way here —72,000 pages, devices, and credentials from the plaintiff; some 400 pages in four years from Yale (A-249)—but not in the direction the sanction assumed.

With the court's express refusal to infer intent to delay (SPA-27), no bad-faith-dependent sanction can rest on this predicate. *See Wolters Kluwer*, 564 F.3d at 114. The order's fallback—"the misconduct was in the production itself" (SPA-27–28)—is legally empty: the production violated no order, cap,

protocol, or form-of-production directive. Once the court declined to find the purpose defendants alleged, "dump" became an epithet standing in for the missing violation; what remains is a form-of-production quibble about 18,000 documents (A-323:15–19), roughly 15 percent conceded relevant "being overly generous" (A-322:19–24)—the review defendants' own search terms generated.

The graduated remedies that govern this terrain—organized re-production, review-cost shifting, reopened depositions at the producer's expense, *see Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 623 (2d Cir. 2018)—were never considered. Using this incident to support dismissal was an error of law.

### E. The recording, the Formica statement, and the residual "dishonesty" findings: self-disclosed evidence and untested inferences.

The "concealed recording" is the only accurate record of the UWC hearing in existence—a record Yale's procedures prohibited, disclosed *by Mr. Khan himself* on the agreed deadline, delivered years before any trial. (A-363:22–364:10; SPA-54; A-359:8–10.) Defendants learned of it from his own log; its contents corroborate the deficiencies—no oath, no record—on which the Connecticut Supreme Court ruled. 347 Conn. at 39, 45–46. Preserved, disclosed, delivered—not destroyed, not fabricated. Yale is being sued for running a proceeding designed to leave no record; his case cannot be dismissed because he preserved the only record of it. The footnoted account

41

of concealment—a response stating "see enclosed production" while the recording "only surfaced later" (SPA-26 n.14)—collapses on the timeline defense counsel confirmed: responses served May 20, 2024; a June meet-and-confer; an agreed July 1 deadline; a July 1 privilege log disclosing the recording. "That seems right, Your Honor." (A-363:22–364:10.) "Later" means six weeks, on the parties' schedule, through the device the Rules prescribe, Fed. R. Civ. P. 26(b)(5)—followed by a transcript Yale "helped pay for." (A-359:8–10.) A concealment finding built on a conceded chronology is clearly erroneous.

The charge that Mr. Khan's appellate arguments were "premised on the fact that there was no record of the UWC proceedings" (SPA-26) fares no better, because the premise was true: Yale made no record, its minutes "do not record statements, testimony, or questions," and "[t]he UWC panel specifically denied Khan's request that it make a transcript or other electronic recording of the hearing." 347 Conn. at 45–46. The dismissal order concedes it: "there was no official recording of the proceeding or transcription of same per the UWC protocols." (SPA-27.) The chosen example refutes itself: Mr. Khan argued it was "unclear" whether the witnesses were sworn—the recording confirms they were not. An advocate who understates his best fact deceives no one. The remaining inference—no request audible, therefore none made—is speculation: such requests go to administrators, and the State's highest court recounted the request and the denial.

42

The district court itself acknowledged that "[i]t is, of course, impossible to know whether, had the existence of the recording been disclosed, the issues on appeal would have been decided any differently." (SPA-27.) Speculation is not prejudice, and asserted prejudice fully cured years before trial is governed by *West v. Goodyear Tire & Rubber Co.*: where lesser measures suffice to protect the defendants, dismissal is "too harsh." 167 F.3d 776, 779–80 (2d Cir. 1999) (vacating dismissal even for destroyed evidence—and this evidence was delivered, not destroyed).

The immigration lawyer Formica dispute was decided without the witnesses the court said it needed—not an adversarially tested lie. Mr. Khan's position—never tested—was that the advice came from Attorney Charnin of Formica's office. (A-252.) The court said it might need to "make arrangements for Attorney Charnin to be here" and to hear from Attorney Pattis. (A-392:18–24.) It heard from neither; it dismissed the case instead. A "finding" the court said required testimony never taken cannot be clear and convincing evidence, *Wolters Kluwer*, 564 F.3d at 114—and the episode was collateral and predates the January 29 denial. The statement appeared in a motion in which Mr. Khan, "fear[ing]" that resubmitting his own transcripts to DHS "would run afoul of the June 19 Order," asked leave before acting. (SPA-25.) Seeking permission first is the conduct of a litigant laboring to comply.

