# No. 26-830

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SAIFULLAH KHAN,

*Plaintiff-Appellant,*

*v.*

## YALE UNIVERSITY,

PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN,
JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN,
LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER,
SARAH DEMERS, JANE DOE, CAROLE GOLDBERG,
AND UNKNOWN PERSONS,

*Defendants-Appellees.*

*ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT*

(*Dooley, J.*)*, No. 3:19-cv-1966 (KAD)*

## Appendix

**Volume I of II — Pages A-1 to A-267**

Alexander T. Taubes, Esq.
LAW OFFICES OF ALEXANDER T. TAUBES, PLLC
470 James Street, Suite 007
New Haven, CT 06513
Tel. 203-909-0048
Email: alextt@gmail.com

# TABLE OF CONTENTS

## VOLUME I OF II (A-1 – A-267)

District Court Docket Sheet, No. 3:19-cv-1966 (KAD)........................................................A-1–A-60

Complaint, Dec. 13, 2019 (ECF No. 1)...............................................................................A-61–A-88

Motion to Litigate Against Jane Doe Under a Pseudonym, Dec. 13, 2019 (ECF No. 2)A-89–A-99

Mandate of the United States Court of Appeals for the Second Circuit, No. 21-95, Nov. 15, 2023 (ECF No. 65)................................................................................................................A-100

Motion of Defendant Jane Doe for Protective Order (redacted), Mar. 4, 2024 (ECF No. 81) .................................................................................................................... A-101–A-102

Motion to Vacate Order Treating Jane Doe Pseudonymously, Mar. 15, 2024 (ECF No. 89) .................................................................................................................... A-103–A-110

Sealed Motion of Defendant Jane Doe to Continue Anonymity, Apr. 5, 2024 (ECF No. 103) — see Note 2....................................................................................................................A-111

Amended Answer and Affirmative Defenses of Yale University, Apr. 12, 2024 (ECF No. 107) .................................................................................................................... A-112–A-123

Plaintiff's Local Rule 72.2 Objection to ECF No. 119, July 3, 2024 (ECF No. 152)....A-124–A-136

Plaintiff's Supplement to Rule 72.2 Objection, July 4, 2024 (ECF No. 154)...............A-137–A-143

Plaintiff's Objection to Second Emergency Motions to Dismiss (public cover), July 6, 2024 (ECF No. 157 — see Note 5)...........................................................................................A-144–A-145

Plaintiff's Memorandum in Opposition to Second Emergency Motions to Dismiss (public redacted refiling), Aug. 5, 2025 (ECF No. 383; refiling of sealed ECF No. 157-1 — see Note 5)....................................................................................................................A-146–A-171

Plaintiff's Emergency Supplement to Rule 72.2 Objection, Nov. 18, 2024 (ECF No. 226) .................................................................................................................... A-172–A-201

Defendants' Third Motion for Judgment of Dismissal (public version), May 20, 2025 (ECF No. 332)....................................................................................................................A-202–A-238

Sealed Motion of Defendant Jane Doe for Judgment of Dismissal, May 20, 2025 (ECF No. 333) — see Note 2....................................................................................................................A-239

Plaintiff's Response to the Third Motion for Judgment of Dismissal (public redacted refiling), June 27, 2025 (ECF No. 368; refiling of ECF No. 364 — see Note 4)...............A-240–A-262

Motion of Defendant Jane Doe for Leave to File Supplemental Brief, July 10, 2025 (ECF No. 371) .................................................................................................................... A-263–A-265

Minute Entry, Evidentiary Hearing, Dec. 22, 2025 (ECF No. 395)........................................A-266

Notice of Appeal, Apr. 1, 2026 (ECF No. 401)..........................................................................A-267

## VOLUME II OF II (A-268 – A-397)

Transcript of Motion Hearing (Dooley, J.), hearing held Mar. 18, 2024 (ECF No. 94) .................................................................................................................... A-268–A-293

Transcript of Evidentiary Hearing (Dooley, J.), hearing held Dec. 22, 2025 (ECF No. 397) .................................................................................................................... A-294–A-397

i

**SPECIAL APPENDIX (separately filed pursuant to Local Rule 32.1.1(c))**

Memorandum of Decision granting the Third Motion for Judgment of Dismissal (Dooley, J.), Mar. 27, 2026 (ECF No. 398) — the decision appealed from.........................SPA-1–SPA-31

Judgment, Mar. 30, 2026 (ECF No. 400)...............................................................................SPA-32

Electronic Order granting Motion to Proceed Pseudonymously "without prejudice," Jan. 10, 2020 (ECF No. 12) — see Note 3......................................................................................SPA-33

Minute Entry and Bench Order (Dooley, J.), Mar. 18, 2024 (ECF No. 91)..........................SPA-34

Ruling and Order on Anonymity Motions (Garcia, M.J.), June 19, 2024 (ECF No. 119) ....................................................................................................................................SPA-35–SPA-50

Electronic Order re Official Transcript (Garcia, M.J.), Oct. 21, 2024 (ECF No. 216) — see Note 3 ....................................................................................................................................SPA-51

Order, In re Khan, No. 24-2794 (2d Cir. Nov. 15, 2024) (denying mandamus; certified copy) ....................................................................................................................................SPA-52

Electronic Order re Rule 72.2 Objections, Nov. 21, 2024 (ECF No. 232) — see Note 3......SPA-53

Electronic Order re Status Conference (Garcia, M.J.), Jan. 23, 2025 (ECF No. 262) — see Note 3 ....................................................................................................................................SPA-54–SPA-55

Memorandum of Decision denying Emergency Motions to Dismiss (Dooley, J.), Jan. 29, 2025 (ECF No. 265)..................................................................................................SPA-56–SPA-72

Electronic Order re June 16, 2025 Post, June 23, 2025 (ECF No. 354) — see Note 3...........SPA-73

Electronic Order denying Motions to Compel as Moot (Garcia, M.J.), Mar. 27, 2026 (ECF No. 399) — see Note 3..................................................................................................SPA-74

Relevant Constitutional, Statutory, and Rule Provisions: U.S. Const. amend. I; 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 72(a)..........................SPA-75–SPA-76

**Notes**

1. The contents of this Appendix conform to Fed. R. App. P. 30(a)(1) and Local Rule 30.1. Pursuant to Local Rule 32.1.1(c), the decision appealed from, the judgment, the principal orders under review, and the text of significant rules of law are reproduced in a separately filed Special Appendix, paginated SPA-1 through SPA-76.

2. Sealed documents. ECF Nos. 103 and 333 were filed under seal in the district court and are not reproduced in this public Appendix; each is represented by a captioned placeholder page, and the sealed entries appear on the docket sheet at A-1–A-60.

3. Docket-text orders. Certain orders of the district court were entered as text on the docket with no separately filed document. Each such order is reproduced verbatim from the official docket report on a captioned page in the Special Appendix.

4. ECF No. 368. The document at A-240–A-262 is the public redacted refiling (ECF No. 368) of Plaintiff's sealed Response (ECF No. 364); citations in the brief to ECF No. 364 refer to this document.

5. ECF No. 383. Plaintiff's memorandum in opposition to the second emergency dismissal motions was filed under seal as ECF No. 157-1 behind the public cover at A-144–A-145, and was refiled in redacted public form as ECF No. 383 (Aug. 5, 2025). The document at A-146–A-171 is that public version; citations in the brief to the memorandum refer to it.

APPEAL,CLOSED,EFILE,MEG,MOTREF,REFDIS,STAYED

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:19-cv-01966-KAD

Khan v. Yale University et al
Assigned to: Judge Kari A. Dooley
Referred to: Judge Maria E. Garcia
Demand: $110,000,000
Cause: 42:1981 Civil Rights

Date Filed: 12/13/2019
Date Terminated: 03/30/2026
Jury Demand: Plaintiff
Nature of Suit: 448 Civil Rights: Education
Jurisdiction: Federal Question

**Plaintiff**

**Saifullah Khan**

represented by **Kevin Murray Smith**
Pattis & Smith, LLC
383 Orange Street, First Floor
New Haven, CT 06511
203-393-3017
Fax: 203-393-9745
Email: kms@kevinsmithlaw.com
*TERMINATED: 07/12/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mario K. Cerame**
Aeton Law Partners
311 Centerpoint Drive
Middletown, CT 06457
860-724-2160
Fax: 860-724-2161
Email: mario@aetonlaw.com
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
Pattis & Paz, LLC
171 Orange Street
2nd Floor
New Haven, CT 06510
203-393-3017
Fax: 203-393-9745
Email: npattis@pattispazlaw.com
*TERMINATED: 07/12/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander T. Taubes**
Alexander T. Taubes
470 James Street
Suite 007
New Haven, CT 06513

**A-1**

203-909-0048
Email: alextt@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Yale University**                    represented by **Maria Laurato**
Carmody Torrance Sandak & Hennessey,
LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
203-784-3157
Email: mlaurato@carmodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick M. Noonan**
Carmody Torrance Sandak & Hennessey
LLP
Concept Park
741 Boston Post Road
Ste 306
Guilford, CT 06437
203-458-9168
Fax: 203-458-4424
Email: pnoonan@carmodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
Carmody Torrance Sendak & Hennessey,
LLP - WTBY
50 Leavenworth St., PO Box 1110
Waterbury, CT 06721-1110
203-573-1200
Email: gweller@carmodylaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Salovey**                    represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**A-2**

**Defendant**

**Jonathon Halloway**                    represented by **Patrick M. Noonan**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Giovanna T. Weller**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Maria Laurato**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Marvin Chun**                          represented by **Patrick M. Noonan**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Giovanna T. Weller**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Maria Laurato**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Joe Gordon**                           represented by **Patrick M. Noonan**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Giovanna T. Weller**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Maria Laurato**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**David Post**                           represented by **Patrick M. Noonan**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Giovanna T. Weller**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **Maria Laurato**

**A-3**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark Solomon**                                  represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ann Kuhlman**                                   represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lynn Cooley**                                   represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Paul Genecin**                                  represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)

**A-4**

*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Stephanie Spangler**                    represented by    **Patrick M. Noonan**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Giovanna T. Weller**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Maria Laurato**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Sarah Demers**                          represented by    **Patrick M. Noonan**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Giovanna T. Weller**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Maria Laurato**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Jane Doe**                              represented by    **Brendan Gooley**
                                                            Carlton Fields
                                                            One State Street
                                                            Ste 1800
                                                            Hartford, CT 06103
                                                            860-392-5036
                                                            Email: bgooley@carltonfields.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James M. Sconzo**
                                                            Carlton Fields, P.C.
                                                            One State Street
                                                            Suite 1800
                                                            Hartford, CT 06103
                                                            860-392-5022
                                                            Fax: 860-392-5058
                                                            Email: jsconzo@carltonfields.com

**A-5**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carole Goldberg**                                  represented by   **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Persons**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/13/2019 | 1 | COMPLAINT against All Defendants ( Filing fee $400 receipt number ACTDC-5590669.), filed by Saifullah Khan.(Pattis, Norman) (Entered: 12/13/2019) |
| 12/13/2019 |  | Request for Clerk to issue summons as to All Defendants. (Pattis, Norman) (Entered: 12/13/2019) |
| 12/13/2019 |  | Judge Alfred V. Covello added. (Walker, J.) (Entered: 12/13/2019) |
| 12/13/2019 | 2 | MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name by Saifullah Khan.Responses due by 1/3/2020 (Pattis, Norman) Modified on 1/13/2020 (Gould, K.). (Entered: 12/13/2019) |
| 12/13/2019 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 2/11/2020. Discovery due by 6/13/2020. Dispositive Motions due by 7/18/2020.<br>Signed by Clerk on 12/13/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/13/2019 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER.<br>Signed by Judge Alfred V. Covello on 12/13/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 5 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name filed by Saifullah Khan, 1 Complaint filed by Saifullah Khan, 4 Electronic Filing Order, and 3 Order on Pretrial Deadlines.<br>Signed by Clerk on 12/16/2019.(Bozek, M.) (Entered: 12/16/2019) |

**A-6**

| 12/16/2019 | 6 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Marvin Chun, Lynn Cooley, Sarah Demers, Jane Doe, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University* with answer to complaint due within *21* days. Attorney *Norman A. Pattis* *The Pattis Law Firm, LLC* *383 Orange St., First Floor* *New Haven, CT 06511*. (Bozek, M.) (Entered: 12/16/2019) |
|---|---|---|
| 12/16/2019 | 7 | MOTION for Permission to Litigate Claims Against Jane Doe using a Pseudonym in Place of her Actual Name - EXHIBIT by Saifullah Khan re 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Pattis, Norman) Modified on 12/18/2019 to change to motion event/relief (Bozek, M.). (Entered: 12/16/2019) |
| 12/18/2019 | 8 | WAIVER OF SERVICE Returned Executed as to Paul Genecin waiver sent on 12/18/2019, answer due 2/16/2020; David Post waiver sent on 12/18/2019, answer due 2/16/2020; Yale University waiver sent on 12/18/2019, answer due 2/16/2020; Sarah Demers waiver sent on 12/18/2019, answer due 2/16/2020; Joe Gordon waiver sent on 12/18/2019, answer due 2/16/2020; Peter Salovey waiver sent on 12/18/2019, answer due 2/16/2020; Ann Kuhlman waiver sent on 12/18/2019, answer due 2/16/2020; Stephanie Spangler waiver sent on 12/18/2019, answer due 2/16/2020; Carole Goldberg waiver sent on 12/18/2019, answer due 2/16/2020; Mark Solomon waiver sent on 12/18/2019, answer due 2/16/2020; Jonathon Halloway waiver sent on 12/18/2019, answer due 2/16/2020; Lynn Cooley waiver sent on 12/18/2019, answer due 2/16/2020; Marvin Chun waiver sent on 12/18/2019, answer due 2/16/2020 filed by Saifullah Khan. (Pattis, Norman) (Entered: 12/18/2019) |
| 01/02/2020 | 9 | Memorandum in Support re 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name , 7 MOTION to Proceed in Fictitious Name filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Noonan, Patrick) (Entered: 01/02/2020) |
| 01/03/2020 | 10 | NOTICE of Appearance by Patrick M. Noonan on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University (Noonan, Patrick) (Entered: 01/03/2020) |
| 01/08/2020 | 11 | ORDER OF TRANSFER. Case reassigned to Judge Kari A. Dooley for all further proceedings.<br>Signed by Judge Alfred V. Covello on 1/8/2020.(Bozek, M.) (Entered: 01/09/2020) |
| 01/10/2020 | 12 | ORDER granting 7 Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name without prejudice. Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action. Signed by Judge Kari A. Dooley on 1/10/2020. (Cahill, Leslie) (Entered: 01/10/2020) |
| 01/24/2020 | 13 | WAIVER OF SERVICE Returned Executed as to Jane Doe waiver sent on 1/9/2020, answer due 3/9/2020 filed by Saifullah Khan. (Pattis, Norman) (Entered: 01/24/2020) |

**A-7**

| 01/24/2020 | 14 | NOTICE of Appearance by James M. Sconzo on behalf of Jane Doe (Sconzo, James) (Entered: 01/24/2020) |
|---|---|---|
| 01/24/2020 | 15 | NOTICE of Appearance by Brendan Gooley on behalf of Jane Doe (Gooley, Brendan) (Entered: 01/24/2020) |
| 02/03/2020 | 16 | REPORT of Rule 26(f) Planning Meeting. (Noonan, Patrick) (Entered: 02/03/2020) |
| 02/05/2020 | 17 | Order on Pretrial Deadlines. The Court has reviewed the Parties' 16 Rule 26(f) Report. It is Approved, Adopted, and So Ordered, except that the Parties' Joint Trial Memorandum shall be filed in accordance with the deadlines and procedures set forth below.<br><br>Pursuant to Local Rule 16(b), the Court orders as follows: The Plaintiff shall move to amend the pleadings or move to join additional parties by **February 24, 2020.** The Defendants shall move to join additional parties by **February 24, 2020** and shall respond to the complaint by **March 24, 2020.** Discovery shall be completed by **February 26, 2021.** Dispositive motions, if any (see Local Rule 56(c)), shall be filed by **March 30, 2021.** The Joint Trial Memorandum shall comport with this Court's standing order, which will be separately docketed. The date for filing the Joint Trial Memorandum required by this Court's standing order shall be set by the Court after the close of discovery.<br><br>A telephonic status conference is scheduled for **March 5, 2021 at 10:00 A.M.**<br><br>Signed by Judge Kari A. Dooley on 2/5/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | | Set Deadlines/Hearings:<br>Motion to Amend Pleadings due by 2/24/2020.<br>Discovery due by 2/26/2021.<br>Dispositive Motions due by 3/30/2021.<br>Telephonic Status Conference set for 3/5/2021 at 10:00 AM before Judge Kari A. Dooley.<br>Answer Deadlines Updated for All Defendants. Responsive pleading due 3/24/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | 18 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Status Conference set for 3/5/2021 at 10:00 AM before Judge Kari A. Dooley. Conference Line: (888) 278-0296; Access Code: 80-77-899. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | 19 | STANDING ORDER ON JOINT TRIAL MEMORANDUM attached.<br>Signed by Judge Kari A. Dooley on 2/5/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 03/04/2020 | 20 | NOTICE of Appearance by Kevin Murray Smith on behalf of Saifullah Khan (Smith, Kevin) (Entered: 03/04/2020) |
| 03/18/2020 | 21 | Consent MOTION for Extension of Time until April 7, 2020 to Respond to Plaintiff's Complaint by Jane Doe. (Gooley, Brendan) (Entered: 03/18/2020) |
| 03/18/2020 | 22 | ORDER granting 21 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 3/18/2020. (Cahill, Leslie) (Entered: 03/18/2020) |
| 03/18/2020 | | Reset Answer Deadlines for all Defendants: Responsive Pleading due 4/7/2020 (Cahill, Leslie) (Entered: 03/18/2020) |
| 04/03/2020 | 23 | Second MOTION for Extension of Time until April 28, 2020 to Respond to Plaintiff's Complaint by Jane Doe. (Gooley, Brendan) (Entered: 04/03/2020) |

**A-8**

| 04/06/2020 | 24 | ORDER granting 23 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 4/6/2020. (Cahill, Leslie) (Entered: 04/06/2020) |
|---|---|---|
| 04/06/2020 | | Reset Answer Deadlines for all Defendants: Responsive Pleading due 4/28/2020 (Cahill, Leslie) (Entered: 04/06/2020) |
| 04/24/2020 | 25 | ANSWER to 1 Complaint by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University.(Noonan, Patrick) (Entered: 04/24/2020) |
| 04/28/2020 | 26 | MOTION to Dismiss by Jane Doe.Responses due by 5/19/2020 (Sconzo, James) (Entered: 04/28/2020) |
| 04/28/2020 | 27 | Memorandum in Support re 26 MOTION to Dismiss filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Affidavit Declaration of Brendan Gooley)(Sconzo, James) (Entered: 04/28/2020) |
| 05/12/2020 | 28 | First MOTION for Extension of Time to File Response/Reply *Unopposed* as to 26 MOTION to Dismiss until June 2, 2020 by Saifullah Khan. (Pattis, Norman) (Entered: 05/12/2020) |
| 05/12/2020 | 29 | ORDER granting 28 Motion for Extension of Time to File Response/Reply. Plaintiff's response is due on or before 6/2/2020. Signed by Judge Kari A. Dooley on 5/12/2020. (Cahill, Leslie) (Entered: 05/12/2020) |
| 05/12/2020 | 30 | Reset Deadline as to 26 MOTION to Dismiss . Response due by 6/2/2020. (Gould, K.) (Entered: 05/13/2020) |
| 06/02/2020 | 31 | Memorandum in Opposition *To Jane Doe's* re 26 MOTION to Dismiss filed by Saifullah Khan. (Pattis, Norman) (Entered: 06/02/2020) |
| 06/11/2020 | 32 | MOTION for Extension of Time until June 23, 2020 to file a Reply Memorandum of Law in Further Support of Motion to Dismiss by Jane Doe. (Gooley, Brendan) (Entered: 06/11/2020) |
| 06/12/2020 | 33 | ORDER granting 32 Motion for Extension of Time. Defendant's reply brief is due on or before June 23, 2020. Signed by Judge Kari A. Dooley on 6/12/2020. (Cahill, Leslie) (Entered: 06/12/2020) |
| 06/22/2020 | 34 | MOTION for Extension of Time until June 30, 2020 to file a Reply Memorandum of Law in Further Support of Motion to Dismiss by Jane Doe. (Gooley, Brendan) (Entered: 06/22/2020) |
| 06/22/2020 | 35 | ORDER granting 34 Motion for Extension of Time. Defendant's reply brief is due on or before June 30, 2020. Signed by Judge Kari A. Dooley on 6/22/2020. (Cahill, Leslie) (Entered: 06/22/2020) |
| 06/30/2020 | 36 | REPLY to Response to 26 MOTION to Dismiss filed by Jane Doe. (Sconzo, James) (Entered: 06/30/2020) |
| 10/07/2020 | 37 | MOTION for Extension of Time until 11/06/20 Discovery by Marvin Chun, Lynn Cooley, Sarah Demers, Jane Doe, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 10/07/2020) |
| 10/08/2020 | 38 | ORDER granting on consent 37 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 10/8/2020. (Cahill, Leslie) (Entered: 10/08/2020) |

**A-9**

| 12/23/2020 | 39 | Joint MOTION for Extension of Time -- Modification of the Scheduling Order by Jane Doe. (Sconzo, James) (Entered: 12/23/2020) |
|---|---|---|
| 01/07/2021 | 40 | ORDER granting 26 Motion to Dismiss, for the reasons stated in the attached Memorandum of Decision. Signed by Judge Kari A. Dooley on 1/7/2021. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/07/2021 | 41 | ORDER. The parties shall appear for a telephonic scheduling conference to address their joint 39 motion to modify the Scheduling Order on 1/21/2021 at 10:00 A.M. Signed by Judge Kari A. Dooley on 1/7/2021. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/07/2021 | 42 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Scheduling Conference set for 1/21/2021 at 10:00 AM before Judge Kari A. Dooley. Conference Line: (888) 278-0296; Access Code: 80-77-899. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/14/2021 | 43 | NOTICE OF APPEAL as to 40 Order on Motion to Dismiss by Saifullah Khan. Filing fee $ 505, receipt number ACTDC-6328789. (Pattis, Norman) (Entered: 01/14/2021) |
| 01/15/2021 | 44 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 43 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Fanelle, N.) (Entered: 01/15/2021) |
| 01/21/2021 | 45 | Minute Entry for proceedings held before Judge Kari A. Dooley: Telephonic Scheduling Conference held on 1/21/2021. Total Time: 17 minutes(Court Reporter Tracy Gow.) (Gould, K.) (Entered: 01/22/2021) |
| 01/26/2021 | 46 | MOTION for Entry of Judgment under Rule 54(b) *in accordance with the Court's order in Dkt. 40* by Saifullah Khan. (Pattis, Norman) (Entered: 01/26/2021) |
| 02/05/2021 | 47 | ORDER granting 46 Motion for Entry of Judgment under Rule 54(b) and staying proceedings pending resolution of the Plaintiff's appeal. See attached Order. The Clerk of the Court is directed to enter a Judgment, pursuant to Rule 54(b), in favor of the Defendant Jane Doe. Signed by Judge Kari A. Dooley on 2/5/2021. (Cahill, Leslie) (Entered: 02/05/2021) |
| 02/05/2021 | 48 | ORDER finding as moot 39 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 2/5/2021. (Cahill, Leslie) (Entered: 02/05/2021) |
| 02/09/2021 | 49 | PARTIAL JUDGMENT entered in favor of Jane Doe against Saifullah Khan. For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms Signed by Clerk on 2/09/2021.(Gould, K.) (Entered: 02/09/2021) |
| 02/10/2021 | 50 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 43 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Fanelle, N.) (Entered: 02/10/2021) |
| 02/16/2021 | 51 | ORDER. In light of the stay of the proceedings pending resolution of the Plaintiff's appeal, the telephonic status conference scheduled for March 5, 2021 at 10:00 A.M. is canceled. Signed by Judge Kari A. Dooley on 2/16/2021. (Cahill, Leslie) (Entered: 02/16/2021) |

**A-10**

| 09/01/2021 | 52 | Joint STATUS REPORT by Yale University. (Noonan, Patrick) (Entered: 09/01/2021) |
|---|---|---|
| 12/01/2021 | 53 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons. (Noonan, Patrick) (Entered: 12/01/2021) |
| 03/01/2022 | 54 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 03/01/2022) |
| 03/04/2022 | 55 | OPINION of USCA as to 43 Notice of Appeal filed by Saifullah Khan USCA Case Number 21-95. (Fanelle, N.) (Entered: 03/07/2022) |
| 03/11/2022 | 56 | Notice of Letter to Counsel, signed by Peter D. Keane, Assistant Clerk-Appellate of the State of Connecticut Supreme Appellate Court. (Freberg, B) (Entered: 03/11/2022) |
| 06/01/2022 | 57 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 06/01/2022) |
| 08/30/2022 | 58 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 08/30/2022) |
| 12/14/2022 | 59 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 12/14/2022) |
| 02/22/2023 | 60 | Joint STATUS REPORT by Saifullah Khan. (Smith, Kevin) (Entered: 02/22/2023) |
| 05/16/2023 | 61 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 05/16/2023) |
| 08/04/2023 | 62 | STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 08/04/2023) |
| 10/25/2023 | 63 | ORDER of USCA as to 43 Notice of Appeal filed by Saifullah Khan, USCA Case Number 21-95. (Fanelle, N.) (Entered: 10/31/2023) |
| 11/02/2023 | 64 | Joint STATUS REPORT by Jane Doe. (Gooley, Brendan) (Entered: 11/02/2023) |
| 11/15/2023 | 65 | MANDATE of USCA dated 11/15/2023, USDC Partial Judgment Affirmed in Part and Vacated in Part. Case is Remanded for further proceedings re: 43 Notice of Appeal filed by Saifullah Khan. (Attachments: # 1 Supporting Document)(Fanelle, N.) (Entered: 11/15/2023) |
| 11/16/2023 | 66 | ORDER. Per the parties' Status Report dated November 2, 2023 (ECF No. 64 ), the parties shall file an amended Rule 26(f) Report by December 1, 2023. Signed by Judge Kari A. Dooley on 11/16/2023. (Alquesta, Steven) (Entered: 11/16/2023) |
| 11/16/2023 | | Set Deadlines: Joint Status Report due by 12/1/2023. (Alquesta, Steven) (Entered: 11/16/2023) |
| 11/29/2023 | 67 | Joint REPORT of Rule 26(f) Planning Meeting. (Sconzo, James) (Entered: 11/29/2023) |
| 12/04/2023 | 68 | Order on Pretrial Deadlines. The Court has reviewed 67 , the parties' Rule 26(f) Report, and the parties held a Rule 16(b) Conference on November 14, 2023. The Rule 26(f) Report is Approved, Adopted, and So Ordered, except as set forth below.<br><br>Pursuant to Local Rule 16(b), the Court orders as follows: The Plaintiff shall move to amend the pleadings or move to join additional parties by **December 31, 2023**. The Defendants shall move to join additional parties by **January 31, 2024**. All discovery shall be concluded by **April 15, 2025**. Dispositive motions, if any (see Local Rule 56(c)), shall |

A-11

| | | |
|---|---|---|
| | | be filed by **June 15, 2025**. The Court will set a date for filing a joint trial memorandum after the close of discovery. The joint trial memorandum shall comport with this Court's standing order, which will be separately docketed.<br><br>Defendant Jane Doe's time constraints notwithstanding, the discovery deadline in this case is not likely to be further extended, absent unforeseen and extraordinary circumstances.<br><br>A telephonic status conference is scheduled for April 22, 2025 at 2:00 pm. A separate calendar shall be docketed.<br>Signed by Judge Kari A. Dooley on 12/4/2023. (Alquesta, Steven) (Entered: 12/04/2023) |
| 12/04/2023 | | Set Deadlines/Hearings:<br>Motion to Amend Pleadings due by 12/31/2023;<br>Answer Deadline Updated for All Defendants. Responsive pleading due 1/31/2024;<br>Discovery due by 4/15/2025;<br>Dispositive Motions due by 6/15/2025;<br>Status Conference set for 4/22/2025 02:00 PM before Judge Kari A. Dooley. Telephonic Conference Line: 888-278-0296; Access Code: 80-77-899. (Alquesta, Steven) (Entered: 12/04/2023) |
| 12/11/2023 | 69 | Amended REPORT of Rule 26(f) Planning Meeting. (Pattis, Norman) (Entered: 12/11/2023) |
| 12/11/2023 | 70 | Joint MOTION for Revision of the Rule 26(f) Report of Parties' Planning Meeting Order by Jane Doe. (Gooley, Brendan) (Entered: 12/11/2023) |
| 12/13/2023 | 71 | AMENDED SCHEDULING ORDER re 70 , Joint MOTION for Revision of the Rule 26(f) Report. Initial Disclosures shall be exchanged on **February 1, 2024**. To the extent that Plaintiff's written discovery requests seek material duplicative of the initial disclosures, Defendants may indicate as much in its responses and need not reproduce any such materials. Plaintiff shall be allowed until **February 8, 2024** to file motions to join additional parties and/or motions to amend the complaint. Defendants shall be allowed until **March 8, 2024** to file motions to join additional parties or to file a response to the operative complaint. Plaintiff's request for permission to notice 20 depositions is DENIED without prejudice. If, following written discovery, the Plaintiff is able to identify more than 10 individuals whose deposition he believes are appropriately noticed, he may renew his request. Defendants may renew any objection as well. All other deadlines previously set remain. Signed by Judge Kari A. Dooley on 12/13/2023. (Alquesta, Steven) Modified on 12/13/2023 (Gould, K.). (Entered: 12/13/2023) |
| 12/13/2023 | | Set Deadlines/Hearings:<br>Amended Pleadings due by 2/8/2024;<br>Answer Deadline Updated for All Defendants. Responsive pleading due 3/8/2024;<br>Discovery due by 4/15/2025;<br>Dispositive Motions due by 6/15/2025;<br>Status Conference set for 4/22/2025 02:00 PM before Judge Kari A. Dooley. Telephonic Conference Line: 888-278-0296; Access Code: 80-77-899. (Alquesta, Steven) (Entered: 12/13/2023) |
| 12/20/2023 | 72 | NOTICE of Appearance by Giovanna T. Weller on behalf of Yale University (Weller, Giovanna) (Entered: 12/20/2023) |
| 12/27/2023 | 73 | MOTION to Seal Emergency Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 12/27/2023) |

**A-12**

| 12/27/2023 | 74 | SEALED MOTION Emergency Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 12/27/2023) |
|---|---|---|
| 12/27/2023 | 75 | Sealed Document: Memorandum of Law In Support of Emergency Motion for Judgment of Dismissal by Jane Doe re 74 SEALED MOTION Emergency Motion for Judgment of Dismissal . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J) (Gooley, Brendan) (Entered: 12/27/2023) |
| 12/28/2023 | 76 | ORDER re 74 Emergency Motion for Judgment of Dismissal. The Court will not take up the 74 motion to dismiss on an emergency basis. Plaintiff's opposition to the motion is due on or before January 17, 2024. Signed by Judge Kari A. Dooley on 12/28/2023. (Alquesta, Steven) (Entered: 12/28/2023) |
| 01/16/2024 | 77 | Sealed Document: Mr. Khan's Objection to Emergency Motion for Judgment of Dismissal by Saifullah Khan . (Pattis, Norman) (Entered: 01/16/2024) |
| 01/30/2024 | 78 | MOTION to Seal Reply in Further Support of Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 01/30/2024) |
| 01/30/2024 | 79 | Sealed Document: Reply in Further Support of Motion for Judgment of Dismissal by Jane Doe . (Attachments: # 1 Exhibit K (Sealed), # 2 Exhibit L (Sealed), # 3 Exhibit M (Sealed))(Gooley, Brendan) (Entered: 01/30/2024) |
| 03/04/2024 | 80 | MOTION to Seal Memorandum of Law in Support of Motion for Protective Order by Jane Doe. (Gooley, Brendan) (Entered: 03/04/2024) |
| 03/04/2024 | 81 | MOTION for Protective Order *(Redacted)* by Jane Doe.Responses due by 3/25/2024 (Attachments: # 1 Memorandum in Support Redacted, # 2 Exhibit A, # 3 Exhibit B) (Gooley, Brendan) (Entered: 03/04/2024) |
| 03/04/2024 | 82 | SEALED MOTION *for a* Protective Order by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Gooley, Brendan) (Entered: 03/04/2024) |
| 03/05/2024 | 83 | Consent MOTION for Extension of Time until 30 days after Decision on Jane Doe's Motion for Judgment of Dismissal or 60 days from current deadline of 3.8.2024 by Jane Doe. (Gooley, Brendan) (Entered: 03/05/2024) |
| 03/06/2024 | 84 | SCHEDULING ORDER. Oral argument on 74 Defendant Doe's Motion for Judgment of Dismissal shall be heard on March 18, 2024, at 10:00 AM. Plaintiff shall personally appear at oral argument. The Court will also address Defendant Doe's 83 Motion for Extension of Time. A calendar entry with further details will be separately docketed. Signed by Judge Kari A. Dooley on 3/6/2024. (Alquesta, S) (Entered: 03/06/2024) |
| 03/06/2024 | 85 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Oral Argument on 74 Defendant Doe's Motion for Judgment of Dismissal set for March 18, 2024, at 10:00 AM in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Alquesta, S) (Entered: 03/06/2024) |
| 03/08/2024 | 86 | First MOTION to Amend/Correct 25 Answer to Complaint, *to Add Affirmative Defenses* by Yale University.Responses due by 3/29/2024 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Noonan, Patrick) (Entered: 03/08/2024) |
| 03/15/2024 | 87 | MOTION to Seal Proposed Sur-Reply and Exhibits by Jane Doe. (Gooley, Brendan) (Entered: 03/15/2024) |

**A-13**

| | | |
|---|---|---|
| 03/15/2024 | 88 | SEALED MOTION Motion for Sur-Reply and Exhibits by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit N, # 3 Exhibit O, # 4 Exhibit P, # 5 Exhibit Q)(Gooley, Brendan) (Entered: 03/15/2024) |
| 03/15/2024 | 89 | MOTION to Vacate *Order Treating Jane Doe Pesudonyously* by Saifullah Khan. (Pattis, Norman) (Entered: 03/15/2024) |
| 03/15/2024 | 90 | OBJECTION *to Jane Doe's Motion for a Protective Order* filed by Saifullah Khan. (Pattis, Norman) (Entered: 03/15/2024) |
| 03/18/2024 | 91 | Minute Entry. Proceedings held before Judge Kari A. Dooley: denying 74 Sealed Motion; Motion Hearing held on 3/18/2024 re 74 SEALED MOTION Emergency Motion for Judgment of Dismissal filed by Jane Doe. As ordered on the record, the Plaintiff shall not identify Jane Doe in any social media communication or elsewhere and he shall remove his posts that reference her identification. 38 minutes(Court Reporter Tracy Gow.) (Gould, K.) Modified docket text on 3/19/2024 (Pesta, J.). (Entered: 03/18/2024) |
| 03/18/2024 | 92 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for ruling on motions 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 81 MOTION for Protective Order *(Redacted)*. Signed by Judge Kari A. Dooley on 3/18/2024. Motion referred to Magistrate Judge Maria E. Garcia. (Gould, K.) (Entered: 03/18/2024) |
| 03/18/2024 | 93 | ORDER GRANTING 73 Motion to Seal; granting 78 Motion to Seal; granting 80 Motion to Seal; granting 73 MOTION to Seal Emergency Motion for Judgment of Dismissal, 78 MOTION to Seal Reply in Further Support of Motion for Judgment of Dismissal, 80 MOTION to Seal Memorandum of Law in Support of Motion for Protective Order, 87 MOTION to Seal Proposed Sur-Reply and Exhibits ; granting 87 Motion to Seal. The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern. GRANTING 83 Consent MOTION for Extension of Time until 30 days after Decision on Jane Doe's Motion for Judgment of Dismissal or 60 days from current deadline of 3.8.2024, Defendant's shall respond to Plaintiff's complaint on or before **May 7, 2024.** Signed by Judge Kari A. Dooley on 3/18/2024. (Gould, K.) (Entered: 03/18/2024) |
| 03/26/2024 | 94 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on March 18, 2024 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 4/16/2024. Redacted Transcript Deadline set for 4/26/2024. Release of Transcript Restriction set for 6/24/2024. (Gow, T.) (Entered: 03/26/2024) |
| 03/29/2024 | 95 | MOTION to Seal Reply in Further Support of Motion for Protective Order by Jane Doe. (Gooley, Brendan) (Entered: 03/29/2024) |
| 03/29/2024 | 96 | SEALED MOTION Reply in Further Support of Motion for a Protective Order by Jane Doe. (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 03/29/2024) |

**A-14**

| 04/01/2024 | 97 | MOTION for Extension of Time until October 15, 2024 Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/01/2024) |
| --- | --- | --- |
| 04/01/2024 | 98 | NOTICE of Appearance by Alexander T. Taubes on behalf of Saifullah Khan (Taubes, Alexander) (Entered: 04/01/2024) |
| 04/01/2024 | 99 | ORDER Denying without prejudice 97 Motion for Extension of Time for failure to comply with Local Rule 7(b). Signed by Judge Kari A. Dooley on 4/1/2024. (Alquesta, S) (Entered: 04/01/2024) |
| 04/05/2024 | 100 | MOTION for Extension of Time until 10/15/2024*(Motion to Modify Scheduling Order)* Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/05/2024) |
| 04/05/2024 | 101 | MOTION to Seal Motion to Continue Anonymity by Jane Doe. (Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 102 | Memorandum in Opposition re 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 04/05/2024) |
| 04/05/2024 | 103 | SEALED MOTION TO CONTINUE ANONYMITY by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 104 | OBJECTION re 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously* filed by Jane Doe. (Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 105 | MOTION for Extension of Time until 10/15/2025*REVISED (Motion to Modify Scheduling Order)* Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/05/2024) |
| 04/11/2024 | 106 | ORDER granting 86 Motion to Amend/Correct. Absent objection, Defendant Yale Universitys motion to amend its answer to add affirmative defenses is granted. Defendant Yale University shall docket the amended answer attached as Exhibit B therein, ECF No. 86-3, as a new docket entry. Signed by Judge Kari A. Dooley on 4/11/2024. (Alquesta, S) (Entered: 04/11/2024) |
| 04/12/2024 | 107 | *AMENDED* ANSWER to 1 Complaint with Affirmative Defenses by Yale University. (Weller, Giovanna) (Entered: 04/12/2024) |
| 04/12/2024 | 108 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for rulings on motions including 88 SEALED MOTION Motion for Sur-Reply and Exhibits, 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 96 SEALED MOTION Reply in Further Support of Motion for a Protective Order, 81 MOTION for Protective Order *(Redacted)*, 95 MOTION to Seal Reply in Further Support of Motion for Protective Order. Signed by Judge Kari A. Dooley on 4/12/2024. Motions referred to Magistrate Judge Maria E. Garcia.(Gould, K.) (Entered: 04/12/2024) |
| 05/07/2024 | 109 | ANSWER to 1 Complaint with Affirmative Defenses by Jane Doe.(Gooley, Brendan) (Entered: 05/07/2024) |
| 05/13/2024 | 110 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for case management and pretrial non dispositive matters including 88 SEALED MOTION Motion for Sur-Reply and Exhibits, 103 SEALED MOTION TO CONTINUE ANONYMITY, 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane* |

A-15

| | | |
|---|---|---|
| | | *Doe Pesudonyously*, [100] MOTION for Extension of Time until 10/15/2024*(Motion to Modify Scheduling Order)* Complete discovery & depositions, [105] MOTION for Extension of Time until 10/15/2025*REVISED (Motion to Modify Scheduling Order)* Complete discovery & depositions, [96] SEALED MOTION Reply in Further Support of Motion for a Protective Order, [81] MOTION for Protective Order *(Redacted)*, [95] MOTION to Seal Reply in Further Support of Motion for Protective Order, [101] MOTION to Seal Motion to Continue Anonymity.<br>Signed by Judge Kari A. Dooley on 5/13/2024. Motions and case management referred to Magistrate Judge Maria E. Garcia.(Gould, K.) (Entered: 05/13/2024) |
| 05/14/2024 | 111 | ORDER re: 110 Referral Order and for Chamber's Copies.<br>The parties will provide two (2) tabbed binders with copies of all of the referred motions and responses, printed from CMecf, within seven (7) days.<br>Signed by Judge Maria E. Garcia on 5/14/24. (Esposito, A.) (Entered: 05/14/2024) |
| 06/11/2024 | 112 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. In-person Status Conference re: all pending motions set for **6/20/2024 at 11:00 AM** in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Lee, E) (Entered: 06/11/2024) |
| 06/14/2024 | 113 | MOTION to Seal Motion for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/14/2024) |
| 06/14/2024 | 114 | SEALED MOTION for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe. (Attachments: # [1] Exhibit A, # [2] Exhibit 1, # [3] Exhibit 2, # [4] Exhibit 3)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/14/2024) |
| 06/18/2024 | 115 | ORDER finding as moot [88] Sealed Motion.<br>Jane Doe filed an Emergency Motion for Judgment of Dismissal under seal on December 27, 2023. *See* ECF No. [74] . On March 6, 2024once the motion was fully briefedJudge Dooley scheduled oral argument for March 18, 2024. *See* ECF No. 84. Three days before the hearing, Jane Doe filed a Motion to File a Sur-Reply, attaching exhibits under seal. While Judge Dooley did not rule on the motion itself, she and counsel discussed at length Plaintiff's social media posts, including those that were submitted as exhibits to the Sur-Reply. *See* ECF No. [94] at 5:425, 8:249:19, 14:419:5, 23:1325:20. Judge Dooley ultimately denied the motion on the grounds that Khan did not violate a court order, because no party had previously sought and obtained a protective order preventing public disclosure. *See id*. Because the topics raised in the Sur-Reply were discussed during the hearing and the Court denied the motion on independent grounds, the Court finds this motion to be MOOT.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/18/2024 | 116 | ORDER terminating [96] Sealed Motion.<br>Jane Doe's counsel moved to seal her Reply in Further Support of Motion for a Protective Order at ECF No. [95] but then filed the Reply as a Sealed Motion rather than filing the Reply under seal (the latter of which is permitted by Local Rule 5(e)4). Accordingly, the Court terminates the motion and construes it as a Reply.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/18/2024 | 117 | ORDER granting [95] Motion to Seal Reply in Further Support of Motion for Protective Order by Jane Doe; granting [101] Motion to Seal Motion to Continue Anonymity by Jane Doe; and granting [113] Motion to Seal Motion for Sur-Reply in Further Support of Motion for a Prosective Order; for the same reasons stated in Judge Dooley's previous ruling on motions to seal, at ECF No. 93 : "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further |

**A-16**

| | | finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
|---|---|---|
| 06/18/2024 | 118 | ORDER granting 114 Sealed Motion for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe for good cause shown. *See* D. Conn. L. Civ. R. 7(d) ("No sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause.") Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/19/2024 | 119 | RULING and ORDER denying 89 Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously and granting 103 Jane Doe's Motion to Continue Anonymity.<br>The parties will be prepared to address the remaining pending motions at oral argument on June 20, 2024.<br>Signed by Judge Maria E. Garcia on 6/19/2024. (Esposito, A.) (Entered: 06/19/2024) |
| 06/20/2024 | 120 | Minute Entry. Proceedings held before Judge Maria E. Garcia: taking under advisement 81 Motion for Protective Order; taking under advisement 82 Sealed Motion; taking under advisement 100 Motion for Extension of Time and taking under advisement 105 Motion for Extension of Time. In-person status conference and oral argument held on 6/20/2024 re Motions 81 , 82 , 100 , and 105 . 49 minutes (Court Reporter CourtSmart.) (Langello, N) (Entered: 06/20/2024) |
| 06/21/2024 | 121 | ORDER taking under advisement 81 Motion for Protective Order; taking under advisement 82 Sealed Motion for Protective Order; denying without prejudice 100 Motion for Extension of Time to October 15, 2024 ; denying without prejudice 105 Motion for Extension of Time to October 15, 2025 to complete discovery and depositions (Revised).<br><br>ORDER.<br>As stated on the record during oral argument on June 20, 2024, Plaintiff's Motions to Modify the Scheduling Order are denied without prejudice to refiling after the parties' meet and confer conferences. ECF Nos. 100, 105. Plaintiff is advised that any future request to modify the current scheduling order should include interim deadlines and comply with Local Rule 7. *See* D. Conn. L. Civ. R. 7(b)(1) ("All motions for extensions of time must be decided by a Judge and will not be granted except for good cause. The good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension.").<br><br>Defendant Jane Doe's Motions for Protective Order are taken under advisement. ECF Nos. 81, 82. The parties will meet and confer on the contours of a protective order and file a Joint Status Report with proposed language by June 27, 2024.<br><br>Signed by Judge Maria E. Garcia on 9/21/2024. (Esposito, A.) (Entered: 06/21/2024) |
| 06/24/2024 | 122 | MOTION to Seal Second Emergency Motion to Dismiss by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/24/2024) |
| 06/24/2024 | 123 | SEALED MOTION Second Emergency Motion for Judgment of Dismissal by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/24/2024) |
| 06/25/2024 | 124 | ORDER re 123 Second Emergency Motion for Judgment of Dismissal filed by Jane Doe (Sealed).<br>Plaintiff's response is due by the close of business July 1, 2024.<br>Oral argument is scheduled for July 3, 2024 at 1:30 PM. Plaintiff shall be present at the |

**A-17**

| | | hearing.<br>Signed by Judge Maria E. Garcia on 6/25/24. (Esposito, A.) (Entered: 06/25/2024) |
|---|---|---|
| 06/25/2024 | 125 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.<br>ORDER re: 123 Second Emergency Motion for Judgement of Dismissal by Jane Doe (Sealed). A hearing is scheduled for 7/3/2024 at 01:30 PM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. Plaintiff shall be present at the hearing. (Esposito, A.) (Entered: 06/25/2024) |
| 06/26/2024 | 126 | NOTICE of Appearance by Maria Laurato on behalf of Yale University (Laurato, Maria) (Entered: 06/26/2024) |
| 06/27/2024 | 127 | NOTICE of Appearance by Mario K. Cerame on behalf of Saifullah Khan *filing as additional counsel, particularly as concerns free speech interests* (Cerame, Mario) (Entered: 06/27/2024) |
| 06/27/2024 | 128 | Consent MOTION for Extension of Time until July 8, 2024 to Submit Joint Status Report by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/27/2024) |
| 06/28/2024 | 129 | ORDER granting 128 Consent Motion for Extension of Time until July 8, 2024 to Submit Joint Status Report. Signed by Judge Maria E. Garcia on 6/28/24. (Esposito, A.) (Entered: 06/28/2024) |
| 06/28/2024 | 130 | Emergency MOTION to Dismiss *Plaintiff's Complaint* by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University.Responses due by 7/19/2024 (Attachments: # 1 Memorandum in Support) (Noonan, Patrick) (Entered: 06/28/2024) |
| 06/28/2024 | 131 | MOTION for Extension of Time until ten days*to file an* Objection to Motion to Dismiss or Other Sanction 119 Order on Motion to Vacate,, Order on Sealed Motion, by Saifullah Khan. (Attachments: # 1 Exhibit correspondence with court, # 2 Exhibit correspondence with counsel)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 132 | MOTION for *Order to the clerk to grant* access to any sealed documents in this case that are necessary to represent the Plaintiff Order by Saifullah Khan. (Attachments: # 1 correspondence with court)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 133 | MOTION to Seal Objection to Plaintiff's Motion for Extension of Time by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/28/2024 | 134 | NOTICE of Appearance by Giovanna T. Weller on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler (Weller, Giovanna) (Entered: 06/28/2024) |
| 06/28/2024 | 135 | NOTICE of Appearance by Maria Laurato on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler (Laurato, Maria) (Entered: 06/28/2024) |
| 06/28/2024 | 136 | ORDER granting in part and denying in part 131 Motion for Extension of Time to respond to Defendant Jane Doe's Second Emergency Motion for Entry of Judgment of Dismissal. ECF No. 123 (filed June 24, 2024). Plaintiff's request for an additional ten days to file a response is denied. Good cause has not been shown given the issues set forth in |

the emergency motion and the Court's ability to hold an emergency hearing. Plaintiff is represented by four capable attorneys. The appearance yesterday by the fourth attorney does not establish good cause for a ten day extension. Accordingly, absent consent and good cause, this request for an additional ten days to respond to Doe's Second Emergency Motion for Entry of Judgment of Dismissal is denied.
The request for more time is granted in part. Plaintiff's response is due by 11:59 PM on Monday, July 1, 2024.
Signed by Judge Maria E. Garcia on 6/28/2024. (Cabral, D) (Entered: 06/28/2024)

| Date | No. | |
|---|---|---|
| 06/28/2024 | 137 | MOTION for Reconsideration re 136 Order on Motion for Extension of Time,,,, *and to preserve the record as to relevant facts for later review* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 138 | OBJECTION re 133 MOTION to Seal Objection to Plaintiff's Motion for Extension of Time filed by Saifullah Khan. (Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 139 | MOTION to Seal Objection to Plaintiff's Motion for Reconsideration by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/28/2024 | 140 | Sealed Document: Objection to Plaintiff's Motion for Reconsideration by Jane Doe . (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/29/2024 | 141 | ORDER finding as moot 133 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Extension of Time in light of the Court's ruling [ECF No. 136] granting in part and denying in part Plaintiffs Motion for Extension of Time *before* Doe filed an objection.. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 142 | VACATED: ORDER granting 123 Defendant Jane Doe's Motion to Seal Second Emergency Motion to Dismiss by Jane Doe (ECF No. 123 (SEALED)); granting 139 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Reconsideration (ECF No. 140 (SEALED)); for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) Modified on 6/29/2024 to indicated order was vacated (Ruocco, M.). (Entered: 06/29/2024) |
| 06/29/2024 | 143 | ORDER denying 137 Plaintiff's Motion for Reconsideration. "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Generally, "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Plaintiff presents no new evidence, arguments or caselaw on reconsideration. Rather, Attorney Cerame points out that although Plaintiff has four attorneys who have filed notices of appearance on his behalf, apparently only he, who filed a notice of appearance after the deadline for responding to Doe's Second Emergency Motion for Judgment of Dismissal had been set by the Court, is tasked with responding to that Motion. It has long been settled that the "fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation." *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 |

**A-19**

(D. Conn. 1981) (Cabranes, J.) (citing *Maryland Metals, Inc. v. Harbaugh*, 33 Md. App. 570, 575-576, 365 A.2d 600, 603 (Ct. Spec. App.1976) ("In the practice of law, a lawyer is charged with the responsibility of knowing what is entered upon the dockets, from time to time, in the case in which he is counsel. It is his duty to follow the dockets so as to keep himself abreast of the happenings in his case.... Put in another more graphic way, the buck stops with the attorney's appearance as counsel of record."). An appearing attorney has a "responsibility to 'investigate and prepare every phase' of his client's case". *J.M. Cleminshaw Co.*, 93 F.R.D. 338 at 348 n.5, n.8 (citations omitted); *see also Ortiz v. Stambach*, No. 1:16-CV-00321 (EAW), 2022 WL 1746771, at *6 (W.D.N.Y. May 31, 2022) (rejecting counsel's "suggested argument that co-counsel was responsible for any expert disclosure failures" and reminding counsel that he was admitted to the bar and it was incumbent on him to ensure that his client's discovery obligations were satisfied).

Furthermore, the "courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). After consideration of Doe's objection, the Court finds that Attorney Cerame's argument that he had no access to the sealed motions disingenuous. Doe's counsel offered to provide Attorney Cerame with the sealed documents on June 27, 2024 at 4:02 PM and again on June 28, 2024 at 12:24 PM. *See* ECF No. 140-1 at 2, 4. Moreover, other counsel of record for Plaintiff had access to the sealed documents. Doe argues that "there is no basis for extending the briefing or hearing... because Plaintiff has seemingly not taken down the posts that identify Jane and created this exigency." ECF No. 140 at 1. The Court agrees.

Because Plaintiff failed to identify any ground sufficient to justify reconsideration, the Motion for Reconsideration is **DENIED**. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) (Entered: 06/29/2024)

| 06/29/2024 | 144 | ORDER In light of the filing of Yale's Emergency Motion for Judgment of dismissal of the Plaintiff's Complaint (ECF No. 130) filed on June 28, 2024, to which Plaintiff is entitled to respond to, and the Court's preference to hold an evidentiary hearing on both Emergency Motions on the same day, the Court modifies the response deadlines and schedule as follows: Plaintiff's response to Doe's Second Emergency Motion for Dismissal (ECF No. 123) and Yale's Emergency Motion to Dismiss (ECF No. 130) is now July 5, 2024, Defendants may file a reply by July 9, 2024, and the evidentiary hearing on both Motions is rescheduled to July 11, 2024 at 10:00 am. A new calendar will issue, Plaintiff shall appear for the evidentiary hearing. <br> Signed by Judge Maria E. Garcia on 6/29/24.(Esposito, A.) (Entered: 06/29/2024) |
| --- | --- | --- |
| 06/29/2024 | 145 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. <br> *RESET FROM 7/3/24.* <br> Evidentiary Hearing set for 7/16/2024 at 10:00 AM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 146 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. <br> *RESET FROM 7/16/24* <br> Evidentiary Hearing set for **7/11/2024 at 10:00 AM** in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Esposito, A.) (Entered: 06/29/2024) |

**A-20**

| 06/29/2024 | 147 | ORDER re: 146 July 11, 2024 Hearing.<br>The parties will provide two chamber's copies of their motions and responsive pleadings, with tabs of the exhibits, by the close of business July 9, 2024.<br>Signed by Judge Maria E. Garcia on 6/29/24.(Esposito, A.) (Entered: 06/29/2024) |
|---|---|---|
| 06/29/2024 | 148 | ORDER Vacating 142 Order on Sealed Motion, Order on Motion to Seal,<br>Signed by Judge Maria E. Garcia on 6/29/24.(Ruocco, M.) (Entered: 06/29/2024) |
| 06/29/2024 | 149 | ORDER granting 122 Defendant Jane Doe's Motion to Seal Second Emergency Motion to Dismiss by Jane Doe (ECF No. 123 (SEALED)); granting 139 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Reconsideration (ECF No. 140 (SEALED)); for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/29/24. (Ruocco, M.) (Entered: 06/29/2024) |
| 07/01/2024 | 150 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on 06/20/24 before Judge Maria E. Garcia. Court Reporter: eScribers, LLC. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 7/22/2024. Redacted Transcript Deadline set for 8/1/2024. Release of Transcript Restriction set for 9/29/2024. (Gottlieb, J) (Entered: 07/01/2024) |
| 07/03/2024 | 151 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Status Conference set for 7/10/2024 at 10:00 AM before Judge Maria E. Garcia.<br>The parties will call the conference line at: (888) 557-8511; Access Code: 3852222#<br>(Esposito, A.) (Entered: 07/03/2024) |
| 07/03/2024 | 152 | OBJECTION re 119 Order on Motion to Vacate,, Order on Sealed Motion, *objection pursuant to Local Rule 72.2* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/03/2024) |
| 07/04/2024 | 153 | OBJECTION as Per Entry 152 with Sealed Exhibits by Saifullah Khan. (Attachments: # 1 Exhibit, # 2 Exhibit)Motions referred to Maria E. Garcia(Cerame, Mario) Modified on 8/6/2024 to correct docket text. (Fanelle, N.). (Entered: 07/04/2024) |
| 07/04/2024 | 154 | OBJECTION re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits, 152 Objection *Supplemental to Objection* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/04/2024) |
| 07/04/2024 | 155 | OBJECTION *to factual finding that counsel was "disingenuous," plausibly violating duty of candor to the tribunal* filed by Saifullah Khan. (Attachments: # 1 Exhibit Counsel's Inbox Showing Emails (and lack thereof) from Counsel Gooley)(Cerame, Mario) (Entered: 07/04/2024) |
| 07/05/2024 | 156 | MOTION for Extension of Time until five days Objections to Motions to Dismiss 144 Order,,, 130 Emergency MOTION to Dismiss *Plaintiff's Complaint*, 146 Calendar Entry, |

**A-21**

| | | |
|---|---|---|
| | | 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal, 145 Calendar Entry, by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 07/05/2024) |
| 07/06/2024 | 157 | OBJECTION to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131 by Saifullah Khan. (Attachments: # 1 Memorandum in Opposition to Motions to Dismiss)Motions referred to Maria E. Garcia(Cerame, Mario) Modified on 8/6/2024 to correct docket text. (Fanelle, N.) (Entered: 07/06/2024) |
| 07/08/2024 | 158 | RESPONSE re 155 Objection, *to Court's Finding that Plaintiff Acted Disingenuously* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/08/2024) |
| 07/08/2024 | 159 | Consent MOTION for Extension of Time until 7/12/2024 file language regarding protective order 121 Order on Motion for Protective Order,,,,,, Order on Sealed Motion,,,,,, Order on Motion for Extension of Time,,,,,,,,,,, 129 Order on Motion for Extension of Time by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 07/08/2024) |
| 07/08/2024 | 160 | OBJECTION *TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME AS TO YALE* filed by Jane Doe. (Gooley, Brendan) (Entered: 07/08/2024) |
| 07/08/2024 | 161 | MOTION in Limine *as described in ECF 157.1 at page 2* by Saifullah Khan.Responses due by 7/29/2024 Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 07/08/2024) |
| 07/08/2024 | 162 | ORDER. Defendant Doe shall respond to Plaintiff's 153 Objection to Magistrate Judge Garcia's order at ECF No. 119 and request for *de novo* review on or before July 24, 2024. Signed by Judge Kari A. Dooley on 7/8/2024. (Alquesta, S) (Entered: 07/08/2024) |
| 07/08/2024 | 163 | ORDER granting 159 Motion for Extension of Time until July 12, 2024 to file language regarding proposed protective order. Signed by Judge Maria E. Garcia on 7/8/2024. (Garcia, Maria) (Entered: 07/08/2024) |
| 07/08/2024 | 164 | ORDER denying 156 Motion for Extension of Time 156 for the reasons set forth in 136 Order on Motion for Extension of Time and 143 Order on Motion for Reconsideration. In addition to repeatedly failing to meet the good cause standard, the instant motion fails to comply with D. Conn. L. Rule 7(b)3. which requires that "[a]ll motions for extension of time shall be filed at least three (3) business days before thedeadline sought to be extended [...]". Signed by Judge Maria E. Garcia on 7/8/2024. (Garcia, Maria) (Entered: 07/08/2024) |
| 07/09/2024 | 165 | MOTION to Seal Reply, Response and Objection by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 166 | Sealed Document: Reply in Further Support of Second Emergency Motion for Judgment of Dismissal by Jane Doe re 157 SEALED MOTION Objection to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131 . (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 167 | OBJECTION *in part to motion to seal, specifically as concerns 161, motion in limine* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/09/2024) |
| 07/09/2024 | 168 | Sealed Document: Response to Plaintiff's Rule 72.2 Motion by Jane Doe re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits . (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 169 | Sealed Document: Objection to Plaintiff's Motion in Limine by Jane Doe re 161 MOTION in Limine *as described in ECF 157.1 at page 2* . (Gooley, Brendan) (Entered: |

**A-22**

| | | |
|---|---|---|
| | | 07/09/2024) |
| 07/09/2024 | 170 | ORDER granting 132 MOTION for Order to the clerk to grant access to any sealed documents in this case that are necessary to represent the Plaintiff Order by Saifullah Khan.<br>The clerk of the court will provide Attorney Mario Cerame with access to sealed documents. Signed by Judge Maria E. Garcia on 7/9/2024. (Esposito, A.) (Entered: 07/09/2024) |
| 07/09/2024 | 171 | REPLY to Response to 130 Emergency MOTION to Dismiss *Plaintiff's Complaint* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 07/09/2024) |
| 07/09/2024 | 172 | OBJECTION re 161 MOTION in Limine *as described in ECF 157.1 at page 2* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 07/09/2024) |
| 07/10/2024 | 173 | ORDER 151 re: June 10, 2024 Telephonic Status Conference.<br>As discussed, the hearing scheduled for July 11, 2024, on Defendant Doe's Second Emergency Motion to Dismiss, (ECF No. 123) and Defendant Yale's Emergency Motion to Dismiss Plaintiff's Complaint (ECF No. 130) is CANCELLED.<br>Judge Dooley will issue a calendar rescheduling the hearing in due course.<br>Signed by Judge Maria E. Garcia on 7/10/24. (Esposito, A.) (Entered: 07/10/2024) |
| 07/10/2024 | 174 | Minute Entry for proceedings held before Judge Maria E. Garcia: Telephonic Status Conference held on 7/10/2024. Total Time: 7 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 07/10/2024) |
| 07/11/2024 | 175 | First MOTION for Kevin Murray Smith to Withdraw as Attorney by Saifullah Khan. Motions referred to Maria E. Garcia(Smith, Kevin) (Entered: 07/11/2024) |
| 07/11/2024 | 176 | MOTION for Norman A. Pattis to Withdraw as Attorney *Motion for Permission to Withdraw Appearance* by Saifullah Khan. Motions referred to Maria E. Garcia(Pattis, Norman) (Entered: 07/11/2024) |
| 07/12/2024 | 177 | ORDER granting 175 Motion to Withdraw as Attorney. Attorney Kevin Murray Smith terminated. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 178 | ORDER granting 176 Motion to Withdraw as Attorney. Attorney Norman A. Pattis terminated. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 179 | SCHEDULING ORDER. In light of Judge Garcia's order at ECF No. 173, Oral Argument on the defendants' emergency motions for judgment of dismissal at ECF Nos. 123 and 130 shall be heard on July 25, 2024, at 10:00 AM. Plaintiff shall appear personally at oral argument. A calendar entry with further details shall be separately docketed.<br>Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 180 | NOTICE OF E-FILED CALENDAR. THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.Oral Argument on the defendants' emergency motions for judgment of dismissal at ECF Nos. 123 and 130 is set for July 25, 2024, at 10:00 AM in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Alquesta, S) (Entered: 07/12/2024) |

**A-23**

| 07/15/2024 | 181 | Joint STATUS REPORT *Regarding Proposed Protective Order* by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/15/2024) |
|---|---|---|
| 07/17/2024 | 182 | ORDER granting 165 Defendant Jane Doe's MOTION to Seal Reply, Response and Objection.<br>The Motion to Seal is granted as to her: (1) Reply in Further Support of her Second Emergency Motion for Judgment of Dismissal; (ECF No. 123 (SEALED)); (2) Response to Plaintiffs Rule 72.2 Objection; and (3) Objection to Plaintiffs Motion in Limine; for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117, 149: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 7/17/24. (Esposito, A.) (Entered: 07/17/2024) |
| 07/24/2024 | 183 | RESPONSE re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 07/24/2024) |
| 07/24/2024 | 184 | NOTICE by Saifullah Khan re 179 Scheduling Order, 152 Objection *Notice of Supplemental Authority* (Attachments: # 1 Supplement Order in Doe v. Butler U., 1:22-cv-1828, ECF No. 102 (S.D. Ind. July 23, 2024))(Cerame, Mario) (Entered: 07/24/2024) |
| 07/25/2024 | 185 | ORDER. Plaintiff may reply to Defendants' 168 and 183 responses to Plaintiff's 153 Objection to Judge Garcia's 119 ruling on or before August 7, 2024.<br>Signed by Judge Kari A. Dooley on 7/25/2024. (Alquesta, S) (Entered: 07/25/2024) |
| 07/25/2024 | 187 | Minute Entry. Proceedings held before Judge Kari A. Dooley: taking under advisement 123 Sealed Motion; taking under advisement 130 Motion to Dismiss; So Ordered 161 Motion in Limine; Motion Hearing held on 7/25/2024 re 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal filed by Jane Doe, 130 Emergency MOTION to Dismiss *Plaintiff's Complaint* filed by Sarah Demers, Peter Salovey, Mark Solomon, Carole Goldberg, Lynn Cooley, Jonathon Halloway, Ann Kuhlman, Yale University, David Post, Stephanie Spangler, Paul Genecin, Marvin Chun, Joe Gordon, 161 MOTION in Limine *as described in ECF 157.1 at page 2* filed by Saifullah Khan. Total Time: 1 hours and 34 minutes(Court Reporter Tracy Gow.) (Gould, K) (Entered: 08/02/2024) |
| 07/25/2024 | 188 | Marked Exhibit List from July 25, 2024 Motion Hearing (Gould, K) (Entered: 08/02/2024) |
| 07/30/2024 | 186 | EXHIBIT by Jane Doe. (Attachments: # 1 Exhibit Access Guidelines, # 2 Exhibit Email from Lillian Perry, # 3 Exhibit Corrected Transcript (Additional Redaction by Jane Doe) (Gooley, Brendan) (Entered: 07/30/2024) |
| 08/06/2024 | 189 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Discovery Status Conference re: Defendants' Motion for Protective Order, [ECF Nos. 81, 82], and the parties' Proposed Protective Order, [ECF No. 181], set for 8/13/2024 at 10:30 AM before Judge Maria E. Garcia.<br>The parties will call: 203-684-6202; and enter the Conference ID: 439 176 102# when prompted.<br>(Esposito, A.) (Entered: 08/06/2024) |
| 08/07/2024 | 190 | RESPONSE re 185 Order, 154 Objection, 168 Sealed Document, 186 Exhibit, 183 Response, 152 Objection *reply to responses by Defendants* filed by Saifullah Khan. |

**A-24**

| | | (Cerame, Mario) (Entered: 08/07/2024) |
|---|---|---|
| 08/13/2024 | 191 | ORDER re: 80 81 Defendant Jane Doe's Motion for Protective Order.<br>Based on the discussion during today's telephonic discovery status conference, the parties will confer and submit a Revised Proposed Protective Order by **August 19, 2024**.<br>Signed by Judge Maria E. Garcia on 8/13/2024. (Esposito, A.) (Entered: 08/13/2024) |
| 08/13/2024 | 192 | Minute Entry for proceedings held before Judge Maria E. Garcia: Telephonic Discovery Status Conference held on 8/13/2024. Total Time: 11 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 08/13/2024) |
| 08/16/2024 | 193 | Consent MOTION for Extension of Time until August 26, 2024 to Submit Revised Language re Motion for a Protective Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 08/16/2024) |
| 08/19/2024 | 194 | ORDER granting 193 Consent MOTION for Extension of Time until August 26, 2024 to Submit Revised Language re: Motion for a Protective Order 81 82 .<br>Signed by Judge Maria E. Garcia on 8/19/24. (Esposito, A.) (Entered: 08/19/2024) |
| 08/26/2024 | 195 | Joint STATUS REPORT by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Gooley, Brendan) (Entered: 08/26/2024) |
| 08/28/2024 | 196 | ORDER re: 195 Joint Status Report Regarding Proposed Protective Order.<br>The Court reviewed the parties' Proposed Protective Order. The Court would like to thank the parties for working collaboratively to reach an agreement.<br>On or before September 5, 2024, the parties will accept the track changes and file the Protective Order with Exhibit 1, executed by Plaintiff, for entry by the Court.<br>Signed by Judge Maria E. Garcia on 8/28/24. (Esposito, A.) (Entered: 08/28/2024) |
| 09/05/2024 | 197 | RESPONSE re 196 Order, by Saifullah Khan *EXECUTED PROTECTIVE ORDER*.<br>(Taubes, Alexander) (Entered: 09/05/2024) |
| 09/06/2024 | 198 | ORDER APPROVING and ADOPTING the Parties' Protective Order to Restrict Plaintiff's Access to Non-Public Sensitive Materials.<br>Signed by Judge Maria E. Garcia on 9/6/2024. (Esposito, A.) (Entered: 09/06/2024) |
| 09/06/2024 | 199 | ORDER finding as moot 81 Motion for Protective Order; finding as moot 82 Sealed Motion for Protective Order in light of the parties' agreed to Protective Order to Restrict Plaintiff's Access to Non-Public Sensitive Information. ECF No. 198. Signed by Judge Maria E. Garcia on 9/6/2024. (Esposito, A.) (Entered: 09/06/2024) |
| 09/16/2024 | 200 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on July 25, 2024 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 10/7/2024. Redacted Transcript Deadline set for 10/17/2024. Release of Transcript Restriction set for 12/15/2024. (Gow, T.) (Entered: 09/16/2024) |
| 10/08/2024 | 201 | Emergency MOTION to Stay re 119 Order on Motion to Vacate,, Order on Sealed Motion, *limited stay of order to allow response to Department of Homeland Security* by |

A-25

| | | |
|---|---|---|
| | | Saifullah Khan.Responses due by 10/29/2024 (Attachments: # 1 Exhibit DHS Letter)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/08/2024) |
| 10/08/2024 | 202 | ORDER re: 201 Plaintiff's Emergency MOTION for Stay of Order Restricting Speech. Defendants' response is due on or before **October 14, 2024.**<br><br>Signed by Judge Maria E. Garcia on 10/8/24. (Esposito, A.) (Entered: 10/08/2024) |
| 10/14/2024 | 203 | OBJECTION re 201 Emergency MOTION to Stay re 119 Order on Motion to Vacate,, Order on Sealed Motion, *limited stay of order to allow response to Department of Homeland Security* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Gooley, Brendan) (Entered: 10/14/2024) |
| 10/16/2024 | 204 | ORDER 201 denying without prejudice Plaintiff's Emergency Motion for Limited Stay of Order Restricting Speech.<br>"Plaintiff requests permission from this Court to deliver any necessary documents, without redaction, to the Department of Homeland Security, U.S. Citizenship and Immigration Services ("DHS"), as per the October 3, 2024 Letter from DHS." ECF No. 201 at 1. The DHS letter requests three documents: (1) a certificate of disposition in Plaintiff's criminal case; (2) the official transcript from the court in the criminal case; and (3) a copy of a protective order filed against Plaintiff in Dearborn, Indiana. *Id*. Plaintiff represents that "both documents contain Doe's name" but did not state which of the three documents he was referring to. *Id*. Defendant Doe responds that she cannot meaningfully respond because Plaintiff refused to provide copies of the documents he intends to submit to DHS, and that Plaintiff has not shown that it "is necessary for Plaintiff to disclose Jane's name in order to comply with the request issued by the U.S. Citizenship and Immigration Services." ECF No. 203 at 1, 4. On this record, Plaintiff's motion raises more questions than answers.<br>Accordingly, Plaintiff's Emergency Motion for Limited Stay of Order Restricting Speech is denied without prejudice on the current record. The Court cannot speculate as to the contents of the documents at issue. Any renewal of the motion should attach the documents it seeks to submit to DHS under seal, provide the standard the court should apply, including caselaw supporting the request for the limited stay, address why it is necessary to disclose Jane Doe's full name and/or first name, and address the other arguments raised by Jane Doe in her responsive pleading.<br>SO ORDERED. Signed by Judge Maria E. Garcia on 10/16/2024. (Esposito, A.) (Entered: 10/16/2024) |
| 10/17/2024 | 205 | MOTION to Vacate 204 Order on Motion to Stay,,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/17/2024) |
| 10/17/2024 | 206 | Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech (entry 205 erroneously not flagged as emergency motion)* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/17/2024) |
| 10/17/2024 | 207 | Sealed Document: Sealed Exhibits Pursuant to ECF No. 204, Attached to ECF No. 206 by Saifullah Khan re 204 Order on Motion to Stay,,,,,,,, 206 Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech ( Exhibit Letter from DHS. (Attachments: # 1 Exhibit Certificate of Disposition, # 2 Exhibit Document Concerning Protective Order, # 3* |

**A-26**

| | | |
|---|---|---|
| | | *Exhibit 2.26.2018 Transcript, # 4 Exhibit 2.28.2018 Transcript, # 5 Exhibit 3.1.2018 Transcript, # 6 Exhibit 3.2.2018 Transcript, # 7 Exhibit 3.5.2018 Transcript, # 8 Exhibit 3.6.2018 Transcript, # 9 Exhibit 3.7.2018 Transcript)*(Cerame, Mario) (Entered: 10/17/2024) |
| 10/18/2024 | 208 | MOTION to Withdraw 205 MOTION to Vacate 204 Order on Motion to Stay,,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* // *corrected emergency motion filed at ECF No. 206* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/18/2024) |
| 10/18/2024 | 209 | ORDER. Defendants will file a response to Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order by Sunday, October 20, 2024. ECF No. 206.<br><br>Defendants will articulate the harm to permit Plaintiff to produce unredacted copies of the Trial Transcripts that have already been produced to DHS in 2021. ECF No. 206 at 5. Their response will include proposed redactions to the Trial Transcripts. ECF Nos. 207-3 through 207-9. Defendants will also state their position on ECF Nos. 207-1 ("Destroyed Case File Letter") and 207-2 ("Mycourts.IN.gov") and whether they continue to maintain an objection.<br><br>Oral argument is scheduled for Monday, October 21, 2024 at 3:00 PM. Plaintiffs immigration counsel will attend the hearing. The Court will distribute the Zoom information to the parties via email.<br>Signed by Judge Maria E. Garcia on 10/18/24. (Esposito, A.) (Entered: 10/18/2024) |
| 10/18/2024 | 210 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Hearing on Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 is set for 10/21/2024 at 03:00 PM before Judge Maria E. Garcia.<br>The Court will distribute the Zoom information to the parties via email. (Esposito, A.) (Entered: 10/18/2024) |
| 10/18/2024 | 211 | ORDER withdrawing 205 Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order.<br>ORDER granting 208 Motion to Withdraw in light of a duplicate filing. ECF No. 206.<br>Signed by Judge Maria E. Garcia on 10/18/2024. (Esposito, A.) (Entered: 10/18/2024) |
| 10/20/2024 | 212 | RESPONSE re 205 MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* filed by Jane Doe. (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 10/20/2024) |
| 10/20/2024 | 213 | RESPONSE re 206 Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech ( filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 10/20/2024)* |
| 10/21/2024 | 214 | MOTION for *Inquiry Concerning Public Access to October 21, 2024 Proceedings* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/21/2024) |

**A-27**

| 10/21/2024 | 215 | NOTICE regarding hearing via Zoom: The Hearing on Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 scheduled for 10/21/2024 at 3:00 p.m. will be conducted via Zoom.

Call-in and Public Access Number: 1 646 828 7666

Meeting ID: 161 220 9850

Meeting Password: 713585

*The Court will distribute the video link to the parties via email.*

Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.

NOTICE OF E-FILED CALENDAR re: Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 . Motion Hearing set for **10/21/2024 at 3:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 10/21/2024) |
|---|---|---|
| 10/21/2024 | 216 | ORDER re: 206 Plaintiff's Emergency Motion to Vacate Order, Or In the Alternative, For Limited Stay or Lift of Order. This motion is before the Court to address an October 3, 2024, USCIS/DHS letter (ECF No. 201-1) requesting three categories of documents from Plaintiff. A hearing was held on October 21, 2024, and the parties had an opportunity to be heard. For the reasons that follow, the motion is denied as moot in part, granted in part, and denied in part as follows:

Finding as moot as to the State of Connecticut Superior Court "Destroyed Case File Letter", at ECF No. 207-1, and the "MyCourts.IN.gov" Indiana Protective Order, at ECF No. 207-2, in light of the fact that these documents make no reference to Jane Doe.

The motion is granted as follows: Plaintiff may, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), provide a copy of the Official Transcript in *State of Connecticut v. Khan,* No. NNH-CR15-0162194 (Conn. Super. Ct.), which the Court defines as the transcript that redacted Jane Doe's name pursuant to Conn. Gen. Stat. §54-86e, that has been publicly available at least as of July 25, 2024. *See* ECF No. 186, 200. As stated on the record, to the extent that Plaintiff disagrees with the application of Conn. Gen. Stat. § 54-86e to the transcripts in the criminal case, his recourse is with the Connecticut Superior Court. This Court will not disturb what the Superior Court deems to be the Official Transcript. *See* ECF. No. 200, July 25, 2024 Hrg Tr. at 18:11-14.

The motion is denied as follows: Plaintiff may not provide, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), the unredacted trial transcripts, at ECF Nos. 207-3, 207-4, 207-5, 207-6, 207-7, 207-8 and 207-9, as the Court does not deem them responsive to the USCIS/DHS letter request.

The Court's Orders regarding the use of Jane Doe's name (ECF Nos. 91, 119) remain in full force and effect, except that Plaintiff is authorized to submit the Official Transcript |

from Plaintiff's criminal trial to USCIS/DHS, as defined here, provided that he may not disseminate the transcript to anyone else. SO ORDERED.

Signed by Judge Maria E. Garcia on 10/21/2024. (Esposito, A.) (Entered: 10/21/2024)

| | | |
|---|---|---|
| 10/21/2024 | 217 | ORDER finding as moot 214 MOTION for Inquiry Concerning Public Access to October 21, 2024 Proceedings by Saifullah Khan. The Zoom log-in information was provided on the docket. Signed by Judge Maria E. Garcia on 10/21/24. (Esposito, A.) (Entered: 10/21/2024) |
| 10/21/2024 | 219 | Minute Entry for proceedings held before Judge Maria E. Garcia: Motion Hearing held via zoom on 10/21/2024 re: Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 . Total Time: 37 minutes (Court Reporter Courtsmart.) (Santos, S) Modified text on 10/24/2024 (Santos, S). (Entered: 10/22/2024) |
| 10/22/2024 | 218 | Emergency MOTION for Writ of Mandamus *as filed in 2d Cir. CoA* by Saifullah Khan. (Attachments: # 1 Appendix, # 2 T-1080 Doe, # 3 T-1080 Yale)(Cerame, Mario) (Entered: 10/22/2024) |
| 10/24/2024 | 220 | TRANSCRIPT of Proceedings: Type of Hearing: Emergency Motion to Vacate. Held on 10/21/24 before Judge Maria E. Garcia. Court Reporter: Suzanne Benoit. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 11/14/2024. Redacted Transcript Deadline set for 11/24/2024. Release of Transcript Restriction set for 1/22/2025. (Benoit, S.) (Entered: 10/24/2024) |
| 10/24/2024 | 221 | ORDER of USCA as to 43 Notice of Appeal filed by Saifullah Khan, USCA Case Number 24-2794. (Fanelle, N.) (Entered: 10/28/2024) |
| 11/07/2024 | 222 | EXHIBIT *November 4, 2024 DHS Letter Extending Deadline to November 25, 2024* by Saifullah Khan re 218 Emergency MOTION for Writ of Mandamus *as filed in 2d Cir. CoA*. (Cerame, Mario) (Entered: 11/07/2024) |
| 11/07/2024 | 223 | Sealed Document: Criminal Trial Transcript Version Issued 11.7.24 by Saifullah Khan re 218 Emergency MOTION for Writ of Mandamus *as filed in 2d Cir. CoA*, 207 Sealed Document,,, *verdict version 11.7.24*. (Attachments: # 1 Exhibit T2.26.18 version 11.7.24, # 2 Exhibit T2.27.18 version 11.7.24, # 3 Exhibit T2.28.18 version 11.7.24, # 4 Exhibit T3.1.18 version 11.7.24, # 5 Exhibit T3.2.18 version 11.7.24, # 6 Exhibit T3.5.18 version 11.7.24, # 7 Exhibit T3.6.18 version 11.7.24)(Cerame, Mario) (Entered: 11/07/2024) |
| 11/12/2024 | 224 | MOTION to Compel by Saifullah Khan.Responses due by 12/3/2024 Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 11/12/2024) |
| 11/13/2024 | 225 | Order denying without prejudice 224 Motion to Compel. Plaintiff filed a motion to compel. Before filing such a motion, a local rule in the District of Connecticut requires that the movant confer with the Defendants' counsel in an effort to resolve the discovery issues between them without court intervention. *See* D. Conn. L. Civ. R. 37(a). If the conference does not resolve the issues, the movant must then include with his motion to compel an affidavit stating that, despite a good faith effort, he was unable to resolve the |

A-29

discovery issues with opposing counsel. *See id*. If a movant does not follow this local rule, a court should deny the motion to compel. *See Brown v. Clayton*, No. 3:11-cv-714 (JCH), 2013 WL 1409884, at *2 (D. Conn. Apr. 8, 2013).

In this case, Plaintiff's motion confirmed that he conferred with opposing counsel to discuss the discovery issues in his motion to compel. Even if the parties did meet and discuss those issues, Plaintiff's motion does not include an affidavit certifying that, despite a good faith effort, the discovery issues could not be resolved. For those reasons, the Court denies the motion to compel.

The denial is, however, without prejudice. Any such re-filed motion must include a declaration, signed under penalty of perjury, certifying that Plaintiff has conferred with Defendants' counsel in good faith and was nevertheless unable to reach an agreement. If a re-filed motion to compel becomes necessary, it must be filed by **November 27, 2024.** Motions to compel that are filed after that date may be summarily denied. Defendants will have seven (7) days from Plaintiff's filing to file their opposition. Defendants should be prepared to address why a rolling production is not possible or practical and provide a firm date when production will be complete. No reply briefs will be permitted. It is so ordered.
Signed by Judge Maria E. Garcia on 11/13/2024. (Esposito, A.) (Entered: 11/13/2024)

| 11/18/2024 | 226 | Emergency OBJECTION re 154 Objection, 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits, 152 Objection *Emergency Supplement to 72.2 Objection and request to redocket ECF Nos. 152-54 as Emergency* filed by Saifullah Khan. (Attachments: # 1 Exhibit)(Cerame, Mario) (Entered: 11/18/2024) |
| --- | --- | --- |
| 11/19/2024 | 227 | Joint MOTION for Clarification 225 Order on Motion to Compel,,,,,,,, by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 11/19/2024) |
| 11/19/2024 | 228 | ORDER. In Plaintiff's 226 Emergency Supplement to his Rule 72.2 Objection, Plaintiff represents that on November 7, 2024, he received the official, publicly available transcript in *State of Connecticut v. Khan*, No. NNH-CR15-0162194 (Conn. Super. Ct.), certified by the court reporter, and that therein, except for on a single page, Defendant Doe's Name is not redacted. *See* Emer. Supp., ECF No. 226 at 12-15. Submission of this transcript to USCIS would therefore not seem to run afoul of Judge Garcia's Order which permitted such disclosure. ECF No. 216. While Judge Garcia understood the official transcript to be fully redacted, Judge Garcia also recognized that the determination on these issues was for the Superior Court. She further stated that "[t]his Court will not disturb what the Superior Court deems to be the Official Transcript." Thereafter, the Connecticut Superior Court provided an unredacted transcript as the Official Transcript. Defendants shall respond to Plaintiff's 226 Emergency Supplement by November 20, 2024, at 5:00 PM if they are of a different view, and if so, why.
Signed by Judge Kari A. Dooley on 11/19/2024. (Alquesta, S) (Entered: 11/19/2024) |
| 11/20/2024 | 229 | ORDER re: 227 Joint MOTION for Clarification.
Plaintiff is directed to meet and confer with Defendants in an effort to resolve the outstanding issues set forth in his Motion to Compel. ECF No. 224. If a re-filed motion to compel becomes necessary, it must be filed by November 27, 2024. This deadline relates to a *refiled* motion to compel and the issues raised in the motion dated November 12, 2024. ECF No. 224.
Signed by Judge Maria E. Garcia on 11/20/24. (Esposito, A.) (Entered: 11/20/2024) |
| 11/20/2024 | 230 | RESPONSE re 228 Order,,,, filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 11/20/2024) |

**A-30**

| | | |
|---|---|---|
| 11/20/2024 | 231 | ORDER granting 227 Joint Motion for Clarification in accordance with the order entered at ECF No. 229. Signed by Judge Maria E. Garcia on 11/20/24. (Esposito, A.) (Entered: 11/20/2024) |
| 11/21/2024 | 232 | ORDER RE: 226 Emergency Supplement to Rule 72.2 Objection. The Court has reviewed the Emergency Supplement to Plaintiff's Objection to Magistrate Judge Garcia's 119 Ruling and Order and Defendant Doe's 230 Response to the Court's Order directing, by November 20, 2024, a response on the narrow issue of whether Plaintiff may provide the November 7, 2024, trial transcript to USCIS/HHS. On this record, the Court concludes that, consistent with Judge Garcia's October 21, 2024, Order, Plaintiff may provide a copy of the November 7, 2024, Official Transcript in *State of Connecticut v. Khan*, No. NNH-CR-15-0162194 (Conn. Super. Ct.) to USCIS/DHS per the October 3, 2024, letter requesting same.

To the extent the Emergency Supplement raises an objection to Magistrate Judge Garcia's further restriction on Plaintiff's ability to provide the transcript to others, Defendant Doe sought additional time to respond to the Emergency Supplement. As this aspect of Judge Garcia's October 21, 2024, Order does not impact Plaintiff's ability to respond to USCIS/HHS in connection with his asylum application, Doe's request is reasonable. Doe may file a supplemental brief, not to exceed 10 pages, on this issue on or before December 5, 2024. Once received, the Plaintiff's Objection to both the June 19, 2024, Order as well as the October 21, 2024, Order will be addressed together.

Signed by Judge Kari A. Dooley on 11/21/2024. (Alquesta, S) (Entered: 11/21/2024) |
| 11/27/2024 | 233 | Second MOTION to Compel by Saifullah Khan.Responses due by 12/18/2024 (Attachments: # 1 Affidavit - Declaration of Attorney Taubes)Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 11/27/2024) |
| 12/02/2024 | 234 | ORDER. A virtual Discovery Status Conference regarding Plaintiff's 233 Second Motion to Compel is scheduled for December 4, 2024, at 11:00 AM before Judge Maria E. Garcia. The Court will distribute Zoom information to the parties via email. Signed by Judge Maria E. Garcia on 12/2/2024. (Karamanakis, K) (Entered: 12/02/2024) |
| 12/02/2024 | 235 | NOTICE regarding hearing via Zoom: The Discovery Status Conference scheduled for 12/4/2024 at 11:00 a.m. will be conducted via Zoom.

Call-in and Public Access Number: 1 646 828 7666

Meeting ID: 160 103 9218

Meeting Password: 541963

*The Court will distribute the video link to the parties via email.*

Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. |

**A-31**

| | | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Discovery Status Conference set for **12/4/2024 at 11:00 AM** in Remote Setting before Judge Maria E. Garcia. (Santos, S) (Entered: 12/02/2024) |
|---|---|---|
| 12/03/2024 | 236 | MOTION to Seal Exhibits E, I, J, K, Q to the Memorandum in Opposition to Plaintiff's Motion to Compel by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 12/03/2024) |
| 12/03/2024 | 237 | Sealed Document: Exhibits E, I, J, K, Q to the Memorandum in Opposition to Plaintiff's Motion to Compel by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman re 236 MOTION to Seal Exhibits E, I, J, K, Q to the Memorandum in Opposition to Plaintiff's Motion to Compel . (Attachments: # 1 Exhibit I, # 2 Exhibit J, # 3 Exhibit K, # 4 Exhibit Q)(Laurato, Maria) (Entered: 12/03/2024) |
| 12/03/2024 | 238 | Memorandum in Opposition re 233 Second MOTION to Compel filed by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. (Attachments: # 1 Affidavit of Maria L. Laurato, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E (Filed Under Seal), # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I (Filed Under Seal), # 11 Exhibit J (Filed Under Seal), # 12 Exhibit K (Filed Under Seal), # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q (Filed Under Seal), # 19 Exhibit R)(Laurato, Maria) (Entered: 12/03/2024) |
| 12/03/2024 | 239 | REPLY to Response to 233 Second MOTION to Compel filed by Saifullah Khan. (Taubes, Alexander) (Entered: 12/03/2024) |
| 12/04/2024 | 240 | Minute Entry for proceedings held before Judge Maria E. Garcia: Discovery Status Conference held via Zoom on 12/4/2024. Total Time: 30 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 12/04/2024) |
| 12/04/2024 | 241 | ORDER granting 236 Defendant Yale's Motion to Seal Exhibits E, I, J, K, Q to the Memorandum in Opposition to Plaintiffs Second Motion to Compel.<br>Signed by Judge Maria E. Garcia on 12/4/2024. (Esposito, A.) (Entered: 12/04/2024) |
| 12/04/2024 | 242 | ORDER re: 233 Plaintiff's Second Motion to Compel.<br>A discovery status conference was held on December 4, 2024, to address the outstanding discovery issues identified by the parties. After an opportunity to be heard, the Court entered the following deadlines and directed the parties to provide further information.<br>On or before **Friday, December 6, 2024,** Yale will provide a proposed schedule for rolling production and complete production of agreed upon discovery supported by affidavits from the people who are collecting and identifying information and documents responsive to Plaintiff's requests at both Yale and the third party e-discovery vendor.<br>On or before **Wednesday, December 11, 2024,** the parties will meet and confer by Zoom or in person regarding search terms for Khan's personal and Yale e-mail accounts and Doe's e-mail account(s) and propose a schedule for production.<br>The parties will also discuss Defendant's outstanding objections to Plaintiff's discovery that were not addressed in the Second Motion to Compel and any discovery from Plaintiff that Defendant contends remains outstanding. ECF No. 233. If the objections/issues are not resolved through a meet and confer, the parties will file a Joint Status Report and identify the issues and set forth their respective positions. The Joint Status Report is due |

**A-32**

on or before **Tuesday, December 17, 2024.**
A ruling on Plaintiff's Second Motion to Compel is reserved pending submission of further information and a follow-up meet and confer. However, as stated during the conference, the Court declines to consider an extension or stay of the discovery deadline of April 15, 2025. Rather, the Court will continue to closely monitor the progress of discovery production, will enter interim deadlines, and hold regular status conferences with the discovery deadline in place.
Signed by Judge Maria E. Garcia on 12/4/24. (Esposito, A.) (Entered: 12/04/2024)

| Date | No. | Entry |
|---|---|---|
| 12/05/2024 | 243 | RESPONSE re 226 Objection, filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Gooley, Brendan) (Entered: 12/05/2024) |
| 12/05/2024 | | Set Deadlines: Joint Status Report due by 12/17/2024. (Santos, S) (Entered: 12/05/2024) |
| 12/05/2024 | 244 | Consent MOTION for Extension of Time until 12/12/24 *to* hold meet and confer 242 Order,,,,,,,, by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 12/05/2024) |
| 12/06/2024 | 245 | ORDER granting 244 Consent Motion for Extension of Time within which to hold meet and confer on Thursday, December 12, 2024. The Joint Status Report is due on or before **Tuesday, December 17, 2024. ECF No. 242.** Signed by Judge Maria E. Garcia on 12/6/24. (Esposito, A.) (Entered: 12/06/2024) |
| 12/06/2024 | 246 | Consent MOTION for Extension of Time until Monday, December 9, 2024 to Provide the Court with its Proposed Schedule for Production with Supporting Affidavits 242 Order,,,,,,, by Yale University. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 12/06/2024) |
| 12/06/2024 | 247 | ORDER granting 246 Consent MOTION for Extension of Time until Monday, December 9, 2024, for Yale to Provide the Court with its Proposed Schedule for Production with Supporting Affidavits. ECF. No. 242. Signed by Judge Maria E. Garcia on 12/6/24. (Esposito, A.) (Entered: 12/06/2024) |
| 12/09/2024 | 248 | MANDATE of USCA dated 12/9/2024 denying 218 Emergency Motion for Writ of Mandamus. (Fanelle, N.) (Entered: 12/09/2024) |
| 12/09/2024 | 249 | Consent MOTION for Extension of Time until Tuesday, December 10, 2024 to Provide the Court with its Proposed Schedule for Production with Supporting Affidavits 242 Order,,,,,,, by Yale University. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 12/09/2024) |
| 12/10/2024 | 250 | ORDER granting 249 on Consent Yale's Second MOTION for Extension of Time until Tuesday, December 10, 2024 to Provide the Court with its Proposed Schedule for Production with Supporting Affidavits. *See* ECF No. 242. Signed by Judge Maria E. Garcia on 12/10/24. (Esposito, A.) (Entered: 12/10/2024) |
| 12/10/2024 | 251 | RESPONSE re 242 Order,,,,,,, by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. (Attachments: # 1 Exhibit A Declaration of T. Castiello, # 2 Exhibit B Declaration of J. Chaput)(Laurato, Maria) (Entered: 12/10/2024) |
| 12/17/2024 | 252 | Joint STATUS REPORT by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. (Laurato, Maria) (Entered: 12/17/2024) |
| 12/18/2024 | 253 | ORDER granting in part and finding as moot in part, 233 Plaintiff's Second Motion to Compel. |

**A-33**

The Court thanks the parties for their efforts to resolve the outstanding discovery issues. On December 10, 2024, Yale provided a Proposed Production Schedule with Declarations from Thomas Castiello, Information Security Engineer at Yale University and Joseph Chaput, Senior Forensic Examiner at TransPerfect Legal, Forensic Consulting and Technology. ECF No. 252. On December 17, 2024, the parties filed a Joint Status Report reporting they were able to resolve a number of outstanding issues and requested additional time to reach a compromise on remaining issues. ECF No. 252. After careful consideration, the Court enters the following schedule:

-**Schedule for Yale's Document Production:** Production will continue on a rolling basis. Production will be substantially completed by **January 10, 2025**, and completed by **January 20, 2025.** A privilege log will be produced on or before **January 24, 2025.**

-**Jane Doe's Inboxes, Objections to Plaintiff's Discovery Requests, Plaintiff's Outstanding Discovery Compliance Owed Yale and Jane Doe:** The parties report that "[m]any of these issues were resolved." ECF No. 252 at 1.-**Plaintiff's Inboxes and Social Media Accounts:** The parties will continue to work together to propose additional search terms and reach a compromise.

-**Yale's Objections to Plaintiff's Requests for Production served in 2020 and 2024:** Yale believes that the ESI proposal reasonably addressed the objections. Plaintiff states it is premature to identify outstanding discovery without reviewing the documents produced as aresult of the ESI Proposal. Plaintiff will review Yale's documents on a rolling basis and be prepared to identify outstanding issues in the Joint Status Report.

-Yale's Objections to Plaintiffs Interrogatories: The parties disagree whether objections were resolved. The parties propose that Yale will review and respond to Plaintiff's challenges to Yale's objections to certain interrogatories and will hold a meet and confer no later than **January 10, 2025.**

-The parties will file a Joint Status Report by the close of business on **January 13, 2025**, identifying what discovery issues remain outstanding.

Motions to Compel by all parties will be filed by **January 31, 2025.**

A Discovery Status Conference will be held on **January 14, 2025 at 4:00 PM** on Zoom. Signed by Judge Maria E. Garcia on 12/18/24. (Esposito, A.) (Entered: 12/18/2024)

| 12/19/2024 | 254 | NOTICE regarding hearing via Zoom: The Discovery Status Conference scheduled for 1/14/2025 at 4:00 p.m. will be conducted via Zoom. |

NOTICE regarding hearing via Zoom: The Discovery Status Conference scheduled for 1/14/2025 at 4:00 p.m. will be conducted via Zoom.

Call-in and Public Access Number: 1 646 828 7666

Meeting ID: 160 595 2000

Meeting Password: 774855

*The Court will distribute the video link to the parties via email.*

Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.

NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.

**A-34**

| | | Discovery Status Conference set for **1/14/2025 at 4:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 12/19/2024) |
|---|---|---|
| 12/19/2024 | | Set Deadlines: Joint Status Report due by 1/13/2025. (Santos, S) (Entered: 12/19/2024) |
| 01/13/2025 | 255 | Joint STATUS REPORT by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. (Laurato, Maria) (Entered: 01/13/2025) |
| 01/14/2025 | 256 | Minute Entry for proceedings held before Judge Maria E. Garcia: Discovery status conference held on 1/14/2025 via Zoom. Total Time: 1 hour and 12 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 01/15/2025) |
| 01/15/2025 | 257 | ORDER re: January 15, 2025 Discovery Status Conference. <br> The parties report that since the last Discovery Status Conference, they met and conferred and worked through several issues, (ECF No. 255), including: <br> -Challenges to Yale's objections to Plaintiff's Discovery Requests; <br> -The sufficiency of certain of Plaintiff's interrogatory responses; <br> -Search of Plaintiff's and Jane Doe's respective in-boxes; and <br> -Plaintiff's outstanding discovery compliance owed to both Yale and Jane Doe. <br> -On January 10, 2025, Defendant Yale served substantial production of the ESI search conducted on the in-boxes of the agreed-upon custodians. Yale expects to complete production on January 20, 2025. <br> -Doe will serve substantial production of documents regarding agreed upon search terms on or before January 24, 2025 <br> **PRIVILEGE LOG** <br> Any party withholding responsive documents on the basis of Attorney-Client Privilege or Work-Product Protection will provide a Privilege Log by January 24, 2025. As discussed at the hearing, if a redaction is not covered by the privilege log, the parties will meet and confer to discuss the basis for the redaction. A Joint Status Report will be filed ten (10) days after the meet and confer, identifying outstanding issues and will set forth the basis for the redaction and the parties' positions. <br> **MOTIONS TO COMPEL** <br> Motions to Compel by all parties will be filed by January 31, 2025. <br> As discussed during yesterday's conference, the motions may be filed on a rolling basis. Outstanding issues that are unresolved through meet and confer and production will be filed by January 31, 2025. <br> Issues that remain amenable to resolution through the meet and confer process, or that because of the rolling basis of production may not become ripe until later in the month may be filed at a later date subject to filing a timely Motion for Extension of Time in advance of the deadline providing a good faith basis for the extension with a proposed filing deadline. <br> **SEARCH RE: IN-BOXES** <br> The parties report there may be general agreement on the proposed search terms for the search of Plaintiff's and Jane Doe's in-boxes, but that issues remain that are still being discussed. The parties will meet and confer on Friday, January 17, 2025, to discuss the search terms; timeframe for the search of documents; the process for the search; and a deadline for completion. <br> **DEPOSITION SCHEDULE** <br> At the meet and confer on January 17, 2025, the parties will also discuss a schedule for deposing witnesses. They anticipate that the depositions will begin in March 2025. Defendants anticipate deposing five to six (5-6) witnesses. Plaintiff anticipates deposing twenty (20) witnesses. As noted during the conference, Judge Dooley previously denied Plaintiff's Request for permission to notice twenty depositions, with leave to file to renew the request after the close of written discovery. *See* ECF No. 71 ("Plaintiff's request for |

A-35

permission to notice 20 depositions is DENIED without prejudice. If, following written discovery, the Plaintiff is able to identify more than 10 individuals whose deposition he believes are appropriately noticed, he may renew his request. Defendants may renew any objection as well."). Counsel are directed to line-up the witnesses they propose to depose and set aside dates in March during the meet and confer.

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

The parties will supplement responses to interrogatories identified in the Joint Status Report dated January 13, 2025, (ECF No. 255), by February 12, 2025.

**JOINT STATUS REPORT**

The parties will file a Joint Status Report by close of business on January 21, 2025.

**FOLLOW-UP DISCOVERY STATUS CONFERENCE**

A follow-up Discovery Status Conference will be held on January 23, 2025, at 11:00 a.m. The parties will be prepared to discuss progress on search terms and limiting time frames for search of e-mail accounts and social media accounts, and a list of proposed depositions of witnesses and experts and a deposition schedule/plan. Signed by Judge Maria E. Garcia on 1/15/25. (Esposito, A.) (Entered: 01/15/2025)

| 01/16/2025 | 258 | MOTION for Extension of Time until 1/21-22/25 Comply with ECF 253 and 257 by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 01/16/2025) |
|---|---|---|
| 01/16/2025 | 259 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 1/23/2025 at 11:00 a.m. will be conducted via Zoom.<br><br>Call-in and Public Access Number: 1 646 828 7666<br><br>Meeting ID: 161 613 1298<br><br>Meeting Password: 130993<br><br>*The Court will distribute the video link to the parties via email.*<br><br>Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Follow-up discovery status conference set for **1/23/2025 at 11:00 AM** before Judge Maria E. Garcia. (Santos, S) (Entered: 01/16/2025) |
| 01/16/2025 | | Set Deadlines: Joint Status Report due by 1/21/2025. (Santos, S) (Entered: 01/16/2025) |
| 01/17/2025 | 260 | ORDER granting on consent 258 MOTION for Extension of Time until 1/22/25 at 2:00 p.m. to comply with the Court's deadlines set forth in ECF Nos. 253 and 257. Signed by Judge Maria E. Garcia on 1/17/25. (Esposito, A.) (Entered: 01/17/2025) |

**A-36**

| 01/22/2025 | 261 | Joint STATUS REPORT by Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman. (Laurato, Maria) (Entered: 01/22/2025) |
|---|---|---|
| 01/23/2025 | 262 | **ORDER re: January 23, 2025 Status Conference.**<br>A Discovery Status Conference was held on January 23, 2025, after consideration of the parties January 22, 2025, (ECF No. 261), Joint Status Report and after conferring with the parties, the agreements and deadlines are memorialized as follows:<br>**Yale's Document Production**: Yale reports that it completed document production, including its ESI document production and an additional rolling production on January 21, 2025.<br>Plaintiff reports he has not completed review of the document production produced on January 21, 2025.<br>**Plaintiff's Inboxes, Text Messages, and Social Media Accounts**: The parties report agreement as to the search terms and time frames to be applied.<br>The parties report that Yale is working with its ESI vendor to provide access to Plaintiff's counsel to perform an independent review of Plaintiff's inbox.<br>They report that once the data is uploaded to the vendor's database and the search terms applied it will take approximately 4-5 days before Plaintiff's counsel will be able to begin his review.<br>Plaintiff indicated he is in the process of engaging a vendor to assist with the search of Plaintiff's inboxes and social media. Plaintiff shall produce responsive documents on a rolling basis, with completion by February 21, 2025. Plaintiff's privilege log is due February 21, 2025.<br>The parties agree to meet and confer to discuss narrowing the subset of search terms should Defendants request a search of Plaintiff's social media accounts beyond the December 31, 2019 time frame. Plaintiff will file a motion if any dispute arises that the parties are unable to work through at a meet and confer conference.<br>**Doe's Inboxes:** The parties generally report agreement as to the search terms and time frame to be applied.<br>However, Doe objects to expanding the search past January 22, 2019. Plaintiff stated that he may be seeking a small subset of responsive documents for the period past January 22, 2019, will meet and confer with Defendants regarding a targeted request based on his discovery requests and file a motion by January 31, 2025, if the parties are unable to reach an agreement.<br>The parties report an open issue as to whether Doe searches her emails: (1) prior to October 2015; and/or (2) for search terms related to the Sally Roe, *et al* allegations. If Doe agrees to expand her search to a broader time frame, she reserves her right to supplement her production after the parties' agreed upon production date of January 24, 2025. Plaintiff will file a motion if any dispute arises that the parties are unable to work through at a meet and confer conference.<br>Doe reports that she will complete production on January 28, 2025.<br>**Hearing Transcript**: Plaintiff ordered and received unredacted transcripts from the hearing and started the process of redaction.<br>**Deposition Schedule**: The parties agree to block six dates in March to conduct approximately 16 depositions. The agreed to dates are: March 13, 17, 18, 19, 21 and 24, 2025. Plaintiff will provide a list of his top ten witnesses including Rule 30(b)(6) topics. Defendants will provide a list of their respective top six deponents. The parties will meet and confer regarding whether depositions will be held in person or by Zoom. Plaintiff agreed to provide a list of 30(b)(6) topics by February 7, 2025.<br>**Disclosure of Plaintiff's Expert Witnesses:** The deadline for Plaintiff to disclose expert witnesses was October 2024. If given leave, Plaintiff anticipates disclosing two experts; one on liability and another on damages. Plaintiff's motion for leave to reopen the |

**A-37**

deadline for disclosure of expert witnesses is due on or before January 29, 2025. Defendants' current deadline to disclose their expert witnesses is February 15, 2025. Defendants' request to hold the deadline in abeyance is GRANTED, until a ruling issues on Plaintiff's motion.

**Yale's and Doe's Privilege Log**: Defendants' Joint Motion for Extension of Time to produce their privilege logs by January 28, 2025, is GRANTED on consent.

**Motions to Compel**: The parties will meet and confer regarding filing of Motions to Compel and a timeline for filing. Any motion to extend the current deadline of January 31, 2025, will identify the issue by topic, state the reason for the extension, and assign a date for filing the motion and responses. The parties will state whether the extension will impact the current deposition schedule and/or other discovery deadlines. The motion will be filed by January 29, 2025.

The parties will file a Joint Status Report by close of business on **February 4, 2025.**

A Discovery Status Conference is scheduled for **February 7, 2025 at 10:30 a.m.**

Signed by Judge Maria E. Garcia on 1/23/25. (Esposito, A.) (Entered: 01/23/2025)

| 01/23/2025 | 263 | Minute Entry for proceedings held before Judge Maria E. Garcia: Follow-up discovery status conference held on 1/23/2025 via Zoom. Total Time: 41 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 01/24/2025) |
|---|---|---|
| 01/24/2025 | 264 | NOTICE regarding hearing via Zoom: The discovery status conference scheduled for 2/7/2025 at 10:30 a.m. will be conducted via Zoom. <br><br> Call-in and Public Access Number: 1 646 828 7666 <br><br> Meeting ID: 161 031 2082 <br><br> Meeting Password: 520499 <br><br> *The Court will distribute the video link to the parties via email.* <br><br> Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. <br><br> NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. <br> Discovery status conference set for **2/7/2025 at 10:30 AM** before Judge Maria E. Garcia. (Santos, S) (Entered: 01/24/2025) |
| 01/29/2025 | 265 | ORDER denying Defendants' 123 and 130 Emergency Motions to Dismiss. See attached Memorandum of Decision. <br> Signed by Judge Kari A. Dooley on 1/29/2025. (Alquesta, S) (Entered: 01/29/2025) |
| 01/29/2025 | 266 | Joint MOTION for Extension of Time until 2/28/2025*to file motions to compel and 3/6/2025* to file responses 262 Order,,,,,,,,,,,,,,,,,, by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 01/29/2025) |

**A-38**

| 01/30/2025 | 267 | ORDER granting 266 Joint MOTION for Extension of Time until 2/28/2025 to file motions to compel and 3/6/2025 to file responses. The Court does not anticipate granting further extensions of this deadline. Signed by Judge Maria E. Garcia on 1/30/25. (Esposito, A.) Modified on 1/30/2025 (Lewis, D). (Entered: 01/30/2025) |
|---|---|---|
| 01/31/2025 | 268 | ORDER re 262 Order. In light of the fact that Plaintiff has not filed a motion for leave to disclose experts by the deadline (January 29, 2025), the Defendants' deadline to disclose experts is reinstated as follows: Defendants shall designate all trial experts and provide opposing counselwith reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by February 22, 2025. Depositions of such experts will be completed by April 22, 2025. Signed by Judge Maria E. Garcia on 1/31/2025.(Garcia, Maria) (Entered: 01/31/2025) |
| 02/03/2025 | 269 | ORDER TO SHOW CAUSE re: Sealed Filings cited in the Court's 265 Memorandum of Decision. See attached order. Show Cause Response due by **February 25, 2025**. Signed by Judge Kari A. Dooley on 2/3/2025. (Alquesta, S) (Entered: 02/03/2025) |
| 02/04/2025 | 270 | Joint STATUS REPORT by Jane Doe. (Gooley, Brendan) (Entered: 02/04/2025) |
| 02/07/2025 | 271 | ORDER. The Court held a discovery status conference today. As discussed, a follow-up conference is scheduled for **February 24, 2025.** The parties shall meet and confer prior to the follow-up conference, but no later than **February 21, 2025.** It is so ordered. Signed by Judge Maria E. Garcia on 2/7/2025. (Karamanakis, K) (Entered: 02/07/2025) |
| 02/07/2025 | 272 | Minute Entry for proceedings held before Judge Maria E. Garcia: Follow-up discovery status conference held on 2/7/2025. Total Time: 14 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 02/07/2025) |
| 02/07/2025 | 273 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 2/24/2025 at 4:00 p.m. will be conducted via Zoom. Call-in and Public Access Number: 1 646 828 7666 Meeting ID: 160 237 9600 Meeting Password: 257641 *The Court will distribute the video link to the parties via email.* Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Follow-up discovery status conference set for **2/24/2025 at 4:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 02/07/2025) |
| 02/18/2025 | 274 | Joint MOTION for Extension of Time until 2.28.2025, 2.28.2025, 3.7.2025, 3.13.2025, 3.3.2025 *for* Plaintiff's Production/Privilege Log, Meet and Confer, Remaining Motions to Compel, Responses to Remaining Motions to Compel, Defendants' Expert Disclosure |

**A-39**

| | | |
|---|---|---|
| | | Deadline, Respectively by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 02/18/2025) |
| 02/19/2025 | 275 | ORDER granting 274 on consent Joint Motion for Extension of Time.<br>The schedule is modified as follows:<br>Plaintiff's Production/Privilege Log: by February 28, 2025<br>Meet And Confer: will be held on February 28, 2025<br>Remaining Motions To Compel: by March 7, 2025<br>Responses To Remaining Motions To Compel: by March 13, 2025<br>Defendants' Expert Disclosure Deadline: March 3, 2025<br><br>A follow-up Discovery Status Conference will be held on March 7, 2025 at 10:00 AM on Zoom.<br>Signed by Judge Maria E. Garcia on 2/19/25. (Esposito, A.) (Entered: 02/19/2025) |
| 02/19/2025 | 276 | NOTICE regarding hearing via Zoom: The Follow-up discovery status conference scheduled for 3/7/2025 at 10:00 a.m. will be conducted via Zoom.<br><br>Call-in and Public Access Number: 1 646 828 7666<br><br>Meeting ID: 160 237 9600<br><br>Meeting Password: 257641<br><br>*The Court will distribute the video link to the parties via email.*<br><br>Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. *RESET FROM 2/24/2025, 4:00 p.m.* Follow-up discovery status conference set for **3/7/2025 at 10:00 AM** before Judge Maria E. Garcia. (Santos, S) (Entered: 02/19/2025) |
| 02/25/2025 | 277 | RESPONSE TO 269 Order to Show Cause by Jane Doe filed by Jane Doe. (Gooley, Brendan) (Entered: 02/25/2025) |
| 02/25/2025 | 278 | MOTION to Seal Exhibits to Jane Doe's Response to the Court's Show Cause Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 02/25/2025) |
| 02/25/2025 | 279 | Sealed Document: Exhibits A-F to Jane Doe's Response to Order to Show Cause by Jane Doe . (Attachments: # 1 Exhibit A (Sealed), # 2 Exhibit B (Sealed), # 3 Exhibit C (Sealed), # 4 Exhibit D (Sealed), # 5 Exhibit E (Sealed), # 6 Exhibit F (Sealed))(Gooley, Brendan) (Entered: 02/25/2025) |
| 02/25/2025 | 280 | RESPONSE TO 269 Order to Show Cause by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, |

**A-40**

| | | Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 02/25/2025) |
|---|---|---|
| 02/25/2025 | 281 | MOTION for *Order* Requiring Certain Discussion of Documents Subject to Potential Unsealing to be Filed Under Seal Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 02/25/2025) |
| 02/27/2025 | 282 | Consent MOTION for Extension of Time until March 7, 2025 to Disclose Potential Expert by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 02/27/2025) |
| 02/28/2025 | 283 | ORDER granting 282 on consent Doe's Motion for Extension of Time to disclose one of her potential experts to March 3, 2025. Signed by Judge Maria E. Garcia on 2/28/25. (Esposito, A.) (Entered: 02/28/2025) |
| 03/04/2025 | 284 | Joint STATUS REPORT by Saifullah Khan. (Taubes, Alexander) (Entered: 03/04/2025) |
| 03/07/2025 | 285 | ORDER re: 276 March 7, 2025 Discovery Status Conference.<br>During today's conference the following schedule was set:<br>-Plaintiff will produce his Privilege Log by the close of business today.<br>-Defendant Doe will disclose her additional expert by the close of business today.<br>-The parties will meet and confer at least two times and file a proposed scheduling order prior to the next conference.<br>A follow-up Discovery Status Conference will be held on **March 19, 2025 at 4:00 PM.** A separate calendar will enter.<br>Signed by Judge Maria E. Garcia on 3/7/25. (Esposito, A.) (Entered: 03/07/2025) |
| 03/07/2025 | 286 | Minute Entry for proceedings held before Judge Maria E. Garcia: Follow-up discovery status conference held on 3/7/2025 via Zoom. Total Time: 60 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 03/07/2025) |
| 03/07/2025 | 287 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 3/19/2025 at 4:00 p.m. will be conducted via Zoom.<br><br>Call-in and Public Access Number: 1 646 828 7666<br><br>Meeting ID: 161 323 8360<br><br>Meeting Password: 399004<br><br>*The Court will distribute the video link to the parties via email.*<br><br>Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Follow-up discovery status conference set for **3/19/2025 at 4:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 03/07/2025) |

**A-41**

| 03/18/2025 | 288 | Joint STATUS REPORT *AND MOTION FOR CONTINUANCE* by Jane Doe. (Gooley, Brendan) (Entered: 03/18/2025) |
|---|---|---|
| 03/19/2025 | 289 | ORDER granting 288 Joint Motion for Continuance. The following deadlines are continued: The parties will hold a second meet and confer on or before March 25, 2025. A proposed Scheduling Order will be filed on or before March 21, 2025. A follow-up Discovery Status Conference will be held on **March 28, 2025 at 10:00 AM**. Signed by Judge Maria E. Garcia on 3/19/25. (Esposito, A.) (Entered: 03/19/2025) |
| 03/19/2025 | 290 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 3/28/2025 at 10:00 a.m. will be conducted via Zoom. Call-in and Public Access Number: 1 646 828 7666 Meeting ID: 161 323 8360 Meeting Password: 399004 *The Court will distribute the video link to the parties via email.* Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. *RESET FROM 3/19/2025, at 4:00 p.m.* Follow-up discovery status conference set for **3/28/2025 at 10:00 AM** before Judge Maria E. Garcia. (Santos, S) (Entered: 03/19/2025) |
| 03/19/2025 | 291 | ORDER: The follow-up discovery status conference scheduled for March 28, 2025 has been rescheduled to March 27, 2025, at 10:00 a.m. Signed by Judge Maria E. Garcia on 3/19/2025. (Santos, S) (Entered: 03/19/2025) |
| 03/19/2025 | 292 | NOTICE regarding hearing via Zoom: The follow-up discovery conference scheduled for 3/27/2025 at 10:00 a.m. will be conducted via Zoom. Call-in and Public Access Number: 1 646 828 7666 Meeting ID: 161 323 8360 Meeting Password: 399004 *The Court will distribute the video link to the parties via email.* Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal |

**A-42**

| | | |
|---|---|---|
| | | courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. |
| | | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. *RESET FROM 3/28/2025, at 10:00 a.m.* Follow-up discovery status conference set for **3/27/2025 at 10:00 AM** before Judge Maria E. Garcia. (Santos, S) (Entered: 03/19/2025) |
| 03/19/2025 | 293 | TRANSCRIPT of Proceedings: Type of Hearing: Discovery Status Conference. Held on March 7, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 4/9/2025. Redacted Transcript Deadline set for 4/21/2025. Release of Transcript Restriction set for 6/17/2025. (Marshall, Martha) (Entered: 03/19/2025) |
| 03/19/2025 | 294 | MOTION to Compel by Saifullah Khan.Responses due by 4/9/2025 (Attachments: # 1 Exhibit Plaintiff's 2020 Discovery Requests and Yale Objections, # 2 Exhibit Plaintiff's 2024 Discovery Requests and Yale Objections, # 3 Affidavit of Compliance with Local Rule 37, # 4 Text of Proposed Order)Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 03/19/2025) |
| 03/21/2025 | 295 | PROPOSED ORDER *Joint Proposed Scheduling Order* by Jane Doe. (Gooley, Brendan) (Entered: 03/21/2025) |
| 03/27/2025 | 296 | Minute Entry for proceedings held before Judge Maria E. Garcia: Follow-up discovery status conference held on 3/27/2025. Total Time: 51 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 03/27/2025) |
| 03/27/2025 | 297 | AMENDED SCHEDULING ORDER. During a Discovery Status Conference held March 27, 2025, the Court heard the parties on their Joint Proposed Scheduling Order, ECF No. 295. The parties agree that fact and expert discovery will not be conducted in phases. The Court adopts and modifies the schedule as follows: <br><br>-Defendants' Response to Plaintiff's Motion to Compel by April 28, 2025. Plaintiff's Reply by May 5, 2025. The briefs will include legal authority for the discovery they seek to compel. <br>-Update Initial Disclosures on or before April 30, 2025. <br>-Remaining Motions to Compel, including issues raised regarding the Privilege Logs and redactions, will be filed by April 30, 2025. <br>-Responses to Remaining Motions to Compel by May 21, 2025. <br>-Disclosure of Plaintiff's Rebuttal Experts by May 19, 2025. <br>-Fact Depositions, other than Jane Doe, by August 15, 2025. <br>-Supplementation of Expert Reports by July 31, 2025. <br>-Depositions of Rebuttal Experts by August 30, 2025. <br>-*Daubert*/Expert Motions by September 30, 2025. |

**A-43**

| | | |
|---|---|---|
| | | -Close of Discovery (Doe's Deposition) by October 15, 2025.<br>-Filing of Dispositive Motions by November 14, 2025.<br>-Opposition to Dispositive Motions by December 19, 2025.<br>-Replies to Dispositive Motions by January 9, 2026.<br><br>Signed by Judge Maria E. Garcia on 3/27/25. (Esposito, A.) (Entered: 03/27/2025) |
| 03/27/2025 | 298 | MEMORANDUM of March 27, 2025, Discovery Status Conference.<br>-Plaintiff will provide to Defendants a list of the people he seeks to depose by April 11, 2025, for discussion during the scheduled meet and confer conferences.<br>-By April 11, 2025, Defendants will provide dates for Plaintiff's deposition which the parties have agreed to be limited to ten hours spread over two nonconsecutive days.<br>-Plaintiff and Defendant Doe will hold a separate meet and confer regarding outstanding discovery that may be the subject of a Motion to Compel in an effort to narrow the discovery at issue.<br>-The parties agreed to hold follow-up meet and confer conferences in person on April 18 and 21, 2025. The parties will discuss Plaintiff's July 2024, 84 Requests for Production during the conferences.<br>- The parties will file a Joint Status Report on or before **April 23, 2025,** and provide a chart of the deposition schedule. The chart will contain the details discussed during today's conference, including identifying the date for the depositions, whether the deposition will be taken in person or virtually, the expected length of the deposition, and any other information that will assist the parties in scheduling.<br>-A follow-up Discovery Status Conference will be held on **April 24, 2025 at 10:00 AM** via Zoom.<br><br>Signed by Judge Maria E. Garcia on 3/27/2025. (Esposito, A.) Modified text on 3/27/2025 (Santos, S). (Entered: 03/27/2025) |
| 03/27/2025 | 299 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 4/24/2025 at 10:00 a.m. will be conducted via Zoom.<br><br>Call-in and Public Access Number: 1 646 828 7666<br><br>Meeting ID: 160 125 5046<br><br>Meeting Password: 191120<br><br>*The Court will distribute the video link to the parties via email*.<br><br>Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Follow-up discovery status conference set for **4/24/2025 at 10:00 AM** before Judge Maria E. Garcia. (Santos, S) (Entered: 03/27/2025) |

**A-44**

| 03/27/2025 | 300 | Set Deadlines: Dispositive motion due by 11/14/2025, responses due 12/19/2025, replies due 1/9/2026, response to 294 MOTION to Compel due by 4/28/2025, reply by 5/5/2025. (Santos, S) (Entered: 03/31/2025) |
| --- | --- | --- |
| 03/27/2025 | | Set Deadlines: Joint status report due by 4/23/2025. (Santos, S) (Entered: 03/31/2025) |
| 03/31/2025 | 301 | ENTERED IN ERROR: NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. A follow-up settlement call is scheduled for **March 31, 2025, at 4:00 p.m.**, before Judge Maria E. Garcia. All parties shall attend. To join the call, please dial **203-684-6202** and enter the **conference ID 174 517 042#** when prompted. (Santos, S) Modified on 3/31/2025 (Santos, S). (Entered: 03/31/2025) |
| 03/31/2025 | 302 | Docket Entry Correction re 301 Calendar Entry: Docketed on wrong case. (Santos, S) (Entered: 03/31/2025) |
| 04/18/2025 | 303 | ORDER. The Telephonic Status Conference scheduled for April 22, 2025, *see* ECF No. 68, is cancelled. It shall be rescheduled by the Court to a date after the close of discovery. Signed by Judge Kari A. Dooley on 4/18/2025. (Alquesta, S) (Entered: 04/18/2025) |
| 04/23/2025 | 304 | Joint STATUS REPORT *AND MOTION FOR EXTENSION* by Jane Doe. (Gooley, Brendan) (Entered: 04/23/2025) |
| 04/24/2025 | 305 | ORDER granting 304 Joint STATUS REPORT AND MOTION FOR EXTENSION by Jane Doe. The Court held a Discovery Status Conference today. The Parties reported progress scheduling depositions and reported that they continue to meet and confer to address issues raised in Plaintiff's Motion to Compel and Plaintiff's Privilege Log. The Joint Motion to Extend the deadlines are granted as follows: 1. Responses to Plaintiff's Motion to Compel are due **May 7, 2025**; 2. Remaining Motions to Compel are due **May 7, 2025**; and 3. Responses to remaining Motions to Compel are due **May 28, 2025**. A follow-up Discovery Status Conference will be held via Zoom on **May 9, 2025 at 1:00 PM.** The parties will file a Joint Status Report, by the close of business **May 8, 2025** identifying issues to be addressed during the conference. Signed by Judge Maria E. Garcia on 4/24/25. (Esposito, A.) (Entered: 04/24/2025) |
| 04/24/2025 | 306 | Minute Entry for proceedings held before Judge Maria E. Garcia: Motion hearing 304 Joint STATUS REPORT *AND MOTION FOR EXTENSION* by Jane Doe. Motion Hearing held on 4/24/2025 via Zoom. Follow-up Discovery status conference held on 4/24/2025 via Zoom. Total Time: 13 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 04/24/2025) |
| 04/24/2025 | 307 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 5/9/2025 at 1:00 p.m. will be conducted via Zoom. Call-in and Public Access Number: 1 646 828 7666 Meeting ID: 160 703 8044 Meeting Password: 390308 *The Court will distribute the video link to the parties via email.* Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the** |

A-45

| | | |
|---|---|---|
| | | **parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Follow-up discovery status conference set for **5/9/2025 at 1:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 04/28/2025) |
| 04/24/2025 | | Set Deadlines: Joint status report due by 5/8/2025. (Santos, S) (Entered: 04/28/2025) |
| 05/06/2025 | 308 | Joint MOTION for Extension of Time until 5/12 and 5/13 To File Motions to Compel and File Joint Status Report, and to reschedule Discovery Status Conference by Yale University. Motions referred to Maria E. Garcia(Weller, Giovanna) (Entered: 05/06/2025) |
| 05/07/2025 | 309 | ORDER granting 308 Joint Motion for Extension of Time as follows:<br>- Motions to Compel are due **Monday, March 12, 2025;** and<br>-The parties will file a Joint Status Report by **Friday, May 16, 2025;**<br>A follow-up Discovery Status Conference is *rescheduled* to **Monday, May 19, 2025 at 2:00 PM.**<br>Signed by Judge Maria E. Garcia on 5/7/25. (Esposito, A.) (Entered: 05/07/2025) |
| 05/07/2025 | 310 | NOTICE regarding hearing via Zoom: The follow-up discovery status conference scheduled for 5/19/2025 at 2:00 p.m. will be conducted via Zoom.<br><br>Call-in and Public Access Number: 1 646 828 7666<br><br>Meeting ID: 160 703 8044<br><br>Meeting Password: 390308<br><br>*The Court will distribute the video link to the parties via email.*<br><br>Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. *RESET FROM 5/9/2025, at 1:00 p.m.* Follow-up discovery status conference set for **5/19/2025 at 2:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 05/07/2025) |
| 05/07/2025 | | Set Deadlines: Joint status report due by 5/16/2025. (Santos, S) (Entered: 05/07/2025) |
| 05/07/2025 | 311 | Memorandum in Opposition re 294 MOTION to Compel filed by Yale University. (Attachments: # 1 Affidavit M. Laurato, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 |

**A-46**

| | | |
|---|---|---|
| | | Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S)(Laurato, Maria) (Entered: 05/07/2025) |
| 05/07/2025 | 312 | MOTION to Seal EXHIBITS F, H, I, J AND P TO OPPOSITION TO MOTION TO COMPEL by Yale University. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 05/07/2025) |
| 05/07/2025 | 313 | Memorandum in Opposition re 294 MOTION to Compel filed by Jane Doe. (Gooley, Brendan) (Entered: 05/07/2025) |
| 05/07/2025 | 314 | Sealed Document: Sealed Exs. F, H, I, J, P to Yale University's Opposition to Plaintiff's Motion to Compel by Yale University re 312 MOTION to Seal EXHIBITS F, H, I, J AND P TO OPPOSITION TO MOTION TO COMPEL . (Laurato, Maria) (Entered: 05/07/2025) |
| 05/09/2025 | 315 | Joint MOTION for Extension of Time until May 12, 2025 to May 21, 2025, May 12, 2025 to May 14, 2025, and May 19, 2025 to June 9, 2025 for Filing Motions to Compel and to Disclose Rebuttal Experts by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 05/09/2025) |
| 05/12/2025 | 316 | ORDER granting 315 Joint Motion for Extension of Time for Filing Remaining Motions to Compel and for Disclosure of Rebuttal Experts as follows: <br>-Plaintiff will file his Motion to Compel regarding remaining issues as to (a) Jane Doe; and (b) Entries related to Jane's claim regarding psychotherapist patient privilege on Yale's privilege log by **May 21, 2025;** <br>-The parties will file their Motions to Compel regarding Plaintiff's privilege log and Yale's privilege log (other than entries on that log related to Janes psychotherapist patient privilege) by **May 14, 2025; and** <br>-Plaintiff will disclose his rebuttal experts by **June 9, 2025.** <br><br>Plaintiff's replies to Defendants objections, (ECF Nos. 311 and 313), to Plaintiff's Motion to Compel as to Yale, (ECF No. 294), are due on **May 14, 2025, by agreement.** *See* D. Conn. L. Civ. R. 7(d) ("Reply memoranda are permitted but not required.... A reply memorandum may not exceed 10 pages. A reply memorandum must be strictly confined to a discussion of matters raised by, and must contain references to the pages of, the memorandum to which it replies. No sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause."). Signed by Judge Maria E. Garcia on 5/12/25. (Esposito, A.) (Entered: 05/12/2025) |
| 05/12/2025 | 317 | ORDER re 269 Order to Show Cause and denying as moot 278 Motion to Seal. See attached order. For the reasons described therein, the Court issues the following orders: <br><br>1. ECF Nos. 75-10, 103-7, and 123-2 shall remain under seal. <br><br>2. The unredacted versions of ECF Nos. 75, 103-1, 114-4, 123-1, 157-1, and 166 shall remain under seal. <br><br>3. Defendant Doe is directed to docket the redacted versions of ECF Nos. 75, 103-1, 114-4, 123-1, 157-1, and 166, currently docketed under seal at ECF Nos. 279-1 through 279-6, as individual submissions, linked back to the original sealed documents for ease of public reference. <br><br>4. The Clerk of Court is directed to unseal ECF Nos. 74, 75-1, 75-2, 75-3, 75-4, 75-5, 75-6, 75-7, 75-8, 75-9, 77, 96, 96-1, 103, 103-2, 103-3, 103-4, 103-5, 103-6, 103-8, 103-9, 114, 114-1, 114-2, 114-3, 123, 157, and 166-1. |

**A-47**

| | | |
|---|---|---|
| | | 5. In light of the above orders, Defendant Doe's Motion at ECF No. 278 is DENIED as moot. As such, the Clerk of Court is directed to unseal ECF Nos. 279-1 through 279-6.<br><br>So ordered.<br><br>Signed by Judge Kari A. Dooley on 5/12/2025. (Alquesta, S) (Entered: 05/12/2025) |
| 05/12/2025 | 318 | ORDER granting in part and denying in part 281 Motion for Order. Defendant Doe requests an order requiring "that any briefing related to unsealing documents that (1) could allow anyone to identify Jane or (2) substantively discusses the information in ECF 114-4 that Jane seeks to maintain under seal be filed under seal." Plaintiff has not objected to this motion, and the time for him to do so has passed. With respect to Defendant Doe's first request, the Court has already issued an order prohibiting Plaintiff from publicly disclosing Defendant Doe's identity, "directly or indirectly (including through his counsel)." *See* Ruling and Order, ECF No. 119 , at 15. That order remains in effect, and by its language encompasses filings on the docket. Any further order to that effect would be redundant. Therefore, Defendant Doe's request that the Court issue a separate order requiring that any briefing which could be used to identify her be filed under seal is DENIED as moot.<br><br>With respect to Defendant Doe's second request, the Court has reviewed the contents of ECF No. 114-4, including the portion that Defendant Doe characterized in her response to the Court's Order to Show Cause as "inaccurate, vile allegations." ECF No. 277 at 5. The Court has concluded that maintaining these portions of ECF No. 114-4 under seal is warranted. *See* ECF No. 317 . The request is therefore GRANTED, and it is ordered that any further filings which contain the portions of ECF No. 114-4 that remain sealed must also be filed under seal.<br><br>Signed by Judge Kari A. Dooley on 5/12/2025. (Alquesta, S) (Entered: 05/12/2025) |
| 05/12/2025 | 319 | MOTION for Extension of Time until May 21, 2025 Motion To Compel Regarding Additional Issue by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 05/12/2025) |
| 05/13/2025 | 320 | ORDER granting 319 on consent Jane Doe's MOTION for Extension of Time until May 21, 2025, to file Motion To Compel Regarding Plaintiff's Production of Certain Electronic Messages. Signed by Judge Maria E. Garcia on 5/13/25. (Esposito, A.) (Entered: 05/13/2025) |
| 05/13/2025 | 321 | Set/Reset Deadlines as to 312 MOTION to Seal EXHIBITS F, H, I, J AND P TO OPPOSITION TO MOTION TO COMPEL.<br>Responses due by 5/28/2025.<br>(Esposito, A.) (Entered: 05/13/2025) |
| 05/14/2025 | 322 | MOTION to Compel by Yale University.Responses due by 6/4/2025 (Attachments: # 1 Memorandum in Support, # 2 Affidavit M.L. Laurato, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I)Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 05/14/2025) |
| 05/14/2025 | 323 | MOTION to Seal Exhibits A, B, C, E, F and H to the Memorandum in Support of Motion to Compel by Yale University. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 05/14/2025) |

**A-48**

| 05/14/2025 | 324 | Sealed Document: Exs. A, B, C, E, F and H to the Memorandum in Support of the Motion to Compel by Yale University re 323 MOTION to Seal Exhibits A, B, C, E, F and H to the Memorandum in Support of Motion to Compel . (Laurato, Maria) (Entered: 05/14/2025) |
| --- | --- | --- |
| 05/14/2025 | 325 | MOTION to Compel by Jane Doe.Responses due by 6/4/2025 (Attachments: # 1 Memorandum in Support, # 2 Affidavit Declaration of Brendan Gooley)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 05/14/2025) |
| 05/14/2025 | 326 | REPLY to Response to 294 MOTION to Compel filed by Saifullah Khan. (Taubes, Alexander) (Entered: 05/14/2025) |
| 05/14/2025 | 327 | MOTION to Compel by Saifullah Khan.Responses due by 6/4/2025 (Attachments: # 1 Exhibit Yale's Privilege Log (4/28/25), # 2 Affidavit Certifying Compliance With Local Rule)Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 05/14/2025) |
| 05/16/2025 | 328 | Joint STATUS REPORT by Saifullah Khan. (Taubes, Alexander) (Entered: 05/16/2025) |
| 05/19/2025 | 329 | ORDER. As discussed at the discovery status conference on May 19, 2025, the parties shall file their responses to the pending 322 325 327 Motions to Compel on or before **June 4, 2025.**<br>All parties asserting privilege shall submit to Judge Garcia's chambers, by **June 4, 2025,** copies of all documents being withheld on the basis of privilege for *in camera* review.<br>It is so ordered. Signed by Judge Maria E. Garcia on 5/19/2025. (Karamanakis, K) (Entered: 05/19/2025) |
| 05/19/2025 | 330 | Minute Entry for proceedings held before Judge Maria E. Garcia: Follow-up discovery status conference held on 5/19/2025. Total Time: 19 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 05/19/2025) |
| 05/20/2025 | 331 | MOTION to Seal Motion for Judgment of Dismissal and/or Other Sanctions and Exhibits by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 05/20/2025) |
| 05/20/2025 | 332 | MOTION for Judgment by Jane Doe.Responses due by 6/10/2025 (Attachments: # 1 Affidavit Declaration of Brendan Gooley, # 2 Exhibit G, # 3 Exhibit H, # 4 Exhibit I, # 5 Exhibit J, # 6 Exhibit M, # 7 Exhibit N, # 8 Exhibit R, # 9 Exhibit T, # 10 Exhibit U, # 11 Exhibit V)(Gooley, Brendan) (Entered: 05/20/2025) |
| 05/20/2025 | 333 | Sealed Document: Sealed Motion for Judgment of Dismissal and/or Other Sanctions and Exhibits by Jane Doe . (Attachments: # 1 Exhibit A (Sealed), # 2 Exhibit B (Sealed), # 3 Exhibit C (Sealed), # 4 Exhibit D (Sealed), # 5 Exhibit E (Sealed), # 6 Exhibit F (Sealed), # 7 Exhibit G (Sealed), # 8 Exhibit K (Sealed), # 9 Exhibit L (Sealed), # 10 Exhibit O (Sealed), # 11 Exhibit P (Sealed), # 12 Exhibit Q (Sealed), # 13 Exhibit S (Sealed), # 14 Exhibit W (Sealed))(Gooley, Brendan) (Entered: 05/20/2025) |
| 05/21/2025 | 334 | MOTION to Seal Exhibits A-C to Motion to Compel by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 05/21/2025) |
| 05/21/2025 | 335 | MOTION to Compel *Complete and Understandable Messages* by Jane Doe.Responses due by 6/11/2025 (Attachments: # 1 Memorandum in Support, # 2 Affidavit Declaration of Brendan Gooley, # 3 Exhibit A - To Be Filed Under Seal, # 4 Exhibit B - To Be Filed Under Seal, # 5 Exhibit C - To Be Filed Under Seal)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 05/21/2025) |
| 05/21/2025 | 336 | Sealed Document: Sealed Exhibits A-C to Motion to Compel Complete and Understandable Messages by Jane Doe . (Attachments: # 1 Exhibit A (SEALED), # 2 Exhibit B (SEALED), # 3 Exhibit C (SEALED))(Gooley, Brendan) (Entered: 05/21/2025) |

**A-49**

| 05/30/2025 | 337 | Consent MOTION for Extension of Time until 7/9 to disclose rebuttal experts and extending related deadlines accordingly 316 Order on Motion for Extension of Time,,,,, by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 05/30/2025) |
|---|---|---|
| 05/30/2025 | 338 | Consent MOTION for Extension of Time to File Response/Reply as to 332 MOTION for Judgment until 7/1/25 by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 05/30/2025) |
| 05/30/2025 | 339 | ORDER granting 337 on consent MOTION for Extension of Time until July 9, 2025, to disclose rebuttal experts and extending related deadlines as follows:<br>Plaintiffs deadline to disclose his experts: **July 9, 2025**<br>Supplementation of Expert Reports: **September 3, 2025**<br>Depositions of Plaintiffs experts: **September 30, 2025**<br>Daubert/expert motions: **October 30, 2025**<br>Signed by Judge Maria E. Garcia on 5/30/25. (Esposito, A.) (Entered: 05/30/2025) |
| 05/30/2025 | 340 | ORDER granting 338 on consent Motion for Extension of Time to File Response/Reply regarding 332 Motion for Judgment of Dismissal and/or Other Sanctions.<br>Responses due by **7/1/2025.** .<br>Signed by Judge Maria E. Garcia on 5/30/25. (Esposito, A.) (Entered: 05/30/2025) |
| 05/30/2025 | 341 | Set/Reset Deadlines as to 332 MOTION for Judgment of Dismissal and/or Other Sanctions.<br>Responses due by 7/1/2025. (Esposito, A.) (Entered: 05/30/2025) |
| 05/30/2025 | 342 | Consent MOTION for Extension of Time to File Response/Reply as to 327 MOTION to Compel , 322 MOTION to Compel , 325 MOTION to Compel until 6/18/25 by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 05/30/2025) |
| 06/03/2025 | 343 | ORDER granting 342 on consent Motion for Extension of Time to File Response/Reply re: 322 MOTION to Compel; 325 MOTION to Compel; and 327 MOTION to Compel and the delivery of copies of documents being withheld on the basis of privilege for *in camera* review.<br>Responses due by 6/18/2025.<br>Signed by Judge Maria E. Garcia on 6/3/25. (Esposito, A.) (Entered: 06/03/2025) |
| 06/10/2025 | 344 | MOTION to Compel *documents and information withheld by Jane Doe* by Saifullah Khan.Responses due by 7/1/2025 (Attachments: # 1 Affidavit in compliance with Rule 37, # 2 Exhibit Jane Doe's Discovery Objections, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C)Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 06/10/2025) |
| 06/17/2025 | 345 | Memorandum in Opposition re 327 MOTION to Compel filed by Yale University. (Attachments: # 1 Affidavit of Attorney Maria L. Laurato, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H) (Laurato, Maria) (Entered: 06/17/2025) |
| 06/17/2025 | 346 | MOTION to Seal Exhibits F and G to Yale's Memorandum in Opposition to Plaintiff's Motion to Compel by Yale University. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 06/17/2025) |
| 06/17/2025 | 347 | Sealed Document: Sealed Exhibits F and G to Yale's Memorandum in Opposition to Plaintiff's Motion to Compel by Yale University re 346 MOTION to Seal Exhibits F and G to Yale's Memorandum in Opposition to Plaintiff's Motion to Compel . (Laurato, Maria) (Entered: 06/17/2025) |
| 06/17/2025 | 348 | OBJECTION re 327 MOTION to Compel filed by Jane Doe. (Gooley, Brendan) (Entered: 06/17/2025) |

**A-50**

| | | |
|---|---|---|
| 06/17/2025 | 349 | MOTION to Compel re 322 MOTION to Compel *and notice of voluntary production despite substantial justification of privilege claim* filed by Saifullah Khan. (Attachments: # 1 Affidavit)(Taubes, Alexander) Modified on 6/18/2025 to correct event type (Fanelle, N.) (Entered: 06/17/2025) |
| 06/18/2025 | 350 | ExParte Document by Saifullah Khan *Notice of Manual Filing of Binders Containing Documents*. (Taubes, Alexander) (Entered: 06/18/2025) |
| 06/18/2025 | 351 | ORDER re: 349 MOTION to Compel filed by Saifullah Khan.<br>In light of the titled Plaintiff's "Motion to Compel" (ECF No. 349), which does not appear to be a motion but rather a response to Yale's Motion to Compel (ECF No. 322) and Doe's Motion to Compel (ECF No. 325), communications with Peter Roe listed on Plaintiff's privilege log, the parties will meet and confer and file a Joint Status Report by the close of business June 20, 2025, regarding the status of these Motions to Compel (ECF Nos. 322, 325), and state whether the relief they seek is now moot. Plaintiff is instructed not to "voluntarily produce" documents for *in camera* review that are no longer at issue. ECF No. 350.<br>Signed by Judge Maria E. Garcia on 6/18/25. (Esposito, A.) (Entered: 06/18/2025) |
| 06/19/2025 | 352 | Joint MOTION for Extension of Time until Tuesday, June 24, 2025 to meet and confer and file Joint Status Report 351 Order,,, by Yale University. Motions referred to Maria E. Garcia(Laurato, Maria) (Entered: 06/19/2025) |
| 06/20/2025 | 353 | ORDER granting 352 Joint MOTION for Extension of Time until **Tuesday, June 24, 2025** to meet and confer and file Joint Status Report.<br>Signed by Judge Maria E. Garcia on 8/20/25. (Esposito, A.) (Entered: 06/20/2025) |
| 06/20/2025 | | Set Deadlines: Joint Status Report due by 6/24/2025. (Santos, S) (Entered: 06/23/2025) |
| 06/23/2025 | 354 | ORDER. As contained in the Yale Defendants' Opposition to Plaintiff's Motion to Compel, ECF No. 345 , at 2, on June 16, 2025, Plaintiff published a post on X that the Court considers a present intention or thinly veiled threat to publicly identify Defendant Jane Doe. This would, of course, violate the Court's Order at ECF No. 119 . This post is yet another example of Plaintiff's troubling conduct. Plaintiff is reminded that the Court's Order dated June 19, 2024, at ECF No. 119 , remains in full force and effect. Plaintiff's counsel is directed to provide a copy of this order to Plaintiff by **July 1, 2025**.<br>Signed by Judge Kari A. Dooley on 6/23/2025. (Alquesta, S) (Entered: 06/23/2025) |
| 06/24/2025 | 355 | ORDER granting in part and denying in part 312 Yale's Motion to Seal unredacted copies of Exhibits F, H, I, J, and P filed with its Memorandum in Opposition to Plaintiffs Motion to Compel (ECF No. 294, 311), in accordance with the Protective Order entered in this case providing for the confidentiality of certain documents. ECF. No. 198.<br>Plaintiff has not filed a response to the Motion to Seal and the time for doing so has expired. After careful consideration, the motion to seal is granted as to Exhibits F and H for the same reasons stated in Judge Dooley's previous ruling on motions to seal, at ECF No. 93: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern."<br>The Court finds that as to Exhibits I, J, and P, that the documents may contain some information warranting sealing and finds that other information contained in these exhibits do not require sealing. Accordingly, Exhibits I, J, and P shall be refiled with appropriate redactions narrowly tailored to address privacy concerns. It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/24/25. (Esposito, A.) (Entered: 06/24/2025) |
| 06/24/2025 | 356 | ORDER granting 323 Yale's Motion to Seal unredacted copies of Exhibits A, B, C, E, F, and H filed with its Memorandum in Support of its Motion to Compel (ECF No. 322), in accordance with the Protective Order entered in this case providing for the confidentiality |

of certain documents. ECF. No. 198.

Plaintiff has not filed a response to the Motion to Seal and the time for doing so has expired. After careful consideration, and for the same reasons stated in Judge Dooley's previous ruling on motions to seal, at ECF No. 93: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered.

Signed by Judge Maria E. Garcia on 6/24/25. (Esposito, A.) (Entered: 06/24/2025)

| 06/24/2025 | 357 | ORDER granting in part and denying in part 331 Doe's Motion to Seal an unredacted version of the motion; Exhibits A, B, D, C, E, F, K,L, O, P, Q, R, S and W; and Exhibits 1, 2, 3, to Exhibit G, Declaration of Attorney Maria Laurato, filed with her Memorandum in Support of her Motion to Compel (ECF No. 335)<br>Plaintiff properly designated the Exhibits to the Motion to Compel as confidential pursuant to, the Protective Order entered in this case providing for the confidentiality of certain documents. ECF. No. 198.<br>Plaintiff has not filed a response to the Motion to Seal and the time for doing so has expired. After careful consideration, the motion to seal is granted as to Exhibits A, B, D, C, E, F, K,L, O, P, Q, R, S and W; and Exhibits 2 to Exhibit G. The Court finds that Doe redacted from Exhibits 1 and 3 to Exhibit G the information that warrants sealing and finds that the other information contained in the exhibit does not require sealing. Accordingly, Exhibits 1 and 3 to Exhibit G, the Declaration of Attorney Maria Laurato, do not need to remain under seal with these appropriate redactions. It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/24/25. (Esposito, A.) (Entered: 06/24/2025) |
| 06/24/2025 | 358 | ORDER denying 334 Doe's Motion to Seal copies of Exhibits A, B and C filed with her Memorandum in Support of her Motion to Compel (ECF No. 335)<br>Plaintiff properly designated the Exhibits to the Motion to Compel as "confidential" pursuant to, the Protective Order entered in this case providing for the confidentiality of certain documents. ECF. No. 198.<br>Plaintiff has not filed a response to the Motion to Seal and the time for doing so has expired. After careful consideration, the Court finds that Doe redacted from the exhibits the information that warrants sealing and finds that the other information contained in the exhibit does not require sealing. Accordingly, Exhibits A, B and C do not need to remain under seal with these appropriate redactions. It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/24/25. (Esposito, A.) (Entered: 06/24/2025) |
| 06/24/2025 | 359 | ORDER granting 346 Yale's Motion to Seal copies of Exhibits F and G to its Memorandum in Opposition to Plaintiff's Motion to Compel (ECF No. 327, 345), in accordance with the Protective Order entered in this case providing for the confidentiality of certain documents. ECF. No. 198.<br>Plaintiff has not filed a response to the Motion to Seal and the time for doing so has expired. After careful consideration, and for the same reasons stated in Judge Dooley's previous ruling on motions to seal, at ECF No. 93: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/24/25. (Esposito, A.) (Entered: 06/24/2025) |
| 06/24/2025 | 360 | Joint STATUS REPORT by Yale University. (Attachments: # 1 Affidavit of Maria L. Laurato, # 2 Exhibit A to Laurato Affidavit)(Laurato, Maria) (Entered: 06/24/2025) |
| 06/25/2025 | 361 | ORDER *sua sponte* STAYING discovery. "It is axiomatic that the trial court enjoys wide discretion in its handling of pre-trial discovery." *Wills v. Amerada Hess Corp*., 379 F.3d 32, 51 (2d Cir. 2004). "The decision whether to issue a stay is firmly within a district court's discretion, and in balancing the relevant factors the basic goal is to avoid |

**A-52**

prejudice." *In re Frontier Commc'ns Corp. Derivative Litig.*, No. 3:17-CV-1792 (VAB), 2018 WL 3553332, at \*6 (D. Conn. July 23, 2018) (quotation marks and citation omitted). Generally, it is not the practice of this Court to stay discovery upon the filing of a motion to dismiss. *See Kollar v. Allstate Ins. Co.*, No. 3:16-CV-01927 (VAB), 2017 WL 10992213, at \*1 (D. Conn. Nov. 6, 2017). However, consideration of the relevant and applicable factors, *see Stanley Works Israel Ltd. V. 500 Grp.*, Inc. 2018 WL 1960112, at \*2 (D. Conn. Apr. 26, 2018), may present good cause to stay discovery. And "the Court may, in the interests of justice, stay proceedings *sua sponte*." *City of New York v. Gutlove & Shirvint, Inc.*, No. 08-CV-1372(CBA)(JMA), 2008 WL 4862697, at \*1 (E.D.N.Y. Nov. 10, 2008).

Pending before the Court is Defendants' *third* motion for dismissal premised on Plaintiff's litigation misconduct and discovery abuses. While the motion is presently in briefing and Plaintiff's response is due on July 1, 2025, the motion includes serious and very troubling allegations as to Plaintiff's conduct, and unfortunately (though to a lesser extent), counsel's conduct. In the Court's view, unless and until the issues raised are fully briefed and adjudicated, it is proper to pause the litigation. Discovery is STAYED. All previously set deadlines are suspended. New deadlines shall be set, as may be necessary or appropriate, following adjudication of the motion to dismiss. So Ordered.

Signed by Judge Kari A. Dooley on 6/25/2025. (Alquesta, S) (Entered: 06/25/2025)

| | | |
|---|---|---|
| 06/26/2025 | 362 | EXHIBIT *I, J and P (Redacted) to Yale's Opposition to Plaintiff's Motion to Compel, previously filed under seal at ECF314* by Yale University re 314 Sealed Document,. (Attachments: # 1 Exhibit I (redacted), # 2 Exhibit J (redacted), # 3 Exhibit P (redacted)) (Laurato, Maria) (Entered: 06/26/2025) |
| 06/27/2025 | 363 | MOTION to Seal ECF No. 344-3 by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 06/27/2025) |
| 06/27/2025 | 364 | RESPONSE re 332 MOTION for Judgment filed by Saifullah Khan. (Taubes, Alexander) (Entered: 06/27/2025) |
| 06/27/2025 | 365 | Emergency SEALED MOTION Sealed Emergency Motion by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/27/2025) |
| 06/27/2025 | 366 | MOTION for Clarification by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/27/2025) |
| 06/27/2025 | 367 | ORDER granting 365 Sealed Emergency Motion to Seal. In its order issued on May 12, 2025, the Court found that, based on the record in this case and at this stage in the litigation, protecting Defendant Jane Doe's identity from public disclosure was a "higher value" that outweighs the public presumption of access to certain court documents. *See* ECF No. 317 at 4. The Court therein made specific findings and issued orders as to individual documents. *Id.* at 48. These orders called for, *inter alia*, the parties to file redacted versions of certain documents that had been filed under seal. Among the information that the Court ordered redacted were instances where the parties referenced individuals who had reposted Defendant Doe's name on the internet, because this information could allow a reader to identify her by directing the reader to the identifying posts. <br><br> In his 364 Response to Defendant's 332 Motion for Judgment of Dismissal, Plaintiff included an unredacted reference to a social media user who had publicly identified Defendant Doe. In response, Defendant Doe filed this Emergency Motion to Seal. Upon filing her motion, Defendant Doe's counsel called the Court to ensure that it was aware of the motion, and verbally represented that he had conferred with Plaintiffs counsel, and |

**A-53**

that Plaintiff's counsel consented to the Court granting the Motion to Seal.

For the reasons articulated in the Court's May 12, 2025, Order, ECF No. 317 , Defendant Doe's Motion to Seal is GRANTED. The Clerk of Court is directed to seal ECF No. 364 , and Plaintiff is directed to file a publicly available version of his Response on the docket, with the requested information redacted.

The Court reminds both parties to redact any similar information in their filings going forward. So Ordered.

Signed by Judge Kari A. Dooley on 6/27/2025. (Alquesta, S) (Entered: 06/27/2025)

| | | |
|---|---|---|
| 06/27/2025 | 368 | RESPONSE re 332 MOTION for Judgment *redacted per ECF No. 367* filed by Saifullah Khan. (Taubes, Alexander) (Entered: 06/27/2025) |
| 06/30/2025 | 369 | ORDER granting 366 Motion for Clarification and denying Motion for Extension of Time in light of Order staying discovery.<br>"Discovery is STAYED. All previously set deadlines are suspended. New deadlines shall be set, as may be necessary or appropriate, following adjudication of the motion to dismiss." ECF No. 361.<br>Signed by Judge Maria E. Garcia on 6/30/25. (Esposito, A.) (Entered: 06/30/2025) |
| 06/30/2025 | 370 | ORDER denying 363 Plaintiff's Motion to Seal Exhibit A (344-3), filed with his Memorandum in Support of his Motion to Compel on June 10, 2025. ECF No. 344.<br>Doe has not objected to the filing of this exhibit and the time so do so has expired. After careful consideration, the Court finds that Plaintiff redacted from the exhibit the information that warrants sealing and finds that the other information contained in the exhibit does not require sealing. Accordingly, Exhibit A (ECF No. 344-3), does not require sealing with these appropriate redactions. It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/30/25. (Esposito, A.) (Entered: 06/30/2025) |
| 07/10/2025 | 371 | MOTION for Leave to File *Supplemental Brief* by Jane Doe. (Attachments: # 1 Supplement Exhibit 1, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 07/10/2025) |
| 07/11/2025 | 372 | ORDER granting 371 Motion for Leave to File Supplemental Brief. The Court will consider the supplemental briefing attached to Defendants' 371 motion. Signed by Judge Kari A. Dooley on 7/11/2025. (Alquesta, S) (Entered: 07/11/2025) |
| 07/11/2025 | 373 | RESPONSE re 364 Response *Reply in Further Support of Defendants' Motion for Judgment of Dismissal* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I (Filed Under Seal), # 10 Exhibit J)(Gooley, Brendan) (Entered: 07/11/2025) |
| 07/11/2025 | 374 | MOTION to Seal *Unredacted* Reply in Further Support of Motion for Judgment of Dismissal and Exhibit I by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 07/11/2025) |
| 07/11/2025 | 375 | Sealed Document: Sealed Reply in Further Support of Motion for Judgment of Dismissal and Exhibit I to Reply by Jane Doe . (Attachments: # 1 Memorandum in Support of Motion for Judgment of Dismissal, # 2 Exhibit I)(Gooley, Brendan) (Entered: 07/11/2025) |
| 07/14/2025 | 376 | ORDER granting 374 Motion to Seal For the reasons articulated in the Court's order issued on May 12, 2025, at ECF No. 317 , the Court finds that protecting Defendant Doe's identity from public disclosure and allowing Yale to preserve the confidentiality of students utilizing the UWC process are higher values that outweigh the presumption of |

A-54

public access to court documents. Thus, the narrowly tailored sealing and redactions proposed by Defendants regarding their Reply in Support of their Motion for Judgment of Dismissal and Exhibit 1 to that Reply are justified, and their motion to seal is GRANTED. Signed by Judge Kari A. Dooley on 7/14/2025. (Alquesta, S) (Entered: 07/14/2025)

| | | |
|---|---|---|
| 07/20/2025 | 377 | RESPONSE re 372 Order on Motion for Leave to File, 371 MOTION for Leave to File *Supplemental Brief* filed by Saifullah Khan. (Taubes, Alexander) (Entered: 07/20/2025) |
| 07/31/2025 | 378 | RESPONSE re 377 Response *to Defendants' Supplement* filed by Jane Doe. (Gooley, Brendan) (Entered: 07/31/2025) |
| 08/05/2025 | 379 | EXHIBIT *Memorandum of Law In Support of Emergency Motion for Judgment of Dismissal* by Jane Doe re 75 Sealed Document,. (Gooley, Brendan) (Entered: 08/05/2025) |
| 08/05/2025 | 380 | EXHIBIT *103-1 - Memorandum of Law in Support of Jane Doe's Motion to Continue Anonymity* by Jane Doe re 103 SEALED MOTION TO CONTINUE ANONYMITY. (Gooley, Brendan) (Entered: 08/05/2025) |
| 08/05/2025 | 381 | EXHIBIT *114-4* by Jane Doe re 114 SEALED MOTION for Sur-Reply in Further Support of Motion for a Protective Order. (Gooley, Brendan) (Entered: 08/05/2025) |
| 08/05/2025 | 382 | EXHIBIT *123-1 - Memorandum of Law in Support of Second Emergency Motion for Judgment of Dismissal* by Jane Doe re 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal. (Gooley, Brendan) (Entered: 08/05/2025) |
| 08/05/2025 | 383 | EXHIBIT *157-1 Memorandum in Opposition to Emergency Motions to Dismiss* by Jane Doe re 157 SEALED MOTION Objection to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131. (Gooley, Brendan) (Entered: 08/05/2025) |
| 08/05/2025 | 384 | EXHIBIT *166- Reply in Further Support of Second Emergency Motion for Judgment of Dismissal* by Jane Doe re 166 Sealed Document,. (Gooley, Brendan) (Entered: 08/05/2025) |
| 09/11/2025 | 385 | ORDER. The parties shall appear on **September 29, 2025 at 10:00 AM** on Defendant Doe's Motion for Judgment of Dismissal, ECF No. 333. Plaintiff Saifullah Khan is required to be present. Subject to any privileges he may wish to assert, it is the Court's intention to question Plaintiff under oath regarding his conduct throughout this litigation. Signed by Judge Kari A. Dooley on 9/11/25.(Rathburn, E) (Entered: 09/11/2025) |
| 09/11/2025 | 386 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. A hearing re: Defendant Doe's 333 Motion for Judgment of Dismissal is set for **9/29/2025 at 10:00 AM** in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Rathburn, E) (Entered: 09/11/2025) |
| 09/12/2025 | 387 | MOTION for Mario Cerame to Withdraw as Attorney by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 09/12/2025) |
| 09/15/2025 | 388 | ORDER granting 387 Motion to Withdraw as Attorney. Attorney Mario K. Cerame terminated. Signed by Judge Kari A. Dooley on 9/15/25. (Rathburn, E) (Entered: 09/15/2025) |
| 09/22/2025 | 389 | Consent MOTION to Continue by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 09/22/2025) |
| 09/25/2025 | 390 | ORDER granting 389 Motion to Continue. The hearing scheduled for Monday September 29, 2025 is hereby canceled. The Court will set a telephonic status conference to |

**A-55**

reschedule the hearing as the Court is unavailable on the proposed date. Signed by Judge Kari A. Dooley on 9/25/25. (Rathburn, E) (Entered: 09/25/2025)

| | | |
|---|---|---|
| 09/25/2025 | 391 | SCHEDULING ORDER:Telephonic Scheduling Conference set for 10/2/2025 at 04:00 PM in Remote Setting before Judge Kari A. Dooley. The dial-in information is as follows: Conference Line: +1 203-684-6202, Conference ID: 377 036 10#. Signed by Judge Kari A. Dooley on 9/25/25.(Rathburn, E) (Entered: 09/25/2025) |
| 09/25/2025 | 392 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Scheduling Conference set for 10/2/2025 at 04:00 PM in Remote Setting before Judge Kari A. Dooley. Dial in information is as follows: Conference Number: +1 203-684-6202, Conference Id: 377 036 10#. (Rathburn, E) (Entered: 09/25/2025) |
| 10/02/2025 | 393 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 9/29/25* The hearing on Defendant Doe's Motion for Judgment of Dismissal, ECF No. 333 is set for **12/22/2025 at 10:00 AM** in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Rathburn, E) (Entered: 10/02/2025) |
| 10/02/2025 | 394 | Minute Entry for proceedings held before Judge Kari A. Dooley: Telephonic Scheduling Conference held on 10/2/2025. 9 minutes(Court Reporter Tracy Gow.) (Gould, K) (Entered: 10/03/2025) |
| 12/22/2025 | 395 | Minute Entry. Proceedings held before Judge Kari A. Dooley: taking under advisement 332 Motion for Judgment; Motion Hearing held on 12/22/2025 re 332 MOTION for Judgment filed by Jane Doe; Evidentiary Hearing held on 12/22/2025. Total Time: 2 hours and 58 minutes(Court Reporter Diana Huntington.) (Gould, K) (Entered: 12/22/2025) |
| 12/22/2025 | 396 | Marked Witness List (Gould, K) (Entered: 12/22/2025) |
| 01/30/2026 | 397 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on December 22, 2025 before Judge Kari A. Dooley. Court Reporter: Diana Huntington. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 2/20/2026. Redacted Transcript Deadline set for 3/2/2026. Release of Transcript Restriction set for 4/30/2026. (Huntington, D.) (Entered: 01/30/2026) |
| 03/27/2026 | 398 | ORDER granting 332 , 333 Motion to Dismiss. See attached. The Court can discern no lesser sanction to address the repeated and escalating misconduct by Plaintiff in this case. Seeing no viable path forward for a fair and just adjudication of the claims and defenses in this case, the Motion to Dismiss is GRANTED. The Clerk of the Court is directed to close this case. Signed by Judge Kari A. Dooley on 3/27/26. (Rathburn, E) (Entered: 03/27/2026) |
| 03/27/2026 | 399 | ORDER finding as moot 344 Motion to Compel; finding as moot 349 Motion to Compel; finding as moot 294 Motion to Compel; finding as moot 322 Motion to Compel; finding as moot 325 Motion to Compel; finding as moot 327 Motion to Compel; finding as moot 335 Motion to Compel in light of the granting of the Motion to Dismiss. ECF No. 332, |

A-56

| | | |
|---|---|---|
| | | 333, 398.<br>Signed by Judge Maria E. Garcia on 3/27/26. (Esposito, A.) (Entered: 03/27/2026) |
| 03/30/2026 | 400 | JUDGMENT entered in favor of Unknown Persons, Yale University, Ann Kuhlman, Carole Goldberg, David Post, Jane Doe, Joe Gordon, Jonathon Halloway, Lynn Cooley, Mark Solomon, Marvin Chun, Paul Genecin, Peter Salovey, Sarah Demers, Stephanie Spangler against Saifullah Khan.<br><br>For Appeal Forms please go to the following website:<br>http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms<br>Signed by Clerk on 3/30/2026.(Gould, K) (Entered: 03/30/2026) |
| 03/30/2026 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey<br>(Gould, K) (Entered: 03/30/2026) |
| 04/01/2026 | 401 | NOTICE OF APPEAL as to 398 Order on Motion for Judgment, 400 Judgment, by Saifullah Khan. Filing fee $ 605, receipt number ACTDC-8558303. (Taubes, Alexander) (Entered: 04/01/2026) |
| 04/02/2026 | 402 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 401 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: None. (Limberti, L) (Entered: 04/02/2026) |
| 04/28/2026 | 403 | TRANSCRIPT of Proceedings: Type of Hearing: Telephonic Scheduling Conference. Held on January 21, 2021 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 5/19/2026. Redacted Transcript Deadline set for 5/29/2026. Release of Transcript Restriction set for 7/27/2026. (Gow, T.) (Entered: 04/28/2026) |
| 04/28/2026 | 404 | TRANSCRIPT of Proceedings: Type of Hearing: Telephonic Scheduling Conference. Held on October 2, 2025 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is |

**A-57**

not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 5/19/2026. Redacted Transcript Deadline set for 5/29/2026. Release of Transcript Restriction set for 7/27/2026. (Gow, T.) (Entered: 04/28/2026)

| 05/14/2026 | 405 | TRANSCRIPT of Proceedings: Type of Hearing: Status Conference (Telephonic). Held on July 10, 2024 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
|---|---|---|
| 05/14/2026 | 406 | TRANSCRIPT of Proceedings: Type of Hearing: Discovery Status Conference (Telephonic). Held on August 13, 2024 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 407 | TRANSCRIPT of Proceedings: Type of Hearing: Discovery Status Conference (Zoom). Held on December 4, 2024 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 408 | TRANSCRIPT of Proceedings: Type of Hearing: Status Conference (Zoom). Held on January 14, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall |

A-58

| | | |
|---|---|---|
| | | (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 409 | TRANSCRIPT of Proceedings: Type of Hearing: Status Conference (Zoom). Held on January 23, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 410 | TRANSCRIPT of Proceedings: Type of Hearing: Status Conference (Zoom). Held on February 7, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 411 | TRANSCRIPT of Proceedings: Type of Hearing: Status Conference (Zoom). Held on March 27, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline |

**A-59**

| | | |
|---|---|---|
| | | set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 412 | TRANSCRIPT of Proceedings: Type of Hearing: Motion/Status Conference (Zoom). Held on April 24, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |
| 05/14/2026 | 413 | TRANSCRIPT of Proceedings: Type of Hearing: Status Conference (Zoom). Held on May 19, 2025 before Judge Maria E. Garcia. Court Reporter: Martha Marshall (Transcriber). **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/4/2026. Redacted Transcript Deadline set for 6/15/2026. Release of Transcript Restriction set for 8/12/2026. (Marshall, Martha) (Entered: 05/14/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/30/2026 16:44:51 | | |
| **PACER Login:** | alexandertaubes1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-01966-KAD |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt Court Order |

**A-60**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN,<br>Plaintiff, | : | cv 19-1966 |
| | : | |
| v. | : | |
| YALE UNIVERSITY, | : | |
| PETER SALOVEY, | : | |
| JONATHON HALLOWAY, | : | |
| MARVIN CHUN, JOE GORDON, | : | |
| DAVID POST, MARK SOLOMON, | : | |
| ANN KUHLMAN, LYNN COOLEY, | : | |
| PAUL GENECIN, | : | |
| STEPHANIE SPANGLER | : | |
| SARAH DEMERS, JANE DOE, | : | |
| CAROLE GOLDBERG, | : | |
| UNKNOWN PERSONS, | : | |
| Defendants. | : | DECEMBER 13, 2019 |

## COMPLAINT

1. This is an action for violation of the plaintiff's rights arising under Title IX of the Education Amendments of 1972 (20 United States Code Section 1681) and 42 United States Code Section 1981, and for breach of his right privacy, breach of contract, breach of the implied warranty of fair dealing, breach of his right to be free from negligent and intentional infliction of emotional distress and breach of his right to privacy arising under Connecticut law. The plaintiff, a native of Afghanistan, was recruited by Yale University, offered a full scholarship and promised the very best education the United States could offer. What he received was a lesson in deceit, betrayal and the exercise of double standards. As a result of the acts and omissions of the defendants, the plaintiff has lost not just educational opportunity but the opportunity to live at peace either in the United States or in Afghanistan. He seeks monetary

1

damages and injunctive relief. The plaintiff seeks punitive damages and compensatory damages in the amount of $110 million, a sum sufficient to compensate him for his lost opportunities, and necessary to deter the defendants from misconduct in the future.

## Jurisdiction

2. Jurisdiction and venue are evoked pursuant to 28 U.S.C. Sections 1331 and 1332 and 28 U.S.C. Section 1391(b).

## Parties

3. The plaintiff, Saifullah Khan, was at all times relevant to this action an adult resident of the State of New Haven, matriculating as an undergraduate student at defendant Yale University. He is a citizen of Afghanistan.

4. Yale University, herein after "the university," is a private educational institution organized and operating in the State of Connecticut. The university offers undergraduate, graduate and professional courses of studies, serving approximately 13,000 students. The university employs thousands of persons. It receives federal funds within the meaning of 20 U.S.C. Section 1681 et seq. ("Title IX"). The defendant maintains a series of residential colleges for the education and housing of undergraduate students.

5. Peter Salovey was at all times relevant to this Complaint, and he remains, president of the university. He is also the Chris Argyris Professor of Psychology at the university.

2

**A-62**

6.      Jonathan Halloway was at various times relevant to this action, the Dean of Yale College, an undergraduate college operating and organized within the overall administrative structure of Yale University.

7.      Marvin Chun was at various times relevant to this action, the Dean of Yale College, an undergraduate college operating and organized within the overall administrative structure of Yale University.

8.      Joe Gordon was at various times relevant to this action, the Deputy Dean of Yale College, an undergraduate college operating and organized within the overall administrative structure of Yale University.

9.      David Post was at various times relevant to this action, a Yale University faculty member and the chair of the University-Wide Committee on Sexual Misconduct, a Yale University committee charged with the investigation and disposition of claims of sexual misconduct arising under university policies and procedures.

10.     Mark Solomon was at various times relevant to this action, a Yale University faculty member and the chair of the University-Wide Committee on Sexual Misconduct, a Yale University committee charged with the investigation and disposition of claims of sexual misconduct arising under university policies and procedures.

10.     Ann Kuhlman was at all times relevant to this action, the Executive Director of Yale University's Office of International Students & Scholars.

11.     Lynn Cooley was at all times relevant to this action Dean of Graduate Students at Yale University and a member of the University-Wide Committee on Sexual Misconduct.

3

**A-63**

12. Paul Genecin was at all times relevant to this action a physician associated with the Yale Health Center and was a member of the University-Wide Committee on Sexual Misconduct that evaluated claims against the plaintiff.

13. Stephanie Spangler was at all times relevant to this action the Title IX Coordinator for Yale University.

14. Sarah Demers was at all times relevant to this action a professor of physics and chairperson of the University-Wide Committee on Sexual Misconduct that evaluated claims against the plaintiff.

15. Carole Goldberg was at all times relevant to this action a clinical psychologist and faculty member at the Yale School of Medicine and an advisor to the Yale Sexual Harassment and Assault Response & Education center. She holds herself out to the world to be an expert in "trauma" and "sexual assault."

16. Jane Doe was at all times relevant to this action an undergraduate student enrolled in Trumbull College at Yale University. She was a classmate of the plaintiff's, and, in November 2015, made a complaint alleging sexual assault against the plaintiff to officials at Yale University. Her identity is known to the other defendants. Her identity is not disclosed herein to satisfy university requirements that the identity of students involved in claims of sexual misconduct have their identities kept confidential.

17. Unknown Persons employed by the university are named herein as conduits of private information transmitted to news media, including The Yale Daily News, The New York Times and The Washington Post.

4

**A-64**

## Recruitment: Promises Made

18. Mr. Khan was born on January 27, 1993, in a refugee camp in Peshawar, Pakistan.

19. Although Mr. Khan's father and grandfather had, prior to Mr. Khan's birth, lived in Kabul, Afghanistan for many years, the family was given an ultimatum by the Taliban in late 1992, either leave Afghanistan or face potential death. Mr. Khan was born six months after his family fled Afghanistan.

20. Mr. Khan and his family lived in a refugee camp and various places surrounding it in Pakistan for 16 years, until the family was again threatened, this time by a Pakistani terrorist group. The family fled to the United Arab Emirates.

21. Mr. Khan developed an early love of learning and reading; he satisfied his love of learning by means of newspapers, old books and the Internet. He was widely recognized as a precocious student.

22. To satisfy his educational goals, Mr. Khan studied colleges and universities worldwide, to determine which schools offered the best educational opportunities and the necessary financial support. He determined that his best opportunities appeared to be in the United States.

5

**A-65**

23. Mr. Khan applied to Yale University, drawn both by the university's commitment to academic excellence, and its self-proclaimed commitment to the goal of fostering an international community of scholars. He also concluded that the university had the means to offer generous financial support.

24. The university promised that it would provide Mr. Khan with tuition, room and board, and the financial support necessary to thrive in the United States.

25. Yale offered Mr. Khan a place in the Class of 2016. The university suggested that before matriculating in New Haven, Mr. Khan complete a post-graduate year at the Hotchkiss School in Lakeville, CT, a preparatory school. Mr. Khan agreed to do so. The entire cost of his education was covered by Hotchkiss, the university, and by university alumni. In making this offer, the university promised Mr. Khan access to the best possible education and an environment free from hatred based on gender, national origin or other indicia of identity.

26. Mr. Khan became a full-time student at Yale in the fall of 2012.

### Welcome to the Hothouse

27. The university has in recent years been subjected to regulatory and public relations scrutiny over how it handles claims of sexual misconduct by male students and male employees against female students and female employees. The campus is also in the thrall of various claims of identity entitlement, rendering the campus less a place of unbridled intellectual stimulation and more a smug hothouse catering to social justice warriors intent on remaking the world in their own image.

6

**A-66**

28. In April 2011, the university received a letter from the Office of Civil Rights of the federal Department of Education (DOE), the so-called "Dear Colleague" letter. This letter advised recipients that universities needed to "take immediate action to eliminate [sexual] harassment, prevent its recurrence, and address its effects, or face potential loss of federal funding under Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681, et seq. and its attendant regulations.

29. In the wake of the 'Dear Colleague" letter, the DOE began a highly publicized series of investigations of colleges and universities to determine whether those institutions took a strong enough stand against claims of alleged sexual harassment.

30. In late 2010 and early 2011, the Office of Civil Rights concluded, in response to a complaint from a Yale student, that the university was deficient in the manner in which it responded to allegations of sexual misconduct on campus. The federal agency concluded that these deficiencies tended to create and foster a sexually hostile environment toward women.

31. As a result of this criticism, the university created a University-Wide Committee on Sexual Misconduct, "UWC," to provide formal and informal means of resolving claims of alleged sexual misconduct. The UWC is charged with enforcing Yale's Sexual Misconduct Policy. The plaintiff was subject to the policies and jurisdiction of the UWC as a student.

32. The university adopted Procedures Governing the UWC. These procedures set out the rights and responsibilities of an accuser, the accused and the university in a complaint about sexual misconduct.

**A-67**

33. In 2013, the university was subject to hostile criticism and complaints by activists that it tolerated sexual misconduct by student and alumni groups, including a group calling itself "Students Against Sexual Violence at Yale," and a group of alumni who wrote an open letter to Defendant Salovey urging a more forceful response to allegations of sexual misconduct. The activities of the student and alumni groups were widely reported upon in the press.

34. The university has, in recent years, been overcome by a spirit of precious unctuousness, perhaps best exemplified by the uproar associated with comments raised by the master of a residential college regarding Halloween costumes, a controversy steeped in a culture pandering to any and all claims of identity, and fostering a valorization of all claims of victimhood, no matter how incredible or bizarre those claims may be.

## Matriculation

35. Mr. Khan attended classes as an undergraduate commencing in 2012 until November of 2015. He concentrated in neurosciences, taking a wide variety of courses on the mind and brain, completing coursework at both the undergraduate and graduate level.

36. Mr. Khan also was a founding member of a student-run consulting firm and think tank devoted to the study of international terrorism and international conflict, Prologue Strategies, LLC.

8

**A-68**

37. Mr. Khan served a teaching assistant at the Yale School of Management.

38. Mr. Khan was expected to graduate with the Class of 2016 with a Yale baccalaureate. He was on the cusp of a world filled with promise.

## Promises Broken – A False Claim Of Rape, A Jury Acquits, But The University Chants #MeToo

### *The False Rape Claim*

39. On the night of Halloween in 2015, Mr. Khan met with a female student, Jane Doe, whose name is kept confidential out of respect for the university's confidentiality requirement in Title IX proceedings, at a Halloween party sponsored by an off-campus secret society. Thereafter, they attended a symphonic performance of the Yale Student Orchestra at Woolsey Hall, a campus auditorium.

40. Mr. Khan and Jane Doe were familiar with one another from several on campus encounters.

41. The couple left the performance early as Jane Doe was not feeling well. They walked together on campus for a brief period before returning to their co-educational dormitory, Trumbull College.

42. Mr. Khan escorted Jane Doe to her room and was en route to his own room when Jane Doe asked him to return. When he did so, Jane Doe asked Mr. Khan to check on the whereabouts of one her friends. Mr. Khan left Jane Doe alone in her room and went to check on her friend.

9

**A-69**

43.    When Mr. Khan returned to her room, the couple engaged in consensual sexual intercourse, and, thereafter, both fell asleep. Their encounter was the sort of casual encounter encouraged and fostered by the university, which distributes condoms at various locations in the dormitories located on campus.

44.    When the couple awoke, they each went their separate ways.

45.    In the course of the morning, Jane Doe, reported to friends that she had been raped, and sought contraceptive care at the university health center, telling a health care worked she had engaged in consensual unprotected sex.

46.    In the days following Halloween Jane Doe went public with her claim of rape, and was taken to the Yale Women's Center, where counselors advised her on how to make a formal complaint against Mr. Khan. Ms. Doe had the advice and counsel of David Post as she created her formal complaint against Mr. Khan.

47.    On the strength of her written complaint alone, Deputy Dean Joe Gordon suspended Mr. Khan immediately, and ordered that he vacate the campus, and his room in Trumbull College. David Post ratified these decisions. The plaintiff was left homeless as a result.

48.    Members of the Yale Police Department immediately opened an investigation of a potential rape. By mid-November, Mr. Khan was charged with sexual assault in the first degree by the State of Connecticut, and was arrested and presented in the Superior Court for the Judicial District of New Haven.

49.     Mr. Khan was informed by university officials that he would be immediately deported from the United States because his suspension from the university would result in revocation of his student visa.

50.     Fearing deportation, Mr. Khan posted bond and went to stay with family located out of state.

51.     Through the activity of his criminal defense counsel, Mr. Khan persuaded the university to stay any disciplinary proceedings by the UWC pending the results of his criminal trial.

### A Jury Acquits

52.     Mr. Khan was tried before a jury of six in the Judicial District of New Haven in early 2018 and charged with sexual assault in the first, second, third and fourth degrees. After almost two weeks of evidence, during which both Jane Doe and Mr. Khan testified, the jury returned a quick unanimous not-guilty verdict on all counts, deliberating for less than one day. It was a complete exoneration of Mr. Khan. The verdict was returned on or about March 7, 2018.

53.     At the criminal trial, the State of Connecticut introduced evidence that Jane Doe was intoxicated, it also introduced text messages that Jane Doe sent to Mr. Khan, including a Shakespearean sonnet, in the days before their Halloween date, and it introduced the cat-costume she wore to the party at the secret society and to the symphony performance.

11

**A-71**

54. On cross-examination in the jury's presence Jane Doe was unable to explain why she recalled some events, but not others; she gave no convincing account of why she had sent flirtatious comments to Mr. Khan via text message; she acknowledged giving conflicting stories to authorities about the so-called rape in her dorm room; she attempted to characterize a video of the couple happily walking across campus on a surveillance video as evidence of her impairment; she gave a description of her Halloween costume that attempted to avoid that fact she was dressed in a provocative manner; and, she provided no convincing account of how the couple had ended up in her room in the first instance.

55. The Yale Daily News and other news outlets covered the trial closely, portraying Mr. Khan in an extremely unfavorable light.

56. Soon, more than 77,000 persons signed a petition protesting Mr. Khan's readmission to the university. Mr. Khan had become a potent symbol around which so-called #MeToo activists congregated. Despite Mr. Khan's having been found not guilty after a full trial in which a jury of his appears listened to both Mr. Khan's and Jane Doe's testimony and decisively rejected Jane Doe's credibility, activists decided they believed Jane Doe.

### The University Chants #MeToo

57. After his exoneration in the criminal case, Mr. Khan sought readmission to Yale. The university generally ignored Mr. Khan, and, throughout the 2017/2018 academic year, took no steps to bring to a closure the stayed UWC disciplinary procedure.

12

**A-72**

58. Mr. Khan was eventually readmitted to the university, but was denied on-campus housing and otherwise treated as though he was not welcome on campus. He resumed his status as a full-time student in the fall of 2018.

59. Students, faculty, the Yale Daily News and other intermeddlers protested Mr. Khan's return to Yale.

60. On or about October 5, 2018, the Yale Daily News published an article entitled "Khan and his consort." The piece recounted allegations made by a deeply troubled young man, who contended he had a romantic relationship with Mr. Khan that involved Mr. Khan's sexually assaulting him in a kinky bout of fetishistic role-playing with a pseudonymous woman in Washington, D.C., and that Mr. Khan committed an act of physical violence in the form of a slap to the face while Mr. Khan and he were together in Indianapolis, Indiana. The young man is portrayed as a sexually submissive homosexual in thrall to Mr. Khan. He contends that Mr. Khan and he would often engage in sexually provocative telephone conversations and text messaging.

61. There is nothing in the article by the Yale Daily News to suggest that the young man ever set foot on the Yale campus or that he had any affiliation whatsoever with Yale.

62. As a direct and proximate result of the aforesaid reporting in the Yale Daily News, members of the Yale Police Department visited Mr. Khan on October 5, 2018, to determine whether the reporting had so distressed Mr. Khan that he needed or required professional help of any kind. Mr. Khan reported that he did not need help. Mr. Khan agreed to appear at the Yale infirmary for a mental health consultation.

13

A-73

63.     Later in the day on October 5, 2018, Mr. Khan was contacted by two Yale administrators. Mr. Khan informed them that he was fine, had visited Yale's mental health clinic, and that he at no point considered harming himself or others. The administrators responded late in the evening of October 5, 2018, thanking him for his response and urging him to "get adequate sleep, eat well, and get some exercise."

64.     On Sunday morning, October 7, 2018, at approximately 8 a.m., Mr. Khan was asked to come to campus to meet with members of the Yale administration. Mr. Khan informed the administrators he would not do so, and Dean Marvin Chun of Yale College caused a letter to be hand-delivered to Mr. Khan informing him that he was suspended effectively immediately from Yale College due to an "emergency." According to Dean Chun, the suspension "appears necessary for your physical and emotional safety and well-being and/or the safety and well-being of the university community." As a result of the suspension, Mr. Khan was barred from the campus and prohibited from attending any of the classes be had been attending for the previous month. He was once again made homeless without warning or excuse.

65.     The university then informed him that he would lose his coverage under the university's health plan effective November 1, 2018.

66.     There is no credible evidence that permitting Mr. Khan to attend classes poses a threat of harm to himself or to anyone affiliated with Yale. Indeed, there was no reason whatsoever to suspect that Mr. Khan was a danger to himself or others as a result of the allegations reported in the Yale Daily News in October 2018. In fact, the university promotes and expects broad tolerance of the full range of expressions of human sexuality and of respect for every conceivable permutation of gender identity.

14

**A-74**

67.    Mr. Khan's suspension was pre-textual, and arise from a combination of factors including his unique history at Yale, the bitter disappointment of many Yale students and faculty that Brett Kavanaugh was expected to be confirmed as a Justice on the United States Supreme Court at or about the time of Mr. Khan's suspension, and a prevailing culture of over-heated sensibilities regarding claims of sexual assault shared by many students at Yale and expressed under the then-common hashtag #MeToo.

68.    As of the time of his October 2018 suspension, the university had still not convened a hearing on the claims of Jane Doe, who had graduated and was no longer matriculating at Yale. Mr. Khan had placed the University on notice that Mr. Khan intended to seek both judicial relief and an investigation from the federal Department of Education for violations of the law arising under Title IX.

69.    After he was suspended in October 2018, Mr. Khan has requested permission to attend classes with an escort in order to address any concerns the university may have about his safety due to the hostility of his classmates, and to assure that he does not pose a risk of harm to others. The university denied this request, although it has permitted other young men accused of sexual misconduct the opportunity to complete their degrees off-site.

70.    The university's actions in regard to the October 2018 suspension were pre-textual and were designed to accommodate a climate of opinion in which allegations of sexual assault are to be believed upon being made, in which the accused has no meaningful right to defend and in which the voices of those raised in solidarity with the accused drown out any semblance of due process and orderly fact-finding.

15

A-75

71.     Mr. Khan agreed to complete a psychiatric examination during this suspension to determine whether he was a risk of harm to himself or to others. The evaluator concluded that he posed no such threat.

72.     As a direct and proximate result of the university's summary suspension of Mr. Khan, he was unable to finish the classes that he began in August, lost education opportunity the university was contractually obligated to provide, and suffered further stigmatization.

73.     The allegations against Mr. Khan arising from the claims reported by the Yale Daily New in October 2018 resulted in no arrests, even though law enforcement officers investigated the claims in both Washington, D.C., and Indianapolis, Indiana.

### A FLAWED DISCIPLINARY PROCEDURE RESULTS IN EXPULSION

74.     In November, 2018, after twice being banned from campus for claims that were never proven or substantiated, Mr. Khan was permitted to return to campus for a UWC hearing on Jane Doe's 2015 complaint of sexual assault, the very charges for which Mr. Khan had been acquitted in the New Haven Superior Court.

75.     A five-member panel consisting of Sarah Demers, Paul Genecin, Anjelica Gonzalez, Etienne Greenlee and Amy Justice convened a "hearing" at which the results of a university fact-finder's report were reviewed.

76.     The hearing failed to afford Mr. Khan the elementary due process required by Title IX, and was a mere sham.

77.     Mr. Khan's accuser, Jane Doe, was not present at the hearing, but was permitted to give a statement from a remote location via teleconference. Mr. Khan was

16

**A-76**

not even permitted to be in the hearing room when the UWC panel asked Jane Doe questions, but was required to sit in an anteroom where he could listen to an audio-feed of the proceedings. Ms. Doe offered a prepared statement from the professional school she was then attending. The result was that Mr. Khan was denied any reasonable opportunity to confront, question, or otherwise face his accuser. The right to cross-examine and confront his accuser was a critical factor in his successful defense of the criminal charges arising from his accuser's accusations.

78.     Mr. Khan was unable to have the assistance of counsel in his hearing before the UWC; although counsel was permitted to be present, counsel was not afforded a right to speak, and therefore could neither pose questions to witnesses, nor tender objections when panel members repeatedly asked compound questions, assumed facts not in evidence, or otherwise transformed the hearing process into little more than the stillborn delivery of a predetermined outcome. The right of counsel to present a defense, and to protect Mr. Khan from procedural and evidentiary unfairness, was a critical factor in his successful defense of the criminal charges arising from his accuser's accusations. Throughout the proceedings, the UWC panel had present a member of the Yale Corporation Counsel's office for purposes of providing advice and counsel.

79.     Mr. Khan requested that a transcript or other electronic recording of the hearing be made so that he would have an adequate record for purposes of further administrative or legal review. His request to make an adequate record was denied by the panel.

17

A-77

80. The UWC panel's decision to expel Mr. Khan was against the weight of the evidence and was inspired in whole, or in part, by animus toward Mr. Khan and out of a desire to placate those who protested his return to the Yale campus.

81. As a direct and proximate result of the acts and omissions herein complained of, Mr. Khan has lost his opportunity to complete his educations at Yale, has suffered a breach of the contract that Yale entered into with him, has suffered a breach of his right to privacy, which has resulted in enormous reputational harm, and has suffered severe emotional distress. He now also faces deportation to his native Afghanistan, where, given his family's decision to seek refuge in Pakistan due to the hostility of the Taliban, Mr. Khan faces grave physical danger. Although Mr. Khan remains a resident of the United States, he is subject to immediate deportation.

## CLAIMS FOR RELIEF

### *Title IX – Breach of Due Process By Means Of Denial Of Right To Confront His Accuser, By Denial of His Right To Meaningful Assistance Of Counsel, By Denial Of His Right To Have An Adequate Record Of The Proceedings Against Him Created, By Rendering Him Homeless As A Result Of Summary Process And By Denying Him A Timely Adjudication Of The Claims Raised Against Him*

82. Paragraphs one through one through 81 are incorporated herein.

83. Title IX requires universities to adopt and apply fair procedures to the adjudication of claims raised against students.

84. The university breached Title IX in the following ways:

18

**A-78**

a. Depriving Mr. Khan of a safe and secure environment by barring him abruptly from campus without notice and a meaningful opportunity to be heard on two separate occasions.

b. Depriving Mr. Khan of a timely adjudication of the claims made against him;

c. Depriving Mr. Khan of a meaningful right to confront his accuser;

d. Depriving Mr. Khan of the meaningful assistance of counsel at the UWC hearing.

e. Depriving Mr. Khan of the right to make an adequate record of the UWC hearing.

f.  Failing to consider exculpatory evidence.

### *Breach of Contract*

85.     Paragraphs one through 84 of the foregoing are incorporated herein.

86.     The university entered into a written contract with the plaintiff upon offering him admission to permit him to complete his education so long as he fulfilled the academic requirements of the plaintiff's chosen field of study and otherwise remained a student in good standing. The contract offered the plaintiff the opportunity to remain in good standing so long as he abided by published university rules and regulations. Those published rules and regulations offered the plaintiff the right to contest any allegations that he had violated them by means of a fair adjudicatory proceeding, in this case, by means of the Procedures Governing the UWC.

87.     The university also offered the plaintiff housing and financial support so long as he remained a student in good standing.

19

88. The university breached that contract in the following ways:

    a.    Depriving Mr. Khan of a safe and secure environment by barring him abruptly from campus without notice and a meaningful opportunity to be heard on two occasions;

    b.    Depriving Mr. Khan of a timely adjudication of the claims made against him;

    c.    Depriving Mr. Khan of a meaningful right to confront his accuser;

    d.    Depriving Mr. Khan of the meaningful assistance of counsel at the UWC hearing;

    e.    Depriving Mr. Khan of the right to make an adequate record of the UWC hearing.

    f.    Failing to consider exculpatory evidence.

### Breach Of The Implied Warranty Of Fair Dealing

89. Paragraphs one through 88 are incorporated herein.

90. The university is one of the nation's oldest corporations, having existed since before the creation of the United States of America. It is the repository of centuries of institutional knowledge, history and experience, and enjoys the full-time support of a corporation counsel's office staffed by lawyers who are graduates of some of the nation's top law schools.

91. The plaintiff was a brilliant, but impecunious resident of a refugee camp in a distressed region of the world hoping for educational opportunity. He relied to his detriment upon the expressions of goodwill by agents of the university and on the university's reputation for excellence.

20

**A-80**

92.     The unequal bargaining power between the university and plaintiff induced the plaintiff to trust that the university would treat him with fairness and respect throughout his undergraduate career.

93.     The university offered the plaintiff full financial support on the condition that he sign what amounted to an adhesion contract filled with promises of fair treatment.

94.     The university violated the implied warranty of fair dealing by taking advantage of the unequal bargaining power it enjoyed and the plaintiff's dependence on the university for financial support thus requiring him to sign a document promising him fair treatment.

95.     In fact, the university violated the implied warranty of fair dealing in the following ways:

    a.     Depriving Mr. Khan of a safe and secure environment by barring him abruptly from campus without notice and a meaningful opportunity to be heard on two separate occasions.

    b.     Depriving Mr. Khan of a timely adjudication of the claims made against him;

    c.     Depriving Mr. Khan of a meaningful right to confront his accuser;

    d.     Depriving Mr. Khan of the meaningful assistance of counsel at the UWC hearing.

    e.     Depriving Mr. Khan of the right to make an adequate record of the UWC hearing;

21

A-81

f.    Depriving him of a safe and secure environment when students, faculty and administrators signed a petition demanding his removal from campus after he had been acquitted of committing any crime whatsoever;

g.    Adopting the histrionic claims of a non-student who claimed to have a sexual misadventure with Mr. Khan and another woman in Washington, D.C., as a pre-text for suspending Mr. Khan;

h.    Ignoring the professional opinion of an evaluator who concluded that Mr. Khan posed no risk of harm to himself or others and persisting nonetheless in keeping him from attending classes;

i.    Denying the plaintiff the right to complete his coursework remotely or under guard from third parties, despite offering similar accommodations to other students;

j.    Circulating on campus The Yale Daily News, a publication dedicated to the removal of Mr. Khan from campus, thereby fanning hostility to Mr. Khan.

### *Negligent Infliction Of Emotional Distress*

96.    Paragraphs one through 95 are incorporated herein.

97.    The university had a duty to provide Mr. Khan with a safe and secure environment, free from the unreasonable risk of emotional distress.

98.    In the manner and means described above, the university breached that duty, thereby causing the plaintiff to suffer emotional distress.

22

**A-82**

### Intentional Infliction Of Emotional Distress

99.    Paragraphs one through 98 are incorporated herein.

100.    The university has in recent years abandoned its commitment to fostering the development of critical intelligence in favor of placating various claims of identity entitlement. In support of its new mission of making students feel "safe" and otherwise currying the support of those seeking espousing various claims of victimhood, the university has adopted a policy and procedure of making scapegoats of students accused of engaging in unpopular speech and/or activities.

101.    Th university fosters an environment of sexual permissiveness so long as all participants in libidinal activities give "consent" to the activity. It fosters this climate of permissiveness by broad and liberal distribution of condoms on campus.

102.    The university turns a blind eye to the consumption of alcohol by minors on campus, realizing full well that excessive drinking makes students more reckless in the consent they give to others to engage in sexual conduct.

103.    Once the plaintiff was accused of sexual misconduct, the university, without an inquiry of any sort, suspended the plaintiff from campus, rendering him homeless while thousands of miles from his family.

104.    The university's treatment of the plaintiff was willful, wanton and done with reckless disregard of the consequences of its actions.

105.    As a direct and proximate result of the acts and omissions of the university, its agents and servants as herein described, the plaintiff suffered, and continues to suffer from, extreme emotional distress.

23

**A-83**

### Breach of Privacy – Publication Of Private Facts

106.    Paragraphs one through 105 are incorporated herein.

107.    Although university procedures under the UWC are confidential as a matter of university policy, the university permitted to disseminated to the press worldwide confidential details about the plaintiff, including, but not limited to, the following:

      a.    Claims that Mr. Khan was removed from the university because of the alleged threat he posed to other students incident to the university's learning of an alleged threesome involving Mr. Khan and a non-student male in Washington, D.C.

      b.    The fact that Mr. Khan was expelled from the university for "raping" a fellow student.

108.    The university knew or should have known that publication of such information in Afghanistan, Pakistan and United Arab Emirates would expose Mr. Khan to the serious risk of death should he return to any of those locations.

109.    Mr. Khan's family has reported the receipt of death threats as a result of publicity incident to Yale's disclosure of this information.

110.    As a direct and proximate result of the university's acts and omissions, Mr. Khan suffers from extreme emotional distress.

### Defamation – Jane Doe

111.    Paragraphs one through 110 are incorporated herein.

24

**A-84**

112.  Jane Doe and the plaintiff were, in fact, involved in a consensual sexual relationship in Jane Doe's dormitory room in Trumbull College on the night of October 31, 2015.

113.  In an attempt to explain her failure to rendezvous with friends on the night of October 31, 2015, Ms, Doe fabricated a claim of "rape," a claim she was later encouraged to pursue and publicize to campus officials, police officers, and others by Carole Goldberg.

114.  Jane Doe's testimony was rejected by a jury of her peers.

115.  Inspired by shame and rage, Ms. Doe persisted in her false and defamatory claims in an effort to obtain the expulsion of Mr. Khan from Yale, a vendetta at which she succeeded.

116.  Jane Doe's claims of rape constitute defamation and defamation per se.

**Tortious Interference With Business Relationships – Jane Doe**

117. Paragraphs one through 116 are incorporated herein.

118. A business relationship existed between Mr. Khan and Yale University, namely the contracting for the education of Mr. Khan in exchange for good and valuable consideration.

119. Jane Doe engaged in an intentional and improper interference with Mr. Khan's relationship, namely, the promulgation and the publication of intentionally

**A-85**

fabricated accusations against Mr. Khan and the pursuit of a crusade to obtain Mr. Khan's expulsion from Yale University.

120. As a result of Jane Doe's conduct, Mr. Khan lost the benefits of his business relationship with Yale University. He was suspended from attending classes and completing his degree at Yale University. He was rendered homeless. He was then expelled from Yale University.

121. Mr. Khan has experienced significant delay in completing his education, permanent professional damage, and significant delay to living a normal life as a result of the benefits he would have obtained through his business relationship with Yale University.

## DAMAGES

The plaintiff claims damages in the amount of $110 million as follows:

- A.    Loss of educational opportunities;
- B.    Loss of reputation;
- C.    Emotional distress and suffering; loss of professional opportunities;
- D.    Injunctive relief in the form of an order permitting the plaintiff to complete his Yale undergraduate degree;
- E.    Punitive damages;
- F.    Attorney's fees and costs;
- G.    Such other relief as this Court deems fair and equitable.

## THE PLAINTIFF CLAIMS A TRIAL BY JURY AS A MATTER OF RIGHT

**A-86**

THE PLAINTIFF

By

NORMAN A. PATTIS
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
203.393.3017
203.393.9745
npattis@pattislaw.com
ct13120

A-87

Case 26-830, 07/30/2026, DktEntry 21.1 (91 of 270)

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN,<br>Plaintiff, | : | cv  19 - 1966 |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | |
| PETER SALOVEY, | : | |
| JONATHON HALLOWAY, | : | |
| MARVIN CHUN, JOE GORDON, | : | |
| DAVID POST, MARK SOLOMON, | : | |
| PAUL GENECIN, | : | |
| STEPHANIE SPANGLER, | : | |
| SARAH DEMERS, JANE DOE | : | |
| CAROLE GOLDBERG, | : | |
| UNKNOWN PERSONS, | : | |
| Defendants. | : | DECEMBER 13, 2019 |

## MOTION FOR PERMISSION TO LITIGATE CLAIMS AGAINST JANE DOE USING A PSEUDONYM IN PLACE OF HER ACTUAL NAME

The Plaintiff, Mr. Khan, brings the instant action before the Court for an abuse of his rights under Title IX, broken promises that resulted in a heinous breach of contract against him, and fabricated allegations of false conduct against the Plaintiff. Notwithstanding the heinous falsities that the Jane Doe Defendant brought against Mr. Khan, Mr. Khan hereby moves the Court to grant him permission to litigate his pendent state law claims against Jane Doe using a pseudonym in place of her actual name because he holds out hope that he may move on with his life and complete his undergraduate degree at Yale University – either by permission of Yale University (also a defendant in the instant action) or by virtue of injunctive relief from the Court. In that hope and despite the many egregious wrongs committed against him, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual

**A-89**

Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

### Relevant Facts

On Halloween, 2015, Mr. Khan and Jane Doe had consensual sexual relations. *See* **Compl. at ¶¶ 39-43**. The next morning, Jane Doe belatedly decided that having consensual sexual relations with Mr. Khan was a bad decision so she concocted a story for her friends, claiming that she had been raped; however, she told the Yale University Health Center worker who provided her with contraception that she had engaged in consensual, unprotected sex. *Id.* at ¶ **45**. With the advice and counsel of the Defendants in this action, Jane Doe filed a formal complaint against Mr. Khan with the Yale University police department, which immediately began investigating Mr. Khan for rape. *Id.* at ¶¶ **46-48**. The State of Connecticut subsequently charged Mr. Khan with sexual assault in the first degree. *Id.* at ¶ 48.

During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e. After a two-week jury trial in early 2018, the jury quickly returned a verdict acquitting Mr. Khan of all charges against him. *Id.* at ¶ 52. Through the efforts of his defense counsel, Mr. Khan succeeded in having his UWC disciplinary hearing delayed until after his criminal trial. *Id.* at ¶ 51. Mr. Khan was subsequently readmitted to Yale University in the fall of 2018, but he was denied on-campus housing. *Id.* at ¶ 57. At this time, Yale University made no effort to move forward with his UWC disciplinary hearing, and Jane Doe had already graduated. *Id.* at ¶¶ 57, 68.

**A-90**

In November 2018, Yale University convened a UWC hearing on Jane Doe's complaint – the same one that had resulted in the criminal charges against Mr. Khan. *Id.* at ¶¶ 74. Jane Doe testified at that hearing, peddling the same concocted falsities that she had levelled against Mr. Khan in the criminal trial. *Id.* at ¶¶ 74-81. The only difference was that Mr. Khan could not cross-examine her or confront his accuser in any manner. *Id.* at ¶ 77. Yale university ultimately decided to expel Mr. Khan. *Id.* at ¶ 80.

On its website, Yale University publicizes a set of policies and procedures for UWC proceedings. The policies and procedures unequivocally pronounce "[t]he UWC and all members of the Yale community who are involved in a matter before the UWC are expected to maintain the confidentiality of its proceedings and the information obtained for those proceedings." *See* **Exhibit A – UWC Procedures, p. 3**. Yale University has elaborated on this provision through a formal policy statement made by its provost. *Id.* at **3.**

> The purpose of confidentiality is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer, which is essential to reaching a fair outcome. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process.

*See* **Exhibit B – Statement on Confidentiality of UWC Proceedings, p. 1.**

## ARGUMENT

Mr. Khan is no longer a member of the Yale University community due to his expulsion so the obligation to keep the UWC information confidential would not apply to him under ordinary circumstances. **Exhibit A, p. 3.** However, if Mr. Khan rejoins the Yale University as he seeks to do via a negotiated return with Yale

University or an injunction from the Court, this provision would apply to him. Consequently, to preserve his interest in rejoining the Yale University community to complete his undergraduate education, Mr. Khan respectfully requests the Court to allow him to proceed in his defamation and tortious interference claims by naming Jane Doe under a pseudonym.

Fed. R. Civ. P. 10(1) mandates that "[t]he title of [a] complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d. Cir. 2008).[1] However, courts have "carved out a limited number of exceptions to the general requirement of disclosure...." *Id.* at 189 (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). These exceptions have typically arisen in cases involving sensitive and intimate issues such as abortion decisions, e.g., *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), or cases involving minors, e.g., *Smith v. Edwards*, 175 F.3d 99 (2d. Cir. 1999).

In the *Sealed Plaintiff* case, the Second Circuit established ten non-exclusive factors, discussed in turn below, to determine whether the Court should grant a party's request to persuade under a pseudonym. *Id.* at 189-90. While these factors have traditionally been applied to parties seeking to protect their own identities by use of a pseudonym, these factors are also readily adaptable to a

---

[1] To the best of counsel's knowledge after research, this case is still sealed. Consequently, counsel has provided the Court with a copy of the Second Circuit's decision to save the Court any difficulty in locating it. *See* **Exhibit C – *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d. Cir. 2008).**

A-92

request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance to take a position, by naming her by a pseudonym.

The first factor weighs "whether the litigation involves matters that are 'highly sensitive and [of a] personal nature.'" *Id.* at 190 (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). The instant case involves matters of a highly sensitive and personal nature, both to Mr. Khan and Jane Doe. As stated above, Jane Doe accused Mr. Khan of raping her. "[A]llegations of sexual harassment and misconduct" raises issues and questions "that are of a highly sensitive and personal nature." *A.B. v. C.D.*, 2018 WL 1935999, at *2. Therefore, the first factor weighs in Mr. Khan's favor.

The second factor examines "whether identification poses a risk of retaliatory physical or mental harm to the… party (seeking to proceed anonymously] or even more critically, to innocent non-parties." *Sealed Plaintiff*, 537 F.3d at 190 (quoting *Zavaras*, 139 F.3d at 803). As stated above, Jane Doe was protected by Conn. Gen. Stat. § 54-86e, which prevented the publication of her name during Mr. Khan's criminal trial. Consequently, for the purposes of Mr. Khan's UWC process, his conduct of his criminal trial did not violate the UWC procedures. If Mr. Khan names Jane Doe in this action, he will suffer the risk of retaliatory physical or mental harm, namely, the loss of any chance to successfully negotiate his return to Yale University to complete his undergraduate studies and the jeopardization of his opportunity to obtain injunctive relief from the Court to allow him to complete his undergraduate studies. Therefore, Mr. Khan seeks to

**A-93**

respect the UWC confidentiality rules by seeking to proceed against Jane Doe pseudonymously. Thus, the second factor weighs in Mr. Khan's favor.

The third factor examines "whether identification presents other harms and the likely severity of those harms…, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Id*. at 190 (quoting *Zavaras*, 139 F.3d at 803). At first glance, the injury incurred by Mr. Khan has already occurred. However, Mr. Khan does face the significant likelihood of further antagonizing Yale University to the point of placing his chances of negotiating a return to Yale University to complete his undergraduate degree by naming Jane Doe in violation of the UWC hearing. Furthermore, if Mr. Khan does name Jane Doe, Yale University will undoubtedly use that fact against him to illustrate its version that Mr. Khan "breaks" Yale University polices in opposing Mr. Khan's request for injunctive relief. Consequently, the third factor weighs in favor of Mr. Khan.

Mr. Khan concedes that the fourth factor weighs against him in that he is not "particularly vulnerable to the possible harms of disclosure…, particularly in light of his age." *Id*. at 190.

The fifth factor weighs in favor of Mr. Khan: "whether the suit is challenging the actions of the government or that or private parties." *Id*. at 190. Normally, suits against private parties do not enjoy a stronger presumption of a need to protect a party's privacy because personal embarrassment is the only consideration for keeping them private. *A.B. v. C.D.*, 2018 WL 1935999, at *3. However, when a party sues the government and seeks to serve as "a significant check on abuse of

public power," "it is in the public interest that the price of access to the courts not be too high." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). "Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued." *Id.* at 158 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The value of open proceedings disappears when there are no proceedings to be had." *Id.* at 158. The reasoning underlying this presumptive balancing factor is the power disparity between the government, the public at large, and potential plaintiffs. The same reasoning applies here. Yale University enjoys tremendous social power, and it can have a tremendous impact on a person's life as Mr. Khan can readily attest to. If Mr. Khan names Jane Doe, the potential for Yale to retaliate against him in negotiations about his potential readmission to Yale to complete his degree and to whip up public scorn against him would be similar to that of a government trying to accomplish the same goals against a plaintiff. Consequently, while Mr. Khan does not presumptively enjoy the benefit of this factor, he should be given its protections for the same reasons undergirding it.

The sixth and seventh factors also weigh in Mr. Khan's favor. The sixth factor weighs "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. The seventh factor examines "whether the [defendant]'s identity has thus far been kept confidential." *Id.* at 190. Jane Doe's identity has been kept confidential for more than three years now. Her

**A-95**

identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial. Yale University's UWC policies and procedures kept her identity confidential in Mr. Khan's UWC proceeding. If anyone has suffered prejudice in this concocted saga, it is Mr. Khan, who was publicly and privately pilloried on the basis of Jane Doe's false accusations without ever being allowed to name her as his accuser when defending himself. Every single proceeding that has involved Jane Doe and Mr. Khan to this point has kept Jane Doe's identity confidential to protect her from a similar public pillorying. Consequently, as Mr. Khan seeks to put his life back together by complying with rules that Jane Doe has gladly embraced to protect herself, it will not prejudice Jane Doe in the slightest to continue to protect her from public scrutiny. Therefore, both the sixth and seventh factors weigh in Mr. Khan's favor.

Similar to the sixth and seventh factors, the eighth and ninth factors are linked, and Mr. Khan concedes that both do not weigh in his favor. The eighth factor examines "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [the defendant's] identity." *Id.* at 190. The ninth factor addresses "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Id.* at 190. Addressing the ninth factor first, Mr. Khan was acquitted in a highly publicized trial that was covered with no small vigor by the press from charging to verdict and that invoked widespread reaction at the height of the #MeToo movement. The media including the Yale Daily News insisted on publicizing and discussing the case long after the jury had delivered Mr. Khan's

**A-96**

acquittal. As soon as the instant action is filed, it will garner intense public scrutiny, which will widely publicize Jane Doe's name. Therefore, under no circumstances can Mr. Khan or counsel anticipate an atypically weak public interest in learning the parties' identities. Turning to the eighth factor, the public's interest will undoubtedly be aided tremendously if Mr. Khan is forced to disclose Jane Doe's identity. Both of these factors weigh against Mr. Khan.

The tenth and final factor examines "whether there are any alternative mechanisms for protecting Plaintiff's [interest in] confidentiality." *Id*. at 190. There are none. Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life. If he is forced to name Jane Doe, Mr. Khan will be forced to choose between Scylla and Charybdis. If he chooses to continue with his claims against Jane Doe for the wrongs that she has committed against him, Mr. Khan will lose any chance for a negotiated return to Yale University because Yale University will never forgive him for violating the UWC policies and procedures and he will incur significant prejudice when it comes to obtaining injunctive relief from the Court to allow him to finish his degree. If he chooses to discontinue his claims, Mr. Khan may or may not succeed in negotiating a return to Yale University to complete his degree. However, he will certainly forfeit forever the opportunity to seek legal redress for the wrongs Jane Doe has committed against him. Consequently, the tenth factor weighs in Mr. Khan's favor.

**A-97**

## CONCLUSION

Mr. Khan still holds out hope, albeit small hope, that he can piece his life back together by completing his degree at Yale University, either through a negotiated agreement with Yale University or by injunctive relief from the Court. At the same time, Jane Doe has destroyed Mr. Khan's life through her false accusations against him. Consequently, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

Therefore, for the foregoing reasons, Mr. Khan respectfully requests that the Court grant his motion to proceed against Jane Doe by identifying her with a pseudonym.

The Plaintiff

BY:

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120
383 Orange Street, First FL.
New Haven, CT  06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

A-98

## CERTIFICATION

I hereby certify that on September 23, 2019 a copy of the foregoing was filed

electronically. Notice of this filing was sent by e-mail to all parties by operation of the

Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120

**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand twenty-three.

Before:          Debra Ann Livingston,
                          *Chief Judge,*
                   Amalya L. Kearse,
                   Reena Raggi,
                          *Circuit Judges.*

_____

Saifullah Khan,

          Plaintiff - Appellant,

v.

Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, Unknown Persons,

          Defendants,

Jane Doe,

          Defendant - Appellee.

_____

**JUDGMENT**

Docket No. 21-95

The appeal in the above captioned case from a partial judgment of the United States District Court for the District of Connecticut was argued on the district court's record and the parties' briefs.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the partial judgment is AFFIRMED IN PART so much as it dismissed as untimely Khan's tortious interference claim based on Doe's 2015 statements, and VACATED IN PART so much as it dismissed on absolute immunity grounds Khan's defamation and tortious interference claims based on Doe's 2018 statements, and the case is REMANDED for further proceedings consistent with this Court's opinion.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 11/15/2023

A-100

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAIFULLAH KHAN,                         :        CIVIL ACTION NO.
    Plaintiff,                         :        3:19-cv-01966-KAD
                                       :
V.                                      :
                                       :
YALE UNIVERSITY, ET AL.,                :
    Defendants.                        :        MARCH 4, 2024

### DEFENDANT JANE DOE'S
### MOTION FOR A PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P 26(c) and Local Rule 26, and for good cause shown, Defendant

Jane Doe moves for a protective order, as described in the attached Memorandum of Law and

Proposed Protective Order attached to the Memorandum of Law. The Court should grant Jane

Doe's Motion for the reasons set forth in the accompanying Memorandum of Law.

DEFENDANT JANE DOE,


By: */s/ Brendan N. Gooley*
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    CARLTON FIELDS, P.A.
    One State Street, Suite 1800
    Hartford, CT  06103
    Tel.: 860-392-5000
    Fax: 860-392-5058
    Email: jsconzo@carltonfields.com
           bgooley@carltonfields.com

    Her Attorneys

1

**A-101**

Case 26-830, 07/30/2026, DktEntry 27.1, Page 105 of 270

## CERTIFICATION OF SERVICE

This is to certify that on this 4th day of March 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

*/s/ Brendan N. Gooley*
Brendan N. Gooley

2

**A-102**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | 3:19-CV-01966-KAD |
| Plaintiff, | : | |
| v. | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | MARCH 15, 2024 |

## MR. KHAN'S MOTION TO VACATE ORDER
## TREATING JANE DOE PSEUDONYMOUSLY

Mr. Khan initiated this lawsuit in 2019, one year after he was acquitted of criminal charges accusing him of the sexual assault of a classmate. At the time he filed this suit, he sought reinstatement to Yale. Under University rules, any student alleging sexual assault is entitled to anonymity. As a sign of respect for the University he hoped to re-enter, Mr. Khan sought, prior to the service of the Complaint, to designate his accuser as Jane Doe. Ms. Doe, the Connecticut Supreme Court noted in a related ruling, is no longer a student at the University, and is therefore not bound by obligations arising under the University Honor Code. Mr. Khan contends that any obligation to keep information about Ms. Doe confidential is also now moot. Nor is Jane Doe a victim of sexual assault. A criminal jury acquitted Mr. Khan of all

1

**A-103**

criminal charges. Ms. Doe has not herself filed a civil suit claiming assault. There is no case or controversy of any sort pending in which Jane Doe is entitled to anonymity. The order regarding the treatment of her under a pseudonym should be vacated.

There is no indication that at any time from 2019, when the action was filed, until 2023, when the Connecticut Supreme Court published its decision in his favor, that Mr. Khan publicized Ms. Doe's name. Nor is there any indication that the defendant sought to make Ms. Doe's name public in 2015, when the allegations against him were first raised, until 2019, when he was acquitted. Certainly, it is a name well known to him, as he endured a criminal trial with her testifying as a witness in the Connecticut Superior Court in 2018. He did not name her even after he was exonerated, and a jury quickly returned a verdict of not guilty on all counts. The cross-examination of Ms. Doe drew comments from and condemnation nationwide and was reported on in Time magazine. A Yale Student Accused Her Classmate Of Rape. His Lawyers Asked What She Was Wearing and How Much She Drank, Time, March 9, 2018( https://time.com/5192004/yale-university-sexual-assault-trial/).

2

**A-104**

When Mr. Khan filed this suit in 2019, his hope and objective were to be permitted to return to Yale to complete his degree. In service of that end, he sought pseudonymous protection for Jane Doe because that is how university regulations required that a student alleging sexual misconduct be treated. The Connecticut Supreme Court's decision regarding Ms. Doe's immunity claim was eye-opening for Mr. Khan and should be to this Court as well. The decision rejected the claim that Ms. Doe was under the functional equivalent of an oath when she made statements against Mr. Khan by operation of the student honor code, which would have subjected her to university sanctions for making a false statement in a university proceeding. "The UWC's only protection against false statements is the threat that the '[f]ailure to provide truthful information may result in a recommendation for a more severe penalty or a referral for discipline.' Because Doe had graduated from Yale by the time of the proceedings … she presumably could not be subject to any disciplinary consequences for failing to testify truthfully." *Khan v. Yale Univ.*, 347 Conn. 1, 28-29 (2023) (citation omitted). Similarly, an obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired.

3

**A-105**

There is a presumption against pseudonymous filings under Connecticut law. "The privilege of using fictitious names in actions should be granted only in the rare case where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest." *Buxton v. Ullman*, 147 Conn. 48, 60, 156 A.2d 508 (1959). "This policy of openness is not to be abridged lightly. In fact, the legislature has provided for very few instances in which it has determined that, as a matter of course, certain privacy concerns outweigh the public's interest in open judicial proceedings." *Vargas v. Doe*, 96 Conn. App. 399, 406, 900 A.2d 525 (2006).

"Pseudonyms may be used in place of the name of a party or parties only with the prior approval of the judicial authority and only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in knowing the name of the party or parties. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. The judicial authority shall articulate the overriding interest being protected and shall specify its findings underlying such order and the duration of such order. If any findings would reveal information entitled to remain confidential, those findings may be set

4

**A-106**

forth in a sealed portion of the record. An agreement of the parties that pseudonyms be used shall not constitute a sufficient basis for the issuance of such an order. The authorization of pseudonyms pursuant to this section shall replace the names of the parties required by Section 7-4A. Conn. Practice Book 11-20A (h)(1) (2022).

The defendant's reliance on the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. Section 1232g and 34 C.F.R. Part 99, is misplaced. FERPA pertains to the confidentiality of educational records. The statute provides a definition of education records and items excluded from the scope of educational records.

> (A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which:
>
> > (i) contain information directly related to a student; and
> >
> > (ii) are maintained by an educational agency or institution or by a person acting for such an agency or institution.
>
> (B) The term "education records" does not include:
>
> > (i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;
> >
> > (ii) records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement;
> >
> > (iii) in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or

5

A-107

institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or

(iv) records on a student who is eighteen years of age or older, or is attending an institution of postsecondary education, which are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in his professional capacity, or assisting in that capacity, and which are made, maintained, or used only in connection with the provision of treatment to the student, and are not available to anyone other than persons providing such treatment, except that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

FERPA, 20 U.S.C., Section 1232g (4)(A) et seq.

The scope of the records protected by FERPA is broad but not unlimited. Information directly related to a student and maintained by an educational institution is covered. However, the exclusions are significant. For instance, records created and maintained by law enforcement are excluded if created for the purpose of law enforcement.

FERPA is silent on records created and maintained by administrative units within a university charged with investigating what amounts to criminal conduct. The plaintiff contends that a better reading of FERPA excludes protection of information gathered by a university when it investigates what amounts to criminal conduct. Being raped is not a normal incident of studentship, especially in a case where a criminal trial has taken place, with

6

**A-108**

university police and officials offering public testimony on the accusations and surrounding facts.

This is a case in which the plaintiff filed a lawsuit against an accuser for making a false accusation of rape, an accusation that garnered international attention, resulted in a firestorm of opposition to his return to Yale after he was acquitted, and has caused him enormous damages. The defendant elected not to file a civil action against the plaintiff, which would have provided her with the right to seek a confidentiality order. There is a substantial public interest in knowing the identity of a person making a false accusation of rape. In the context of this case, permitting individuals to enjoy special litigation status merely because they make a claim encourages future false claims.

Mr. Khan filed suit against Ms. Doe to hold her accountable; he will seek punitive damages to deter others from doing what she has done. Permitting her to enjoy the cloak of anonymity defeats the purpose of deterring false claims.

7

**A-109**

THE PLAINTIFF

BY:

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS
Pattis & Paz, LLC
Bar no. ct13120
383 Orange Street, First FL.
New Haven, CT 06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattislaw.com

## CERTIFICATION

I hereby certify that on March 15, 2024, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY:

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS

8

**A-110**

**ECF No. 103 (Apr. 5, 2024)**

Doe Sealed Motion to Continue Anonymity

*FILED UNDER SEAL IN THE DISTRICT COURT*

*Omitted from the public appendix. See the docket sheet for the entry.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:19-cv-01966- KAD |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | March 8, 2024 |
| Defendants | : | |

**ANSWER AND AFFIRMATIVE DEFENSES OF YALE UNIVERSITY**

The defendant, Yale University, hereby answers the plaintiff's complaint dated December 13, 2019.

1.      Paragraph 1 is a description of the plaintiff's claims to which no response is required.

2.      The defendant admits that the Court has jurisdiction and that the venue is proper.

3.      The defendant admits that the plaintiff matriculated as an undergraduate student at Yale University and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3.

4-10.   Paragraphs 4, 5, 6, 7, 8, 9 and 10 are admitted.

10. (sic)       The second Paragraph 10 is admitted.

11.     The defendant admits that Lynn Cooley has served as the Dean of the Yale Graduate School of Arts and Sciences since 2014.  The remaining allegations contained in Paragraph 11 are denied.

12-14.  Paragraphs 12, 13, and 14 are admitted.

15.     The defendant admits that Carole Goldberg was a clinical psychologist, a faculty member at the Yale School of Medicine, and the Director of Yale University's Sexual Harassment and Assault Response & Education Center ("SHARE") until her retirement in 2019.  The defendant denies the remaining allegations contained in Paragraph 15.

16.     Paragraph 16 is admitted.

17.     The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17, except to deny that agents of the defendant served as "conduits of private information transmitted to the news media, including the Yale Daily News, The New York Times and The Washington Post."

18-22.  The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 18, 19, 20, 21, and 22.

23.     The defendant admits that the plaintiff applied to Yale University.  The defendant denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23.

24.     Paragraph 24 is denied, except to admit that the plaintiff was on full scholarship.

25.     The defendant admits the first three sentences of paragraph 25 and admits that it provided financial aid to the plaintiff for his Yale tuition and room and board.  The remaining allegations of paragraph 25 are denied.

26.     Paragraph 26 is admitted.

27.     The defendant denies the allegations as stated, but admits that some of the students at Yale voiced concerns about how Yale responded to complaints of sexual misconduct.

28. The defendant admits that the Office of Civil Rights ("OCR") of the U.S. Department of Education ("DOE") issued an April 4, 2011 letter, widely known as the "Dear Colleague" letter, and refers to the letter for the contents thereof.

29. The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29.

30. Paragraph 30 is denied.

31. The defendant admits that the UWC addresses allegations of sexual misconduct according to the guidelines described in the UWC Procedures and that the plaintiff was subject to the policies and jurisdiction of the UWC as a student. The defendant denies that it created the UWC in response to the Office of Civil Rights' investigation

32. The defendant admits that it adopted UWC Procedures and refers to those procedures for the contents thereof.

33. The defendant admits that Yale alumni wrote an open letter to Preside Salovey and Provost Spangler in August, 2013 and refers to the letter for the contents thereof. The defendant denies knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33.

34. Paragraph 34 is denied.

35. The defendant admits that the plaintiff attended classes as an undergraduate student from 2012 until November, 2015. The defendant further admits that the plaintiff majored in cognitive science and took several courses on the mind and brain. The defendant also admits that the plaintiff enrolled in some graduate courses.

36. The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36.

37.     Paragraph 37 is admitted.

38.     The defendant admits that the plaintiff was expected to graduate with the Class of 2016 with a Yale baccalaureate.  The defendant denies knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 38.

39-42.   The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39, 40, 41, and 42.

43.     The defendant denies that it encourages and fosters casual sexual encounters among its students.  The defendant denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 43.

44-45.   The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 44 and 45.

46.     Paragraph 46 is denied, except to admit that Jane Doe received counseling from The Yale Women's Center and met with David Post to discuss UWC Procedures.

47.     The allegations contained in paragraph 47 are denied.

48.     Paragraph 48 is denied, except to admit that members of the Yale Police Department interviewed Jane Doe and then referred her to The New Haven Police Department, and it is further admitted that Mr. Khan was thereafter charged with sexual assault in the first degree following an arrest warrant issued by the State of Connecticut and was thereafter presented to the Superior Court of the Judicial District of New Haven.

49.     Paragraph 49 is denied.

50.     The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50.

51.     Paragraph 51 is admitted.

52.     Paragraph 52 is denied, except to admit that Mr. Khan was tried and acquitted by a jury of six in the Judicial District of New Haven in early 2018.

53-54.  The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 53 and 54.

55.     Paragraph 55 is denied, except to admit that The Yale Daily News and other news outlets published articles about the trial, and the defendant refers to those articles for the content thereof.

56.     The defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56.

57.     Paragraph 57 is denied, except to admit that the plaintiff sought readmission to Yale University.

58.     The defendant admits that the plaintiff was readmitted to Yale University in the Fall, 2018 semester.  The defendant denies the allegation that the University inappropriately denied on campus housing to Mr. Khan, but admits that Mr. Khan delayed requesting housing until after all space had been taken by others, and therefore no campus housing was available for him.

59.     Paragraph 59 is denied, except to admit that some individuals expressed their opposition to Mr. Khan returning to Yale.

60.     The defendant admits that the Yale Daily News published an article entitled "Khan and his consort" on October 5, 2018 and refers to the article for the contents thereof.

61.     The defendant refers to the article for the contents thereof.

62-63.  Paragraphs 62 and 63 are admitted.

64.     Paragraph 64 is denied, except to admit that when Mr. Khan refused to meet with members of the Yale administration on October 7, 2018, a letter was hand delivered to Mr. Khan

informing him that he was suspended effective immediately from Yale College. The defendant refers to that letter for the content thereof.

65. Paragraph 65 is admitted.

66. Paragraph 66 is denied, except that it is admitted that Yale University promotes and encourages tolerance of all human beings.

67. Paragraph 67 is denied.

68. Paragraph 68 is admitted.

69-70. Paragraphs 69 and 70 are denied.

71. The defendant admits that the plaintiff had a psychiatric evaluation and refers to the evaluation for the contents thereof.

72. Paragraph 72 is denied.

73. Paragraph 73 is admitted.

74. Paragraph 74 is denied, except to admit that the UWC conducted a hearing on Jane Doe's complaint alleging sexual misconduct in November, 2018.

75. Paragraph 75 is admitted.

76. Paragraph 76 is denied.

77. The defendant admits that Jane Doe was not physically present at the hearing and was permitted to attend via teleconference. The defendant further admits that, as provided in the UWC Procedures, the plaintiff was not present in the hearing room when Ms. Doe offered her statement, but rather listened to the statement from another room. The defendant denies the remaining allegations contained in Paragraph 77.

78. Paragraph 78 is denied, except to admit that, pursuant to the UWC Procedures, the plaintiff's advisor was not allowed to ask questions or register objections during the hearing and

{N5983668}

**A-117**

that a member of the Yale University Office of the General Counsel was present during the hearing and was subject to the same restrictions as plaintiff's counsel.

79. The defendant admits that, pursuant to the UWC Procedures, no transcript or other electronic recording of the hearing was made.

80-81. Paragraphs 80 and 81 are denied.

## CLAIMS FOR RELIEF

**Title IX – Breach Of Due Process By Means Of Denial Of Right To Confront His Accuser, By Denial Of His Right To Meaningful Assistance Of Counsel, By Denial Of His Right To Have An Adequate Record Of The Proceedings Against Him Created, By Rendering Him Homeless As A Result Of Summary Process And By Denying Him A timely Adjudication Of The Claims Raised Against Him**

82. The responses to Paragraph 1 through 81 are incorporated and made the response to Paragraph 82.

83. The defendant refers to the text of Title IX for the contents thereof.

84. Paragraph 84 is denied.

## Breach of Contract

85. The responses to Paragraph 1 through 84 are incorporated and made the response to Paragraph 85.

86. The defendant refers to Yale College Programs of Study and the UWC Procedures for the contents thereof.

87. Paragraph 87 is denied, except to admit that the plaintiff was admitted to Yale on a full scholarship.

88. Paragraph 88 is denied.

## Breach Of The Implied Warranty Of Fair Dealing

89. The responses to Paragraph 1 through 88 are incorporated and made the response

{N5983668}

**A-118**

to Paragraph 89.

90.     Paragraph 90 is admitted.

91.     The defendant denies that the plaintiff relied to his detriment upon statements made by agents of Yale University.  The defendant denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 91.

92-95.  Paragraphs 92, 93, 94, and 95 are denied.

### Negligent Infliction of Emotional Distress

96.     The responses to Paragraph 1 through 95 are incorporated and made the response to Paragraph 96.

97-98.  Paragraphs 97 and 98 are denied.

### Intentional Infliction of Emotional Distress

99.     The responses to Paragraph 1 through 98 are incorporated and made the response to Paragraph 99.

100-105.     Paragraphs 100, 101,102, 103, 104 and 105 are denied.

### Breach of Privacy – Publication Of Private Facts

106.     The responses to Paragraph 1 through 105 are incorporated and made the response to Paragraph 106.

107-108.     Paragraphs 107 and 108 are denied.

109.     The defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109.

110.     Paragraph 110 is denied.

### Defamation – Jane Doe

The defendant does not respond to Paragraph 111 through 116 because the defendant is not

{N5983668}

**A-119**

named in the defamation claim.

**Tortious Interference With Business Relationships – Jane Doe**

The defendant does not respond to Paragraph 117 through 121 because the defendant is not named in the tortious interference claim.

**Affirmative Defenses**

**First Affirmative Defense**

To the extent the plaintiff is seeking equitable relief, including without limitation, an order "permitting the plaintiff to complete his Yale undergraduate degree," such relief should be denied because the plaintiff has unclean hands. Specifically, the plaintiff intentionally disclosed confidential documents and/or information in direct violation of both the Court's order (Doc. No.12) and the University's polices concerning confidentiality, as follows:

1. As early as November 9, 2015, the plaintiff received the University's Statement on the Confidentiality of UWC Proceedings ("Confidentiality Statement"). Through the Confidentiality Statement, the plaintiff was informed that the University's policies required him to maintain the confidentiality of the UWC proceedings and information disclosed during those proceedings, and that the University may take disciplinary action for violation(s) of the confidentiality requirement.

2. In April 2018, the plaintiff "confessed" (his word) to having violated the confidentiality policies and asked that the University "not punish" him for what he described as past disclosures of documents, identities of parties involved, and pertinent details of the UWC proceeding for use in his recently concluded criminal case.

3.  In May 2018, the University reminded the plaintiff he was to strictly observe the confidentiality requirement of all UWC documents.

4.  On or about December 16, 2019, the plaintiff filed a Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name ("Motion") in this matter. (Doc. No. 7.) In support of that Motion, he relied in large part on his obligation to maintain the confidentiality of "UWC proceedings and information obtained for those proceedings, including the name of his accuser." Motion, pp. 1-2.

5.  Plaintiff further stated in his Motion that his "sole interest in confidentiality" is to return to the University to obtain his degree. *Id.*, p. 10. Plaintiff recognized that disclosing Jane Doe's name would likely result in him losing "any chance for a negotiated return to Yale University because Yale University will never forgive him for violating the UWC policies and procedures and he will incur significant prejudice when it comes to obtaining injunctive relief from the Court to allow him to finish his degree." *Id*.

6.  By Order dated January 10, 2020, the Court granted the Motion upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, "the parties' acknowledgement of the Defendant Yale University's applicable polices concerning confidentiality," the risk of harm and absence of prejudice to the litigants from the Order, and other factors. (Doc. No. 12).

7.  Notwithstanding the Court's Order and the University's policies concerning confidentiality, all of which the plaintiff was well-aware, the plaintiff intentionally and publicly disclosed Jane Doe's identity by, *inter alia*, disclosing Jane Doe's full name in posts on social media.

Accordingly, the plaintiff has engaged in conduct involving fraud, deceit, unconscionability, bad faith, and/or wilful misconduct designed to harm without any just cause or excuse. Plaintiff should be denied any and all equitable and/or injunctive relief because he has acted with unclean hands.

**Second Affirmative Defense**

To the extent the judge or jury determines the plaintiff suffered damage(s) from any decision by the University to which the plaintiff is entitled an award, the award should be reduced, in whole or in part, by the after acquired evidence doctrine. The after acquired evidence includes, without limitation, the plaintiff's conduct violating the University's policies and procedures and/or any Orders of the Court, such as disclosing the identity of Jane Doe.

**Third Affirmative Defense**

The plaintiff's claims, other than the claim of breach of a written contract, are barred by the applicable statute of limitations.

THE DEFENDANT,
YALE UNIVERSITY

BY: *Patrick M. Noonan*
Patrick M. Noonan (#ct00189)
Giovanna Tiberii Weller (#ct11187)
Carmody Torrance Sandak & Hennessey LLP
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168
pnoonan@ddnctlaw.com
gweller@carmodylaw.com

{N5983668}

**A-122**

**CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*Patrick M. Noonan*

Patrick M. Noonan

**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

KHAN                                               :

v.                                                 :    3:19-cv-1966 (KAD)

YALE UNIVERSITY et al.                             :    JULY 3, 2024

**LOCAL RULE 72.2 OBJECTION AND REQUEST FOR DE NOVO REVIEW BY
DISTRICT COURT OF MAGISTRATE JUDGE ORDER AT CM/ECF NO. 119**

On June 19, 2024, Judge Garcia issued a ruling and order concerning speech rights and pseudonymity. Specifically, Judge Garcia ordered, among other things, Jane Doe's request for pseudonymity was a request for anonymity; Jane Doe was entitled to such pseudonymity; Jane Doe's continued pseudonymity is warranted; the request for pseudonymity in this case is not a discovery issue governed by FRCP 26; the Plaintiff may not identify Doe by name and that restriction on the Plaintiff's speech is not a prior restraint.

In accordance with Local Rule 72.2, the Plaintiff objects and requests de novo review by the District Court. The Plaintiff objects to each finding and judgment in the memorandum except that FRCP 26 does not apply, including each of those matters specifically identified above as well as any other matters in the Order at CM/ECF Entry 119.

Even if Doe may proceed under a *pseudonym*, that is in the caption of the case, the Order constitutes an illegal *prior restraint*. How the case is captioned is separate from whether the Court can enjoin or punish the Plaintiff under the circumstances for his protected speech. The Order cannot be squared with Supreme Court precedent and current legal doctrine.

A-124

## I. BACKGROUND

The Plaintiff revealed Doe's identity, citing as his reason a footnote in the Second Circuit opinion in this case:

> While Doe's real name is known to the parties, Khan moved to pursue this civil action against her pseudonymously to avoid violating the privacy requirement of Yale's Sexual Misconduct Policy. That policy does not bind the federal courts, which generally require a complaint to "name all the parties." . . . . This court has, however, recognized judicial discretion to depart from Rule 10(a) when a party's interest in anonymity outweighs "both the public interest in disclosure and any prejudice" to the adverse party. . . . Because no party complains that the district court failed to balance these interests here or otherwise abused its discretion, **we do not pursue the matter further** and simply refer to defendant as "Jane Doe" in this opinion. . . .

*Khan v. Yale Univ.*, 27 F.4th 805, 809n.1 (2d Cir. 2022), *certified question* answered, 347 Conn. 1, 295 A.3d 855 (2023)(emphasis added; citations omitted). He also cited reliance on Footnote 39 of the Connecticut Supreme Court opinion in this case.

*Khan v. Yale Univ.*, 347 Conn. 1, 53n.39, 295 A.3d 855, 887 (2023)

On June 19, 2024, Judge Garcia issued an order:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal. Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration. Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language. If the parties agree, they may jointly file a Proposed Order. If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

The Order is a prior restraint.

## II. THE ORDER IS <u>PLAINLY</u> A PRIOR RESTRAINT ON ITS FACE

Judge Garcia claims at 13–14 that the Order is not a prior restraint. The order is plainly a prior restraint on its face:

> A "prior restraint" on speech is a law, regulation or judicial order that suppresses speech—or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression.

*United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005). In the present case, the Order prohibits "publicly disclosing or revealing Jane Doe's identity . . . ." Order at 15. Prohibiting public disclosure is suppressing communication. By any logical measure, this order suppresses speech on the basis of its content.

## III.  THE ORDER CANNOT BE SQUARED WITH  *COX*  OR *FLORIDA STAR*

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) has been settled law for almost a half-century. The Supreme Court concluded in *Cox* that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive the incident. *Id.* at 471. The incident occurred in Georgia, and at the time, publishing or broadcasting the name or identity of a rape victim constituted a misdemeanor in Georgia. *Id.* at 471–72.

The victim's name appeared in indictments. *Id.* at 472. The indictments were public records available for inspection. *Id.* at 472–73. A reporter learned the victim's identity through these public records and broadcast a report that named the victim. *Id.* at 473–74. The report was repeated the following day. *Id.* at 474.

3

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name. *Id.* at 474–75. Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive." *Id.* at 475. The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern. *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489. Nonetheless, the Court concluded that a state **may not "impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record. *See* T 2/26/18 at 35. Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started. Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

Furthermore, Doe's position cannot be reconciled with itself. In this case, Doe maintains she is a victim of sexual assault by the Plaintiff. Attorney Sconzo made this argument forcefully at the March 26, 2014 hearing. See T 3/18/24 at 13–14. Let's assume for the moment, **strictly for the sake of the argument,** that is the case. The Court cannot impose sanctions on the Plaintiff for disclosing this

(ostensibly) true fact that is already available to the public in the public record:

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and hear what transpired can report it with impunity. There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it . . . .

*Cox* at 492–93. The Plaintiff participated in proceedings, and he can testify about them. This includes identifying Doe, by name, as she did in open court.

In the alternative, assuming for the sake of the argument that Doe is **not** a victim of sex assault by the Plaintiff, as the Plaintiff claims in this litigation, then she has no right to privacy for making false allegations against the Plaintiff. If her accusation is false, the Plaintiff has every right to publish the truth, including identifying Doe, in order to salvage his reputation: that Doe lied about him, and to identify Doe's name.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded on *Cox*. In *Florida Star*, Florida had a law that made it illegal to print, publish, or broadcast the name of a victim of a sexual offense. *Id.* at 526. The Florida Star published the name of *B.J.F.* in a police blotter by mistake. *Id.* at 527. This was in violation of the Florida Star's own policy of not publishing the name of sex assault victims. *Id.* at 528. B.J.F. filed suit sounding in negligence. *Id.* The trial court directed a verdict as to negligence *per se* in favor of B.J.F. *Id.* at 529.

The Supreme Court held that punishing the publication was unconstitutional. "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its

5

**A-128**

release." *Id.* at 535. The "source" of the release in this case is the Connecticut Superior Court, not the Plaintiff. See T 2/26/18 at 35. "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

Note that this all is separate from how *this Court* elects to caption the case. *See Florida Star* at n1. This Court can caption the case however it wishes to. But the Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, has accused the Plaintiff of sexual assault. That is in the public record. Accordingly, it is beyond the power of this Court to punish the Plaintiff for publishing that fact, with her true name.

6

A-129

## IV.    JANE DOE WANTS PSEUDONYMITY; SHE IS NOT ANONYMOUS

In the order, Judge Garcia frequently elides pseudonymity with anonymity. That is a mistake and part of why reliance on *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) is misplaced.

Anonymity is when a speaker's identity is not known. **Doe is not anonymous, and has never been anonymous.** Doe did not send an anonymous tip. Doe did not commence a lawsuit under a pseudonym. Doe testified under oath at the criminal trial, and used her full name in open court. *See* T 2/26/18 at 35. Doe's name is in transcripts that anyone can obtain from the Connecticut judicial branch. *Id.* Doe's name has been published online by a journalist. However protected by FERPA, Doe did not speak *anonymously* in the school proceedings: FERPA kept her name *confidential*, but the Plaintiff knew her name and her name was known during that process. He obtained knowledge of her identity lawfully. In this case, allowing Doe to proceed with a pseudonym does not make her anonymous, no matter what Judge Garcia supposes. Doe has never been anonymous and Doe is not anonymous now. It is error to elide these two principles as they are factually and legally distinct.

An **anonymous plaintiff** may, prior to revealing their identity, ask for permission to proceed under a pseudonym. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). Or a pseudonym may be necessary for the plaintiff to make out a complaint against unknown individuals, **where the identity of an anonymous defendant is not known** and that identity is sought through litigation. *See Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001). In such a case where a defendant is a Doe, the plaintiff does so for

7

**A-130**

logistics; not to preserve anonymity, but to defeat it. In both cases, the public is not aware of the identity of the anonymous party at the start of a lawsuit.

Undersigned can find no case where the specific identity of a defendant was a matter of public record before a suit and where a party was lawfully punished for disseminating that information.

Now, as to some defendants in defamation suits, there is a fundamental right to anonymously criticize government officials. Thus, the judicial process sometimes can protect that kind of anonymity. *See id.* There is no fundamental right to defame a private individual, however. This case does not involve an anonymous party criticizing the government or any attempt to uncover the identity of an anonymous defendant through the judicial process.

In accordance with *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), a **plaintiff** may attempt to proceed under a pseudonym to protect their identity. That is a situation where the identity of the party seeking the pseudonym is not known to the public before the lawsuit commences, and this was also the case in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) as well as *Doe v. Baram*, No. 20-cv-9522 (S.D.N.Y. Aug. 5, 2021)(2021 WL 3423595) and *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006). The public knowledge about the parties before litigation is different in those cases from the present case. Those Does are anonymous. This Doe is not.

In Connecticut, there are also situations where a *court* in opinions or in captions will use a pseudonym or initials for a victim. But there are no cases where a party—not an attorneys, but a party—is sanctioned or criminalized for identifying

8

individuals by name in public where the speaker knew that name before the litigation started.

If Doe's identity emerged in the discovery process, this case would be different. A court has power over the discovery process. A court can compel attorneys and parties to keep certain information confidential when it is obtained through the discovery process. This is codified in FRCP 26(c). But FRCP 26(c) does not apply to the present case. *See* Order at 12–13.

Protecting the identity of individuals from publication is also recognized as part of the criminal process, to protect against an "imminent threat to the participation of witnesses, trial participants, and staff in [a] criminal matter" or to protect "an ongoing investigation or the identity of witnesses in such a proceeding." *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746). This is obviously not a criminal case with the compelling interest of an ongoing criminal investigation nor does publishing Doe's name present an imminent threat to the *participation* of any witnesses. "A presumption of openness pervades federal dockets." *Alston v. Sharpe*, District of Connecticut, 3:13-cv-1 at *1 (Oct. 22, 2015)(2015 WL 6395937). To the extent the Court does not want the facts of the case reported or discussed publicly, the Court must identify a compelling interest. History indicates that there is no compelling interest in preventing the dissemination of truthful information already in a public court record. *See Florida Star v. B.J.F.*, *supra*, 491 U.S. 524; *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469.

9

**A-132**

Undersigned is unable to find a case with an order like Judge Garcia's.  In this case, the Plaintiff has always known Doe's identity.  Her identity has been published publicly, and her identity is a matter of public record.  Undersigned has not been able to find a case where the name of a **defendant**, **whose identity is known** and a **matter of public record** is lawfully protected by a gag order.  Judge Garcia has created a new procedural right out of whole cloth, and improperly employs this new right to infringe on the Plaintiff's freedom of speech.

## V.  NO EQUITY JURISDICTION :  VAIN OR FUTILE THING

Setting aside the First Amendment for a moment, the Court lacks equity jurisdiction to effect the injunction against the Plaintiff.  It is a well-established, ancient principle that "equity will not do or require the doing of a useless, vain, or futile thing." 27A Am.Jur.2d 629, Equity § 91 (2008)[1].  According to Judge Garcia, the interest in the injunction enjoining the Plaintiff's speech is in preserving Doe's anonymity.  **But Doe is already not anonymous.**  Either the purpose of the order is

---

[1] *See* 30A C.J.S. Equity §16 ("A court sitting in equity will not do, or require the doing of, a vain or useless thing; it will not use its authority to accomplish a useless purpose"); *see also All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 905 (11th Cir. 2000)("the law does not require the performance of vain or useless things"); *Realty Income Tr. v. Eckerd*, 564 F.2d 447, 458 (D.C. Cir. 1977) ("equity should not require the doing of a vain or useless thing" [internal quotation marks omitted]); *Bd. of Sup'rs of Louisiana State Univ. v. Fleming*, 265 F.2d 736, 738 (5th Cir. 1959)("[t]he law does not require the doing of a vain and useless thing"); *United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957)(same); *Sch. Bd. of City of Charlottesville, Va. v. Allen*, 240 F.2d 59, 64 (4th Cir. 1956)("equity does not require the doing of a vain thing"); *Mitchell v. Chambers Const. Co.*, 214 F.2d 515, 517 (10th Cir. 1954)("[e]quity will not do a useless or vain thing"); *Szynkowicz v. Szynkowicz*, 140 Conn. App. 525, 536, 59 A.3d 1194 (2013)("equity will not grant a decree that is ineffectual"); *c.f. O & G Indus., Inc. v. Plan. & Zoning Comm'n of Town of Beacon Falls*, 232 Conn. 419, 429, 655 A.2d 1121 (1995)("The law does not require the doing of a useless thing").

10

**A-133**

to a vain or useless end—or the underlying purpose is actually something else.  For example, the purpose may be to chill or prevent the Plaintiff from expressing his views about the proceedings, or Yale, or the suit, or the Court.  To such an unspoken end, the order may not be feckless.  But the order cannot preserve Doe's anonymity.

Doe was not anonymous when the suit commenced. There is no equity jurisdiction to enjoin the Plaintiff from publicly identifying Doe if the interest is in preserving Doe's anonymity because Doe is not anonymous and equity will not do a vain or useless thing. There is no way to put the toothpaste back in that tube.  The cat is out of the bag.

## VI.   JUDGE GARCIA IMPROPERLY PRESUMES HARM WITHOUT A FACTUAL PREDICATE TO FIND HARM

To find a compelling interest requires evidence be adduced.  Here, there was no competent evidence adduced by Doe or expert testimony or anyone that Doe might suffer harm from the disclosure (order at 8); that other individuals might be chilled from coming forward (order at 10), or what the Plaintiff desires, (order at 8); or that Doe's future plans will be harmed by the disclosure. See *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) ("courts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to a company's reputational or economic interests . . . .); *see also id.* at 270.

## VII.   CONCERNING FORFEITURE OR WAIVER

Undersigned notes that he is working under difficult circumstances.

**Undersigned still does not have access to substantial portions of the docket—any**

11

**A-134**

sealed portions are wholly inaccessible to undersigned. *See* ECF No. 132 (still pending). Undersigned was retained less than a week ago for free speech issues. Undersigned is operating under unusually pressured circumstances, as detailed in the motion for extension of time at ECF No. 131 which was denied. *See also* Motion to Set Aside Final Extension Order, *Pryor v. Brignole*, Connecticut Appellate Court AC44253[2] (explaining context). Failure to identify issues should not be regarded as forfeiture or waiver but a product of exceptionally difficult and unfair circumstances.

**CONCLUSION**

For the foregoing reasons, the Court should sustain the objection to the Order by Judge Garcia, CM/ECF No. 119.

Respectfully submitted,

SAIFULLAH KHAN

JULY 3, 2024

*/s/ Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

---

[2] *Available at*
https://appellateinquiry.jud.ct.gov/DocumentDisplayer.aspx?AppId=2&DocId=gMjW
%2fzUjBIoWyeKEsY7DvA%3d%3d.

12

**A-135**

## CERTIFICATION

I hereby certify that on July 3, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/_____
Mario Cerame

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KHAN | : | |
| v. | : | 3:19-cv-1966 (KAD) |
| YALE UNIVERSITY et al. | : | JULY 4, 2024 |

## <u>SUPPLEMENTAL BRIEF TO CM/ECF ENTRIES 152, 153, 72.2 OBJECTION</u>

The following was mistakenly left out of the objection at entries 152 and 153.

## VII. JUDGE GARCIA IMPROPERLY APPLIED, CONSTRUED THE FACTORS CONCERNING ANONYMITY

In addition to the order improperly infringing on the Plaintiff's freedom of

speech, at pages 6–10, Judge Garcia misapplies in part the factors concerning

whether a party may proceed under a pseudonym.

**Judge Dooley specifically noted that the matter had not yet been briefed.**

Judge Garcia did not ask for briefing on these issues before ruling.

### A. Relevant Legal Standards

A an order to which a party objects under Local Rule 72.2 is reviewed de

novo. Local Rule 72.2.

Judge Garcia properly cites the factors at issue, as set forth in *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008):

Courts within the Second Circuit must use the non-exhaustive ten-factor

balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed*

*Defendant*, 537 F.3d 185, 189 (2d Cir. 2008)(emphasis added):

    (1)    whether the litigation involves matters that are highly sensitive and [of a] personal nature;
    (2)    whether identification poses a risk of retaliatory physical or mental

harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the **defendant** is prejudiced by allowing the **plaintiff** to press his claims **anonymously**, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

## B. The Test Applies to an Anonymous Plaintiff, and the Defendant is Neither Anonymous Nor a Plaintiff

This has already been discussed in the objection. This test is for a plaintiff whose identity is not known at the start of litigation—a plaintiff who wishes to proceed under a pseudonym. The factors are not designed for the situation at hand. Judge Garcia cited no cases on point applying the factors to a defendant like in the present case.

## C. Factor One: The Subject Matter is Public

The present case concerns falsehoods in a criminal prosecution. The statements at issue were made in open court, under oath, and without anonymity. Criminal prosecutions of such a serious nature are plainly a public matter.

The present case also concern's Yale's abuses of its disciplinary system and inappropriate use proceedings under federal law to hurt the Plaintiff. Yale's

2

reputation for educating leaders in society needs no citation, and the Connecticut Supreme Court admonished Yale for shortcomings in the proceedings. These issues are also at stake in this case and that is very much a public matter. This factor tilts sharply against allowing a pseudonym.

### D. Factor Two: No Competent Evidence to Support

Doe testified about the issues at stake in this case in the criminal court, and there has been no evidence adduced that she suffered harm from those proceedings. Litigation is of course stressful for anyone, but there is no *evidence adduced* that she will be harmed any less if she proceeds under a pseudonym. There was no *evidence adduced* that indicates Doe has or will suffer retaliatory physical or mental harm. There is no testimony from any expert, and there was no evidence of any threats posed to Doe. The existence of this factor is purely speculative. Furthermore, Doe is not an "innocent non-party," being neither innocent (as pleaded) nor a non-party. This factor tilts against allowing a pseudonym.

### E. Factor Three: No Competent Evidence to Support

This factor is evaluated substantially the same as the previous factor. Doe testified about the issues at stake in this case in the criminal court, and there was no evidence adduced that she suffered harm from that proceeding. There is no evidence that she will suffer less harm if she is allowed to proceed under a pseudonym. There is no evidence adduced in support of this factor, and the Plaintiff has not been able to challenge the validity of that non-existent evidence in an adversarial hearing. This factor tilts against allowing a pseudonym.

### F. Factor Four: No Competent Evidence to Support

3

**A-139**

This factor is similar to factors two and three. Doe testified about the issues at stake in this case in the criminal court, and there was no evidence adduced that she was particularly vulnerable to possible harms of disclosure. There was no competent evidence that Doe suffered trauma from offering testimony in the criminal court or that she suffered retaliation for her testimony, or any other evidence in support of the existence of this factor. There is no evidence that she will suffer less harm if she is allowed to proceed under a pseudonym. There is no evidence adduced in support of this factor, and the Plaintiff has not been able to challenge the validity of that non-existent evidence in an adversarial hearing. This factor tilts against allowing a pseudonym.

## G. Factor Five: Both Public and Private Actions

On the one hand, Doe is certainly a private individual, and Yale is a private school. However, Yale claims that it acted pursuant to federal law in the Title IX proceedings. Inasmuch as the litigation challenges Yale's actions in those proceedings, the suit in part challenges federal action. And Yale's reputation is well established as educating leaders of society. This factor probably tilts in favor of a pseudonym, but not sharply so.

## H. Factor Six: No Prejudice

As discussed above, this factor concerns an anonymous plaintiff, and Doe is neither anonymous nor a plaintiff. Otherwise, as Judge Dooley concluded, there is no evidence of prejudice *in the proceedings*.

The goal of the litigation, however, is for the Plaintiff to salvage his reputation. If this factor is construed in a manner to allow the Court to restrict his

4

speech, it is deeply prejudicial to the Plaintiff. There are public facts and allegations, made in open court, and tying his hands to be able to respond to these allegations hurts him and hurts counsel's ability to do his job. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). Like in *Gentile*, there has been press about these proceedings. Yale's student newspaper published about it, and there have been a number of statements about the case. Like in *Gentile*, restrictions on speech concerning matters that are already in the public possession. *See id.* at 1046 ("Much of the information provided . . . had been published in one form or another . . . . The remainder, and details petitioner refused to provide, were available to any journalist willing to do a little bit of investigative work." [citation omitted]). This factor either tilts against allowing a pseudonym or is a wash.

### I. Factor Seven: The Defendant's Identity is not Confidential

Again, this factor applies to a **plaintiff** whose identity is unknown, not to a **defendant.** Regardless, however, Doe's identity is a matter of public record. It is a farce to pretend it is confidential. This factor tilts against allowing a pseudonym.

### J. Factor Eight: Public Interest is Furthered

Because this is a deeply factual case, the public's understanding of Yale's culpability is advanced by knowing Doe's identity. The public has a right to know the full facts about Yale's misdeeds and errors in judgment, and Doe's identity and the Plaintiff's identity are part of that calculus. This factor tilts against allowing a pseudonym.

### K. Factor Nine: Not an Atypically Weak Public Interest

The case revolves around a question of fact, not of law: whether Doe lied,

5

**A-141**

whether Yale unfairly punished the Plaintiff for this lie, what Yale and Yale officials knew and didn't know, whether the beliefs of Yale officials were reasonable. This is not a theoretical case of counting angels on the head of a pin and abstract points of law. The case is deeply factual. This factor tilts against allowing a pseudonym.

### L. Factor Ten: Does not Apply

Factor ten does not apply. Doe's identity is already a matter of public record. The substance of the statements at issue were repeated in open court, under oath. Her identity is already not confidential. The inapplicability is a result of applying the case to a scenario that is not appropriate—misunderstanding the legal standard. Accordingly, the factor does not apply.

### M. As a Whole

Reviewing the factors as a whole, the calculus tilts against allowing Doe to proceed under a pseudonym.

Respectfully submitted,

SAIFULLAH KHAN

JULY 4, 2024

/s/ *Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

6

**A-142**

HIS ATTORNEYS

## **CERTIFICATION**

I hereby certify that on July 4, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/_____
Mario Cerame

7

**A-143**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KHAN | : |
| | |
| v. | : 3:19-cv-1966 (KAD) |
| | |
| YALE UNIVERSITY et al. | : JULY 5, 2024 |

## OBJECTION TO EMERGENCY MOTIONS TO DISMISS

Doe and Yale have filed Emergency Motions to Dismiss and Memoranda in Support (Motions). See ECF Nos. 123 (Doe's Motion), 130 (Yale's Motion). Because the issues overlap extensively, the Plaintiff files a single Objection and Memorandum of Law in Opposition to both. The Court should deny the Motions. Dismissal would be unconstitutional, and the doctrines relied upon are either inadequately briefed, do not apply to these facts, or Defendants have not made an adequate showing. A memorandum in support of the objection is supplied.

Respectfully submitted,

SAIFULLAH KHAN

JULY 5, 2024

*/s/ Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

**A-144**

## CERTIFICATION

I hereby certify that on July 5, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/_____
Mario Cerame

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KHAN | : | |
| v. | : | 3:19-cv-1966  (KAD) |
| YALE UNIVERSITY et al. | : | JULY 5, 2024 |

**MEMORANDUM IN OPPOSITION TO EMERGENCY MOTIONS TO DISMISS**

Doe and Yale have filed Emergency Motions to Dismiss and Memoranda in Support (Motions). See ECF Nos. 123 (Doe's Motion), 130 (Yale's Motion).  Because the issues overlap extensively, the Plaintiff files a single Objection and Memorandum of Law in Opposition to both.  The Court should deny the Motions.

**I. OPERATIVE FACTS**

This memorandum assumes general knowledge of the procedural facts and claims in this case.  Certain facts are highlighted because they are relevant to the Motions.

**A. Sealed Documents**

Doe cites in her memorandum a number of documents that remain sealed as to undersigned.  *See* ECF No. 132 (pending).  Undersigned cannot respond to these nor evaluate the facts in the or law in the vast majority of sealed documents.  Yale cites only one such document, a copy of which undersigned does have.

**B. Criminal Prosecution and Public Record**

In 2015, the State of Connecticut brought a criminal prosecution against the Plaintiff alleging, among other things, sexual assault in the first degree, ▮▮▮▮▮▮▮▮▮.  Doe claimed to be the victim.  In 2018, the case was tried to a

jury. Doe testified against the Plaintiff over the course of several days, including on ███████████████, among others. **Doe testified in open court, using her full name.** *See, e.g.*, Exhibit 1[1] at 35[2].

After only three hours of deliberations, the jury returned a verdict of acquittal.

Proceedings were recorded by the courtroom monitor. On April 10, 2018, ██████████████, Court Recording Monitor to the Superior Court, Judicial District of New Haven, at New Haven, generated a transcript of the proceedings of ██████ ██████. *See* Exhibit 1 at 194. That transcript is a public record and Doe's name is identified ████████████████████.

## C. The Order at Issue

On June 19, 2024, Judge Garcia issued an order:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court,

---

[1]Exhibit 1 is not yet filed. This is because undersigned does not believe that transcript should be sealed: Among other things, the document is a public record, published by the State of Connecticut Judicial Branch. The information in it is a matter of public concern and publication is in the public interest. *See Florida Star v. B.J.F.*, 491 U.S. 524, 535 (1989) ("By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served.").

Undersigned nonetheless believes in good faith that the Defendants should be able to oppose such an unsealed filing, however misplaced such opposition may be. The Plaintiff will file a motion in limine to admit the document into evidence before the evidentiary hearing.

[2] Note that the cover page is not a numbered page. Accordingly, in a pdf viewer, this would appear as page 36.

including but not limited to dismissal. . . .

The Court handwaived free speech concerns on pages 13–14.  The Court concluded, among other things, that the information at issue, Doe's identity, was not public.  The Court also construed Khan's unsworn "offer[] to **comply** with an order," along with his counsel's statement "we're **not** going to . . . completely **oblige** to any gag orders" as a **concession** that there is no legal justification for **Khan's** speech identifying Doe. (Emphasis added.)  There was no other free speech analysis in the order.

The Court did not specifically articulate the basis for its authority to issue the order limiting the Plaintiff's communications—citing no specific rule, statute, or common-law principle.  The Court did concluded on page 15 that:

> I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media.

The court does not expressly find a "compelling interest."

The Court never finds that Doe's pseudonymity is a compelling interest.  The court does conclude on page 10 that Doe's *anonymity* is a "strong" interest.  There is no analogy or analysis or comparison to other compelling interests in other cases.  The court on page 14 indicates an intent to prevent "embarrass[ment]" to Doe.  There is no citation to a case suggesting that preventing embarrassment is a compelling interest nor that pseudonymity in the present case is a *compelling* interest.

The Court indicates an intention to stop the case from being "litigated on

3

**A-148**

social media." The court does not explain in detail what "litigated on social media" means as an interest. Although the Court does implicitly conclude on page 15 that the injunctive relief *is* necessary to advance whatever that interest is, it does not explain its reasoning as to why other potential remedies are inadequate; the court just states a conclusion. There are no findings as to pretrial publicity. There is no citation to any case law as to why preventing a civil case from being "litigated on social media" is a compelling interest.

Finally, the Court does not define the term "gag order" in any special or specific way.

### D. June 19, 2024 Publication

On June 19, 2024, after the Court's order issued, the Plaintiff published the following by way of ██████████ :

> as of today, I have been officially gagged by the federal court system of the United States for my speech on this platform. Judge's order below:

He published the court's order at CM/ECF No. 119, both in its entirety and an excerpt highlighting the order as quoted above. He also published:

> My actions are limited. I am going to 100% obey this ruling. I can't directly or indirectly tell anyone what to do.
>
> In no way shape or form should my tweets here be interpreted in any way to construe anything beyond the limited scope of "this ruling applies to me."

He also published:

> I'm going to appeal.

He also published, in response to a comment "Sorry to hear about this,":

> thanks mister printing press

4

Another individual published, "Sorry to hear about this. It's a damn shame someone can make false accusations and remain anonymous. A huge flaw in the system. Hoping one day her name can be revealed so that her and others like her are shamed. It's only right." To which the Plaintiff responded:

> c'est la vie[3]
>
> i'm doing my part, hopefully others contribute in their own way.

Another individual published, "When is your case expected to go to trial?" to which the Plaintiff responded:

> Discovery should take ~12 months. . . . and then yale's (futile) and jane's (ludicrous) MSJ will be another year. And then trial.
>
> 2026 summer. But it's good coz president trump.

Another individual, under the handle ███████, published, "Others can still say her name tho Sir" to which the Plaintiff responded:

> i can not instruct anyone on their personal actions.
>
> I must fully adhere, abide, and be obedient to the courts and the rule of law.

The Plaintiff also published:

> ██████████ t al; this gag order only applies to me.

There is a host of other publications by other individuals in response. Doe and Yale direct attention in particular to a post by a user self-identifying as ████████████

---

[3] The Merriam-Webster Online Dictionary defines this phrase as follows:

> French phrase . . . that's life: that's how things happen

*Available at* https://www.merriam-webster.com/dictionary/c%27est%20la%20vie (Accessed July 5, 2024 at 10:32AM).

5

**A-150**

the previously identified ███████ who published an image of Doe and her name. The post has been marked as "probable spam" and partially obscured, but remains public.

### E. Doe's Claims

Doe moves to dismiss the complaint.  ECF No. 123.  Doe asks for no other relief and says no other relief is adequate. *See* Doe's Memorandum at 3. At page 13 of her memorandum, Doe relies on a court's inherent authority to sanction.  At pages 13–14, Doe relies on Federal Rule of Civil Procedure 41(b).

Doe sometimes *cites* cases concerning contempt, but never *applies* the rules concerning civil or criminal contempt to the present facts.  For instance, Doe never argues the clear and convincing or beyond a reasonable doubt standards that apply to contempt proceedings.

Doe characterizes certain statements by the Plaintiff as "lies."  Doe claims certain statements are "instigating" others to post about Doe.  There are no statements by the Plaintiff, however, expressly eliciting others to violate the Court order.  There is no suggestion that the Plaintiff lied about Doe in the statements at issue.  Further facts are set forth as necessary as to particular claims.

### F. Yale's Claims

Yale also moves to dismiss the complaint.  ECF No. 130.  Yale similarly asks for no other relief besides dismissal and says no other relief is adequate. *See* Yale's Memorandum at 10. Yale incorporates substantial portions of Doe's memorandum. *Id.* at 6.

Like Doe, Yale relies on the "inherent authority" doctrine and Federal Rule of

6

**A-151**

Civil Procedure 41(b). Also like Doe, Yale relies on case law concerning contempt, but never applies the legal standards involving civil or criminal contempt to these facts. *See, e.g.*, Yale Memorandum at 1–2, 3.n1,

## G. Doe is not Anonymous

Anonymity is when a speaker's identity is not known. Doe's identity was not unknown at the start of this lawsuit. Doe is not anonymous, and has never been anonymous. Doe did not send an anonymous tip. Doe testified under oath at the criminal trial, and used her full name in open court. Doe's name is in transcripts that anyone can obtain from the Connecticut judicial branch. As Doe and Yale complain, Doe's name has been published online by a journalist who is *not* the Plaintiff. However protected by FERPA, Doe did not speak *anonymously* in the school proceedings: FERPA kept her name *confidential*, but the Plaintiff knew her name and her name was known during that process. Plaintiff obtained knowledge of Doe's identity lawfully. Doe has never been anonymous and Doe is not anonymous now.

## II. RELEVANT LEGAL STANDARDS

### A. Prior Restraint

The prohibition on prior restraints predates the republic. *See* William Blackstone, Commentaries 4:151[4] (liberty of the press consists in laying no previous restraints upon publications)(1769).

> A judicial order forbidding certain communications when issued in
> advance of the time that such communications are to occur is generally
> regarded as a prior restraint . . . and is the most serious and the least

---

[4] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

tolerable infringement on First Amendment rights . . . .  Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity . . . and carries a heavy burden of showing justification . . . .

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26, 2009)(citations and internal quotation marks omitted).  The standard of review applied to prior restraints is the same as for content-based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a strict test. . . .  Under the strict-scrutiny test, a content-based restriction may be upheld if the restriction serves a compelling governmental interest, is *necessary* to serve the asserted [compelling] interest . . . is precisely tailored to serve that interest, and is the least restrictive means readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations omitted; internal quotation marks omitted; emphasis retained).

### B. Post Publication Content-Based Censure

Censoring, retaliating against, or otherwise chilling speech after publication on the basis of content or viewpoint is similarly impermissible.  *See Husain v. Springer*, 494 F.3d 108, 124 (2d Cir. 2007).  A court applies the same strict scrutiny test as for a prior restraint.  *See id.* at 128n.14 (requiring strict scrutiny).

### C. Protecting Identities of Sex Assault Victims is an Important, Not Compelling Interest

As Yale correctly points out on page 7 of its memorandum, a number of courts have recognized the "important" public interest in protecting the identities of sexual assault victims, to ensure that other victims would not be deterred from reporting similar crimes.  "Such cases, however, have generally concerned allegations of a

8

**A-153**

more graphic or intrusive nature, such as invasive strip searches . . . or the sexual assault of minors . . . ." *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-cv-2678 at 2 (S.D.N.Y. July 10, 2019)(2019 WL 3034793)(citations omitted).  Yale argues on page 6 of its memorandum as well that there is a "substantial" interest in its confidentiality policy.  For the sake of this motion argument, Plaintiff concedes a substantial or important government interest.

Counsel is unable to identify any cases that hold that such a privacy interest is a "compelling" state interest, however.  That such a privacy interest is *something less than* a compelling interest is consistent with *Florida Star v. B.J.F.*, 491 U.S. 524 (1989).  In *Florida Star*, the Supreme Court held that punishing the publication of the name of a victim of sex assault, when that name was available in court records, violated the First Amendment.  "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Id.* at 535.  "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Id.*

### D. Inherent Ability to Sanction

The Plaintiff does not dispute Doe's statement of the law concerning a Court's inherent authority on page 13 of her memorandum.  Undersigned is unable to locate a case where the inherent authority doctrine was lawfully used to enforce a gag order or other proscription on out-of-court speech.  In the context of violation of such an injunctive order, courts usually employ contempt proceedings  *See, e.g., United States v. Trump*, 88 F.4th 990, 1001 (D.C. Cir. 2023)(noting use of contempt

9

proceedings), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746).

### E.  Federal Rule of Civil Procedure 41(b)

"[A] Rule 41(b) dismissal remains a harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001)(internal quotation marks omitted).

> Under Rule 41, five factors are used to determine whether dismissal is warranted: (1) the duration of plaintiff's failure to comply with court orders; (2) whether plaintiff was on notice that failure to comply would result in dismissal; (3) whether defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 F. App'x 107, 110 (2d Cir. 2001).

Rule 41(b) is applied to issues of procedure, like failure to prosecute a claim; *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982), *see also* Local Rule 41(a); an alternative to a Rule 37 discovery sanction; *see Peters-Turnbull v. Bd. of Educ. of City of New York*, *supra*, 7 F. App'x at 110; failing to submit a consolidated pre-trial order; *Jackson v. City of New York*, 22 F.3d 71, 73 (2d Cir. 1994); failure to comply with the FRCP; *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir. 1980); matters of form in a pleading; *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 188 (2d Cir. 1943); failure to adhere to other pleading requirements; *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995);  misjoinder of 164 defendants; *Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974); failing to serve a summons; *Kammona v.*

10

*Midsummer Inv., Ltd.*, 687 F. App'x 112, 114 (2d Cir. 2017); failing to explain dilatory behavior; *Harding v. Goord*, 135 F. App'x 488 (2d Cir. 2005); skipping a deposition and then skipping out of a rescheduled one after only five minutes; *Ampudia v. Lloyd*, 531 F. App'x 32, 34 (2d Cir. 2013); failure to attend pretrial conferences; *Culton v. New York State Dep't of Corr. Servs.*, 299 F. App'x 96, 97 (2d Cir. 2008); misuse of AI in crafting briefs; *Park v. Kim*, 91 F.4th 610, 614–15 (2d Cir. 2024); or refusing to proceed with a scheduled trial; *Joseph v. Norton Co.*, 273 F.2d 65, 66 (2d Cir. 1959). **Undersigned cannot identify any case where Rule 41(b) was applied to failure to obey an injunctive order concerning out-of-court statements or pretrial publicity.**

Undersigned is unable to locate a case where Rule 41(b) was lawfully used to enforce or vindicate a court's power concerning a gag order or other proscription on speech. In the context of violation of such an injunctive order, courts usually employ contempt proceedings. *See, e.g.*, *United States v. Trump*, 88 F.4th 990, 1001 (D.C. Cir. 2023)(noting use of contempt proceedings), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746).

Further legal standards are set forth as to specific claims.

## III. THE PLAINTIFF DID NOT VIOLATE THE ORDER

To begin with, the Plaintiff did not violate the order:

> Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable . . . .

11

## A. The Plaintiff Did Not Directly Disclose or Reveal Doe's Identity

The movants do not identify anywhere that the Plaintiff states Doe's name.

## B. The Plaintiff Did Not Indirectly Disclose or Reveal Doe's Identity

The movants do not identify where the Plaintiff asked someone else to reveal Doe's name.

## C. The Movants Are Trying to Sanction Any Speech About the Case

Afraid of fair public scrutiny and the proper operation of the freedom of speech, the movants are asking the Court to act as a freewheeling censor. Oh, it's not what Plaintiff *says*, they claim, it's what they imagine he *implies*. With such Inquisitorial eyes of the movants, presuming malfeasance notwithstanding their burden on the motion, query, what *could* have been fair comment by the Plaintiff about the nature and extent of the Court's ruling?

The problem with the movants claim is that every statement they cite is also consistent with properly obeying the order. Everything the Plaintiff published was *objectively compliant*. The movants imagine ambiguities to try to force onto the Plaintiff words that he did not publish after the order.

Yale complains on page 2 that the Plaintiff previously disclosed Doe's name. That is true. He disclosed it before the order, not after the order. Yale also complains that others disclosed her name. That is also true. Other people identified her, not the Plaintiff. Yale does not identify where the Plaintiff indirectly requested another to reveal Doe's identity.

At page 20, Doe also points to speech and conduct before the Court entered the order at issue. These facts are not relevant to whether the Plaintiff violated

12

this order.   At page 20 and 22, Doe chooses out of context statements concerning Plaintiff's *intent*.  Intent has nothing to do with whether the Plaintiff made a statement that violated the order.  All of these facts are irrelevant to the legal issues before the Court.  At page 21, Doe complains that the Plaintiff should have been punished by the Court earlier.  The claim is not relevant to whether the speech at issue here violated the order of the Court.

Doe applies a gloss to the Plaintiff's statements that does not align with the objective facts.  For example, Doe claims the statement, "I can't directly or indirectly tell anyone what to do" is indirectly encouraging others to reveal Doe's name.  Objectively, that is not what the language at issue means.  Doe applies a gloss that favors Doe.  The statements are *objectively compliant*, however.  Doe similarly attacks the statement, "I'm doing my part. [H]opefully others contribute in their own way."  The statement is a general wish for people to do good things, to add to society, to stand up for what they believe is right.  It is not *objectively* an appeal for anyone to publish Doe's name.

On page 23 of her memorandum, Doe claims "[t]here is no other reasonable interpretation of Plaintiff's" speech than inviting others to reveal Doe's name.  This is objectively false.  Plaintiff's speech can reasonably be construed to mean what is actually written.  That he must obey the order.  That he can't directly or indirectly tell anyone what to do.  That the order only applies to him.  That he's going to appeal.  These are reasonable constructions of the Plaintiff's words, and they do not violate the Order.

The Plaintiff is not a fool.  If the Plaintiff wanted others to post Doe's name,

13

why employ such a tortured and public method?  Why not just ask someone by email or telephone or direct message or any other non-public means?  The Defendants position is not logical.

### D. The Court Order is Indeed a "Gag Order"

Both movants try to cast shade at the Plaintiff, claiming the speech restriction at issue was not a "gag order."  First, **the order is indeed a gag order** as defined by the Merriam Webster Dictionary:

> **gag order**: a judicial ruling barring public disclosure or discussion (as by the press) of information related to a case

*See also In re New York Times Co.*, 878 F.2d 67, 68 (2d Cir. 1989)(restriction on pretrial publicity was a "gag" order). However colloquial, this description accurately describes the Court's order: a ruling that barred disclosure or discussion of a piece of information related to this case.

Second, how the Plaintiff describes the Court's order has nothing to do with whether the Plaintiff violated the order.  That is not the subject of the order.  Like so much of the movants arguments, this is an inappropriate emotional appeal to the Court.  The movants' claim is unhinged from relevance, reality, and reason.

## IV. SHOULD BE CRIMINAL CONTEMPT PROCEEDINGS

Both Yale and Doe repeatedly incorporate case law concerning contempt in their memoranda.  This is appropriate as these proceedings should not be pursuant to inherent authority or FRCP 41(b) but rather criminal contempt proceedings for alleged violation of a court order.  *See, e.g., United States v. Cutler*, 58 F.3d 825, 831 (2d Cir. 1995)(criminal contempt proceedings for violation of gag order).

14

The Defendants do not seek a remedy to coerce compliance with a court order—they do not seek, for example, a fine for every alleged violation of the gag order. **The Defendants strictly seek to punish** the Plaintiff for violation of a court order. Such punitive relief requires a criminal contempt proceeding:

> The primary difference between orders of civil and criminal contempt is their purpose. Criminal contempt is used to punish the contemnor, deter future offenses against the public, and/or vindicate the court's authority; while civil contempt seeks to coerce the contemnor into compliance with the court's order and/or to compensate the complaining party for losses incurred as a result of the contemnor's conduct.

*SD Prot., Inc. v. Del Rio*, 587 F. Supp. 2d 429, 433 (E.D.N.Y. 2008). "Civil contempt differs from criminal contempt in that it seeks only to coerc[e] the defendant to do what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011)(internal quotation marks omitted).

The Defendants seek post-speech, punitive relief that normally requires criminal contempt proceedings. Indeed, both Defendants repeatedly rely on the law of contempt in their briefs. But they have not briefed the issues as concerns the special procedural safeguards that apply to criminal contempt proceedings. "In modern times, procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987).

This requires among other things, that the Court appoint "a disinterested prosecutor." *Id.* at 808. "[D]efendants in criminal contempt proceedings must be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves . . . must be advised of charges, have a

15

reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses . . . must be given a public trial before an unbiased judge . . . and must be afforded a jury trial for serious contempts . . . ." *Id.* at 798–99; *see also* Fed. R. Crim. Proc. 42.  The present briefing is inadequate for the criminal contempt proceedings called for.

## V. THE ORDER IS FACIALLY UNCONSTITUTIONAL

### A. The Order is an Impermissible Prior Restraint

The Court has issued an order forbidding publication of information that was disclosed in a public judicial proceeding in Connecticut Superior Court.  "A judicial order forbidding the publication of information disclosed in a public judicial proceeding collides with two basic First Amendment protections: the right against prior restraints on speech and the right to report freely on events that transpire in an open courtroom." *United States v. Quattrone*, 402 F.3d 304, 308 (2d Cir. 2005).  Such orders are presumptively unconstitutional, and the Defendants have not made a showing as to why the order in this case overcomes the "heavy presumption" that the order is unconstitutional.

### B. Even if the Order is Not a Prior Restraint, the Order Would Punish the Plaintiff for Content of His Protected Speech

Even if the Order is not a prior restraint, the Order plainly punishes the Plaintiff for his speech on the basis of its content: the name of Doe.  No speech exception is identified. Accordingly, strict scrutiny applies.  The Defendants do not identify a "compelling" interest, let alone explain why a less speech restrictive alternative would be inadequate to advance that compelling interest.  The Plaintiff

16

A-161

agrees that the Defendants have identified a "substantial" or "important" interest. But this is not a "compelling" interest, and accordingly the Order does not pass strict scrutiny.

## C. Even if the Order is Not a Prior Restraint, It Is Facially Vague as Construed by Defendants

Assuming for the sake of the argument that the Defendants are correct in their construction of the Order—that the Order prohibits the statements claimed here—the Order is then impermissibly vague on its face. "[A]ny injury to First Amendment rights is a matter of profound concern to the courts." *Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006).

> The general rule disfavoring facial vagueness challenges does not apply in the First Amendment context . . . .
>
> Facial vagueness challenges may go forward only if the challenged regulation reaches a substantial amount of constitutionally protected conduct. . . . Therefore, to determine whether [a party] may bring his facial vagueness challenge, we must first determine whether the [regulation] will have a substantial chilling effect on protected conduct. . . . A [party] whose conduct is at the "core" of the activities clearly covered by the statute's terms may only raise a vagueness defense if the statute is one that is likely to chill the exercise of constitutionally protected conduct.

*Id.* at 496–97 (citations omitted; internal quotation marks omitted.).

As argued by the Defendants, the order will have a substantial chilling effect on protected conduct. None of the speech that is claimed to be violative does not fall within a speech exception; all of it is protected speech. The Defendants furthermore claim that the "spirit" of the order is what matters, not the actual text, and therefore, according to their construction, the Order touches on a vast amount of speech beyond what the Order actually indicates. Accordingly, pursuant to the

17

A-162

Defendant's construction, the Order chills a substantial amount of protected speech.

## D. No, This is Not Trademark Infringement

In the desperation to find any speech-adjacent case on point, Doe repeatedly cites *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981 (2d Cir. 1942). First, the case predates most of modern free speech jurisprudence by several decades. Second, *Stetson* concerns commercial speech, which uses intermediate scrutiny and the *Central Hudson* test, not strict scrutiny as with the present case. See *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980). Third, this is not a trademark infringement case. Reliance on the case is misguided.

## E. Cannot Be Squared with *Cox* and *Florida Star*

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) has been settled law for almost a half-century. The Supreme Court concluded in *Cox* that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive the incident. *Id.* at 471. The incident occurred in Georgia, and at the time, publishing or broadcasting the name or identity of a rape victim constituted a misdemeanor in Georgia. *Id.* at 471–72.

The victim's name appeared in indictments. *Id.* at 472. The indictments were public records available for inspection. *Id.* at 472–73. A reporter learned the victim's identity through these public records and broadcast a report that named the victim. *Id.* at 473–74. The report was repeated the following day. *Id.* at 474.

18

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name. *Id.* at 474–75. Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive." *Id.* at 475. The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern. *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489. Nonetheless, the Court concluded that a state **may not "impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record. *See* Exhibit 1 at 35. Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started. Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

The Court cannot impose sanctions on the Plaintiff for disclosing the true fact of Doe's identity and testimony in open court because this is already available to the public and in the public record:

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and

19

**A-164**

hear what transpired can report it with impunity. There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it . . . .

*Cox* at 492–93. The Plaintiff participated in proceedings, and he can testify about them. This includes identifying Doe, by name, as she did in open court. Under *Cox*, the Court cannot sanction the Plaintiff for his speech at issue here, even if it is violative of the Court order.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded on *Cox*. In *Florida Star*, Florida had a law that made it illegal to print, publish, or broadcast the name of a victim of a sexual offense. *Id.* at 526. The Florida Star published the name of *B.J.F.* in a police blotter by mistake. *Id.* at 527. This was in violation of the Florida Star's own policy of not publishing the name of sex assault victims. *Id.* at 528. B.J.F. filed suit sounding in negligence. *Id.* The trial court directed a verdict as to negligence *per se* in favor of B.J.F. *Id.* at 529.

The Supreme Court held that punishing the publication was unconstitutional. "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Id.* at 535. The "source" of the release in this case is the Connecticut Superior Court, not the Plaintiff. *See* Exhibit 1 at 35. "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

Note that this all is separate from how *this Court* elects to caption the case. *See Florida Star* at n1. This Court can caption the case however it wishes to. But

20

A-165

the Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* Exhibit 1 at 35. Under *Florida Star*, the Court cannot sanction the Plaintiff for his speech at issue here, even if it is violative of the Court order.

In this case, it is undisputed that Doe, with her true name, has accused the Plaintiff of sexual assault. That is in the public record. Accordingly, it is beyond the power of this Court to punish the Plaintiff for publishing that fact, with her true name.

## VI. DISMISSAL IS UNCONSTITUTIONAL AS-APPLIED

### A. Illegal Content-Based Punishment

The issue in this section is analyzed in substantially the same way as in section V.B of this memorandum. The Defendants seek to punish the Plaintiff for the content of his speech. Even if the order is not facially unconstitutional, it is unconstitutional as-applied because this application punishes the Plaintiff for the

content of his speech.

Furthermore, "[t]he First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. . . . That is because speech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)(citation omitted; internal quotation marks omitted). The order seeks to punish the Plaintiff for expressing criticism of the Court. *See* sections III.C and III.D of this memorandum. This is speech about public affairs, "the essence of self-government." *Id.*

### B. If the Defendants are Correct, the Order is Vague As-Applied

In the alternative, if the Defendants are correct in their application of the Order to the speech at issue, the Order is impermissibly vague as-applied. The order fails to provide an individual of ordinary sensibilities adequate notice that the Plaintiff's objectively compliant speech was actually violative. The argument in this case is substantially similar to part V.C of this memorandum.

## VII. DISMISSAL NOT WARRANTED

In the alternative, if the Order and its applications are constitutionally sound, then dismissal is not warranted pursuant to the Court's inherent power to sanction or Rule 41(b).

### A. Dismissal is not Warranted Under Inherent Power to Sanction

This claim fails at prong one. "[T]o impose sanctions under this Court's inherent authority, there must be clear evidence that . . . the offending party's claims were entirely without color . . . ." *In re Zucaro,* 617 B.R. 18, 31 (Bankr.

E.D.N.Y. 2020).  In the present case, the Plaintiff's speech is objectively compliant.  This is more than a "colorable" claim that he complied with the Order.  Because his out-of-court statements are objectively compliant, it is not "clear" that his claim is bereft of merit.

**B.  Dismissal is not Warranted Under 41(b)**

There no cases identified by the Defendants where Rule 41(b) is applied to out-of-court protected speech. Undersigned is unable to find any.  The Rule does not apply to these facts.

Even if the rule could apply to these facts, none of the five factors support dismissal.  First, the Plaintiff has, at most, failed to comply since June 19, 2024.  As of the day of the hearing, that is 23 days.  There are no cases that indicate dismissal where the duration is that short.  Second, although the plaintiff was on notice of the risk of dismissal, he was not on notice that objectively compliant speech could result in dismissal.  Third, there is no evidence of prejudice or delay. Doe's identity was a matter of public record before the Plaintiff's speech.  *See* Exhibit 1.  Accordingly, there is no change in position and no prejudice.  Fourth, there is a strong interest in being heard.  The usual considerations of 41(b), which is *not* to out-of-court speech, but matters of procedure, do not apply and thus this factor does not weigh in favor of dismissal.  Fifth, there is no consideration of a sanction less than dismissal.  For example, there is no evidence in the record that a coercive, civil contempt order would not suffice. The Defendants do not ask for this remedy, and do not brief this issue, but there is no evidence such would not be adequate to correct any violations.  None of the factors weigh in favor of dismissal pursuant to 41(b).

23

A-168

## VIII. NON-WAIVER OF MOTION FOR EXTENSION OF TIME

The motion and memorandum are filed notwithstanding a pending motion for extension of time. *See* ECF No. 156. This filing is not a waiver or forfeiture of that claim as counsel would use that requested additional time to file a better brief than this. This brief is written under exceptionally difficult circumstances and undersigned is not pleased with it.

## IX. NON-WAIVER TO CHALLENGE SEALED STATUS

The motion and memorandum are filed under seal because undersigned is not yet sure what the present requirements are for filings. Plaintiff does not believe these filings *should* be sealed, and Plaintiff does not waive or forfeit any claim that the filings should not be sealed or should be unsealed. Plaintiff errs on the side of caution given the severity of the circumstances. Plaintiff believes Doe and Yale are entitled to make an argument contrary to his position, and filing without being under seal seems to invalidate Doe and Yale's opportunity to ask for these documents to be sealed. Filing under seal strictly in the interests of comity, given that undersigned is very new to the litigation and cannot review many filings. It is not because it is believed to be necessary or proper.

## X. CONCLUSION

For the foregoing reasons, the motions to dismiss should be denied.

Respectfully submitted,

SAIFULLAH KHAN

JULY 5, 2024          /s/ *Mario Cerame ct30125*

24

A-169

Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

25

## CERTIFICATION

I hereby certify that on July 5, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ _____
Mario Cerame

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KHAN                                               :

v.                                                 :    3:19-cv-1966 (KAD)

YALE UNIVERSITY et al.                             :    NOVEMBER 18, 2024

## EMERGENCY SUPPLEMENT TO 72.2 OBJECTION

On November 15, 2024, the Second Circuit Court of Appeals denied Plaintiff's

petition for a writ of mandamus challenging the magistrate judges orders.  The

orders challenged were both at ECF Nos. 119 and 216.  The Second Circuit also

ordered, however:

> We expect that the district court will consider any timely challenges to the
> magistrate judge's orders in an appropriately expeditious manner,
> mindful of the November 25, 2024 deadline for Plaintiff's submission to
> the Department of Homeland Security.

See In re: Khan, 24-2794 (November 15, 2024). Pursuant to that order, Plaintiff files

such a challenge.

## I. FORM OF CHALLENGE AND RELIEF REQUESTED

The Magistrate Judge's October 21, 2024 order is predicated on its June 19,

2024 order. At oral argument on October 21, 2024, the Magistrate Judge indicated

it would not reach constitutional arguments.  The reason the Magistrate Judge gave

was that the 72.2 objection concerning these arguments was pending.  See ECF Nos.

152–54 ("Pending 72.2 Objection").  In other words, Plaintiff had already filed an

applicable 72.2 objection.

These constitutional arguments, however, are Plaintiffs strongest arguments

1

**A-172**

and **must** be addressed.  These are deprivations of fundamental rights.

To close the loop, Plaintiff renews and supplements the Pending 72.2 Objection.  Plaintiff agrees that he has already filed the applicable 72.2 objection.  In renewing the objection, Plaintiff requests that the Pending 72.2 Objection be re-docketed as an emergency.  In addition, sustaining the objection and vacating the June 19, 2024 order would render any arguments concerning the October 21, 2024 order moot.  This is the most complete remedy.

If the Court needs additional time to rule on the Pending 72.2 Objection, however, the Plaintiff requests, in the interim, that the Court grant a limited stay of the June 19, 2024 order so that the Plaintiff may respond to the request from DHS in time for the November 25, 2024 deadline by filing the November 7, 2024 Transcript or wholly unredacted transcript.  *See* ECF No. 222.  In addition, the October 21, 2024 order should be vacated in its entirety as it makes compliance with the order from DHS impossible and operates as an independent and illegal expansion of the prior restraint in this case.

To these ends, Plaintiff supplements the Pending 72.2 Objection with argument directed squarely at the October 21, 2024 order that is predicated on the June 19, 2024 order pursuant to this interim requested relief.

## II. BACKGROUND

### A. Pre-Suit Factual Background, Up to Expulsion

In *Khan v. Yale Univ.*, 27 F.4th 805, 810–12 (2d Cir. 2022), *certified question answered*, 347 Conn. 1, 295 A.3d 855 (2023), the Court found these facts:

Saifullah Khan, a citizen of Afghanistan, was born in a refugee camp in Pakistan, to which country his family had fled after having their lives threatened by the Taliban. When Khan was sixteen, his family settled in the United Arab Emirates, and it was from there that Khan applied for and received acceptance to Yale's undergraduate class of 2016. . . .

On Halloween night in 2015, Khan and fellow Yale student Jane Doe separately attended an off-campus party . . . . At some point, Khan and Doe left the party together to attend an on-campus event. When Doe began to feel unwell, she and Khan left the event and returned to . . . the Yale dormitory where both resided. Khan asserts that after he dropped Doe off at her room and started to return to his own, Doe called him back and asked him to check on a friend. After Khan did so, he returned to Doe's room where the two had consensual sex before falling asleep.

The next morning, Doe told friends that Khan had raped her. That same day, however, when Doe sought contraceptive assistance at the university's health center, she reported having engaged in consensual, unprotected sex. A few days later, when Doe publicly repeated her rape claim, she was directed to the Yale Women's Center. There, a counselor . . . assisted Doe in preparing a formal university complaint against Khan. Upon receipt of that complaint, a Yale deputy dean . . . suspended Khan, ordering him to vacate his dormitory room and to leave campus. Soon thereafter, Yale began a disciplinary proceeding against Khan under the university's Sexual Misconduct Policy.

At and about the same time, the Yale Police Department opened an investigation into Doe's sexual assault claim. This ultimately resulted in the State of Connecticut criminally charging Khan with [a number of] sexual assault crimes]. . . .

The state's criminal case against Khan would not be resolved for approximately two and a half years. On March 7, 2018, after a two-week trial, a Connecticut jury acquitted Khan of all charges after less than a full day's deliberations. Khan attributes this outcome to his attorney's ability to cross-examine Doe, highlighting various memory lapses and inconsistencies in her accounts of the alleged sexual assault, and eliciting flirtatious communications that she had sent Khan in the days before Halloween 2015.

Khan's trial and its outcome were unfavorably reported on in the Yale Daily News. Thereafter, over 77,000 persons signed a petition urging Yale not to readmit Khan, notwithstanding his acquittal. Yale nevertheless permitted Khan to resume full-time student status at the start of the Fall

2018 term. . . .

Shortly after returning to school, though, Yale suspended Plaintiff due to public pressure, claiming it was necessary to "protect" Plaintiff. See *id.* at 811–12.

Sexual misconduct disciplinary proceedings against Plaintiff resumed in November, 2018. *Id.* at 812. These proceedings lacked fundamental due process considerations and procedural safeguards, such as a requirement to testify under oath, notice to the accused, the opportunity to call witnesses or otherwise have them subpoenaed, right to counsel and meaningful assistance of counsel, right to appeal, and right to an adequate record for review. *See Khan v. Yale Univ.*, 85 F.4th 86, 92 (2d Cir. 2023); *see also Khan v. Yale Univ., supra,* 27 F.4th at 815–16. The disciplinary panel found that Plaintiff violated Yale's Sexual Misconduct Policy in his 2015 encounter with Jane Doe and Yale expelled him.

## B. Action Commenced and Appeal

On December 13, 2019, Plaintiff commenced the present action against Yale, various of its employees, and Doe. *Khan v. Yale Univ., supra,* 27 F.4th at 816. Initially, this court granted a FRCP 12(b)(6) motion to dismiss, extending absolute immunity to Doe for her statements during a quasi-judicial proceeding and concluding that other claims were time barred. *See Khan v. Yale Univ.*, 85 F.4th at 88. The issue was appealed and certified questions were posed to the Connecticut Supreme Court. *See Khan v. Yale Univ., supra,* 27 F.4th at 833–34. On the basis of the Connecticut Supreme Court's responses to the certified questions, this Court concluded that while some claims were time barred, Doe did not have absolute

4

**A-175**

immunity. *See Khan v. Yale Univ.*, 85 F.4th 86, 89 (2d Cir. 2023). The case was remanded.

### C. Pseudonymity Reassessed Based on Appellate Judgments

At the outset of the litigation, Plaintiff hoped to return to Yale to complete his degree. See ECF No. 2 at 5. Therefore, at that time, he sought to respect the confidentiality rules of Yale as much as possible. *Id.* at 5–6. In support of his request that he proceed under a pseudonym for Doe, Plaintiff noted that "During [Plaintiff's criminal] trial, the identity of his accuser, Jane Doe, was kept from the public record by [Connecticut General Statutes] § 54-86e." ECF 2 at 2.

In the wake of the aforementioned appeal concerning absolute immunity, Plaintiff personally took note of footnote 39 of the Connecticut Supreme Court opinion. *C.f.* ECF No. 94 at 21 (Plaintiff identifying importance of footnote). "Anonymous reporting may trigger further investigations and, if a subsequent hearing ensues, **require** that the **victim's identity be disclosed.** *See* General Statutes §10a-55m(d)." *Khan v. Yale Univ., supra*, 347 Conn. at 53.n39 (emphasis added). He furthermore took note of how the Connecticut Supreme Court afforded substantial importance to the right to "confront, and cross-examine witnesses . . . ." *Id.* at 26.

Plaintiff also personally took note of footnote 1 in the Second Circuit Court of Appeals opinion in 27 F.4th 805 at 809. *C.f.* ECF No. 94 at 21 (Plaintiff identifying importance of footnote). There, this Court questioned the applicability of pseudonymity to the case. The Court noted that Rule 10 does not normally allow

parties to proceed under a pseudonym. *Khan v. Yale Univ.*, 27 F.4th 805 at 809. This Court noted that because the issue was not squarely before it, it would not address the issue. *Id.*

The appeal and certification halted proceedings for substantial time. Given the length of time that had elapsed since Yale stopped Plaintiff's studies in 2015, by the end of 2023, a negotiated return to Yale seemed unlikely and had become far less attractive than at the outset of the litigation.

### D. Doe Publicly Identified and Flurry of Motion Practice

In late December, 2023, Plaintiff publicly identified Doe on his x.com account. A few days later, Doe moved to dismiss the case as a sanction. *See* ECF No. 74 (sealed). On March 4, 2024, Doe moved for a protective order, although Doe's name was not identified through discovery. On March 6, 2024, oral argument on the motion to dismiss was scheduled for March 18, 2024. On March 15, 2024, Plaintiff moved to vacate the order concerning the pseudonym. *See* ECF No. 89.

On March 18, 2024, a hearing was held on the motion to dismiss. The motion was denied. ECF No. 91 (on docket). This Court noted that there was no order concerning Plaintiff's speech at that time and that a pseudonymity order does not itself put a restriction on what parties can say in public. ECF No. 94 at 5–6.

This Court concluded that related issues were not fully briefed. ECF No. 94 at 4. This Court referred all motions concerning the pseudonymity issue to Magistrate Judge Maria E. Garcia, so that issues could be fully briefed. *See id.* at 4, 20; *see also* ECF No. 110 (on docket).

This Court also ordered that "I am going to direct [Plaintiff] not to at least use Jane Doe's real name in his social media communications until such time as all of those motions are adjudicated by the Court." ECF No. 94 at 20. Plaintiff indicated he would acquiesce to the authority of the Court and obey the order of the Court. *Id.* at 22.[1]

In addition to what was stated in the hearing, this Court entered an order on the docket that "As ordered on the record, the Plaintiff shall not identify Jane Doe in any social media communication or elsewhere and he shall remove his posts that reference her identification." ECF No. 91.[2]

## E. Permanent Gag Order on Plaintiff Pursuant to Pseudonymity

Issues continued to be briefed. Among other things, on April 4, 2024, Doe affirmatively moved to proceed pseudonymously.

On June 19, 2024, the Magistrate Judge denied the motion to vacate the order to proceed pseudonymously, granting Doe's motion to proceed under a pseudonym. *See* ECF No. 119 at 15. But, at that time, the Magistrate Judge also entered a permanent prior restraint on Plaintiff:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.

---

[1] Plaintiff also indicated at that time that his change on the pseudonymity issue was based on the two footnotes identified above. ECF No. 94 at 21.

[2] Of note, there was no canvass, nor finding of waiver, as to any speech rights during the hearing.

This judgment does not rest on a compelling interest and has no precedent—there are no other federal cases where a plaintiff cannot identify a defendant whose name is known before litigation. The order concludes there is no prior restraint because Plaintiff stated on March 18, 2024 hearing that he would acquiesce to the authority of the Court and obey the order of the Court. *See* ECF No. 119 at 14; *but see* note 2 of this motion.

On June 19, 2024, Plaintiff criticized the judgment of the Magistrate Judge on x.com. Among other things, he wrote, "I have been officially gagged." See ECF 123 at 1 (sealed). On June 23, 2024, Doe filed a Second Emergency Motion to Dismiss, claiming that these statements, although objectively compliant, surreptitiously solicited others to identify Doe by name. One individual did identify Doe by name on x.com in the comments to Plaintiff's post.

On June 27, 2024, Plaintiff retained new counsel. *See* ECF 127 (appearance).

On June 28, 2024, Yale joined Doe's Second Emergency Motion. *See* ECF No. 130.

On July 3, 2024, Plaintiff sought review of the June 19, 2024 gag order by way of a timely objection pursuant to District of Connecticut Local Rule 72.2 in the aforementioned Pending 72.2 Objection. Plaintiff pointed out that the judgment of the Magistrate Judge was contrary to law. *See* ECF Nos. 152, 153 (sealed), 154. Arguments rest, among other things, on the heavy presumption against prior restraints, that no compelling interest was articulated, and that *Cox Broadcasting*

8

*Corp. v. Cohn*, 420 U.S. 469 (1975) and *Florida Star v. B.J.F.*, 491 U.S. 524 (1989) prohibited a court from punishing an individual for publishing information contained in an official court record open to the public. Review of the gag order and order concerning pseudonymity are still pending before this Court.

On July 6, 2024, Plaintiff filed a joint objection to both Second Emergency Motions. *See* ECF No. 157 (sealed). On July 10, 2024, this Court indicated it would conduct the hearing on the Emergency Motions to Dismiss, scheduled for July 25, 2024. *See* ECF No. 173 (on docket). Judgment on the emergency motions to dismiss is still pending.

### F. Gag Order Interferes with Asylum Process

#### 1. Asylum and DHS Letter

In summer, 2016—eight years ago—Plaintiff applied for asylum. Plaintiff formerly lived in a refugee camp before coming to the U.S. Though he has never lived there, Plaintiff is a citizen of Afghanistan.

On November 2, 2021, Plaintiff was interviewed by DHS—one of a number of such interviews that had occurred over the years. Plaintiff was very candid about the criminal charges against him. At that time, Plaintiff submitted three sets of documents to DHS, pursuant to a request from DHS: the official transcript from the criminal matter, a certificate of disposition in that matter, and the only document in his possession concerning a protective order that issued from Indiana.

Plaintiff was supposed to receive a decision concerning the interview within 45 days of that interview. He did not receive a decision. These documents caused a

delay.

Instead, on October 7, 2024—almost three years later—he received a letter from DHS, requesting the same three documents again. The letter directs Plaintiff as follows (*see* ECF No. 201-1):

Please submit the following additional documentary evidence.

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.

2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.

The deadline in this initial letter was to submit documents by October 24, 2024. On November 4, 2024, DHS extended this deadline to submit documents until November 25, 2024. *See* ECF 222.

### 3. Plaintiff Seeks Permission From Magistrate Judge to Publish Documents to DHS

On October 8, 2024, the day after receiving the DHS letter, Plaintiff filed an Emergency Motion for Limited Stay of Order Restricting Speech. See ECF No. 201. On October 16, 2024, the Magistrate Judge denied the motion without prejudice, requiring more specificity and briefing, as well as filing all relevant documents under seal.

Doe objected. Doe demanded Plaintiff file a redacted transcript. Among other things, as described the immediately preceding section, Doe claimed that a redacted transcript was an official transcript.

10

**A-181**

Plaintiff believes that submitting an altered transcript risks delaying his application or jeopardizing it all together. The last time Plaintiff submitted documents that raised a question, his case was delayed three years. Being forced to submit a redacted transcript jeopardizes his present procedural right to litigate his asylum application as he feels is best for his life and liberty.

### 4. Magistrate Judge Upholds and Expands Scope of Prior Restraint

On October 21, 2024, the Magistrate Judge ordered that Plaintiff could only submit a redacted transcript to DHS. *See* ECF No. 216 (on docket)(emphasis added):

> Plaintiff may, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), provide a copy of the Official Transcript in *State of Connecticut v. Khan*, No. NNH-CR15-0162194 (Conn. Super. Ct.), which the Court defines as the transcript that redacted Jane Doe's name pursuant to Conn. Gen. Stat. §54-86e, that has been publicly available at least as of July 25, 2024. . . .

> The motion is denied as follows: Plaintiff may not provide, in response to the October 3, 2024 letter from USCIS/DHS . . . the unredacted trial transcripts . . . as the Court does not deem them responsive to the USCIS/DHS letter request.

> The Court's Orders regarding the use of Jane Doe's name (ECF Nos. 91, 119) remain in full force and effect, except that Plaintiff is authorized to submit the Official Transcript from Plaintiff's criminal trial to USCIS/DHS, as defined here, provided that **he may not disseminate the transcript to anyone else**.

The Magistrate Judge has defined the "official transcript" as that containing Doe's redacted name. No such certified transcript exists. Submitting such a transcript is impossible. *See id.*

In addition, the Magistrate Judge expanded the scope of the restraint. The

11

Magistrate Judge's October 21, 2024 order also prohibits Plaintiff from distributing even a redacted transcript to *anyone* other than DHS. This would ostensibly include the Connecticut Superior Courts, the District Court, the Second Circuit— even opposing counsel or the Magistrate Judge.

Submitting the most recent version of the transcript violates the June 19, 2024 order restricting Plaintiff's speech by disclosing Doe's identity directly and indirectly. In addition to hundreds of uses of her name, there is an enormous amount of biographical and biological data in the transcript by which her identity could be discerned indirectly.

### 5. Mandamus Petition

On October 22, 2024, Plaintiff filed a petition for a writ of mandamus in the Second Circuit Court of Appeals as a collateral attack on the October 21, 2024 Judgment. *See In re: Khan*, 24-2794 (November 15, 2024). On November 15, 2024, the Circuit Court denied the writ, directing Plaintiff to file a challenge in District Court instead.

### G. Facts Concerning the "Official Transcript"

Complying with the DHS request requires submitting an official court transcript. There has been a dispute over whether the official transcript ought to be redacted pursuant to Connecticut General Statutes §54-86e. As explained below, this is a red herring: Plaintiff wants to submit the November 7, 2024 transcript or unredacted transcript. There is no lawful reason to restrain his speech. He has the speech and petition rights to do so.

12

**A-183**

Nonetheless, because this issue factors into the October 21, 2024 order by the Magistrate Judge, this additional background is submitted to aid the Court.

The parties agree that **every published version of the transcript contains Doe's name.** The original transcript submitted by Plaintiff contains Doe's name hundreds of times. The single page initially provided to Defendants by the court reporter in July, 2024, contains Doe's full name. The single page with a redaction provided to Defendants in July, 2024, also contains Doe's name—Doe, not the reporter, redacts Doe's first name. *See* ECF No. 186 ("Additional Redaction by Jane Doe"). The transcript issued November 7, 2024, certified by the court reporter, contains Doe's name hundreds of times. *See* ECF No. 223.

Both the Pending 72.2 Objection and the July 6, 2024 objection to the motions to dismiss cite *Florida Star v. B.J.F.*, *supra*, 491 U.S. 524 and *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469. The principle underlying both cases is that the government cannot punish an individual for publishing facts in a court document that is available to the public. The theory in the objections is that Doe's name appears in the official transcript. Plaintiff has a copy of this transcript and pointed out that the official transcript was unredacted.

Shortly after these July filings, however, Doe and Yale sought a copy of the official transcript. *See* ECF No. 186. Initially, Yale received an unredacted version, like the version in Plaintiff's possession. *See* ECF No. 186-1. After corresponding ex parte with a court reporter for the Superior Court, Judicial District of New Haven, the court reporter apparently redacted Doe's last name—and only last

13

**A-184**

name—on a single page. *Id.*

This was not a judgment of the Superior Court. There was no adjudication by a judge or clerk or agency, no notice to Plaintiff and no hearing on the issue. Doe and Yale claim that Connecticut General Statutes §54-86e applies to the transcript after an acquittal. There is no law to support this conclusion.

As noted above, at the start of the case, Plaintiff noted that §54-86e applied **during the criminal trial**. ECF 2 at 2. **Not** after an acquittal.

It is not clear from the record whether Doe indicated to the reporter that the result of the trial was an acquittal.[3] The statute appears in Chapter 961 of the General Statutes, which concerns "Trial and Proceedings After Conviction." Not after acquittal.

Nonetheless, on November 7, 2024, notwithstanding various procedural hurdles, Plaintiff was provided an official transcript. *See* ECF No. 223. The transcript appears identical to the original transcript except for a single page—the page previously provided by Defendants. On that page, Doe's last name, and only last name, is redacted, twice. No other instance of Doe's name is redacted anywhere in any version of the transcript.

The complete transcript is over 1300 pages and contains more than 700 instances of Doe's name across more than 200,000 words. There is no evidence of a transcript redacting all such instances of Doe's name, or any instances of her first

---

[3] Doe has declined to clarify this on the record. Failure to disclose that fact would have misled the reporter because the conviction rate for criminal cases that are tried is extremely high.

**A-185**

name.

Even viewing this exchange in the light most charitable to Doe and Yale, at least up until mid-July, 2024, there is no dispute that for years the official transcript had been an unredacted transcript, that such an unredacted version had been publicly available for years.

Again, as described below, this issue is a red herring. There is no dispute that Plaintiff lawfully has in his possession an unredacted transcript. Plaintiff wishes to publish this document to DHS in support of his asylum petition. He has the speech, press, and petition rights to do so. He does not need approval. It is protected speech.

### H. Facts Concerning How Plaintiff's Life is at Risk If Deported

#### 1. Immigration Proceedings are High Stakes and Front-Loaded

The alien has the burden of proof. *See Rasool v. I.N.S.*, 758 F. Supp. 188, 190–92 (S.D.N.Y. 1991). Asylum is discretionary. Although the similar-proceeding of withholding of deportation is mandatory, the remedy is more narrow and requires a higher showing by the alien. *See id.* at 191–92. The alien generally must adduce more than mere testimony, with objective, corroborating evidence. *See id.* "Even a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).

Denial of asylum is reviewed with deference to the agency—either

15

substantial evidence or abuse of discretion, depending. *Melendez v. U.S. Dep't of Just.*, 926 F.2d 211, 216 (2d Cir. 1991). "Under the substantial evidence standard, the evidence must not only support, but must also compel, a contrary conclusion for reversal to be proper." *Nikpay v. Barr*, 838 F. App'x 30, 32 (5th Cir. 2020). Even if there is a mistake, an unfavorable judgment by DHS on law or the facts is unlikely to be overturned. *See, e.g., Singh v. Garland*, 6 F.4th 418, 427 (2d Cir. 2021)(discussing messy situation and uncertainty in review where there are some mistakes by agency yet also some valid reasons). All the pressure in a case is front-loaded into proceedings before the agency.

*Nikpay v. Barr, supra,* 838 F. App'x 30 serves as a cautionary tale. Nikpay testified to prior physical abuse he suffered from the Taliban, and threats against his life. But because "Nikpay was not hospitalized nor did [an] incident [where he was bound] result in permanent injury," the reviewing Court upheld the denial of asylum. Nikpay was of the Hazara ethnicity. "[A]lthough Nikpay adduce[d] evidence indicating that the Taliban has targeted Hazaras in the past, Nikpay d[id] not show that the Taliban has a pattern or practice of persecuting Hazaras." *Id.* at 34. The case shows that even where there is evidence of peril to life these Asylum cases are difficult and high risk.

### 2. Deportation is Likely to Afghanistan

Defendants have claimed, without authority, that Plaintiff will not be deported to Afghanistan. Plaintiff respectfully directs attention to the IIRIRA

16

§241(b)(2)[4] and *Jama v. ICE*, 543 U.S. 335, 341 (2005)[5].

There is a risk that failing to comply with DHS could jeopardize Plaintiff's asylum petition. So to where would he be deported in such an event?  Plaintiff is a citizen of Afghanistan and only Afghanistan.  As the alien, Plaintiff could, in theory, designate either the UAE or Pakistan instead of Afghanistan pursuant to (b)(2)(B). However, because he is not a citizen of either country, and has no significant ties to either country, there is no reason to believe either country would accept Plaintiff. This leaves the Attorney General to disregard those designations pursuant to (b)(2)(C)(ii) or (b)(2)(C)(iii).  According to (b)(2)(D), then, the Attorney General would designate deportation to Afghanistan as Plaintiff is a citizen of Afghanistan. Because he is a citizen of Afghanistan, and only Afghanistan, there is no reason to believe that country would refuse to accept him.

### 3. Genuine Physical Danger in Afghanistan

Plaintiff does not comply with the DHS request, he may be deported, where he faces execution.

Plaintiff's uncle was executed by the Taliban for advocating for the education of girls.  Plaintiff is an atheist and according to the laws of Afghanistan, if deported to Afghanistan, he will have three days to convert to Islam or be executed.  This is not some remote, speculative kind of harm.  These laws are enforced and people are executed on this basis.  These are the laws of the nation. The underlying case is well

---

[4]*See* 8 U.S.C. §1231(b)(2).
[5]*See also* Adam L. Fleming, *Around the World in the INA: Designating a Country of Removal in Immigration Proceedings*, Immigration Law Advisor, Vol. 7 No. 5, pp. 1–4, 10–14 (May 2013) (attached).

publicized, and Plaintiff is well known.  Although he is a citizen of Afghanistan, he has never lived there, having grown up in a refugee camp.

A number of cases show that indeed, Afghanistan has been a dangerous place for refugees and asylum seekers for a long time. *See, e.g., Ullah v. Garland*, 72 F.4th 597, 599 (4th Cir.), *modified on reh'g,* 95 F.4th 151 (4th Cir. 2023), (highlighting serious dangers posed by Taliban in chasing down individuals); *Nikpay v. Barr*, *supra,* 838 Fed.Appx. 30 (discussed above); *Israil v. Att'y Gen. United States*, 693 F. App'x 99, 103 (3d Cir. 2017)(family not safe from Taliban in retaliation for leaving Afhganistan); *Islam v. Lynch*, 624 F. App'x 500, 502 (9th Cir. 2015)(alien's rational belief that Taliban would hunt down and kill him); *Sharifi v. Holder*, 550 Fed.Appx. 526 (2013) (country dangerous for opponents to Taliban); *Oryakhil v. Mukasey*, 528 F.3d 993 (2008)(chaotic and violent conditions in country, inability of police to protect civilians, significant danger posed by the Taliban); *Noori v. Attorney General of U.S.*, 193 Fed.Appx. 181 (2006)(evidence that alien would be tortured due to Pashtun ethnicity, among other reasons; Plaintiff is also Pashtun); *Ahmadshah v. Ashcroft*, 396 F.3d 917 (8th Cir. 2005)(pattern of violence against Christian converts); *Amanullah v. Cobb*, 862 F.2d 362 (1988)(risk to life for participating in anti-government activities); *Najaf-Ali v. Meese*, 653 F.Supp. 833 (1987)(asylum seeker legitimately feared for life for herself and child).  The Plaintiff's fear is rational.

I. <u>Facts Concerning Harm to Speech and Petition</u>

Plaintiff wishes to submit a document in his possession to DHS.  This is

18

pursuant to his right to petition for redress of grievances as well as his freedom of speech and of the press. *See* U.S. Constitution, Amend. I. Specifically, Plaintiff wishes to give DHS a transcript he has actually received from Superior Court—not a hypothetical transcript he has never seen. Moreover, he believes a transcript as altered as the Magistrate Court orders will raise questions and cause delay again. Submitting court documents previously caused a three year delay. Another such delay could result in a change in public policy that affects Plaintiff's ability to seek asylum.

Accordingly, it is critical to Plaintiff that he exercise his fundamental right to speech, press, and petition **now** in pursuit of the asylum petition. Although these circumstances are especially acute, the prior restraint infringes on Plaintiff's speech and press rights every day. Every such day is an irreparable harm depriving Plaintiff of his right to speak as he chooses.

Further facts and procedural history are set forth as necessary.

## II. PRIOR RESTRAINT AND PSEUDONYMITY ORDER IS CONTRARY TO LAW[6]

### A. Standard of Review

Pursuant to LR 72.2, orders by a Magistrate Judge that are not advisory are reviewed for whether they are contrary to law. Fact findings are reviewed for clear error.

---

[6] For convenience, and in the interest of preservation, and in the interest of time restraints considering the emergency circumstances, some arguments from the Pending 72.2 Objection are repeated here.

## B. The Prior Restraint is Contrary to Law

No constitutional command is as fundamental to American cultural identity and jurisprudence as the prohibition on prior restraints.  The principle predates the republic.  *See* William Blackstone, Commentaries 4:151[7] (liberty of the press consists in laying no previous restraints upon publications)(1769).  This cornerstone of free speech has been reaffirmed time and time again by the Supreme Court[8]— and has even infiltrated popular culture[9].

In its June 19, 2024 order, the Magistrate Judge concluded that its permanent restriction on Plaintiff was not a prior restraint.  The order restricting speech is plainly a prior restraint.  "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) (internal quotation marks and citation omitted).

The Magistrate Judge applied none of the jurisprudence concerning prior restraints on June 19, 2024 nor October 21, 2024.  There was no compelling interest

---

[7] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

[8] *See, e.g., Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791 (1976)("[I]t is . . . clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); see also *The Pentagon Papers Case*, 403 U.S. 713, 714, 91 S.Ct. 2140 (1971) (per curiam).

[9] *See, e.g.,* The Big Lebowski (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint") *clip available at* https://www.youtube.com/watch?v=tE_pxDxQRq4 (last accessed October 16, 2024).

20

**A-191**

identified.  In the latter, the burden was improperly flipped such that Plaintiff had to justify his speech.  *See* ECF No. 204 (on docket)(directing Plaintiff to "address why it is necessary to disclose Jane Doe's full name . . . .").  Rather, the Magistrate Judge had a duty to put the *burden on Doe* to show the speech restriction was lawful.

> Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity . . . and carries a heavy burden of showing justification . . . .

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26, 2009)(citations and internal quotation marks omitted).

The standard of review applied to prior restraints is the same as for content-based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a strict test. . . .  Under the strict-scrutiny test, a content-based restriction may be upheld if the restriction serves a compelling governmental interest, is *necessary* to serve the asserted [compelling] interest . . . is precisely tailored to serve that interest, and is the least restrictive means readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations omitted; internal quotation marks omitted; emphasis retained); see also *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 880 (S.D. Tex. 2008) ("Judicial gag orders impinge upon freedom of speech and press under the First Amendment, and must pass muster under well-established constitutional case law.").

This case is similar to *In re United States*, *supra*, 945 F.3d at 625 in that the error here is an erroneous view of the law.  The Magistrate Judge fails to identify

21

**A-192**

the prior restraint as a textbook example of such a restraint and applied none of the law concerning prior restraints.  There is no compelling interest identified, and the order restricting speech here has no analogues.  This is not a case where Doe's identity emerged in the discovery process, where an order of protection could be entered.  *See* Fed. R. Civ. P. 26(c).  There is no "imminent threat to the participation of witnesses, trial participants, and staff in [a] criminal matter" or necessity to protect "an ongoing investigation or the identity of witnesses in such a proceeding."  *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746).  This is not a criminal case with the compelling interest of an ongoing criminal investigation nor does publishing Doe's name present an imminent threat to the *participation* of any witnesses.  "A presumption of openness pervades federal dockets."  *Alston v. Sharpe*, District of Connecticut, 3:13-cv-1 at *1 (Oct. 22, 2015)(2015 WL 6395937). The order is **permanent** on its face. To the extent the Magistrate Judge did not want the facts of the case reported or discussed publicly, the Judge had a duty to identify a compelling interest.  History indicates that there is no compelling interest in preventing the dissemination of truthful information already published in a public court record. *See Florida Star v. B.J.F., supra*, 491 U.S. 524; *Cox Broadcasting Corp. v. Cohn, supra*, 420 U.S. 469.

Furthermore, the elementary failure as concerns flipping the burden and forcing Plaintiff to justify his speech is analogous to the error in *In re The City of New York, supra*, 607 F.3d at 944.  In that case, the Magistrate Judge failed to

22

apply the "strong presumption against lifting the privilege." *Id.* In this case, the Magistrate Judge failed to apply the very heavy presumption against prior restraints.

Accordingly, the prior restraints imposed by the Magistrate Judge in its June 19, 2024 Order as well as its October 21, 2024 order are contrary to law.

### C. Pseudonymity is Neither a Compelling Interest nor Lawful Here

Defendants improperly rest their argument in substantial part on the interest in protecting the Magistrate Judge's order of pseudonymity.

### 1. No Compelling Interest

Privacy interests are surely important. A number of courts have recognized a substantial or important interest in certain privacy rights. *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 489 (1975) (recognizing "impressive credentials for a right of privacy"); *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-cv-2678 at 2 (S.D.N.Y. July 10, 2019)(2019 WL 3034793)(acknowledging "important" interest). But this is not a **compelling** interest.

This court should not be misled by Defendants' reliance on cases that actually have a compelling interest. There can be a compelling interest in the context of a criminal prosecution—where there is an interest to protect an ongoing criminal investigation or to protect the judicial process in the context of a criminal proceeding. Defendants improperly rely on these justifications in this case. *See* Doe Brief at 28–29 (citing *Sheppard v. Maxwell* criminal habeas; *US v. Trump* criminal case; *Application of Dow Jones & Co., Inc.* criminal context).

## 2. Pseudonymity Order is Not Lawful

Defendants improperly rely on the pseudonymity order to justify the prior restraint. The order is not lawful. There are three categories of cases where a pseudonym is used. Defendants rely on all of these categories to justify the pseudonymity order but there are no cases are analogous to this case.

The first category of pseudonymity is a case where the *identity of a defendant is actually unknown prior to litigation*. In that case, a Doe defendant is named as a placeholder. If a true name is revealed only through the discovery process, a court can compel attorneys and parties to keep that information confidential when it is obtained through the discovery process. This is codified in FRCP 26(c). But FRCP 26(c) does not apply to the present case.

This is in some ways similar to the second category, protecting the identity of *an anonymous Doe defendant who spoke critically about a government official*, and who is sued by that government official. *See, e.g., Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001)(seminal case); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005)(same). In the context of speech about a government official, there is a fundamental right to anonymously criticize the government, and a court may have a duty to continue to protect that fundamental right by keeping the Doe defendant's identity anonymous. The principle is that the discovery process cannot be used to circumvent the right to criticize government anonymously. But Plaintiff is not a government official, and Doe's name was known prior to litigation, so these cases do not apply either.

24

The third category concerns plaintiffs, not defendants. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) is a ready example, where pseudonyms were used to protect a **plaintiff's** identity. In *Sealed Plaintiff,* the plaintiff was a sex assault victim. That is a situation where the identity of the party seeking the pseudonym *is not known to the public before the lawsuit commences.* This was also the case in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) as well as *Doe v. Baram*, No. 20-cv-9522 (S.D.N.Y. Aug. 5, 2021)(2021 WL 3423595) and *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006). The interest in such anonymity is in enabling such a plaintiff to seek redress in court. Meritorious cases may otherwise not be heard if such **plaintiff** were not protected. If Doe were suing Plaintiff in this case, she might have a right to proceed under a pseudonym. But she never pursued such a suit and she is not a plaintiff here.

Undersigned can find no cases like the present, where a **defendant** whose identity is known before litigation, whose name appears in public documents, seeks and obtains the right to proceed under a pseudonym. This is an expansion of the law, and in derogation of FRCP Rule 10.

### 3. In the Alternative, Pseudonymity is Improper Even Under the Rubric Adopted by the Magistrate Judge

In her order granting Doe's motion to continue with a pseudonym, Judge Garcia applied the ten factors in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). As described in the forgoing section, that case is distinguishable from the present case. Nonetheless, even under that rubric, Judge Garcia should not have granted the motion to continue under a pseudonym. This issue is relevant

25

**A-196**

to the immediate issue because the Magistrate Judge relied on the pseudonymity

order to impose the prior restraint.  The factors are:

(1)  whether the litigation involves matters that are highly sensitive and [of a] personal nature;

(2)  whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties;

(3)  whether identification presents other harms and the likely severity of those harms;

(4)  whether the plaintiff is particularly vulnerable to the possible harms of disclosure;

(5)  whether the suit is challenging the actions of the government or that of private parties;

(6)  whether the **defendant** is prejudiced by allowing the **plaintiff** to press his claims **anonymously**, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7)  whether the plaintiff's identity has thus far been kept confidential;

(8)  whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9)  whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10)  whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

These factors are exhaustively examined at ECF 154, and those arguments are

incorporated here by reference.

### 4. Policy Problem:  Expanding Pseudonymity

If Doe is allowed, as a Defendant, to compel Plaintiff to not identify Doe, then

how will this Court respond when a criminal defendant seeks a similar order to

prohibit a USAO from identifying them?  Surely the privacy interests for a criminal

defendant are at least as strong as that of a defendant like Doe, and unlike Doe, a

criminal defendant enjoys a presumption of innocence.  There is no limiting

principle to the Magistrate Judge's expansion of pseudonymity that prevents such an outcome.

## D. Legal Standards for "Harassment" Not Satisfied

Doe has repeatedly claimed Plaintiff's speech is or would be "harassment." Plaintiff's speech does not qualify as harassment under state or federal law. Connecticut law defines "harassment" at General Statutes §53a-183 *et seq.* and the term appears in some federal statutes such as 18 U.S.C. §2261A.

What is key under both state and federal law is that for harassment, a speech exception must apply, or the proscription must be applied to non-expressive conduct. *See, e.g., United States v. Yung*, 37 F.4th 70, 75, 80 (3d Cir. 2022)(construing harassment under cyberstalking statute narrowly to avoid First Amendment implications); *State v. Billings*, 217 Conn. App. 1, 34–37, 287 A.3d 146 (2022), cert. denied, 346 Conn. 907, 288 A.3d 217 (2023)(vacating conviction of harassment because speech did not fall within exception); *c.f. United States v. Waggy*, 936 F.3d 1014, 1018 (9th Cir. 2019(considering First Amendment implications as to harassment under cyberstalking law).  There is no allegation that simply identifying Doe by name falls within a speech exception.

Moreover, Criminal harassment-type statutes, if lawfully applied, are a less speech restrictive alternative than the prior restraint here. There is no reason to believe such statutes are not a sufficient deterrent as to any harassment.

## E. No Evidence of Safety Interest for Doe

If there were evidence that Plaintiff's speech put Doe in *imminent physical*

27

**A-198**

*danger*, this might be a closer case. As it stands, however, physical and emotional harm to Doe are speculative. There is no expert testimony as to the likelihood of such harm or the degree of such harm, nor has Doe herself offered testimony as to such harm, nor is there evidence of a history of such harm or treatment because of such harm. Due process would require that Plaintiff be allowed to cross examine testimony as to such harm, but there is no such testimony. Defendants' sometime claim of a safety interest is speculative and contested.

## III. CONCLUSION

The Plaintiff renews his 72.2 Objection filed July 3, 2024 and requests the objection be re-docketed as an Emergency.

For the foregoing reasons, the District Court should sustain the objection and vacate the June 19, 2024.

In the alternative, should the Court needs additional time to rule on the Pending 72.2 Objection, the Court should in the interim grant a limited stay of the June 19, 2024 order so that the Plaintiff may respond to the request from DHS in time for the November 25, 2024 deadline by filing the November 7, 2024 Transcript or wholly unredacted transcript, and the October 21, 2024 order should be vacated in its entirety.

Respectfully submitted,

SAIFULLAH KHAN

NOVEMBER 18, 2024          /s/ Mario Cerame ct30125
                          Mario Cerame
                          Brignole, Bush & Lewis LLC
                          73 Wadsworth Street

28

**A-199**

Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

## **CERTIFICATION**

      I hereby certify that on NOVEMBER 18, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/
Mario Cerame


30

**A-201**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | MAY 20, 2025 |

**MOTION FOR JUDGMENT OF DISMISSAL
AND/OR OTHER SANCTIONS**

Pursuant to Rule 41(b), Rule 37, and this Court's inherent authority, all Defendants respectfully move to dismiss this case due to Plaintiff's litigation misconduct. In addition, or in the alternative, Defendants seek other sanctions, detailed below.

**I.     PRELIMINARY STATEMENT**

After this Court imposed sanctions on Plaintiff but declined to dismiss this case, Plaintiff engaged in further misconduct. He again indirectly disseminated Jane's name in violation of this Court's order. He did that just a few days after this Court's ruling denying Defendants' Second Motions to Dismiss based on Plaintiff's prior indirect dissemination of Jane's name. Plaintiff also delayed this case by producing over 70,000 pages of largely irrelevant documents, apparently without reviewing them for responsiveness. Additional misconduct by Plaintiff has also come to light since Defendants' most recent Motion to Dismiss. Dismissal is not only more than warranted, it is the only option left. The Court's attempts to stop Plaintiff's misconduct with lesser sanctions have failed. The Court should dismiss this case.

**II.     RELEVANT BACKGROUND**

Before discussing the facts relevant to the instant Motion, which are detailed below, it is important to note that Defendants previously filed numerous Motions to Dismiss this case based

**A-202**

on misconduct by Plaintiff. (*See, e.g.* ECF 75, ECF 123-1, ECF 130-1.) Defendants incorporate here but will not repeat the misconduct raised in those Motions. It is, however, important to emphasize that this litigation has previously been marred by "egregious" misconduct by Plaintiff and, as set forth below, the Court has repeatedly warned Plaintiff that his misconduct may result in dismissal. (*e.g.*, ECF 119 at 15 ("Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's order is sanctionable by the Court, including but not limited to dismissal.").) Efforts to stop Plaintiff's misconduct have failed. (*E.g.*, ECF 200 at 9:20 (The Court: "I don't know what the right answer here is. But I know it has to stop. . . .").)

## III. RELEVANT LAW

This Court has inherent authority to dismiss a case for bad-faith conduct, including conduct that amounts to an abuse of the judicial process.[1] (*See, e.g.*, ECF 265 at 2–3.)

> [S]anctionable bad-faith conduct includes "abuse of the judicial process[.]" *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). . . . [A] court may resort to dismissal "not merely to penalize," but "to deter those who might be tempted to such conduct in the absence of such a deterrent." [*Davis v. Saint Luke's-Roosevelt Hosp. Ctr.*, 771 F. App'x 116 (2d Cir. 2019)] (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). Dismissal is also appropriate where "'a party ... abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Davis v. Saint Luke's Roosevelt Hosp.*, No. 16-CV-6279 (JPO), 2018 WL 10384114, at *1 (S.D.N.Y. Apr. 16, 2018), *aff'd sub nom. Davis*, 771 F. App'x 116 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).

(ECF 265 at 3.)

Federal Rule of Civil Procedure 41(b) provides for dismissal "[i]f the plaintiff fails to . . . comply with [the Federal Rules] or a court order." Fed. R. Civ. P. 41(b).[2] As this Court has also

---

[1] *See* ECF 123-1 at 13–14 for a more detailed discussion of relevant law. Plaintiff has conceded that Jane's recitation of the law at ECF 123-1 at 13–14 is accurate. *See* ECF 157-1 at 9.

[2] Federal Rule of Civil Procedure 37 meanwhile authorizes sanctions in the discovery context.

recognized, "'[a]ll litigants . . . have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice.'" *Conquistador v. Martin*, No. 3:19-CV-1965 (KAD), 2024 WL 2746893, at *1 (D. Conn. May 29, 2024) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (*per curiam*)). "The Second Circuit has identified five factors to guide the Court's . . . discretion under Rule 41(b), which ask whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Id.*; *see also id.* (noting that same factors apply to "failure to comply with court orders").

"'[N]o one factor is dispositive' and the Court must instead 'review the dismissal in light of the record as a whole.'" *Febres v. Yale New Haven Hosp.*, No. 3:19-CV-01195 (KAD), 2020 WL 2494724, *2 (D. Conn. May 13, 2020) (quoting *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)). "The selection of an appropriate sanction, including dismissal . . . , is a matter consigned to the discretion of the district court." *Dodson v. Runyon*, 957 F. Supp. 465, 469 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 917 (2d Cir. 1998).

The Second Circuit has noted that "flagrant disregard of court orders . . . justifie[s] the imposition of the sanction of dismissal." *Blue v. O'Bright*, No. 3:21-CV-00762 (KAD), 2021 WL 5770017 (D. Conn. Dec. 6, 2021) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176–77 (2d Cir. 1988)).

In *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 303 (2d Cir. 2009), for example, the Second Circuit affirmed the dismissal of a case where the plaintiff "defied all of [the Court's discovery] orders, each of which warned of the possibility of sanctions, including dismissal" and the plaintiff "failed to comply with any of defendant's discovery requests" after the Court

3

"imposed a lesser sanction." The Second Circuit concluded that the plaintiff's failure to engage in discovery "amount[ed] to 'sustained and willful intransigence in the face of repeated and explicit warnings from the [C]ourt that the refusal to comply with [C]ourt orders would result in the dismissal of the action.'" *Id.* at 303 (alteration omitted) (quoting *Valentine v. Museum of Mod. Art*, 29 F.3d 47, 50 (2d Cir. 1994)); *see also Valentine*, 29 F.3d at 50 (affirmed sanction of dismissal). The Second Circuit observed that the district court "exceeded what was required in the circumstances." *Id.*

Similarly, in *Friends of Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 333 (2d Cir. 1997), the Second Circuit affirmed a dismissal by Judge Eginton after Judge Eginton concluded that plaintiffs had engaged in "'a systematic pattern of discovery abuse.'" The Second Circuit emphasized plaintiffs' refusal to acknowledge their misconduct, noting that "plaintiffs' counsel[] maintains to this day that he and his colleagues bear no responsibility whatsoever for this predicament." *Id.* at 334. The Second Circuit also observed that it was "all too apparent . . . that lesser sanctions were ineffective in deterring discovery misconduct, that plaintiffs were warned that they risked incurring the sanction of dismissal, and that the abuse of the discovery process showed no signs of abasement." *Id.* The Second Court held that dismissal "was warranted." *Id.*

Dismissal is therefore appropriate where, for example, a litigant misleads the Court. *See, e.g.*, *Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019) (affirming dismissal where plaintiff omitted reference to certain prior lawsuits he had filed that disqualified him from *in forma pauperis* status).

It is also appropriate where a court has repeatedly warned the plaintiff of the prospect of dismissal but he has failed to change his behavior. "[T]he Second Circuit has repeatedly upheld dismissal as an appropriate sanction where the non-compliant parties were warned of the possibility." *Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250,

4

**A-205**

266 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also, e.g.*, *Obot v. Comm'r*, 254 F. App'x 57, 58 (2d Cir. 2007) (summary order) ("[I]t is difficult to imagine how a dismissal following an unheeded warning could be an abuse of discretion." (quotation marks omitted)).

This Court and others have dismissed cases for misconduct far less serious than the misconduct Plaintiff has engaged in in this action.[3]  Indeed, this Court most commonly dismisses cases when litigants do not do anything (*i.e.*, fail to prosecute their case) and violate this Court's orders by not complying with discovery, etc.  *See, e.g.*, *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172 (2d Cir. 1988) (affirming dismissal for "failure to obey repeated orders to provide discovery"); *Selletti v. Carey*, 17 F. App'x 18, 21 (2d Cir. 2001) (summary order) (affirming dismissal and holding that a "longstanding and egregious pattern of delay, obstruction, and simply inaction, which we found previously to weigh heavily in favor of dismissal, also put the district court well within the bounds of its discretion in dismissing the complaint" (citation and internal quotation marks omitted)); *Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 F. App'x 107 (2d Cir. 2001) (summary order) (affirming dismissal for failure to comply with discovery); *see also, e.g.*, *Conquistador*, 2024 WL 2746893, at *3 (plaintiff "failed to comply with three recent Court orders and otherwise neglect[ed] to prosecute his case"); *Powell v. Ocwen Loan Servicing, LLC*, No. 3:21-CV-01605 (KAD), 2024 WL 5239340 (D. Conn. Dec. 27, 2024) (plaintiff "failed to comply with three court orders designed to address" a missing brief regarding subject matter jurisdiction); *Petty v. City of New Britain*, No. 3:17-CV-01798 (KAD), 2019 WL 121719 (D. Conn. Jan. 7, 2019) (plaintiff "largely uncooperative or unresponsive to" discovery efforts); *Davis v. Stop & Shop Supermarket*, No. 3:18-CV-01279 (KAD), 2019 WL 5696019 (D. Conn. Nov. 4, 2019) (plaintiff failed to engage with discovery); *Smith v. Sanchez*, No. 3:23-CV-00964 (KAD),

---

[3] Plaintiff has conceded as much.  *See* ECF 157-1 at 10–11 (discussing cases involving lesser misconduct).

5

2025 WL 986122 (D. Conn. Apr. 2, 2025) (plaintiff failed "to follow court orders," including "to amend his complaint," failed "to conduct any discovery," failed to "update his address," etc.); *In re Bartley*, No. 3:19-CV-00400 (KAD), 2019 WL 6467353 (D. Conn. Dec. 2, 2019) (debtor made "bad faith" bankruptcy filings "to frustrate [a] foreclosure action" resulting in this Court affirming Bankruptcy Court's sanction of dismissal).[4]  In this case, Plaintiff has directly violated this Court's orders and otherwise engaged in "egregious" misconduct.  As detailed below, his conduct is far worse than a litigant failing to submit a brief, a consent form, or respond to discovery.

Notably, when Jane filed her First Motion to Dismiss (ECF 75) based on Plaintiff's initial disclosure of her name, Plaintiff responded by arguing that dismissal was not warranted because (1) dismissal is reserved for misconduct *like discovery violations that delay the case*, (2) Plaintiff had not been warned that his misconduct could result in dismissal, and (3) lesser sanctions were appropriate to address Plaintiff's misconduct.  (*See* ECF 77 at 4 ("The third and fourth *Brown* factors suggest a concern with discovery violations, and that is not the issue here.  The filing . . . account[s] for no meaningful delay. . . .  [T]here is no disruption of the Court's docket." (emphasis added)); at 3 ("[T]he [P]laintiff has not been placed on notice that his conduct 'would result in a dismissal,' the second *Brown* factor."); at 4 ("[T]here is nothing in the record that suggests the Court has considered a sanction less than dismissal."); *see also* ECF 157-1 at 9 (collecting cases addressing dismissal motions based on procedural violations).  As discussed in detail below, dismissal is now more than warranted under Plaintiff's own standard for dismissal.

---

[4] Many of the plaintiffs in these cases were, unlike Plaintiff, *pro se* and thus afforded extra latitude.  Several of these cases were also decided under Rule 37 instead of Rule 41(b) because the primary misconduct was discovery misconduct.  That is a distinction without a difference and it matters not which avenue the Court takes to consider dismissal in this case, however, because "there is little distinction whether the dismissal is technically made under Rule 41 or Rule 37" because the factors considered under Rule 41 and Rule 37 are analogous.  *E.g.*, *Peters-Turnbull*, 7 F. App'x at 110 (citing, among other cases, *Almonte v. Coca–Cola Bottling Co. of New York,* 169 F.R.D. 246, 249 n. 4 (D.Conn.1996), for the proposition that "[t]he factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37.").  *See also* ECF 157-1 at 10.

## IV.    PLAINTIFF'S ADDITIONAL DISSEMINATION OF JANE'S NAME

Plaintiff has yet again indirectly disseminated Jane's name by encouraging others to publicize Jane's name in direct violation of this Court's orders.  (*See* ECF 91, ECF 119, ECF 265.) He has also apparently directly identified Jane in direct violation of this Court's orders.

### A.    Background Related To This Issue

On June 19, 2024, Judge Garcia prohibited Plaintiff from "directly or indirectly . . . disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform."[5]  (ECF 119 at 15.)  As this Court recently explained:

> "Indirect," means *inter alia*, "deviating from a direct line or course: ROUNADABOUT" and "not straight forward and open:  DECEITFUL." Merriam-Webster's Collegiate Dictionary 634–35 (Federick C. Mish et al. eds., 11th ed. 2009).  "Indirectly" is defined as "[i]n a way that is complicated or not obvious" or "without clearly mentioning or saying something."  *Indirectly*, Cambridge Dictionary,  https://dictionary.cambridge.org/us/dictionary/english/indirectly  (last visited January 24, 2025).  And it is axiomatic that one method of acting "indirectly" is through the conduct of others."

(ECF 265 at 14–15.)  The Court made those comments in explaining that "Plaintiff's [actions] [immediately after Judge Garcia's Order] were designed to and did in fact cause others to act in a fashion that violated the June 19 Order.  He was the impetus behind the disclosure, and through his words and deeds, manipulated his 'followers' to achieve his desired result."  (ECF 265 at 15.)

Plaintiff has again violated Judge Garcia's Order by disseminating Jane's name.  On July 17, 2024, after Judge Garcia entered her Order, Plaintiff emailed a blogger noting that his story had been "covered by" other bloggers, asking "to discuss [his] case a bit," and offering "to provide [the blogger] with appropriate documentations etc."  (**Exhibit A**.[6])  The blogger responded by

---

[5] This Court had previously prohibited Plaintiff from identifying "Jane Doe in any social media communication or elsewhere and" to "remove his posts that reference her identification."  (ECF 91.)

[6] The date of the email does not have a year on it.  There is no question that Plaintiff sent the email in July 2024 (after Judge Garcia's Order) because Plaintiff's email references having previously been "covered by" a different blogger. (Exhibit A.)  That coverage was posted in Fall 2023.  Hence, this email could not have been sent before July 2024.

█████████████████████████████████ includes evidence from this case, ████████████████████████. Given Plaintiff's offer to provide the blogger with "documentation[]," it appears that Plaintiff gave the blogger ██████████████ in violation of Judge Garcia's and this Court's orders that Plaintiff may not "directly or indirectly . . . disclos[e] or reveal[e] Jane Doe's identity" and that "Plaintiff shall not identify Jane Doe." (ECF 119 & ECF 91.)

The blogger interviewed Plaintiff ██████████.[7] Plaintiff discussed, among other things, ██████████████████████ and a chapter ██████████████████ is devoted to that issue. (**Exhibit B**.)  During that discussion, Plaintiff made a number of comments encouraging others to publicize Jane's name.  (Exhibit B.)  He said:

- "My name is all over the media.  *Her name is not*."

- "[The fact that [m]y name is all over the media" and "[h]er name is not" "is *more problematic* from the perspective of I was found not guilty."

- "If you're going to accuse somebody and ruin their life, *your name should be attached* to your lies or your truth."

(Exhibit B (emphasis added).)

Plaintiff publicized ████████████████████████████████████████ ████████████████████████████████████████████. (**Exhibit C**.)  Plaintiff's caption for one of those publications said: ████████████████████████[8]

████████████████████████████████████████████████

████████████████████████████████████████████████

_____

[7] The Video includes the Second Circuit docket number for this case.  Plaintiff thus not only disclosed Jane's identity in violation of this Court's Orders, he also did it in a way that directly links her name to this case.

[8] Plaintiff has also made other publications intended to have his followers publicize Jane's name.  On October 17, 2024, for example, he stated: ████████████████████████████ (**Exhibit D**.)



(**Exhibit E**.)

**B.  Plaintiff's Dissemination Of Jane's Name Warrants Dismissal**

Plaintiff apparently gave a blogger ██████████ and other "documentation[]" after this Court and Judge Garcia prohibited Plaintiff from "directly or indirectly . . . disclosing or revealing Jane Doe's identity" and that "Plaintiff shall not identify Jane Doe."  (ECF 119 & ECF 91.)  That is a direct violation of this Court's and Judge Garcia's Orders.

Plaintiff then made public statements complaining about the fact that his name is all over the media but Jane's name is not, discussing his desire to name Jane, and then ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ .

Everything this Court noted about Plaintiff's prior actions that led to the dissemination of Jane's name at an earlier time is equally true with respect to Plaintiff's more recent actions. Plaintiff was the impetus behind the disclosure.  (ECF 265 at 15.)  He manipulated ████████ , who he knew would be willing to publicize Jane's name, ████████████████

████████████████████████████████████████

██████ .  (ECF 265 at 15.)  Plaintiff's actions "were designed to and did in fact cause others to act in a fashion that violated the June 19 Order" by doing exactly what the Court previously prohibited Plaintiff from doing.  (ECF 265 at 15.)

Plaintiff's actions warrant dismissal.  Plaintiff's obsession with disseminating Jane's name

despite the numerous Orders this Court and Judge Garcia have entered precluding him from doing so constitutes a "sustained and willful intransigence in the face of repeated and explicit warnings from the [C]ourt." *Agiwal*, 555 F.3d at 303. It is also an "abuse[] [of] the process at a level that is utterly inconsistent with the orderly administration of justice" and "undermines the integrity of the process." (ECF 265 at 3 (quotation marks omitted).) This Court previously imposed a lesser sanction for this exact same type of misconduct. (ECF 265.) That lesser sanction not only failed to stop Plaintiff, it seems to have emboldened him; Plaintiff engaged in the exact same conduct which initially led the Court to sanction him ▆▆▆▆ after the Court entered the order. (ECF 265; *see also, e.g.*, *Friends of Animals Inc.*, 131 F.3d at 334 (affirming dismissal where it was "all too apparent . . . that lesser sanctions were ineffective in deterring [] misconduct").) When this Court denied the Second Motions to Dismiss, this Court held that Plaintiff's misconduct "[w]eigh[ed] in favor of dismissal" because "Plaintiff's conduct [came] on the heels of similar conduct for which Defendants sought dismissal." (ECF 265 at 15.) The same is true now. Plaintiff publicized complaints about Jane's anonymity ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and solicited their help in outing Jane. Plaintiff has no respect for this Court or its Orders. He has had more than enough chances. Indeed, when this Court denied the Motions to Dismiss, it did so in part because Plaintiff's misconduct "ha[d] not recurred over the ensuing seven plus months." (ECF 265 at 16.) Yet here we are again.

## V.     Plaintiff's Decision ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Plaintiff has ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ despite (1) the Court's orders that Plaintiff not "directly or indirectly . . . disclos[e] or reveal[e] Jane Doe's identity, including but not limited to on any social media platform" and not identify "Jane Doe in any social media communication or elsewhere and" to "remove his [prior] posts that reference her

identification," and (2) the Court's Decision that Plaintiff's actions in encouraging others to publish Jane's identity was an "egregious" violation of the Court's Orders. (ECF 91, ECF 119, ECF 265.)

As this Court noted in its recent decision (ECF 265), Plaintiff made a series of publications that "were designed to and did in fact cause others to" publicize Jane's name on social media immediately after Judge Garcia's June 19, 2024 Order. (ECF 265 at 15.) ███████████

████████████████████████████████████████████

██

Plaintiff has thus been directly or indirectly identifying Jane ███████████████ in violation of this Court's Orders for the past ████████. Plaintiff's willful decision not to ████ ██████████████ even after this Court held, more than three months ago (on January 29, 2025 (ECF 265)), that Plaintiff's actions were an "egregious" violation of this Court's Order is particularly stunning and demonstrates Plaintiff's contempt for this Court's Orders.

## VI.  PLAINTIFF'S PRODUCTION OF OVER 70,000 PAGES OF DOCUMENTS

On February 27, 2025, as discovery was supposed to be winding down, Plaintiff produced approximately 70,305 pages of additional documents. (**Exhibit G** ("Laurato Aff.") ¶ 4.) Defendants' review of that production has established that the vast majority of those documents are irrelevant to this case. (*E.g.*, Laurato Aff. ¶ 4.) Given the sheer volume of irrelevant documents produced, it is impossible that Plaintiff conducted a good faith review of these documents before producing them. The only reasonable inference is that Plaintiff dumped these irrelevant documents to delay this case and cause inconvenience and expense to Defendants.

### A.  Background Relevant To This Issue

Plaintiff has sought to delay this case at every turn. In April 2024, for example, Plaintiff

filed Motions to extend discovery deadlines from April 2025 to October 2025. (ECF 97; ECF 100; ECF 105.) The Court advised the Parties that it was "very unlikely to move th[e] [S]cheduling [O]rder." (ECF 200 at 54:14–15.)

The Defendants sought to comply with the Court's April 15, 2025 deadline for the close of discovery. (*See* ECF 68.) Judge Garcia ordered the Parties to obtain and then hold dates for depositions beginning March 13, 2025. (*See* ECF 257; ECF 262.) Defendants completed their document production (*see* ECF 262) and Plaintiff, who had by December 2024 produced over 14,000 pages of documents, was supposed to be producing what everyone understood would be a minor production of remaining documents. (*See, e.g.*, ECF 274 (Joint Motion agreed to by all Parties reflecting understanding that Defendants would be able to review forthcoming production in a weekend and thus setting Defendants' expert disclosure deadline for the Monday after Plaintiff's Friday deadline for Plaintiff's supplemental production).)

On February 27, 2025, just weeks before most of the depositions in this case were supposed to take place and weeks before discovery was to close, Plaintiff produced over 70,000 pages of additional documents.

Plaintiff's production put Defendants in an impossible position. They had to choose between moving forward—including allowing their witnesses to be deposed without knowing what was in Plaintiff's 70,305-page production—or agreeing to the extension of deadlines Plaintiff had long sought. Defendants had no meaningful choice except to agree to Plaintiff's request for significant modifications of the Scheduling Order, despite the significant inconvenience to Defendants' witnesses. (*See* ECF 295.)

Plaintiff's 70,000+ page production is so voluminous that Defendants have only recently finished reviewing it. Putting aside that some of the documents are duplicative of what Plaintiff

12

**A-213**

had already produced, **the vast majority of the documents—approximately *85%*—are *not* relevant and non-responsive**. (Laurato Aff. ¶ 4.)

When in doubt, Defendants construed documents as being responsive and relevant even though they may not be. (Laurato Aff. ¶ 5.) Even with that overly generous approach, approximately 85% of the documents are irrelevant and non-responsive. A non-exhaustive list of categories of documents that have no relevance to this case includes, but is not limited to:

- Hardcore pornography, including two videos and two photos;

- Spam emails, including emails from Amazon, Walmart, iTunes, etc. advertising products and/or services, such as the services of Walmart's photography center, advertisements for Bed Bath & Beyond, computer anti-virus software, and Words with Friends;

- Restaurant recommendations for restaurants in California;

- Uber receipts for Ubers Plaintiff took around New York;

- Credit card payment reminders;

- Newsletters, including newsletters from organizations like the American Society for the Prevention of Cruelty to Animals and alumni newsletters from The Hotchkiss School, as well as weekly newsletters from Yale's Office of International Students;

- Yale email announcements that have nothing to do with this case, such as announcements about campus events that occurred years before the events underlying this case;

- Other email announcements promoting events that have nothing to do with this case, such as an announcement for a conference at the University of Pennsylvania;

- At least 11,897 emails related to Families Advocating for Campus Equality ("FACE"), an organization that advocates for students accused of sexual misconduct, that almost exclusively have nothing to do with this case, such as an email sharing a poem someone's son wrote[9];

- A variety of other, miscellaneous, documents, such as a call for papers for a conference years before the underlying events of this case, an email about picking up t-shirts, etc.

---

[9] A small number of FACE emails relate to this case (largely the criminal trial), but most FACE emails are irrelevant.

**A-214**

(*See, e.g.*, Laurato Aff. ¶ 6.)[10]

Plaintiff's counsel has conceded during meet and confers that some of these documents (such as the pornographic materials) were mistakenly produced. But it cannot be the case that the other tens of thousands of additional unresponsive and entirely irrelevant documents were included due to an honest mistake.

Instead, the only reasonable inference is that Plaintiff intentionally loaded his production with thousands of irrelevant documents in order to prejudice Defendants on the eve of depositions in order to force a delay of this case. This was a classic "document dump" designed to distract the Defendants from the important work in this case and to cause the delay Plaintiff has long been seeking. Plaintiff had sought to delay this case since at least April 2024. (*E.g.*, ECF 105.) The Court did not grant Plaintiff's requested extension and indicated it would not materially change the Scheduling Order. (*E.g.*, ECF 200 at 54:14–15.) Plaintiff knew that the depositions of Yale witnesses were imminent. (*E.g.*, ECF 262.) Having failed to obtain his desired extension through proper means (a Motion), Plaintiff decided to obtain the extension by dropping tens of thousands of pages of irrelevant documents on Defendants. He knew Defendants could not possibly sort through them to determine what was relevant in time for the impending depositions. He also knew it would be impossible for Defendants to make an informed and timely evaluation of whether to file a motion to compel given the vast number of documents they would need to review. The goal was clear: He wanted to compel Defendants to agree to a significant extension to avoid being unfairly prejudiced.

---

[10] Ironically, it also appears that Plaintiff's production was underinclusive. Plaintiff gave Defendants electronic messages that contained the search terms Defendants asked for, but not other messages from those same conversations. For example, Plaintiff produced a single message that shows he was talking to someone about Jane, but not the other messages in that discussion, apparently because the other messages did not include the search terms Defendants asked for, even though those additional messages contained discoverable information.

Defendants do not lightly contend that this conduct was intentional. But the evidence is overwhelming. Indeed, Plaintiff's counsel represented to Judge Garcia that he "review[ed] everything" in the production before sending it. (ECF 293 at 6:25.[11]) This was not an accident.

## B. Dismissal Is More Than Warranted

As discussed in more detail below, the only meaningful sanction is dismissal of this case. Nothing else has deterred Plaintiff from engaging in misconduct.

It is a flagrant abuse of the judicial process and utterly inconsistent with the orderly administration of justice for a party to delay a case by deploying a dump of thousands of pages of irrelevant documents at the eleventh hour. (*See, e.g.*, ECF 265 at 3.) This tactic is especially egregious because the Court had denied Plaintiff's request for an extension and yet Plaintiff devised a scheme to frustrate the Court's order.

Moreover, not even one month elapsed between this Court sanctioning Plaintiff for "egregious" misconduct and Plaintiff engaging in additional egregious misconduct. (*See* ECF 265 at 15 (holding that Plaintiff's misconduct "[w]eigh[ed] in favor of dismissal" because "Plaintiff's conduct [came] on the heels of similar conduct for which Defendants sought dismissal.").) Plaintiff barely escaped dismissal, was warned and given a lesser sanction. *See, e.g.*, *Loc. Union No. 40*, 88 F. Supp. 3d at 266 ("[T]he Second Circuit has repeatedly upheld dismissal as an appropriate sanction where the non-compliant parties were warned of the possibility."). But it is clear that only dismissal will stop Plaintiff's misconduct. The lesser sanction has had no deterrent effect. *E.g.*, *Friends of Animals*, 131 F.3d at 334 (affirming dismissal where it was "apparent" "that lesser sanctions were ineffective"). To the contrary, it seems that Plaintiff was emboldened to engage in additional misconduct.

---

[11] "[S]o to answer your question, in terms of searching for their key words, they asked for a lot of key words. There were thousands and thousands of things that came up. We did go through all of those and we did review everything."

This Court denied the Second Motions to Dismiss in part because the "[P]arties ha[d] been working closely with Judge Garcia to complete discovery and the case [was] proceeding towards an adjudication on the merits." (ECF 265 at 16.) The ink was barely dry on that statement when Plaintiff's further misconduct occurred. Plaintiff intentionally destroyed Judge Garcia's carefully crafted plan for depositions, the close of discovery, and the advancement of this case. A severe sanction is necessary not only because of Plaintiff's "egregious" misconduct, but also because there is a need "to deter those who might be tempted to such conduct [to delay other cases] in the absence of such a deterrent." (ECF 265 at 3.) Many other litigants would surely like to delay a case by dumping irrelevant documents on their opponent.

Dismissal is now warranted under Plaintiff's own standard. (*See* ECF 77 (Plaintiff arguing that dismissal is reserved for things like discovery violations that delay the case).) Producing over 70,000 pages of largely irrelevant documents when discovery is about to close is an egregious discovery violation that plainly delayed this case. Plaintiff had been warned over and over again about the prospect of dismissal. (*E.g.*, ECF 119 at 15; *Obot*, 254 F. App'x at 58 ("[I]t is difficult to imagine how a dismissal following an unheeded warning could be an abuse of discretion.").) Lesser sanctions have failed to stop Plaintiff's misconduct. (ECF 265.)

## VII. PLAINTIFF'S FALSE AND MISLEADING INTERROGATORY RESPONSES

Plaintiff also lied and misled Defendants in his interrogatory responses. Jane asked him to disclose other sexual misconduct he had been accused of, and Plaintiff swore that he had only been accused of sexual misconduct by (1) Jane, and (2) Peter Roe. We now know that Plaintiff lied in that response; discovery confirms Plaintiff was aware he had been accused of sexual misconduct by several other women.

16

A.  **Background Related To This Issue**

1.  *Jane's Discovery Requests*

In January 2024, Jane issued discovery requests to Plaintiff.  (**Exhibit H**.)   Jane's

interrogatories included the following interrogatory:

> Please identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them and please identify all documents and communications, other than communications with your attorneys, regarding all such allegations, statements, and/or assertions of sexual misconduct against you.

(Exhibit H at 5.)

> Jane defined "sexual misconduct" broadly and in accordance with Yale's definition as:

> sexual assault (which includes rape, groping, and any other non-consensual sexual contact), sexual harassment, intimate partner violence, stalking, and any other conduct of a sexual nature that is non-consensual, or has the purpose or effect of threatening or intimidating a person or persons.

(Exhibit H at 2; *see also* **Exhibit I** (establishing that this is Yale's definition).)

> Jane also sought:

> All documents and communications, other than communications with your attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct, including but not limited to all allegations, statements, and assertions identified in response to Interrogatory 10 identified above.  This Request also includes authorizations sufficient to obtain all documents requested in this Request.

(Exhibit H at 9.)

Plaintiff waived any objections to Jane's discovery requests.  *See* Fed. R. Civ. P. 33(b)(4).

Plaintiff responded to Jane's interrogatory regarding sexual misconduct by identifying only

two individuals:  Jane and Peter Roe.  (**Exhibit J** at 21.)  Plaintiff did not identify any of the at

least seven other individuals who had made allegations against him.

In response to Jane's document request concerning other sexual misconduct, Plaintiff

17

directed Jane to what was at that time his entire production of 10,363 pages. (Exhibit J at 5.) With the exception of documents related to the alleged sexual assault in Washington D.C., and to the best of counsel's belief without again reviewing all of those documents, none of those documents appear to have anything to do with other misconduct allegations against Plaintiff, except one document which contains a link to the *Yale Daily News* article about the YCC allegations.

### 2. The Spring 2013 Complaint Against Plaintiff

In Spring 2013, more than two years before the events giving rise to the present case, a woman ("Sally Roe 2"[12]) complained to Plaintiff's Residential College Dean and Academic Advisor that Plaintiff had grabbed her and forced himself on her. (**Exhibit K**.) Sally Roe 2 asked Plaintiff's Dean to talk to Plaintiff about her allegations and the Dean met with Plaintiff, discussed his behavior with him, and Plaintiff "realized that his behavior was not appropriate." (Exhibit K.) At the Dean's suggestion, Plaintiff wrote an apology email. (*E.g.*, Exhibit K.) In discovery, Plaintiff produced mental health counseling records that confirm Plaintiff was aware of this matter before he responded to Jane's interrogatory. This shows conclusively that Plaintiff knowingly submitted a false response to Jane's interrogatory by failing to disclose Sally Roe 2's complaint.

### 3. The Spring 2014 Complaint Against Plaintiff

In Spring 2014, a woman ("Sally Roe 1"), complained about an incident involving Plaintiff that occurred "in March or April 2013." (**Exhibit L**.) Sally Roe 1 alleged that Plaintiff grabbed her, started making out with her in a forceful way, and tried to take her clothes off. (Exhibit L.) She also alleged that Plaintiff asked her numerous times for sex, oral sex, etc. and that she repeatedly said no. (Exhibit L.) Sally Roe 1 also reported that Plaintiff ███████████████ ███████████████████████████████████████████ and that he "persistently

---

[12] The "Sally Roe" designations herein are the designations Defendants have given the "Sally Roes." (*See* ECF 197.)

18

texted" her after this incident  (Exhibit L.)

On April 27, 2014, a Yale faculty member, one of the individuals to whom Sally Roe 1 made her report, emailed Plaintiff asking him to meet to discuss an informal UWC complaint that had been made against Plaintiff.  (Exhibit L.)  Plaintiff met with the faculty member and others and recalled ███████████████████████████████████████████████████ ████████ and otherwise denied the allegations.  (Exhibit L.)  Plaintiff agreed to receive training from Yale's Sexual Harassment and Assault Response & Education ("SHARE") Center.  (Exhibit L.)  Plaintiff then failed to properly complete that training and Plaintiff's Dean had to talk to Plaintiff about his failure to complete the training.  (Exhibit L.)  Given his repeated, documented conversations about this matter, Plaintiff was certainly aware of this alleged incident when he answered Jane's interrogatory, and his decision not to disclose it was intentional.

4.    *The Yale College Council Meeting*

In Spring 2014, Plaintiff stopped a meeting of Yale's College Council ("YCC") (Yale's student government) to address allegations that he had engaged in sexual misconduct.  (**Exhibit M.**)

As a subsequent *Yale Daily News* article reported, Plaintiff took the floor of the meeting to: "Excoriate a fellow YCC representative . . . [by] accusing her of leveling false accusations of sexual misconduct against him . . . ."  (Exhibit M.)  The *Yale Daily News* interviewed the representative who made the allegations against Plaintiff.  (Exhibit M at 4–5.)  She reported hearing "that multiple female students had considered reporting [Plaintiff] for sexual misconduct" and described her reaction to Plaintiff confronting her about the allegations against him during the YCC meeting.  (Exhibit M at 4–5.)

YCC's President in 2014 told the *Yale Daily News* that

19

**A-220**

He and the other members of the YCC in the room did not expect that [Plaintiff] would begin forcefully accusing [another YCC representative] of bullying him . . . with accusations of sexual misconduct.

(Exhibit M.)  YCC's President also told the *Yale Daily News* that he reported the allegations against Plaintiff to, *inter alia*, Yale's Title IX Coordinator.  (Exhibit M at 3–4.)

Plaintiff was aware of the *Yale Daily News* article recounting these allegations before this case began.  He had associates monitor media articles related to him and email him links to those articles.  (**Exhibit N**.)  The link to this article appears in one of those emails.  (Exhibit N (1752).) This is more proof that Plaintiff lied when responding to Jane's interrogatory.

     5.     *The November 2017 Allegations*

The same *Yale Daily News* article also reported on "a separate Facebook post earlier [that] month [*i.e.*, in November 2017] [in which] a current Yale student wrote that [Plaintiff] made forceful advances on her and offered her drugs."  (Exhibit M at 3.)  The article went on to detail a student who was "a first year" "two years after the YCC" incident (*i.e.*, someone other than the individual(s) involved in the above allegations) who posted about Plaintiff allegedly "making advances on her" that included "offer[ing] her drugs."  (Exhibit M at 6–7.)  As previously noted, Plaintiff was aware of this *Yale Daily News* article before this case began, and therefore likely intentionally omitted this allegation from his interrogatory responses.  (Exhibit M.)

     6.     *The December 2017 Allegations*

On December 1, 2017, another woman ("Sally Roe 4") made allegations against Plaintiff related to an incident that occurred in April 2015.  Sally Roe 4 reported, among other things, that Plaintiff pushed her against a wall, tried to hold her hand, and asked her personal questions about her virginity and romantic life.  (**Exhibit O**.)  She also alleged that Plaintiff insisted on taking her to his room and offered her "pills" once they were there.  (Exhibit O.)  Plaintiff was aware of these

allegations before this case began because, as detailed below, he discussed them with a Yale mental health professional.

### 7.     The March 2018 Allegations

In March 2018, yet another woman ("Sally Roe 5") alleged that Plaintiff had attempted to grope her by putting his hand under her clothes and had ███████████████████ (**Exhibit P**.) As discussed below, Plaintiff was aware of these allegations because he discussed it with a mental health professional.

### 8.     The April 2018 Allegations

In April 2018, a different woman ("Sally Roe 6"), alleged that Plaintiff sexually harassed her and other Yale students by making them feel uncomfortable and "creeped out" by looking through photos she had posted on Facebook and "liking" a photo of her in a bikini.[13] (**Exhibit Q**.) Plaintiff was aware of this allegation because he discussed it with the mental health professional.

### 9.     The August 2018 Allegations

In August 2018, yet another woman ("Sally Roe 7") alleged that Plaintiff sexually harassed her by commenting "does she [*i.e.*, Sally Roe 7] want to be sexually assaulted?" while or after she was riding in an elevator with Plaintiff (the "Elevator Complaint") (**Exhibit R**.) Sally Roe 7 said she learned about Plaintiff's purported comment from one of Plaintiff's friends. (Exhibit R.) Plaintiff was aware of this allegation before he responded to Jane's discovery requests because, as discussed in detail below, he referenced this "Elevator Complaint" in a media appearance.

### 10.     The Peter Roe/Sophie Allegations

In October 2018, the *Yale Daily News* published an article about allegations that Plaintiff sexually assaulted Peter Roe and a woman (whom the article referred to as "Sophie"). The article

---

[13] As discussed below, Jane's interrogatory required that Plaintiff disclose sexual harassment allegations.

21

**A-222**

described an alleged threesome involving Plaintiff, Peter Roe, and Sophie. (**Exhibit R**.) The article detailed Sophie's allegations, including describing that during the sexual encounter, Plaintiff "approached her from behind, restrained her and began forcing wine down her throat" and hit her "'really, really hard—like way too hard" in a way that "left some pretty unacceptable marks on" her face. (Exhibit R at 13.) Plaintiff is aware of this article and, thus, Sophie's allegations that he sexually assaulted her. (*E.g.*, Exhibit R.) While Plaintiff included Peter Roe in his interrogatory response, he falsely omitted Sophie's complaint about him when he verified his interrogatory responses under oath.

### 11. Plaintiff Discusses Allegations With A Mental Health Professional

In late 2018, Plaintiff discussed with a mental health professional the incidents with Sally Roe 1, Sally Roe 2, Sally Roe 4, Sally Roe 5, Sally Roe 6, and Sally Roe 7 (as well as allegations made by several other individuals). As that health professional's report explains, the substance of those allegations had been relayed to the health professional by Plaintiff's Dean and/or one of Yale's Title IX Coordinators. (Exhibit S at 17.) Plaintiff told the mental health professional the following:

> The first had occurred during his freshman year in which the Dean reported that a woman had not wanted to make a formal complaint but had felt pressured by [Plaintiff]. He said that he did not remember the exact details of the situation but did not disagree that he [] sent [an] email to her apologizing and did not make any attempts to see her. In terms of the program that he was referred to for sexual harassment training, he said he did not recall it as being a group but that he was referred to a person with whom he made an appointment and then made several other attempts to see him. When he did not appear, they exchanged emails and had a subsequent meeting. After that second meeting he said he was not given any other instructions for future meetings. He reported that he turned over the emails to investigators a number of months ago.

(Exhibit S at 17.)

Plaintiff was aware of these allegations because he discussed them with his provider, who

22

separately summarized them in a report. Plaintiff has had a copy of this report since 2018 and, even if he had somehow forgotten about these allegations, he surely would have been reminded about them when reviewing this important document in the context of this litigation. (*E.g.*, Exhibit S.) This is yet more proof that Plaintiff's omissions were intentional.

12. *Plaintiff's Statements About Allegations Against Him*

In Fall 2023, before Plaintiff verified his responses to Jane's interrogatories, Plaintiff acknowledged that he was aware of a litany of complaints against him. In a video of Plaintiff after his return to Yale following his criminal trial, Plaintiff states that "there were about twenty different complaints against" him. The video can be accessed ▮▮▮▮ Plaintiff even referenced the Elevator Complaint (where Plaintiff allegedly said or texted: "Does she want to be sexually assaulted?"), stating there was a complaint to the effect of: "He was in the elevator with me, I felt uncomfortable. Kick him out." (*See* ▮▮▮▮

All of this is further proof Plaintiff lied in his response to Jane's interrogatory.

13. *Jane Confronts Plaintiff About The Omissions, But Plaintiff Doubles Down*

In August 2024, Jane sent Plaintiff a discovery deficiency letter (**Exhibit T**) noting:

Interrogatory #10: We believe Plaintiff's response is deficient and request that he supplement it. For example, if you click here, you will see a video of Plaintiff saying that "there were about twenty different complaints against him" after his return to Yale. Please have Plaintiff identify the individuals who made complaints, allegations, etc. of sexual misconduct against him. Please have Plaintiff "identify all documents and communications, other than communications with [his] attorneys, regarding all such" complaints, allegations, statements, etc. to the extent that he cannot produce those documents and communications (see below and Jane's Request for Production #10 (requiring production of such documents and communications)). There is no need to identify or list documents and communications that Plaintiff produces.

. . . .

Request #10: We believe that Plaintiff's production of documents concerning other allegations of sexual misconduct against him is deficient. (See our discussion of

23

**A-224**

Interrogatory #10 above.) Please have Plaintiff produce all documents and communications (other than communications with his attorneys) concerning all allegations, statements, and assertions that he engaged in sexual misconduct with anyone other than Jane.

(Exhibit T.)

Counsel met and conferred on these and other issues. Counsel for Plaintiff represented that Plaintiff had conveyed to his counsel that Plaintiff was not aware of any sexual misconduct allegations other than Jane's and Peter Roe's allegations.

## B. Plaintiff Lied In His Interrogatory Responses

The discussion above and corresponding exhibits establish that Plaintiff was aware of a litany of other sexual misconduct allegations against him but failed to disclose those allegations in response to Jane's discovery requests. Plaintiff has no excuse for not disclosing those allegations. Plaintiff waived all objection to Defendants' discovery requests. Fed. R. Civ. P. 33(b)(4); *see also* Fed. R. Civ. P. 41(b) (noting that dismissal may be based on violation of Rules as well as Orders); Fed. R. Civ. P. 37(d). Plaintiff's actions are outrageous, particularly in light of Plaintiff's other misconduct and his acknowledgment in response to Jane's first Motion to Dismiss that discovery misconduct can warrant dismissal. (ECF 77; *see also* cases cited *supra* (dismissing cases for discovery violations).) Plaintiff knew that these allegations are highly problematic for him and decided he would not only not tell Defendants about them, but that he would swear under oath that the only two allegations of sexual misconduct he was aware of were Jane's and Peter Roe's. Plaintiff tried to hide unfavorable evidence. Even more outrageously, when Jane called Plaintiff out for not fairly responding to her requests, Plaintiff doubled down, claiming he was unaware of any other allegations. *E.g.*, *Febres*, 2020 WL 2494724 at *2 (noting that actions by defendant such as filing motions can apprise plaintiff of risk of dismissal for misconduct). Defendants still do not know whether they are aware of all allegations against Plaintiff and have no way of knowing

24

**A-225**

whether Plaintiff may be aware of additional allegations of sexual misconduct.  And Defendants have no idea what else Plaintiff may have lied to them about.  Dismissal is warranted.

## VIII. PLAINTIFF'S APPARENT MISREPRESENTATION TO JUDGE GARCIA

Plaintiff made a misrepresentation to his counsel and Judge Garcia regarding purported advice he received from his immigration attorney in an attempt to convince Judge Garcia to allow Plaintiff to release Jane's name to immigration officials.

### A. Background Related To This Issue

It is important to note that Plaintiff previously made other misrepresentations directly to this Court.  As discussed in more detail in Jane's Second Motion to Dismiss, Plaintiff lied to this Court when he addressed the Court during the March 18, 2024 hearing and denied, among other things, harassing Jane.  (*See* Second Motion at 4–5; *compare* ECF 94 (Transcript Of March 18, 2024 Hearing) 21:4–6; 21:9–11; 21:19–20, *with* ECF 114).)  This Court subsequently recognized that Plaintiff was "dishonest" during that hearing.  (ECF 200 (Transcript Of July 25, 2024 Hearing) 46:11–13 ("[Y]our client sat in that chair three months ago and was dishonest with me.").)

This Court's admonishment had no effect on Plaintiff. He falsely represented that his immigration attorney advised him to respond to a request from immigration officials by producing documents containing Jane's name in an effort to disseminate Jane's name.

As the Court will recall, in 2024, Plaintiff received a request from the United States Citizenship and Immigration Services ("USCIS") for the "official transcript" from his criminal trial. (*E.g.*, ECF 204.) ███████████████████████████████████

███████████████████████████████████████████████████████

██████████ (*E.g.*, ECF 205.)  As part of that effort, Plaintiff made an "advice of counsel" argument: "Plaintiff believes that his best course of legal action is to rely on advice of immigration

counsel and submit the requested documents as he submitted them in 2021. Not modified versions—the same documents." (*E.g.*, ECF 205 at 5; *see also* ECF 205 at 11 ("In this case, Plaintiff has been advised by his retained immigration counsel to submit the same documents he submitted in 2021. No one should interfere with that representation.").)

Judge Garcia scheduled a hearing and ordered Plaintiff's immigration attorney to attend. (ECF 209 ("Plaintiff[']s immigration counsel will attend the hearing.").) Plaintiff brought Attorney Glenn L. Formica to the hearing. (ECF 220 (Transcript Of October 21, 2024 Hearing) 4:20–22.) Rather than confirm Plaintiff's representation, Attorney Formica informed Judge Garcia that he had "effectively . . . not represented [Plaintiff] in years." (ECF 220 8:8; *see also* ECF 220 8:19–21 ("And then again last night by email [Plaintiff] confirmed that I was no longer his attorney because I think it was important since I was sort of in the middle."); 8:22–24 ("So that's a long explanation to say I'm no longer his attorney and haven't been his attorney for years.")

Jane's counsel then expressed grave concern about the inconsistency between what Plaintiff had told Judge Garcia and what Attorney Formica had told Judge Garcia. (ECF 220 19:23–20:12.) In response, Plaintiff's counsel suggested that Plaintiff received the purported advice to submit the prior documents from a different immigration attorney that Plaintiff chose not to bring to the hearing in response to Judge Garcia's Order requiring his immigration attorney to attend. (ECF 220 25:3–26:4.) After conferring with Plaintiff, Plaintiff's counsel then noted that Plaintiff had "noted that he is pro se" in his immigration case. (ECF 220 32:6–7; *see also* ECF 220 31:14–16 (The Court: "[H]e doesn't have another [i]mmigration lawyer who is going to be submitting these documents on his behalf?" Plaintiff's Counsel: "Not to my knowledge."). Plaintiff has since confirmed his *pro se* immigration status by filing a *pro se* mandamus action related to applications he has made to immigration officials. *See Khan v. Noem*, No. 3:25-cv-

26

00471-KAD (D. Conn.). To sum it up, Plaintiff appears to have willfully lied to this Court about receiving advice from an immigration lawyer.

### B. Plaintiff's Gamesmanship Regarding Immigration Advice – And His Other "Dishonesty" With The Court Warrants Dismissal

Plaintiff's apparent lies about the alleged advice from an immigration attorney warrant dismissal. *See, e.g.*, *Shepherd*, 921 F.3d at 89 (affirming dismissal where plaintiff omitted reference to certain prior lawsuits he had filed to attempt to obtain *in forma pauperis* status he was barred from receiving). That is particularly true because this is at least the second time that Plaintiff has been "dishonest" with the Court and the Court's prior admonishment of Plaintiff clearly had no effect in changing his willingness to lie. (ECF 200 at 46:11–13.) Indeed, this Court denied the Second Motions to Dismiss in significant part because it believed that Plaintiff had not engaged in any additional misconduct following his June 2024 violation of the Court's orders. (*See* ECF 265.) It appears that is not, in fact, the case.

### IX. PLAINTIFF'S DECISION TO OTHERWISE MISLEAD OUR COURTS

Discovery has established that Plaintiff misled our Courts by asserting that he lacked an adequate record of the UWC Proceedings even though that is not the case.

Based on representations by Plaintiff, the Connecticut Supreme Court concluded that Plaintiff's "ability to appeal was severely constrained by the absence of any transcript or recording of statements, testimony, or questions raised during the UWC [H]earing." *Khan v. Yale Univ.*, 347 Conn. 1, 46, 295 A.3d 855, 883 (2023); *see also, e.g.*, *Khan v. Yale Univ.*, 85 F.4th 86, 95 (2d Cir. 2023) (quoting the Connecticut Supreme Court's conclusion).

In actuality, Plaintiff has been sitting on a recording of the UWC Hearing (and his UWC Fact-Finder Interview) since before this case began. Plaintiff only disclosed the existence of those recordings in documents he produced.

On September 28, 2020, Yale served discovery requests to Plaintiff. (**Exhibit U**) Yale's requests for production sought, among other things, the following:

> Please provide a copy of any memorandum, correspondence, transcript, audio or videotape recording or any other document or tangible item in plaintiff's custody or control which captures any conduct or conversation of any of the defendants or any agent, servant or employee of any of the defendants that is relevant or material to any of the allegations of plaintiff's complaint or to plaintiff's claim for damages.

(Exhibit U at RFP 22.)

On or about May 20, 2024, Plaintiff responded and did not object to this request. (**Exhibit V** at 6.) While his response states, "see enclosed production," Plaintiff did **not** produce any transcript or related audio or video recordings until pressed by Defendants for a more complete response. On or about February 5, 2025, Plaintiff produced redacted transcripts of his recordings of the UWC proceeding.[14]

In October 2024, when Plaintiff had disclosed the existence of the recordings but had not yet produced them, Plaintiff relied on the Connecticut Supreme Court's and Second Circuit's conclusions regarding the alleged lack of "an adequate record for review." (ECF 218 at 4.)

Plaintiff's actions in leading numerous Courts to believe that he was "severely constrained by the [alleged] absence of any . . . recording" while he had recordings of the proceedings is another example of egregious misconduct and Plaintiff's disdain for our Courts. *Shepherd*, 921 F.3d at 89.

And Plaintiff's actions vis-à-vis this Court are in addition to the fact that Plaintiff improperly (in violation of Yale's rules, etc.) and secretly recorded UWC proceedings, and lied to the UWC panel about doing so. As Plaintiff's secret recording shows, the Chair of the UWC panel, Sarah Demers, informed all participants at the start of the proceedings that "no participants in a

---

[14] The redactions concern purported privileged conversations Plaintiff had with his counsel during the UWC Proceedings. The existence of these redactions raises questions about Plaintiff's representations regarding the ability of his attorney to assist him during the UWC Proceedings, which was another quasi-judicial immunity issue.

UWC hearing may record or transmit these proceedings." (**Exhibit W** at 12.)  In addition, before

Plaintiff provided his opening statement, Ms. Demers had the following colloquy with Plaintiff:

> MS. DEMERS: Alright. Thank you. Saif, would you and your advisor please confirm that you are not recording or transmitting this hearing?
>
> MR. KHAN: Yes, I confirmed with my advisor earlier. We're not recording this.
>
> MS. DEMERS: Okay.
>
> MR. KHAN: I – yes, he's not either.

(Ex. W at 19 and 20.)

A reminder to Plaintiff that he "must be honest with the committee" or face a more severe

penalty or additional charges apparently fell on deaf ears. (Ex. W at 20.)  Plaintiff does and says

what Plaintiff wants.

## X.     ADDITIONAL MISCONDUCT

Plaintiff has also engaged in other misconduct.  For example, and as set forth in more detail

in Defendants' Motions to Compel Plaintiff's privilege log entries relating to Mr. Roe (ECF 322

& ECF 325), Plaintiff has made a baseless claim that scores of communications with his friend,

who is not an attorney, are privileged.  Plaintiff claims, among other things, that Mr. Roe was part

of his criminal defense team, but Plaintiff's criminal defense attorney disavowed that claim and

did so in a document that Plaintiff reviewed before it was submitted.  The claim to privilege

regarding Mr. Roe being part of the criminal defense team is baseless.  This is further misconduct.

## XI.    DISMISSAL IS MORE THAN WARRANTED

The examples of misconduct described above individually warrant dismissal.[15]  That is

---

[15] The misconduct cited above is non-exhaustive.  As an additional example, Plaintiff provided authorizations for certain medical records, but then told one of his providers not to release records.  Defendants learned about this issue when the provider informed them that she could not release the records even with the authorization Defendants had provided because of instructions she had received from Plaintiff.  Defendants ultimately obtained the records after involving Plaintiff's counsel in this issue.

particularly true because of Plaintiff's extensive and egregious prior misconduct. (*E.g.*, ECF 265.) *See Selletti*, 17 F. App'x at 21 (affirming dismissal where "pattern" of misconduct persisted and justified dismissal "whether considered alone or in the aggregate with his previous conduct"). But the Court cannot consider the misconduct above in isolation. It must instead evaluate "dismissal in light of the record as a whole." *Febres*, 2020 WL 2494724, at *2; *see also, e.g., Smith*, 2025 WL 986122, at *4 (dismissing case where plaintiff's "difficulties are not limited to any discrete issue or shortcoming that the Court could correct with incremental measures."). When considered cumulatively, Plaintiff's actions constitute an "abuse[] [of] the [judicial] process at a level that is utterly inconsistent with the orderly administration of justice [and] undermines the integrity of the process," demonstrates "flagrant disregard of court orders," and "amount[s] to [a] sustained and willful intransigence in the face of repeated and explicit warnings." (ECF 265 at 3; *Blue*, 2021 WL 5770017, at *1, *Aigwal*, 555 F.3d at 303.

The factors normally considered in conjunction with dismissal are of limited relevance to Plaintiff's unprecedented misconduct because those factors largely concern the less egregious misconduct of failing to engage in discovery, etc. *See, e.g., Conquistador v. Martin*, No. 3:19-CV-1965 (KAD), 2024 WL 2746893, at *1. To the extent that the factors are relevant, however, they overwhelmingly support dismissal, as Plaintiff acknowledged in a prior filing. (ECF 77.)

### A. Plaintiff Has Caused Significant Delay

Plaintiff has caused significant delay to this case. *See, e.g., Davis*, 2019 WL 5696019, at *3 (dismissing case where plaintiff's "conduct [] caused a significant delay in the progress of the case"). In July 2024, this Court observed that "the amount of money and time and effort that has been spent in the last three or four months litigating [Plaintiff's] conduct outside the confines of this litigation is ridiculous. It's ridiculous." (ECF 200 at 9:7–10.) The Court also noted that this

case would "be in a very different place than where [it was then]" "if everybody would just focus their attention on discovery, completing discovery, getting the case to trial," but that the Parties could not do that because, as the Court noted "that [was] not [Plaintiff's] agenda."  (ECF 200 at 9:11–14.)  Things have only gotten exponentially worse since the Court made those statements. The moment the Court declined to dismiss this case, Plaintiff disseminated Jane's name again, delayed this case for months by dropping 70,000+ pages of irrelevant documents on Defendants, and engaged in other misconduct that has once again required an enormous amount of time to be diverted away from discovery.

## B.    Plaintiff Has Been Warned Again And Again

Plaintiff has also persisted in misconduct despite a litany of warnings of dismissal in:

- Jane's First Motion To Dismiss (ECF 75)[16];

- Jane's Reply In Further Support Of Her Motion To Dismiss (ECF 79);

- The Court's Comments On March 18, 2024 (*E.g.*, ECF 94 at 8–9:9; 13:23–14:19[17]);

- Judge Garcia's June 19, 2024 Ruling And Order (ECF 119 at 15;[18] *see also* ECF 265 at 1);

- Judge Garcia's Comments On June 20, 2024 (*E.g.*, ECF 150 at 8:15–25[19]);

---

[16] It is well-established that warnings of prospective dismissals need not be from the Court and can instead be from a motion, etc. filed by an opposing party. *See, e.g.*, *Febres*, 2020 WL 2494724, at *2 ("[T]he instant motion to dismiss has itself apprised the Plaintiff that further delay will result in dismissal."); *Dodson*, 957 F. Supp. at 470 ("The second factor—whether plaintiff received sufficient notice that his case would be dismissed—[also supports dismissal]. Defendant's September 8, 1992, letter to plaintiff notice plaintiff of defendant's intent to move for a Rule 41(b) dismissal for failure to prosecute."). Regardless, both the Court and Defendants have provided ample warnings.

[17] The Court's comments admonishing Plaintiff and expressing its concerns put all who heard them, including Plaintiff, who was physically present, on notice that dismissal could result from misconduct.

[18] "Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, *including but not limited to dismissal*." (emphasis added).

[19] "I would just caution you because I think Judge Dooley has been quite clear.  And I think my order is quite clear that any violation of my order could lead to sanctions, *which could include dismissal of your claims* against Jane Doe and potentially Yale. . . .  [T]he orders are orders of the Court.  They're expected to be followed.  And if they're not followed, there are significant potential repercussions." (emphasis added).

31

- Jane's Second Motion To Dismiss (ECF 123-1);

- The Yale Defendants' Motion To Dismiss (ECF 130-1);

- Jane's Reply In Further Support Of Her Second Motion To Dismiss (ECF 166);

- The Yale Defendants' Reply In Further Support Of Their Motion To Dismiss (ECF 171);

- The Court's Comments On July 25, 2024 (*E.g.*, ECF 200 at 7:4–10:16[20]);

- The Protective Order Plaintiff signed (ECF 197[21]); and

- The Court's January 29, 2025 Memorandum Of Decision.[22]

This Court and Judge Garcia have given Plaintiff far more opportunities to stop his misconduct and far more warnings than even unrepresented parties receive. *See, e.g.*, *Agiwal*, 555 F.3d at 303 (affirming dismissal and holding that Court "exceeded what was required" where Court gave far fewer warnings than this Court and Judge Garcia have given); *Conquistador*, 2024 WL 2746893, at *3 (dismissing case where plaintiff "was given notice on no less than there occasions that further failure to comply with the Court's orders could result in dismissal of th[e] action").

### C.    Defendants Have Been And Will Continue To Be Prejudiced

Defendants have been and will continue to be prejudiced. Prejudice is presumed because of the delays Plaintiff has caused. *E.g.*, *Peters-Turnbull*, 7 F. App'x at 110; *Dodson*, 957 F. Supp. at 470. As the Court has noted, the Parties cannot focus on litigating this case because of Plaintiff's

---

[20] "*Dismissal of these claims as a sanction is the most severe sanction that I could mete out, and I haven't decided what to do about this situation.* I just know it has to end one way or another—whether by court order; by the end of the litigation, which we know is what the Defendants are asking. I don't know what the right answer here is. But I know it has to stop. . . ." (emphasis added).

[21] "I understand that if I disseminate any documents or information designated "CONFIDENTIAL" or access or attempt to access any documents or information designated "CONFIDENTIAL – NOT FOR PLAINTIFF'S EYES," I will be subject to sanctions by the Court, *including but not limited to dismissal with prejudice* of all of my remaining claims, and other sanctions and penalties." (emphasis added).

[22] The Court's recitation of relevant law regarding bad faith conduct was alone sufficient to yet again warn Plaintiff that further misconduct might lead to dismissal. The Court's conclusion that Plaintiff's known misconduct to date was "egregious" also alerted Plaintiff that any additional misconduct likely would result in dismissal.

misconduct. (ECF 200 at 9:11–14; *see also Conquistador*, 2024 WL 2746893, at *3 (defendants prejudiced because "they wasted time and resources appearing at three status conference at which Plaintiff did not appear").) The Parties are currently in a critical stage of discovery, yet Defendants are once again addressing and attempting to prevent misconduct instead of devoting time to impending depositions. Defendants are also prejudiced because Plaintiff's false and incomplete interrogatories leave them uncertain about whether Plaintiff has disclosed all of the sexual misconduct allegations against him or what else Plaintiff may have lied about in his interrogatories. Given Plaintiff's past conduct, they are certainly not willing to accept Plaintiff at his word. (*E.g.*, Exhibits Detailing Other Sexual Misconduct); ECF 200 at 46:11–13 ("The Court: . . . You just said that I should take [Plaintiff] at his word. Well, [Plaintiff] sat in that chair three months ago *and was dishonest with me*." (emphasis added)). Plaintiff's misconduct will not stop absent dismissal.

## D.      Addressing Plaintiff's Actions Has Required Extensive Judicial Resources

The need to alleviate court congestion also supports dismissal. This case has taken an inordinate share of this Court's limited judicial resources due to Plaintiff's misconduct. (*See, e.g.*, ECF 200 at 9:7–10; ECF 200 at 9:11–14.) The docket is filled with filings and entries related to Plaintiff's misconduct.[23] More importantly, Plaintiff has disrespected this Court and its process at every turn. He should not be allowed to continue to take enormous amounts of time away from the countless litigants who respect this Court and adhere to its rules.

## E.      Lesser Sanctions Only Emboldened Plaintiff

Lesser sanctions are inadequate. The Court imposed lesser sanctions, including repeatedly

---

[23] *See, e.g.*, ECF 74, ECF 75, ECF 76, ECF 77, ECF 78, ECF 79, ECF 80, ECF 81, ECF 82, ECF 87, ECF 88, ECF 90, ECF 91, ECF 94, ECF 95, ECF 96, ECF 113, ECF 114, ECF 115, ECF 116, ECF 117, ECF 118, ECF 119, ECF 122, ECF 123, ECF 124, ECF 125, ECF 130, ECF 144, ECF 150, ECF 157, ECF 182, ECF 187, ECF 198, ECF199, ECF 200, ECF 265.

admonishing Plaintiff and then sanctioning him by allowing Defendants to present evidence of his misconduct at trial, only for those sanctions to lead to additional misconduct. *See, e.g., Friends of Animals*, 131 F.3d at 334 (affirming dismissal where it was "all too apparent from the record . . . that lesser sanctions were ineffective in deterring . . . misconduct").

### F. The Court Should Dismiss The Case

Enough is enough. Dismissal is warranted for any one of the examples of misconduct detailed above. Plaintiff's collective actions more than warrant dismissal. That is particularly true in light of Plaintiff's extensive history of "egregious" misconduct in this case.

## XII. THE COURT SHOULD ENTER ADDITIONAL AND/OR ALTERNATIVE SANCTIONS

In addition to dismissing this case, the Court should award Defendants the costs, including attorney's fees, associated with their review of Plaintiff's 70,305 page production. Defendants should not have to bear the burden of Plaintiff's misconduct more than they already have.

Monetary sanctions alone are, however, insufficient and will likely only embolden Plaintiff. "The *mildest sanction* [the Court can impose] is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate." *Petty*, 2019 WL 121719, at *4 (emphasis added). Moreover, Plaintiff is funding his litigation with other people's money, including donations. He will not be deterred, and will instead be emboldened, by monetary sanctions because he does not have to pay any sanctions – other people will be paying. As Defendants have previously noted, Plaintiff also uses this Court's Orders to try to drum up money for his lawsuit. (*See* ECF 123-2.) Plaintiff will no doubt crowdfund any monetary sanctions imposed and additional sums by once again misleading his followers about the Court's actions, thereby obtaining a net benefit and encouraging future misconduct.

As discussed above, nothing short of dismissal is warranted in this case. If the Court

34

nevertheless disagrees, the Court should enter the following sanctions:

- That Defendants be given discovery to determine the full extent of Plaintiff's misconduct so that they can properly brief the issue of whether dismissal is warranted. This would include, but not be limited to, searches of Plaintiff's non-privileged communications since Fall 2023 given that Plaintiff's plan to harass Jane has existed since at least that time.

- That the Court preclude Plaintiff from obtaining further discovery. *See Harvin v. Cheney*, No. 3:23CV328 (MPS), 2024 WL 2044696 (D. Conn. May 7, 2024) (precluding the plaintiff from receiving "any further discovery" even though the plaintiff had not violated any court order because the plaintiff acted in bad faith by disseminating information). Plaintiff's desire to conduct a fishing expedition for additional information was presumably what led him to dump 70,305 documents on Defendants to delay this case.

- That the Court preclude Plaintiff from asserting claims for reputational damage and lost earning capacity. *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-CV-00260 (KAD), 2021 WL 242052, at *9 (D. Conn. Jan. 25, 2021) (precluding plaintiffs from seeking damages in the following categories due to repeated discovery failures). Plaintiff's gamesmanship regarding other sexual misconduct means that Defendants cannot know whether they are aware of all other allegations against Plaintiff, which is a key issue relevant to, among other things, Plaintiff's reputational and lost earning capacity claims because other allegations of sexual misconduct undermine Plaintiff's claim that it was Jane's complaint against him that damaged his reputation and his claim that Jane's allegations and/or Yale's actions (as opposed to allegations of other victims) impacted his earning capacity.

- That the Court preclude Plaintiff from relying on information in Plaintiff's February 2025 production or the recordings that Plaintiff hid to prevent Plaintiff gaining any advantage from burying documents he may want to use in irrelevant documents and misleading our Courts about the availability of recordings of the UWC Proceedings.[24]

- That, if a trial is necessary, the Court instruct the jury that Plaintiff engaged in egregious misconduct in this case, including lying. *See, e.g.*, *Meyer Corp. v. Alfay Designs, Inc.*, No. 2010CV3647CBAMDG, 2016 WL 792398, at *7 (E.D.N.Y. Feb. 26, 2016) (noting situations where misconduct had led to an instruction that plaintiff had engaged in misconduct (not just the opportunity for cross-examination about that misconduct and/or an inference)); *see also, e.g.*, ECF 265 (concluding that Plaintiff engaged in "egregious" misconduct; ECF 200 at 46:12–13(concluding that Plaintiff "was dishonest with" the Court when he personally addressed the Court).) The Court's previous sanction allowing Defendants to cross-examine Plaintiff about his misconduct appears to have been insufficient to prevent additional misconduct. If this case is not dismissed, a further sanction is appropriate.

- That, if a trial is necessary, the Court allow the admission of all accusations of sexual

---

[24] Defendants should be allowed to use any documents or information they desire.

misconduct against Plaintiff without the need for any further foundation. Plaintiff sought to conceal these accusations from Defendants and his actions caused, at minimum, a delay of approximately one year in identifying the information noted above.

Defendants reiterate that these sanctions will not be effective because nothing short of dismissal will stop Plaintiff's misconduct.

## XIII. CONCLUSION

The Court should dismiss Plaintiff's claims with prejudice. It should also award Defendants' monetary sanctions for their review of Plaintiff's 70,305 page production. In the alternative, the Court should impose the other sanctions requested above.

DEFENDANT JANE DOE,

By: */s/ Brendan N. Gooley*
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT 06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
        bgooley@carltonfields.com

Her Attorneys


DEFENDANT YALE UNIVERSITY

By: */s/ Giovanna Tiberii Weller*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

36

## CERTIFICATION OF SERVICE

This is to certify that on this 20th day of May 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

                                         */s/Brendan N. Gooley*
                                         Brendan N. Gooley

A-239

**ECF No. 333 (May 20, 2025)**

Doe Sealed Motion for Judgment of Dismissal and Exhibits

*FILED UNDER SEAL IN THE DISTRICT COURT*

*Omitted from the public appendix. See the docket sheet for the entry.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | June 27, 2025 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS [ECF No. 332]**

Defendants move to dismiss this case based largely on eight accusations leveled at Plaintiff and his counsel that are false, unsubstantiated, and overreaching. Defendants accuse Plaintiff of revealing Ms. Doe's identity in violation of this Court's orders; but Plaintiff has not done so, and Defendants have no proof that he has done so.[1] Defendants then accuse counsel of "intentional" misconduct, by trying to delay this case by giving them too many documents for them to review. This accusation is both false and absurd. In the time the undersigned counsel has been involved in this years-long case, Defendants have been the cause of all delay and any alternative action by the undersigned would have delayed the case more than what I did. Finally, Defendants claim that Plaintiff lies. This is surely not the only case in this Court where one side accuses the other side of lying. Indeed, Plaintiff's *claim* is one of *defamation*. Defendants' motion fails to reveal misconduct but succeeds at distracting from the issues. Having attempted to hit a grand slam by getting this Court to dismiss meritorious claims, the motion strikes out by making serious claims that it fails to back up with evidence. Accordingly, the motion should be denied, and this Court should lift its *sua sponte* stay of discovery, ECF No. 361, immediately.

---

[1] Plaintiff's posting of June 16, 2025, which this Court considered to be a "present intention or thinly veiled threat," ECF No. 354, to disclose Ms. Doe's identity, is not so: it is an expression of Mr. Khan's wish to repair his reputation on an even playing field through the lawful modification of this Court's orders of pseudonymity, which he has sought to do by motion filed in this Court. The Plaintiff did not and does not intend for the referenced post to be considered an intention by him or a threat by him to violate this Court's orders.

1

## I.    LEGAL STANDARD

As this Court held in its January ruling on Defendants' last motion to dismiss, ECF No. 265, a district court should not dismiss a case as a sanction lightly.

The inherent power to sanction bad faith conduct "must be exercised with restraint and discretion," *id.* at 3 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)), and "only where there is clear and convincing evidence of bad faith." *Id.* "The sanction of dismissal . . . is a drastic remedy," *id.*, citing and quoting *Davis v. Saint Luke's – Roosevelt Hosp. Ctr.*, 771 F. App'x 116 (2d Cir. 2019). It is appropriate in the event of "flagrant bad faith," *NHL v. Metro. Hockey Club,* 427 U.S. 639, 640 (1976), or where "a party abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." ECF No. 265 at 3, citing *Davis v. Saint Luke's Roosevelt Hosp.*, No. 16-cv-6279, 2018 WL 10384114, at *1 (S.D.N.Y. Apr. 16, 2018), aff'd sub nom. *Davis*, 771 F. App'x 116.

Under Rule 41(b), a district court may also, in its discretion, dismiss an action as a sanction. ECF No. 265 at 3-4. This Court laid out the five factors courts in the Second Circuit consider:

> (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Spencer v. Doe*, 139 F.3d 107, 112-13 (2d Cir. 1998) (citation omitted). Because a Rule 41(b) dismissal "is one of the harshest sanctions," it must "'be proceeded by particular procedural prerequisites, including notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Smalls v. Cty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017). We do request an evidentiary hearing if this Court believes one is necessary.

## II.    RESPONSE TO FACTUAL ALLEGATIONS

*1.    First Accusation – Disclosure to Blogger – False & Unsupported by Evidence*

The Defendants' first accusation, ECF No. 332 at 7-8, is that Plaintiff gave a blogger "actual images of [Defendant] Jane [Doe] in violation of Judge Garcia's and this Court's orders . . . ." Defendants' evidence for this accusation comes from emails freely produced by Plaintiff, which prove that Plaintiff never sent any evidence or documentation from this case to the blogger.

The blogger knowing who Jane Doe is—Defendants' only evidence and support for this argument—proves nothing. A Connecticut Superior Court Judge has observed that Ms. Doe's identity is "public information" and "common knowledge." *State of Connecticut v. Saifullah Khan*, NNH-CR15-0162194 (Jan. 31, 2025) (Vitale, J.). Plaintiff is obviously not the only possible source for this information.

Defendants also complain that Plaintiff, while being interviewed by the blogger, stated the facts that (1) Mr. Khan, who has been labeled a "rapist" by Defendants, has his name all over the media while his accuser has not; (2) that this fact is arguably more problematic because he was found Not Guilty of her accusations in a court of law; and (3) "If you're going to accuse somebody and ruin their life, your name should be attached to your lies or your truth." ECF No. 332 at 8.

It is not a violation of a court order for Mr. Khan to state his opinions, backed by facts, about this case. It would be a violation of a court order to identify Ms. Doe, directly or indirectly. None of Plaintiff's comments do that at all. If anything, Mr. Khan's third comment is essentially identical to a statement made by Yale University itself in a litigation in this Court just a few days ago. *Doe v. Yale, et al.*, 3:25-cv-00787-OAW, ECF No. 76 (June 24, 2025) ("[Parties] who have

been identified by name in the court record may be prejudiced by allowing [another party] to attack them while . . . [she] remains anonymous. . . . The parties to every lawsuit should start on an equal footing."). It would be ironic to sanction Mr. Khan for saying essentially the same thing Yale University said when in a litigation against a pseudonymous party.

Finally, Defendants note that when Mr. Khan republished his interview on social media, that one of the captions for the sharing said "Next, naming the infamous Jane Doe!" and that several third parties who watched his interview with the blogger posted Jane's real name publicly. It is true that Mr. Khan has moved in this court to remove Ms. Doe's pseudonymity. It is not a violation of this Court's orders for him to express his wishes that his motion before this Court be granted. If the motion is granted, Ms. Doe will be named. It is not a violation of this Court's orders for Mr. Khan to share a video where he is interviewed about his case, absent a violation of the Court's orders. Mr. Khan has been labeled a rapist by some of the most powerful and prestigious institutions in the world. He seeks to defend himself and his reputation by putting his side of the story out there. A major component of that story and part of the unfairness is that the person who accused him of rape is still anonymous, while his reputation has been so harmed. He can complain about that unfairness without naming Jane Doe and therefore without violating the Court's orders. That's all he has done here.

Mr. Khan cannot be punished for the fact that Ms. Doe's name is common knowledge and public information that third parties can access and, in exercise of their own rights, share, in outrage at her conduct. That is not Mr. Khan, *directly* or *indirectly*, identifying Ms. Doe. That is just the reality that there exists an unfair, unfortunate situation that many individuals in the public are concerned about.

Defendants say Mr. Khan "apparently" gave the blogger this information because they have no proof—because there is no proof—that he did so. ECF No. 332 at 9. They have no proof because he did not give the blogger the information. They have proof that Mr. Khan was "complaining about the fact that his name is all over the media but Jane's name is not," *id.*, but the Court's order did not restrain Mr. Khan from complaining about the Court's order. They have proof that Mr. Khan had a "desire to name Jane," *id.*, but he is seeking to vindicate that desire lawfully, with a motion to unseal her name legally. He has not done so illegally in violation of this Court's orders, directly or indirectly. Complaints about Jane Doe's anonymity are not disclosures or revelations of Ms. Doe's identity. Mr. Khan did not "solicit . . . help in outing Jane." ECF No. 332 at 10. To conclude that he violated this Court's order preventing the disclosure of Ms. Doe's identity merely because he complained about the restriction, in an interview with the media, and expressed his opinion about what should happen, is wrong. That is not what this Court ordered.

2.    *Second Accusation – "Maintaining" Name – Is False, Unsupported*

Defendants' second accusation, that the Plaintiff is "maintaining" Jane Doe's name "on one of his social media accounts," ECF No. 332 at 10-11, is false, shows a lack of technical awareness on counsel's part, and is unsupported by evidence. Exhibit F shows, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ post is neither under Mr. Khan's control—he cannot remove it—nor subject to this Court's March 18, 2024 order that Mr. Khan remove posts he had made previously that referenced Ms. Doe. This accusation is completely meaningless and

frivolous because nothing Mr. Khan could do himself would remove this post. He did not post it. He is not "maintaining" it. He is not "maintaining" Ms. Doe's name on social media, nor is this "egregious," "particularly stunning," or evidence of contempt. ECF No. 332 at 11.

     *3.      Third Accusation – of Intentional Misconduct by Counsel – is Unsupported*

Next, Defendants attack counsel, accusing the undersigned of "intentional" misconduct. ECF No. 332 at 15. But far from "overwhelming" evidence, *id.*, Defendants have presented no evidence of any misconduct on counsel's part, let alone intentional misconduct. In fact, Defendants blame Plaintiff for giving them exactly what they asked for—a broad range of documents that were responsive to their numerous search terms, extensive date ranges, and broad discovery requests. Defendants are now complaining about receiving too much, while at the same time *also* complaining that the production was "underinclusive," ECF No. 332 at 14 n.10, too, showing that essentially none of the undersigned's efforts would ever result in Defendants "accept[ing] Plaintiff at his word," ECF No. 332 at 33. Any alternative course of action by the undersigned would have caused even greater delay than any delay that Defendants attribute to the undersigned's conduct described in their motion.

As an opening bit of context and background for the Defendants' accusation, it should be noted that the Plaintiff cooperated with the Defendants on a very abbreviated agreed schedule to produce ESI from the Plaintiff's email accounts and social media accounts. We used the same vendor as Defendants for their ESI production so that the documents could be provided to them in a format that would allow them to search and filter the documents provided. We erred on the side of being overinclusive, because the Plaintiff has chosen to be forthright and open in this discovery process, providing a multitude of releases to the Defendants as well for them to obtain their own documents. We have sought to avoid conflicts where Defendants accuse us of hiding

documents, because we have no intention to hide anything from them. Where we are accused of being "underinclusive," ECF No. 332 at 14 n.10, Defendants admittedly point to "messages [that] did not include the search terms Defendants asked for," *id.*, which would *necessarily* mean they were not in the universe of documents that the Plaintiff could have reviewed and produced to them. When documents were within the Defendants' many search terms, and contained "hits," and were even arguably responsive to the Defendants' dozens of discovery requests, we produced the documents instead of inviting more conflict later on about what should have been produced earlier. Far from misconduct, this should be the ordinary course in discovery and should be the way that Defendants behave too—instead, as we have noted in our Motions to Compel, the Defendants have been the ones abusing the discovery process, using it to shield documents from disclosure that Plaintiff needs to prove his case.[2]

For example, the Defendants complain about ESI provided to them that shows purchases made by the Plaintiff, ECF No. 332 at 13, which they contend contain irrelevant information. Nothing Plaintiff has produced does not contain Defendants' chosen search terms, as applied to the myriad of sources of data requested by Defendants. Defendants sought a very broad scope of information. For example: because this case involved allegations that Mr. Khan was essentially homeless because of the false rape allegation and wrongful expulsion, Defendants asked in discovery for "all addresses [he has] stayed at and/or resided at since" October 31, 2015. When Plaintiff claimed in his interrogatory responses that he could not remember every address for

---

[2] The undersigned takes the accusation of intentional misconduct very seriously. None of the counsel who have joined in accusing the undersigned raised any of the concerns in the motion with the undersigned prior to filing the motion. The undersigned has at many times taken issue with the course of action taken by opposing counsel in this litigation and has on many occasions believed that it has caused this case significant undue delay. The undersigned counsel does not benefit from delay in any form and seeks to move the case toward resolution like he does in every case. Instead of impugning improper motives, accusing others of intentional misconduct, or filing for sanctions, the undersigned has sought to keep the case focused on issues that will materially advance the litigation and will continue to do so.

every single night, Defendant Doe sent Plaintiff a deficiency letter in August 2024 stating that Plaintiff should provide all of the information available to him, *e.g.*, "[s]tayed at a hotel in Omaha, Nebraska for two nights in July 2018." Defendants cannot claim that they want to know Mr. Khan's whereabouts for every single night for a ten-year period, including a two-night stay in Omaha, Nebraska in July 2018, but then complain when Mr. Khan provides his financial and personal data that he is doing a "document dump." They instead should be happy they get a large amount of information quickly, so they do not have to fight for years to get the data, like Plaintiff does when seeking information from Defendants.

Defendants complain about being given "[c]redit card payment reminders," ECF No. 332 at 13, while asking for all sorts of financial information about Mr. Khan to test his damages claims regarding emotional and financial stress. They complain about having announcements regarding conferences, or announcements from Yale, *id.*, even though these represent the opportunities he lost when he was falsely branded a rapist and exiled from his education. They even complain about receiving emails related to Mr. Khan's work in Families Advocating for Campus Equality ("FACE"), one of Mr. Khan's most significant activities since this false rape accusation. Defendants concede that some "FACE emails relate to this case," ECF No. 332 at 13, but it is apparently misconduct that the undersigned counsel could not guess in the short time period given to produce the emails which ones of them Defendants would believe are "relevant" and one which they feel are "irrelevant." Of course, that is not the standard—documents are discoverable even if they are irrelevant—documents are discoverable if requesting them is "reasonably calculated to lead to the discovery of admissible evidence,"—and to the extent that they are FACE emails, that Defendants requested FACE emails, that they contain Defendants' search terms, and FACE emails are sometimes according to Defendants relevant, how can

Plaintiff be blamed for being forthcoming and sharing them with Defendants in discovery? They

obviously could potentially lead to the discovery of admissible evidence if Defendants believe

that at least *some* of them are relevant. It is hard to see how Plaintiff can be punished for being

forthcoming and erring on the side of producing the communications.

Out of more than 70,000 pages of documents produced in a short time period, some

documents, videos, and photos will of course be inadvertently produced. Our rules even provide

for the clawback of *privileged* materials when inadvertent productions happen. Defendants'

contention that "tens of thousands of additional unresponsive and entirely irrelevant documents

were included," ECF No. 332 at 13-14, is simply incorrect, though, and their accusation that this

somehow represents intentional misconduct is baseless. We did not "load" our production with

documents to "prejudice Defendants on the eve of depositions in order to force a delay of this

case." ECF No. 332 at 14. We gave Defendants what they were asking for, so they can take the

depositions they want to take, in a format that allowed for the rapid searching, filtering, sorting

of the documents. The only delay in this case is the delay caused by Defendants' *withholding* of

documents. This is a delay of the Defendants' causing, not by the Plaintiff, who worked

diligently to produce to Defendants everything they could possibly ask for (though they

apparently have now discovered "additional categories" of information that they want to still

seek, ECF No. 360 at 1-2, and they apparently also believe that our production was

"underinclusive," ECF No. 332 at 14 n.10).

It is not clear what "depositions of Yale witnesses were imminent," ECF No. 332 at 14,

and the Defendants' accusation that Plaintiff was trying to postpone depositions that were not

even scheduled is false. It was not "impossible for Defendants to make an informed and timely

evaluation of whether to file a motion to compel," ECF No. 332 at 14, simply because they asked

for and received many documents in response to their requests. Yes, the undersigned did represent to Judge Garcia that it was an enormous undertaking and that we reviewed a large amount of material, ECF No. 332 at 15 n.11, including all of the "hits" to Defendants' terms. Yes, it even ruined the undersigned's vacation, because he had to take several evenings to review thousands of pages of documents overnight in order to make the production complete. I did all of that to ensure that the case would move forward. Defendants' motion portrays my diligent efforts at misconduct in a way that makes the undersigned sick. It was misconduct when we concluded that, given the broad requests, broad search terms, and requests for specific information, it was warranted to produce the documents that Defendants requested? How can that be? Defendants cite no case where this type of inference has been drawn and it would be unreasonable to do so.

In fact, Plaintiff's disclosure of the documents in a forthright matter actually resulted in progress, not delay in this case. It is likely what spurred the Defendants to produce additional documents, as when the undersigned appeared, four years into this case, only 400 pages had been produced.

If Plaintiff had withheld any of the documents he produced, any of the documents that Plaintiff withheld would have been subject to additional motion practice from Defendants contending that Plaintiff was hiding something from them. By giving the documents to the Defendants, in a searchable, sortable, filterable format, using their own technology vendor, Plaintiff actually helped this case move more smoothly and get back on track. That is the undersigned's goal in every case. That has been the undersigned's practice in this case. We have been working closely with Judge Garcia to complete discovery and move this case to adjudication on the merits. Opposing counsel have not once raised their accusation of intentional misconduct by me with me. Although Defendants state that they "do not lightly contend that this

10

A-249

conduct was intentional," they hardly show it, making the accusation without the evidence to support it, because it is false. The third accusation, against counsel, is not only false but outrageous, as the undersigned counsel has dedicated himself diligently for months to advancing this case toward resolution and nothing else. But this is emblematic of all of the accusations in Defendants' meritless motion.

4.        *Fourth Accusation – "Misleading" Interrogatory Responses – Meritless*

Next, Defendants say Plaintiff "lied and misled" Defendants in his responses to their interrogatories. ECF No. 332 at 16. Plaintiff did not lie, he did not mislead, and Defendants' "evidence" for this accusation is itself misleading. Defendants base this accusation on documents they produced to the Plaintiff <u>after</u> he gave his interrogatory responses, documents they obtained from Plaintiff (negating any intention to deceive), and documents they obtained from Plaintiff's mental health providers. ECF No. 332 at 18-22. Exhibits K, L, O, P, and Q, for example, are <u>all</u> documents that Yale withheld <u>for years</u>, including long after Plaintiff responded to the interrogatories. Far from showing discovery abuse by the Plaintiff, this entire argument shows an abuse by Defendants, while failing to show any sort of "violation" that in prior precedent has led to the dismissal of a case where there are contested issues of material fact. That parties disagree about facts is not a subject of a motion to dismiss.

Defendants' accusations here tend to actually show that Plainiff is being forthcoming, not that he has done anything wrong. For example, Defendants have an email where Plaintiff shared a link many years ago that relates to one of the alleged incidents they now accuse him of omitting from his interrogatory response. ECF No. 332 at 20. If Plaintiff had any motive to testify falsely, hide evidence, or mislead, why would he produce this email to Defendants? All this proves is that Plaintiff did not consider the incident to be an alleged incident of sexual

11

**A-250**

misconduct or did not remember that incident at the time. This is fodder for a deposition. This is not "proof that Plaintiff lied." The mere fact that a link to an article was shared in an email many (over a decade) years ago is not proof that the Plaintiff lied in his interrogatory response.

Defendants' accusation is misleading because these "allegations of sexual misconduct" are not actually allegations of sexual misconduct by Plaintiff. They say in April 2018 Plaintiff made another student "feel uncomfortable" and "creeped out" because he *looked at* a publicly posted Facebook photo and because he "liked" it. ECF No. 332 at 21. What "sexual misconduct" by Plaintiff is that? How is that "sexual assault . . . rape, groping . . . non-consensual sexual contact . . . sexual harassment, intimate partner violence, stalking, . . . conduct of a sexual nature that is non-consensual, or . . . threatening or intimidating"? ECF No. 332 at 17 (citing Defendants' definition of "sexual misconduct"). Is it non-consensual, threatening, and intimidating to "like" someone's publicly posted Facebook photo, photos which are presumably put on the public social media platform for…likes?

Simply because Defendants disagree with Plaintiff's interrogatory responses does not mean that Plaintiff lied, let alone that Plaintiff's case should be dismissed. Simply because Mr. Khan at one point in his life told a mental health professional about an incident, or mentioned an incident in one of the thousands of emails he has disclosed to Defendants, does not mean that he lied when he did not include it on a requested list of accusations of sexual misconduct against him. It is possible, especially when one has been falsely accused by others, to block out incidents of past trauma, such as other false accusations that have been made. It is possible to forget an incident that occurred more than a decade earlier. It is possible to not consider some of these incidents to be sexual misconduct allegations at all. The Defendants' motion provides no basis for this Court to dismiss this case based on this interrogatory response.

12

**A-251**

Plaintiff's remark in an interview in 2023 that "there were about twenty different complaints against" him, ECF No. 332 at 23, is not an acknowledgment of complaints of *sexual misconduct*. In context, Mr. Khan was speaking about the immense pressure being placed on Yale University to expel him even from people who had never even met him before. Plaintiff gave a great example, which Defendants strangely use as an example of supposed misconduct: an incident in which he was accused of making someone uncomfortable by his mere presence in an elevator. ECF No. 332 at 23. Contrary to Defendants' contention, none of this is proof that "Plaintiff lied in his response to Jane's interrogatory." *Id.* It's simply the case that—as in essentially every case that is contested in this District—the parties have different opinions about the facts and circumstances. That is what trials are for. Of course, we do not concede in the slightest that Plaintiff has lied. Defendants are of course entitled to their wrong opinion and to test their opinion before the factfinder.

5. *Fifth Accusation – "Apparent" Misrepresentation – is Also Groundless*

Plaintiff did not lie to Judge Garcia. Plaintiff was told by an attorney in Glenn Formica's office, Rochelle Charnin, that sending modified court transcripts to USCIS would be less advantageous for his immigration case than sending the original official court transcripts. At the hearing Defendants quote from, although Attorney Formica said he had not been Mr. Khan's attorney in years, he was equivocal, noting he was "sort of in the middle." *See* ECF No. 332 at 26 ("I was sort of in the middle"). Part of that has been occasional consultation and advice from Attorney Formica and members of his firm to Mr. Khan. This Court need not venture any further into the confidential communications between Mr. Khan and his immigration counsel.

Defendants' actions have already prejudiced his immigration case enough. Defendant Yale University's revocation of his student visa is the cause of his immigration predicament.

13
A-252

Defendant Jane Doe's false accusation is being used to suggest he is a danger to this country who should be deported. He was right to worry that modification to the official transcripts for his case would cause confusion or a problem with immigration authorities.

Defendants refer to "apparent lies," ECF No. 332 at 27, because they do not have proof of an actual lie. Serious claims require serious proof. Defendants' mere accusation that Plaintiff is lying without evidence is no reason to dismiss a case rather than adjudicate it on its merits.

6.      *Sixth Accusation – Misconduct by Recording the UWC Proceedings*

Next Defendants accuse Plaintiff of misconduct because he recorded the UWC proceedings while he was a student at Yale University. ECF No. 332 at 27-29. Defendants state that Plaintiff did not produce the recordings until February 2025 and did not produce them in May 2024. ECF No. 332 at 28. But Defendants omit that Plaintiff forthrightly disclosed their existence, put them on a log because they contained privileged conversations between Plaintiff and his then-attorney, and negotiated a process whereby transcripts were created, redacted, and produced to counsel. This was a process that Defendants participated in and agreed to. At no time during that process between May and February did Defendants ever express any prejudice.

Defendants attempt to take the existence of Plaintiff's personal recording as some sort of fraud on the courts, because the courts have rightly noted that Plaintiff's "*ability to appeal* [the UWC Hearing] was severely constrained by the absence of any transcript or recording of statements, testimony, or questions raised during the UWC [H]earing." *Khan v. Yale Univ.*, 347 Conn. 1, 46 (2023); *Khan v. Yale Univ.*, 85 F.4th 86, 95 (2d Cir. 2023) (quoting 347 Conn. at 46) (emphasis added). But the courts were not talking about Mr. Khan not having a secret recording of the hearing, they were talking about Yale not having <u>an official</u> recording or transcript of the hearing. Mr. Khan's private recording, which in large part contained private conversations

between him and his attorney, could not have formed the basis for an appeal as it was not an official recording or transcript. Mr. Khan, as Defendants acknowledged, "disclosed the existence of those recordings," ECF No. 332 at 27, and put them on a privilege log when he initially declined to turn them over, because they contained privileged communications. He did not hide the recordings, even though he knew it was admitting a violation of the UWC rules at the time, again showing his forthrightness in the discovery process. Ultimately, the recordings were produced, in redacted form. The docket even contains an entry noting this process. ECF No. 262 ("Hearing Transcript: Plaintiff ordered and received unredacted transcripts from the hearing and started the process of redaction."). Defendants have not challenged the redactions.

To be sure, Plaintiff did say to Ms. Demers, at the start of the UWC Hearing, that he was not recording. Given that this statement is on the recording, Plaintiff has disclosed that he made this statement falsely. It would have been misconduct, perhaps worthy of dismissal, if Plaintiff had concealed this fact. Instead, he disclosed it. Accordingly, Defendants can raise this matter at trial, as part of their unclean hands (or after-acquired evidence) defense, or to impeach the Plaintiff. For purposes of this motion, though, Mr. Khan has been forthright in this litigation about the existence of the recordings, and has produced them pursuant to an agreed-upon process. That is not discovery misconduct.

7. *Seventh Accusation – Improper Privilege Calls*

Finally, Defendants accuse Plaintiff of misconduct because they made privilege calls that they disagree with. What they do not accuse Mr. Khan of is hiding any of these communications—as they were all properly disclosed on a log. And in fact, they have now all been produced to the Defendants. Plaintiff was fully entitled to his legal position regarding these documents, as explained in our opposition to Defendants' motion to compel, ECF No. 349

(which we inadvertently mistitled "Motion to Compel," a scrivener's error, with apologies to the Court and counsel). That position was substantially justified, no sanctions are warranted, and with production of the documents to the Defendants their motion to compel on this issue is now moot. It is not "additional misconduct," ECF No. 332 at 29, warranting the Defendants' desired sanction of dismissal.

An eighth accusation is made without evidence to support it, ECF No. 332 at 29 n.15, and we will not respond to it here, except that Plaintiff did not tell "one of his providers not to release records," *id.;* the only thing Defendants are correct about here is that they "ultimately obtained the records," *id.*

### III.    ARGUMENT

None of the factors "considered in conjunction with dismissal," ECF No. 332 at 30, weigh in favor of dismissing this case. Preliminarily, we reject the Defendants' contention that the Plaintiff has "misled our courts" or has testified falsely or misleadingly in any way, and note that Defendants have offered little to no proof for their allegations. *See, e.g.*, *supra*, § II.4, II.5, II.6.

Additionally, Defendants' case citations misapply the law. Defendants repeatedly cite *Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019), *cited at* ECF No. 332 at 4, 27, 28, where the Second Circuit affirmed the dismissal of a prisoner litigation where the plaintiff, who had *seven* "strikes" under the PLRA, intentionally lied to obtain IFP status to not pay the court's filing fee. Given the volume of prisoner litigation, including that particular prisoner's own volume of litigation, dismissal of the case was justified. 921 F.3d at 98. Defendants cite this case for the proposition that Mr. Khan's "apparent lies about the alleged advice from an immigration attorney" and his "actions in leading numerous Courts to believe that he was 'severely

constrained by the [alleged] absence of any . . . recording" warrant dismissal of this case. ECF No. 332 at 27, 28. Neither of these accusations hold any water. First, Defendants say that Mr. Khan "apparently" lied because they have no proof that he did, and in fact he did not. *See, supra*, § II.5. Defendants say Mr. Khan's actions misled the courts, but the courts were not misled—the UWC had no official transcript or recording, and Mr. Khan was not allowed to use his personal recordings to appeal. *See, supra*, § II.6. Neither of these accusations rise to the level of a fraud on the court warranting dismissal.

### A. Defendants, Not Plaintiff, Have Caused Delay in this Case

Defendants have caused the delay in this case. Plaintiff has produced everything Defendants have asked for, as promptly as possible. Defendants have withheld essentially everything Plaintiff has asked for. Defendants' main complaint of Plaintiff causing delay now, that Plaintiff has dropped "70,000+ pages" of documents on Defendants, is not the cause of delay in this case. It would be a cause of delay if Plaintiff's counsel had (1) requested additional time to review the documents, to go through them with a finer toothed comb to determine which ones Defendants could not later claim were irrelevant and wrong to produce; or (2) withheld the documents, which would have encouraged motion practice over whether they were properly withheld or whether they were responsive to the Defendants' broad requests and should be produced.

Indeed, the cases Defendants cite, as they note, typically involve litigants who "do not do anything," ECF No. 332 at 5. That has not been this Plaintiff since the undersigned has appeared. Every time that Defendants have made a request to the Plaintiff—to sign a release, do an additional search, obtain a quote from a vendor, or meet and confer—Plaintiff has engaged in the process. Although the process has led to disagreements, though counsel on both sides have had

to seek extensions, and though there have been modifications to the discovery schedule, such delays pale in comparison to the delays that occur when a party fails to engage with discovery at all, fails to obey with orders to produce discovery, or engages in uncooperative or unresponsive efforts. *See* ECF No. 332 at 5 (collecting cases where discovery violations were far more egregious than Plaintiff's committed efforts in this case to provide discovery to Defendants).

Defendants acknowledge that they have made broad requests. *E.g.*, ECF No. 332 at 17 ("Jane defined 'sexual misconduct' broadly and in accordance with Yale's definition"); August 2024 Deficiency Letter at 1 (seeking the address of every place Mr. Khan slept from 2015 through the present). Yet their main complaint is not that Plaintiff is withholding information but that at one point they received too much, causing some delay while they reviewed the documents. But if anything was missing from what they requested, that would necessarily cause a delay. Receiving some inadvertently produced emails or documents, especially when they have been produced in a format that allows the emails to be sorted (for example, chronologically); filtered (to exclude certain sources, senders, or recipients, for example); and searched (by keywords or even by excluding certain words), causes far less delay than motion practice. There is simply no basis to conclude that Plaintiff thought it would advantage him and disadvantage an institution of Yale's size, who has several lawyers representing it in this case and the same IT vendor, by giving them 70,000 pages of documents through the vendor. We gave them the documents because we wanted to err on the side of providing responsive materials, in light of Yale's broad requests, and because the compressed timeline for production required us to make these calls quickly. Yale has the ability to quickly review documents. Any alternative course of action by the undersigned counsel—such as taking additional time to review the ESI, or withholding additional documents—would have caused additional delay. This case is simply

18

**A-257**

incomparable to cases where a party fails to engage with discovery at all and the sanction is dismissal. This factor does not weigh in favor of the Defendants at all and provides no reason to dismiss this case.

### B.    Plaintiff Has Not Violated Any Warnings or Court Orders

Defendants make much of the warnings of this Court to abide by Court orders or face dismissal. ECF No. 332 at 31-32. But Plaintiff, as discussed above, has abided by those warnings. He has complied with this Court's orders. We agree that if there were evidence that Plaintiff violated a Court order, let alone intentionally violated a Court order, his case would be subject to dismissal. That simply has not happened here. Plaintiff is complying with this Court's orders.

### C.    Defendants Are Not Prejudiced

Defendants are not prejudiced. Defendants say they are prejudiced by delay. ECF No. 332 at 32-33. Defendants have caused the delay in this case. For approximately four years they produced only 400 pages of documents. Defendants being "uncertain about whether Plaintiff has disclosed all of the . . . allegations against him" is no different from the uncertainty of any party seeking to depose any witness. We have great uncertainty about the troves of information Yale has not produced to us at this point. We hardly think that any interrogatory response from us would result in Yale University or Jane Doe "accept[ing] Plaintiff at his word." ECF No. 332 at 33. Of course they are going to think that Plaintiff is lying—they do not agree with his position that he was falsely accused of rape. This is a defamation case. The parties disagree about many things. If the existence of a party saying that the other party is lying was cause for sanctions, there would be sanctions in every contested case that is litigated to judgment.

**D.      The Waste of Judicial Resources is from Defendants' Unwarranted Filings**

Defendants complain about "court congestion." ECF No. 332 at 33. The court congestion here is caused by Defendants' unwillingness to join the issues and have them adjudicated on their merits after full discovery. Defendants' stonewalling of Plaintiff's discovery and complaints of alleged misconduct have a common theme: they misdirect this case away from the important issues and toward satellite issues that have nothing to do with the merits. They delay the case. It is the Defendants' constant accusations of misconduct when in fact Plaintiff has been cooperating in discovery that is the true waste of judicial resources. Defendants "should not be allowed to continue to take enormous amounts of time away from the countless litigants who respect this Court" because their filings are not based in the law or the facts.

**E.      No Sanctions Are Warranted**

Defendants say "[l]esser sanctions are inadequate," ECF No. 332 at 33, but in fact no sanctions are warranted. The Court has imposed Orders, and the Plaintiff has taken them seriously, working diligently to produce the documents that Defendants have requested, the releases they have requested, and the information they have requested, while not divulging Ms. Doe's identity and respecting confidentiality. Plaintiff has worked diligently to obtain the discovery he needs from Defendants, as well, but has met resistance at every turn. Rather than sanctioning the Plaintiff again, the Court should take this opportunity to encourage the Defendants to prepare for trial and the resolution of the matters of this case on the merits.

**F.      This Court Should Not Dismiss This Case**

Dismissing this case would not only be an abuse of discretion, but a violation of due process. The Plaintiff has not violated this Court's orders, much less has he intentionally done so. To hold him responsible under the first two accusations made by Defendants in their motion

20

A-259

would be to hold him accountable for the actions of third parties he neither solicited, encouraged, or had any control over. This would be inappropriate. The fourth through eighth accusations are accusations that parties could essentially make about each other in every case. "Enough is enough" ECF No. 332 at 34 indeed. Enough complaining about alleged misconduct that is not even misconduct and get on to the important issues in the case.

Defendants' potpourri of additional sanctions requests, ECF No. 332 at 34-35, is all unwarranted:

- First, they request additional discovery, ECF No. 332 at 35. They want more searches. This makes it questionable that Plaintiff would not have had a dispute if he had not "dumped" the 70,000+ pages on Defendants, since Defendants still apparently believe they do not have enough paper discovery;

- Second, they want to block Plaintiff from obtaining discovery. *Id.* How convenient. As motions to compel are pending that could reveal the extent of their own discovery misconduct in this case, Defendants ask that this Court impose a sanction that Plaintiff receive no further discovery. What is left from this ask is any evidence that Plaintiff has ever improperly disseminated discovery material or that counsel has ever shared "not for plaintiff's eyes" material with plaintiff.

- Third, they want to preclude certain damages claims. *Id.* This is based on Defendants apparently being unable to know "whether they are aware of all other allegations against Plaintiff," *id.* In other words, they again ask for more discovery.

- Fourth, they want to preclude Plaintiff from using the documents that we produced to Defendants. This is bizarre and made without any case support for the

request. They also want to preclude Plaintiff from using his recording of the UWC Hearing, which would result in there again being no usable first-hand evidence of what actually happened in that proceeding. They imply that something could be "buried" in the documents we have produced. This is a somewhat laughable accusation given that there are better ways for Plaintiff to hide things from Defendants than by sending it to Defendants' lawyers. This attempt to obscure the truth-finding process of discovery and trial should be rejected.

- Fifth, they ask for a jury instruction. We respectfully submit that because the Plaintiff has not committed misconduct, this would be wholly inappropriate, and that the issue of jury instructions can and should be done in conjunction with the Joint Trial Memorandum, not at this stage.

- Sixth, they ask for "the admission of all accusations of sexual misconduct . . . without the need for any further foundation." ECF No. 332 at 35-36. This additional bizarre request made without case support would pervert the truth-seeking process, the Federal Rules of Evidence, and the Federal Rules of Civil Procedure. Defendants say that Plaintiff "sought to conceal these accusations," *id.*, but Defendants make this case using documents that they withheld from Plaintiff. Plaintiff did not cause any delay in Defendants reaching their opinion because he still disagrees with them, Defendants have reached their opinion about the truthfulness of Plaintiff's answers using their own documents and information and not based on any representation of the Plaintiff.

Defendants state that "nothing short of dismissal will stop Plaintiff's misconduct," ECF No. 332 at 36, but what they really mean is that nothing short of dismissal will allow Defendants

22

**A-261**

to avoid trial, which is what they truly seek to avoid. But justice requires that this case be adjudicated on its merits, not dismissed on the basis of unsubstantiated allegations and accusations of delay by a party that has delayed discovery at every turn by refusing to turn over documents.

## IV. CONCLUSION

Defendants claim injury from reviewing documents they requested from Plaintiff. Far from injuring the Defendants, Plaintiff's forthrightness since the undersigned's appearance has helped move this case forward. It is Defendants' refusal to engage with discovery that is delaying this case. Far from sanctioning Plaintiff or his counsel, this Court should sanction Defendants for filing a baseless and frivolous motion. At the very least, the motion should be denied.

Respectfully submitted,

/s/Alexander T. Taubes
470 James St., Ste 007, New Haven, CT 06513
alextt@gmail.com
(203) 909-0048
Ct30100

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | JULY 10, 2025 |

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**

The Defendants respectfully request permission to file a Supplemental Brief further supporting their Motion for Judgment of Dismissal (ECF 333 ("Motion")) to apprise the Court of additional misconduct that has occurred and/or come to light since they filed their Motion. The Court should grant this Motion because it is important for the Court to have as complete a picture of Plaintiff's misconduct as possible when it decides Defendants' Motion and Defendants could not have included the misconduct at issue in their Motion because it had not occurred or come to light at the time of filing. Defendants' Proposed Supplemental Brief is attached as **Exhibit 1**.

**A-263**

DEFENDANT JANE DOE

By:  */s/ Brendan N. Gooley*
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    CARLTON FIELDS, P.A.
    One State Street, Suite 1800
    Hartford, CT  06103
    Tel.: 860-392-5000
    Fax: 860-392-5058
    Email: jsconzo@carltonfields.com
          bgooley@carltonfields.com

    Her Attorneys

DEFENDANT YALE UNIVERSITY

By:  */s/ Giovanna Tiberii Weller*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

2

3

## CERTIFICATION OF SERVICE

This is to certify that on this 10th day of July 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

_/s/ Brendan N. Gooley_
Brendan N. Gooley

**A-265**

**UNITED STATES DISTRICT COURT, DISTRICT OF CONNECTICUT**
**CIVIL STANDARD MINUTES**

Date **12/22/2025** _____

_____

**Khan**
_____

Vs.

**Yale University et al**
_____

Start Time **10 AM**____ End Time **12:58**_____

Recess (if more than ½ hr) _____ to _____

Total Time **2**_____hour(s) **58**_____minute(s)

Case # **3:19-cv-01966-KAD**_____

Honorable Judge **Kari A. Dooley**_____

Deputy Clerk **Kristen Gould**_____

Counsel for Pla(s) **Alexander T. Taubes**_____

Counsel for Dft(s) **P.Noonan, M. Laurato, G. Weller, B.Gooley**

Reporter/ECRO/Courtsmart **D. Huntington** ___ J. Sconzo ___

Interpreter_____ Language _____

Hearing held ☑ in person ☐ by video ☐ by telephone

## HEARING AND TIME

| | | |
|---|---|---|
| ◼ Motion/Oral Argument   168 Mins | ☐ Show Cause Hearing ____ | ◼ Evidentiary Hearing   10 |
| ☐ Judgment Debtor Exam ____ | ☐ Pretrial Conference ____ | ☐ Scheduling Conference ____ |
| ☐ Status Conference ____ | ☐ Settlement Conference ____ | ☐ Other: _____ ____ |

## MOTIONS

◼ Motion _for Judgment of Dismissal_____ filed by ☐ Pla ◼ Dft ☐ granted ☐ denied ◼ taken under advisement

☐ Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ taken under advisement

☐ Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ taken under advisement

☐ Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ taken under advisement

☐ ORAL Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ under advisement

☐ ORAL Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ under advisement

☐ ORAL Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ under advisement

☐ ORAL Motion _____filed by ☐ Pla ☐ Dft ☐ granted ☐ denied ☐ under advisement

☐ Brief(s) due _____ ☐ Proposed Findings due _____ Response due _____

☐ Status report due _____

☐ Hearing continued until _____ at _____

## NOTES

**Witness: Saifullah Khan**

Rev. 3/21/24

**A-266**

**United States District Court for the District of Connecticut**
File Number 3:19-cv-01966-KAD

| | |
|---|---|
| Saifullah Khan, Plaintiff, <br><br> v. <br><br> Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Jane Doe, Carole Goldberg, Unknown Persons, Defendants. | NOTICE OF APPEAL <br><br><br> April 1, 2026 |

Notice is hereby given that Saifullah Khan, plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from the final judgment entered in this action on the 30th day of March, 2026, ECF No. 400, and the order on the motion to dismiss on the 27th day of March, 2026, ECF No. 398.

Respectfully submitted,

/s/Alexander T. Taubes
Attorney for Plaintiff
470 James Street
Suite 007
New Haven, CT 06513
alextt@gmail.com
(203) 909-0048

**A-267**