# No. 26-830

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

### SAIFULLAH KHAN,

*Plaintiff-Appellant,*

*v.*

### YALE UNIVERSITY,

PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN,
JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN,
LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER,
SARAH DEMERS, JANE DOE, CAROLE GOLDBERG,
AND UNKNOWN PERSONS,

*Defendants-Appellees.*

*ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT*
(*Dooley, J.*), *No. 3:19-cv-1966 (KAD)*

## Special Appendix

**Pages SPA-1 to SPA-76**

Alexander T. Taubes, Esq.
LAW OFFICES OF ALEXANDER T. TAUBES, PLLC
470 James Street, Suite 007
New Haven, CT 06513
Tel. 203-909-0048
Email: alextt@gmail.com

# TABLE OF CONTENTS

Memorandum of Decision granting the Third Motion for Judgment of Dismissal (Dooley, J.), Mar. 27, 2026 (ECF No. 398) — the decision appealed from.........................SPA-1–SPA-31

Judgment, Mar. 30, 2026 (ECF No. 400).................................................................................SPA-32

Electronic Order granting Motion to Proceed Pseudonymously "without prejudice," Jan. 10, 2020 (ECF No. 12) — see Note 3.................................................................................SPA-33

Minute Entry and Bench Order (Dooley, J.), Mar. 18, 2024 (ECF No. 91).........................SPA-34

Ruling and Order on Anonymity Motions (Garcia, M.J.), June 19, 2024 (ECF No. 119) .................................................................................................................. SPA-35–SPA-50

Electronic Order re Official Transcript (Garcia, M.J.), Oct. 21, 2024 (ECF No. 216) — see Note 3 ............................................................................................................................SPA-51

Order, In re Khan, No. 24-2794 (2d Cir. Nov. 15, 2024) (denying mandamus; certified copy) ............................................................................................................................SPA-52

Electronic Order re Rule 72.2 Objections, Nov. 21, 2024 (ECF No. 232) — see Note 3......SPA-53

Electronic Order re Status Conference (Garcia, M.J.), Jan. 23, 2025 (ECF No. 262) — see Note 3 .................................................................................................................. SPA-54–SPA-55

Memorandum of Decision denying Emergency Motions to Dismiss (Dooley, J.), Jan. 29, 2025 (ECF No. 265)............................................................................................. SPA-56–SPA-72

Electronic Order re June 16, 2025 Post, June 23, 2025 (ECF No. 354) — see Note 3...........SPA-73

Electronic Order denying Motions to Compel as Moot (Garcia, M.J.), Mar. 27, 2026 (ECF No. 399) — see Note 3.........................................................................................................SPA-74

Relevant Constitutional, Statutory, and Rule Provisions: U.S. Const. amend. I; 28 U.S.C. § 636(b) (1)(A); Fed. R. Civ. P. 37(b)(2)(A); Fed. R. Civ. P. 72(a)...........................SPA-75–SPA-76

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SAILFULLAH KHAN,<br>    *Plaintiff*, | ) | CASE NO. 3:19-cv-01966 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY, *et al*,<br>    *Defendants*. | ) | March 27, 2026 |

**MEMORANDUM OF DECISION RE: MOTION TO DISMISS [ECF Nos. 332, 333]**

Civil litigation is not a game of blind man's bluff. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) ("Modern instruments of discovery serve a useful purpose," and "[t]hey together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (internal citations omitted)). *See also Fulwiley v. United States*, No. 5:07-cv-1121 (NAM/GHL), 2009 WL 10722253, at *2 (N.D.N.Y. Feb. 10, 2009). The parties are obligated to adhere to their disclosure obligations of both the helpful and unhelpful. Fed. R. Civ. P. 26–37. When all of the relevant information is properly gathered through discovery, sorted, and presented to the fact finder, the fair and just result will obtain. *See Gordon v. Target Corp.*, 318 F.R.D. 242, 245 (E.D.N.Y. 2016) (collecting cases). But where that process is so corrupted by one party's failure or refusal to play by the rules, the process breaks down and the search for justice, whatever form it might have taken, is lost. Such is this case. For the reasons that follow, the case is DISMISSED.

**Factual Allegations**

In October 2015, Plaintiff and Defendant Doe were undergraduate classmates at Yale University. Compl., ECF No. 1 at ¶ 16. On Halloween night, 2015, the two attended a Halloween party and student orchestra performance. *Id*. at ¶ 39. Following the concert, Plaintiff accompanied Doe to her room, where a sexual encounter ensued. *Id*. at ¶¶ 39–43. Thereafter, Doe filed a formal

complaint against Plaintiff, alleging that he raped her. *Id*. at ¶¶ 45–46. Plaintiff was suspended by Yale, and after an investigation by the Yale Police Department, criminally charged by the state of Connecticut with, *inter alia,* sexual assault. *Id*. at ¶¶ 47–48. He was subsequently acquitted on all counts after a jury trial and readmitted to Yale in 2018, before being suspended again for unrelated issues in October 2018.[1] *Id*. at ¶¶ 56–64. In November 2018, Yale's University-Wide Committee on Sexual Misconduct ("UWC") convened for a hearing regarding Doe's 2015 sexual assault allegations. *Id*. at ¶ 74. The UWC panel voted to expel Plaintiff. *Id*. at ¶ 80.

**Procedural History**

On December 13, 2019, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") initiated this action against Yale University and several of its employees (the "Yale Defendants"), as well as former Yale student Jane Doe ("Doe," collectively, "Defendants"). Compl., ECF No. 1. His claims arise out of his expulsion from Yale following the Title IX UWC proceedings initiated by Doe's complaint that Khan had sexually assaulted her on October 31, 2015. *See id*. at ¶ 80. In 2019, Plaintiff brought claims against the Yale Defendants for due process violations under Title IX, breach of contract, breach of the implied warranty of fair dealing, negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of privacy. *Id*. at ¶¶ 82–110. He also brought claims of defamation and tortious interference with business relationships against Doe. *Id*. at ¶¶ 111–21.

The parties' familiarity with the allegations and protracted procedural history of this case is presumed. The Court furthers the discussion of the procedural history of this case at the point of remand from the Second Circuit, following Plaintiff's successful appeal of this Court's order,

---

[1] Plaintiff alleges that this suspension was pretextual, related to his history at Yale, and Yale's "prevailing culture" regarding claims of sexual assault. Compl., ECF No. 1 at ¶¶ 67, 70.

2

dismissing the claims against Doe.[2]  The Mandate from the Circuit issued on November 15, 2023.

Mandate, ECF No. 65.  Less than six weeks later, Doe filed a motion for judgment of dismissal on

the ground that Plaintiff had violated this Court's pseudonymity order by publicly naming Doe to

his social media followers on Christmas morning, 2023, as the woman who, he asserted, had falsely

accused him of sexual assault.  Emergency Mot., ECF No. 74 (SEALED).  The Yale Defendants

thereafter amended their Answer to the Complaint by adding an affirmative defense of unclean

hands premised on, *inter alia*, the same conduct.  ECF No. 107.  Through a series of social media

posts, Mr. Khan presaged his intention to name his accuser with a "stay tuned" theme attendant to

each.  The post on Christmas morning was oddly styled as some sort of "big reveal."  It read:

> "most important thread of my life:
> [Jane Doe's Full Name (including Middle Initial) in Bold and Italics]
> in 2015 the military officer of russian origins falsely accused me of rape
> [Jane Doe's Full Name (including Full Middle Name) in Italics]'s 3 sentence email triggered @Yale's bureaucratic machinery that would make kafka proud and horrified"

> Ex. H, ECF No. 75-8 at 2.

Later the same day, Plaintiff also posted the following on the same thread:

> "Some people think this is the title of a court case.  [Jane Doe] is her name.  [Jane Doe] is the one who falsely accused me of rape."

> Ex. I, ECF No. 75-9 at 2.

The Court convened a hearing on the motion on March 18, 2024.  The Court initially shared

its concern that the pseudonymity order did not explicitly preclude Plaintiff from disclosing Doe's

identity outside the confines of the litigation and only required that she not be identified in any

---

[2] The Court dismissed the claims finding that quasi-judicial immunity protected Doe from claims arising out of statements she made at the UWC proceedings.  Mandate, ECF No. 65-1 at 2–3.  Upon appeal, the Circuit court certified the question of quasi-judicial immunity under Connecticut law and its availability under the circumstances alleged here.  *Id*. at 5–6 n.4.  While the Connecticut Supreme Court acknowledged that quasi-judicial immunity is recognized under Connecticut law, it further held that the procedures employed by Yale were so lacking, that quasi-judicial absolute immunity did not attach to Doe's statements at the UWC hearing.  *Id*. at 6.  The case was then remanded with direction to deny Doe's motion to dismiss.  *Id*. at 2–3.

3

submission docketed in this case. Tr., ECF No. 94 at 3–6. While Plaintiff's conduct certainly violated the spirit of the pseudonymity order, the Court could not conclude that it was expressly prohibited by the order.[3] Accordingly, the Court determined that dismissal as a sanction for the disclosure was not warranted. *Id*. at 24.

However, at the hearing, counsel for Plaintiff[4] expressed the view that the disclosure was inappropriate and perhaps contrary to the parties' mutual understanding that such a disclosure would run afoul of the pseudonymity order, whether it would or would not. *See id*. at 7–8.

The Court thanked counsel for his candor and continued: "What I have seen does give me concern about what's going on here, and some of the things that Mr. Khan has done that give me pause. Because some of the tenor and tone of the posts feel less like his plan is to have his rights vindicated as it is to exact retribution, and that is not the purpose of the use of our courts or litigation generally. When he has posted about the litigation and talking about attending depositions,[5] there is a sense of an intent to intimidate. There is a sense of an intent to harass. The idea of sort of mobilizing the Internet — I mean, this is borderline doxing, and it's very concerning." *Id*. at 8–9. While Plaintiff disagreed with the Court's assessment, through counsel, he assured the Court that his intentions were "to fully and fairly litigate this case and bring it to a jury." *Id*. at 12. Counsel continued: "I've explained to him that any other questions about his compliance with court orders could cost him my representation of him. . . . So his intentions are to

---

[3] By the time of the hearing, Doe had filed a motion for a protective order, seeking to preclude Plaintiff's access to certain non-public discovery. Mot. for Prot. Order, ECF Nos. 81, 82 (SEALED). On March 15, Plaintiff had filed his objection to the motion for a protective order and filed a separate motion to vacate the Court's order treating Doe pseudonymously. *See* ECF Nos. 90, 89. Both motions had been referred to Magistrate Judge Garcia for adjudication and the Court did not take up the issues raised in the cross motions. *See* Order, ECF No. 92.

[4] Attorney Norman A. Pattis represented Plaintiff. He subsequently sought permission to withdraw, Mot. to Withdraw, ECF No. 176, which was granted, Order, ECF No. 178.

[5] Plaintiff posted: "Deposition will be even more exciting now[,]" Ex. G., ECF No. 75-7 at 22, and "I'm showing up to my false accuser's deposition. And every other defendant's deposition[,]" *id*. at 12.

obey your orders, but to fight hard to vindicate his claims." *Id*. at 12–13. The Court then expressed concern that Plaintiff may intend to litigate the case on social media out of concern that it could "infect the entire process." *Id*. at 14.[6] Although Plaintiff challenged the Court's authority to essentially issue a "gag order," precluding him from discussing the case more broadly on social medial, the issue was not further discussed and no specific order was issued save for an order that Plaintiff not disclose Doe's name on social media until such time as the then-pending motions addressing the pseudonymity order and Doe's requested protective order were fully adjudicated. *Id*. at 19–20. The Court further ordered Plaintiff to remove any of his posts on social media that contained Doe's true name. For his part, Plaintiff apologized; decried any intent to harass or intimidate and acknowledged that he "jumped the gun," because he "misunderstood." *Id*. at 21.[7]

On June 19, 2024, following extensive briefing and oral argument, Magistrate Judge Garcia issued a ruling on the competing motions regarding Doe's anonymity. *See* Ruling and Order, ECF No. 119. Therein, she determined that Jane Doe's continued anonymity was warranted and issued an order (the "June 19 Order") prohibiting Plaintiff or his counsel from directly or indirectly "publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform," and informing Plaintiff that any "release or deliberate disclosure of Jane Doe's identity" in violation of the order could subject him to sanctions, "including but not limited to

---

[6] The Court's concerns proved prescient. As brought to the Court's attention by the Yale Defendants, on June 16, 2025, Plaintiff, in response to an inquiry regarding the status of the case, posted to his X account: "We're deep in discovery. Yale refuses to provide the very damning documents so we filed motions to compel them. And the pseudonym is on the chopping block. Once that happens, operation dragonfire will start. Several chapters in the pipeline." Yale Opp. to Mot. to Compel, ECF No 345 at 2. The Court construed this posting to be a thinly veiled threat to publicly name Jane Doe and admonished Plaintiff that to do so would violate the June 19 Order. Order, ECF No. 354.

[7] The Court, at the hearing on Defendants' second motion to dismiss found that Plaintiff's statements to the Court during the hearing on the first motion to dismiss were dishonest. *See* Tr., ECF No. 200 at 46. For example, as Defendant Doe demonstrated in her memorandum in support of the second motion to dismiss, discovery (certain recordings) revealed that Plaintiff, by his own admission, understood prior to Christmas 2023, that he could not reveal Jane Doe's name. Defendant Doe also identified several other of Plaintiff's averments which were belied by the discovery in the case. *See* Ex. D, ECF No. 279-4 at 5–6 (SEALED).

dismissal." *See id*. at 15. Thereafter, by motions dated June 24, 2025 and June 28, 2025, Doe and the Yale Defendants again sought dismissal of this action as a sanction for Plaintiff's willful violation of the June 19 Order. Doe Second Emerg. Mot. to Dismiss, ECF No. 123 (SEALED); Yale Emerg. Mot. to Dismiss, ECF No. 130. After briefing and oral argument, the Court again denied the motions to dismiss. Order, ECF No. 265. Although the Court rejected Plaintiff's argument that he had not intentionally violated the June 19 Order, and indeed, found that he had willfully done so, the Court also concluded that the severe sanction of dismissal was not warranted, given the Court's strong preference for cases to be adjudicated on their merits. *Id*. at 13, 15. Because the Plaintiff's conduct leading up to the second motions to dismiss, which the Court found to be "egregious" is part of an escalating pattern of Plaintiff thwarting his obligations in this litigation, the Court repeats the underlying factual basis for the motion and the Court's findings. *Id*. at 13.

Screenshots of Plaintiff's posts beginning within hours of the issuance of the June 19 Order reveal the following posts: "i [sic] have been officially gagged by the federal court system of the United States for my speech on this platform," and posted a picture of the June 19 Order with the relevant portion highlighted. Doe Second Emerg. Mot., ECF No. 123-1 at 7, 9 (SEALED). He then posted "my actions are limited. I am going to 100% obey this ruling. I can't directly or indirectly tell anyone what to do. In no way shape or form should my [posts] here be interpreted in any way to construe anything beyond the limited scope of 'this ruling applies to me.'" *Id*. at 8, 10 (SEALED). Other individuals on the platform responded to Plaintiff's posts. One wrote "Sorry to hear about this. It's a damn shame someone can make false accusations and remain anonymous. A huge flaw in the system. Hoping one day her name can be revealed so that her and others like her are shamed. It's only right." *Id*. at 10 (SEALED). Plaintiff responded, "c'est la vie. i'm [sic]

6

doing my part. hopefully [sic] others contribute in their own way." *Id*. (SEALED). To another user, who posted "others can still say her name tho [sic] Sir," Plaintiff wrote, "I can not [sic] instruct anyone on their personal actions. I must fully adhere, abide, and be obedient to the courts and the rule of law." *Id*. at 11 (SEALED). Plaintiff went on to specifically "tag" another user, writing to this person "[other user] et al; this gag order only applies to me." *Id*. (SEALED). That individual then posted a photo of Jane from when she was in high school and her real name, which the same user had also done following Plaintiff's disclosure of Doe's name on Christmas in 2023. *Id*. at 12 (SEALED). Plaintiff did not deny that he made these posts. Rather, he argued that his posts did not violate the June 19 Order. Tr., ECF No. 150 at 23–24.

