# 26-0830-cv

## United States Court of Appeals

*for the*

## Second Circuit

SAIFULLAH KHAN,

*Plaintiff-Appellant,*

– v. –

YALE UNIVERSITY, PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN, JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN, LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER, SARAH DEMERS, JANE DOE, CAROLE GOLDBERG, UNKNOWN PERSONS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## SUPPLEMENTAL APPENDIX

BRENDAN GOOLEY
JAMES M. SCONZO
CARLTON FIELDS, P.A.
*Attorneys for Defendant-Appellee Jane Doe*
One State Street, Suite 1800
Hartford, Connecticut 06103
(860) 392-5000

PATRICK M. NOONAN
GIOVANNA TIBERII WELLER
MARIA LAURATO
CARMODY TORRANCE SANDAK & HENNESSEY LLP
*Attorneys for Defendants-Appellees Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers and Carole Goldberg*
195 Church Street
New Haven, Connecticut 06510
(203) 777-5501

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (397660)

## TABLE OF CONTENTS

**Page**

Transcript of Motion Hearing held before the Honorable Maria E. Garcia, dated June 20, 2024 .. SA-1

Transcript of Motion Hearing held before the Honorable Kari A. Dooley, dated July 25, 2024 .... SA-43

Joint Motion for Extension of Time, dated February 18, 2025 .... SA-113

Joint Status Report and Motion for Extension of Time, dated March 4, 2025 .... SA-117

Joint Proposed Scheduling Order, dated March 21, 2025 .... SA-120

Motion to Compel, by Defendant Yale University, dated May 14, 2025 .... SA-123

Affidavit of Maria L. Laurato, sworn to May 14, 2025 .... SA-126

Exhibit G to Motion for Judgment of Dismissal - Declaration of Maria L. Laurato, dated May 15, 2025 .... SA-132

Exhibit J to Motion for Judgment of Dismissal - *Redacted* Responses to Defendant Jane Doe's First Set of Discovery Requests to Plaintiff, sworn to May 17, 2024 .... SA-136

Motion for Leave to File Supplemental Brief, by Defendant Jane Doe, dated July 10, 2025 (Omitted herein)

Exhibit B to Motion for Leave - Text Messages, dated May 23, 2018 .... SA-143

**Page**

Exhibit D to Motion for Leave -
Text Messages, dated March 26, 2018.................. SA-172

Exhibit I to Motion for Leave -
Text Messages, dated May 11, 2018...................... SA-175

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | ) | No. 3:19-CV-01966-KAD |
| | ) | 141 Church Street |
| vs. | ) | New Haven, Connecticut |
| YALE UNIVERSITY, JANE DOE, et al. | ) | June 20, 2024 |

TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE MARIA E. GARCIA

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: ALEXANDER T. TAUBES, ESQ.
Alexander T. Taubes
59 Elm Street
Suite 207
New Haven, CT 06511

For the Defendants: GIOVANNA T. WELLER, ESQ.
MARIA L. LAURATO, ESQ.
Carmody Torrance Sendak & Hennessey, LLP
195 Church Street
New Haven, CT 06510

For the Defendant: BRENDAN GOOLEY, ESQ.
Carlton Fields
One State Street
Suite 1800
Hartford, CT 06103

ECR Operator: COURTSMART

Rachel Wiley, CDLT-251
7227 N. 16th Street
Suite 207
Phoenix, AZ 85020
(800) 257-0885

I N D E X


| RULINGS: | PAGE | LINE |
|---|---|---|
| Motions for extension of time are denied without prejudice. | 39 | 17 |

Colloquy

(11:01 O'CLOCK, A.M.)

THE CLERK: All rise. The Honorable United States District Court for the District of Connecticut is now open. All persons having causes of action pending or who've been bound or summoned to appear herein will take due notice hereof and give attention according to law. The Honorable --

THE COURT: Good morning. Please be seated.

MS. WELLER: Good morning, Your Honor.

THE COURT: Okay. We're here in the matter of Khan v. Yale University, et al. It's case 19-CV-1966 assigned to Judge Dooley. My name is Judge Garcia.

If I could start with the appearances of counsel, starting with plaintiff, please.

MR. TAUBES: Good morning, Your Honor. This is attorney Alexander Taubes for the plaintiff, Saifullah Khan.

THE COURT: Good morning, Attorney Taubes. And is that your client at the table?

MR. TAUBES: Yes.

THE COURT: Okay.

MR. TAUBES: Sitting to my right is --

THE COURT: Good morning --

MR. TAUBES: -- Mr. Khan.

THE COURT: -- Mr. Khan. Twice in one --

THE PLAINTIFF: Good morning.

THE COURT: -- day, Attorney Taubes.

MR. TAUBES: Yes.

THE COURT: Okay.

MS. WELLER: Good morning, Your Honor. Giovanna Weller for the defendant Yale University and the individual Yale defendants. And with me is my colleague, Maria Laurato.

MS. LAURATO: Good morning, Your Honor.

THE COURT: Good morning.

MR. GOOLEY: And good morning, Your Honor. Brendan Gooley of Carlton Fields on behalf of defendant Jane Doe.

THE COURT: Good morning to all of you. Any of your clients in the courtroom?

MS. WELLER: Yale does not, Your Honor.

MR. GOOLEY: No, Your --

THE COURT: I'm sorry?

MR. GOOLEY: -- Honor. I'm sorry.

THE COURT: Go ahead. I'm sorry, Attorney Weller, I didn't hear that.

MS. WELLER: Yeah. Yale does not have clients in the courtroom.

THE COURT: Okay.

MR. GOOLEY: Same, Judge.

THE COURT: Okay.

MR. GOOLEY: No client -- Jane is not in the courtroom.

THE COURT: Okay. Thank you. So I'm going to

inquire as to whether everybody has been alerted of the ruling that came out yesterday related to a lot of the pending motions.

MR. TAUBES: Yes, Your Honor.

MS. WELLER: Yes, Your Honor.

THE COURT: Okay. So for purposes of today, there are two -- well, there's four pending motions, but really, it's Jane Doe's motion for protective order, which is docket number 81. The sealed version is docket number 82. And then Mr. Khan's motion for extension of time is docket 105. There's a previously filed one, which is 100, which can be mooted out.

So I wanted to start with the protective order, because it appears to me that a lot of time has passed since that motion was filed. And I know that initially there had been some conversations, meeting-and-confer efforts to see whether something could be agreed to. And I wanted to know whether there had been any additional communications and kind of where we stand on that motion.

I see you standing up, Attorney Gooley. Why don't you start since it's your motion.

MR. GOOLEY: Sure thing, Judge. And I certainly hesitate to throw us out of order here, but there is an issue related to yesterday's order that I --

THE COURT: Okay.

MR. GOOLEY: -- wanted to address with the Court --

THE COURT: Okay.

MR. GOOLEY: -- which is it has just come to my attention that the plaintiff posted on X, now -- formerly known as Twitter, the order, and then also posted a series of tweets that I've just been made aware of about this -- what he refers to as a gag order, only applies to him, hopefully others -- I'm doing my part -- hopefully others contribute in their own way. He tweets at someone to specifically say, This gag order only applies to me. That individual then appears to disclose personal information about Jane Doe.

And I just wanted to apprize Your Honor, it is, as I read this, certainly our position that that is a violation of Your Honor's order insofar as it prohibited the plaintiff from indirectly disclosing Jane's name by specifically encouraging others to disclose her name through the tweet, such as, hopefully others contribute in their own way. I wanted to apprise Your Honor because I think it would be a mistake not to while we're all here today that there will be briefing coming on that forthwith.

And I also wanted to see if there's anything we can do to -- I would say, Judge, I would say respect the status quo as we've had in the case while we briefed that issue and take Your Honor up on her offer to meet and confer about a protective order that more specifically delineates what can

and cannot be done with Jane's identity. And so that's -- again, apologies for throwing us off script here.

THE COURT: So can you detail for me what is the nature of the postings? The order was posted online, which it's a public order, so that's not --

MR. GOOLEY: Correct.

THE COURT: -- concerning.

MR. GOOLEY: Correct.

THE COURT: And it hasn't -- it wasn't filed under seal because there was nothing -- I was very careful to make sure that I didn't include anything in the order that was referencing any of the sealed materials. So can you list for me what it is that Mr. Khan disclosed publicly that in your view is a violation of the order in place?

MR. GOOLEY: We read the order's prohibition on Mr. Khan indirectly disclosing Jane's name as prohibiting him from encouraging others to do so. And the tweet, I'm doing my part; hopefully others contribute in their own way, tweeting at an individual to specifically inform the individual that this gag order only applies to me, and then that individual posting information about Jane is a violation. But as I mentioned, Judge, I think that warrants full briefing, and we do intend to submit that briefing.

Again, my point today is just I thought it would be a mistake not to apprise Your Honor of that --

THE COURT: Um-hum.

MR. GOOLEY: -- given that we're all here today and that that is coming in short order.

THE COURT: Okay. Well, I look forward to that. And obviously, if it's filed as an emergency motion or there are significant concerns about violation of my order, I'll turn my attention to it immediately.

MR. GOOLEY: Thank you, Judge.

THE COURT: Mr. Khan, I know you were before Judge Dooley back in March when the initial postings were there. You seemed quite contrite at that time. I don't know if something has changed between then and now. My order is quite clear as to what can and can't happen, and the spirit of the order as well.

If you want to now kind of undermine or change your direction as to what you said to Judge Dooley, I would just caution you because I think Judge Dooley has been quite clear. And I think my order is quite clear that any violation of my order could lead to sanctions, which could include dismissal of your claims against Jane Doe and potentially Yale. So I won't make any rulings here because I haven't seen the materials, there is no briefing before me. But the orders are orders of the Court. They're expected to be followed. And if they're not followed, there are significant potential repercussions.

Attorney Taubes, is there something you'd like to say regarding what Attorney Gooley has brought to the Court's attention?

MR. TAUBES: Yes, Your Honor. I've reviewed the tweets that Attorney Gooley has referenced, and I respectfully disagree that Mr. Khan has violated any of the orders. Obviously, they have every right to have a position on Mr. Khan's social media posts, and they can make their arguments in briefing, and we'll have an opportunity then to respond. But I have had the opportunity to speak with Mr. Khan. He has expressed to me that he has every intention of abiding by the Court's orders and rules and that -- and from what I have seen, he has. So we respectfully disagree with the position, and I expect that we'll have to bring this up at another date.

THE COURT: All right.

MS. WELLER: Your Honor, may I be heard briefly?

THE COURT: Of course.

MS. WELLER: Yes. I agree with counsel for Jane Doe. I believe that these tweets from Mr. Khan are really a dog whistle to others to do what it is that he has now been officially prohibited from doing. His first tweet, as I understand, it was around 4:20 p.m. yesterday, where he says, As of today, I have been officially gagged by the federal court system of the United States for my speech on this platform, Judge's order below. And as Your Honor said,

publicly posting a public filing is not a violation.

Not too long after that, though, he states:

> My actions are limited. I'm going to a hundred-percent obey this order. I can't directly or indirectly tell anyone what to do. In no way, shape, or form should my tweets here be interpreted in any way to construe anything beyond the limited scope of this ruling applies to me.

And then, as Mr. Gooley said, he then later says:

> I'm doing my part; hopefully others contribute in their own way. I cannot instruct anyone on their personal actions. I must fully adhere, abide, and be obedient to the Court and to the rule of law.

And then says shortly thereafter, This gag order applies only to me. So I do believe that what the plaintiff is doing is setting the table for others to do that which he cannot do. And I believe that that does indirectly violate this Court's order.

THE COURT: Well, I think it surely dovetails very neatly into the issues related to the motion for protective order, because to the extent there's evidence that Mr. Khan is trying to find loopholes to get around the Court's orders, and like I said, the spirit of the order, then that gives Yale and Jane Doe kind of stronger arguments for the protective order that they're seeking.

So I'm not going to make any more kind of statements about what you've posted, Mr. Khan. Everybody can file what they need to file. And I will, if it's referred to me -- I don't know if it will be; it might be handled by Judge Dooley directly -- take it in due course. But I will reiterate that the orders of the Court are the orders of the Court. And it's not about saying that you're going to follow the orders of the Court; it's about following the orders of the Court. Because just saying that you're going to follow them and not actually doing that is just lip service.

So can we move on to the motion for protective order?

MR. GOOLEY: Yes.

THE COURT: Thank you.

MR. GOOLEY: And thank you, Judge. And I agree with what Your Honor said; it does dovetail nicely. And I know Your Honor's reviewed everything, so I will try to keep my comments relatively brief on the motion for protective order. But the reason we filed the motion, Judge, in a nutshell, is because of really two concerning things that that we've seen in this case, and I know that the Court has seen in this case, which is a disregard of confidentiality restrictions, both in this case and outside of this case, and pronouncements of an intent to misuse the litigation to abuse and harass Jane. The combination of those things, in our view, more than warrants a protective order that goes somewhat above and beyond this

Court's standing protective order -- or I should say, the District of Connecticut's standing protective order insofar as we think the crux of the issue is whether the plaintiff should be precluded from having access to sensitive documents.

And I think, Your Honor, before we got a little sidetracked, began her remarks by asking what is in dispute. And as I understand it, there certainly is -- as I understand it again, there certainly is no dispute about a protective order precluding the parties from disseminating confidential documents, meaning it's the standard protective order; every party can mark something that's confidential as long as that's warranted, and the parties then are restricted in the ways they can use that document. I understand that to not be disputed. I understand there to not be a dispute about plaintiff's signing an acknowledgment to that effect warning him that --

THE COURT: So that's --

MR. GOOLEY: -- disclosure --

THE COURT: -- section 5. So looking at the protective order that you've submitted attached --

MR. GOOLEY: Yes.

THE COURT: -- to your motion, I think it's 82-2, or at least that's what I have in front of me. So it's your view that there's no dispute as to paragraph 3 and 5-A?

MR. GOOLEY: Give me one second, Judge. I believe

that is correct, the confidential piece of it that would just prohibit dissemination.

THE COURT: Okay.

MR. GOOLEY: I think the crux of the dispute is, to follow the order of paragraph 4 and 5-B, which is whether there is good cause to prohibit the plaintiff himself from receiving sensitive documents. We believe we've submitted more than ample evidence that there is.

Just to highlight one example very briefly, and I know Your Honor is well familiar with the motion to dismiss -- or excuse me, judgment of dismissal briefing that arose on the original disclosure of Jane Doe's name. And although Judge Dooley ultimately did decide that her order wasn't quite as clear on how that should be violated, we submitted to Your Honor, in briefing the protective order issue, two links to videos where Mr. Khan recognizes or appears to believe that that order prohibited him from disclosing Jane's name. Attorney Pattis in his briefing said, I understand the order.

Everyone understood the order to prohibit Mr. Khan from doing what he did, but he did it anyway. And that, in our mind, is in and of itself more than sufficient for the entry of an order to prohibit him from getting access to sensitive documents.

I understand plaintiff's concern, in a nutshell, is that it would interfere somewhat with their prosecution of the

case, at least that's their theory. And I would say to that a few points. First and foremost, this protective order does include a process by which if there's a problem that develops, there's the standard meet-and-confer process, and unfortunately may need to go to the Court. And while certainly we don't want to bother the Court with needless motions, I will say, unfortunately, I think we are at that point given the concerns about the sensitivity of documents and how they've been handled, both in this case and outside of this case, as well as the potential that they may be misused, as demonstrated by the email written by Mr. Khan that we submitted to Your Honor last Friday.

The second thing is, I would say, Judge, if there is some interruption, we think it's more than warranted. It's unfortunate, perhaps, but it is something that the plaintiff has brought upon himself through his actions.

And the third point I would raise, and I think this is an important clarification, is we are seeking to preclude his access to documents themselves. We're not seeking to prohibit communication between his attorneys and him. And I think that's an important distinction. And let me just explain what I mean by that for a moment. How we are understanding this would work, we would produce confidential documents to Attorney Pattis or Attorney Taubes --

THE COURT: Confidential or confidential --

MR. GOOLEY: Excuse me.

THE COURT: -- not for plaintiff's eyes?

MR. GOOLEY: Confidential not for plaintiff's eyes.

THE COURT: Okay.

MR. GOOLEY: Thank you. Let me be clear. They couldn't produce the documents to them, but if there was something that they felt they needed to discuss with their clients, they could discuss that with their client, of course, provided he agrees not to disclose the information itself.

And so we think there really is no risk of prejudice or anything like that, if you will. It literally is just prohibiting him from having the documents themselves, because we believe that's a very big distinction between him having conversations with his attorneys and having actual copies of documents that he could do the things he's already done in the UWC process, which -- and Your Honor saw that in our surreply from last Friday.

THE COURT: Um-hum.

MR. GOOLEY: And so candidly, we actually think it would -- we could -- there's more than sufficient cause to go a step further and stop him from accessing information, but we're not asking for that --

THE COURT: But the --

MR. GOOLEY: -- at this point.

THE COURT: But the lawyers wouldn't be able to take

a document that's been marked, Confidential, not for plaintiff's eyes, and read it to the plaintiff, for example, from start to finish.

MR. GOOLEY: I --

THE COURT: That would be -- I mean, so --

MR. GOOLEY: I think that would be a step too far.

THE COURT: Right.

MR. GOOLEY: But.

THE COURT: Now, one of the things I was thinking about to balance the concerns raised by plaintiff's counsel about being able to have discussions with plaintiff about documents that are part and parcel of the case, is would defendants contemplate producing to plaintiff's counsel -- let's say there's a document that's been designated as Confidential not for plaintiff's eyes material because it has, let's say, the names of some of the potential witnesses that came forward in support of Jane Doe. And so could the document that's been marked, Confidential, attorney eyes only, be redacted -- minimally redacted to exclude the information that defendant is seeking to keep from plaintiff's eyes, but allow at least some of the document to be able to be shared with plaintiff so that plaintiff's counsel can have that kind of conversation about, look, these are the -- and I understand that there may be documents where the redactions are in whole because there's no way to make it narrowly tailored, but at

least some process to enable plaintiff's counsel to show some aspect of some of the documents that are marked, I'm going to say, attorney eyes only, because it's -- so striking some kind of balance there to address plaintiff's counsel's concerns about communications with their client?

MR. GOOLEY: I think that could be done on a case-by-case basis as part of the meet-and-confer process we envision as being part of this protective order. And so just to play it out, how I'm envisioning it would develop is I would disclose to Attorney Taubes a document marked, Confidential, not for plaintiff's eyes. He, if he was so inclined, could come back to me and say, I believe the only section of this document that warrants that level of protection is the third paragraph. I propose redacting the third paragraph and giving the rest of the document to my client; is that acceptable to you? I would either say yes or no. And that would be a meet and confer. And I think -- but to answer your question boldly, I think that is certainly envisioned and something we would be willing to do on a case-by-case basis.

I'm certainly not going to say I'm going to waive any right to say, no, this document can't go at all, or there's other portions that need to be redacted. But that type of dialog, I think, is certainly something we would envision.

THE COURT: So there could be kind of two sets of documents. It could be the one that's marked in its entirety,

Confidential, not for plaintiff's eyes material, and then a redacted version of that which may be marked confidential, which eliminates or redacts the portions that defendants deem should not be seen by plaintiff?

MR. GOOLEY: I think so.

THE COURT: Okay. Can you cover -- so I -- the definition of Confidential, not for plaintiff's eyes, you mentioned here sensitive information, but that's not what you're proposing --

MR. GOOLEY: Yeah.

THE COURT: -- in the proposed protective order in paragraph 4. The language that you're using here is that, Contain information implicating an individual's legitimate expectation of privacy. So can you expand for the Court and for the benefit of plaintiff and plaintiff's counsel kind of what it is that this definition is meant to capture?

MR. GOOLEY: Sure, Judge. And let me just preface that with we were intentionally broad in this because of the broad array of sensitive information in this case and the many forms it may take. But I'm happy to give you a couple examples.

So one example that we're specifically concerned about, and the plaintiffs (sic) know this from our disclosures and discovery requests to him in this case, is we're investigating other sexual -- other potential sexual

misconduct by the plaintiff, and we think that may be highly relevant to this case, including names of other victims and information about those victims. That's certainly something that I would mark, Confidential, not for plaintiff's eyes. And again, the actual information itself, like the name and the gist of what the allegation is, again, Attorney Taubes could talk to Mr. Khan about.

But I don't want him having those documents, in large part because of what's happened with Jane and to Jane so far in this case and the UWC other case, including the disclosure of highly sensitive documents against UWC rules, the information about the malintent against Jane. Frankly, I think he's going to do the same thing to all those other people. And that's one big category of information that we think wholesale should automatically fall under that level of protection.

With that said, Judge, and I know it's broad, I can't say, unfortunately, that I can give you a full list of everything that may come out at this point in discovery that we would want to attach this level of protection to. I think my point is there's a wide array of extremely sensitive information that may develop or probably will develop that that we think warrants this level of protection. I will say this; of course, it's all subject to the meet and confer. So if there's a concern about it, we of course welcome and invite

the meet and confer. It doesn't mean we'll resolve it. But I think that's -- some of this may unfortunately need to be dealt with on a case-by-case basis.