Two residual "dishonesty" items remain; neither can bear weight. First, the footnoted finding that Mr. Khan's March 2024 statements were

"dishonest" because recordings assertedly showed he "understood prior to Christmas 2023, that he could not reveal Jane Doe's name." (SPA-5 n.7.) The "understanding" concerned an order the court construed, that same morning, not to prohibit the disclosure; believing the "spirit" offended (SPA-4) is consistent with misjudging the text—and the finding rests on sealed excerpts never tested by examination, in a ruling that denied dismissal and sent this credibility material to trial. (SPA-70–71.) Second, Mr. Khan's 2018 statement to the UWC panel that he was not recording it—made by a student to a private panel a year before this lawsuit. No authority permits ending civil claims as a "sanction" for pre-litigation conduct toward a private tribunal—least of all where the statement's fruit is the tribunal's only accurate record. The court resolved whether Attorney Pattis knew against Mr. Khan (SPA-27 n.15) without ever asking him. (A-392:17–24.)

### III. Every governing factor condemns this dismissal—and the opinion weighed none of them.

Under Rule 41(b), a court must weigh duration, notice, prejudice, the balance between docket management and the right to be heard, and lesser sanctions' adequacy—none dispositive. *Spencer v. Doe*, 139 F.3d 107, 112–13 (2d Cir. 1998). Rule 37's factors are kindred: willfulness, efficacy of lesser sanctions, duration, and warning. *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal*, 555 F.3d at 302). Where the opinion does not disclose its analysis, this Court performs it. *Baptiste*, 768 F.3d at 216–19. The opinion recites the factors (SPA-10, SPA-29–30) and

weighs none: one sentence asserts there "is no question" of willfulness, warnings, and duration. (SPA-30.) Applied, they come out decisively against dismissal.

### A. Duration: nothing here resembles the canon of sustained defiance.

Cases affirming Rule 41 dismissals share a profile: sustained defiance after unmistakable warnings, or corruption of the merits. The court's own lead case affirmed where the plaintiff "failed to provide any meaningful discovery concerning a core trial issue despite three clear court orders, which included two warnings that dismissal would follow." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176–77 (2d Cir. 1988). *Agiwal*: months of defiance after repeated warnings. 555 F.3d at 300–03. *Global NAPs*: years of violations plus forensic destruction. 624 F.3d at 147–49. The string citations at the opinion's close fit the same profile. (SPA-30 (citing, *e.g.*, *Manigaulte v. C.W. Post Campus of Long Island Univ.*, 533 F. App'x 4, 6–7 (2d Cir. 2013) (summary order); *Shomo v. Eckert*, 345 F.R.D. 570, 580–81 (W.D.N.Y. 2024)).)

Here there is *no violated discovery order at all*; a speech order wrongly applied while under unresolved constitutional challenge; and a plaintiff who —as counsel represented without contradiction—turned over his personal devices, his social-media credentials, and "troves of damaging information." (A-383:23–385:18.)

This is not the extreme case; it is not within sight of it.

## B. Notice: the warnings concerned the speech, not the discovery conduct.

The warnings collected in the dismissal order all but one concerned Doe's identity; none concerned the interrogatory, the privilege log, or the form of production. (SPA-29–30.) As to the never-warned predicates, the factor is absent. *Cf. Bobal*, 916 F.2d at 764. The one warning beyond the naming conduct—the August 2024 protective-order acknowledgment—concerned dissemination of *designated discovery material*, never found to have occurred. More fundamentally, notice that dismissal is *possible* does not substitute for the findings that make dismissal *lawful*. *See Mitchell*, 708 F.3d at 466–69 (vacating despite willful, warned, repeated violations and a prior sanction).