In its ruling denying the motion to dismiss, the Court first acknowledged Plaintiff's "troubling" conduct in connection with the "bizarre suspense building exercise" by which Plaintiff disclosed Doe's identity on Christmas morning 2023 and observed that Plaintiff was warned that his "conduct was not an appropriate adjunct to this litigation." Order, ECF No. 265 at 13–14. The Court found that after the issuance of the June 19 Order,

> "Almost immediately, Plaintiff took again to his social media account; posted the Court's order; declared himself 'gagged' by the federal courts; clarified that the order only applied to him, not to others; espoused that perhaps 'others would do their part;' and tagged a specific individual who, on cue, then revealed Doe's name and photograph. Having already revealed Doe's identity via the same account seven months earlier, Plaintiff knew that his audience could (and likely would) easily share this information."

> *Id*. at 14 (citations omitted).

The Court rejected Plaintiff's argument that his intent when posting was "irrelevant" and that his conduct did not actually violate the letter of the June 19 Order as utterly specious. *Id*. The Court concluded that Plaintiff's posts were designed to and did in fact cause others to act in a fashion that violated the June 19 Order. He was the impetus behind the disclosure, and through

7

his words and deeds, manipulated his "followers" to achieve his desired result. His protestations to the contrary were "belied by the entirety of the record before the Court and [were deemed] otherwise not credible." *Id*. at 15.

Nonetheless, the Court did not dismiss the case observing that Defendants would be permitted to cross-examine the Plaintiff at trial regarding all of his litigation misconduct as probative of his motives, his bias, and ultimately his credibility. *Id*. at 16. Perhaps out of an ill-conceived well-spring of hope, the Court believed such a prospect would serve to deter Plaintiff from further misconduct.

The instant motion to dismiss was filed on May 20, 2025 by Doe and the Yale Defendants. ECF Nos. 332, 333 (SEALED). Defendants attach documents and evidence that they argue demonstrate sweeping and repeated instances of litigation misconduct. Plaintiff filed his response to the motion on June 27, 2025. Opp. to Mot. to Dismiss, ECF No. 364 (SEALED). On July 10, 2025, Defendants filed a supplemental memorandum in support of the motion to dismiss to which they attach additional documentary evidence of yet more misconduct by Plaintiff. Ex. 1, ECF 371-1. On July 11, 2025, the Defendants filed a Reply in further support of the motion. Def. Reply, ECF No. 373. Plaintiff filed a response to the supplemental memorandum on July 20, 2025. Pl. Resp., ECF No. 377. Given the serious and troubling nature of the allegations, the Court, *sua sponte*, stayed the case pending adjudication of the instant motion. Order, ECF No. 361.

**Standard of Review**

*Inherent Authority*

"It is well settled that 'courts traditionally have exercised considerable authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Hall v. Oriska Corp Gen. Contracting*, No. 21-1564, 2022 WL 17420307, at *2 (2d Cir. Dec. 6, 2022) (quoting

8

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989)). This inherent authority includes the power to sanction "bad-faith conduct." *Davis v. Saint Luke's-Roosevelt Hosp. Ctr.*, 771 F. App'x 116, 116 (2d Cir. 2019) (summary order) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, (1991)). Such sanctionable bad-faith conduct includes "abuse of the judicial process[.]" *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). A court's decision to impose sanctions under its inherent authority is "truly discretionary," *id.*, but "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "Such sanctions are warranted only where there is clear and convincing evidence of bad faith." *Harvin v. Cheney*, No. 3:23-cv-328 (MPS), 2024 WL 2044696, at *4 (D. Conn. May 7, 2024) (citing *Yukos Cap. S.A.R.L.*, 977 F.3d at 235).

"The sanction of dismissal . . . is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Davis*, 771 F. App'x at 116 (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)). If a party's conduct evinces "flagrant bad faith," a court may resort to dismissal "not merely to penalize," but "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Dismissal is also appropriate where "'a party . . . abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Davis v. Saint Luke's Roosevelt Hosp.*, No. 16-cv-6279 (JPO), 2018 WL 10384114, at *1 (S.D.N.Y. Apr. 16, 2018), *aff'd sub nom. Davis*, 771 F. App'x 116 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).

**Rule 41(b)**

In addition to their inherent and traditional authority, federal courts are explicitly authorized to involuntarily dismiss cases under Fed. R. Civ. P. 41(b). Rule 41(b) provides for dismissal "[i]f the plaintiff fails to prosecute or to comply with [the federal] rules or a court order." The decision to dismiss an action as a sanction lies within the discretion of the district court. *Smalls v. Cnty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017). The Second Circuit has identified five factors to guide the Court's exercise of discretion under Rule 41(b). District courts must consider:

> "(1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal."
>
> *Spencer v. Doe*, 139 F.3d 107, 112–13 (2d Cir. 1998) (citation omitted); *see also Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d. Cir. 1995).

No one factor is dispositive. *Spencer*, 139 F.3d at 113. Because a Rule 41(b) dismissal "is one of the harshest sanctions," it must "'be proceeded by particular procedural prerequisites, including notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Smalls*, 718 F. App'x at 19 (quoting *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014)). A "dismissal pursuant to Rule 41(b) operates as adjudication on the merits unless otherwise specified by the Court." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 89 (D. Conn. 2007).

**Rule 37**

Pursuant to Rule 37(b), if a party fails to obey a discovery order, the Court may issue an order, inter alia, "prohibiting the disobedient party from supporting . . . designated claims . . . or from introducing designated matters in evidence; . . . dismissing the action . . . in whole or in part;

10

[or] rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). "A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). For example, in *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, the United States Court of Appeals for the Second Circuit upheld the dismissal of a party's complaint "for its failure to obey repeated orders to provide discovery" to an opposing party. 845 F.2d 1172, 1176 (2d Cir. 1988). There, the court found noteworthy that the non-compliant party "repeatedly refused to answer" the other party's interrogatories. *Id*. Although the Second Circuit acknowledged that dismissal was a "drastic remedy," it agreed with the district court that the non-compliant party's "flagrant disregard of court orders . . . justified the imposition of the sanction of dismissal: [the non-compliant party] failed to provide any meaningful discovery concerning a core trial issue despite three clear court orders, which included two warnings that dismissal would follow if [the non-compliant party] failed to provide adequate responses." *Id*. at 1176–77.

Under whatever authority the Court proceeds, it is well-established that there is a clear and significant preference for cases to be decided on their merits. *See Mandala v. NTT Data, Inc.*, 88 F. 4th 353, 362 (2d Cir. 2023). As such, dismissal is considered the least-favored sanction, and the sanction of last resort. *Harvin*, 2024 WL 2044696, at *4 (citing *Shcherbakovskiy*, 490 F.3d at 140). And if the Court can fashion lesser sanctions to address the party's misconduct, lesser sanctions should be chosen. *Id*.

**The allegations of misconduct**

The Defendants' allegations encompass multiple instances of misconduct which, generally fall into five buckets. First, Defendants assert that Plaintiff intentionally produced over 70,000 pages of documents in discovery — of which roughly 85% were deemed wholly irrelevant or

11

unresponsive — in bad faith and for the purpose of delaying impending depositions. Second, Defendants assert that the withholding of text messages between Plaintiff and Peter Roe on the basis of attorney-client or work product privilege was utterly specious. Third, Defendants assert that Plaintiff lied in his certified Interrogatory responses when he failed to disclose multiple accusations of sexual harassment or sexual misconduct levied against him by women other than Jane Doe when he was a student at Yale. Fourth, Defendants assert that, similar to his prior conduct, Plaintiff indirectly disclosed Doe's identity when he posted (and re-posted) a video wherein he complains about his inability to name Jane Doe, which, predictably, resulted in his followers doing just that. Fifth, Defendants identified multiple instances where Plaintiff has been dishonest with the Courts.[8] Ultimately, Defendants assert, enough is enough. Plaintiff cannot be trusted to proceed in good faith, and that given the current record before the Court, Defendants are left at an insurmountable disadvantage. As was argued, they do not know what they do not know and Plaintiff cannot be trusted to answer honestly the Defendants' inquiries in discovery. *See* Tr., ECF No. 397 at 87.

Plaintiff denies any bad faith litigation conduct either with respect to the document production; the assertion of attorney-client privilege or the interrogatory responses. He denies "indirectly" disclosing Jane Doe's identity for a second time and otherwise attempts to explain away the Defendants' accusations. Opp. to Mot. to Dismiss, ECF No. 364 at 3–4 (SEALED). Tellingly, Plaintiff's opposition to the motion to dismiss attaches no documentary or testimonial evidence. *See generally* Opp. to Mot. to Dismiss, ECF No. 364 (SEALED). In terms of Plaintiff's

---

[8] This list is not exhaustive. By way of further example only, Defendants accuse Plaintiff of additional unauthorized disclosure of protected material to a blogger and accuse Plaintiff of signing a release of information authorization but then taking steps to block any release of information. See Mot. to Dismiss, ECF No. 332 at 7–9. The Court need not, decide whether Defendants' additional accusations are proven, insofar as it has determined to dismiss this case for the reasons discussed above.

12

conduct, the opposition engages in a series of conjectural musings in an effort to suggest an alternative, innocent, explanation for Plaintiff's lapses. *See id*. (SEALED). What the opposition does not do is confront the growing mountain of evidence that Plaintiff simply cannot be trusted to act in good faith, to meet his discovery obligations honestly, and to abide by the Court's orders.

*The Document Production*

On May 13, 2024, the Court referred this matter to Judge Garcia to provide pretrial management, discovery oversight, and scheduling. Ref. Order, ECF No. 110. Judge Garcia met frequently with counsel to promptly address any concerns or disagreements that arose. *See* Minute Entries, ECF Nos. 120, 174, 192, 240, 256, 263, 272, 286, 296, 306, 330. Discovery was scheduled to be completed by April 15, 2025. Order, ECF No. 68. Multiple depositions were scheduled for or anticipated to be scheduled in March of 2025. Orders, ECF Nos. 257, 262. However, there remained outstanding issues regarding additional documents to be produced by Plaintiff. *See* Joint Status Report, ECF No. 261; Order, ECF No. 262. As of February 18, 2025, Plaintiff's deadline to produce responsive documents and a privilege log was February 21, 2025. Order, ECF No. 262. On February 18, 2025, the parties jointly requested a modest modification to the deadline and sought a one-week extension for Plaintiff to produce both additional documents and a privilege log. Joint Mot. for Ext. of Time, ECF No. 274 at 1. The joint motion further requested that Defendants be permitted to disclose experts *three (3) days* after the production, so as to allow a review of the production in advance of the expert disclosures. *Id*. at 2.[9]

On February 27, 2025, Plaintiff sent Defendants a link to the remaining document production. *See* Joint Status Report and Mot. for Ext. of Time, ECF No. 284 at 1. The production

---

[9] Defendants reasonably posit that in requesting only three days to review the anticipated production before disclosing experts, it is manifest that Defendants anticipated a much smaller final production of records from the Plaintiff. Notably, Plaintiff joined in the request, implicitly assuring the Defendants that the impending production could be meaningfully reviewed in three days. Joint Mot. for Ext. of Time, ECF No. 274 at 2.

numbered in excess of 70,000 pages of documents, requiring the postponement of then-scheduled depositions, further extensions of the scheduling order as well as an extensive and expensive document review. *Id*. Through the Affidavit of reviewing counsel, Defendants aver, and Plaintiff does not meaningfully disagree, that the documents were largely irrelevant. Ex. G, ECF No. 332-2 at ¶ 4. Counsel avers that approximately 85% of the documents are unresponsive to the requests, and even if arguably responsive, completely irrelevant. *Id*. at ¶¶ 4–5. The documents included many spam emails to Plaintiff; advertisements, communications with various persons which pre-date the events at issue, sometimes by years; pornography (admittedly by mistake); Uber receipts; restaurant recommendations; credit card payment reminders; blast email announcements on unrelated issues and the like. *Id*. at ¶¶ 6–7.

Defendants argue that this was a contrived dump of voluminous documents in order to extend, of necessity, the case management schedule set by the Court. Mot. to Dismiss, ECF No. 332 at 11. In response, Plaintiff decries any bad faith and argues simply that he erred on the side of disclosure to avoid any claim that he inappropriately withheld documents. Opp., ECF No. 364 at 6–9 (SEALED). It is difficult to discern any legitimate decision to err on the side of production for many of the records produced, i.e. random advertisements.

*Indirectly Identifying Jane Doe on Social Media*

After the Court's decision on Defendants' second motion to dismiss, in which the Court concluded that Plaintiff had willfully and egregiously instigated the disclosure of Jane's identity by his social media followers, *see* Order, ECF No. 265 at 13, Defendants aver he did it again, *see* Mot. to Dismiss, ECF No. 332 at 9–11.

Plaintiff gave a video interview with a blogger regarding this litigation. Ex. B, ECF No. 333-2 (SEALED). During the interview, Plaintiff lamented his inability to publicly disclose Doe's

14

**SPA-14**

name by virtue of the Court's order. *Id*. (SEALED). After the video interview was posted by the blogger, Plaintiff re-posted the video four times to his social media followers, to include those who had previously disclosed Jane's name at Plaintiff's instigation. Ex. C, ECF No. 333-3 (SEALED). One of the re-posts included the caption "Next, naming the infamous Jane Doe!". *Id*. at 3 (SEALED). Not surprisingly, in response, multiple of Plaintiff's followers again posted Doe's name. *See* Ex. E, ECF No. 333-5 (SEALED). As he did in response to the second motion to dismiss, Plaintiff decries any responsibility for the disclosure and asserts the same specious argument that the Court expressly rejected when ruling on the earlier motion. Opp. to Mot. to Dismiss, ECF No. 364 at 5–6 (SEALED).

*Interrogatory Responses*

Defendant Jane Doe served Interrogatories on Plaintiff. Ex. H, ECF No. 332-3. Interrogatory No. 10 asked: "Please identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them and please identify all documents and communications, other than communications with your attorneys, regarding all such allegations, statements, and/or assertions of sexual misconduct against you." *Id*. at 4. In the instructions and definitions section, Jane Doe defined "sexual misconduct" in line with Yale's definition to mean "sexual assault (which includes rape, groping, and any other non-consensual sexual contact), sexual harassment, intimate partner violence, stalking, and any other conduct of a sexual nature that is non-consensual, or has the purpose or effect of threatening or intimidating a person or persons." *Id*. at 3. In response, Plaintiff answered: "Jane Doe[;] Peter Roe[.]" Ex. J, ECF No. 332-5 at 3. The Interrogatory responses were signed and sworn to by Plaintiff. *Id*. at 4.

15

Defendants challenged the completeness of this answer. Mot. to Dismiss, ECF No. 332 at 17–25; Ex. T, ECF No. 332-9. In response, Plaintiff's counsel confirmed that he had discussed the issue with his client and confirmed that the answer was accurate. Aff., ECF No. 332-1 at ¶ 4. Defendants have produced documentary evidence which reveal that Plaintiff was accused of sexual misconduct while a student at Yale by other young women. *See* Ex. K, ECF No. 333-8 (SEALED); Ex. L, ECF No. 333-9 (SEALED); Ex. M, ECF No. 332-6; Ex. N, ECF No. 332-7; Ex. O, ECF No. 333-10 (SEALED); Ex. P, ECF No. 333-11 (SEALED); Ex. Q, ECF No. 333-12 (SEALED); Ex. R, ECF No. 332-8; Ex. S, ECF No. 333-13 (SEALED).