THE COURT: I mean, this case has been pending for a while, and I understand it's gone up to the Supreme Court and Second Circuit and back, so there are justified reasons for the delay. But have defendants at this point done all of their gathering of documents that they believe are going to be produced at this point? Or are you still in the process of culling documents that you think may be disclosed to plaintiff?

MR. GOOLEY: Still in the --

THE COURT: I guess --

MR. GOOLEY: -- process --

THE COURT: -- do you know the universe of documents?

MR. GOOLEY: No. Sorry, Judge.

THE COURT: Why not?

MR. GOOLEY: I would say this. Let me give you one example off the example we just asked. As I mentioned, we're investigating other potential sexual misconduct by the plaintiff. We asked in interrogatories, give us a list of the people who have accused you of sexual misconduct. We received an answer. We believe it's deficient. And so I don't even have names from him of people that he believes have accused him of sexual -- and once I have those names, I need to begin

my investigation into what documents may be out there as to all those individuals. So that would be one category of documents. And there's other, I would say, issues with that.

I think, as you know, the case has been pending for a while, but just to kind of give you a high level view of where we are, it was stayed by agreement. And so I think it's fair to say, and I welcome other counsel to weigh in on this, we are really just beginning the discovery process in earnest because of the stay, I think. And we have ideas about categories of documents for sure. But certainly I'm not prepared to say that I have even close to every document that I would think is out there or potentially out there.

THE COURT: Can I ask you about Exhibit 1 to the protective order, which is the affirmation by Mr. Khan that you're proposing? In the last paragraph there's a statement there:

"I understand that all of my remaining claims will be dismissed with prejudice if I disseminate any documents or information designated confidential or access or attempt to access any documents or information designated Confidential, not for plaintiff's eyes".

And then the second sentence is:

"I further understand that I may be subject to additional sanctions for disseminating any

confidential documents or information or accessing or attempting to access any Confidential, not for plaintiff's eyes documents or information.

So my question is about the first sentence. I've never seen a term like that in a protective order, and I'm wondering kind of what is -- do you have any kind of authority supporting that that's something that is within the bounds of what a court can order --

MR. GOOLEY: What --

THE COURT: -- on a protective order?

MR. GOOLEY: With the caveat, Judge, that, of course, the ultimate decision of whether to dismiss a case as a sanction is for the Court --

THE COURT: Right.

MR. GOOLEY: -- we believe that at this point that language is necessary. In fact, because when we filed our first motion for judgment of dismissal one of the reasons plaintiff opposed it is, well, I haven't been warned about dismissal. It's kind of a high sanction. I mean, and so we took that to say he basically needs a warning, because I believe their argument was that's one of the relevant factors.

And we think in light of what I'll call the history, which I won't repeat unless Your Honor wants me to, we think the strongest possible language is warranted because anything shorter, to Your Honor when we started the discussion of this

Colloquy

pointed out, there is now a concern about loopholes and exploiting loopholes and workarounds and things of that nature. And so if we just put in there, could be dismissed, may be dismissed, I fully expect that he would argue, well, I mean, it didn't -- you didn't say will be dismissed, so I didn't know it would be necessarily dismissed, which I believe, by the way, would be a meritless argument. But I would say that I think we're past the point of the standard language, and frankly, the standard protective order is the short of it.

THE COURT: Okay. Attorney Taubes?

MR. TAUBES: Thank you, Your Honor. We do agree with the defendants that there should be documents which Mr. Khan cannot disseminate to the public, whether it be the documents or the information within the documents.

We don't agree with a provision that would limit Mr. Khan's ability to work with his attorneys on discovery in this case in the way that they've proposed. I mean, I think this is a very overbroad and extreme, not narrowly tailored remedy for the problem that they are attempting to address.

THE COURT: How is it overbroad?

MR. TAUBES: Well, it's overbroad because --

THE COURT: In the context of how this litigation has evolved.

MR. TAUBES: Well, I think that this plaintiff did

what he did and he --

THE COURT: Be specific.

MR. TAUBES: When he disseminated the name, that was an action which my co-counsel believed was in violation of the order. It was not certainly within the spirit of the Court's orders --

THE COURT: And that he believed to be a violation of the order; isn't that right?

MR. TAUBES: Apparently not, because he's shaking his head next to me --

THE COURT: Have you seen the videos that were --

MR. TAUBES: Your Honor, I certainly haven't seen every video --

THE COURT: Well, the ones that --

MR. TAUBES: -- in the time --

THE COURT: -- were linked to one of defendant's memorandums.

MR. TAUBES: Yeah. I believe he was being interviewed about this case. And the fact of the matter is, is that since those actions happened, the plaintiff has been warned. And since those actions happened, there has not been any further noncompliance.

Now the defendants have raised this issue that he's currently not complying or seeking loopholes. But I would say that it's premature to consider that at this time because,

frankly, I strongly disagree that anything he's done to this point has been improper since the Court's order was issued.

THE COURT: How about the dissemination of the UWC report, which Yale expected to be maintained confidential?

MR. TAUBES: Yes, that was --

THE COURT: That was --

MR. TAUBES: -- improper.

THE COURT: -- I mean --

MR. TAUBES: But --

THE COURT: Yeah.

MR. TAUBES: -- Your Honor, that was many years ago.

THE COURT: So what?

MR. TAUBES: Well, when considering whether a remedy is warranted today under the circumstances that are present today where the consequences of any violation of an order are very clear and present to the plaintiff today is different from something that happened six years ago or seven --

THE COURT: I mean --

MR. TAUBES: -- years ago.

THE COURT: -- I would submit that the consequences of him violating that confidentiality in terms of his desire to get back at Yale or achieve the things that he's trying to achieve through this litigation are no different.

MR. TAUBES: Certainly.

THE COURT: And doesn't it --

MR. TAUBES: But that's --

THE COURT: And doesn't it just demonstrate a disregard for designations of confidentiality, designations of things that are intended to stay confidential?

MR. TAUBES: Yeah. Your Honor, the plaintiff was, I think, what, eighteen years old, twenty years old at the time that that occurred? And yes, foolish decisions are made at that young age. But --

THE COURT: But then there have been subsequent actions as well.

MR. TAUBES: Yes. However --

THE COURT: So if that was the only thing, then you could say fine, but there have been subsequent actions.

MR. TAUBES: So I agree with you that it was -- it's -- there's a past history of actions which can raise a concern. Some of those actions are many years ago; others are more recent. The one that are more recent I believe have been fully addressed by your Court's order from yesterday

The addressing keeping this case anonymous, which is in itself not the norm in a civil action in this courthouse. Even civil actions or criminal actions involving very serious -- sensitive and serious things, it's not the norm to keep a party's name secret. And we have gone further than that.

THE COURT: And I'll note that it was your client who

sought that relief from the very beginning. So go --

MR. TAUBES: Initially.

THE COURT: -- ahead.

MR. TAUBES: Initially, but not at this stage.

THE COURT: Right.

MR. TAUBES: And now at this stage where it's not being sought by both parties, it's been ordered, and additionally, he's been ordered not to say the name, not just in the context of in a court pleading, but also outside of the courthouse, in the public. And he's expressed his intention to abide by that completely. And I would argue that until there's actually been an airing of the allegation that he has not abided by it in whole or in part or that the spirit of it or circumvention or whatever argument they'd like to make, until we've had a proper opportunity to respond to that, I don't think it's appropriate to consider that in the context of curtailing what looks to be an extended process of discovery and his ability to participate in it.

And it's very important to prepare a client, for example, for a deposition, to be able to show them the documents that are going to be shown to them at the deposition. Their definition actually says --

THE COURT: Um-hum.

MR. TAUBES: -- Documents we're going to show.

THE COURT: Right.

MR. TAUBES: So that's introducing an element of unfair surprise into the case and an element of lack of ability to prepare, which creates an asymmetry of fairness. And I understand that there's an irreparable harm they're trying to prevent through disclosure. And what I would argue is that the punishment that would come from any such disclosure or any such improper further action by the plaintiff is sufficient. And anything more than that, like what they're proposing, is greater than what is necessary.

THE COURT: And what is that punishment? You're talking about dismissal of the case?

MR. TAUBES: I believe so. And furthermore, the Court has inherent authority to sanction parties beyond just dismissal of a case. I mean, as Your Honor knows, if you disobey a court order, you can be held in contempt. I mean, so there's -- the Court has a panoply of remedies that would not impair the plaintiff's right. Because, again, he's brought a civil claim as well, claiming that his rights have been violated in a variety of ways, his right to have his claims of his rights violated be handled in a manner which comports with the processes of a court case, which have procedural safeguards for both the plaintiff and the defendant and their ability to fully prosecute and fully defend their cases.

So I think that what they've got is one step too far,

but that many of the things that they've sought, including this provision that we're going to be very clear about what punishments might be available, including and even beyond dismissal, I think that that is sufficient. And anything more than that would be greater than necessary for the issue and the problem that we're trying to solve today.

I also think it will end up miring the Court in a lot of disputes between counsel, and especially difficult because we have a tripartite case here. The defendant for Doe, their position is that there's a lot more document discovery to be done and that they haven't even begun -- they haven't even gotten their hands around the universe of documents that might be discoverable from them.

On the other hand, I think that our friends at counsel from Yale have a different view of discovery. And we've had disputes about whether any further documents are going to be produced, because the deadline for document production in the prior scheduling order has passed. And our motion for extension of time, which preview of coming attractions, only talks about extending the end date and doesn't provide a concomitant extension of production of document deadline.

So we have one defendant who is saying, we're just at the start of document production. We have another defendant who's saying, document production is over. All I say -- I

don't say this to cast aspersions on either. They have legitimate positions that they're taking and they can have different positions. They don't have to be lockstep.

But my point is, is that when you have these three different parties, there's going to be a lot of disagreements in the ordinary course. You're adding in an additional -- multiple layers of complexity that is going to ultimately hamstring the Court. We're already talking about extending the discovery deadline once now, six months, I believe, from April to October. That might not even be sufficient if we're adding in this complexity. And so those are the issues that I wanted to raise with that.

THE COURT: How is it -- I want you to go back to how is the protective order as proposed by defendants overbroad. Because attorney-eye-only designations are common in cases that involve even less sensitive issues than the ones that are here present. So how is it overbroad?

MR. TAUBES: Well, I think Attorney Gooley's example is a great example. If people are going to -- if the defendant's defense is going to be that there are other people who are accusing this plaintiff of sexual misconduct, he should have that information. I understand that whenever a party has information, there is therefore some risk that they may violate laws or violate rules, and that information may get disseminated. But frankly, for him to have his due

process, he cannot be tried on uncharged things that were never charged within court, never charged with by Yale, new allegations against him, and not even know what those allegations are, where they're coming from, when they happened. That's creating like a star-chamberesque atmosphere for the plaintiff and his ability to prosecute his claim.

So their definition of what -- you're right, Your Honor; attorney's eyes only exists in all of our protective --

THE COURT: Um-hum.

MR. TAUBES: -- orders in this Court. I'm not saying that that shouldn't exist as a category. But it should exist in the same category that it exists for other cases. So for example, psychiatric or medical records or something like that, those could be legitimately attorney's eyes only under certain circumstances. And we may have disagreements about some of them if they're particularly material or put at issue in the case.

But the very broad anything that might implicate someone's legitimate expectation of privacy, I mean, that's such a broad standard. We could argue about the standard now, of course, but --

THE COURT: Have you --

MR. TAUBES: -- we'll likely --

THE COURT: Have you proposed language to defendant's counsel on what the attorney's-eyes-only definition could be?

Colloquy

MR. TAUBES: I haven't --

THE COURT: Having conceded --

MR. TAUBES: -- I personally have --

THE COURT: -- that --

MR. TAUBES: -- I have not, Your Honor. And I was not engaged, frankly, in all of the discussions on this motion because I had not been retained when the motions were filed, I think, even fully briefed. But I will say this. I think that the standard order we have in all of our civil cases, I have a lot of civil cases in this courthouse, as Your Honor knows. I think it works fine.

I agree that this case has presented circumstances that have warranted certain orders that don't exist in other cases.

THE COURT: Um-hum.

MR. TAUBES: Those orders, I believe, are already there. I think going further with what they've proposed is an overreach.

THE COURT: But how about --

MR. TAUBES: Maybe overbroad is not the --

THE COURT: -- something in the middle?

MR. TAUBES: -- right word.

THE COURT: So for example, when you hear about Attorney Gooley saying potentially other people who have come forward and have accused Mr. Khan of sexual misconduct, their

addresses, how does that information serve your client's prosecution of his case? I don't know that it does. And keeping that information from Mr. Khan might make sense in this case. Perhaps not the name, because like you said, he may need the information of who the accuser is so that he can defend against that.

So why hasn't there been a conversation about a middle of the road between the broader definition proposed by defendants and the one that's in the regular standing order, that -- something in the middle that addresses the real concerns in this case?

MR. TAUBES: I think that that is a very good question, Your Honor. And I wish I had had that opportunity to meet with counsel prior to this hearing. I have been working with counsel since my appearance in this case very diligently to try and move this case forward. There have been discovery requests from both defendants that have been outstanding for a long time, which we worked very, very diligently to try and bring an initial compliance, and there's more documents that have to be produced, as they've mentioned.

I have reached out to counsel for Yale. We're meeting tomorrow to meet and confront some of our disagreements. And certainly, that could -- we could add that to our agenda of trying to iron something out.

I certainly agree with Your Honor, that personally

identifying information as that information is typically defined in, for example, the Connecticut Practice Book --

THE COURT: Um-hum.

MR. TAUBES: -- would be a fine candidate for something that certainly would be unnecessary for a plaintiff to have, Social Security numbers, addresses --

THE COURT: Email address?

MR. TAUBES: Yeah. Date -- yeah. Even date of birth- Some of those things don't need to be disclosed so.

THE COURT: Well, I don't mean to cut you off. And what I think I'm inclined to do is say, why don't you guys go back and have a conversation about a protective order that contains -- I mean, you've conceded today, Attorney Taubes, that an attorney-eyes designation is appropriate.

And so what is the scope of what that attorney-eyes-only should be? I have a good understanding of the record in this case. And I'm happy to take it on and issue the protective order that I believe is appropriate here. But I think to the extent that you all know the discovery that hasn't yet been produced and can speak not in hypotheticals, but concretely about what you expect to produce and how that information should or shouldn't be protected, or how you, Attorney Taubes, need to be able to share that information with your client for purposes of diligently prosecuting your case, I think you're going to get a better result in terms of

Colloquy

the language of the protective order, which will in turn minimize the involvement of the Court.

But let me talk a little bit about the involvement of the Court. I'm not concerned about you hamstringing the Court with these issues. That's what I do. And to the extent that you all need a lot of help in getting it right, then I'm available to be that person who can help the process along. And many of you who have appeared before me know that I can -- we can have scheduled weekly meetings where you bring to the table the issues that you have in terms of designations, what the disputes are. And we can in a very efficient manner dispose of these issues and make sure that the litigation is moving at the pace that it should be moving all the while protecting everybody's interests here. And so that's not a persuasive argument for me because I'm willing to do the work to the extent that I think that the lawyers are acting in good faith and bringing legitimate disputes before me.

But I think to the extent that the protective -- I mean, we need a protective order, right? What is it going to say? As specific and as clear as that protective order can be, it's going to help alleviate a lot of issues downstream. So I'm encouraged to hear that you're all talking tomorrow about some of the issues related to discovery. I'd encourage you to add the protective order to the agenda.

And what I'll ask is that within a week from today

you file a joint status report as to where you are on the issue of the protective order. If you each have your own protective order that you'd like to propose at that point -- I haven't gotten a proposed protective order from plaintiff -- so you're each free to file a proposed protective order if you haven't been able to arrive at an agreement as to what the language should say. Does that seem like a fair way to proceed to everybody?

MR. GOOLEY: That's certainly agreeable to me, Judge. Thank you for your help.

MS. WELLER: Yes, Your Honor.

THE COURT: Attorney Taubes?

MR. TAUBES: Thank you, Your Honor. I greatly appreciate that.

THE COURT: Okay. In terms of the schedule, I have two motions. And one motion to modify is saying -- the earlier filed one is asking to extend the discovery from April 15, 2024 to October 15, 2024. And the second one has the 2025 deadline. So what is the actual deadline for discovery?

I think you told me. Is it the 2025? Okay.

So is discovery set to close April 15, 2025?

MS. WELLER: Yes, Your Honor. And I think the --

THE COURT: Uh-huh. Thank you.

MS. WELLER: -- the correct motion is ECF 105.

THE COURT: Okay. So have you all talked about

scheduling in this case recently?

MS. WELLER: Not broadly and not beyond what Attorney Taubes has already stated to Your Honor. I will say that typically we do not object to opposing counsel's motions for extension of time.

In this case, though, there are certain concerns that I have that I think are unique. The first one is that I believe plaintiff has already indicated in some documents that we have -- we are reviewing through discovery and elsewhere that there is at least a desire to use the discovery process and depositions to make other individuals feel how he said he is feeling.

Two, Judge Dooley has already denied without prejudice the plaintiff's request to take twenty depositions.

And third, there are allegations in the complaint that Yale sort of stymied the timely adjudication of Mr. Khan's claims, at least through the University process. And my concern is that if we say, sure, take as much time as you want, that that could come back and thrown at us and say, look how long this is taking. So where we land with the plaintiff's motion is that we think it's probably premature since there's ten months left on the order, but we take no position on whether it's granted or denied.

THE COURT: Attorney Taubes, my problem with the motion is that it just contains absolutely no specifics about

what it is that you're trying to accomplish in the time between now and October 15, 2025. All it says is there's a new lawyer and he needs time. And so I'm just going to tell you, my inclination is to deny it without prejudice to you filing something that lays out more specifically, like what are you trying to do, what are the interim deadlines that you are trying to comply with? Like I need to -- to defendant's counsel's point, like how many depositions are you planning on taking? How many experts are you seeing? When do you intend to fully respond to defendant's outstanding discovery? I mean, I just have zero information here as to why the additional -- we're already -- like April 15, 2025 is ten months from today. You want additional six months? I don't know what you're trying to do in that additional six months.

MR. TAUBES: Thank you, Your Honor. And that motion was also filed before I entered the --

THE COURT: Okay.

MR. TAUBES: -- case, so not to throw my co-counsel under the bus --

THE COURT: No, I know.

MR. TAUBES: -- or anything like that. He's trying to do me --

THE COURT: He's not here --

MR. TAUBES: -- a solid.

THE COURT: -- so that would be unfair.

Colloquy

MR. TAUBES: And he was trying to help me by filing that. I think, he -- oh, he's coming in at this point, it's such a big case, he's going to need more time, let me file something right away. But I totally take your point very well. And I would suggest that I'll also add that to the agenda to speak with opposing counsel. I'll make a proposal, and we'll have their input on the proposal as well. And then that will be more appropriately teed up for you.

THE COURT: All right. I appreciate that. So what I'm going to do is I'm going to deny both of those motions without prejudice. And when you're ready to have something before the Court that has the kind of detail that we've discussed here in a more realistic view of what needs to happen and timelines for that to happen, we will convene, or I'll review it on the papers.

Is there anything else we should discuss while we're here today?

MS. WELLER: Just one more sort of housekeeping matter. The meet-and-confer that Attorney Taubes referred to is -- was between my -- the Yale defendants and the plaintiff. It's going to be at my office tomorrow.

THE COURT: Okay.

MS. WELLER: And I'm perfectly fine with folding in the discussion about the protective order. But Attorney Gooley, I don't know if his schedule allows him to attend the

conference tomorrow. And with just one week to get everything done, I just wanted to put that before the Court and give him an opportunity to speak.

THE COURT: Thank you.

MR. GOOLEY: And thank you.

Judge, I may not be able to make it tomorrow. I'm going to do my best to ensure that Attorney Taubes and I meet and confer within one week. And I'm hopeful we will be able to do that. In the unlikely event we can't, the status report may just request an additional couple of days for us to hammer out hopefully, ideally, what would be a joint motion for protective order, or if not, at least more streamlined competing motions --

THE COURT: Okay.

MR. GOOLEY: -- for protective order.

THE COURT: If you need additional time, go ahead and file the motion. I'll also offer that there's conference rooms here. I don't know how long you were expecting to be here, but if you'd like to use some of these conference rooms, we can make them available so that you can use the time since you're here in person.

MS. WELLER: Thank you, Your Honor.

MR. GOOLEY: Thank you, Judge.

THE COURT: And if that's something that you're interested in, just let my courtroom deputy know, and we'll

find you conference rooms.

All right. Anything else?

MR. TAUBES: No. Thank you, Your Honor.

THE COURT: All right.

MS. WELLER: No, thank you.

THE COURT: We'll stand --

MR. GOOLEY: Not from --

THE COURT: -- in recess.

MR. GOOLEY: -- not from me.

THE COURT: Thank you.

THE CLERK: All rise. The Honorable United States District Court is now in recess.