## C. Prejudice: speculation layered on cured harms.

Doe's counsel: "We don't know what else is out there." (A-338:16–18.) The order adopts it: "As Defendants rightly assert—they do not know what they do not know." (SPA-29.) A rationale that fits every contested discovery dispute is not a finding; prejudice weakens as delay is explained. *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). The record rebuts it: defendants hold the texts, the recording, the transcript, the other-accusation documents; the derailed depositions were noticed once (A-326:3–4); the extension was one he "had been asking . . . all along" (A-325:2–5); the final six months were the court's own sua sponte stay (A-379:3–5); and years

46

of the case's age reflect the certified-question appeal he won. The cited page contains only Yale's counsel's narrower worry about "the documents that are still in the privilege log" (A-380:17–19)—the very subject of the proposed "do-over." (A-381:6–23.)

### D. The balance of interests: exceptional claims against defendants who stopped defending.

On the other side of the scale sat claims of exceptional gravity, twice preserved on appeal: a unanimous state supreme court's condemnation of the process that expelled him, and this Court's holding that his malice allegations suffice. Defendants had lost the immunity war in two appellate courts; produced 400 pages in four years while demanding forensic totality; and from the mandate forward litigated to end the case, not defend it—three dismissal motions in twenty-six months, no motion to compel on the interrogatory now called case-dispositive. (A-381:1–382:7.) Dismissal did for them what the adversary process would not. "There must be compelling evidence of an extreme effect on court congestion" before the right to be heard yields. *Lucas v. Miles*, 84 F.3d 532, 535–36 (2d Cir. 1996). The "strong preference for resolving disputes on the merits," *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362 (2d Cir. 2023), exists for such cases. The court shared the aspiration (A-395:2–5)—and forfeiture is what the law refuses without findings, factors, and lesser-sanctions analysis.

47

### E. Lesser sanctions: one sentence, nothing analyzed.

Mr. Khan's position is unqualified: no sanction of any kind was warranted, because no predicate survives—no order was violated, and the "findings" issued from a process that cannot carry them. *See supra* Points I–II; *infra* Point IV. He did not bear the burden below of nominating his own punishment, and he nominates none here. This factor asks not whether Mr. Khan deserved some lesser penalty, but whether the court did the work of genuine consideration before ending the case.

It did not. The opinion devoted one sentence to the question. (SPA-30.) At the hearing, no prospective alternative was proposed or analyzed by anyone. The court said of the privilege issue, "maybe I figure out what to do about it. But it's not the only thing we're talking about" (A-342:21–23)—aggregation substituting for analysis—and, of the whole, that it did not "know what the answer is." (A-394:19–20.)

Nor can the warnings history be recast as lesser sanctions administered and failed. The January 2025 ruling forecloses the relabeling: of the March 2024 episode, "no sanction was imposed" (SPA-70); of alternatives, the court was "without sufficient information to assess" them (SPA-71); and the cross-examination remedy was, in its words, "[w]hether considered a 'sanction' or simply a pre-trial ruling." (*Id.*) Warnings belong to notice; lesser-sanction adequacy is a separate inquiry—conflating them reads the fifth factor out of the test. *Spencer*, 139 F.3d at 112–13. Even a lesser sanction imposed—and flouted—does not excuse the analysis: *Mitchell* vacated although a $500

48

sanction had failed, warnings had issued, and the violations were willful, because this Court could not tell "whether these alternatives were ever considered or the grounds on which they were rejected." 708 F.3d at 466–69. And *West* reversed an express nothing-less-would-do finding: "combined alternative sanctions" would "fully protect" the movants. 167 F.3d at 779–80.

To the extent anything here was sanctionable—nothing was—the record had already built the ladder the opinion never climbed. If the answer was deficient, the Rules supplied the skipped sequence: motion, order, then consequences. If the privilege log troubled the court, Doe's counsel named the remedy: "a do-over to challenge privilege logs." (A-381:6–23.) If the production was sanctionable, this Court prices that in re-production and shifted review costs, *Klipsch*, 880 F.3d at 623; if the recording's timing was sanctionable, *West* makes fees and preclusion the measure even for *destroyed* evidence—and this evidence was delivered. For the speech, the court had prescribed its own remedy fourteen months earlier—cross-examination, pronounced only more "persuasive" at the final hearing (A-394:8–17)— while the pseudonym, "reduce[d]" in protective force by the public transcript (SPA-70–71), remained open through the undecided objections. Mr. Khan needed none of these—he violated no order. But the court priced no alternative because it weighed none.