In Spring 2013, a woman pseudonymously identified as "Sally Roe 2" reported to Plaintiff's Residential College Dean and Academic Advisor that Plaintiff had "grabb[ed] her and forc[ed] himself on her." Ex. K, ECF No. 333-8 at 2 (SEALED). The Title IX Coordinator met with both Sally Roe 2 and Plaintiff. *Id*. (SEALED). Plaintiff told his Dean that he realized his behavior was not appropriate and, at the suggestion of the Dean, wrote Sally Roe 2 an apology email. *Id*. at 3 (SEALED).

Approximately one year later in Spring 2014, another woman, referred to pseudonymously as "Sally Roe 1" reported an incident that occurred in March or April of 2013. Ex. L, ECF No. 333-9 at 2 (SEALED). She reported that after a party, Plaintiff grabbed her, made out with her in a forceful way, attempted to remove her clothes, and requested sex, oral sex, and other sexual acts multiple times, to each of which she said no. *Id*. (SEALED). She reported that he kissed her so forcefully that it caused her ear to bleed. She reported that Plaintiff "persistently" texted her for months following the incident. *Id*. (SEALED). At the time, Plaintiff denied the allegations. He did recall her ear was bleeding but thought it was from an earring, felt bad that he did not read her cues accurately, and agreed to attend training from Yale's Sexual Harassment and Assault Response

16

& Education ("SHARE") Center.  *Id*. (SEALED).  Plaintiff communicated with staff members and his Dean several times regarding the informal UWC complaint that was filed by Sally Roe 1 and the SHARE training over email.  *Id*. at 3–5 (SEALED).

In November 2017, the Yale Daily News reported on a Facebook post wherein a Yale student wrote that Plaintiff had "made forceful advances on her and offered her drugs."  Ex. M, ECF No. 332-6 at 4.  The article also detailed a second report from a first-year student to whom Plaintiff "forcefully . . . ma[d]e advances."  *Id*. at 7.  She reported that he had also offered her drugs, which she declined.  *Id*. at 8.

In 2014, Plaintiff, a member of the Yale College Council (YCC), became involved in a dispute with another YCC member.  He accused her of making false accusations against him of sexual misconduct involving other Yale students.  The dispute was the subject of an article in the Yale Daily News in which the YCC member confirmed that she had learned that multiple female students had considered reporting sexual misconduct by Plaintiff.  While it is unclear whether Plaintiff knew the identities of these other women, he was certainly aware of the article as it was sent to him by an acquaintance.  Ex. N, ECF No. 332-7.

As acknowledged and disclosed by Plaintiff, a (now former) friend of Plaintiff, Peter Roe, made a sexual assault complaint against Plaintiff.  Ex. J, ECF No. 332-5.  What Plaintiff did not disclose in his Interrogatory response was that the incident giving rise to Peter Roe's accusation, involved a third person, referred in the discovery as "Sophie."  *Id*.  Sophie agreed to meet for a sexual encounter with Peter Roe and Plaintiff in June 2018.  Ex. R, ECF No. 332-8 at 8.  In October 2018, the Yale Daily News published an article regarding the sexual encounter, to include, Peter Roe and Sophie's allegations of what occurred.  *Id*. at 8–10.  Sophie alleged that Plaintiff restrained her from behind; forced wine down her throat; hit her very hard, and "left some pretty unacceptable

17

**SPA-17**

marks" on her face. *Id*. at 9. It is beyond the pale to suggest for even a moment that Plaintiff was unaware of Sophie's accusations, especially, as discussed below, Plaintiff and Peter Roe planned the encounter and even anticipated the potential use of violence against Sophie.[10] *Id*.

In the face of this evidence, Plaintiff's opposition speculates that Plaintiff perhaps did not recall these events or perhaps Plaintiff did not consider these events responsive. See Opp. to Mot. to Dismiss, ECF No. 364 at 11–13 (SEALED); Tr. ECF No. 397 at 37–41. Plaintiff's counsel need not speculate as to why his client did or did not include these accusations in his Interrogatory response. He could have simply asked his client to explain himself. He chose not to do so.

At the hearing on the instant motion, Plaintiff testified, due in large measure to the Court's dissatisfaction with the opposition.[11] Tr., ECF No. 397 at 71–80. He testified that he interpreted the Interrogatory as only including circumstances where he had been charged criminally. *Id*. at 73–74. However, the Defendants specifically challenged the Interrogatory response. Mot. to Dismiss, ECF No. 332 at 18–25; Ex. T, ECF No. 332-9. In a deficiency letter attached as Exhibit T to Defendants' motion, Defendants told Plaintiff's counsel: "We believe Plaintiff's response is deficient and request that he supplement it. For example, if you click here, you will see a video of Plaintiff saying that 'there were about twenty different complaints against him' after his return to Yale. Please have Plaintiff identify the individuals who made complaints, allegations, etc. of sexual misconduct against him." Ex. T, ECF No. 332-9 at 3. Following a meet and confer, Plaintiff's counsel confirmed that he had discussed the issue with his client and confirmed the

---

[10] Defendants identify additional complaints against Plaintiff which surfaced in 2018 and which referenced conduct from prior years. *See, e.g.*, Ex. P, ECF No. 333-11 (SEALED); Ex. Q, ECF No. 333-12 (SEALED). It is unclear the extent to which Plaintiff knew the identities of these women or the specifics of their allegations. He has referenced them generically at times and so appears to have had some knowledge as to additional complaints against him. *See, e.g.*, Ex. S, ECF No. 333-13 at 4 (SEALED). It is not obvious however that such generic knowledge would have triggered his disclosure obligations as to Interrogatory 10.

[11] The Court recognized that Plaintiff could assert applicable privileges to the Court's inquiry. Tr., ECF No. 397 at 4. He did not assert any such privilege. *Id*. at 71–80.

18

**SPA-18**

accuracy of his sworn interrogatory answer. Aff., ECF No. 332-1 at ¶ 4; ECF No. 333 at 24 (SEALED). Against this backdrop, Plaintiff's testimony is simply not credible.

*The Assertion of Attorney Client Privilege – Peter Roe*

In response to Jane Doe's discovery requests, Plaintiff asserted that some of the requested documents were "protected by the attorney-client privilege and work product protection/privilege." Ex. J, ECF No. 332-5 at 5. He thus withheld communications between Plaintiff and Peter Roe, on the assertion that Peter Roe was part of Plaintiff's legal team.

Peter Row is a former friend of Plaintiff. As discussed above, the relationship soured, and Peter Roe ultimately accused Plaintiff of sexual assault in connection with the encounter with Sophie. Ex. R, ECF No. 332-8. But prior to their falling out, they were in frequent communication, largely by text message. It was these text messages that Plaintiff sought to protect from disclosure. Although Plaintiff subsequently withdrew the privilege assertion on the eve of oral argument on Defendants' motion to compel the communications, the issue is not, as posited by Plaintiff, rendered moot or meaningless.

Before reviewing the communications themselves, a review of the basic parameters of the attorney client and work product privilege is appropriate. "Federal Rule of Civil Procedure ('FRCP') 26 requires that the party asserting a privilege '(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 36 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (quoting Fed. R. Civ. P. 26(b)(5)(A)).

19

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cnty of Erie,* 473 F.3d 413, 419 (2d Cir. 2007)). "The privilege's underlying purpose has long been 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id*. (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "[I]n order for the attorney-client privilege to apply, 'the *predominant purpose*' of the communication must be 'to render or solicit legal advice.'" *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (quoting *Erie*, 473 F.3d at 420) (emphasis added).

The party asserting the attorney-client privilege bears the burden of establishing that the communications to be protected are, indeed, communications between a client and their attorney, intended to be confidential, and were for the purpose of obtaining or providing legal advice. *Id*.; s*ee also Harnage v. Kenny*, No. 3:19-cv-938 (SDV), 2022 WL 2046140, at *3 (D. Conn. June 7, 2022) ("The party asserting the privilege bears the burden of establishing its elements." (citation omitted)).

Attorney work-product privilege is distinct from attorney-client privilege. "The work-product privilege protects documents created by counsel or per counsel's directive, in anticipation of litigation." *Koumoulis*, 295 F.R.D. at 39 (citing *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379, 383 (2d Cir.2003)). The party asserting the privilege again bears the burden of demonstrating that they are entitled to such privilege. "To be entitled to protection for opinion work product, the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to

20

pending or anticipated litigation.'" *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183–84 (2d Cir. 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386)). Conclusory assertions of privilege are insufficient. *Koumoulis*, 295 F.R.D. at 39.

Against this back drop, the Court turns to the withheld communications. In 2018, Plaintiff and Mr. Roe were planning to meet together, with Sophie, for a sexual encounter. In advance of this encounter, on May 23, 2018, Plaintiff and Mr. Roe texted.

> Mr. Roe: Just locked down someone for the 6th and 7th [by the way] . . . Who's your daddy . . . I mean . . . khasegi
>
> . . .
>
> Plaintiff: Oh nice . . . That should be fun.
>
> Mr. Roe: Yeah, she seems great. Into spanking, gagging, pain, nipple play, breath play, bondage, discipline and "spit for lube" . . . this will be the first time ive intentionally had a sexual experience with a woman.
>
> Plaintiff: ah okay
>
> Mr. Roe: You dont seem nearly as excited as i was hoping you would be lol
>
> Plaintiff: I am . . . just busy . . . didn't sleep well.

Ex. B, ECF No. 371-3 at 2–4.

Mr. Roe sends a photo of Sophie to Plaintiff and they discuss her personal appearance as well as her academic background. *Id*. at 5–7. The conversation continues:

> Mr. Roe: She has been looking for a male couple to cuckold. . . .She wants me to "eat her p[slang] while he f[expletive]s me."
>
> Plaintiff: That is crazy hot.

*Id*. at 7.

21

The text messages continued on mundane matters. Later the same day, the conversation returned to Sophie and a discussion of the sexual encounter with explicit detail as to what Plaintiff envisioned occurring. Mr. Roe responded: "Haha. Whatever you ask of me, ill make it happen." *Id*. at 15. The conversation continues:

> Mr. Roe: . . . She and i talked about some things but i told her youd probably be fine just talking about it in person which is what she prefers.

> Plaintiff: Okay good :) . . . Bitch is getting con non con

> Mr. Roe: Con non con?

> Plaintiff: Non consensual.

> . . .

> Mr. Roe: Her only concern was that you may be too dominant because she wanted to be serviced too. Which . . . I can take care of that . . .

> Plaintiff: Well, I do abuse sluts and do a bit of after care.

> *Id*. at 19–21.

The text conversation continued on the subject of the planned sexual encounter with Sophie as well as Mr. Roe's sexual attraction to Plaintiff.

Plaintiff's privilege log described the May 23, 2018 text exchange as follows: "khan and legal team discuss post-trial logistics, FACE matters, media and related info — work product protection because this discussion was at the direction of attorneys and in preparation for litigation." Ex. C, ECF No. 371-4 at 2. This assertion is sanctionable on its face and given the damning nature of the communications in the context of this litigation — a claim that Jane Doe falsely accused Plaintiff of sexual assault — an intent to conceal from the fact finder, probative and relevant evidence, is not only a reasonable inference but perhaps a necessary one. *See* Fed. R. Civ. P. 37.

22

Earlier text messages were also withheld.  On March 26, 2018, in response to a text from Mr. Roe which contained a photo of an unnamed blond woman, Plaintiff wrote: "F[expletive]. Blonde bimbos is my fetish. . . . I want to choke them."  Ex. D, ECF No. 371-5 at 2–3.  On April 13, 2018, Plaintiff texted Mr. Roe: "Like literally they should sell rape fantasy books" to which Mr. Roe responded: "I'm sure they do."  Plaintiff added, "With stories from reality . . . They do?"  Ex. E, ECF No. 371-6 at 2.  On April 5, 2018, in response to another photograph sent to Plaintiff from Mr. Roe, Plaintiff texted: "If a f[slur] girl like that looked at me with a lil weener between her legs . . . I'd pounce on her."  Ex. F, ECF No. 371-7 at 2.

During a separate text conversation on May 11, 2018, Plaintiff texted Mr. Roe: "If I had 5 dollars for every gender, I would have 5 dollars coz women are objects."  Ex. H, ECF No. 371-10 at 3.  Also on May 11, 2018, Mr. Roe texted about a different woman, [name omitted]: "I feel like she'd definitely be down to have a f[slur] eat her out after she's just had her brains f[expletive] out by an alpha rapist [smiling with tongue out emoji]," to which Plaintiff responded: "That's so hot."  Mr. Roe then texted: "I bet she'd let you do violent things to her too."  Ex. J, ECF No. 371-11 at 2.  The discussion then turns to an explicit discussion about Mr. Roe and Plaintiff participating in what can best be described as a rape fantasy.[12]  *Id*. at 3–4.  Mr. Roe and Plaintiff also discuss finances, taxes, the stock market, investing and other personal matters.[13]  Ex. K, ECF 371-12 at 3–18.  What they do not discuss is pending or anticipated litigation.

---

[12] Mr. Roe: "God.  I'd love to watch a girl lose control completely.  Lay helplessly while you plow her and all she can do is whimper. . . . She won't be able to say no.  I'll be holding her mouth for you."  To this, Plaintiff responded: "doesn't matter if she screams so let her mouth be open . . . I got my fingers to push into her throat."  To this, Mr. Roe responded: "So hot."  Ex. J, ECF No. 371-11 at 4.

[13] The Second Circuit has explicitly held that such communications are not protected by attorney-client privilege.  *See, e.g.*, *Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962) ("Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever.") (collecting cases).

23

All of these communications were withheld on the assertion of an attorney-client or work product privilege on the theory that Mr. Roe provided paralegal-like assistance to Plaintiff's legal team. Resp., ECF No. 377 at 1–2. In response to the motion to dismiss, Plaintiff blithely asserts that "Parties are entitled to test the boundaries of privilege so long as they log the documents and have a plausible basis, as Plaintiff did here." *Id*. at 2. Plaintiff is wrong. Although he asserts that Mr. Roe was a "volunteer paralegal" assisting with Plaintiff's post-trial matters, this is irrelevant. *Id*. Regardless of whatever label Plaintiff tried to put on Mr. Roe, there is simply no construction of the conversations that would bring them, even arguably, within the scope of any privilege — attorney-client or work product. The privileged communications must be for the purpose of obtaining legal advice. *See, e.g.*, *Favors*, 285 F.R.D. at 198. Rape fantasies and strategizing a three-way sexual encounter cannot, in good faith, be characterized as an attorney-client communication subject to the privilege. Nor frankly, can the mundane communications about finances, the stock market, taxes and the like be so labeled. *See Colton*, 306 F.2d at 638.

And it goes without saying, or least it should, that there are no non-frivolous claims to be made that these communications were "at the direction of" Plaintiff's lawyers "in anticipation of litigation." Ex. C, ECF No. 371-4 at 2; *see also Koumoulis*, 295 F.R.D. at 39. The inescapable conclusion is that Plaintiff did not want to disclose these communications and therefore attempted to shield them behind a specious assertion of the privilege and a misleading and false privilege log.

*Dishonesty with the Court*

Defendants also assert that Plaintiff has been dishonest in his dealings with the Court. Following the issuance of the June 19 Order, ECF No. 119, Plaintiff received a request from the Department of Homeland Security in connection with his asylum application. *See* ECF No. 207

24

(SEALED). The request sought transcripts from Plaintiff's criminal trial. Because he had previously submitted unredacted versions of those transcripts in 2021, he sought to do so again, but feared such action would run afoul of the June 19 Order. Emerg. Mot., ECF No. 206 at 1–2. Plaintiff therefore sought relief from the Order insofar as "Plaintiff believe[d] that his best course of legal action [was] to rely on the advice of immigration counsel and submit the requested documents as he submitted them in 2021." *Id*. at 5. He asserted that "*Plaintiff has been advised by his retained immigration counsel* to submit the same documents he submitted in 2021. **No one** should interfere with that representation." *Id*. at 22 (first emphasis added; second emphasis in original).