(Whereupon the above matter was concluded at 11:50 o'clock, a.m.)

C E R T I F I C A T I O N

I, Rachel Wiley, Official Court Transcriber for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of the proceedings in the aforementioned matter to the best of my skill and ability.

Date: June 29, 2024



RACHEL WILEY, CDLT-251

eScribers, LLC
7227 N. 16th Street
Phoenix, AZ 85020
(800) 257-0885

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAIFULLAH KHAN, Plaintiff, ) No: 3:19-cv-01966-KAD

v. ) July 25, 2024

YALE UNIVERSITY, ET AL., Defendants. ) 10:00 a.m.

Brien McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT 06604

MOTION HEARING

B E F O R E:
THE HONORABLE KARI A. DOOLEY, U.S.D.J.

Courtroom Deputy:
Kristen Gould, Esq.

Official Court Reporter:
Tracy L. Gow, RPR

Chambers: 203.579.5522

A P P E A R A N C E S:

For the Plaintiff:
MARIO K. CERAME, ESQ.
Brignole, Bush & Lewis
73 Wadsworth Street
Hartford, CT 06106
860-527-9973
Email: mario@brignole.com

For Yale University Defendants:
PATRICK M. NOONAN, ESQ.
Carmody Torrance Sandak & Hennessey LLP
741 Boston Post Road, Suite 306
Guilford, CT 06437
203-458-9168
Email: pnoonan@carmodylaw.com

GIOVANNA T. WELLER, ESQ.
Carmody Torrance Sendak & Hennessey, LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
203-573-1200
Email: gweller@carmodylaw.com

For Defendant Jane Doe:
BRENDAN GOOLEY, ESQ.
Carlton Fields
One State Street, Suite 1800
Hartford, CT 06103
860-392-5036
Email: bgooley@carltonfields.com

Also present:
SAIFULLLAH KHAN, Plaintiff
STEVEN ALQUESTA, ESQ., Law Clerk

(Call to Order, 10:00 a.m.)

THE COURT: All right. We are here on the matter of *Khan v. Yale University, et al.*, for argument on pending motions to dismiss.

Counsel, please identify yourselves for the record.

MR CERAME: Good morning, Your Honor. This is Mario Cerame from Brignole, Bush & Lewis, for Mr. Khan, who is sitting next to me at counsel's table.

THE COURT: Good morning. Good morning, Mr. Khan.

MR. GOOLEY: Good morning, Your Honor. Brendan Gooley, Carlton Fields, on behalf of Defendant Jane Doe.

MS. WELLER: Good morning.

MR. NOONAN: I'm Pat Noonan, and I represent Yale University. And with me is Giovanna Weller.

MS. WELLER: Good morning, Your Honor.

THE COURT: Good morning. Good morning, everybody.

Okay. Let me just make some preliminary observations. We are scheduled today for oral argument on two motions to dismiss, one filed by Defendant Jane Doe and one filed by the Yale University Defendants. Each seeks dismissal as a sanction for Plaintiff's purported violation of Judge Garcia's anonymity order issued in response to Defendant Jane Doe's motion to continue her anonymity and Plaintiff's motion to remove the anonymity. Plaintiff, obviously, has opposed both motions.

Preliminarily, Mr. Khan filed a notice of supplemental authority yesterday, in which he references today's oral argument in connection with his objection to Judge Garcia's order. I did not schedule oral argument, and I do not intend to hear argument today, as to Plaintiff's objection to Judge Garcia's order.

Today's hearing is limited to the two motions to dismiss that were filed, and I -- there's certainly some areas where the objection to the order and the propriety of Mr. Khan's conduct in the face of that order may overlap to a certain extent, but really I see these as distinct issues. We don't live in sort of a "self help" society, and when faced with a court order we have options.

If we disagree with that order, we can seek reconsideration, we can appeal it, any number of things to challenge it but one of the things we can't do is ignore it on the theory that it is somehow legally incorrect.

So it was not -- I was not going to hear argument as to the propriety of that order in connection with the Motion to Dismiss. Today's hearing was really about an examination of Mr. Khan's conduct in the face of that order and whether or not that conduct warrants sanction from the Court.

Obviously, the sanction the Defendants seek is dismissal, or whether some other lesser sanction, or whether no sanction. I mean, those are really the issues that I need

to decide today. What I am not going to decide today is the propriety of that order, in the first instance, because that's sort of besides the point.

Attorney Cerame, do you wish to be --

Am I saying it right?

MR CERAME: Cerame. It's little more nasally, Your Honor.

THE COURT: All right. Cerame.

MR CERAME: I just -- the reason I did that was just out of completeness. There seemed to be a number -- there was this issue, also the 72.2 was pending, and I wasn't sure exactly where Her Honor wanted to go, so I had filed it just in case this was something that was going to come up.

Absolutely understand where Her Honor is coming from and the direction for today's hearing, and I'm absolutely prepared for that.

THE COURT: Okay. All right. Excellent.

By the end of the day, if I haven't asked, remind me. I don't have -- I have not had a large number of occasions to undertake objections to magistrate judge rulings. On those occasions that I have been asked to do that, I've simply taken them on the papers. If the parties think that they want additional argument on a separate date on those issues, let me know, but it would be my intention, absent such a request, to simply take up those issues on the

papers.

So...

MR CERAME: Sorry. As a housekeeping matter, Your Honor, how would you like us to articulate that? Do you want us to call chambers? Mutually? Do you want us to send -- file a motion? I'm just not familiar with Your Honor's chambers' practice.

THE COURT: I would say before you leave today stand up and say, "Judge, I want oral argument on my objection."

MR CERAME: Certainly, Your Honor.

THE COURT: Okay?

All right. Now, it is not my intention to limit anybody in terms of what they may want to advance by way of argument in terms of the pending motions to dismiss. Both Defendants have invoked this Court's inherent authority to sanction a party, as well as Rule 41 and it's provisions regarding the violation of a court order.

And as I said, I'm not going to limit any argument that either party wishes to make in connection with those motions. But there are some specific concerns I have regarding Mr. Khan's conduct that I think need to be addressed in some fashion during the arguments, so I thought I'd share those upfront before turning it over to counsel for whatever arguments they wish to make.

My initial view of the motions is that the motions

to dismiss, the motion for sanctions, are not about the First Amendment. They're not about whether Mr. Khan has the right or the ability to reach out to the world on social media or otherwise. To me, I look at this conduct -- and his now, I would say, pattern of conduct or repeated conduct -- and I think this is about a party who is misusing and arguably abusing and manipulating our civil justice system to his own ends and to advance an agenda that has nothing to do with this civil litigation or the vindication of the claims that are contained in the operative complaint.

Mr. Khan is not a disgruntled defendant who's been hauled into federal court against his will. He's the Plaintiff. He walked through the courthouse doors, and he set in motion the wheels of our civil justice system by filing a complaint. He has availed himself of the court process, the very process he now derides/thwarts, in an effort to garner support for an agenda that has nothing to do with this litigation.

I don't have a judgment about that agenda or those goals or what it is Mr. Khan might be attempting to achieve outside the confines of the civil litigation. Those are his decisions.

What I do have an objection to is that he's using, or appears to be using, this litigation, this Court, our civil justice system, as the springboard to advancing this

social media agenda or his cause in the contexts of discourse about Title IX and, it appears, an interest in retribution for the wrongs he claims to have suffered at the hands of Jane Doe and others.

This conduct does not present as the Plaintiff seeking a factual and legal adjudication of his claims as would be determined by a jury following an established civil procedure for his claims. What appears on the record is that Mr. Khan seeks to harass and intimidate others and to influence the world at large regarding the allegations in this case, which, I will add, he repeatedly mischaracterizes. And I can only assume that this is as an inappropriate effort, perhaps, to influence the jury pool.

When we were last convened, I expressed significant concern regarding Mr. Khan's motives. I referred to his social media postings as "borderline doxing." I questioned whether he was trying to try this case on social media. "No, no," he proclaimed, "Not me." And yet, here we are again.

Mr. Khan treats this litigation like an inconvenient sideshow. But it's a necessary sideshow, because it still provides him the platform for him to continue to advance this other nonlitigation-related agenda.

And that is not okay. Why should I sit back and allow the Plaintiff to invoke and then abuse the civil justice system to his own ends? And for the purposes of

harassment and intimidation? That is not the purpose for which we have a civil justice system.

Whether it's my inherent authority, whether it's Rule 41, whether we can even agree to disagree as to whether the conduct at issue violated the letter or spirit of Judge Garcia's order, how do I permit this to continue? I would like nothing more -- I mean, the amount of money and time and effort that has been spent in the last three or four months litigating Mr. Khan's conduct outside the confines of this litigation is ridiculous. It's ridiculous.

And if everybody would just focus their attention on discovery, completing discovery, getting the case to trial, well, then we'd be in a very different place than where we are. But my sense is that that's not Mr. Khan's agenda.

Dismissal of these claims as a sanction is the most severe sanction that I could mete out, and I haven't decided what to do about this situation. I just know it has to end one way or another -- whether by court order; by the end of the litigation, which we know is what the Defendants are asking. I don't know what the right answer here is. But I know it has to stop. And there will be competing arguments, factual and legal, as to what Mr. Khan is or is not trying to do.

But I think at this juncture, based on everything that's been submitted, Mr. Khan's utter disdain and hostility

towards at the very least Jane Doe, and probably to a lesser extent the Yale Defendants, is manifest.

And we just don't use our civil justice system to exact revenge. It's just not what it's there for. If I could convene a jury tomorrow to adjudicate these claims, I would do it.

So, those are my overarching concerns. They are in some respects related and in other respects unrelated to the specific legal issues that have been raised in the motions to dismiss. And I won't belabor the points.

I will turn it over to counsel for arguments. I don't know whether the Defendants have had a discussion about who is going to proceed in what order. It would be my practice to have the Movant argue first, obviously then I'll hear from Plaintiff Mr. Khan, and we'll take it one issue-one motion at a time.

MR CERAME: There is a pending motion *in limine*, Judge, and we discussed this with Judge Garcia in the status conference. We asked that certain exhibits -- a certain exhibit be included for the Court. And it was decided by Attorney Weller and then myself, that we wouldn't -- I wouldn't push that issue between her and would bring that in front of the Court.

I said -- I brought this up to Judge Garcia. I said, This seems like a housekeeping issue. We have these --

this exhibit we've marked it as Exhibit 1. We also have an Exhibit 2. I've apprised opposing counsel what they are, they know what they are, they're mentioned in our memoranda.

So I want to submit these exhibits, or at least resolve in some way, have them marked for at least identification purposes. The motion *in limine*, I just wanted -- you know, I think that that's an issue that we should address.

THE COURT: What was the docket number on the motion *in limine*?

MR CERAME: I don't recall off the top of my head, Your Honor. Let me just grab it real quick.

MR. GOOLEY: Judge, I believe it's ECF-161. And our response --

MR CERAME: That's correct.

MR. GOOLEY: And I believe our response is ECF-169. I believe.

THE COURT: All right. I don't have either of those with me.

Can I get those, Attorney Alquesta?

And what is the -- walk me through it. I don't have those in front of me.

MR CERAME: Sure, Judge. So, these are transcripts. We're asking the Court to take judicial notice. We filed a motion *in limine*, because I anticipated, you know, ahead of

time -- I have a copy of the motion *in limine* if the Court wants it.

THE COURT: Please.

MR CERAME: May I approach?

THE COURT: Yes.

MR CERAME: Thank you, Madam Deputy (handing).

COURTROOM DEPUTY: (Handing.)

MR CERAME: We believe that Ms. --

THE COURT: Give me a second.

MR CERAME: Sure. Take your time, Judge.

(Pause.)

THE COURT: And this is a transcript from the criminal proceedings?

MR CERAME: Yes, Your Honor, and as well as the Exhibit 2. And we have prepared that in response to one of the objections, and that's a much shorter version of relevant information in the transcript.

THE COURT: But what does it go to that I have to decide on these motions to dismiss? This goes to -- this is your First Amendment argument; isn't it?

MR CERAME: In part, Your Honor, and it is relevant, I believe, to that.

THE COURT: But I'm not deciding that issue in connection with the Motion to Dismiss. The question is his conduct in the face of the order, not whether the order was

itself --

MR CERAME: My recollection, Your Honor, is that part of the issue here is that the Court has -- there are claims that Ms. Khan -- Ms. -- the defendant --

THE COURT: Jane Doe.

MR CERAME: The Defendant, Doe, has been hurt in some way by the disclosure of facts. These facts, remember, are matters of public record. This is -- this goes to --

THE COURT: So, it goes to whether or not the sanction is appropriate?

MR CERAME: To the degree to which someone is harmed. It seems the court's taking that into consideration from what the Court has said today, the degree to which Mr. Khan's trying to advance some kind of agenda. And I believe that this, that Ms. Doe is not an anonymous person, is relevant to that.

THE COURT: Even though the question of whether the Court allowed him to disclose her name is really not an issue. The Court told him not to do that.

MR CERAME: That's right, and he's not being punished for disclosing her name. He's being punished for other people disclosing her name, a name that is public. He's being punished for statements that's aren't about her -- her, and that have nothing to do -- she's not an anonymous person. So it's -- it is relevant, in as much as the Court's

looking the degree to which Ms. Doe is harmed by my client's statements.

And, also, the Court is talking about my client's agenda. And I believe that the public nature of these documents, which are admissible under the Rules of Evidence, as far as I can tell, are relevant as to that.

I would note, my adversary has cited no rule of evidence in their objection.

THE COURT: Well, the real question is whether it's relevant to what I have to decide here, and I'm not sure that it is. But is the issue that -- well, I guess let me ask:

Is the concern that I will accept this exhibit unsealed, or is it that I shouldn't be taking exhibits at all?

MR. GOOLEY: Both, Judge. And if you'll bear with me for a second, I think I may be able to short-change this a little bit. This exhibit was already filed with the Court, under seal. It's on your docket. Your Honor has it for whatever purposes Your Honor believes it is relevant to.

The fact that the Plaintiff is trying to submit this in open court is, as you just insinuated, an attempt to unmask Jane Doe, because I will tell you exactly what they are doing. They are trying to submit an exhibit that has Jane Doe's real name, so that they can then say, "Aha, Jane Doe's name is finally out there in a public record and,

therefore, the anonymity orders are null and void, it's on the docket.

This is a -- this proves everything Your Honor just said, which is, instead of moving this case forward, instead of focusing on the issues that we have to focus on, like discovery, they are focusing on a vendetta against Jane Doe. And, even worse, they don't respect this Court's orders on anonymity, because they're, again, trying to circumvent them by putting a document, that isn't even relevant to what we're here to talk about today, in the public record because it has Jane's name.

And it gets worse than that, Judge. There's two exhibits here. One is all of three pages, and it contains Jane Doe's real name. Exhibit 1 is 180 -- 190-or-so pages of the entire transcript from that day where Jane's name appeared in the record.

As Your Honor can imagine, given the sensitive nature of this case, that transcript contains a litany of sensitive information that has nothing to do -- not only about what we're talking about today, but about their argument -- their, quote/unquote, "First Amendment" argument. That's another attempt to exact retribution on Jane Doe, this time directly through the Court's process, by submitting sensitive information when it's not relevant to the issue at hand.

And, Judge, here's the icing on the cake. Let me just -- and just bear with me for one more second. For four years the Plaintiff represented that Jane Doe's name was confidential during the criminal trial, pursuant to Connecticut General Statute 56 -- 54-86e I believe it is. Your Honor saw that. I'm not going to bear on that.

Then, all of a sudden, they switch positions after they got in trouble for, or were facing serious trouble, for disclosing the name, and they said, "Ah, First Amendment argument, it's actually not confidential so you can't sanction us."

That's a meritless argument, as Your Honor already said. This is not a First Amendment issue. The issue here is whether he violated the order and what the sanction should be, that's it, because the Court has inherent authority to sanction a litigant before it for violating a court order -- full stop; no ifs, ands or buts.

Regardless, Judge, out of an abundance of caution, we investigated this issue over the past couple of weeks to see whether this is, in fact, a public document. Among other things, we went on the judicial website of the State of Connecticut, and we found access guidelines that clearly say that a victim's identity in sexual assault cases are closed except to the accused and are confidential pursuant to 54-86e.

Then I called the court reporter, to see what was going on with this transcript, in light of their shift in position. The court reporter got back to me --

MR CERAME: I'm sorry. What was that word?

MR. GOOLEY: The court reporter? Excuse me?

MR. CERAME: According to their -- I heard -- what position?

MR. GOOLEY: Their -- I don't know. What did I --

MS. WELLER: "Shift."

MR. GOOLEY: The shift -- thank you. Shift. Shift.

MR. CERAME: In position.

MR. GOOLEY: Shift in position. Yes. Shift in position.

Thank you.

The court reporter got back to me and said, Yep, the name is confidential; by a mistake it was included in the transcript; we have submitted a corrected transcript; we've notified everybody the transcript is corrected; the name is now gone.

The short of it, Judge, is that Attorney Pattis, when he represented that the name was confidential throughout the criminal trial, was correct the entire time. Putting aside the fact that this is irrelevant, it's a reprehensible attack on Jane, the factual underpinning is incorrect, the name is confidential pursuant to Connecticut statute.

I have the corrected transcript. I have the e-mail from the court reporter saying that. I have the access guidelines from the court.

With that said, none of this is still relevant. We shouldn't even be talking about it. This is another attempt to deflect from the bad conduct.

THE COURT: All right. I'm not sure you would have had an opportunity to know about all of that, Mr. Cerame. Does that --

MR CERAME: Your Honor -- I'm sorry.

THE COURT: Does that change your offer? I mean, if I now have a transcript that should never have been created because of Connecticut General Statutes, I'm certainly not going to enter that transcript into evidence.

MR CERAME: So, Your Honor, I would like to say, first off, I disagree. This is all news to me. And Attorney Gooley, for the record, has never returned -- given me the courtesy of returning my phone calls. Not since I have entered this case. I have left a number of messages.

So, it would have been appreciated if I could have had some time to think about this issue. I suppose, inasmuch as I can understand the Court may be strongly inclined to seal this record, I would reserve the right to oppose that at a later date. But I would at least submit these for identification purposes today.

I'm not prepared to engage in my adversary's substantive arguments, some of which include factual representations of which I am not certain of. So I would ask, for today, to have these simply marked for identification purposes. And if the Court wishes to seal them, for today I will not oppose, but I reserve the right to move to unseal them at a later date

THE COURT: Well, if I already have them under seal somewhere else on the docket, I'm not sure I -- if they're only marked for identification, I'm not going to look at them in deciding -- I mean, they're either in or they're out.

So, if I already have them on the docket, then it would seem to me that whatever argument you wish to make from them can be made.

MR CERAME: Just a moment.

(Confers with client.)

MR CERAME: So, I don't know that my adversary has represented the law correctly, so I -- and I do believe these are relevant. I would like to preserve this issue, because I'm not sure what else is on the docket. I didn't have access to the full docket for quite some time. The record was sealed to me for some time, and I couldn't access all the documents I wished.

As the Court may know, it was only just before the Court put in the scheduling order that I received access to a

number of sealed documents.

So I would ask, nonetheless, simply for identification purposes and for the purposes of appeal, because I'm not sure what else is in the record, that these be put in the record for identification purposes so that I can preserve the issue.

MS. WELLER: Your Honor, may I be heard briefly?

THE COURT: Yes.

MS. WELLER: Attorney Cerame said that this is the first he's hearing of Connecticut General Statute 54-86e and he is surprised and would appreciate the courtesy of having that information brought to him. And I would posit that that is utterly disingenuous.

At least, Yale's reply to the Plaintiff's objection to our motions to dismiss talk about that statute. I cite to that statute. I provide in a footnote the full content of that statute, along with Attorney Pattis's multiple representations to this Court in his motion to seal-- to proceed against Jane Doe pseudonymously, where Attorney Pattis represented that that statute was in play and, therefore, her name was protected and confidential.

So, it's not a surprise --

THE COURT: I will indicate that I interpreted Attorney Cerame's statement as him not previously being made aware that, in fact, it was discovered that this transcript

should never have been produced with her name, not necessarily that the statute may have afforded her anonymity.

Did I get that right, Counsel?

MR CERAME: That's correct, Your Honor. And some of the legal arguments that were raised, particularly -- I believe that this -- that statute is supposed to apply to post-conviction proceedings. That's my recollection from being in criminal law and doing post-conviction work, but, you know, I don't want to address that today. I'm happy to address that on another day. That might be something relative to a motion to unseal. I don't know what documents they obtained or didn't obtain. I haven't seen this yet.

THE COURT: I just haven't even figured out what I'm being ask to decide here. The documents you want to argue from are already on the docket; yes?

MR CERAME: I don't know where they are located on the docket.

THE COURT: Well, that's kind of not my problem.

MR CERAME: I don't know that they are. I'm saying that I don't know that they are.

THE COURT: Let me ask: Attorney Gooley, where are they on the docket?

Do you know where they are on the docket?

MR. GOOLEY: 153, Judge. Sealed Motion 72.2 objection as per entry 152 with sealed exhibits, Attachments

Exhibit 1 and Exhibit 2.