49

**IV. The dismissal is punishment untethered to the merits—imposed without the findings or process due.**

> **A. Due process permits merits-terminating sanctions only on a merits presumption—not as punishment.**

This constitutional issue is more than a century old. *Hovey v. Elliott* holds that striking a party's case as punishment denies due process: such power converts the court "into an instrument of wrong and oppression." 167 U.S. 409, 413–14 (1897). *Hammond Packing* permits terminating sanctions on one theory only: "the presumption that the refusal to produce evidence . . . was but an admission of the want of merit in the asserted defense." 212 U.S. 322, 350–51 (1909). *Insurance Corp. of Ireland* distills it: the sanction must be "just" and "specifically related to the particular 'claim'" at issue; "[d]ue process is violated only if the behavior of the defendant will not support the *Hammond Packing* presumption." 456 U.S. 694, 705–07 (1982). This Court's formulation is the same: "the most drastic sanctions may not be imposed as 'mere penalties.'" *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

Dismissal is unconstitutional for the simplest reason: nothing was hidden. The interrogatory's omitted accusations sit in defendants' files—they came from them. The Roe texts are produced. The recording and its transcript are produced. Whatever "want of merit" inference concealment once supported dissolved when the concealment ended, before any trial. That is the presumption's logic: in *Ins. Corp. of Ireland* itself, the sanction

50

"would not be applied" if the party produced the discovery. 456 U.S. at 708. Where production fills the void, the presumption never arises—even after a willful order violation, *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1342–43 (9th Cir. 1985)—and a deception "wholly unrelated to the matters in controversy" supports "no legitimate inference regarding the merits." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982). Nonproduction "go[es] to the adequacy of . . . proof," answered by unfavorable inferences at trial. *Societe Internationale*, 357 U.S. at 212–13.

What the dismissal actually rests on is character—a judgment that Mr. Khan "simply cannot be trusted" (SPA-13)—and the alleged indirect naming of Doe—which supports no inference about whether Yale discriminated or Doe defamed. The opinion is a character analysis, not a sanctions analysis: it quotes Mr. Khan's most inflammatory private messages at length, and never weighs a factor, prices a lesser sanction, or connects a predicate to a claim. Defendants did purposefully what *Seattle Times* warned of incidentally, 467 U.S. at 34–35: they harvested intimate material from a court-compelled production—the production they brand as misconduct—and published it to make the plaintiff a character rather than a litigant. This Court reverses that move: "[t]he rules of discovery were not designed to encourage procedural gamesmanship," and character-propensity material carrying a "substantial danger of jury bias" imposes "a duty to prevent exploitation of this prejudice." *Outley*, 837 F.2d at 590, 592 (quoting *Raysor*, 768 F.2d at 40).

51

The court did say that Mr. Khan "will withhold damaging information in discovery so as to increase the likelihood of his success on the merits." (SPA-28.) But a propensity prediction is not the *Hammond* presumption; trials exist, with compulsory process and cross-examination, because litigants cannot be *trusted*. The claims extinguished were not his character: they were whether a proceeding a unanimous state supreme court found five ways deficient was the product of gender bias and broken promises, and whether an accusation the State could not prove was made with malice. Yale pleaded this same conduct as an unclean-hands defense. (SPA-3 (citing A-112).) Defendants chose trial as the venue where the conduct would matter; the dismissal awarded them judgment on their own defense, without proof.

Appellees may answer with "deterrence" and *Koehl v. Bernstein*, 740 F.3d 860 (2d Cir. 2014) (per curiam) (pro se suit dismissed for persistent obscene filings aimed at the magistrate judge). But *National Hockey League* deployed deterrence atop findings of "flagrant bad faith" after "crucial" interrogatories went unanswered for seventeen months despite orders—the *Hammond* paradigm. 427 U.S. 639, 640–43 (1976) (per curiam). *Koehl* was in-forum abuse of the adjudicative process. No decision of this Court has ever sustained dismissal of an action as punishment for extrajudicial expression and discovery disputes; this would be the first, on invalid predicates. Even were the presumption not a prerequisite, the judgment fails the same cases' narrower commands: claim-specific tailoring and source-specific findings. *See infra* Points IV.D, V.