Accordingly, Judge Garcia convened a hearing on Plaintiff's request and also directed Plaintiff's immigration counsel to attend. Order, ECF No. 209. Attorney Glenn Formica attended "pursuant to the Court's order" as Plaintiff's immigration counsel. Tr., ECF No. 220 at 4. However, during the hearing, Plaintiff's counsel advised the Court that he was "recently informed" that Attorney Formica no longer represented Plaintiff in immigration proceedings. *Id*. at 7. And Attorney Formica confirmed that he had not represented Plaintiff "for years." *Id*. at 8. In fact, it was revealed that Plaintiff was appearing *pro se* in the immigration proceedings. *Id*. at 31–32. Plaintiff's claim that his retained immigration counsel advised him regarding which documents to submit to DHS was clearly false. To the extent he suggests that perhaps it was a different unnamed lawyer in attorney Formica's office, he offers only unsupported supposition. *Id*. at 25–26. It was Plaintiff who was directed to bring the immigration attorney on whose advice he was relying. Order, ECF No. 209. Plaintiff chose Attorney Formica. Attorney Formica had offered no such advice.

The Defendants also rely upon Plaintiff's withholding of a secretly made recording of the Yale UWC hearing in 2019. Mot. to Dismiss, ECF No. 332 at 27–29. Although Plaintiff was in possession of the UWC recording at all times, he did not disclose its existence until 2024,[14] *see* Ex. V, ECF No. 332-11 at 3, and he did not produce a transcript of the proceeding (redacted because he also recorded his conversations with Attorney Pattis) until February of 2025, *see* Mot. to Dismiss, ECF No. 332 at 28; Tr. ECF No. 397 at 86. Concerning on this issue is the fact that Plaintiff made arguments to the Connecticut Supreme Court and the Second Circuit premised on the fact that there was no record of the UWC proceedings. *See Khan v. Yale Univ.*, 347 Conn. 1, 46 (2023); *Khan v. Yale Univ.*, 85 F.4th 86, 89 (2d Cir. 2023). For example, Plaintiff argued to the Supreme Court that it was "unclear" whether the witnesses were placed under oath. Ex. J, ECF No. 373-10 at 3.

Of course, since Plaintiff had recorded the proceedings, he knew that the witnesses were not sworn. Plaintiff also argued that he had requested a transcript or a recording of the hearing at the hearing but was denied. The subsequently disclosed recording and transcript do not contain any such request or denial. *See* Reply, ECF No. 375-1 at 9 (SEALED) (citing *Khan v. Yale Univ.*, 27 F.4th 805, 816 n.13 (2d Cir. 2022)). And Plaintiff relied on this lack of record to lament his ability to meaningfully appeal the issues before the Court. In its decision, the Connecticut Supreme Court agreed and stated that Plaintiff's "ability to appeal was severely constrained by the absence of *any* transcript or recording of statements, testimony, or questions raised during the UWC hearing." *Khan*, 347 Conn. at 46. In short, Plaintiff withheld the existence of this recording from the Defendants, the district court, the Second Circuit Court of Appeals, and the Connecticut

---

[14] In response to a request for production seeking any such recording, Ex. U, ECF No. 332-10 at 4–5, Plaintiff averred "see enclosed production[,]" Ex. V, ECF No. 332-11 at 3. The recording was not, however, included and only surfaced later.

26

Supreme Court. And of course, this means that the Defendants litigated Jane Doe's motion to dismiss and subsequent appeal, completely unaware of its existence.

It is, of course, impossible to know whether, had the existence of the recording been disclosed, the issues on appeal would have been decided any differently. Certainly, there was no official recording of the proceeding or transcription of same per the UWC protocols, something the Supreme Court found troubling, to be sure. *Id*. at 39. And the lack of any record of the proceedings was but one of five deficiencies identified by the Supreme Court. *Id*. But the Plaintiff still permitted the courts to be under the false impression that there was no existing recording of the proceedings. And of course, Plaintiff was asked at the outset of the UWC proceedings whether he would confirm that he was, in fact, not recording the proceedings. Ex. W, ECF No. 333-14 at 6 (SEALED). He said he was not — another lie and one kept concealed from the Defendants until 2024.[15] *Id*. at 6–7 (SEALED).

**An Appropriate Sanction**

The Court does not detail each instance of misconduct relied upon by Defendants as such an exhaustive undertaking is unnecessary. And the Court relies to varying degrees on the misconduct detailed above.

As to the document production, while the Court agrees that the production of over 70,000 pages of largely irrelevant materials has all the hallmarks of a classic "document dump," the Court does not, on the present record, infer that it was Plaintiff's intent to forestall impending depositions

---

[15] At the hearing on the instant motion, Plaintiff testified that Attorney Pattis was aware of the recording at the time because "[h]e was there as I was recording. He witnessed the phone. At that point I had a Google Pixel phone that I used to record, it was sitting on the table." Tr., ECF No. 397 at 74–75. He was, at best, equivocal. When called out for the wishy-washy nature of his testimony, through counsel, he indicated that Mr. Pattis knew of the recording. *Id*. at 97–98. Aside from the fact that this seems exceedingly unlikely given Attorney Pattis' status as an officer of the court, the transcript further reveals that when asked to confirm that neither plaintiff *nor his advisor* were recording the hearing, Plaintiff responded: "Yes, I confirmed with my advisor earlier. We're not recording this. . . . yes, he's not either." Ex. W, ECF No. 333-14 at 6–7 (SEALED).

or the conclusion of discovery. It certainly had that effect, and such an effect was absolutely predictable, but the misconduct was in the *production itself* of largely unresponsive and irrelevant documents.

The indirect publication of Jane Doe's name through precisely the same method found by this Court to be egregious and intentional is shocking. *See* Order, ECF No. 265 at 13; Ex. C, ECF No. 333-3 (SEALED); Ex. E, ECF No. 333-5 (SEALED). It appears that Plaintiff will not be deterred. Notably, he did not seek reconsideration of this Court's decision or findings, he simply chose to ignore them. And with respect to the instant motion, he merely reiterates the arguments the Court has already rejected. *See* Opp. to Mot. to Dismiss, ECF No. 364 at 5–6 (SEALED).

The inaccurate and false sworn Interrogatory responses reveal that Plaintiff will withhold damaging information in discovery so as to increase the likelihood of his success on the merits. As discussed above, it is clear his lawyer knew nothing of the sexual misconduct claims made against Plaintiff by women other than Jane Doe and simply relied upon Plaintiff's self-report. *See* Aff., ECF No. 332-1; Tr., ECF No. 397 at 36. When questioned by the defense, Plaintiff's counsel confirmed that he had checked with Plaintiff about any other complaints. Mot. to Dismiss, ECF No. 332 at 24; Aff., ECF No. 332-1 at ¶ 4.[16] Nothing. And as discussed above, the Court finds his claim to have interpreted the Interrogatory as applying only to claims that resulted in criminal charges, see Tr., ECF No. 397 at 73, as straining credulity beyond its breaking point.

Consistent with Plaintiff's efforts to conceal these other complaints, are Plaintiff's efforts to conceal his communications with Peter Roe through a specious assertion of attorney-client or work product privilege and a false and misleading privilege log. And the significance of this

---

[16] As discussed above, Defendants' counsel sent a deficiency letter to Plaintiff's counsel, to include a challenge to Interrogatory 10. Ex. T, ECF No. 332-9. By Affidavit, ECF No. 332-1, Defendant Doe's counsel avers that counsel met and conferred and Plaintiff confirmed, through counsel, that he was not aware of any other allegations of misconduct other than those he disclosed. Plaintiff does not challenge this averment. Ex. T, ECF No. 332-9.

28

litigation misconduct is hard to overstate. As Defendants rightly assert — they do not know what they do not know. *Id*. at 87. Defendants reasonably assert that the entirety of the privilege log is now subject to challenge — a costly, time-consuming and resource draining undertaking — all occasioned because Plaintiff has demonstrated that he cannot be relied upon to simply tell the truth. *Id*.

Plaintiff has been cautioned by the Court multiple times that his misconduct could have consequences, to include dismissal of his complaint. *See* Order, ECF No. 119 at 15 ("Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal."; Tr., ECF No. 150 at 8 ("[M]y order is quite clear that any violation of my order could lead to sanctions, which could include dismissal . . . the orders are orders of the Court. They're expected to be followed. And if they're not followed, there are significant potential repercussions."); *see also* Tr., ECF No. 94 at 8–9, 12–13; Order, ECF No. 265 at 2–4, 15–16; Executed Prot. Order, ECF No. 197 at 6; Tr., ECF No. 200 at 9. The Court has previously denied two motions to dismiss based upon litigation misconduct. Minute Entry, ECF No. 91; Order, ECF No. 265. Simply put, there is no fair, just or reasonable path forward for the defendants. The Court ends where it began.[17]

Civil litigation is rooted in "notions of fairness on which our legal system is founded." *See Bridges v. Wixon*, 326 U.S. 135, 154 (1945). When one party repeatedly commits egregious misconduct and, in turn, unfairly disadvantages the opposing parties, dismissal is an appropriate sanction. It is well-settled that it is within the Court's discretion to issue sanctions, including dismissal. *See Chambers*, 501 U.S. at 44–45. "In considering the appropriateness of dismissal or

---

[17] It has been said, "Oh, what a tangled web we weave, when first we practice to deceive." Sir Walter Scott, "Marmion." This well-embedded idiom of modern culture, first published in 1808, captures the truism that when you lie or act dishonestly, you initiate a domino-like structure of complications and problems which will eventually spiral out of control. Very unfortunately, this idiom also precisely describes this case.

other sanctions for discovery abuse, the Second Circuit has instructed district courts to consider four non-exclusive factors: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the noncompliant party had been warned of the consequences of noncompliance.'" *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, 308 F.R.D. 113, 124 (S.D.N.Y. 2015) (quoting *S. New England Tel. Co. v. Global NAPs, Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). There is no question that Plaintiff has willfully ignored the Court's orders — despite multiple warnings — and engaged in escalating misconduct for a prolonged period.

Indeed, Courts have repeatedly found dismissal to be an appropriate sanction where the plaintiff was warned of that possibility and continued to engage in misconduct. *See Koehl v. Bernstein*, 740 F.3d 860, 862–63 (2d Cir. 2014) (upholding the district court's dismissal where the petitioner continued to use obscene and abusive language toward the Magistrate Judge despite warning); *Manigaulte v. C.W. Post of Long Island Univ.*, 533 F. App'x 4, 6–7 (2d Cir. 2013) (summary order) (upholding the District Court's dismissal where the petitioner failed to appear for deposition after being warned that such failure would result in a recommendation of dismissal); *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, 308 F.R.D. at 124–25 (dismissing as a sanction for repeated discovery non-compliance); *Shomo v. Eckert*, 345 F.R.D. 570, 580–81 (W.D.N.Y. 2024) (dismissing for discovery violations after repeated warnings to the *pro se* plaintiff).

The Court can discern no lesser sanction to address the repeated and escalating misconduct by Plaintiff in this case. He has been fairly warned, warnings which he did not heed. Seeing no

30

viable path forward for a fair and just adjudication of the claims and defenses in this case, the Motion to Dismiss is GRANTED.

The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of March 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

31

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SAIFULLAH KHAN,
     Plaintiff,

v.
                                      CASE NO. 3:19-CV-01966 (KAD)

YALE UNIVERSITY, PETER SALOVEY, JONATHON HALLOWAY,
MARVIN CHUN, JOE GORDON, DAVID POST, MARK SOLOMON,
ANN KUHLMAN, LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER,
SARAH DEMERS, JANE DOE, CAROLE GOLDBERG, UNKNOWN PERSONS,
     Defendants.

JUDGMENT

This matter came on for consideration of the Defendants' Motion to Dismiss before the Honorable Kari A. Dooley, United States District Judge. The Court has considered the full record of the case including applicable principles of law. On March 27, 2026, the Court issued a ruling granting the Motion in favor of the defendants. It is therefore;

ORDERED, ADJUDGED and DECREED that Judgment is entered in favor of the Defendants and the case is closed.

Dated at Bridgeport, Connecticut, this 30th day of March 2026.

DINAH MILTON KINNEY, Clerk
By /s/ Kristen Gould
Kristen Gould
Deputy Clerk

EOD: 3/30/2026

**SPA-32**

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

## ELECTRONIC ORDER — ECF No. 12 (01/10/2020)

*Docket-text order (no separate document filed); reproduced from the official docket sheet.*

01/10/2020 12 ORDER granting 7 Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name without prejudice. Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action. Signed by Judge Kari A. Dooley on 1/10/2020. (Cahill, Leslie) (Entered: 01/10/2020)

Civil- (Dec-2008)

HONORABLE: Kari A. Dooley

DEPUTY CLERK Kristen Gould          RPTR/ECRO/TAPE Tracy Gow

TOTAL TIME: _____ hours 38 minutes

DATE: 3/18/2024          START TIME: 9:57am          END TIME: 10:35am

LUNCH RECESS          FROM: _____          TO: _____

RECESS (if more than ½ hr)          FROM: _____          TO: _____

CIVIL NO. 3:19-cv-01966-KAD

| | |
|---|---|
| Saifullah Khan | Norman A. Pattis |
| | **Plaintiff's Counsel** |
| vs | |
| Yale University et al | Gooley, Sconzo, Weller |
| | **Defendant's Counsel** |

## COURTROOM MINUTES- CIVIL

[✓] Motion hearing          [ ] Show Cause Hearing

[ ] Evidentiary Hearing          [ ] Judgment Debtor Exam

[ ] Miscellaneous Hearing

[✓] Def .....# 74 Motion Emergency Motion for Judgment of Dismissal *Sealed [ ] granted [✓] denied [ ] advisement

[ ] .....#____ Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] .....#____ Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] .....#____ Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] .....#____ Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] .....#____ Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] .....#____ Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] ..... Oral Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] ..... Oral Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] ..... Oral Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] .... Oral Motion_____ [ ] granted [ ] denied [ ] advisement

[ ] ..... [ ] Briefs(s) due _____ [ ] Proposed Findings due_____ Response due_____

[ ] ............ _____ [ ] filed [ ] docketed

[ ] ............ _____ [ ] filed [ ] docketed

[ ] ............ _____ [ ] filed [ ] docketed

[ ] ............ _____ [ ] filed [ ] docketed

[ ] ............ _____ [ ] filed [ ] docketed

[ ] ............ _____ [ ] filed [ ] docketed

[ ] ............ Hearing continued until _____ at _____

Notes: As ordered on the record, the Defendant shall not identify JEPAD34 in any social media communication and he shall remove his posts that reference the same. Motions 81, 82 and 89 are referred to a Magistrate Judge.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Saifullah Khan, | |
| Plaintiff, | Civil No. 3:19-cv-01966-KAD |
| v. | |
| Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Jane Doe, Carole Goldberg, Unknown Persons; | JUNE 19, 2024 |
| Defendants. | |

**RULING AND ORDER**

## I. INTRODUCTION

In 2015, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") and Defendant Jane Doe ("Jane Doe") matriculated at Defendant Yale University ("Yale"). They went to the same Halloween party, went to a student orchestra performance together, returned to Trumbull College where they both lived, and woke up in her room. *See* Compl. (ECF No. 1) ¶¶ 39, 41–43. Shortly after, Jane Doe filed a Title IX complaint against Khan, alleging he raped her. *See id.* ¶¶ 46, 48. Khan was immediately suspended, criminally charged with four counts of assault, acquitted, and readmitted pending the disciplinary hearing. *See id.* ¶¶ 47–52, 58. In October 2018, Yale suspended Khan again for unrelated issues. *See id.* ¶¶ 60–64. The following month, Yale's University-Wide Committee on Sexual Misconduct ("UWC") held a disciplinary hearing concerning Jane Doe's allegations and then voted to expel him. *See id.* ¶¶ 74–80.