My understanding is this is Exhibit 1 and this is Exhibit 2.

MR CERAME: No, that's not true, and I told him otherwise. This Exhibit 1 is nowhere in the record. I specifically did not include it before because I didn't -- I wanted to avoid a squabble about it before I put it in front of the Court.

THE COURT: I don't think anybody's trying to avoid squabbles in this case. Let's make that clear.

MS. WELLER: Well, Your Honor, may I just clear that up? I think I understand what Attorney Cerame -- I don't want to make it -- Cerame?

THE COURT: Cerame.

MS. WELLER: -- is saying. So, Judge Garcia requested a chambers copy of all the motions that were going to appear before Her Honor when we were set to proceed before her.

Because my office is two blocks from the federal courthouse in New Haven, I reached out to all counsel and said, Listen, you don't have to scramble to come to New Haven, I'll put the notebook together that has the motions that Her Honor wants, and I'll just submit it -- as just a professional courtesy for all parties.

In my conversation with opposing counsel, we talked

about this exhibit and I said that I'm not going -- it's not my inclination to include that exhibit in this notebook as part of the chambers copies because it was submitted under seal; and if I were to put it in this notebook, I would only want to do it in a redacted form because my concern is, once you give something to court, even a chambers copy, it could become part of the public record.

And I told him -- my example was, like in FLSA cases, when you want the Court to look at a settlement agreement, that several courts have said once you do that the agreement is not confidential.

So I said, I'm not going to put that exhibit in unless we redact the information and I don't believe the Court needs that exhibit. But if you want to submit it under seal, or you want to do something to supplement my notebook, go ahead, I'm fine with that.

And we agreed that that's how we would proceed. That's all that conversation was about.

MR CERAME: Your Honor, the document that Attorney Weller -- her representation is correct. The document that was referenced by my other adversary is what I'm proposing to be Exhibit 2. I'm happy to not include that if the Court is so disinclined because it's already sealed and part of the record.

Exhibit 1 is nowhere in the record that I'm aware

of. I would like it marked for identification purposes. My recollection of black letter is I can mark the flagpole for identification purposes. That's all I want, Judge.

THE COURT: Well, I don't know what useful purpose is served by marking it for identification purposes only. It is not part of the record. If you want me to look at it, I don't understand your objection to me accepting it under seal until all of these other issues and arguments can be resolved.

MR CERAME: I'm not objecting to you receiving it under seal. I'm just reserving the right to oppose that later on, or to move to unseal it later on. I just don't want it to be -- to have that construed as a waiver later on.

THE COURT: Okay.

MR CERAME: But I have no objection right now to the Court taking it under seal at all. I expected that. So I have no objection to that. I just don't want to waive a right later on to move to unseal it later on, if that is appropriate.

THE COURT: Okay. Is there any objection to that, Attorney Gooley? Issues of relevance aside.

MR. GOOLEY: Judge, I don't have an objection to it being under seal with the Court. My understanding is that it is or was. But, regardless, if that's the case, that's fine

with me. As long as it's fine with my co-defendants here.

MS. WELLER: Relevance aside, we have no objection.

THE COURT: Okay. So, this is Defense Exhibit --

MR CERAME: Plaintiff's, Your Honor.

THE COURT: Plaintiff's -- sorry. Plaintiff's Exhibit?

MR CERAME: Plaintiff's 1.

THE COURT: Plaintiff's 1.

MR CERAME: If the Court would like, I can submit it as an electronic. I have a hard copy here. It's a rather copious document.

THE COURT: I will defer to my Courtroom Deputy in terms of the easiest way to receive the exhibit. I think probably the hard copy --

MR. CERAME: Sure.

THE COURT -- and then it can be placed under seal and marked.

MR CERAME: May I, Your Honor?

THE COURT: Yes.

(The Court confers with Courtroom Deputy.)

THE COURT: Sealed Exhibit 1, full.

MR CERAME: (Handing.)

COURTROOM DEPUTY: Okay.

MR CERAME: I heard the Court say, "full." I just

wanted to clarify. My understanding is it's for identification.

THE COURT: Well, if you want me to look at it, it can't be for identification.

MR CERAME: Ah. Okay. All right. Very well.

THE COURT: I assume you want me to look at it.

MR CERAME: It may become relevant during oral argument. I anticipate it may.

THE COURT: We may agree to disagree on that.

MR CERAME: Very well, Judge.

THE COURT: Okay.

MR CERAME: Thank you for taking the time with the housekeeping matter.

THE COURT: All right. Back to where -- I don't know if counsel have had a discussion about who will be proceeding first. But, Movant, the floor is yours.

MR. GOOLEY: Thank you, Judge. Let me start by saying that we agree with all of your introductory remarks. We share your concern. To Your Honor's question -- I think I said this previously, but just so we have a clear record.

This is in no way, shape or form a First Amendment issue. The only issue before the Court is a court order was issued. There was a violation of that order. That's it. The Court has inherent authority, and, in fact, our adversarial system requires -- and the efficient operation of

our adversarial system requires the Court to take action to ensure that its orders are enforced, to ensure the orderly administration of justice.

At the risk of stating the obvious, Your Honor also said it, this is not the first time we are here. We are here, yet again, after the Court gave Plaintiff a very stern warning after Judge Garcia explicitly told him, in writing, any violation of this order can be the subject of dismissal.

I'm not going to repeat all of my arguments in my brief. I know Your Honor's read those. But I did want to bring a few points, at least a few preliminary points, to Your Honor's attention, including -- and then I'm sure I'll be wanting to respond to whatever points opposing counsel has made.

But Your Honor said, and we agree, this has to stop. It's not going to stop short of dismissal. We have been down this road before.

THE COURT: What makes you think it's going to stop even if I dismiss the case?

MR. GOOLEY: It may not, Judge. But then it won't be abuse of the judicial system.

THE COURT: That I agree with.

MR. GOOLEY: Which is the problem the Court has, right. And, so, the Court's problem is resolved. Let us deal with whatever may come after, but the Court's problem is

an abuse of the judicial process. That would stop if the case stops.

And I believe there's two important points there. First and foremost, I will say that that transcript that Your Honor was just handed is relevant for one purpose, and it is the purpose I just described: Mr. Khan is attempting to put in extensive sensitive material that is totally irrelevant to what we're here to talk about today and anything that's going on in this proceeding at the present date.

Your Honor can look through that and see all of the sensitive information in there. It's a further act of retribution. And the reason I raise that is because it's very important to why dismissal is warranted.

This Court, if it has to adjudicate this case, is necessarily going to have to take up, at least at the summary judgement stage, sensitive facts. It's going to publish those facts in a written decision if it doesn't dismiss this case. Now that Jane's name is on social media and out there, all of those sensitive facts are easily associated with Jane.

And that's the fundamental problem. If the Court doesn't dismiss this case, the Court's action in just adjudicating this case moving forward will compound the harm to Jane. So, that's point one.

Point two is, I think, a more important point. And bear with me, because this one requires a little bit of

factual background. But we've repeatedly been here about concerning posts by the Plaintiff. Your Honor's concerned about, Is this going the stop if I don't dismiss the case?

Your Honor may or may not know this, but the Plaintiff has also sued an attorney and a litany of amici organizations who filed an amicus brief when this case was before the Connecticut Supreme Court. He doesn't like what they wrote about him. That case is pending.

He sat for an interview in that case, and he referred to his, I guess, plan, or his conduct in that case as "war."

MR CERAME: Judge, this is facts not in evidence. I'm going to object. Counsel is testifying at this point.

MR. GOOLEY: It's oral argument, Judge.

THE COURT: It is. But I think if I'm going to be -- I mean, I can easily convert this to an evidentiary hearing.

MR CERAME: My recollection was this is what it was. That it was for an evidentiary hearing.

MR. GOOLEY: Judge, can I short-change this, maybe?

THE COURT: Yeah. Let me just hear what everybody has to say, and if I decide that I need to see the evidence or are there briefs that can I look at, are there -- whatever it is counsel's relying upon. We'll just sort of take it one issue at a time.

MR CERAME: All right, Your Honor. All right. Thank you.

MR. GOOLEY: So, Judge. He has this case. He gave this interview. He referred to what he's engaging in as "war." Last night, knowing that he was coming to this court today to face possible dismissal of his claims for his posts on X, he reposted that article with the caption "war," W-A-R, all capitals, exclamation point. That's how he views this litigation. That's how he views litigation generally. He thinks he's at war.

This is -- the bottom line, when you have someone who views it that way, he's not going to stop unless the case is dismissed. And Plaintiff's counsel just made a big deal about asking the Court to accept some evidence. I have the printout of the article, and, more importantly, I have the printout of the Plaintiff's post. I ask Your Honor to give me the same courtesy that Plaintiff had, and I ask to approach and submit that to Court because that is relevant to what we're here to talk about today, which is, Is a sanction of dismissal warranted based on his own statements?

THE COURT: All right. Have you shared those with Attorney Cerame?

MR. GOOLEY: Let me give them to him right now.

MR CERAME: I'm unaware of these before the hearing, Judge. I'm not objecting, but -- because I was not aware of

these. I was supposed to be made aware of these. All evidence was supposed to be submitted ahead of time. That was what Judge Garcia ordered. We were supposed to submit it ahead of time. And Counsel didn't make it -- this is an ambush.

MR. GOOLEY: Posted last night, Judge.

THE COURT: There's only so much you can do about that if your client is busy late into the evening before the hearing.

MR CERAME: Is my client's conduct yesterday evening the subject of today's order? Because I'm not aware it was. I thought it was something -- I thought the motions at issue were about previous posts. This is adding it on. I'm noting my objection for the record. I understand the Court may overrule it.

THE COURT: Yeah, I'm going overrule the objection. To the extent that there's reason to schedule another day to give everybody an opportunity to fully and fairly flush up the record -- or flush out the record, I'm happy to do that.

But as of right now, I need to get a handle on what your client is doing and what he intends to do and what my appropriate response to that is.

So, I'm going overrule the objection. We'll mark these as Defendant Doe --

MR. GOOLEY: 1 and 2, Judge?

THE COURT: Let's start at 500. I don't want numbers overlapping, so we'll do Defendant's 500 and 501.

MR. GOOLEY: Thank you, Judge. May I approach?

THE COURT: Yes.

MR. GOOLEY: (Handing.)

MR. GOOLEY: And, Judge, just to kind of conclude my argument here. I'm sure I'll have a lot more to say in response to Plaintiff's arguments. But just two points on that. This is a public post by the Plaintiff. The Court can look at it. The Court can take judicial notice of it. The Court doesn't need to rely on what I submitted. But, more importantly, this is extra. It's icing on the cake.

Sanction of Dismissal was warranted before that post was ever made. Even if the Court completely disregards that post, it is warranted for all the reasons I've said here today, all the reasons said in my brief.

With that, I'm -- as I said, I'm sure I'll want to respond to some of Plaintiff's point, but I will not repeat everything in my brief. Thank you for your time, Judge.

THE COURT: Thank you. Attorney Weller or Attorney Noonan. I'm not...

MR. NOONAN: Good morning, Your Honor.

THE COURT: Good morning.

MR. NOONAN: Your Honor, I've had enough experience with you to understand a couple of things. One, you've

already read everything carefully. Two, you're going to re-read things and you're going to make an appropriate judicial decision.

So I don't have any intention of repeating what's in the briefs. I do want to -- and I agree with Attorney Gooley that I agree with your remarks. And it's clear that there's a significant problem here with this Plaintiff's conduct, and it does affect the integrity of this court and the judicial process.

But the thing I really want to hone-in on is your remark that his posts appear designed to influence the jury pool. There's no question about that. And if you don't dismiss the case, it's not only going to cause more damage to both Defendants, but also run the risk that the jury pool is tainted. And I think dismissal is the only sanction that can be imposed here.

And I'd like to allow Attorney Weller to add a few points, if you don't mind.

THE COURT: I don't mind.

MR. NOONAN: Thank you, Your Honor.

THE COURT: Certainly.

MS. WELLER: Thank you, Your Honor. So, I agree with what Attorney Noonan and Attorney Gooley have said, and I'll be brief. Dismissal of a case, it is a harsh sanction, and Yale did not come to its request lightly.

But it's not too harsh in this case, because nothing else, I believe, will stop the Plaintiff from continuing the behavior that he has already exhibited repeatedly. He does not come to this courthouse feeling constrained by the Court order, by the processes in place, by the rules that we all have to abide by. And if his case is allowed to continue, we'll be back here, spending more time and more argument on the Plaintiff's conduct and not on the issues of the case.

Attorney Noonan talked about infecting the jury pool, and I just want to say that that goes to the heart of the right to a fair trial, and that is as important in a civil case as it is in a criminal case.

Courts have dismissed claims under either the inherent authority or Rule 41 for far less egregious conduct than what the Plaintiff has shown. And if the Court doesn't dismiss this, then what do we do going forward? I keep asking myself that. How does the Court protect Jane Doe's interests? How do the Court's rules get enforced? How does Yale protect its interests?

And I'll wrap it up by saying that your Court -- Your Honor acknowledged that Yale has an interest in this. And absolutely. And even Plaintiff's counsel recognized Yale's important and substantial interest in protecting the confidentiality of its -- of the individuals who come through its proceedings.

Attorney Cerame said in his opposition: "As Yale correctly points out, a number of courts have recognized the important public interest in protecting identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes."

He conceded that Yale has a substantial interest -- also in his brief.

Those interests are important. Yale is here standing not only for itself, but in the shoes of those public interests, so that future students can come forward and not see this and say, "I have no protection. Rules don't matter. Orders don't matter. Your policy doesn't matter."

And that's really important, and that can't be lost in all of the conversations about this exhibit or that. That can't be lost. And, so, the sanction, while harsh, is warranted here.

THE COURT: Thank you.

MS. WELLER: Thank you.

THE COURT: Mr. Cerame.

MR CERAME: All right, Your Honor. First there's an issue of form of the motions. So, they are trying to seek redress or punishment for my client using two -- the Court's inherent authority and Rule 41(b). There's no case where 41(b) has been applied, that I could find, to a court order that applied out of court.

I have a docket entry from yesterday from Judge Shea in an appropriate use for invocation of Rule 41(b), if I could direct the Court's attention to it. May I approach?

THE COURT: You may.

MR CERAME: (Handing.)

THE COURT: Does counsel have it?

MR. GOOLEY: We do, Judge.

COURTROOM DEPUTY: (Handing.)

MR CERAME: As I also direct -- as also pointed out in our brief on this, Rule 41(b) is about issues -- court orders that are applied in court. We have a slew of cases where it's about in-court orders, orders that are enforced in court. There are none that I could find that concern out-of-court conduct.

THE COURT: I'm not sure I'm following what you mean by that, "out-of-court conduct."

MR CERAME: An injunction, Your Honor, to something -- one might order the court -- one might order someone, as Judge Shea does here. Let me direct the Court's attention to the last three sentences of this order here.

"It appears Plaintiff has also failed to comply with the Court's order. File a copy of ECF number 697 in the bankruptcy case by July 16, 2024."

That's an in-court order. It doesn't have anything to do with what someone has to do outside of court in the

public. It's not injunctive relief. It's not about stopping blasting. It's not about stopping speech.

THE COURT: So, when you say an "in-court order" you're talking about a directive to file something or not file something? Conduct having to do with the process by which the litigation --

Can I just tell your client that I don't need him agreeing with me or otherwise communicating with me in any way, shape or form while I'm trying to --

MR CERAME: I don't see him if he's nodding. One second, Your Honor.

THE COURT: He just -- he needs to keep it under check.

MR CERAME: Oh, okay. He's just nodding to himself, Judge. He's not trying to communicate to Her Honor. With all sincerity, I believe my client. I don't believe he's trying to communicate to Her Honor at all.

THE COURT: That's important, because you and I will have a conversation.

MR. CERAME: Yes.

THE COURT: I don't need side communication from your client, for what it's worth.

Go ahead.

MR CERAME: Okay. So, Her Honor I think had it right, though. When it's about essentially managing the

court's docket, this case has -- for failure to prosecute diligently, for example. That's what Rule 41(b) is about. It's not about injunctive relief when someone violates an injunction, especially a speech injunction. I can't find any case --

THE COURT: It doesn't say that. It just simply says "violates a court order."

MR CERAME: That's correct, Your Honor.

THE COURT: That can be as broad as -- it could have a broad reading. It could have a narrow reading. It could be violating a court order that's injunctive in nature. It could be violating a court order that you update your address per the local rules. I mean...

MR CERAME: I'm noting for Her Honor that there are no cases that I could find anywhere, in any circuit, in any district court, where it's enforced to -- it's used to enforce a gag order. I haven't -- I couldn't find any. In fact, the only cases I could find anywhere were about these procedural rights.

Now, maybe I didn't do enough -- good enough of research to find the rule where somebody says in an appellate court case this is only for procedural rights or these are only for in-court orders. That's possible. But my adversaries don't point out any cases contrary-wise, where it's used to regulate an out-of-court order, like a gag order

or like an order restraining speech.

So, you're right, Your Honor, on the order, on the face of it, Rule 41(b) says "court order," which could be read as any kind of order. I have never seen it used that way, and I suspect there's a reason for that.

So, my understanding and what I'm proposing to the Court, is, based on what I see out there, it's really only supposed to be used for court orders relative to managing the docket.

THE COURT: So, if I -- if I understand your argument, if I would to determine that your client's conduct, in fact, violated Judge Garcia's order, Rule 41 would not be an appropriate mechanism by which to seek sanction for that conduct.

MR CERAME: Her Honor has hit it -- yes.

THE COURT: Okay. Just so I understand. Go ahead.

MR CERAME: So, that's relative to 41. I also haven't seen it used *vis-a-vis* -- I'm sorry. Let me take that back.

I haven't seen inherent authority used in the same way. What you see are contempt motions, civil or criminal contempt. And it seems to me that my adversaries are circumventing the higher standards for contempt proceedings by trying to proceed under both of these mechanisms, neither of which have they cited any cases where it applies to an

order restricting speech outside of court.

So, that is a -- I don't think that that is an appropriate use of these mechanisms. I don't think these mechanisms are designed for this. That's a principal piece. *Ab initio*. This isn't the mechanism by which the Court can use to enforce an order restricting speech.

THE COURT: What do I do if I -- and this is a little bit off the beaten path in terms of what is framed in the motions.

MR CERAME: Yes.

THE COURT: I don't think there's any question that I do have some inherent authority.

MR CERAME: There's no question, Judge.

THE COURT: Okay. So, if I am left with a -- really a firm conviction that your client is misusing our civil justice system to advance an agenda that has nothing to do with the purpose for which we have a civil justice system, doesn't that fall within my inherent authority to do something about that?

MR CERAME: It seems to me that that is -- you're looking -- this is actually a kind of a contempt. The Court is looking to hold him in contempt, either civilly -- civil contempt or criminal contempt, one or the other.

If it's a punishment for his conduct, it's criminal contempt. If it's to coerce him, if the remedy is

coercive -- i.e., fining him a $1,000 for each alleged -- each violation, then that's -- but that wasn't briefed by my adversaries. I'm not ready to argue that.

THE COURT: I'm not sure I agree with you. I think that I have an avenue or authority, separate and distinct from my contempt powers, to deal with what I consider to be problematic behavior by your client in the context of this civil litigation.

MR. CERAME: I would note that it's context outside of court. That is speech-related outside of court. I haven't seen my adversaries', nor could I find a case where inherent authority was used in that way, to sanction someone for out-of-court speech.

Certainly for people saying things in-court inappropriately, counsel making inappropriate arguments and so on, it has been used in that way. But I haven't seen it, nor do my adversaries present such a case, where inherent authority is used in that way. So I recognize where Her Honor is coming from.

I believe that the appropriate mechanism, if it was to be explored, would be either civil or criminal contempt. That's how these orders are classically enforced.

THE COURT: What would you suggest as perhaps middle ground within my inherent authority, short of dismissal, to make this stop?

MR CERAME: My adversaries -- if the Court is going down this way -- this vein. First, I want to talk -- I do want to talk about how I don't believe the order was violated. But as to that, my adversaries have only asked for dismissal. That's the only remedy they have sought. I'm not going to propose to them --

THE COURT: -- lesser sanctions.

MR CERAME: I don't think that -- because I don't think the Court -- I don't think the Court is supposed to use this mechanism to sanction the speech. So I'm leery of implied waiver here by making an argument saying, Well, I think the Court could do this.

If the Court's going to dismiss, then the Court's going to dismiss. I don't know that -- I'm not aware of a lesser sanction under the inherent authority doctrine for speech that is appropriate. I can't think of one. I don't think the inherent authority is appropriate in this context, regardless.

Nonetheless, I hope I answered Her Honor's question.

THE COURT: You did.

MR CERAME: Because it's a good one.

Okay. So that was the first piece, whether the form of the motion, the -- whether the mechanism of enforcement was appropriate.

And whether my client actually violated the order.