52

**B. The sanction bears every mark of punishment—and none of its safeguards.**

The dismissal is retrospective, unpurgeable, non-compensatory, and coercive of nothing: the classic marks of punishment. *See Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129–30 (2d Cir. 1998) (punitive sanctions require "the procedural protections appropriate to a criminal case"); *Int'l Union, UMW v. Bagwell*, 512 U.S. 821, 833–34 (1994); *Goodyear*, 581 U.S. at 107–09. At minimum they heighten the findings burden. The process ran the other way: the fully briefed standards never engaged at the hearing; "the evidence is pretty compelling that he lied" announced before testimony (A-328:14–15); the accused never examined by the movants, his explanation cut off (A-372:14–16); a promised further inquiry—Attorney Pattis, Attorney Charnin—never held. (A-392:18–24.) The burden inverted: the court faulted the accused for producing no evidence (A-298:19–21; SPA-12), though the movants bore the clear-and-convincing burden. *Yukos*, 977 F.3d at 235. An opposition to an unproven motion need attach nothing.

**C. The court abandoned its own announced standard without notice.**

Due process requires "specific notice of the conduct alleged to be sanctionable *and the standard by which that conduct will be assessed*." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997) (emphasis added)—a requirement the dismissal order recites. (SPA-9–10.) A reasoned opinion

53

told Mr. Khan his conduct would be assessed as trial evidence—"an appropriate subject for his cross-examination"—with dismissal a "last resort" and prejudice "reduce[d]" by the public record. (SPA-70–71.) Fourteen months later the same categories of conduct, plus order-less discovery disputes, were assessed under an unannounced standard of terminal aggregation. Interlocutory rulings may be revisited only for "'cogent' and 'compelling' reasons," *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002); the dismissal identifies none: the transcript remained public, the remedy remained available, and the "new" conduct violated no order and named no one. The February reposts drew the court's sharpest phrase—"so in your face" (A-300:11–16)—but stated no name.

Nor was the reversal a response to newly discovered deception. The deficiency letter behind the interrogatory charge was dated August 6, 2024 (A-337:8–15); defendants held it—never supplementing the pending dismissal motions, never moving to compel—through the January denial and months after. The recording had been disclosed on the July 1, 2024 privilege log (A-363:22–364:10), and the court-supervised transcript process was in place before the January ruling. (SPA-54.) The Formica hearing occurred in fall 2024. (SPA-25–26.) The finding that his March 2024 statements "were dishonest" was made in July 2024. (SPA-5 n.7.) The court that chose cross-examination over dismissal in January 2025 knew nearly everything the March 2026 opinion recites; what changed was not the record

54

but the movants' decision to deploy it. A banked grievance is not a reason "cogent" or "compelling."

### D. The required findings were never made.

Inherent-power sanctions require "clear evidence" that conduct was "entirely without color" and "motivated by improper purposes," with bad faith found at "a high degree of specificity." *Wolters Kluwer*, 564 F.3d at 114; *Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113–14 (2d Cir. 2017); *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286 (2d Cir. 2021) ("[c]lear and convincing evidence of bad faith is a prerequisite"). The opinion recites the standard once (SPA-9) and never applies it: no predicate-specific bad-faith finding appears; as to the largest new predicate the court declined to find improper intent (SPA-27); and the whole rests on predicates weighted "to varying degrees" (*id.*)—unquantified and unseverable. The two accusations dropped after his sworn denials (the medical releases; Dr. Favorite) prove predicate-specific adjudication was possible—and favorable to him where performed. "[W]e cannot uphold an exercise of inherent authority based on findings the district court never made." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 41 (2d Cir. 1995).

## V. At minimum, the judgment cannot stand as to scope—and any remand should be reassigned.

### A. Partial invalidity requires vacatur.

The court relied on its predicates "to varying degrees" without finding any independently sufficient. If any material predicate falls—and each fell above—the aggregate cannot stand unless this Court can say the district court "would have imposed the same [sanction] absent reliance on the invalid factors." *Cf. Koon v. United States*, 518 U.S. 81, 113 (1996); *Sakon*, 119 F.3d at 113–17; *Milltex*, 55 F.3d at 41. No such confidence is possible: the escalation narrative begins with the speech predicates, nearly every warning concerned them, and the lesser-sanctions analysis is one sentence.