Khan now sues Yale, 12 Yale employees, unknown journalists, and Jane Doe for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., for breach of due

1

process concerning the disciplinary hearing, and various breach of contract and tort claims stemming from his expulsion. [1] Khan also asserts two counts specific to Jane Doe: defamation and tortious interference with a business relationship. When he filed this lawsuit, Khan moved to proceed against Jane Doe using a pseudonym and Yale filed a memorandum in support. District Judge Kari A. Dooley granted the motion.

The parties are embroiled in a key dispute: whether Jane Doe should enjoy continued anonymity as this case proceeds in litigation. Judge Dooley has referred several pending motions to me, two of which directly conflict and are the subject of this order: (1) Khan's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) ("Plaintiff's Motion to Vacate"); and (2) Jane Doe's Motion to Continue Anonymity (ECF No. 103) ("Doe's Anonymity Motion"). These motions are ripe for a ruling. For the following reasons, I **DENY** Plaintiff's Motion to Vacate and **GRANT** Doe's Anonymity Motion.

## II. BACKGROUND

Given the comprehensive factual recitations from *Khan I* through *Khan IV*, *infra* at 4, I presume familiarity with the facts of this case and summarize only the procedure, facts, and evidence relevant to the pending motions.

### A. Khan Moves to Litigate Against Jane Doe under a Pseudonym

When Khan filed this lawsuit on December 13, 2019, he also moved for permission to litigate against Jane Doe using a pseudonym. *See* Pl.'s Mot. Pseudonym (ECF No. 2); Exs. to Pl.'s Mot. Pseudonym (ECF No. 7). As Khan explained, Yale's UWC procedures require confidentiality of individuals and proceedings, and he wanted to maintain Jane Doe's anonymity

---

[1] Defendants Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, and Unknown Persons have not briefed the motions before this Court.

to comply with these procedures for one reason: "Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life." *Id.* at 9. Although Khan applied the Second Circuit's ten-factor test for determining whether a pseudonym is appropriate—as established in *Sealed Plaintiff v. Sealed* Defendant, 537 F.3d 185 (2d Cir. 2008)—he focused on why Jane Doe's anonymity would be beneficial to <u>him</u>, not her.[2]

In addition to Khan, Yale filed a memorandum explaining why Jane Doe's anonymity satisfied the ten factors in *Sealed Plaintiff*. *See* Yale Mem. Pseudonym (ECF No. 9). Yale explained why Jane Doe's anonymity was necessary to protect <u>her</u>. In brief, Yale lodged five main arguments: (1) as Plaintiff contended, the litigation involves highly sensitive and personal matters; (2) anonymity is an important safeguard to protect Jane Doe, a rape survivor, from likely reputational harms and media attention; (3) no party will suffer prejudice because Plaintiff knows her identity; (4) her identity has thus far been kept confidential; (5) public interest weighs in favor of protecting sexual assault survivors; (6) and, because it's in the public interest to conceal her identity, the public has an atypically weak interest in knowing her identity. *See id.*

> On January 10, 2020, Judge Dooley granted Plaintiff's Motion. Judge Dooley reasoned:
>
> Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action.

Text Order (ECF No. 12). The case has proceeded under a pseudonym since this ruling.

---

[2] I will address the ten-factor test later in this ruling.

3

**B.** **Judge Dooley's Dismissal of Claims Against Jane Doe and the Subsequent Appeals Process.**

On April 28, 2020, Jane Doe moved to dismiss the claims against her, arguing she enjoys absolute immunity from suit arising from her testimony at the disciplinary hearing, because it was a quasi-judicial proceeding. Judge Dooley granted her motion, and Khan appealed. *See Khan v. Yale Univ.*, 511 F. Supp. 3d 213 (D. Conn. 2021) (*Khan I*).

The Second Circuit certified the issue, among others, to the Connecticut Supreme Court on March 4, 2022. *See Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022) (*Khan II*). On June 27, 2023, the Connecticut Supreme Court ruled that Yale's disciplinary hearing procedure did not constitute a quasi-judicial hearing because it lacks procedural safeguards. The Supreme Court concluded Jane Doe does not enjoy absolute immunity or (at least at the pleading stage) qualified immunity. *See Khan v. Yale Univ.*, 347 Conn. 1 (2023) (*Khan III*) (denying absolute immunity). On October 25, 2023, the Second Circuit reversed in part Judge Dooley's decision and remanded the case for further proceedings consistent with the decision. *Khan v. Yale Univ.*, 85 F.4th 86 (2d Cir. 2023) (*Khan IV*) (reversing in part and remanding for further proceedings).

**C.** **Motion for Judgment of Dismissal and Hearing**

On December 27, 2023, Jane Doe moved for a judgment of dismissal as a sanction for Plaintiff publicly disclosing her identity and directly communicating with her about settlement. *See* Mot. Seal Emergency Mot. J. Dismissal (ECF No. 73) at 1. The substance of these communications have been filed under seal pursuant to a court order. *See* Hr'g Tr. (ECF No. 94).

Judge Dooley held a hearing on March 18, 2024. The topics discussed included Khan's posts on X, his direct contact with Jane Doe, and the standard for awarding sanctions. Jane Doe's counsel described Plaintiff's actions as a "retaliatory sequence of events starting with e-mails directly to [his] client that were found harassing, after he had sought to hide her name" and "using

4

SPA-38

her name publicly, telling the world 'a gift is going to come,' and sure enough he does this." *Id.* at 17:5–16. He also stated Nazis and "the fringe element" took interest in Plaintiff's posts. *See id.* at 18:5–10. Plaintiff's counsel conceded that he interpreted the anonymity restriction as applying to public posts, *see id.* at 8:14–21, Plaintiff's public disclosure of Jane Doe's identity "surprised" and "flummoxed" him, *id.* at 10:6–18, that his client wants accountability and for "her to feel what he felt," *id.* at 11:4–14, that Plaintiff wants to "fully and fairly litigate this case" before a jury, *id.* at 12:22–24, and that failure to comply with court orders could result in counsel's withdrawal, *see id.* at 12:24–13:2.

Judge Dooley expressed concern for Khan's social media tactics, stating "there is a sense of an intent to intimidate" and "[t]here is a sense of an intent to harass" in Khan's public posts about the litigation and depositions. *Id.* at 9:1–9. Judge Dooley reflected, "The idea of sort of mobilizing the Internet – I mean, this is borderline doxing, and it's very concerning." *Id.* She also explained that she did not want "the case litigated on X or on Youtube or on TikTok," clarifying, "I think I do have a legitimate concern that that might be on Mr. Khan's list of things to do, in terms of having his viewpoint out there in the world repeated to the Jane Doe's detriment, at a time when nothing has been decided." *Id.* at 14:12–19. Despite her reservations, Judge Dooley clarified that she had never issued a protective order preventing Khan from publicly using Jane Doe's identity, and so technically Khan did not violate a court order. *See id.* at 5:10–25.

Judge Dooley denied the motion but ordered Khan to refrain from publicly revealing Jane Doe's name until the pending motions are decided and to remove the posts publicly identifying her. *See id.* at 23:13–25:19. Regarding the pending motions, Judge Dooley reflected: "[C]onsistent with the parties' earlier understanding, with the issues now I think adequately joined

5

between the motion to remove the pseudonym and the motion for the protective order, what the parties' conduct looks like going forward is teed up." *Id.* at 19:18–23.

## III. DISCUSSION

The two motions at issue seek opposing relief: Plaintiff seeks to vacate Jane Doe's anonymity, and Jane Doe seeks to maintain it. Plaintiff filed his motion three days before Judge Dooley's hearing. *See* Pl.'s Mot. Vacate. Both Yale and Jane Doe object to the motion. *See* Yale's Opp'n (ECF No. 102); Doe's Opp'n (ECF No. 104). Jane Doe filed her respective motion on April 5, 2024, after the hearing. *See* Doe's Anonymity Mot. To date, Plaintiff has not responded.

### A. Jane Doe's Continued Anonymity Is Warranted.

Rule 10(a) of the Federal Rules of Civil Procedure requires the complaint's title to name all parties. *See* Fed. R. Civ. P. 10(a). While identifying the parties is an important component to ensuring the public's access to the courts, special circumstances sometimes warrant an exception. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). Courts within the Second Circuit must use the non-exhaustive ten-factor balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*:

> (1) "whether the litigation involves matters that are highly sensitive and [of a] personal nature;"
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties;"
>
> (3) "whether identification presents other harms and the likely severity of those harms;"
>
> (4) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure;"
>
> (5) "whether the suit is challenging the actions of the government or that of private parties;"

6

**SPA-40**

(6) "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;"

(7) "whether the plaintiff's identity has thus far been kept confidential;"

(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;"

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and

(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190 (internal quotation marks and citations removed). The purpose of this test is to "weigh[] the plaintiff's need for anonymity against countervailing interests in full disclosure," *id.* at 189, including "public interest in disclosure and prejudice to defendants," *id.* at 193.

Judge Dooley evaluated these ten factors in her initial order. *See* Text Order (citing *Sealed Plaintiff*). She specifically noted the "sensitive and personal nature of the issues" (factor one), the risk of harm (factors two through four) and the absence of prejudice to the parties (factor six), and the lack of alternative procedures (factor ten), among the other relevant factors.[3] *Id*.

With the exception of factor seven (7),[4] none of the facts relevant to the factors considered by Judge Dooley have changed. As Yale points out, the subject matter still involves Jane Doe's

---

[3] I construe Judge Dooley's order to mean that she considered all *Sealed Plaintiff* factors but found these six factors the most compelling and—because the ten *Sealed Plaintiff* factors are non-exhaustive—considered other arguments raised by the parties that do not neatly fit into the ten-factor test.

[4] Factor 7 requires the Court to consider whether the identity of the person seeking anonymity has thus far been kept confidential. *See Sealed Plaintiff*, 537 F.3d at 190. As set forth in Jane Doe's Motion for Judgment of Dismissal and discussed during the hearing, Plaintiff—without Jane Doe's consent—disclosed Jane Doe's identity on social media. The Court has since ordered Plaintiff to remove his posts referencing Jane Doe's identity pending the outcome of these motions. The Court gives no weight to this factor given that Plaintiff's disclosure of Jane Doe's identity without consent from Jane Doe, at a minimum, undermines the spirit of the anonymity order in

7

alleged sexual assault, there has been no reduction of potential risk if Jane Doe's name is revealed, Plaintiff still does not argue he will be prejudiced if Jane Doe continues to proceed under a pseudonym, and no viable alternative to her confidentiality has been established since Judge Dooley's ruling.

Instead, Plaintiff argues there is no longer a need for Jane Doe's anonymity because he does not want to return to Yale anymore, the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g et seq., does not cover Yale's investigation records, and the Connecticut Supreme Court's decision caused him to conclude Jane Doe is not entitled to anonymity because she is no longer a student. For several reasons, these arguments are unpersuasive.

First, it is of no moment that Plaintiff no longer wants to re-enroll at Yale. The *Sealed Plaintiff* standard focuses on the needs of the person seeking anonymity and balances those needs against the interests of the other parties and the public. *See Sealed Plaintiff*, 537 F.3d at 189 ("We agree that the interests of both the public and the opposing party should be considered when determining whether to grant an application to proceed under a pseudonym."). In other words, Plaintiff's future plans, which are unrelated to Jane Doe, are irrelevant for the purposes of the *Sealed Plaintiff* factors. The only factor specifically related to the opponent is the sixth: whether the non-movant might be prejudiced by the anonymity. *See id.* at 190. Because Khan knows Jane Doe's identity, he will not be prejudiced by continued anonymity. *See Doe v. Smith*, No. 1:19-

---

place, and even came as a surprise to Plaintiff's attorney who was "flummoxed" and offered that he thinks Plaintiff wants "her to feel what he felt," including "[w]hat it was to have every publication that reports on things like [allegations of college campus sexual assault]." Hr'g Tr. at 10:11–14, 11:8–10. Giving weight to this factor in light of Plaintiff's potentially vindictive disclosure of Jane Doe's identity would unfairly reward Plaintiff for efforts to litigate this case on social media and inflict harm on Jane Doe outside of the judicial process.

8

**SPA-42**

CV-1121 (GLS/DJS), 2019 WL 6337305, at *2 (N.D.N.Y. Nov. 27, 2019) ("Defendant knows Plaintiff[']s identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff[']s identity publicly."). Plaintiff's desired outcome for this litigation does not equate to whether he will be prejudiced by her anonymity. Accordingly, this argument does not persuade me.

Second, Plaintiff argues that FERPA—which, in relevant part, requires universities to keep educational records confidential—does not apply to a university's investigation into potential criminal conduct. *See* Mot. Vacate at 5–6. As an initial matter, Judge Dooley did not find that FERPA required Jane Doe's anonymity. Rather, she determined that one of the factors warranting anonymity was "the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality." Text Order (ECF No. 12). To the extent Plaintiff regrets conceding that Yale's confidentiality policy applies to these facts, he cannot un-ring that bell.

In any event, the First Circuit addressed Plaintiff's very argument in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022). There, the plaintiff——a male MIT student who was expelled after being accused of sexually assaulting a female student and then sued the university for breach of contract and other state claims—sought to litigate under a pseudonym. *See id.* at 64–65. As a matter of first impression, the First Circuit established its own version of the *Sealed Plaintiff* test and concluded the district court erred in denying him pseudonymity.[5] MIT

---

[5] The First Circuit concluded the multi-factor tests, like the *Sealed Plaintiff* test, "do not establish a clear standard" and chose instead to use "the easily understood 'totality of the circumstances' standard, *see id.* at 69–70, outlining four paradigms in which pseudonymity is generally appropriate: (1) if the "would-be Doe" fears "coming out of the shadows will cause him unusually severe harm (either physical or psychological); (2) if "identifying the would-be Doe would harm 'innocent non-parties;'" (3) if identification could create a "chilling effect on future litigants who may be similarly situated;" or (4) if the lawsuit is "bound up with a prior proceeding confidential by law." *Id.* at 71–73.

argued that FERPA (and Title IX) only constrain the university during its own proceedings and that a student waives his right to confidentiality by filing a lawsuit. *See id.* at 75. While the First Circuit acknowledged that FERPA and Title IX do not impose "a gag order on individual participants," it nonetheless concluded MIT "misses the mark." *Id.* The First Circuit opined that "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 76. It explained that there is little basis to "lift the veil of pseudonymity" in a collateral attack, reasoning: "The public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks in federal court." *Id.*

To be sure, the facts are slightly different here insofar as Khan's identity is public and it is <u>he</u> (not a university) that seeks to reveal the identity of Jane Doe, who has been brought into this litigation against her will as a Defendant. Because she has not brought this case on her own volition, the public has an even greater interest to maintain her anonymity during this collateral attack in federal court. *See id.* Indeed, the risk of a "chilling effect" would certainly increase if there was some blanket rule that university students who complain about sexual assault could be publicly named by the accused in a collateral attack. *See Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) ("[I]n general, 'the public ... has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'") (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

<u>Third</u>, Jane Doe graduated before this case was filed and so her status as an alumna is not a new or changed fact. *See* Yale's Opp'n at 2. Yale posits that Khan knew this when he first sought to litigate against her through a pseudonym in December 2019, and Khan has not filed an opposition to dispute this fact. *See id.* In his Motion to Vacate, Khan argues that the Connecticut

10

Supreme Court acknowledged her graduation forecloses Yale's ability to discipline her for failing to testify truthfully, and so the "obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired." This appears to be a more creative version of his FERPA argument. For the same reasons I did not find the FERPA argument warrants vacating the pseudonym order, I do not find Plaintiff's third argument compelling.