So, this gets to the, you know, there's the burden that it gets very different in contempt proceedings, either civil or criminal, where -- and we point this out in our brief -- there's nowhere where my client expressly stated Doe's name.

In the issues that they have cited in their briefs, in terms of the X posts, he doesn't say Doe's name. He doesn't ask someone objectively to say Doe's name. Objectively, he seems to comply with the order.

The inherent authority doctrine burred in there is it has to be obviously violating the order, there's no question about it.

THE COURT: Is there any question of what he wanted those people to do? Is there any reasonable inference that can be drawn other than he wanted at least some of these people, one quite specifically, to do exactly what Judge Garcia told him he couldn't do? And by doing that, is he not acting indirectly?

MR CERAME: So, Your Honor, to answer Her Honor's question, is there a reason to believe, is there a logical reason to believe my client was doing something otherwise? I don't believe his intent is relevant. I believe his objective conduct is relevant. And if you take his words as written, no, they're not.

He's criticizing the court. He's criticizing systems. He's expressing that he's upset. He's allowed to

do that. That's not a violation of the order. The order doesn't say, you're not allowed to say you're upset with the Court. The order says you're not allowed to reveal Jane Doe's name directly or indirectly. If they had, say, --

THE COURT: If he says something to somebody that results in that person revealing her identity, is that not indirect disclosure?

MR. CERAME: Your Honor --

THE COURT: I mean, his language -- I can't indirectly or directly tell anybody what to do. I mean, he's misunderstanding what "directly" and "indirectly" means. "Directly" is he can't get on X and say "Jane Doe is person" and disclose her. "Indirectly" means he can't do anything that results in somebody else doing exactly that, which is precisely what happened here.

MR CERAME: I believe he's not allowed to encourage someone or ask someone. If he does something, like he opens up a thread about cooking and someone reveals Jane Doe's name, I don't think that that's a violation of the order, if he never solicited from someone. And I don't agree with Your Honor's --

THE COURT: "Perhaps you all will contribute your own" --

MR CERAME: Stand up and do the right thing. It's like the 90's movie -- the 90's film, Do The Right Thing.

That seems to me to be what -- I mean, having known my client for a relatively short period of time --

THE COURT: Is this not hubris? I mean, is there any question about what your client was trying to get these people to do? Any question at all?

MR CERAME: Yes, Your Honor. And, A -- number one, we don't know -- Her Honor made a supposition about the intent of the author -- not my client, the author who did reveal Ms. Doe's name. You said that he did it because of what my client said, that my client did so in response -- that this gentleman did so in response to my client.

We don't know that that's true. That gentleman isn't here. There's no evidence from him. He hasn't submitted an affidavit either way. That's a guess as to his subjective state of mind, and there's no evidence of that.

He may have done so because he --

THE COURT: Well, I have your client --

MR CERAME: -- because he supports my client.

THE COURT: I know what your client said to him. I know that your client tagged him. I know what your client said to him when he tagged him. And I know that shortly thereafter this gentleman then outed Jane Doe.

You don't have to be "Carnac the Magnificent" to connect these dots, Counsel.

MR CERAME: Judge, I think there's a reasonable --

there's a strong -- there's a reason to believe you should take my client at his word, objectively. We look at the words "objectively." The Court asked whether there was a reason to believe. I believe --

(Hits microphone.)

MR. CERAME: Oh. I am so sorry. I am really sorry. I know that hurts. My Italian hands. I'm sorry.

I've lost my train. Objectively -- I'm sorry. I feel now like I'm going back and forth with Your Her Honor, and I'm going in circles.

THE COURT: That's okay. You just said that I should take your client at his word. Well, your client sat in that chair three months ago and was dishonest with me.

MR CERAME: Your Honor, I wasn't here for that proceeding. I don't remember what Her Honor is referring to. And when I say, "take him at his word" the language objectively doesn't violate the order. That's what I'm -- look at the language there. It doesn't appear to violate the order. It doesn't solicit someone. It doesn't -- the Court is making a supposition that someone did so because they felt he was -- they believed -- they understood him to be soliciting from them that he -- to post. If there was another -- seems like there's a missing piece of information to make the logical leap.

I can understand why there might be smoke, but I

don't think that there is sufficient evidence there to get to the standard for inherent authority, which is --

THE COURT: Let me ask you this, Counsel.

MR CERAME: Yes.

THE COURT: And you have -- if you decline to answer, I have absolutely no issue with that. You should feel free to decline.

MR CERAME: Very well, Your Honor.

THE COURT: But if your client, after Judge Garcia's order issued, had called you up and said "This is my plan." Wouldn't you have counseled him not to go through with that plan in light of the order that Judge Garcia issued?

MR CERAME: So I'm going to talk about other cases where I've had people engage in speech that could get them in trouble. I'm not going to talk about my client.

THE COURT: All right.

MR. CERAME: But even those kinds of circumstances I tell the individual, Look, you have to weigh exposure. You may end up with a fight. Even if you're right on the law, you may end up with a fight.

Sometimes even good judges -- I would say, and I mean -- I absolutely mean no disrespect. I'm only speaking candidly because Your Honor asked -- but sometimes good judges make mistakes, and you have to weigh that risk, and are you ready for that?

Those are the kinds of things that I say to the client, because I work for my client. I know there's this approach about client control. I believe that my client has sovereignty, and I work under my client.

So, in those kinds of situations -- I'm not even thinking about this. I'm thinking about another case right now. I'd advise him, Look, you're a grown-up, you know the risks, this is the issue, even if you're right you might lose.

So, those are the kinds of things I would advise my client, though, in those kinds of circumstances.

In this particular case, I don't believe there's -- I don't believe the inherent authority standard is met because clear, plain violation -- also, I don't know that a lesser sanction couldn't work if there -- in a contempt proceeding, which we are not in, if a coercive contempt proceeding would be sufficient. There's no evidence that a coercive contempt proceeding wouldn't be sufficient to correct what Her Honor's concerns are.

And that is a reason why neither of these two remedies or neither of these two mechanisms by which my adversaries are seeking redress, the Court can rule in their favor, I don't think.

We haven't seen -- there's no evidence that something lesser couldn't work. There's no evidence. So,

let me just check my notes.

And I appreciate Your Honor's questions because I feel like whatever I have to say is way less important than whatever Her Honor's questions are for me.

(Pause.)

MR CERAME: There were a number of representations by my adversary -- and by the Court, too -- as to my client's intent to affect the jury pool. I don't know that there's evidence that that would be the case, given that there was already a criminal trial that occurred in this case and that there are public documents out there already that identify Doe.

Doe's identity, as this proceeding is all about, is already quite public. So I don't know that there's evidence that this is going to taint -- even if my client did violate the order, which I don't believe -- I very strongly believe he did not do under the objective evidence -- there's no evidence that this is going to taint the jury pool. If we look back five, six, seven years now, I think, that this has been going on.

So I don't see any evidence produced by them that this is actually affecting the jury pool in some way that it has already not been affected.

One moment.

(Conferring.)

MR CERAME: You know, I did make a point that I don't think my client's intent here matters. My client -- you know, my client's intent may be to express that he's upset. The Court notes that he derides, and the Court infers that he thwarts the purposes of this justice system, in the Court's opinion. But, you know, the Court says that he appears to be using the justice system to advance a certain agenda or cause. This happens every day. I'm not saying that I agree with the Court, but that is frequently the case.

My adversary brought up some litigation involving some public interest group that defamed my client in filings, and they certainly had an -- were using the judicial system to advance a number of agendas. And that's not impermissible. The Court doesn't -- I'm not aware that that's something that the Court disallows ever. I have engaged in public interest litigation myself.

THE COURT: Let me just be clear. There is no question that there could be any number of purposes for which civil litigation is pursued. And I -- if I wasn't clear previously, if your client has a cause, an interest, whatever it might be -- I think there's been discourse about Title IX in the proceedings and sort of on a nationwide level.

I don't -- to the extent that those are additional or collateral interests that are pursued, I'm not criticizing that, and I agree with you that there are any number of

reasons why civil litigation unfolds in any case.

My concern is that the purposes for which we have a civil justice system -- the fair adjudication of parties' claims, the convening of a jury to make factual findings, the legal determination as to the validity of a person's claims -- it doesn't seem to me that those interests are what your client is actually pursuing.

He has begun the civil justice problem -- process, excuse me. He is the Plaintiff. He has invoked the very machinery that is now being, arguably, misused to advance this other agenda.

And that's the disconnect for me. Not that there might be another agenda, but that the process itself is being abused or misused for that purpose.

MR CERAME: In response I would say, I don't believe that there's abuse here. Secondarily, I'm not going to reveal the content of communications. But serious adjudication -- I wouldn't be involved here, with all candor to the Court, if this wasn't a serious intent to get to the merits.

THE COURT: Let me ask this, just sort of as an aside but relatedly -- and I'll hear from both sides:

Where are the parties in terms of discovery? What has happened, what hasn't happened, what's left to happen?

MR CERAME: So, I have only attended one discovery

meet-and-confer. But my understanding, and I'm concerned and frustrated, is that we have produced some discovery, but my adversaries have not produced any discovery, whatsoever. And that's a point of contention.

I am not really, Your Honor, with all candor, I'm not really informed enough to get into a detailed discussion of that. There's another attorney who we collaborate with, who really -- he should be the one to address the Court on this issue. So I'm only giving Her Honor really a very limited view.

THE COURT: Okay. Have, for example, you know, "view from 10,000 feet," have fact depositions been noticed?

MR CERAME: I don't believe so at all.

(Conferring.)

MR CERAME: I don't believe so, Your Honor. And I know that, for my client's side, is a deep frustration, so -- and I can't say why. I don't -- one moment.

(Conferring.)

MS. WELLER: Your Honor, may I be heard?

THE COURT: Yes. Give me one second.

MS. WELLER: Sure.

THE COURT: Go ahead.

MR CERAME: Is everybody set? I'm ready to go.

THE COURT: I'm going to hear from Attorney Weller in a moment.

MR CERAME: Oh, oh, oh. So, as to that, you know, if the Court wants to hear from Attorney Weller, I really have a limited understanding as to that. I know some discovery should have happened, but it seems that none has.

THE COURT: Okay.

All right. Attorney Weller.

MS. WELLER: Thank you, Your Honor. Attorney Cerame is wrong in saying that there's been no discovery exchanged. Back in 2020, the Plaintiff served Yale and the individual Yale defendants with written discovery. Yale responded, objected, produced documents.

Then, in 2024, the Plaintiff served Yale with another set of written discoveries for which we objected because they were untimely under the Court's scheduling order, they were duplicative, and other various reasons.

Attorney Alex Taubes is representing the Plaintiff, and he is taking the lead on discovery. We had a meet-and-confer about two weeks ago to see if there was any middle ground, so that we could produce additional written discovery that the Plaintiff deems essential or if we have to -- he would have to bring the objections to the Court.

And we approached it in good faith. And we decided that Attorney Taubes would -- the plan was Attorney Taubes would confer with his client, and they would come up with a proposed ESI list of custodians and search terms and a date

range, and then we would respond and see if we could come to some middle ground, some conclusion.

Unfortunately, on Monday we received the Plaintiff's ESI proposal, and it contains a list of 384 proposed custodians and over 560 search terms, all in the disjunctive, for a 12-year period. And some of those search terms include things such as "OJ Simpson," "Nazi," "Johnny Depp," "Kevin Spacey," "Harvey Weinstein," "Louie CK." He then lists words like "Rum and Coke," "beer," "guilty."

Other search terms are "all the Justices of the Connecticut Supreme Court" --

THE COURT: Well, suffice it to say that Judge Garcia will be making her way through this discovery dispute. I am going to tell you right now, I am very unlikely to move this scheduling order if I don't dismiss this case. So, prioritize at this point.

MS. WELLER: Yeah, so we just don't know what to do with that. And even Your Honor is a search term that was on this list. So it is, we think --

THE COURT: Really?

MR CERAME: Your Honor, I don't know.

MS. WELLER: Yes.

MR. CERAME: I didn't participate -- but I can -- Your Honor, I don't know that that's inappropriate.

MS. WELLER: Your Honor, I brought with me a copy.

I'm happy -- and I redacted --

THE COURT: I don't need it.

MS. WELLER: But Your Honor is on this list among the -- but also the three of the circuit court judges from the Second Circuit. So, you are in good company in that regard.

THE COURT: Thank you.

Attorney -- I'm sorry.

MS. WELLER: So that's where we are with discovery. And I think as it ties to this, how it's relevant, is because it shows that the Plaintiff is not interested in pursuing a case in a normal set where there's a list of custodians, it's tied, you can kind of come to a conclusion.

380-plus custodians? I mean, it just is another example that if this case isn't dismissed we're going to be right back here on -- arguing the conduct with respect to discovery. So, that's where we are with discovery.

I'd like to address one other point quickly that co-counsel -- that you had discussed with Attorney Cerame, and that has to do with Rule 41 not allowing --

MR. CERAME: Your Honor --

THE COURT: I'm going to give you an opportunity to respond to all of his arguments.

MS. WELLER: Okay.

THE COURT: This was just sort of a tangent on the

state of discovery.

MS. WELLER: Okay.

MR CERAME: I was just going to say I'm not prepared to discuss discovery in substance. I hope that the Court doesn't consider that as part of her order. I'm not prepared today -- I didn't anticipate this being an issue that would be substantively discussed in detail today. So, I apologize for that.

THE COURT: No, that's okay. I had hoped Attorney Taubes would be here. But be that as it may, I don't have to have these answers in order to decide the issues before me.

MR CERAME: Very well.

We were just on the point -- to circle-back -- Her Honor said that there are a great number of reasons why litigation may open up, the courts -- the way we got diverted or went to the tangent was because the Court was concerned whether there's serious intent to adjudicate the case on its merits.

And, Judge, I wouldn't be here if I didn't think that was the case. I just came into the case. I'm "Mario certain." I know that's not evidence for the Court, but I know that that is the case.

The Court said at the start of her concerns that this is speech that doesn't involve the case, and I think that's true. The speech that was engaged in on X doesn't

involve the case. It's -- and now I'm getting to the "free speech" piece -- it's not about the case. He's talking about something else. If he's talking about George Bush or talking about Trump or he's talking about Biden, none of that stuff has anything to do with the case. Whatever he says on Twitter, if it's not something that violates the court order objectively, then it has nothing to do with the case and it's not appropriate to discuss it even. It's protected speech, anything that isn't violating the court order.

Lastly, the Court -- my adversary correctly points in the court certainly correctly suggests violating an illegal court order is still contempt of court. No question. But it's contempt of court. I haven't seen those cases used in the "supervisory powers" context ever. I've only seen contempt proceedings *vis-a-vis* the cases that my adversary cites.

I suppose it's possible that I've missed a case out there. But when it come to out-of-court speech, someone being punished for out-of-court speech, I've only ever seen contempt proceedings, criminal or civil. We saw this -- we all saw this relatively recently too. It comes to mind, pretty serious, high-profile cases where a civil remedy was used to coerce someone into -- former president -- as to out-of-court speech, to punish him or to coerce him -- to coerce him into following the Court's orders.

So that's as to that -- of course, the Court -- violating an illegal court order is still contempt of court. It's contempt of court, though. And that's not the proceeding we have here today.

If there are any other questions.

THE COURT: I don't think so.

MR CERAME: Let me just make one check and make sure I didn't miss something in my notes. I appreciate the Court's patience.

(Pause.)

MR CERAME: The Court noted doxing. I'm not sure -- I didn't see any doxing in the speech engaged in by my client, and I'm not sure doxing is illegal, either. I'm not saying it is a polite thing to do. I believe it might -- and this is still -- there's a relatively new law in Connecticut concerning this, electronic stalking, but that hasn't been tested against "free speech" concerns. And I don't think that -- that he doxed anyone here. There's no evidence he revealed someone's address, asked someone else to reveal someone's address.

The Court described my client's speech as ridiculous.

THE COURT: As what?

MR CERAME: Ridiculous.

THE COURT: No, I didn't. I said that we are

spending a lot of time and money litigating your client's out-of-court conduct on issues having nothing to do with this litigation, which is ridiculous.

MR CERAME: I, I -- Ah. So, the Court is taking issue with the litigation on my client's conduct?

THE COURT: The Court is taking issue with the fact that his conduct outside of this litigation is impacting this litigation; that this litigation is being, arguably, used and misused to advance an agenda that has nothing to do with the fair adjudication of his claims.

MR CERAME: All right. I would say I agree, to the extent my adversaries are challenging my client's conduct out of court, because I do not see my client objectively violating the orders. But I respect that Her Honor may disagree with that.

We do use the judicial process as an alternative to revenge. We use it -- it is an interest.

THE COURT: That's the goal, anyway.

MR CERAME: Right. We have a retributive interest in criminal cases; right? That's one of the fundamental reasons why we have criminal cases. And it's a similar thing when you see punitive damages in a case, to punish the wrongdoer for their intentional misconduct, which my client is seeking to do here.

THE COURT: But punish her by putting her through

the process? Or punish her by seeking a fair adjudication of the claims? The process itself is not designed to be punitive.

MR CERAME: Your Honor, I agree that misusing the process, abuse of process, is a valid claim. And I don't think my client is using it in this way. I believe my adversaries are using the process in this way. I don't believe this is a meritorious motion that they have filed. I believe they're objectively not, in terms of the form of the relief they're seeking. They're avoiding contempt proceedings. They know that's the law. You pointed this out to them.

This is -- that's --it's very difficult for me to respect someone using Rule 41 in this way. It's very difficult for me to respect someone not citing any authority, using supervised -- using inherent authority powers to punish somebody for out-of-court speech. There's no authority using that. So, it's hard for me to see these claims as something that is on-point.

So I recognize what Her Honor is saying. I don't -- I think that argument swings both ways, however, in the context of this case.

If there are no further questions from the Court.

THE COURT: I don't believe so. Thank you.

MS. WELLER: Your Honor, I'll be brief. I want to

address whether Rule 41 can be used to dismiss the case in the context of the violation of this Court's order. Rule 41(b) allows a district court to dismiss a cases for a party's failure to abide by court orders.

It doesn't say this type of court order but not that type of court order. It doesn't. It says "for violation of a court order." And we certainly have here a court order from Judge Garcia.

And the reason why there may not be cases out there where it's been invoked to violate a court order, like this, is because litigants probably don't do what Mr. Khan has done, and what he has done repeatedly. And if they have come close to it, and they were told just three months before, "This conduct is concerning, Don't do this again, you know, Here are my concerns," they certainly don't do it again.

And that's what we have here. But Rule 41(b) is available to this Court, as is the Court's inherent authority.

Now, Attorney Cerame says that motive is irrelevant. But motive goes to the heart of the court's inherent authority analysis. Jane Doe cited, in her brief at page 13, a case from Your Honor. I'm going to mangle the name. I don't mean to, but it's *Vijayanagar*. Let me spell that V-I-J-A-Y-A-N-A-G-A-R *v. Krishna*. It's a 2020 decision.

And Your Honor quotes: "A court may sanction a

litigant pursuant to its inherent authority if there's clear evidence that the conduct was, one, entirely without color; and, two, motivated by an improper purpose."

That's the party's intent. That's why -- why Mr. Khan is doing what he is doing is so important to this issue. So, to say that his motive is irrelevant completely misses the mark on the Court's inherent authority.

Finally, I will say that if -- it's surprising to me that Mr. Khan still doesn't see that he has violated this order after all of this. But even if his conduct in what he said to his Twitter followers was not in direct violation -- we say it was -- but even if it wasn't, the fact that the Plaintiff has kept those tweets identifying Jane Doe and a high school photo of her, or some photo of her, on his Twitter account for now going on 36 pages, after we filed the motions, after all of this, that, in itself, is, I believe, a violation of the Court order.

So I have nothing further, unless Your Honor has a question for the Yale defendants.

THE COURT: I don't. Thank you.

MS. WELLER: Thank you.

THE COURT: Attorney Noonan.

MR. NOONAN: Thank you, Your Honor. Two points that I think are important from Mr. Cerame's argument. One, he claims that there are no cases under Rule 41(b) where a

lawsuit was dismissed because of, as he put it, violation of a gag order. Well, there's a good reason for that. It's extremely rare for litigants to violate court orders. It's even rarer to have them violate it on a repeated basis.

As Your Honor knows, we didn't seek dismissal initially, because we would agree that one violation wouldn't be sufficient for dismissal. But what they've done is sufficient for dismissal.

The other thing I'd like to comment on his -- Mr. Cerame's -- repeated claim that there has been no violation here by his client. That's startling. And it's further proof that this conduct will not stop. Not only did the Plaintiff not get the message from Your Honor, his lawyers now don't get the message. They both think that what he's done is perfectly okay.

It's not. The only way to address this is dismissal. Thank you, Your Honor.

THE COURT: Thank you.

Attorney Gooley.

MR. GOOLEY: Thank you, Judge. I agree with everything that was just said by my co-defendants and I'll be very brief, which is, I think there's an assumption on the other side that the only possible purpose we're pursuing here is punishment. Certainly, we do believe the Plaintiff deserves to be punished for his actions, but that's not the

only reason we're here today.