### B. The Yale claims cannot be extinguished by Doe-related conduct.

Terminating sanctions must be "specifically related to the particular 'claim' which was at issue." *Ins. Corp. of Ireland*, 456 U.S. at 707. The rule is nexus and findings, not innocence. This Court reversed sanctions against a co-venturer—its conduct "deplorably obstructive"—because no order ran to it. *Daval Steel*, 951 F.2d at 1364–65. The First Circuit vacated dismissal as to a co-plaintiff—"[q]uite possibly" believed complicit—for want of "an express finding that she personally engaged in or knowingly abetted the fraud." *Hull v. Municipality of San Juan*, 356 F.3d 98, 102–04 (1st Cir. 2004). The Third Circuit vacated a sanction lacking a "nexus . . . between the sanction imposed and the particular claim[s]." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568,

56

581–82 (3d Cir. 2018). This Court polices the same fit within one case. *Shcherbakovskiy*, 490 F.3d at 140. "[B]ad faith is personal"; it "may not automatically be visited" on others. *Wolters Kluwer*, 564 F.3d at 114.

The claims against Yale and its officials concern Mr. Khan's expulsion; the conduct that drove this dismissal—the escalation narrative, and every warning but one—concerned Doe's pseudonymity, and the interrogatory was Doe's. Yale propounded no violated demand, obtained no order, compelled nothing, and holds every allegedly withheld document, most from its own files. Yale's asserted injuries—reviewing an over-inclusive production; memories aging during an appeal he won and a stay entered sua sponte—are the ordinary currency of fee-shifting and case management. Extinguishing the Yale claims to protect Doe's pseudonym inverts the required fit between wrong and remedy.

### C. Any remand should go to a different district judge.

Should the Court vacate, Mr. Khan respectfully requests remand to a different district judge—not as criticism, but under the settled standard: whether "the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous," and whether "reassignment is advisable to preserve the appearance of justice." *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc). Reassignment requires no finding of bias. *Id.*; *Ligon v. City of New York*, 736 F.3d 118, 124, 128–29 (2d Cir. 2013). On remand, the court would adjudicate, for the first time,

objections to an order it has already enforced with a final judgment—a posture warranting a fresh judicial eye. *Cf. Shcherbakovskiy*, 490 F.3d at 142; *Outley*, 837 F.2d at 595 (remanding "to be tried before a different district judge").

## CONCLUSION

The judgment should be reversed and the case remanded for adjudication of Mr. Khan's long-pending Rule 72(a) objections and for trial. In the alternative, the judgment should be vacated and the case remanded— before a different district judge—with instructions to decide the objections and to conduct any renewed sanctions proceedings under the *Spencer* factors, with predicate-specific clear-and-convincing findings and genuine consideration of lesser sanctions. At minimum, the judgment should be vacated as to the claims against the Yale defendants.

The district court opened its opinion by observing that civil litigation "is not a game of blind man's bluff": discovery exists so that trial is "a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (SPA-1 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)).) By March 2026 the fullest practicable disclosure had happened: defendants hold every document, recording, and accusation, much from Mr. Khan's own production. The only thing missing was the fair contest—and dismissal guarantees it stays missing.

58

Twice, Mr. Khan has asked the courts of this country to judge him: a jury did, and acquitted him; this Court and a unanimous Connecticut Supreme Court sent his claims toward trial.

Twice, the defendants have found a way to be judged by no one: once through a proceeding with no oath, no cross-examination, and no record; and now through a judgment that ended a "discovery abuse" case before its plaintiff was ever deposed. (A-373:25–374:2.) He "ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The judgment should not stand.

Dated: New Haven, Connecticut
July 30, 2026

Respectfully submitted,

PLAINTIFF-APPELLANT
SAIFULLAH KHAN

/s/ Alexander T. Taubes
Alexander T. Taubes, Esq.
470 James Street, Suite 007
New Haven, CT 06513
Tel. (203) 909-0048
Email: alextt@gmail.com

*Attorney for Plaintiff-Appellant Saifullah Khan*

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 13,546 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Palatino font.

Dated: July 30, 2026

/s/ Alexander T. Taubes
Alexander T. Taubes, Esq.