Accordingly, I conclude that Jane Doe's anonymity should be continued.

**B.      An Order Prohibiting Public Disclosure of Jane Doe's Identity Is Warranted.**

Having decided that Jane Doe may continue to proceed under a pseudonym, I must now evaluate the scope of that decision. *See* Hr'g Tr. at 19:18–23. Jane Doe requests that the following order be issued: "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere. Plaintiff's claims will be dismissed with prejudice if he identifies Jane." Doe's Anonymity Mot. at 30. While Plaintiff has moved to vacate Jane Doe's anonymity, he did not object to this request. Because I do not have authority to involuntarily dismiss an action, *see* 28 U.S.C. § 636(b)(1)(A), I will limit my ruling to the first sentence and will leave issues of dismissal to Judge Dooley.

I conclude that Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her. But I do so with the acknowledgment that the relevant facts and procedural posture concerning Jane Doe's anonymity are unique. At first blush, her anonymity request does not appear to fit neatly within a specific legal framework.

**1.      *A Rule 26(c) Protective Order is Not Applicable.***

I begin with Federal Rule of Civil Procedure 26(c), which governs protective orders. *See* Doe's Anonymity Mot. At 11–15. Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Courts in this circuit have noted that, '[f]or purposes of a

11

protective order, good cause is established when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order.'" *Qube Films Ltd. v. Padell*, No. 13–CV–8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 (RPP), 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (internal quotation marks removed)).

Certainly, the principles of Rule 26 apply insofar as the disclosure of Jane Doe's identity would cause her more than "annoyance, embarrassment, oppression, or undue burden," as I have explained above. But Plaintiff knew Jane Doe's identity before litigation. In this vein, Rule 26 does not apply insofar as her identity is not information learned through a document, responses to discovery requests or interrogatories, depositions, or otherwise. *See Bridge CAT Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983) ("Rule 26, however, which is entitled 'General Provisions Governing Discovery,' is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.").

In requesting an order prohibiting Plaintiff from publicly disclosing her identity, Jane Doe cites case law involving discovery. *See* Doe's Anonymity Mot. at 11–15. Take *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021), and *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020), two related lawsuits involving plaintiffs who were sex trafficked and sexually assaulted as minors and whose identities were not known to the accused defendants. These plaintiffs sought protective orders that required the defendants to keep their identities confidential from the public in exchange for their identities. *See Baram*, 2021 WL 3423595, at *3; *Nygard*, 2020 WL 4890427, at *3.

12

**SPA-46**

Because the defendants did not know their accusers' identities, the court's issuance of a protective order functioned as a discovery management tool under Rule 26.  *See Baram*, 2021 WL 3423595, at \*3.  So too did *Plaintiffs #1–21 v. County of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015), *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), and the *Strike 3* and *Malibu Media* cases involve protecting a party's identity for discovery purposes.  *See* Doe's Anonymity Mot. at 13–15.  These cases therefore do not apply here.

### 2. *Based on record before Court Jane Doe's Request is Not a Prior Restraint.*

Having concluded that a Rule 26 protective order does not apply, I'd like to address potential concerns involving whether an order limiting a litigant's right to publicly disclose the identity of an individual—who has been granted anonymity in court—would serve as a "prior restraint."  "A prior restraint is a governmental order or action 'forbidding certain communications when issued in advance of the time that such communications are to occur.'"  *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The Second Circuit in *In Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), explained why a court's order preventing parties from speaking with the press did not violate the press's First Amendment rights.  While the facts are of course different, its reasoning applies:

> The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press and therefore public. A prior restraint deprives the public of specific news because it prevents publication.  Although the restraining order in this case limits the flow of information readily available to the news agencies—and for that reason might have an effect similar to that of a prior restraint—the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press.

*Id.* at 608.  The Second Circuit concluded "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by

13

**SPA-47**

the former is properly characterized as a prior restraint, one opposed solely by the latter is not." *Id.*

As with the parties in *In Application of Dow Jones & Co.*, Plaintiff did not object. While it is true Plaintiff moved to vacate Jane Doe's anonymity, it is also true that his motion is denied. Given this denial, he has not pointed me to specific legal authority or facts explaining why he should be given carte blanche to publicly disclose her identity outside of the litigation. Quite the opposite. During the hearing, Khan offered to comply with an order preventing such disclosure before his counsel objected. *See* Hr'g Tr. at 22:14–19 (Pattis: "Objection. We're not going to – we're not completely oblige to any gag orders, Mr. Khan. Speak to me before you offer to comply with gag orders to the Court."). While Plaintiff's counsel preserved his objection to future "gag orders," I construe Khan's testimony along with counsel's failure to oppose Jane Doe's argument to mean that Plaintiff concedes there is no legal justification supporting his desire to identify Jane Doe outside this litigation when the court has ruled she may litigate anonymously. In other words, this circumstance is similar to *In Application of Dow Jones* insofar as the parties do not object to such a court order, and therefore it is not a "prior restraint." 842 F.2d at 608.

As Judge Dooley explained during the hearing, Plaintiff's disclosure of Jane Doe's risks this case being litigated on X, TikTok, Facebook, or social media generally. *See* Hr'g Tr. at 14:4–19. I have reviewed all briefing and evidence filed under seal relating to Khan's public disclosure of Jane Doe's identity. I have also reviewed the hearing held before Judge Dooley on March 18, 2024 and her concerns about the how Khan's public disclosure of Jane Doe's identity has the potential to impact this case. I have reviewed Defendant Jane Doe's sur-reply filed under seal, Sur-Reply (ECF No. 114), which attaches exhibits evincing Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly. In light of the record before the Court, and for

14

the same reasons that compel the continued anonymity of Jane Doe, I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media.

## IV. CONCLUSION

For the above reasons, I **DENY** Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) and **GRANT** Jane Doe's Motion to Continue Anonymity (ECF No. 103). I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal. Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration. Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language. If the parties agree, they may jointly file a Proposed Order. If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

This is not a recommended ruling. This is a pretrial ruling and order that is reviewable under the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(a); and Rule 72.2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.

It is so ordered.

15

SPA-50

_____
                              _/s/ Maria E. Garcia_
                              Hon. Maria E. Garcia
                              United States Magistrate Judge

16

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

## ELECTRONIC ORDER — ECF No. 216 (10/21/2024)

*Docket-text order (no separate document filed); reproduced from the official docket sheet.*

10/21/2024 216 ORDER re: 206 Plaintiff's Emergency Motion to Vacate Order, Or In the Alternative, For Limited Stay or Lift of Order. This motion is before the Court to address an October 3, 2024, USCIS/DHS letter (ECF No. 201-1) requesting three categories of documents from Plaintiff. A hearing was held on October 21, 2024, and the parties had an opportunity to be heard. For the reasons that follow, the motion is denied as moot in part, granted in part, and denied in part as follows: Finding as moot as to the State of Connecticut Superior Court "Destroyed Case File Letter", at ECF No. 207-1, and the "MyCourts.IN.gov" Indiana Protective Order, at ECF No. 207-2, in light of the fact that these documents make no reference to Jane Doe. The motion is granted as follows: Plaintiff may, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), provide a copy of the Official Transcript in State of Connecticut v. Khan, No. NNH-CR15-0162194 (Conn. Super. Ct.), which the Court defines as the transcript that redacted Jane Doe's name pursuant to Conn. Gen. Stat. §5486e, that has been publicly available at least as of July 25, 2024. See ECF No. 186, 200. As stated on the record, to the extent that Plaintiff disagrees with the application of Conn. Gen. Stat. § 54-86e to the transcripts in the criminal case, his recourse is with the Connecticut Superior Court. This Court will not disturb what the Superior Court deems to be the Official Transcript. See ECF. No. 200, July 25, 2024 Hrg Tr. at 18:11-14. The motion is denied as follows: Plaintiff may not provide, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), the unredacted trial transcripts, at ECF Nos. 207-3, 207-4, 207-5, 207-6, 207-7, 207-8 and 207-9, as the Court does not deem them responsive to the USCIS/DHS letter request. The Court's Orders regarding the use of Jane Doe's name (ECF Nos. 91, 119) remain in full force and effect, except that Plaintiff is authorized to submit the Official Transcript https://ecf.ctd.uscourts.gov/cgi-bin/DktRpt.pl?428102244992241-L_1_0-1 from Plaintiff's criminal trial to USCIS/DHS, as defined here, provided that he may not disseminate the transcript to anyone else. SO ORDERED. Signed by Judge Maria E. Garcia on 10/21/2024. (Esposito, A.) (Entered: 10/21/2024)

D. Conn.
19-cv-1966
Dooley, J.
Garcia, M.J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

_____

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15ᵗʰ day of November, two thousand twenty-four.

Present:

> Dennis Jacobs,
> Reena Raggi,
> Myrna Pérez,
> *Circuit Judges*.

_____

In Re: Saifullah Khan,

      Petitioner,                              24-2794

*********************

Saifullah Khan,

      Petitioner,

  v.

Yale University, et al.,

      Respondents.

_____

Petitioner, through counsel, has filed a petition for a writ of mandamus challenging a magistrate judge's non-disclosure orders. Upon due consideration, it is hereby ORDERED that the mandamus petition is DENIED because Petitioner has not demonstrated that he lacks an adequate, alternative means of obtaining relief, that his right to the writ is clear and indisputable, and that granting the writ is appropriate under the circumstances. *See Linde v. Arab Bank, PLC,* 706 F.3d 92, 107-08 (2d Cir. 2013). We expect that the district court will consider any timely challenges to the magistrate judge's orders in an appropriately expeditious manner, mindful of the November 25, 2024 deadline for Petitioner's submission to the Department of Homeland Security.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

CERTIFIED COPY ISSUED ON 11/15/2024

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

## ELECTRONIC ORDER — ECF No. 232 (11/21/2024)

*Docket-text order (no separate document filed); reproduced from the official docket sheet.*

11/21/2024 232 ORDER RE: 226 Emergency Supplement to Rule 72.2 Objection. The Court has reviewed the Emergency Supplement to Plaintiff's Objection to Magistrate Judge Garcia's 119 Ruling and Order and Defendant Doe's 230 Response to the Court's Order directing, by November 20, 2024, a response on the narrow issue of whether Plaintiff may provide the November 7, 2024, trial transcript to USCIS/HHS. On this record, the Court concludes that, consistent with Judge Garcia's October 21, 2024, Order, Plaintiff may provide a copy of the November 7, 2024, Official Transcript in State of Connecticut v. Khan, No. NNH-CR-15-0162194 (Conn. Super. Ct.) to USCIS/DHS per the October 3, 2024, letter requesting same. To the extent the Emergency Supplement raises an objection to Magistrate Judge Garcia's further restriction on Plaintiff's ability to provide the transcript to others, Defendant Doe sought additional time to respond to the Emergency Supplement. As this aspect of Judge Garcia's October 21, 2024, Order does not impact Plaintiff's ability to respond to USCIS/HHS in connection with his asylum application, Doe's request is reasonable. Doe may file a supplemental brief, not to exceed 10 pages, on this issue on or before December 5, 2024. Once received, the Plaintiff's Objection to both the June 19, 2024, Order as well as the October 21, 2024, Order will be addressed together. Signed by Judge Kari A. Dooley on 11/21/2024. (Alquesta, S) (Entered: 11/21/2024)

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

**ELECTRONIC ORDER — ECF No. 262 (01/23/2025)**

*Docket-text order (no separate document filed); reproduced from the official docket sheet.*

01/23/2025 262 ORDER re: January 23, 2025 Status Conference. A Discovery Status Conference was held on January 23, 2025, after consideration of the parties January 22, 2025, (ECF No. 261), Joint Status Report and after conferring with the parties, the agreements and deadlines are memorialized as follows: Yale's Document Production: Yale reports that it completed document production, including its ESI document production and an additional rolling production on January 21, 2025. Plaintiff reports he has not completed review of the document production produced on January 21, 2025. Plaintiff's Inboxes, Text Messages, and Social Media Accounts: The parties report agreement as to the search terms and time frames to be applied. The parties report that Yale is working with its ESI vendor to provide access to Plaintiff's counsel to perform an independent review of Plaintiff's inbox. They report that once the data is uploaded to the vendor's database and the search terms applied it will take approximately 4-5 days before Plaintiff's counsel will be able to begin his review. Plaintiff indicated he is in the process of engaging a vendor to assist with the search of Plaintiff's inboxes and social media. Plaintiff shall produce responsive documents on a rolling basis, with completion by February 21, 2025. Plaintiff's privilege log is due February 21, 2025. The parties agree to meet and confer to discuss narrowing the subset of search terms should Defendants request a search of Plaintiff's social media accounts beyond the December 31, 2019 time frame. Plaintiff will file a motion if any dispute arises that the parties are unable to work through at a meet and confer conference. Doe's Inboxes: The parties generally report agreement as to the search terms and time frame to be applied. However, Doe objects to expanding the search past January 22, 2019. Plaintiff stated that he may be seeking a small subset of responsive documents for the period past January 22, 2019, will meet and confer with Defendants regarding a targeted request based on his discovery requests and file a motion by January 31, 2025, if the parties are unable to reach an agreement. The parties report an open issue as to whether Doe searches her emails: (1) prior to October 2015; and/or (2) for search terms related to the Sally Roe, et al allegations. If Doe agrees to expand her search to a broader time frame, she reserves her right to supplement her production after the parties' agreed upon production date of January 24, 2025. Plaintiff will file a motion if any dispute arises that the parties are unable to work through at a meet and confer conference. Doe reports that she will complete production on January 28, 2025. Hearing Transcript: Plaintiff ordered and received unredacted transcripts from the hearing and started the process of redaction. Deposition Schedule: The parties agree to block six dates in March to conduct approximately 16 depositions. The agreed to dates are: March 13, 17, 18, 19, 21 and 24, 2025. Plaintiff will provide a list of his top ten witnesses including Rule 30(b)(6) topics. Defendants will provide a list of their respective top six deponents. The parties will meet and confer regarding whether depositions will be held in person or by Zoom. Plaintiff agreed to provide a list of 30(b)(6) topics by February 7, 2025.

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

Disclosure of Plaintiff's Expert Witnesses: The deadline for Plaintiff to disclose expert witnesses was October 2024. If given leave, Plaintiff anticipates disclosing two experts; one on liability and another on damages. Plaintiff's motion for leave to reopen the https://ecf.ctd.uscourts.gov/cgi-bin/DktRpt.pl?428102244992241-L_1_0-1 deadline for disclosure of expert witnesses is due on or before January 29, 2025. Defendants' current deadline to disclose their expert witnesses is February 15, 2025. Defendants' request to hold the deadline in abeyance is GRANTED, until a ruling issues on Plaintiff's motion. Yale's and Doe's Privilege Log: Defendants' Joint Motion for Extension of Time to produce their privilege logs by January 28, 2025, is GRANTED on consent. Motions to Compel: The parties will meet and confer regarding filing of Motions to Compel and a timeline for filing. Any motion to extend the current deadline of January 31, 2025, will identify the issue by topic, state the reason for the extension, and assign a date for filing the motion and responses. The parties will state whether the extension will impact the current deposition schedule and/or other discovery deadlines. The motion will be filed by January 29, 2025. The parties will file a Joint Status Report by close of business on February 4, 2025. A Discovery Status Conference is scheduled for February 7, 2025 at 10:30 a.m. Signed by Judge Maria E. Garcia on 1/23/25. (Esposito, A.) (Entered: 01/23/2025)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SAIFULLAH KHAN, | ) | CASE NO. 19-cv-01966 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY, *et al*, | ) | JANUARY 29, 2025 |
| *Defendants*. | ) | |

**MEMORANDUM OF DECISION**
**RE: EMERGENCY MOTIONS TO DISMISS (ECF NOs. 123, 130)**

Kari A. Dooley, United States District Judge:

On December 13, 2019, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") initiated this action against Yale University and several of its employees (the "Yale Defendants"), as well as former Yale student Jane Doe ("Doe," collectively, "Defendants"). On the same day Plaintiff sought permission to proceed against Doe using a pseudonym. *See* Compl., ECF No. 1; Pl.'s Mot. for Pseudonym, ECF No. 2. The Court granted Plaintiff's request on January 10, 2019. *See* Order, ECF No. 12. On June 19, 2024, Magistrate Judge Garcia issued an opinion adjudicating the parties' dueling motions to either vacate or continue Doe's pseudonymity. Therein, she determined that Jane Doe's continued anonymity was warranted and issued an order (the "June 19 Order") prohibiting Plaintiff or his counsel from directly or indirectly "publicly disclosing Jane Doe's identity, including but not limited to on any social media platform," and informing Plaintiff that any "release or deliberate disclosure of Jane Doe's identity" in violation of the order could subject him to sanctions, "including but not limited to dismissal."[1] *See* Ruling and Order, ECF No. 119 at 15.