We're here today, in significant part, because we're asking the Court to protect Jane. And what I mean by that is basically what I said earlier. If the Court -- if the case isn't dismissed, eventually there will be, through a ruling from the Court, some information about Jane that is publicly accessible, except now, because of his misconduct, that information will be associated with Jane's name or at least easily associated with Jane's name by social media users in -- despite the Court's anonymity order.

So, it's not just a punishment perspective. It's not just a "we don't meet the criminal contempt standard here." It is also an extension of the Court's efforts to protect Jane, despite the Plaintiff's misconduct.

So...

THE COURT: Thank you.

MR CERAME: Judge, can I clarify a point and concede a point to Attorney Weller, please?

THE COURT: Sure.

MR CERAME: So I did -- I appreciate Attorney Weller's statement about the prong one and prong two of the inherent authority. She's absolutely right, prong two does go to intent. But prong one -- my point would be that prong one, about whether it was entirely without color, that's not about intent.

So, and that's my argument. Attorney Weller -- I appreciate the clarification from her. She's absolutely right on that piece, prong two is absolutely about intent. Prong one is not. So, I did misspeak as to that. I did speak overly broadly in my argument. I apologize to the Court.

THE COURT: All right. Anything further from the Defendants?

MR. NOONAN: No, Your Honor.

MR. GOOLEY: No, Judge.

THE COURT: Okay. All right. Well, as Attorney Noonan pointed out, as is my wont, I am going to reserve on all of the issues that are presented in these motions. I do want to review everything that's been submitted, re-read the cases that have been relied upon, and I will have a decision -- hopefully, in short order.

Let me ask -- as I indicated earlier, it was my intention to take up the Plaintiff's objection to Judge Garcia's ruling on the papers. Is there a request that I hear oral argument on that?

To be perfectly candid, while I have read everything that's come in, I haven't really sat down and fully digested everything that's come in. What I would normally do is, having had the opportunity to do that, I would then decide for myself whether I have questions and whether I think oral

argument would be helpful. But absent same, I would take the issues raised in the objection on the papers.

Is there any objection to me proceeding in that fashion, from the Plaintiff's perspective?

MR CERAME: Your Honor, I'm strongly inclined to request oral argument, but I do respect Your Honor's discretion on this entirely. If Her Honor believes that she's -- all the arguments are there and she doesn't need any amplification with oral argument, I respect that. I believe we've preserved all the issues relative to appeal. I don't think I need to add anything else.

So, if oral argument would genuinely not help Her Honor, then, no, that's -- I understand Her Honor's position on that. I respect Her Honor's discretion.

THE COURT: Okay.

Attorney Gooley or Attorney Noonan?

MR. NOONAN: We agree, Your Honor.

MR. GOOLEY: However Your Honor wants to proceed.

THE COURT: Okay. Then once I do a deep dive on the objection and the supporting paperwork, if I think I would benefit from having some oral argument, we'll get everybody on the phone for purposes of scheduling that. If I think that it's all sufficiently briefed, then I'll just take it on the papers.

Anything else we can do this morning, from the

Plaintiff's perspective?

(Conferring.)

MR CERAME: No, Your Honor. We're set.

I understand. I understand.

We're all set, Your Honor.

THE COURT: Okay. Thank you.

For the Defense.

MR. NOONAN: No, Your Honor. Thank you, Your Honor.

MS. WELLER: Actually, I do have one housekeeping matter. On the Rule 72.2 objection, Your Honor issued an order directing the Defendant Jane Doe to file any response by yesterday. I filed a response yesterday on behalf of Yale and noted in a footnote that although Yale wasn't directed to, I felt compelled. And given the deadline, I didn't think it could wait until today.

So I didn't mean any disrespect by filing something, but I thought it was important.

THE COURT: That was probably an oversight on my part. That order, obviously, was directed to the protection of Jane Doe. I should have recognized that Yale would have had an interest in the outcome of that objection.

So, that was probably an oversight on my part. I did see that you filed an opposition, and I was going to consider everything from all parties when deciding

Plaintiff's objection to the order.

MS. WELLER: Thank you, Your Honor.

MR CERAME: If I could ask, through the Court. If counsel needs additional time to respond to the issue, we would consent, if for some reason she was rushed or hurried in some way to --

THE COURT: Say that again.

MR CERAME: I just wanted to add -- make sure, ask my opposing counsel, through the Court, if she needed additional time. She sounded like she felt rushed and did something in a hurried manner. If she wanted to take time to write a more thorough objection, I wasn't going to object to that.

THE COURT: Are you satisfied with your opposition?

MS. WELLER: I very much appreciate what counsel is doing. I think we'll stand on our position, but thank you.

THE COURT: Okay.

MR. CERAME: Very well, Your Honor.

THE COURT: All right. And I can't remember whether or not the scheduling order included the opportunity for Plaintiff to reply to the response to the objection. If it did, obviously that's in place. If it didn't -- I don't know whether that was your intention.

MR CERAME: I do intend to do so. My energies have been focused considerably over the last month, and I will --

we will file some kind of response.

THE COURT: Okay. Why don't we do 14 days from yesterday.

MR CERAME: Very well, Your Honor.

THE COURT: All right. Anything else we can do this morning?

MR CERAME: Nothing occurs to me, Your Honor.

MR. GOOLEY: Not from Jane, Judge. Thank you.

MR. NOONAN: No, Your Honor. Thank you.

THE COURT: All right. Thank you, Counsel. We're in recess.

(Proceedings conclude, 11:34 a.m.)

C E R T I F I C A T E

RE: *Khan v. Yale University, et al.*
Civil No. 3:19-cv-1966-KAD

Motion Hearing
July 25, 2024

I, Tracy L. Gow, RPR, Official Court Reporter for the United States District Court, District of Connecticut, do hereby certify that the foregoing pages, 1 through 69, are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/ TRACY L. GOW
Official Court Reporter
U.S. District Court
915 Lafayette Boulevard, Room 216
Bridgeport, Connecticut 06604
(203) 910-0323

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN,<br>Plaintiff, | : | CIVIL ACTION NO.<br>3:19-cv-01966-KAD |
| V. | : | |
| YALE UNIVERSITY, ET AL.,<br>Defendants. | : | FEBRUARY 18, 2025 |

**JOINT MOTION FOR EXTENSION OF TIME**

The Parties respectfully request that the Court extend (1) the deadline for Plaintiff to produce responsive documents and a privilege log (*see* ECF 262) by one week, from February 21, 2025 to February 28, 2025, (2) the deadline for the Parties to meet and confer regarding outstanding discovery issues (*see* ECF 271) by one week, from February 21, 2025 to February 28, 2025, (3) the deadline to file Motions to Compel on outstanding items and the deadline to respond to such Motions (*see* ECF 267; *see also* ECF 266) by one week each, from February 28, 2025 and March 6, 2025, respectively, to March 7, 2025 and March 13, 2025, respectively, and (4) the deadline for Defendants to disclose experts by nine days, from Saturday, February 22, 2025, to Monday, March 3, 2025. Good cause exists to extend the deadlines based on the following.

Plaintiff has been working diligently to produce responsive documents and a privilege log, but does not believe that he will be able to complete the production by February 21, 2025. Plaintiff respectfully requests and additional week, until February 28, 2025, to complete the production and produce his privilege log. Defendants consent to this request, which is Plaintiff's first.

The Parties agree that it does not make sense to meet and confer before Plaintiff has produced his forthcoming production and privilege log and therefore request that the deadline for that meet and confer also be extended one week, from February 21, 2025 to February 28, 2025. All Parties consent to this request, which is their first request to amend this deadline.

The Parties also agree that a one-week extension of the deadlines associated with remaining Motions to Compel is warranted to allow Plaintiff to focus on completing his production and privilege log and to allow Defendants to review that production and privilege log before they are required to file Motions to Compel. All Parties consent to this request, which is their first request related to this specific deadline (the deadline for remaining Motions to Compel – the Parties previously sought, and the Court granted, an extension past the original Motion to Compel deadline of January 31, 2025 for the Parties to file certain other Motions to Compel (*see* ECF 266 & 267)).

Finally, Defendants request that their deadline to disclose experts be extended by nine days, from Saturday, February 22, 2025 to Monday, March 3, 2025, in order to ensure that their disclosure deadline remains after Plaintiff's deadline to disclose additional documents such that putative experts can review additional documents if need be. In addition, a potential defense expert had surgery on February 7, 2025 and has been unavailable since then as a result. An extension is warranted to allow the expert to review additional material produced since February 7, 2025, including the transcripts Plaintiff produced on February 12, 2025. Plaintiff consents to this request, which is Defendants' first of this deadline (Defendants previously sought, and the Court granted, a stay of their prior expert disclosure deadline (*see* ECF 262)).

The Parties therefore respectfully request that the Court extend the following deadlines:

- <u>Plaintiff's Production/Privilege Log</u>: From February 21, 2025 to February 28, 2025
- <u>Meet And Confer</u>: From February 21, 2025 to February 28, 2025
- <u>Remaining Motions To Compel</u>: February 28, 2025 to March 7, 2025
- <u>Responses To Remaining Motions To Compel</u>: March 6, 2025 to March 13, 2025
- <u>Defendants' Expert Disclosure Deadline</u>: February 22, 2025 to March 3, 2025

RESPECTFULLY SUBMITTED,

Plaintiff,
Saifullah Khan

By: /s/ *Alexander T. Taubes*_______________
Alexander T. Taubes
Taubes Law
470 James Street, Suite 007
New Haven, CT 06513
Phone: 203-9090048
Email: alextt@gmail.com

Defendant,
Yale University

By: */s/ Giovanna Tiberii Weller*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

Defendant,
Jane Doe

By: /s/ *Brendan N. Gooley*___________________
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT 06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
Email: bgooley@carltonfields.com

**CERTIFICATION OF SERVICE**

This is to certify that on this 18th day of February 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

*/s/ Brendan N. Gooley*
Brendan N. Gooley

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, Plaintiff, | : | CIVIL ACTION NO. 3:19-cv-01966-KAD |
| V. | : | |
| YALE UNIVERSITY, ET AL., Defendants. | : | MARCH 4, 2025 |

**JOINT STATUS REPORT AND MOTION FOR EXTENSION OF TIME**

The Parties respectfully wish to update the Court on recent case developments and to request an extension of the deadline for the remaining Motions to Compel, which are currently due on March 7, 2025, as well as the deadline for responses to the remaining Motions to Compel, which are currently due March 13, 2025. (*See* ECF 275.) This is the Parties' second request for an extension of these specific deadlines (the deadlines for remaining Motions to Compel and responses thereto (*see* ECF 274) — the Parties previously sought, and the Court granted, an extension past the original Motion to Compel deadline of January 31, 2025, for the Parties to file certain other Motions to Compel (*see* ECF 266 & 267). The Parties are not including requested new deadlines because they believe they need to discuss those deadlines with the Court at the Status Conference this Friday, March 7, 2025. (*See* ECF 276.)

On February 27, 2025, Plaintiff produced 70,306 pages of additional documents and emailed Defendants about alleged deficiencies in Defendants' production and the Yale Defendants' June 6, 2024 Objections to Plaintiff's second set of written discovery. Defendants are concerned about both the volume and substance of Plaintiff's recent production and the timing and substance of the alleged deficiencies raised in the email. Plaintiff is concerned about the adequacy of Defendants' production and the search parameters.

The Parties have also discussed the impact the production will have on the deposition

schedule. Moreover, with respect to the depositions, Plaintiff's counsel has been called for jury selection on March 17 – 20, which are dates reserved for depositions in this matter.

The parties have met and conferred on these issues on Friday, February 28, 2025, Tuesday, March 4, 2025, and scheduled a third meet and confer for Thursday, March 6, at noon. The Parties agree that they need to discuss these issues with the Court at the status conference scheduled for Friday, March 7, 2025, at 10:00 am or when directed by the Court.

RESPECTFULLY SUBMITTED,

Plaintiff,
Saifullah Khan

By: /s/ *Alexander T. Taubes*________________
Alexander T. Taubes
Taubes Law
470 James Street, Suite 007
New Haven, CT 06513
Phone: 203-9090048
Email: alextt@gmail.com

Defendant,
Yale University

By: /s/ *Giovanna Tiberii Weller*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

Defendant,
Jane Doe

By: /s/ *Brendan N. Gooley*

James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT 06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
Email: bgooley@carltonfields.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN,<br>Plaintiff, | :<br>: | CIVIL ACTION NO.<br>3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL.,<br>Defendants. | :<br>: | MARCH 21, 2025 |

**JOINT PROPOSED SCHEDULING ORDER**

The Parties have met and conferred to discuss a realistic schedule pursuant to the Court's Orders (*see, e.g.*, ECF 289) and propose the following amendments to the Scheduling Order:

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Update Initial Disclosures | N/A | April 30, 2025 |
| Remaining Motions to Compel | N/A[1] | April 30, 2025 |
| Responses to Remaining Motions to Compel | N/A[2] | May 21, 2025 |
| Depositions Of Defendants' Experts | April 15, 2025[3] | April 18, 2025 |
| Disclosure Of Plaintiff's Rebuttal Experts | April 15, 2025 | May 19, 2025 |
| Fact Depositions (Other Than Jane[4]) | April 15, 2025 | July 15, 2025 |
| Supplementation Of Expert Reports | N/A | July 31, 2025 |
| Depositions Of Rebuttal Experts | April 15, 2025 | August 30, 2025 |
| *Daubert*/Expert Motions | N/A | September 30, 2025 |
| Close Of Discovery (Jane's Deposition) | April 15, 2025 | October 15, 2025 |
| Filing Of Dispositive Motions | June 15, 2025 | December 17, 2025 |
| Opposition To Dispositive Motions | N/A | February 4, 2026 |
| Replies Regarding Dispositive Motions | N/A | February 25, 2026 |

The Parties believe that this schedule is realistic taking into account the status of the case, what needs to be completed, and the schedules of the Parties and their counsel.

The Parties respectfully request that the Court approve this Proposed Scheduling Order.

[1] The Court recently suspended the prior deadline of March 7, 2025.

[2] The Court recently suspended the prior deadline of March 13, 2025.

[3] April 15, 2025 is the current deadline for the close of all discovery. (*See* ECF 68.)

[4] The Parties agreed that Jane has conflicting engagements that preclude her deposition from occurring at the time of the other fact depositions. The Parties have agreed her deposition will occur by October 15, 2025.

RESPECTFULLY SUBMITTED,

Plaintiff,
Saifullah Khan

By: /s/ *Alexander T. Taubes*
Alexander T. Taubes
Taubes Law
470 James Street, Suite 007
New Haven, CT 06513
Phone: 203-9090048
Email: alextt@gmail.com

Defendant,
Yale University

By: /s/ *Giovanna Tiberii Weller*
Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

Defendant,
Jane Doe

By: /s/ *Brendan N. Gooley*
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT 06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
Email: bgooley@carltonfields.com

**CERTIFICATION OF SERVICE**

This is to certify that on this 21st day of March 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

*/s/ Brendan N. Gooley*
Brendan N. Gooley

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN<br>PLAINTIFF<br>v.<br>YALE UNIVERSITY, ET AL.<br>DEFENDANT | : | DOCKET NO. 3:19-cv-01966(KAD)<br><br>May 14, 2025 |

**YALE UNIVERSITY'S MOTION TO COMPEL**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Local Rules of this Court, defendant Yale University respectfully moves this Court to compel Plaintiff to produce every document on each of his privilege logs that includes non-attorney "Peter Roe."[1] Yale also moves to compel the production of 42 additional communications on which Mr. Roe is included that were initially withheld on Plaintiff's April 18, 2025 privilege log, but which were subsequently removed from his May 7, 2025 log. As is set forth in more detail in the Memorandum of Law submitted herewith, Plaintiff's privilege log is deficient in several respects.

First, any communications between Plaintiff and Mr. Roe before and immediately after Plaintiff's criminal trial that Plaintiff claims are privileged based on Mr. Roe's purported role as a member of Plaintiff's "legal team" should be ordered produced because Plaintiff's criminal defense attorney has officially disclaimed any knowledge of Mr. Roe or any involvement by him

**ORAL ARGUMENT REQUESTED**

[1] Consistent with the protective order, individuals with allegations of sexual misconduct against Plaintiff are entitled to confidentiality and efforts to protect their identities. (*See* ECF 196- 198). As such, Defendant is using the pseudonym, Peter Roe or Mr. Roe, for this individual, as the defendants have been using in written discovery. Plaintiff and his counsel are aware of the identity of this individual.

in Plaintiff's criminal defense. Next, to the extent that Plaintiff attempts to claim that Mr. Roe was serving as a "voluntary paralegal" for Attorney Valois, that argument is equally unavailing. Not only do numerous communications with Mr. Roe appear on Plaintiff's privilege logs *months* before Attorney Valois began her legal representation of Plaintiff, but Plaintiff has proffered no evidence that Mr. Roe was otherwise qualified to serve as a paralegal, that he possessed any special skill necessary for the receipt or delivery of legal services, or of any formal agreement memorializing such an engagement. With respect to the documents that Plaintiff removed from his May 7th Log—documents that Plaintiff now claims are non-responsive but otherwise privileged—each of those communications should be produced because the presumption is that these communications with Mr. Roe are in fact relevant and responsive given their inclusion on Plaintiff's earlier privilege logs. Finally, the vague and repetitive descriptions on Plaintiff's privilege logs fail to supply the requisite detail to demonstrate why any of Mr. Roe's communications might somehow be privileged.

Accordingly, Plaintiff has not met his burden of establishing the applicability of an evidentiary privilege as to any of the documents and communications including Mr. Roe on Plaintiff's multiple privilege logs. Consequently, the Court should compel Plaintiff to produce all of the communications and documents with Mr. Roe contained on Plaintiff's multiple privilege logs and order an award of costs to Yale associated with the filing of this Motion.

Respectfully submitted,
Yale University

By: [signature]

Patrick M. Noonan (ct00189)
Giovanna Tiberii Weller (ct11187)
Maria L. Laurato (ct31443)
Carmody Torrance Sandak & Hennessy LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
Phone: 203-777-5501
Fax: 203-784-3199
Email: pnoonan@carmodylaw.com
Email: gweller@carmodylaw.com
Email: mlaurato@carmodylaw.com

**CERTIFICATION OF SERVICE**

I hereby certify that on May 14, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

[signature]
Maria L. Laurato

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAIFULLAH KHAN<br>PLAINTIFF<br>v.<br>YALE UNIVERSITY, ET AL.<br>DEFENDANT | DOCKET NO. 3:19-cv-01966(KAD)<br><br>May 14, 2025 |

**AFFIDAVIT OF MARIA L. LAURATO**

I, Maria L. Laurato, having been duly sworn depose and say:

1. I am over the age of 18 years, and I believe in the obligations of an oath.

2. I make this statement of my own personal knowledge.

3. I am an attorney with the law firm of Carmody Torrance Sandak & Hennessey LLP, counsel to the defendant Yale University and the twelve individual Yale defendants in the above-captioned matter.

4. On May 24, 2024, Plaintiff provided Defendants with a privilege log (the May 2024 Log), on which he claimed as privileged a total of thirty-five (35) communications. Of the 35 purportedly privileged and withheld communications, "Peter Roe" was included on fourteen. Privilege log issues were deferred until all parties exchanged privilege logs.

5. On March 7, 2025, following his production of an additional 18,246 documents, Plaintiff provided Yale with a new privilege log, on which he claimed as privileged 426 additional documents and communications.

6. Plaintiff's March 7, 2025, privilege log was insufficient insofar as more than 140 entries failed to identify all individuals included on the allegedly privileged communication. For

those entries where Plaintiff did include the requisite sender and recipient information, Yale was concerned with the inclusion of Mr. Roe on approximately 118 of those entries.

7. Yale shared these concerns—both the absence of the essential identifying information and the seemingly improper withholding of communications with Mr. Roe—with Plaintiff at a March 25, 2025 meet and confer. With respect to the entries that failed to identify the thread participants, Plaintiff agreed to supplement his privilege log to include the missing information.

8. At the March 25, 2025 meet and confer, the parties also discussed the propriety of claiming as privileged any communications including Mr. Roe. Although Plaintiff suggested that, at a certain point in time, Mr. Roe was serving as a paralegal for another of Plaintiff's attorneys, it was agreed that the parties would research the issue and be prepared to discuss at their next meet and confer, scheduled for April 18, 2025.

9. On the morning of April 18, 2025, Plaintiff provided Defendants with his updated privilege log (April 18th Log) that included the previously omitted thread participant information.

10. Of the 426 entries on the April 18th Log, Peter Roe was now included on at least 243 entries. Mr. Roe first appeared on the log as early as December 10, 2017, and the last communication with Mr. Roe occurred on June 10, 2018.

11. The parties met and conferred on April 18, 2025. As they had previously discussed, Yale provided Plaintiff with caselaw concerning communications with non-attorneys. Yale took the position that the caselaw it provided established that the communications with Mr. Roe were being improperly withheld.