---

[1] This order is similar to the verbal order issued by the Court during a hearing on March 18, 2024, which directed Plaintiff "not to publicly identify [Jane Doe] again on social media or elsewhere," until the parties' motions regarding pseudonymity were decided. Mar. 18 Hearing Tr., ECF No. 94, 23:12–24:1. *See also* ECF No. 91.

By motion, Defendants now seek dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b) as well as within the Court's inherent authority to sanction bad faith conduct. Defendants allege that Plaintiff violated the June 19 Order shortly after it was issued. *See* Def. Doe's Mot. for J. of Dismissal ("Doe Mot."), ECF No. 123 (SEALED per Mot. at ECF No. 122, Order at ECF No. 149);[2] Yale Def.s' Mot. for J. of Dismissal ("Yale Mot."), ECF No. 130. Plaintiff opposes these motions, arguing, *inter alia*,[3] that his conduct does not merit dismissal under either Rule 41 or the Court's inherent authority. *See* Pl.'s Obj., ECF No. 157 (SEALED). For the reasons that follow, though Plaintiff's conduct has been and continues to be troubling, the Court agrees that his actions do not warrant dismissal. Defendants' motions are therefore DENIED.

**Standard of Review**

*Inherent Authority*

"It is well settled that 'courts traditionally have exercised considerable authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Hall v. Oriska Corp Gen. Contracting*, No. 21-1564, 2022 WL 17420307, at *2 (2d Cir. Dec. 6, 2022) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989)). This inherent authority includes the power to sanction "bad-faith conduct." *Davis v. Saint Luke's-Roosevelt Hosp. Ctr.*, 771 F. App'x 116 (2d Cir. 2019) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct.

---

[2] The Court necessarily cites to sealed documents in order to decide the instant motions. The sealed documents cited herein were either sealed pursuant to a finding by the undersigned or Magistrate Judge Garcia that a clear and compelling reason existed for sealing and that the proposed sealing was narrowly tailored to protect the relevant privacy interest, or were filed by a party in response to an already sealed motion. For any documents sealed pursuant to a motion and order, the Court notes the corresponding docket numbers in the initial citation. However, because the cited documents are significant to the Court's ultimate ruling on these dispositive motions, the Court may, upon notice to the parties, *sua sponte* unseal the filings.

[3] Plaintiff also argues that the June 19 Order is unconstitutional, both facially and as applied, as a prior restraint on his speech. *See* Pl.'s Obj., ECF No. 157 at 16–23 (SEALED). However, whether the June 19 Order was proper, constitutionally or otherwise, is irrelevant to whether Plaintiff was bound by it or did something to violate it. Our justice system does not countenance a party picking and choosing which orders must be followed based upon that party's own view of the law. *See Maness v. Meyers,* 419 U.S. 449, 458-60 (1975).

2123, 115 L.Ed.2d 27 (1991)). Such sanctionable bad-faith conduct includes "abuse of the judicial process[.]" *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). A court's decision to impose sanctions under its inherent authority is "truly discretionary," *id.*, but "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "Such sanctions are warranted only where there is clear and convincing evidence of bad faith." *Harvin v. Cheney*, No. 3:23CV328 (MPS), 2024 WL 2044696, at *4 (D. Conn. May 7, 2024) (citing *Yukos Cap. S.A.R.L.*, 977 F.3d at 235).

"The sanction of dismissal… is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Davis*, 771 F. App'x 116 (citing *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)). If a party's conduct evinces "flagrant bad faith," a court may resort to dismissal "not merely to penalize," but "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). Dismissal is also appropriate where "'a party ... abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Davis v. Saint Luke's Roosevelt Hosp.*, No. 16-CV-6279 (JPO), 2018 WL 10384114, at *1 (S.D.N.Y. Apr. 16, 2018), *aff'd sub nom. Davis*, 771 F. App'x 116 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).

*Rule 41(b)*

In addition to their inherent and traditional authority, federal courts are explicitly authorized to involuntarily dismiss cases under Fed. R. Civ. P. 41(b). Rule 41(b) provides for dismissal "[i]f the plaintiff fails to prosecute or to comply with [the federal] rules or a court order." The decision to dismiss an action as a sanction lies within the discretion of the district court. *Smalls*

*v. Cty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017). The Second Circuit has identified five factors to guide the Court's exercise of discretion under Rule 41(b). District courts must consider:

> (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendants are likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Spencer v. Doe*, 139 F.3d 107, 112–13 (2d Cir. 1998) (citation omitted). *See also Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d. Cir. 1995). No one factor is dispositive. *Id.* Because a Rule 41(b) dismissal "is one of the harshest sanctions," it must "'be proceeded by particular procedural prerequisites, including notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Smalls*, 718 F. App'x at 19 (quoting *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014)). A "dismissal pursuant to Rule 41(b) operates as adjudication on the merits unless otherwise specified by the Court." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 89 (D. Conn. 2007).

**Facts and Procedural History**

The Court has previously summarized the allegations in this case, presumes familiarity with its facts and history, and only recites what is necessary to deciding the instant motions.

*Factual Allegations*

In October, 2015, Plaintiff and Defendant Doe were undergraduate classmates at Yale University. Compl. at ¶ 16. On Halloween night, 2015, the two attended a Halloween party and student orchestra performance. Following the concert, Plaintiff accompanied Doe to her room, where a sexual encounter ensued. *Id.* at ¶¶ 39–43. Thereafter, Doe filed a formal complaint against Plaintiff, alleging that he raped her. *Id.* at ¶¶ 45–46. Plaintiff was suspended by Yale, and after an investigation by the Yale Police Department, criminally charged by the state of Connecticut with,

*inter alia,* sexual assault. *Id.* at 47–48. He was subsequently acquitted on all counts after a jury trial and readmitted to Yale in 2018, before being suspended again for unrelated issues in October 2018.[4] *Id.* at ¶¶ 58–64. In November 2018, Yale's University-Wide Committee on Sexual Misconduct ("UWC") convened for a hearing regarding Doe's 2015 sexual assault allegations. *Id.* at ¶ 74. The UWC panel voted to expel Plaintiff. *Id.* at ¶ 80.

In 2019 Plaintiff brought claims against the Yale Defendants for due process violations under Title IX, breach of contract, breach of the implied warranty of fair dealing, negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of privacy. *Id.* at ¶¶ 82–110. He also brought claims of defamation and tortious interference with business relationships against Doe. *Id.* at ¶¶ 111–121.

*Procedural History*

On the same day that he filed his complaint, Plaintiff filed a motion seeking permission to proceed against Jane Doe using a pseudonym. *See* Pl.'s Mot. for Pseudonym. He did so in order to comply with Yale's UWC procedures on sexual misconduct, "which require him to maintain the confidentiality of UWC proceedings… including the name of his accuser." *Id.* at 1–2. In his motion, Plaintiff indicated that he hoped to be readmitted to Yale and complete his degree, and so sought to adhere to the UWC anonymity requirements because they would apply to him upon readmission. *See id.* Plaintiff argued under the ten-factor test set forth in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008), which the Second Circuit established for determining whether pseudonymity is appropriate in a given case. *Id.* at 4. He noted that though the test had "traditionally been applied to parties seeking to protect their own identities," the factors

---

[4] Plaintiff alleges that this suspension was pretextual, and related to his history at Yale and Yale's "prevailing culture" regarding claims of sexual assault. *Id.* at ¶¶ 67, 70.

were "readily adaptable to a request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance to take a position, by naming her by a pseudonym." *Id.* at 4–5.

Shortly after Plaintiff moved for Doe's pseudonymity, the Yale Defendants filed a memorandum in support, applying the *Sealed Plaintiff* factors to Doe and arguing that the facts supported her continued pseudonymity.[5] *See generally* Yale Def.'s Mem. in Supp. of Pseudonymity, ECF No. 9. On January 10, 2020, the Court, considering the *Sealed Plaintiff* factors, and emphasizing "the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, [and] the lack of an alternative procedure for maintaining Jane Doe's confidentiality," granted Plaintiff's motion and allowed Doe to remain pseudonymous. *See* Order, ECF No. 12. The order was without prejudice to challenge by Doe, which she did not do. The order has remained in effect ever since.

Doe moved to dismiss Plaintiff's claims on April 28, 2020. *See* Def. Doe's Mot. to Dismiss ("Doe MTD"), ECF No. 26. She argued that the 2018 UWC hearing was a quasi-judicial proceeding, and that as such, under Connecticut law, she was entitled to absolute immunity as to any claims arising from her testimony therein. *See* Mem. in Supp. of Doe MTD, ECF No. 27 at 9–16. The Court agreed and dismissed all claims against Doe. *See Khan v. Yale Univ.*, 511 F. Supp. 3d 213, 228 (D. Conn. 2021), *aff'd in part, vacated in part, remanded*, 85 F.4th 86 (2d Cir. 2023) ("*Khan I*").[6]

---

[5] As of the date of Yale's memorandum in support, Doe had not yet appeared.

[6] The parties agreed that any defamation claim related to Doe's initial report of sexual assault in 2015 was time barred. *Khan 1*, 511 F. Supp. at 227. The Court ruled that Plaintiff's tortious interference claim was similarly barred, finding that Doe's 2018 UWC testimony could not serve as "wrongful conduct" under the "continuing course of conduct" doctrine in order to bring her 2015 conduct within the applicable statute of limitations. *Id.* at 228.

Plaintiff appealed, and the Second Circuit certified several questions of state law to the Connecticut Supreme Court, including whether the 2018 UWC hearing was properly recognized as a quasi-judicial proceeding and, if not, whether Doe would be entitled to qualified immunity or no immunity at all with respect to her testimony during the hearing. *See Khan v. Yale Univ.*, 347 Conn. 1, 18 (2023) (*Khan II*). The Supreme Court concluded that "the UWC proceeding was not quasi-judicial because it lacked important procedural safeguards," and further ruled that though "a qualified privilege is available to alleged victims of sexual assault who report their abuse to proper authorities at institutions of higher education, … at this stage of the proceedings, the allegations of malice in Khan's complaint are sufficient to defeat Doe's entitlement to qualified immunity as a matter of law." *Id.* at 57. Accordingly, the Second Circuit reversed in part this Court's decision in *Khan 1*, holding that Plaintiff's defamation and tortious interference claims, "should not have been dismissed insofar as they are based on Doe's 2018 statements at a Yale UWC hearing," and remanding the case for further proceedings. *Khan v. Yale Univ.*, 85 F.4th 86, 102 (2d Cir. 2023) (*Khan III*).[7]

Following remand, on December 27, 2023, Doe filed a sealed Motion for Judgment of Dismissal, ECF No. 74, and an accompanying memorandum of law, in which she claimed and produced evidence that Plaintiff had disclosed her identity on social media, contacted her directly regarding settlement, and potentially disclosed her name to a newspaper reporter. Def. Doe's Mem. in Supp. of Emer. Mot. for J. of Dismissal ("Doe's Dec. 27 Mem. in Supp."), ECF No. 75 (SEALED per Mot. at ECF No. 73, Order at ECF No. 93), at 2–7. Doe argued that the Court should sanction Plaintiff for his actions by dismissing his case. *Id.* at 10–11. Plaintiff objected, *see* Pl.'s

---

[7] The Second Circuit affirmed this Court's dismissal of Plainitff's tortious interference claims insofar as they were based on Doe's 2015 statements. *See Khan III*, 85 F.4th at 102.

Obj., ECF No. 77 (SEALED), and the Court scheduled oral argument for March 18, 2024. *See* ECF No. 84.

Prior to oral argument, on March 4, 2024, Doe filed a motion for a protective order, seeking to preclude Plaintiff's access to certain non-public discovery. She argued that the order was necessary based on Plaintiff's prior public statements. *See* Def. Doe's Mot. for Protective Order, ECF No. 81 (Redacted); Mem. in Supp ("Doe's Mar. 4 Mem. in Supp."), ECF No. 81-1 at 5 (Redacted).[8] On March 15, Plaintiff filed his objection to the motion for protective order and filed a separate motion to vacate the Court's order treating Doe Pseudonymously. *See* Pl.'s Obj. to Mot. for Protective Order, ECF No. 90; Pl.'s Motion to Vacate Pseudonymity Order, ECF No. 89. Doe replied to Plaintiff's objection on March 29, 2024. *See* Doe's Reply in Supp. of Protective Order, ECF No. 96 (SEALED per Mot. at ECF 95, Order at ECF No. 117).

At oral argument, the Court preliminarily noted that the only order it had entered regarding Doe's name was that "all pleadings and references to Jane Doe would use that appellation throughout the litigation," and further explained that at the time the Court issued the pseudonymity order "there was no request for a protective order in terms of the use of her name[.]" Mar. 18 Hr'g Tr., ECF No. 94, at 5:10–17. As such, after hearing from counsel for both parties, the Court denied Doe's motion for judgment of dismissal, but also directed Plaintiff "not to publicly identify [Jane Doe] again on social media or elsewhere until [rulings on the pending motions] are issued." *Id.* at 19:17–22; 23:21–24:1; *See also* ECF No. 91. Though it denied Doe's motion to dismiss, the Court expressed its concern that Plaintiff's conduct on social media gave "a sense of an intent to intimidate" or harass by "mobilizing the internet." *Id.* at 9:5–9. The Court cautioned the parties that it did not "want the case litigated on [social media]," and further ordered Plaintiff to take down

---

[8] The Court cites to the publicly available, redacted versions of Doe's motion and memorandum in support. Doe also filed sealed versions at ECF Nos. 82 and 82-1.

Doe's name on any social media account "under which he ha[d] the ability to do so." *Id.* at 14:10–19; 25:7–20.

Following oral argument, Doe filed a "Motion to Continue Anonymity" with an accompanying memorandum in support, and incorporated by reference her arguments raised therein into her objection to Plaintiff's motion to vacate the pseudonymity order. *See* Doe's Mot. to Continue Anonymity, ECF No. 103 (SEALED per Mot. at ECF No. 101, order at ECF No. 117); Doe's Mem. in Supp. of Mot. to Continue Anonymity ("Doe's Apr. 5 Mem. in Supp."), ECF No. 103-1 (SEALED); Doe's Obj. to Pl.'s Mot. to Vacate, ECF No. 104. On May 13, 2024, the Court referred, *inter alia*, Doe's motion for a protective order (ECF No. 81), Khan's motion to vacate the pseudonymity order (ECF No. 89), and Doe's motion to continue anonymity (ECF No. 103 (SEALED)) to Magistrate Judge Garcia for a decision. *See* ECF No. 110. On June 14, 2024, Doe moved for permission to file a sur-reply in support of her Motion for Protective Order, to bring to the court's attention several of Plaintiff's emails that Doe obtained via discovery on May 19, 2024. *See* Doe's Mot. for Sur-Reply, ECF No. 114 (SEALED per Mot. at ECF No. 113, Order at ECF No. 117). Judge Garcia granted Doe's motion on June 18, 2024. *See* Order at ECF No. 118; Doe's Sur-Reply in Supp. of Protective Order, ECF No. 114-1 (SEALED).[9]

On June 19, 2024, Judge Garcia issued her ruling and order denying Plaintiff's motion to vacate the Court's pseudonymity order and granting Doe's motion to continue anonymity. *See* Ruling and Order, ECF No. 119 at 15. The court once again evaluated the facts of this case under the *Sealed Plaintiff* balancing test. Judge Garcia determined that, with one exception that did not change her conclusion, "none of the facts relevant to the factors considered by [the undersigned

---

[9] Judge Garcia considered the exhibits that Doe included in her sur-reply when deciding the referred motions, concluding that they "evince[ed] Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly." Ruling and Order, ECF No. 119 at 14.

upon granting Plaintiff's motion] have changed," and that Doe's anonymity should be continued. *Id.* at 7–11.