12. The parties discussed that, if Plaintiff's counsel were to review the withheld communications with Mr. Roe and determine that any were improperly or inadvertently withheld, he would produce those documents to Defendants. Defendants did clarify that they were not interested in receiving, and that Plaintiff did not need to produce, any additional irrelevant pornographic images or communications.

13. At this meet and confer, Yale also raised an issue with the generic and ostensibly copy-and-pasted descriptions on Plaintiff's April 18th Log, stating that it was difficult to even identify any withheld communications to challenge on a relevancy basis given the vague descriptions. Yale further alerted Plaintiff to additional communications on the April 18th Log it believed were improperly withheld due to their inclusion of non-attorneys other than Mr. Roe.

14. Plaintiff's counsel agreed to again update his privilege log by, among other things, revising the descriptions. He further indicated that Plaintiff would likely produce the additional communications with non-attorneys other than Mr. Roe. The parties scheduled a subsequent meet and confer for April 22, 2025.

15. The parties revisited their prior discussions of Mr. Roe's inclusion on Plaintiff's privilege log at the April 22 meet and confer. Yale proposed that, given the caselaw, the Mr. Roe communications must come off of the log. It was also discussed that the Defendants would need sufficient time to review, in advance of Plaintiff's deposition, any communication with Mr. Roe that Plaintiff previously withheld but that was subsequently produced.

16. On April 28, 2025, Plaintiff's counsel stated that he likely would "be producing many if not all of the documents [Yale] reference[d] regarding individuals other than [Peter Roe]." *See* Ex. I. The following day, Plaintiff produced the eighteen (18) documents previously withheld on the April 18th Log that Yale identified as being improperly withheld due to their

inclusion of non-attorneys other than Mr. Roe, including former Yale students, an online blogger, Airbnb, and representatives from FACE. The documents were previously withheld at entries 132, 189, 215, 315, 326, 338, 346, 392, 393, 397, 404, 405, 407–09, 411, 412, and 426. *See* Ex. C.

17. On Sunday, May 4, 2025, Plaintiff's counsel emailed Defendants and indicated that he was still working on updating Plaintiff's privilege log based on the parties' meet and confer discussions, but that he hoped to provide the additional information by Wednesday, May 7, 2025. The Court had previously set May 7, 2025, as the deadline to file remaining motions to compel. (*See* ECF 305.)

18. The following day, on Monday, May 5, Plaintiff's counsel emailed Defendants stating that he was working on updating the privilege log and hoped to get information out that same day, if possible. The parties agreed to meet and confer the following day 2:30 pm.

19. As the parties' 2:30 meet and confer on May 6th neared, Defendants had not yet received Plaintiff's updated privilege log. Plaintiff's counsel stated that it was taking longer than expected and that he hoped to provide the requested information to defense counsel later that evening. Plaintiff's counsel further indicated that he had narrowed down the documents that he claimed were truly responsive and privileged, and was working on the descriptions. Based on counsel's representations, the parties scheduled a meet and confer for the following day, Wednesday, May 7, at 10:30 am.

20. Also on May 6, 2025, counsel for Yale sought confirmation from Plaintiff's counsel that he was reviewing the additional communications with Mr. Roe withheld on Plaintiff's May 2024 Log in connection with the updates he was making to Plaintiff's privilege log. Plaintiff's counsel stated that he was not, taking the position that Mr. Roe's communications are privileged because Mr. Roe "was working for Mr. Khan's attorneys . . ." *See* Ex. D.

21. On the morning of May 7, 2025, Defendants had still not received Plaintiff's updated privilege log. When asked whether he would be circulating the updated privilege log prior to their meet and confer, Plaintiff's counsel indicated that he had not been able to finish it, but that he otherwise wished to discuss a way forward at the parties' previously scheduled 10:30 am meet and confer. The parties met and agreed to schedule another meet and confer for the following day, Thursday, May 8, at 10:30 am.

22. On the evening of Wednesday, May 7, 2025, Plaintiff provided Defendants with an updated privilege log of Mr. Roe documents (May 7th Log). There were 210 entries of withheld and purportedly privileged communications included on the May 7th Log.

23. At the May 8, 2025 meet and confer, the parties discussed Plaintiff's May 7th Log, among other things. Plaintiff's counsel stated that he had removed from the May 7th Log a number of communications with Mr. Roe that he deemed to be non-responsive. Plaintiff's counsel further stated that, although the communication may have hit on one or two search terms, the communication was not about the present litigation or Title IX.

24. When asked whether he intended to produce to Defendants these documents, Plaintiff's counsel stated that he did not. He stated that, although he determined the documents to be non-responsive, he thought they were otherwise privileged.

25. Plaintiff produced the May 7th Log as a .pdf document and without corresponding entry numbers. Yale asked Plaintiff to re-send the May 7th Log with an additional column identifying each entry by number (e.g., 1, 2, 3, etc.). Plaintiff declined to do so, but later agreed at the parties' May 8 meet and confer that Yale could manually add the numbers to the May 7th Log so as to identify for the Court the specific entries it was challenging.

26. The first communication with Attorney Valois produced in discovery is dated April 5, 2018. *See* Ex. G.

27. Despite having met and conferred multiple times with Plaintiff's counsel in good-faith efforts to resolve this dispute without the intervention of the Court, the parties have been unable to reach an agreement concerning communications with Mr. Roe on Plaintiff's privilege logs.

28. Therefore, judicial resolution is necessary to resolve this ongoing dispute.

[signature]
Maria L. Laurato

STATE OF CONNECTICUT )
) ss: New Haven
COUNTY OF NEW HAVEN )

SUBSCRIBED AND SWORN TO before me this 14th day of May 2025.

[signature] Karin al. Peterson
Notary Public
My Commission Expires: 7/31/2027

# Exhibit G

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, Plaintiff, | : | CIVIL ACTION NO. 3:19-cv-01966-KAD |
| V. | : | |
| YALE UNIVERSITY, ET AL., Defendants. | : | MAY 15, 2025 |

## DECLARATION OF MARIA L. LAURATO

Pursuant to 28 U.S.C. § 1746, I, Maria L. Laurato, say:

1. I am over the age of twenty-one and believe in and understand the obligations of an oath.

2. I am an attorney at Carmody Torrance Sandak & Hennessey LLP, which represents Defendant Yale University and the Individual Yale Defendants in this matter.

3. I have personal knowledge of the facts set forth below. My responsibilities in this matter have included reviewing various documents produced by Plaintiff in this matter.

4. On or around February 27, 2025, Plaintiff produced approximately 70,305 pages of documents. I was tasked with reviewing those documents and have reviewed those documents. The vast majority of the documents (about 85%) are irrelevant to this case.

5. When I reviewed the documents in question, I categorized documents as either responsive/relevant or irrelevant/non-responsive. When in doubt, I construed documents as being responsive/relevant even though they may not be. Even with that overly generous approach, approximately 85% of the documents at issue were irrelevant/non-responsive.

6. A small sampling of irrelevant/non-responsive documents in Plaintiff's production are attached as **Exhibit 1**. Such documents include, but are not limited to:

   - Hardcore, graphic pornography, including two videos and photos (not attached);
   - Spam emails, including emails from Amazon, Walmart, iTunes, etc. advertising products and/or services, such as the services of Walmart's photography center AND advertisements for Bed Bath & Beyond, computer anti-virus software, and the application "Words with Friends;"
   - Restaurant recommendations for restaurants in California;
   - Uber receipts for Ubers Plaintiff took around New York;

- Credit card payment reminders;

- Newsletters, including newsletters from organizations like the American Society for the Prevention of Cruelty to Animals and alumni newsletters from the Hotchkiss School, as well as weekly newsletters from Yale's Office of International Students;

- Yale email announcements that have nothing to do with this case, such as announcements about events that occurred years before the events at issue;

- Other email announcements promoting events that have nothing to do with this case, such as an announcement for a conference at the University of Pennsylvania;

- Thousands of emails related to Families Advocating for Campus Equality ("FACE"), an organization that advocates for students accused of sexual misconduct, that have nothing to do with this case; and

- Many other miscellaneous, documents, such as a call for papers for a conference years before the underlying events, an email about picking up t-shirts, etc.

7. The review of Plaintiff's February 27, 2025 production included the creation and review of a spreadsheet detailing the number of emails in Plaintiff's production sent from certain email addresses. That spreadsheet is attached as **Exhibit 2** and establishes that at least 11,897 emails in Plaintiff's production were sent by email addresses associated with FACE. As previously mentioned, the vast majority of those emails have nothing to do with this case. Examples of irrelevant FACE emails are attached as **Exhibit 3**. Such emails include:

   - Emails discussing fundraising for FACE;

   - Emails discussing FACE events; and

   - Emails discussing other student discipline cases unrelated to this case.

8. We also reviewed privilege logs produced by Plaintiff and compared Bates numbers listed in those privilege logs to Bates numbers of various documents that were produced to us. We determined that some of the documents on Plaintiff's privilege log were part of the same document "family" as irrelevant/unresponsive documents that were produced to us. Several of the pornographic images that were sent to us were part of the same document "families" as documents listed on Plaintiff's privilege log.

9. I declare under penalty of perjury that the foregoing is true and correct.

   Executed on May 15th, 2025

Maria L. Laurato

# To Be Filed Under Seal

# Exhibit J

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN<br>Plaintiff, | : | CIVIL ACTION NO.<br>3:19-cv-01966-KAD |
| V. | : | |
| YALE UNIVERSITY, ET AL.,<br>Defendants. | : | MAY 17, 2024 |

**RESPONSES TO DEFENDANT JANE DOE'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF**

Pursuant to the Federal Rules of Procedure and the Local Rules of this Court, the Plaintiff, Saifullah Khan, hereby responds to the Defendant's discovery requests. In responding to these requests, the plaintiff responds with the qualification that he is responding to the best of his knowledge, belief, and memory, after a reasonable investigation, and that his investigation is ongoing through the process of discovery in this matter. To the extent that the plaintiff is unable to provide, for example, a witness's address or phone number, their name is included. To the extent that their address or phone number or another detail is learned it will be disclosed. Discovery is ongoing. Accordingly, the plaintiff reserves the right to amend, revise, correct, modify, supplement or clarify all of the responses provided herein, upon discovering additional information, up through the close of discovery.

**INTERROGATORIES**

1. Please state your full legal name, any other names by which you have been or are now known, date of birth, your present home address, prior home addresses, and all addresses you have stayed at and/or resided at since October 31, 2015.

**ANSWER:**

Full Legal Name: Saifullah Juma Khan

Nickname: Saif

[redacted]

Other experts to be determined as discovery develops.

10. Please identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them and please identify all documents and communications, other than communications with your attorneys, regarding all such allegations, statements, and/or assertions of sexual misconduct against you.

**ANSWER:**

Jane Doe [redacted]

Peter Roe [redacted]

**CERTIFICATION OF PLAINTIFF**

I Saifullah Khan, being duly sworn, hereby depose and say:

1. I am the Plaintiff in the above-referenced matter and am familiar with the facts above.
2. I have read the foregoing responses to Jane Doe's First Set of Interrogatories and hereby verify that the foregoing answers are true to the best of my knowledge and belief.

Saifullah Khan

Subscribed and sworn to before me this 17 day of May, 2024

Manisha

Notary Public

My commission expires: March 31, 2027

Manisha Amatya
Commonwealth of Virginia
Notary Public
Commission No. 7826271
My Commission Expires 3/31/2027

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN<br>Plaintiff, | : | CIVIL ACTION NO.<br>3:19-cv-01966-KAD |
| V. | : | |
| YALE UNIVERSITY, ET AL.,<br>Defendants. | : | MAY 20, 2024 |

**RESPONSES TO DEFENDANT JANE DOE'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF**

Pursuant to the Federal Rules of Procedure and the Local Rules of this Court, the Plaintiff, Saifullah Khan, hereby responds to the Defendant's discovery requests. In responding to these requests, the plaintiff responds with the qualification that he is responding to the best of his knowledge, belief, and memory, after a reasonable investigation, and that his investigation is ongoing through the process of discovery in this matter. To the extent that the plaintiff is unable to provide, for example, a witness's address or phone number, their name is included. To the extent that their address or phone number or another detail is learned it will be disclosed. Discovery is ongoing. Accordingly, the plaintiff reserves the right to amend, revise, correct, modify, supplement or clarify all of the responses provided herein, upon discovering additional information, up through the close of discovery.

**REQUESTS FOR PRODUCTION**

1. All documents and communications relied on in answering any Interrogatories in this action, preparing Plaintiff's Initial Disclosures, and/or preparing any Damages Analysis.

**RESPONSE:**

Please see documents produced at SAIFKHAN_000001-SAIFKHAN_010363; to the extent that this request seeks documents that are protected by the attorney-client privilege and work product protection/privilege, please see the privilege log being simultaneously produced herewith.

[redacted]

10. All documents and communications, other than communications with your

attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct, including but not limited to all allegations, statements, and assertions identified in response to Interrogatory 10 identified above. This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**

Please see documents produced at SAIFKHAN_000001-SAIFKHAN_010363; to the extent that this request seeks documents that are protected by the attorney-client privilege and work product protection/privilege, please see the privilege log being simultaneously produced herewith.

[redacted]

# EXHIBIT B

**Thread Participants:** Peter Roe; Saif Khan
**ThreadFirst:** 2018-05-23 10:29:09
**ThreadLast:** 2018-05-23 21:08:53

---

Saif Khan
**Saif Khan** 5/23/2018 10:29:09 AM
Good morning

Peter Roe
**Peter Roe** 5/23/2018 11:04:35 AM
Morning

Peter Roe
**Peter Roe** 5/23/2018 11:06:21 AM
🙂

Peter Roe
**Peter Roe** 5/23/2018 11:21:05 AM
Just locked down someone for the 6th and 7th btw 😉

Peter Roe
**Peter Roe** 5/23/2018 11:21:19 AM She has a boyfriend. That made it even better

Peter Roe
**Peter Roe** 5/23/2018 11:26:01 AM
Who's your daddy... i mean... khasegi

Saif Khan
**Saif Khan** 5/23/2018 11:26:26 AM
Why did margaret cc you in that email btw

Saif Khan
**Saif Khan** 5/23/2018 11:26:29 AM
Oh nice

Peter Roe
**Peter Roe** 5/23/2018 11:26:34 AM
Idk

Saif Khan

**Saif Khan** 5/23/2018 11:26:34 AM
That should be fun

Peter Roe

**Peter Roe** 5/23/2018 11:27:47 AM Yeah she seems great. Into spanking, gagging, pain, nipple play, breath play, bondage, discipline, and "spit for lube"

Peter Roe

**Peter Roe** 5/23/2018 11:28:25 AM
😌

Peter Roe

**Peter Roe** 5/23/2018 11:31:42 AM She is excited ill be her first intentional encounter with a woman

Peter Roe

**Peter Roe** 5/23/2018 11:31:49 AM
Which is cute

Saif Khan

**Saif Khan** 5/23/2018 11:33:36 AM
wait i dont understand that statement

Peter Roe

**Peter Roe** 5/23/2018 11:34:02 AM
As in this will be the first time ive intentionally had a sexual experience with a woman..

Saif Khan

**Saif Khan** 5/23/2018 11:34:39 AM
ah okay

Peter Roe

**Peter Roe** 5/23/2018 11:34:55 AM
You dont seem nearly as excited as i was hoping you would be lol

Saif Khan

**Saif Khan** 5/23/2018 11:35:24 AM
i am

Saif Khan

**Saif Khan** 5/23/2018 11:35:25 AM
just busy

Saif Khan

**Saif Khan** 5/23/2018 11:35:33 AM
didnt sleep well

Peter Roe

**Peter Roe** 5/23/2018 11:35:37 AM
Why

Saif Khan

**Saif Khan** 5/23/2018 11:35:47 AM
i guess posture etc

Saif Khan

**Saif Khan** 5/23/2018 11:35:49 AM
thoughts

Peter Roe

**Peter Roe** 5/23/2018 11:36:10 AM Okay.
Maybe you should set aside some time for a nap today?

Peter Roe

Photo Of Sophie

[redacted]

Peter Roe

Photo Of Sophie [redacted]

Peter Roe

**Peter Roe** 5/23/2018 11:41:50 AM
Her name is Sophie she is Age short, thin, brunette obviously.

Peter Roe

**Peter Roe** 5/23/2018 11:42:18 AM
Very sorority ish

Saif Khan

**Saif Khan** 5/23/2018 11:42:40 AM
yeah very cute

Peter Roe

**Peter Roe** 5/23/2018 11:43:49 AM
We're working out meeting for drinks before hand.. of course my drink will be club soda 😋

Peter Roe

**Peter Roe** 5/23/2018 11:45:29 AM
She's a journalist btw haha and has her masters... aaaaand she started an all girl feminist book club in college. In other words, im only going to share obscure pictures of you 😋

Saif Khan

**Saif Khan** 5/23/2018 11:46:47 AM
that's fucking amazing

Saif Khan

**Saif Khan** 5/23/2018 11:46:53 AM
she sounds like the type

Peter Roe

**Peter Roe** 5/23/2018 11:46:58 AM
And and and

Peter Roe

**Peter Roe** 5/23/2018 11:47:07 AM She has been looking for a male couple to cuckold.

Peter Roe

**Peter Roe** 5/23/2018 11:47:18 AM She wants me to "eat her pussy while he fucks me"

Saif Khan

**Saif Khan** 5/23/2018 11:47:24 AM
that is crazy hot

Peter Roe

**Peter Roe** 5/23/2018 11:47:40 AM
Im a little proud of myself 😉

Peter Roe

**Peter Roe** 5/23/2018 11:48:20 AM She asked if it was okay if she degraded me too

Peter Roe

**Peter Roe** 5/23/2018 11:48:28 AM
I said yes 😉

Saif Khan

**Saif Khan** 5/23/2018 11:49:30 AM
Why is she so perfect for this lol

Peter Roe

**Peter Roe** 5/23/2018 11:49:40 AM
Idk but im into it

Peter Roe

**Peter Roe** 5/23/2018 11:49:49 AM
Hardcore into it

Peter Roe

**Peter Roe** 5/23/2018 11:50:02 AM
We are talking on kik right now

Peter Roe

**Peter Roe** 5/23/2018 11:51:38 AM
She wants to know if you want to get into a group chat 😋

Saif Khan

**Saif Khan** 5/23/2018 11:59:16 AM
sure

Saif Khan

**Saif Khan** 5/23/2018 11:59:23 AM
does she know my name etc?

Peter Roe

**Peter Roe** 5/23/2018 11:59:28 AM
Not yet lol

Peter Roe

**Peter Roe** 5/23/2018 11:59:49 AM She has seen one picture of you that i think you sent from connecticut a long time ago

Peter Roe

**Peter Roe** 5/23/2018 12:00:05 PM
Do you have kik?

Saif Khan

**Saif Khan** 5/23/2018 12:01:02 PM
Xmarai

Peter Roe

**Peter Roe** 5/23/2018 12:01:50 PM
There

Peter Roe

**Peter Roe** 5/23/2018 12:04:38 PM
I assume we are going to tell her your name?

Saif Khan

**Saif Khan** 5/23/2018 12:04:51 PM
Saif is good

Peter Roe

**Peter Roe** 5/23/2018 12:08:27 PM She covers health issues i guess. Im in the middle of scheduling congress meetings

Peter Roe

**Peter Roe** 5/23/2018 12:18:12 PM
She hasnt seen my 1v1 messages yet so my guess is she is also busy

Saif Khan

**Saif Khan** 5/23/2018 12:18:21 PM
No probs

Peter Roe

**Peter Roe** 5/23/2018 1:03:18 PM
I sent megan an email btw

Peter Roe

**Peter Roe** 5/23/2018 1:03:23 PM
She was busy when i called

Peter Roe

**Peter Roe** 5/23/2018 1:03:52 PM
Ill try back later this afternoon though

Peter Roe

**Peter Roe** 5/23/2018 1:04:06 PM
What are you doing btw?

Saif Khan

**Saif Khan** 5/23/2018 1:04:14 PM
i have a throbbing headache

Saif Khan

**Saif Khan** 5/23/2018 1:04:20 PM
i dont usually have headaches

Saif Khan

**Saif Khan** 5/23/2018 1:04:28 PM
last time was like more than a year ago

Saif Khan

**Saif Khan** 5/23/2018 1:04:32 PM
i got ibuprofen and water

Peter Roe

**Peter Roe** 5/23/2018 1:04:40 PM
id rub your head if i was there 😔

Peter Roe

**Peter Roe** 5/23/2018 1:06:43 PM
You should go lay down in a dark room

Saif Khan

**Saif Khan** 5/23/2018 1:07:20 PM
ill manage for now

Peter Roe

**Peter Roe** 5/23/2018 1:08:03 PM Awe saif. I dont want you to just be managing. Do you need me to do anything? I obviously cant help with the headache but of youre working on something you need help with or something..