Judge Garcia also determined that "Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her."[10] *Id.* at 11. The Court therefore issued the following order:

> I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal. Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration. Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language. If the parties agree, they may jointly file a Proposed Order. If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

*Id.* at 15. [11]

*Allegations Following the June 19 Order*

On June 24, 2024, Doe filed one of the instant motions, her Second Emergency Motion for Judgment of Dismissal. *See* Doe Mot., ECF No. 123 (SEALED). In her supporting memorandum of law, Doe cited Plaintiff's social media posts from "only two hours" after the June 19 Orderwas issued, which she included in her memorandum as screenshots. Def. Doe's. Mem. in Supp. ("Doe's June 24 Mem. in Supp."), ECF No. 123-1 (SEALED) at 1, 7–12.

The screenshots show that Plaintiff posted "i [sic] have been officially gagged by the federal court system of the United States for my speech on this platform," and posted a picture of

---

[10] In crafting this order, Judge Garcia acknowledged the unique procedural posture concerning Doe's anonymity, determined that a Rule 26(c) protective order was inapplicable, and found that an order restricting Plaintiff and his counsel from publicly identifying Doe would not run afoul of the First Amendment as a prior restraint on speech. *See* Ruling and Order at 11–15. In a separate filing, Plaintiff has challenged Judge Garcia's reasoning via objection and request for *de novo* review under Local Rule 72.2. *See* Pl.'s Local Rule 72.2 Obj., ECF No. 152. Plaintiff's objection will be taken up in a separate decision.

[11] In her instant motion and memorandum in support, Doe refers to the June 19 Order as the "Third Anonymity Order." *See* Doe's June 24 Mem. in Supp. at 1 (SEALED).

the June 19 Order with the relevant portion highlighted. *Id.* at 7, 9. He then posted "my actions are limited. I am going to 100% obey this ruling. I can't directly or indirectly tell anyone what to do. In no way shape or form should my [posts] here be interpreted in any way to construe anything beyond the limited scope of 'this ruling applies to me.'" *Id.* at 8. Doe argues that this message "instigated his followers to post Jane's identity." *Id.* at 9. Other individuals on the platform responded to Plaintiff's posts. One wrote "Sorry to hear about this. It's a damn shame someone can make false accusations and remain anonymous. A huge flaw in the system. Hoping one day her name can be revealed so that her and others like her are shamed. It's only right." *Id.* at 10. Plaintiff responded, "c'est la vie. i'm [sic] doing my part. hopefully [sic] others contribute in their own way." *Id.* To another user, who posted "others can still say her name tho [sic] Sir," Plaintiff wrote, "I can not [sic] instruct anyone on their personal actions. I must fully adhere, abide, and be obedient to the courts and the rule of law." *Id.* at 11. Plaintiff went on to specifically "tag" another user, writing to this person "[other user]; this gag order only applies to me." *Id.* at 11. That individual then "posted a photo of Jane from when she was in high school and her real name," which the same user had also done following Plaintiff's disclosure of Doe's name on Christmas in 2023. *Id.* at 12.

Doe argues that the Court should sanction Plaintiff for these posts, which she asserts violate the June 19th Order, by dismissing his case with prejudice pursuant to the Court's inherent authority and Fed. R. Civ. P. 41(b). *Id.* at 13–14, 20. She contends that his "prior misconduct," his personal violation of the June 19 Order, his incitement of others to violate the Court's orders, and his violation of the "spirit and objective" of the Court's orders collectively warrant dismissal as a sanction. *Id.* at 20–26.

On June 28, 2024, the Yale Defendant's filed the second instant motion—their emergency motion for judgment of dismissal—and its accompanying memorandum in support. *See* Yale Mot., ECF No. 130; Yale Mem. in Supp, ECF No. 130-1.[12] Therein, they recite the procedural history detailed above, reiterate some of Doe's arguments with respect to dismissal, and address in more detail two of the five factors that district courts in this circuit must consider when adjudicating dismissal of a plaintiff's claims under Rule 41(b), citing *Pena v. Zazzle Inc.,* 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022). *Id*. at 5–6. Specifically, they detail the harm that Plaintiff's violation caused to all Defendants through its effect on Yale's confidentiality policies with respect to sexual assault reporting, and argue that any sanction less than dismissal with prejudice would be inadequate and futile. *Id.* at 6–8

Plaintiff's opposition, filed with an accompanying memorandum of law on July 6, 2024, addresses both Doe's and Yale's arguments. Pl.'s Opp'n at 1 (SEALED). The bulk of his memorandum focuses on Constitutional issues and whether the June 19 Order was valid, which is irrelevant to the pending motions and which the Court does not address herein. *See* Note 3, *supra*. He also challenges and denies the accusation that he violated the June 19 Order, in that he did not directly or indirectly disclose Doe's identity. Pl.'s Mem. in Opp'n, ECF No. 157-1 (SEALED) at 11–12. Plaintiff posits that all of his public social media posts that Defendants rely upon were "objectively compliant;" that his public disclosure of Doe's name and certain other conduct, cited by Doe, predate the June 19 Order; and that Khan's intent, as opposed to his actual words, "has nothing to do with whether the Plaintiff made a statement that violated the order." *Id.* at 12–13. Plaintiff also argues that the avenues for dismissal advanced by Defendants—the Court's inherent authority or Fed. R. Civ. P. 41(b)—are inapplicable to the current facts, and that criminal contempt

---

[12] The Yale Defendants incorporate by reference Doe's Emergency Motion for Judgment of Dismissal and its memorandum in support into their own motion. *See* Yale Mot. at 1.

proceedings would be required. *Id* at 14–16. Finally, he argues in the alternative that Plaintiff's conduct does not warrant dismissal under either standard.

Doe filed her reply on July 9, 2024. Within, she argues that Plaintiff's attacks on the validity of the June 19 Order are immaterial to whether the order was violated, contests Plaintiff's arguments regarding the order's constitutionality, and highlights Plaintiff's allegedly "bad-faith" conduct in tagging other users who he knew would disclose Doe's identity. Doe's Reply in Supp. of Dismissal ("Doe's Reply"), ECF No. 166 (SEALED per Mot. at ECF No. 165, Order at ECF No. 182), at 2–9. Doe also again asserts that dismissal is the only appropriate remedy, as Plaintiff has "repeatedly been warned of the prospect of dismissal," but continues to violate the Court's orders. *Id.* at 10. Further, she claims that through his repeated violations, Plaintiff has created a situation in which the Court must adjudicate motions that require it to disclose confidential information, which will result in additional harm to Doe if her motion is not granted and the case is allowed to continue. *Id*.

For the reasons that follow, although finding Plaintiff's conduct egregious, the Court nonetheless concludes that dismissal of this case is not warranted.

**Discussion**

Preliminarily, the Court concludes that its inherent authority and Rule 41(b) provide a basis upon which to dismiss the case. While there may be no case on all fours with this one as a factual matter, the case law, cited above, demonstrates the breadth and scope of the Court's authority to cover a variety of different factual scenarios. The Court therefore analyzes the motion within this framework.

Prior to the June 19 Order, Plaintiff, through a series of posts, in some kind of bizarre suspense building exercise, previously identified Doe to the world writ large through his social

media account. Doe's Dec. 27 Mem. in Supp at 5–7 (SEALED). It was this conduct, *inter alia,* that occasioned the first motion to dismiss and which this Court found very troubling. As the Court observed on March 18, 2024, Plaintiff's conduct appeared less about vindicating his legal rights through the litigation, and more about seeking retribution against Doe by mobilizing his "followers" on social media. Mar. 18 Hr'g Tr at 9:1–9. The potential for genuine harm to Doe as a result of Plaintiff's conduct, once his claims and accusations were broadcast, is easy to recognize. The Court did not dismiss this case in March 2024 because it had only entered an order regarding the use of Doe's pseudonym in relation to this litigation and had not otherwise issued broader protections for Doe.[13] But Plaintiff was warned that his conduct was not an appropriate adjunct to this litigation.

Judge Garcia then resolved the outstanding issues regarding Doe's anonymity when she issued the June 19, 2024, Order. Almost immediately, Plaintiff took again to his social media account; posted the Court's order; declared himself "gagged" by the federal courts; clarified that the order only applied to him, not to others; espoused that perhaps "others would do their part;" and tagged a specific individual who, on cue, then revealed Doe's name and photograph. Doe's June 24 Mem. in Supp. at 7–12 (SEALED). Having already revealed Doe's identity via the same account seven months earlier, Plaintiff knew that his audience could (and likely would) easily share this information.

Plaintiff's argument that his intent is "irrelevant" and that his conduct did not actually violate the letter of the June 19 Order is utterly specious. The June 19 Order precluded Plaintiff from "directly or indirectly" disclosing Doe's name on social media. "Indirect," means *inter alia,* "deviating from a direct line or course: ROUNDABOUT" and "not straight forward and open:

---

[13] Notably Plaintiff's then-counsel acknowledged that it was his view that public disclosure of Doe's identity was prohibited. Plaintiff himself has publicly acknowledged as much as well. Doe's June 24 Mem. in Supp. at 3.

DECEITFUL." Merriam-Webster's Collegiate Dictionary 634–35 (Frederick C. Mish et al. eds., 11[th] ed. 2009). "Indirectly" is defined as "[i]n a way that is complicated or not obvious" or "without clearly mentioning or saying something." *Indirectly*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/indirectly (last visited January 24, 2025). And it is axiomatic that one method of acting "indirectly" is through the conduct of others. Plaintiff's posts were designed to and did in fact cause others to act in a fashion that violated the June 19 Order. He was the impetus behind the disclosure, and through his words and deeds, manipulated his "followers" to achieve his desired result. His protestations to the contrary are belied by the entirety of the record before the Court and are otherwise not credible.

The more difficult question is the appropriate remedy. Defendants seek dismissal for what they view as an egregious and arrogant affront to the Court's orders, which they argue continues to do real harm, not just to Doe but to all Defendants. Plaintiff argues, in the alternative, that dismissal is not warranted for his misstep—even if found to be a violation of the Court's Order (which he in no way concedes). After consideration of the factors, identified above, the Court agrees with Plaintiff.

It is well-established that there is a clear and significant preference for cases to be decided on their merits. *See Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362 (2d Cir. 2023). As such, dismissal is considered the least-favored sanction, and the sanction of last resort. *Harvin v. Cheney*, No. 3:23CV328 (MPS), 2024 WL 2044696, at *4 (D. Conn. May 7, 2024) (citing *Shcherbakovskiy*, 490 F.3d at 140). And if the Court can fashion lesser sanctions to address the party's conduct, lesser sanctions should be chosen. *Id.*

Weighing in favor of dismissal is the fact that Plaintiff's conduct comes on the heels of similar conduct for which Defendants sought dismissal. Although no sanction was imposed,

15
**SPA-70**

Plaintiff was clearly advised that his conduct was both troubling and inappropriate. *See, e.g.,* Mar. 18 Hr'g Tr. at 8:23–9:9. However, while the Court has concluded that Plaintiff's conduct violated the Court's orders, it has not recurred over the ensuing seven plus months. And subsequent events reduce the prejudice to Doe which can be *attributed to* Plaintiff's conduct. Specifically, in November 2024, the Superior Court for the state of Connecticut certified the official transcript of Plaintiff's criminal trial. *See* Emergency Suppl. to Rule 72.2 Obj., ECF No. 226 at 14–15; Def. Doe's Resp. to Court's Order, ECF No. 230 at 1. Therein, Doe is identified by name.[14] *Id.* The parties have been working closely with Judge Garcia to complete discovery and the case is proceeding towards an adjudication on the merits, whether by motion practice or a trial.

Further, Plaintiff's conduct throughout the litigation is an appropriate subject for his cross-examination at trial. The defendants will have the opportunity to probe Plaintiff's motives for bringing his claims; whether those motives color his testimony or impact his credibility; and *the extent to which his conduct throughout the litigation otherwise impacts his credibility or the merits of his allegations*. Whether considered a "sanction" or simply a pre-trial ruling, Plaintiff will not be permitted to prevent cross-examination regarding his conduct over the course of the litigation.

Defendants do not, in the alternative, seek any sanction other than dismissal. And the Court is without sufficient information to assess whether other sanctions, to include financial sanctions, would be appropriate. Accordingly, no further assessment of the issue is undertaken.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss, ECF Nos. 123 and 130, are DENIED.

---

[14] Plaintiff, by subsequent order on October 21, 2024, was prohibited from sharing the official transcript beyond the United States immigration authorities. *See* Order, ECF No. 216. That Order was objected to by Plaintiff and will be addressed in a separate decision. *See* Emergency Suppl. to Rule 72.2 Obj., ECF No. 226 at 1.

Case: 26-830, 08/03/2026, DktEntry: 30.1, (74 of 78)

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of January 2025.

        */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

17
**SPA-72**

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

## ELECTRONIC ORDER — ECF No. 354 (06/23/2025)

*Docket-text order (no separate document filed); reproduced from the official docket sheet.*

06/23/2025 354 ORDER. As contained in the Yale Defendants' Opposition to Plaintiff's Motion to Compel, ECF No. 345 , at 2, on June 16, 2025, Plaintiff published a post on X that the Court considers a present intention or thinly veiled threat to publicly identify Defendant Jane Doe. This would, of course, violate the Court's Order at ECF No. 119 . This post is yet another example of Plaintiff's troubling conduct. Plaintiff is reminded that the Court's Order dated June 19, 2024, at ECF No. 119 , remains in full force and effect. Plaintiff's counsel is directed to provide a copy of this order to Plaintiff by July 1, 2025. Signed by Judge Kari A. Dooley on 6/23/2025. (Alquesta, S) (Entered: 06/23/2025)

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Saifullah Khan v. Yale University, Jane Doe, et al., No. 26-830

## ELECTRONIC ORDER — ECF No. 399 (03/27/2026)

*Docket-text order (no separate document filed); reproduced from the official docket sheet.*

03/27/2026 399 ORDER finding as moot 344 Motion to Compel; finding as moot 349 Motion to Compel; finding as moot 294 Motion to Compel; finding as moot 322 Motion to Compel; finding as moot 325 Motion to Compel; finding as moot 327 Motion to Compel; finding as moot 335 Motion to Compel in light of the granting of the Motion to Dismiss. ECF No. 332, https://ecf.ctd.uscourts.gov/cgi-bin/DktRpt.pl?428102244992241-L_1_0-1 333, 398. Signed by Judge Maria E. Garcia on 3/27/26. (Esposito, A.) (Entered: 03/27/2026)

### RELEVANT CONSTITUTIONAL, STATUTORY, AND RULE PROVISIONS

**U.S. Const. amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**28 U.S.C. § 636(b)(1)(A)**

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

**Fed. R. Civ. P. 37(b)(2)(A)**

(b) Failure to Comply with a Court Order. * * *

(2) Sanctions Sought in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

**Fed. R. Civ. P. 72(a)**

(a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge

must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.