Saif Khan

**Saif Khan** 5/23/2018 1:08:29 PM
it's all good. i will keep thinking about the letters and play some rocket league to focus

Peter Roe

**Peter Roe** 5/23/2018 1:08:45 PM Okay. If you need anything im here for you.

Peter Roe

**Peter Roe** 5/23/2018 1:09:03 PM
I want you to take care of yourself. Remember what you always tell me 😋

Peter Roe

**Peter Roe** 5/23/2018 1:39:59 PM
I didnt think that one was sappy enough to ignore 😏

Peter Roe

**Peter Roe** 5/23/2018 1:45:36 PM
Guess so.

Peter Roe

**Peter Roe** 5/23/2018 1:50:28 PM
Well alright. Guess it's nap time then

Peter Roe

**Peter Roe** 5/23/2018 1:50:46 PM
TTYL

Peter Roe

**Peter Roe** 5/23/2018 2:01:09 PM
Or.. i was going to nap. Until Sophie resurfaced

Peter Roe

**Peter Roe** 5/23/2018 2:02:21 PM
Oh and Megan liked the idea

Peter Roe

**Peter Roe** 5/23/2018 2:02:47 PM


78% 2:02 PM

Saifullah Khan Inbox

**Peter Roe** 1:02 PM
Hey Megan, I hope all is well. I wanted to reach out about Saifullah Khan again. I have been

McArdle, Megan
to me
2:00 PM View details

Very! I'm around; tell me when would be convenient. I have a car, and can travel to near where he is, if that's better.

**From:** Peter Roe
[mailto: peterroe@gmail.com]
**Sent:** Wednesday, May 23, 2018 1:03 PM
**To:** McArdle, Megan
<Megan.McArdle@washpost.com>
**Subject:** Saifullah Khan

[EXTERNAL EMAIL]

Show quoted text

*<33232492_10160232356110532_4670935010671329280_n_10160232356055532.jpg>*

Peter Roe

**Peter Roe** 5/23/2018 2:03:29 PM
Setting up a specific date now. And apparently staying awake. So... coffee time 😑😑😑

Peter Roe

**Peter Roe** 5/23/2018 2:06:41 PM
Im just assuming that at this point youve just fallen asleep.

Saif Khan

**Saif Khan** 5/23/2018 2:06:59 PM
You just woke me u

Saif Khan

**Saif Khan** 5/23/2018 2:07:02 PM
Be patient

Peter Roe

**Peter Roe** 5/23/2018 2:07:12 PM
I am patient. I just have updates

Peter Roe

**Peter Roe** 5/23/2018 2:07:24 PM
I do this shit live 😋

Saif Khan

**Saif Khan** 5/23/2018 2:08:15 PM
Tell her to drive to me I guess

Saif Khan

**Saif Khan** 5/23/2018 2:08:26 PM
We can go around for a short hike/walk

Peter Roe

**Peter Roe** 5/23/2018 2:08:43 PM
I was just going to pay for you to uber half way. Youre a little far from her

Saif Khan

**Saif Khan** 5/23/2018 2:08:58 PM
Okay. Whatever works well

Peter Roe

**Peter Roe** 5/23/2018 2:11:50 PM
Alright

Peter Roe

**Peter Roe** 5/23/2018 2:12:49 PM
I need to get my steps in too. I swesr there arent enough hours in a day. Whore wrangler, personal assistant, scheduler, lobbyist, event planner, paralegal. I need a salary 😋

Saif Khan

**Saif Khan** 5/23/2018 2:13:08 PM
Hahaha :)

Peter Roe

**Peter Roe** 5/23/2018 2:13:33 PM Glad to finally add whore wrangler to my list of titles though. That feels good. 😏

Peter Roe

**Peter Roe** 5/23/2018 2:15:07 PM
I wonder if she will want to interview you after i finish sucking your load out of her 😋

Saif Khan

**Saif Khan** 5/23/2018 2:27:19 PM
That would be hilarious

Peter Roe

**Peter Roe** 5/23/2018 2:29:21 PM
Im actually more excited than i thought it would be.

Saif Khan

**Saif Khan** 5/23/2018 2:29:46 PM
It would be so much fun. Especially if both of your mouths are covered with cum while she interviews me

Peter Roe

**Peter Roe** 5/23/2018 2:30:07 PM Haha. Whatever you ask of me, ill make it happen 😉

Peter Roe

**Peter Roe** 5/23/2018 2:35:41 PM
Once I finish cleaning her we could always make out (😬) that would get some cum on her mouth 😏

Saif Khan

**Saif Khan** 5/23/2018 2:36:08 PM
I bet you'd be too greedy to let her have some

Peter Roe

**Peter Roe** 5/23/2018 2:36:15 PM
Heheh

Peter Roe

**Peter Roe** 5/23/2018 2:36:16 PM
Well

Peter Roe

**Peter Roe** 5/23/2018 2:36:25 PM
Im sharing everything else

Peter Roe

**Peter Roe** 5/23/2018 2:36:30 PM
😋

Peter Roe

**Peter Roe** 5/23/2018 2:37:59 PM
Ill spit it into her mouth. As long as she gives it back 😏

Peter Roe

**Peter Roe** 5/23/2018 2:39:27 PM

*<30831865_162647981240965_6368771024850255872_n_10160232457375532.gif>*

Peter Roe

**Peter Roe** 5/23/2018 2:39:32 PM
The things i do for love

Saif Khan

**Saif Khan** 5/23/2018 2:39:59 PM
Hahaha

Peter Roe

**Peter Roe** 5/23/2018 2:41:15 PM
I just hope you appreciate it 😛

Saif Khan

**Saif Khan** 5/23/2018 2:41:29 PM
I do :)

Saif Khan

**Saif Khan** 5/23/2018 2:41:37 PM
Headache is 95% gone

Peter Roe

**Peter Roe** 5/23/2018 2:41:50 PM
Good... and good 😊

Peter Roe

**Peter Roe** 5/23/2018 2:42:21 PM




*<21753775_10155763113979481_9002515489825488896_n_10160232467330532.gif>*

Saif Khan

**Saif Khan** 5/23/2018 2:43:35 PM
She's a good type btw

Peter Roe

**Peter Roe** 5/23/2018 2:43:59 PM
I think she's pretty cute too. I knew when i saw her that she would be down

Saif Khan

**Saif Khan** 5/23/2018 2:44:20 PM
Someday you should tell me how you found her

Peter Roe

**Peter Roe** 5/23/2018 2:44:25 PM
I guess it helps that she specified she wanted a male-male bi or gay couple. Which... close enough.

Peter Roe

**Peter Roe** 5/23/2018 2:47:39 PM
She isnt the only one I have on retainer, just the first to say yes to meeting. She was very easy to convince. And i when i mentioned cuckholding she was sold.

Peter Roe

**Peter Roe** 5/23/2018 2:47:56 PM
I think we could potentially reuse her in the future too

Saif Khan

**Saif Khan** 5/23/2018 2:48:01 PM
Retainer? She's a prostitute? Lol

Peter Roe

**Peter Roe** 5/23/2018 2:48:07 PM
Lmao no

Peter Roe

**Peter Roe** 5/23/2018 2:48:13 PM
That was a joke

Saif Khan

**Saif Khan** 5/23/2018 2:48:25 PM
Funny eitherway

Peter Roe

**Peter Roe** 5/23/2018 2:48:40 PM
I wouldnt even know where to find a prostitute. Im an alabaster white goodie two shoes, saif 😋

Peter Roe

**Peter Roe** 5/23/2018 2:48:47 PM
Youre the only corruption in my life

Peter Roe

**Peter Roe** 5/23/2018 2:51:20 PM
I might need a special drinking dispensation that night. And you and i should figure out what else we want to do.

She and i talked about some things but i told her youd probably be fine just talking about it in person which is what she prefers.

Saif Khan

**Saif Khan** 5/23/2018 2:52:22 PM
Okay good :)

Saif Khan

**Saif Khan** 5/23/2018 2:52:32 PM
Bitch is getting con non con

Peter Roe

**Peter Roe** 5/23/2018 2:52:46 PM
Con non con?

Saif Khan

**Saif Khan** 5/23/2018 2:53:43 PM
Non consensual

Peter Roe

**Peter Roe** 5/23/2018 2:54:12 PM
Well here are her fetishes

Peter Roe

**Peter Roe** 5/23/2018 2:54:15 PM
[redacted]

Peter Roe

**Peter Roe** 5/23/2018 2:54:25 PM
A non exhaustive but comprehensive list

Peter Roe

**Peter Roe** 5/23/2018 2:56:56 PM
Her only concern was that you may be too dominant because she wanted to be serviced too. Which... i can take care of that

Peter Roe

**Peter Roe** 5/23/2018 2:57:01 PM



*<21126046_1810119769028850_6184624353573863424_n_10160232509555532.gif>*

Saif Khan

**Saif Khan** 5/23/2018 2:57:50 PM
Well, I do abuse sluts and do a bit of after care

Peter Roe

**Peter Roe** 5/23/2018 2:58:27 PM
Well as long as I can balance it out i think it will be fine.

Peter Roe

**Peter Roe** 5/23/2018 2:58:49 PM
Taking one for the team is my forte

Saif Khan

**Saif Khan** 5/23/2018 2:59:12 PM
😂

Peter Roe

**Peter Roe** 5/23/2018 2:59:52 PM
I never thought id be preparing to eat a girl out to keep her satisfied while my... daddy? fucked her. But we all gotta grow up sometimes.

Peter Roe

**Peter Roe** 5/23/2018 3:00:07 PM
Oh... and while she verbally degrades me

Saif Khan

**Saif Khan** 5/23/2018 3:00:11 PM
Hahaha I can imagine this playing out

Peter Roe

**Peter Roe** 5/23/2018 3:00:18 PM
Yeah. So can i.

Peter Roe

**Peter Roe** 5/23/2018 3:00:45 PM
Im gonna need a lot of hemp oil.

Peter Roe

**Peter Roe** 5/23/2018 3:00:49 PM
😋

Peter Roe

**Peter Roe** 5/23/2018 3:01:27 PM
Im kidding mostly haha. Like Im nervous and borderline disgusted. But all that matters is you end up busting your load and feeling satisifed ;P

Saif Khan

**Saif Khan** 5/23/2018 3:02:04 PM
June sounds exciting

Peter Roe

**Peter Roe** 5/23/2018 3:02:17 PM
It will be fun, I promise

Peter Roe

**Peter Roe** 5/23/2018 3:02:32 PM Im gonna make up for that weekend which we need not speak of :p

Peter Roe

**Peter Roe** 5/23/2018 3:03:18 PM
This new method I have of finding girls like her is going to come in handy for us.

Saif Khan

**Saif Khan** 5/23/2018 3:03:37 PM
Yeah I bet. It seems to be awesome

Peter Roe

**Peter Roe** 5/23/2018 3:03:51 PM
Yeah well, Khasegi trade secret :P

Saif Khan

**Saif Khan** 5/23/2018 3:04:03 PM
Good :)

Peter Roe

**Peter Roe** 5/23/2018 3:04:35 PM
I think now I have almost fulfilled all of my promises to you. I'll have to make a new batch of promises soon :P

Peter Roe

**Peter Roe** 5/23/2018 3:05:25 PM
But, you really are happy with this?

Saif Khan

**Saif Khan** 5/23/2018 3:05:42 PM
Yeah it sounds dreamy

Peter Roe

**Peter Roe** 5/23/2018 3:05:51 PM
Okay

Peter Roe

**Peter Roe** 5/23/2018 3:05:52 PM
Good

Peter Roe

**Peter Roe** 5/23/2018 3:05:57 PM
All that matters to me.

Peter Roe

**Peter Roe** 5/23/2018 3:06:36 PM
Oh my god. ....she has a strapon

Saif Khan

**Saif Khan** 5/23/2018 3:06:50 PM
Perfect

Peter Roe

**Peter Roe** 5/23/2018 3:07:08 PM
Haha maybe I won't go unsatisfied after all 😛

Peter Roe

**Peter Roe** 5/23/2018 3:09:42 PM
So what are you doing?

Saif Khan

**Saif Khan** 5/23/2018 3:09:54 PM
Trying to nap

Peter Roe

**Peter Roe** 5/23/2018 3:09:58 PM
oh lol

Peter Roe

**Peter Roe** 5/23/2018 3:10:08 PM Well before you do, what day did Bajwa see your message to him?

Peter Roe

**Peter Roe** 5/23/2018 3:10:17 PM
Im going to work on that while you do

Saif Khan

**Saif Khan** 5/23/2018 3:10:21 PM
Don't remember

Peter Roe

**Peter Roe** 5/23/2018 3:10:32 PM go to the messages, click on the message you sent him

Peter Roe

**Peter Roe** 5/23/2018 3:10:38 PM
it will say "Seen... blah blah blah"

Saif Khan

**Saif Khan** 5/23/2018 3:11:09 PM
April 18 3:05 pm

Peter Roe

**Peter Roe** 5/23/2018 3:11:15 PM
thank you

Peter Roe

**Peter Roe** 5/23/2018 3:11:22 PM
text me when you're back up and feeling better

Peter Roe

**Peter Roe** 5/23/2018 3:46:41 PM
I was going to ask where she went to school.. because Im genuinely curious. But that may be a good topic to avoid lol

Saif Khan

**Saif Khan** 5/23/2018 3:46:50 PM
Yeah lol

Peter Roe

**Peter Roe** 5/23/2018 3:47:24 PM middle eastern and saif is easy to hide. middle eastern, saif, and yale is a little on the nose for an east coast journalist lol

Saif Khan

**Saif Khan** 5/23/2018 3:47:33 PM
Yep

Saif Khan

**Saif Khan** 5/23/2018 3:48:57 PM
They deleted one of the recent comments on shicks article

Peter Roe

**Peter Roe** 5/23/2018 3:49:10 PM
the monster article?

Saif Khan

**Saif Khan** 5/23/2018 3:49:19 PM
The one where they called out Schick for saying that about an innocent man

Saif Khan

**Saif Khan** 5/23/2018 3:49:20 PM
Yes

Peter Roe

**Peter Roe** 5/23/2018 3:50:41 PM
Hmm I'll go look in a minute

Peter Roe

**Peter Roe** 5/23/2018 3:50:49 PM Should I bring the paddle in June do you think?

Peter Roe

**Peter Roe** 5/23/2018 3:50:57 PM
😘

Peter Roe

**Peter Roe** 5/23/2018 3:51:40 PM
actually

Peter Roe

**Peter Roe** 5/23/2018 3:55:00 PM
I want to get her talking about it because I know it will make you hard :p

Peter Roe

**Peter Roe** 5/23/2018 3:55:12 PM
and that makes me hard lol

Peter Roe

**Peter Roe** 5/23/2018 4:02:30 PM




*<21297252_10156410948474460_9176287787857477632_n_10160232691865532.gif>*

Peter Roe

**Peter Roe** 5/23/2018 4:02:36 PM
me reading her list

Peter Roe

**Peter Roe** 5/23/2018 4:04:45 PM
WELL I THOUGHT IT WAS FUNNY

Saif Khan

**Saif Khan** 5/23/2018 4:04:58 PM
Lol it was

Peter Roe

**Peter Roe** 5/23/2018 4:05:17 PM
Im playing dumb. I want her to fuck me with the strapon but i want her to be excited about it 😏

Saif Khan

**Saif Khan** 5/23/2018 4:05:28 PM
I noticed

Peter Roe

**Peter Roe** 5/23/2018 4:05:38 PM
Is that not a good idea?

Saif Khan

**Saif Khan** 5/23/2018 4:05:55 PM
It is. Be as gay as you want lol

Peter Roe

**Peter Roe** 5/23/2018 4:07:40 PM
Ive never been more glad to know you lol

Peter Roe

**Peter Roe** 5/23/2018 4:08:03 PM
Haha imagining you coaching her on how to fuck me

Peter Roe

**Peter Roe** 5/23/2018 4:10:52 PM Well
Im glad you two are bonding over something XD

Saif Khan

**Saif Khan** 5/23/2018 4:11:48 PM
Yeah that's what I'll be doing

Saif Khan

**Saif Khan** 5/23/2018 4:11:55 PM
Teaching her how to fuck you

Peter Roe

**Peter Roe** 5/23/2018 4:13:39 PM
She is going to destroy me saif

Saif Khan

**Saif Khan** 5/23/2018 4:19:42 PM
There you go

Saif Khan

**Saif Khan** 5/23/2018 4:19:47 PM
I made her super excited

Saif Khan

**Saif Khan** 5/23/2018 4:19:50 PM
Watch her response

Peter Roe

**Peter Roe** 5/23/2018 4:20:20 PM
Oh that's what you were doing. I looked up from writing and thought I'd become a third wheel

Saif Khan

**Saif Khan** 5/23/2018 4:20:42 PM
Yeah she now wants to meet me

Peter Roe

**Peter Roe** 5/23/2018 4:20:56 PM
Well good

Peter Roe

**Peter Roe** 5/23/2018 4:23:46 PM
Though, I suppose I AM the third wheel now

Peter Roe

**Peter Roe** 5/23/2018 4:23:56 PM
I need you to read something for me

Peter Roe

**Peter Roe** 5/23/2018 4:25:43 PM When you find yourself with a free moment that is

Saif Khan

**Saif Khan** 5/23/2018 4:26:06 PM
Sure

Saif Khan

**Saif Khan** 5/23/2018 4:26:09 PM
I'm back on PC

Peter Roe

**Peter Roe** 5/23/2018 4:26:21 PM
cool

# EXHIBIT D

Saif Khan

**Saif Khan** 3/26/2018 3:55:43 PM
Whereas the businessman is saying "I'll take the risk and let's shoot for the money and anything above the interest rate is mine"

Saif Khan

**Saif Khan** 3/26/2018 3:57:22 PM
Bank is just a centralized place, like a stock market, to connect investors and businessmen. Some businessmen end up making no profit, they just pay the bank (for example, mortgages. They don't make money off the homes, they do rarely. But most people just want a home and they pay off the interest)

Saif Khan

**Saif Khan** 3/26/2018 3:57:34 PM
And that mortgage is paid by bank using investor money

Peter Roe

Peter Roe 3/26/2018 3:57:43 PM



*<20952520_1496004380434975_7926526852468834304_n_10160016099120532.gif>*

Saif Khan

**Saif Khan** 3/26/2018 3:58:06 PM
Fuck. Blonde bimbos is my fetish

Saif Khan

**Saif Khan** 3/26/2018 3:58:10 PM
I want to choke them

Peter Roe

Peter Roe 3/26/2018 3:58:15 PM
that is a man in a wig.

Saif Khan

**Saif Khan** 3/26/2018 3:58:20 PM
Hahahaha

Saif Khan

**Saif Khan** 3/26/2018 3:58:22 PM
Nice

Peter Roe

Peter Roe 3/26/2018 3:58:29 PM
Um okay so hang on

Saif Khan

**Saif Khan** 3/26/2018 3:58:31 PM
You know I like trans?

Peter Roe

Peter Roe 3/26/2018 3:58:56 PM
Yeah I know but he is ugly

Peter Roe

Peter Roe 3/26/2018 3:59:04 PM
So I made about 8k in interest last year

Peter Roe

Peter Roe 3/26/2018 3:59:17 PM
and I had to pay

Saif Khan

**Saif Khan** 3/26/2018 3:59:24 PM
Wait why? You shouldn't be making money off interest.

# EXHIBIT I

Peter Roe

Peter Roe 5/11/2018 10:53:43 AM
Damn

Saif Khan

**Saif Khan** 5/11/2018 10:53:58 AM
Also because burnt vegetables get thrown away

Peter Roe

Peter Roe 5/11/2018 10:54:17 AM
GOD DAMN. Double smackdown

Peter Roe

Peter Roe 5/11/2018 10:54:32 AM



*<21753622_10155171993658250_7276397889096515584_n_10160190221545532.gif>*

Saif Khan

**Saif Khan** 5/11/2018 10:55:06 AM
If I had $5 for every gender, I would have 10 dollars and a lot of counterfeit money.

Peter Roe

Peter Roe 5/11/2018 10:55:21 AM
Lmao

Saif Khan

**Saif Khan** 5/11/2018 11:01:45 AM
Peter!

Saif Khan

**Saif Khan** 5/11/2018 11:01:56 AM
I'm not racist. Some of my best slaves are black.

Peter Roe

Peter Roe 5/11/2018 11:01:57 AM
SAIF!

Peter Roe

Peter Roe 5/11/2018 11:02:02 AM
Same

Saif Khan

**Saif Khan** 5/11/2018 11:02:03 AM
😂

Peter Roe

Peter Roe 5/11/2018 11:03:03 AM
I mean... I'm not racist, I just wouldnt let one in my house 🤷♂

Saif Khan

**Saif Khan** 5/11/2018 11:03:36 AM
😂😂

Peter Roe

Peter Roe 5/11/2018 11:03:58 AM
I have let a few in through the back door though....

Saif Khan

**Saif Khan** 5/11/2018 11:05:37 AM
If I had 5 dollars for every gender, I would have 5 dollars coz women are objects.

Peter Roe

Peter Roe 5/11/2018 11:07:25 AM
I have another quick call at 1115 about the alcohol issue

Peter Roe

Peter Roe 5/11/2018 11:53:47 AM
I won 😋 jk