# 26-0830-cv

## United States Court of Appeals

*for the*

## Second Circuit

SAIFULLAH KHAN,

*Plaintiff-Appellant,*

– v. –

YALE UNIVERSITY, PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN, JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN, LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER, SARAH DEMERS, JANE DOE, CAROLE GOLDBERG, UNKNOWN PERSONS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR DEFENDANTS-APPELLEES

BRENDAN GOOLEY
JAMES M. SCONZO
CARLTON FIELDS, P.A.
*Attorneys for Defendant-Appellee Jane Doe*
One State Street, Suite 1800
Hartford, Connecticut 06103
(860) 392-5000

PATRICK M. NOONAN
GIOVANNA TIBERII WELLER
MARIA LAURATO
CARMODY TORRANCE SANDAK & HENNESSEY LLP
*Attorneys for Defendants-Appellees Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers and Carole Goldberg*
195 Church Street
New Haven, Connecticut 06510
(203) 777-5501

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (397660)

## CORPORATE DISCLOSURE STATEMENT

Defendant Appellee Yale University hereby discloses pursuant to FRAP 26.1 that it is not a stock corporation and no publicly held company owns any shares of the defendant.

Dated: October 29, 2026

_/s/ *Giovanna Tiberii Weller*________
Giovanna Tiberii Weller

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .......................................................i

TABLE OF AUTHORITIES ...........................................................................v

STATEMENT OF THE ISSUE .......................................................................1

PRELIMINARY STATEMENT .......................................................................1

STATEMENT OF THE CASE ........................................................................2

A. Underlying facts and Plaintiff's claims ..............................................2

B. Plaintiff's request for anonymity for Jane ..........................................3

C. Jane's Rule 12(b)(6) motion to dismiss and the initial appeal .............3

D. Jane's first motion to dismiss ..............................................................4

E. Motions regarding Jane's anonymity, the Magistrate Judge's Order, and the second motions to dismiss ............................................5

F. Plaintiff's additional misconduct ......................................................10

1. Plaintiff offered knowingly false responses to an interrogatory that sought disclosure of other complaints of sexual misconduct .......................................................10

2. Plaintiff concealed damaging communications under false privilege claims ...........................................................12

3. Plaintiff claimed no transcript of the UWC proceedings existed when in fact he had secretly recorded the proceedings ...............................................................13

4. Plaintiff lied to the Magistrate Judge about advice he had received from his purported immigration counsel ............14

5. Plaintiff produced thousands of unreviewed documents just days before depositions ..................................................14

G. Third motion to dismiss and subsequent misconduct ........................15

SUMMARY OF THE ARGUMENT ..............................................................18

STANDARD OF REVIEW ...........................................................................20

ARGUMENT ....................................................................................... 22

I. Plaintiff has waived several of the arguments he raises on appeal by failing to present them to the district court ....................... 22

A. Plaintiff has waived his argument that terminating sanctions are unavailable to remedy discovery abuses absent a violation of a discovery order .................................... 23

B. Plaintiff has waived his due process arguments ....................... 24

C. Plaintiff waived his argument that the district court erred by enforcing compliance with the Magistrate Judge's Order before ruling on his Rule 72(a) objections ............................................................... 25

II. Plaintiff's arguments regarding the merits of the Anonymity Orders are not relevant because even if the orders were subject to reversal, he was still required to comply with them ........... 26

III. The district court did not abuse its discretion when it dismissed Plaintiff's action pursuant to Rules 37 and 41 and/or its inherent authority ................................................ 27

A. Duration and notice ................................................................ 29

B. Prejudice ................................................................................ 29

C. Balance between docket management and right to be heard ..................................................................................... 30

D. Adequacy of lesser sanctions ................................................ 32

IV. The district court was entitled to rely on each of the instances of misconduct it cited in dismissing the complaint ............................ 33

A. The district court properly found that Plaintiff had violated its Anonymity Orders ................................................ 33

1. The Anonymity Orders were appropriate ....................... 33

2. Plaintiff violated the Anonymity Orders ........................ 35

B. The district court was entitled to rely on Plaintiff's discovery misconduct ............................................................ 39

1. Plaintiff lied in his interrogatory response ..................... 39

2. The district court was entitled to consider Plaintiff's false answer and his other discovery misconduct ........ 41

3. Plaintiff tried to conceal "damning" evidence through "specious" privilege assertions ........ 43

4. Plaintiff concealed his possession of a secret UWC recording ........ 46

5. Plaintiff produced thousands of irrelevant documents on the eve of depositions ........ 48

V. Plaintiff's due process rights were not violated ........ 51

VI. The district court properly dismissed the entire action ........ 55

CONCLUSION ........ 58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Agiwal v. Mid Island Mortg. Corp.*,
555 F.3d 298 (2d Cir. 2009) .......... 21

*Application of Dow Jones*,
842 F.2d 603 (2d Cir. 1988) .......... 34

*Borden v. Sec'y of Health & Hum. Servs.*,
836 F.2d 4 (1st Cir. 1987) .......... 25

*Brown v. Artuz*,
283 F.3d 492 (2d Cir. 2002) .......... 2

*Caiola v. Citibank, N.A., New York*,
295 F.3d 312 (2d Cir. 2002) .......... 22

*DLC Mgmt. Corp. v. Town of Hyde Park*,
163 F.3d 124 (2d Cir. 1998) .......... 42, 43

*Dodson v. Runyon*,
86 F.3d 37 (2d Cir. 1996) .......... 46

*Doe v. Massachusetts Inst. of Tech.*,
46 F.4th 61 (1st Cir. 2022) .......... 58

*Doe v. Trustees of Columbia Univ. in the City of New York*,
2025 WL 2476304 (S.D.N.Y. Aug. 28, 2025) .......... 58

*Fielding v. Tollaksen*,
510 F.3d 175 (2d Cir. 2007) .......... 26

*Garcia v. Berkshire Life Ins. Co. of Am.*,
569 F.3d 1174 (10th Cir. 2009) .......... 54

*GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*,
No. 22-CV-5974 (JPC) (KHP), 2025 WL 722853
(S.D.N.Y. Mar. 5, 2025) .......... 50

*Hammond Packing Co. v. Arkansas*,
212 U.S. 322 (1909) .......... 24, 53, 55

*Hovey v. Elliot*,
167 U.S. 409 (1897) .......... 20, 24, 53

*In re Cnty. of Erie*,
473 F.3d 413 (2d Cir. 2007) ....................................................................46

*In re Fannie Mae Sec. Litig.*,
552 F.3d 814 (D.C. Cir. 2009)..................................................................50

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014) ...................................................................38

*Khan v. Yale Univ.*,
27 F.4th 805 (2d Cir. 2022), *certified question answered*,
347 Conn. 1, 295 A.3d 855 (2023) ................................................ 2, 3, 13, 47

*Khan v. Yale Univ.*,
85 F.4th 86 (2d Cir. 2023) ......................................................................2, 4

*Koon v. United States*,
518 U.S. 81 (1996).....................................................................................55

*LeSane v. Hall's Sec. Analyst, Inc.*,
239 F.3d 206 (2d Cir. 2001) ............................................................. 22, 29

*Lucas v. Miles*,
84 F.3d 532 (2d Cir. 1996) ............................................................... 29, 31

*Maness v. Meyers*,
419 U.S. 449 (1975)......................................................................... 26, 27, 32

*McDonald v. Head Crim. Ct. Supervisor Officer*,
850 F.2d 121 (2d Cir. 1988) ....................................................................27

*Metcalf v. Yale University*,
2017 WL 627423 (D. Conn. Feb. 15, 2017)..................................................58

*Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*,
55 F.3d 34 (2d Cir. 1995) ........................................................................56

*Mitchell v. Lyons Pro. Servs., Inc.*,
708 F.3d 463 (2d Cir. 2013) ............................................................. 21, 32

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
392 F.3d 520 (2d Cir. 2004) ....................................................................40

*NHL v. Metro. Hockey Club,*
427 U.S. 639 (1976)......................................................................... 27, 28

*Park v. Kim*,
91 F.4th 610 (2d Cir. 2024) .....................................................................20

*Phoceene Sous-Marine, S.A.*,
682 F.2d 806 ........................................................................................ 53, 54

*Regal Knitwear Co. v. NLRB*,
324 U.S. 9 (1945)........................................................................................38

*Residential Fences Corp. v. Rhino Blades, Inc.*,
No. 24-897-CV, 2025 WL 583323 (2d Cir. Feb. 24, 2025)..........................40

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980)......................................................................................43

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ..........................................................................21

*Rouviere v. DePuy Orthopaedics, Inc.*,
No. 1:18-CV-4814-GHW, 2025 WL 1664673 (S.D.N.Y. June 12,
2025), *aff'd*, No. 25-1542, 2025 WL 4671388
(2d Cir. Dec. 18, 2025) .................................................................................38

*S.E.C. v. Okin*,
137 F.2d 862 (2d Cir. 1943) .........................................................................38

*Sakon v. Andreo*,
119 F.3d 109 (2d Cir. 1997) .........................................................................56

*Schlaifer Nance & Co. v. Est. of Warhol*,
194 F.3d 323 (2d Cir. 1999) .........................................................................52

*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) ...........................................................................3

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)........................................................................................34

*Sierra Club v. U.S. Army Corps of Eng'rs*,
776 F.2d 383 (2d Cir. 1985) ................................................................. 33-34

*Societe Internationale v. Rogers*,
357 U.S. 197 (1958).................................................................................. 41, 42

*United States ex rel. Weiner v. Siemens AG*,
87 F.4th 157 (2d Cir. 2023) ..........................................................................20

*United States v. Gomez*,
877 F.3d 76 (2d Cir. 2017) ...........................................................................22

*United States v. Kovel*,
296 F.2d 918 (2d Cir. 1961) .................... 44, 45

*United States v. Mejia*,
655 F.3d 126 (2d Cir. 2011) .................... 46

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947) .................... 26

*Wilson v. Citigroup, N.A.*,
702 F.3d 720 (2d Cir. 2012) .................... 20

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
694 F.3d 155 (2d Cir. 2012) .................... 46

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020) .................... 43

**Statutes & Other Authorities:**

Fed. R. Civ. P. 26 through 37 .................... 28

Fed. R. Civ. P. 41(b) .................... 21, 29

Fed. R. Civ. P. 54(d) .................... 56

Fed. R. Civ. P. 72(a) .................... 26

FRAP 30 .................... 2

FRAP 30(b)(1) .................... 2

Rule 26(g) .................... 43

Rule 37 .................... *passim*

Rule 37(a)(4) .................... 19, 41

Rule 37(b) .................... 23

Rule 37(b)(2) .................... 23

Rule 41 .................... 19, 20, 27, 29

Rule 72 .................... 25

Rule 72(a) .................... 18, 25, 38

Rule 72.2 .................... 7, 8, 18, 25

## STATEMENT OF THE ISSUE

Did the district court abuse its discretion by granting Defendants' Third Motion for Judgment of Dismissal because Plaintiff's escalating pattern of litigation and discovery misconduct and "failure or refusal to play by the rules" has so corrupted the process that the "process [broke] down and the search for justice…[was] lost" [SPA-1]?

## PRELIMINARY STATEMENT

Plaintiff engaged in what the district court described as "egregious" conduct that was "part of an escalating pattern of Plaintiff thwarting his obligations in this litigation." Plaintiff's misconduct included repeated violations of court orders protecting Jane Doe's anonymity, misrepresentations to the district court, and discovery abuses, including concealing a litany of sexual misconduct allegations against him.

The district court repeatedly expressed concern that Plaintiff's misconduct was an abuse of the civil justice system. And, yet, expressing its "strong preference for cases to be adjudicated on their merits," the district court chose judicial restraint. Twice, it denied motions to dismiss premised on Plaintiff's misconduct and imposed lesser measures, including referring the case to a Magistrate Judge for intensive discovery management and ordering that cross-examination would be permitted at trial regarding Plaintiff's misconduct as probative of Plaintiff's credibility.

"[P]erhaps out of an ill-conceived well-spring of hope, the Court believed such a prospect would serve to deter Plaintiff from further misconduct."

It was only when that well-spring of hope ran dry because of the totality of Plaintiff's misconduct that the district court dismissed the case. It had no choice. Even Plaintiff "agree[d] that if there were evidence that Plaintiff violated a Court order…his case would be subject to dismissal." The district court did not abuse its discretion, and this Court should affirm.

## STATEMENT OF THE CASE

### A. Underlying facts and Plaintiff's claims[1]

The background of this case is well documented. *Khan v. Yale Univ.*, 27 F.4th 805, 809 (2d Cir. 2022) ("*Khan* I"), *certified question answered*, 347 Conn. 1, 295 A.3d 855 (2023); *Khan v. Yale Univ.*, 85 F.4th 86, 98, 102 (2d Cir. 2023) ("*Khan II*"). Briefly, Plaintiff contends he was wrongfully accused by Jane Doe ("Jane") of sexual misconduct and Yale expelled him based on the allegedly false accusation.

Plaintiff filed this action in December 2019. He asserted claims against Yale and twelve employees (collectively, "Yale Defendants"), and Jane. Plaintiff's

[1] Plaintiff violated FRAP 30(b)(1) by failing to serve a designation of the portions of the record to be included in his appendix and a statement of the issues presented for review. This Court has cautioned that noncompliance "may result in severe sanctions, including dismissal of the appeal." *Brown v. Artuz*, 283 F.3d 492, 502 (2d Cir. 2002). Because Plaintiff's appendix omits material portions of the record, Defendants submit a Supplemental Appendix under FRAP 30 and LR 30.1(g).

claims against Jane were based on allegedly defamatory statements she made in Yale's Title IX proceedings in 2015 and 2018, including to Yale's University Wide Committee ("UWC"). The claims against Yale Defendants alleged various due process violations and common law claims related to his expulsion from Yale.

### B. Plaintiff's request for anonymity for Jane

Plaintiff initially sought pseudonymity for Jane, acknowledging that this "case involve[d] matters of a highly sensitive and personal nature" and that anonymity was necessary to "protect" Jane from "public pillorying." (A-93, A-96.) Yale Defendants filed a memorandum applying the factors in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), in support of Jane's pseudonymity. (ECF 9.) Citing "the risk of harm" to Jane, the "inherently sensitive and personal nature" of this case, and Yale's "policies concerning confidentiality," the district court granted the motion. (SPA-33.)

### C. Jane's Rule 12(b)(6) motion to dismiss and the initial appeal

On January 7, 2021, the district court dismissed the claims against Jane, holding that her statements in the UWC proceedings were absolutely privileged. *Khan I*, 27 F.4th at 816. Plaintiff appealed. This Court certified questions of state law to the Connecticut Supreme Court, *id.* at 833, and received answers in *Khan v. Yale Univ.*, 347 Conn. 1, 295 A.3d 855 (2023). This Court reversed in part the lower

court's decision and remanded the claims against Jane that arose from her 2018 statements to the UWC. *Khan II*, 85 F.4th at 98, 102.

**D. Jane's first motion to dismiss**

Plaintiff posted extensively about this case on social media. On October 25, 2023, he threatened that "'Jane Doe' will soon have a name" accompanied by the hashtag "#CountdownToChristmas." (ECF 75-7.) On Christmas 2023, Plaintiff posted Jane's full name, twice. (ECF 75-8, 75-9.) One of Plaintiff's followers ("Blogger A") then posted both Jane's name and photo. (SPA-7.) Plaintiff's posts followed email threats to Jane where, for example, he conveyed a putative "settlement proposal" if she "admitted to falsely accusing [him] of rape," and threatened her about supposed "videos" lurking on the Internet. (ECF 75-6.)

Jane moved to dismiss Plaintiff's claims as a sanction for Plaintiff's harassing emails, posting her name, and other misconduct ("First Motion"). (ECF 74.) Initially, Plaintiff admitted that his posts disclosing Jane's name were "in violation of [the] Court [O]rder granting [the] motion [for Jane] to proceed pseudonymously." (ECF 77 at 1-2.)

Plaintiff argued that dismissal was unwarranted because he had not been warned that his conduct might result in dismissal and because Jane had not previously sought dismissal. (*Id.*, at 2.) He maintained that dismissals are usually reserved for "discovery violations" that delay a case and "disrupt [] the Court's

docket." (*Id.*, at 4.) He asserted that the "appropriate course" was a warning that future violations of a court order could result in dismissal. (*Id.*, at 8.)

The district court heard the First Motion in March 2024 and expressed its "concern" that "some of the things that [Plaintiff] has done [] give [the Court] pause. Because some of the tenor and tone of [Plaintiff's] posts feel less like his plan to have his rights vindicated as it is to extract retribution, and that is not the purpose or use of our courts…." (A-275:23-A-276:5.) The district court worried that Plaintiff's attempts to litigate this case on social media would "start[] to infect the entire process…." (A-281:12-19.) Addressing the district court, Plaintiff claimed that his "intention has never…been to intimidate or harass anyone," and that he had "complied" with Yale's UWC procedures. (A-288:1-6.)

Despite its concerns, the district court denied the First Motion, explaining that the prior order did not expressly preclude Plaintiff's posts. (A-286:17-22.) To remove ambiguity, it issued a new order that stated: "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere" (the "Court's Order"). (ECF 91.)

### E. Motions regarding Jane's anonymity, the Magistrate Judge's Order, and the second motions to dismiss

On April 5, 2024, Jane filed a Motion to Continue her Anonymity and the Court's Order prohibiting Plaintiff from identifying her. (A-111.) Jane explained the danger Plaintiff's disclosures of her name had caused, including having her name

and personal information posted on an extremist website that used a modified swastika as its logo and decried "feminists" as a threat. (*Id.*) Plaintiff did not oppose Jane's motion, but filed a separate motion to "vacate" Jane's anonymity. (A-103.)

The district court referred these motions to the Magistrate Judge. (ECF 110.) On June 19, 2024, the Magistrate Judge denied Plaintiff's Motion to Vacate Jane's Anonymity and granted Jane's Motion to Continue Anonymity. (SPA-35.) The Magistrate Judge found that Plaintiff's disclosure of Jane's name had "at a minimum, undermine[d] the spirit of the anonymity order" and "giving weight to th[e] factor in light of Plaintiff's potentially vindictive disclosure of Jane Doe's identity would unfairly reward Plaintiff for efforts to litigate this case on social media and inflict harm on Jane Doe…." (SPA-41-SPA-42 n.4.)

The Magistrate Judge issued the following:

> I [] **ORDER** that Plaintiff directly <u>or indirectly</u> (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.

(the "Magistrate Judge's Order") (SPA-49) (emphasis added); collectively, with the Court's Order, referred to as "Anonymity Orders".)

Plaintiff made a series of social media posts in the hours following the Magistrate Judge's Order. (ECF 123-2.) As the district court later found, these posts were intended to instigate Plaintiff's followers to post Jane's name, in violation of

the Magistrate Judge's Order. (SPA-70.) Defendants alerted the Magistrate Judge to Plaintiff's social media activity when the Parties appeared before her. (SA-6:1-20.) The Magistrate Judge admonished Plaintiff:

> If you want to now kind of undermine or change your direction as to what you said to [the Court], I would just caution you because I think [the Court] has been quite clear.…[M]y order is quite clear that any violation of my order could lead to sanctions, which could include dismissal of your claims against Jane Doe and potentially Yale.

(SA-8:11-25; *see also* SA-10:19-SA-11:10 (again warning Plaintiff).)

In June 2024, Defendants filed Motions to Dismiss (collectively, "Second Motion") on the ground that Plaintiff had violated Anonymity Orders by indirectly disseminating Jane's name, and argued dismissal was warranted due to Plaintiff's misconduct. (ECF 123, 130.)

Plaintiff opposed Defendants' Second Motion and filed a Rule 72.2 Objection to the Magistrate Judge's Order. In both filings, Plaintiff argued, for the first time, that the Magistrate Judge's Order was an impermissible "prior restraint." (A-124; A-152.) Although he acknowledged he had been warned further misconduct might result in dismissal, Plaintiff argued that dismissal was reserved for "matters of procedure" that caused "prejudice or delay." (A-168.)

In their Reply, Defendants argued that Plaintiff must comply with orders, even if he believes them to be improper, which they were not. (ECF 166, at 2.) Defendants also filed an Opposition to Plaintiff's Rule 72.2 Objection, stating that

Plaintiff had not filed a brief in response to Jane's First Motion and that Plaintiff could not ambush the Magistrate Judge by raising arguments of "prior restraint" for the first time in a Rule 72.2 Objection. (ECF 168, at 7-8.)

On July 25, 2024, the district court heard oral argument on the Second Motion and found that Plaintiff had previously lied: "You just said that I should take your client at his word. Well, your client sat in that chair three months ago and was dishonest with me."[2] (SA-88:11-13.) The district court also noted that Plaintiff's claims about the propriety of any orders were irrelevant because parties must comply with orders:

> If we disagree with that order, we can seek reconsideration, we can appeal it, any number of things to challenge it, but one of the things we can't do is ignore it on the theory that it is somehow legally incorrect.

(SA-46:12–SA-47:3; *see also* SA-48:25-SA-49:10 (addressing First Amendment arguments)).

---

[2] Plaintiff made three dishonest statements when addressing the district court during the hearing on the First Motion. First, he claimed that he had never intended "to intimidate or harass anyone," including Jane, but discovery revealed an email in which Plaintiff wrote about harassing Jane to get her to "break." (A-288:1-5; ECF 114-4.) Second, Plaintiff claimed that he "complied" with Yale's Title IX policy even though he now admits he violated it by secretly recording proceedings. (A-288:18-25; Opening Br. 14 ("Yale's procedures prohibited any record of the UWC hearing….[Plaintiff] made one himself, telling the panel otherwise….")). Third, Plaintiff claimed he "misunderstood" the district court's original anonymity order when he posted Jane's name, but Jane submitted videos of Plaintiff acknowledging that the order precluded him from publicly disseminating Jane's name. (A-288:7-12; ECF 79 at 2.) It is unclear whether the district court's dishonesty finding related to all or a subset of those statements.

The district court also expressed concerns about Plaintiff's "pattern of conduct." It observed that Plaintiff appeared to be "misusing and arguably abusing and manipulating our civil justice system to his own ends and to advance an agenda that has nothing to do with this civil litigation or the vindication of the claims…." (SA-49:4-10; *see also* SA-93:2-14; SA-101:6-10.)

In December 2024, at the district court's direction, the Magistrate Judge began holding regular discovery status conferences and requiring joint status reports to ensure that discovery closed by April 15, 2025, the firm date set by the Scheduling Order. (ECF 68.) Between December 2024 and March 2025, the Magistrate Judge held six discovery conferences[3] and required the Parties to submit six joint status reports.[4] The Magistrate Judge repeatedly reminded the parties that they had "to wrap up [their] discovery" and conduct depositions before the April 15, 2025 deadline. (ECF 409 at 18; *see also* ECF 408 at 11.)

On January 29, 2025, the district court denied the Second Motion. (SPA-56.) It found that "Plaintiff knew that his [followers] could (and likely would)" reveal Jane's identity and that Plaintiff's argument that his "conduct did not actually violate [the Magistrate Judge's Order was] utterly specious." (SPA-69.) The district court

---

[3] *See* ECF 240, 256, 263, 272, 286, 296.

[4] *See* ECF 252, 255, 261, 270, 284, 288.

concluded that "Plaintiff's conduct [was] egregious." Nevertheless, the district court declined to dismiss the case in part because the "parties have been working closely with [the Magistrate Judge] to complete discovery and the case is proceeding towards an adjudication on the merits, whether by motion practice or a trial." (SPA-71; SPA-68.) Only days later, Plaintiff repeatedly posted links to an interview he had given where he made statements that encouraged others to publicize Jane's name. (SPA-15; ECF 333-3.) They did. (SPA-15; ECF 333-5.)

### F. Plaintiff's additional misconduct

Plaintiff's litigation misconduct was not limited to his refusal to abide by the Anonymity Orders. It included several troubling episodes that Defendants would later bring to the district court's attention in a Third Motion to Dismiss ("Third Motion"). (A-202.)

#### 1. Plaintiff offered knowingly false responses to an interrogatory that sought disclosure of other complaints of sexual misconduct.

In response to an interrogatory issued by Jane, Plaintiff identified only Jane and Peter Roe as individuals who had asserted that he engaged in sexual misconduct with them. (SA-138.) Jane gave Plaintiff an opportunity to correct his answer, sending a discovery deficiency letter in August 2024 linking to an interview where Plaintiff said "there were about twenty different complaints against him" and demanding that Plaintiff identify any other accusers. (SPA-18.) After consulting Plaintiff, Plaintiff's counsel confirmed the original answer. (Opening Br. 13.)

In January 2025, the University produced documents showing that Plaintiff failed to disclose a litany of sexual misconduct allegations against him. Examples include:

- Sally Roe 2 reported that Plaintiff grabbed her and forced himself on her. A Yale Dean met with Plaintiff, who "realized that his behavior was not appropriate" and agreed to apologize. (ECF 333-8.)

- Sally Roe 1 reported that Plaintiff grabbed her, forcefully started making out with her, causing her ear to bleed, and tried to take her clothes off. Plaintiff met with the Chair of the UWC and agreed to receive training. (ECF 333-9.)

- Sally Roe 4 reported that Plaintiff pushed her against a wall, tried to hold her hand, and questioned her about her virginity and romantic life. Plaintiff insisted on taking her to his room, where he offered her "pills." (ECF 333-10.) Plaintiff was aware of this allegation because he later discussed it (and others) with a mental health provider. (ECF 333-13.)

- Sally Roe 5 reported that Plaintiff attempted to grope her by putting his hand under her clothes and had "kissed her very suddenly." Plaintiff also discussed this allegation with the mental health provider. (ECF 333-11.)

Plaintiff claimed in his Opposition to the Third Motion ("Opposition") that "[i]t is possible…to block out incidents of past trauma, such as other false accusations…." (A-251.) The district court ordered Plaintiff to testify because it was so "dissatisfied with" that claim and others. (SPA-18.) Plaintiff "testified that he interpreted the [i]nterrogatory as only including circumstances where he had been charged criminally." (*Id.)* The district court found that assertion baseless. The interrogatory asked Plaintiff to "identify all individuals that…alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them." (SA-138.)

Jane's deficiency letter confirmed that the interrogatory was not limited to allegations that led to criminal charges. (SPA-18.)

**2. Plaintiff concealed damaging communications under false privilege claims.**

Plaintiff claimed that hundreds of communications with "Peter Roe," a former friend who would later accuse Plaintiff of assault, were privileged under the attorney-client privilege or work-product doctrine because Roe had served as a so-called "volunteer paralegal" for one of Plaintiff's attorneys. (SPA–24.) Plaintiff first withheld communications with Roe in May 2024. In March 2025, he produced a new privilege log containing 426 additional entries, more than 140 of which did not identify all participants. After Yale identified the deficiency, Plaintiff submitted a revised privilege log on April 18 listing Roe on at least 243 entries dated between December 2017 and June 2018. (SA-126-SA-127, ¶4–10.) After multiple conferences, Yale moved to compel their production on May 14. (SA-123.) On June 17, one day before his opposition to that motion was due, Plaintiff produced a subset of the Roe communications. (ECF 371-1, at 2.)

Among the communications that had been withheld as privileged were discussions between Plaintiff and Roe about a planned sexual encounter with a woman named "Sophie." Sophie would later accuse Plaintiff of assault during this encounter. In his communications with Roe, Plaintiff stated Sophie was "getting con non con" (which he explained meant non-consensual). (SA-161-SA-162.) In

other communications, Plaintiff wrote, "I do abuse sluts"; "I want to choke them," referring to "[b]londe bimbos"; "[T]hey should sell rape fantasy books…[w]ith stories from reality"; and "If a faggy girl like that looked at me…I'd pounce on her." (SA-173-SA-174; ECF 371-7.) Plaintiff also withheld communications concerning other sexual fantasies, finances, taxes, investing, and other personal matters, none of which constituted legal advice. (SPA-23.) Plaintiff has continued to withhold 22 Roe communications identified on his privilege log. (ECF 360.) He also continues to claim he had done "nothing improper" and his privilege "position was substantially justified." (A-255.)

**3. Plaintiff claimed no transcript of the UWC proceedings existed when in fact he had secretly recorded the proceedings.**

In two sets of discovery requests directed to Plaintiff, Yale Defendants requested copies of any audio or videotape recordings. (ECF 238, at 2.) In May 2024, Plaintiff responded "See enclosed production," but produced nothing. In July 2024, Plaintiff disclosed the existence of a recording of the UWC proceedings on a privilege log. Defendants received a redacted transcript (but no recording) several months later. Defendants had no knowledge of the existence of the recording prior to July 2024, as Plaintiff had confirmed during the UWC proceeding that neither he nor his lawyer were recording the proceedings. (SPA-26-SPA27.) Defendants discovered the secret recording well after Plaintiff had told the Connecticut Supreme Court that such a recording did not exist. *Khan*, 347 Conn. at 46. ("In the present

case, Khan's ability to appeal was severely constrained by the absence of any transcript or recording of statements, testimony, or questions raised during the UWC hearing.")

**4. Plaintiff lied to the Magistrate Judge about advice he had received from his purported immigration counsel.**

In connection with a request from the Department of Homeland Security for transcripts from Plaintiff's criminal trial, Plaintiff sought relief from the Magistrate Judge's Order. He represented that he had been advised by his "retained immigration counsel" to submit certain documents. When directed by the Magistrate Judge to bring the attorney who had represented him at the immigration hearing, Plaintiff presented Attorney Formica, who stated he had not represented Plaintiff in years. Attorney Formica denied that he had given the advice claimed by Plaintiff. Plaintiff then claimed that the advice had been given by a different attorney in Attorney Formica's office. Plaintiff, however, had appeared *pro se* in the immigration proceeding. (SPA-24-SPA25.)

**5. Plaintiff produced thousands of unreviewed documents just days before depositions.**

In January, 2025, the Magistrate Judge directed the parties to reserve six dates in March for depositions and ordered Plaintiff to produce his remaining responsive documents and privilege log by February 21. (ECF 257, 262.) On February 18, Plaintiff joined a motion seeking one additional week to complete his production.

Defendants agreed, provided their expert disclosure deadline was extended to three days after Plaintiff's production so that their "experts [could] review [Plaintiff's] additional documents." (SA-114.) Plaintiff then produced 70,305 pages, or about 18,000 documents, more than five times the documents that had been produced up to that time. (SA-133, ¶4; A-323.) This document dump forced postponement of the scheduled depositions and further discovery extensions.[5]

### G. Third motion to dismiss and subsequent misconduct

On May 20, 2025, Defendants jointly filed their Third Motion to Dismiss ("Third Motion") based on Plaintiff's latest incitement of his followers and the totality of his discovery misconduct. (A-202.) A month later, on June 16, 2025, Plaintiff posted about the case and announced that "operation dragonfire" would begin soon. (ECF 371-1 at 9.) Defendants notified the district court about this post. The district court found that the post amounted to a "thinly veiled threat to publicly identify [] Jane" in violation of its Orders and stayed discovery pending a ruling on the Third Motion. (SPA-73.)

[5] Plaintiff repeatedly claims that Yale produced only "400 pages in four years." (Opening Br. 2, 12, 40, 47.) In fact, Yale has produced thousands of documents in this litigation. (ECF 261, at 3.) Neither party had made significant document productions before the case was stayed in February 2021, and Plaintiff himself did not begin responding to Yale's discovery requests at all until May 17, 2024. (ECF 238, at 2.)

Plaintiff filed his Opposition. He did not submit any affidavits or evidence. (A-240-A-262.) And he conceded that dismissal was an appropriate remedy if the district court concluded that he had violated a court order, writing "[w]e agree that if there were evidence that Plaintiff violated a Court [O]rder, let alone intentionally violated a Court [O]rder, his case would be subject to dismissal." (A-258.)

Defendants supplemented their Third Motion to include Plaintiff's misconduct in withholding communications with Roe. As the district court later found, Plaintiff had obfuscated the true nature of the communications on his privilege log with generic, false descriptions like "post-trial logistics" and "media and related info" to hide their true content, including Plaintiff's "rape fantasies" and contemporaneous communications arranging a sexual encounter with a woman who would later accuse Plaintiff of sexual assault. (A-263; ECF 371-1.)

When scheduling the hearing on the Third Motion for December 22, 2025, the district court advised that it intended "to question Plaintiff under oath," "[s]ubject to any privileges he [might] wish to assert." (ECF 385.) Plaintiff provided testimony that the district court later found to be uncredible.

In the March 27, 2026 Memorandum of Decision, the district court reviewed Plaintiff's extensive history of misconduct, including Plaintiff's latest misconduct concerning the untruthful interrogatory responses, his false claim about advice from his immigration attorney, the "dump" of irrelevant documents, the false claims

regarding the recording of the UWC proceedings, and his attempts to "conceal from the fact finder, probative and relevant evidence" of his "damning" communications with Roe on a privilege log with false, misleading descriptions, and Plaintiff's continued, unabashed argument that he is free to incite his followers to post Jane's name without violating the Anonymity Orders, "the same specious argument that [the Court] had expressly rejected." (SPA-11-SPA-27.)

The district court found that Plaintiff's Opposition did not attach any "documentary or testimonial evidence" nor "confront the growing mountain of evidence that Plaintiff simply cannot be trusted to act in good faith, to meet his discovery obligations honestly, and to abide by the Court's orders." (SPA-12-SPA-13.) The district court explained that it had required Plaintiff to testify because it found his Opposition so lacking. When Plaintiff testified, the district court did not find him credible. (SPA-18-SPA-19.)

The district court held that Plaintiff's cumulative misconduct warranted dismissal. The district court held that "there [was] no fair, just or reasonable path forward for the defendants," and that "there is no question that Plaintiff ha[d] willfully ignored the [district court's] orders" despite multiple warnings. (SPA-29-SPA-30.) The district court found that the "process [had been] so corrupted by [Plaintiff's] failure or refusal to play by the rules" that "the process [had broken]

down and the search for justice, whatever form it might have taken, [had been] lost." (SPA-1.) The district court concluded:

> The Court can discern no lesser sanction to address the repeated and escalating misconduct by Plaintiff in this case. He has been fairly warned, warnings which he did not heed. Seeing no viable path forward for a fair and just adjudication of the claims and defenses in this case, the Motion to Dismiss is GRANTED.

(SPA-30-SPA-31.)

## SUMMARY OF THE ARGUMENT

1. Plaintiff waived several arguments he raises on appeal because he failed to raise them below. He argues that Rule 37 is the only vehicle for dismissing a complaint for a false interrogatory response, but his Opposition makes no such argument. Plaintiff's novel due process argument was not raised below, where the phrase "due process" appeared exactly once in his Opposition, with no citations. In fact, Plaintiff conceded below that dismissal was warranted if he violated a court order. Plaintiff did not raise below his argument that the district court was required to resolve his Rule 72.2 objection before issuing terminating sanctions and, in any event, Rule 72(a) orders are binding when issued.

2. Plaintiff was required to abide by the Anonymity Orders, even if he believed they were subject to reversal. Therefore, this Court need not resolve the validity of those orders to affirm the judgment. In any event, the anonymity orders were an appropriate exercise of the district court's authority to manage litigation. The district

court was correct that Plaintiff violated those orders. This alone is sufficient to affirm the judgment because Plaintiff conceded below that dismissal was warranted if he violated the court's orders.

3. The district court had authority to dismiss the action under Rules 37 and 41 and its inherent powers, based on the totality of Plaintiff's egregious misconduct, including violations of the Anonymity Orders, false interrogatory response, multiple instances of dishonesty to the courts, false claims of privilege, withholding of relevant and damning materials, and a "dump" of largely irrelevant documents. The district court weighed and applied the relevant factors and properly held that dismissal was warranted. Plaintiff admits that dismissal is appropriate for "sustained defiance after unmistakable warnings" under Rule 41, and he conceded below that the case should be dismissed if he violated the district court's orders. The district court showed repeated judicial restraint before dismissing the case.

4. The district court appropriately considered Plaintiff's extensive discovery misconduct when evaluating dismissal. This Court should not re-weigh credibility determinations the district court made after hearing from Plaintiff regarding his discovery misconduct. Plaintiff is also wrong that Rule 37 is the exclusive remedy for discovery abuses. Regardless, Plaintiff's dishonest interrogatory response violated the Scheduling Order to "substantially comply" with written discovery by a date certain because a false response is a failure to respond under Rule 37(a)(4).

The district court properly considered the totality of misconduct warranting dismissal under Rules 37 and 41 and the court's inherent authority.

5. Dismissal did not violate due process. Plaintiff's reliance on caselaw derived from *Hovey v. Elliot*, 167 U.S. 409 (1897), is misplaced because his deceptions are directly related to the controversy and bore on the merits of his claims. And, contrary to Plaintiff's assertions that nothing was hidden and that he produced everything, he did not produce all of the Roe communications.

6. Plaintiff's discovery abuses affected the whole case and his violations of the Anonymity Orders harmed all Defendants' interests in maintaining the confidentiality of Yale's sexual misconduct proceedings. The district court properly dismissed the entire action.

## **STANDARD OF REVIEW**

The Second Circuit reviews a district court's imposition of sanctions under Rules 37 and 41 and under its inherent authority for abuse of discretion. *Park v. Kim*, 91 F.4th 610, 612 (2d Cir. 2024); *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 723 (2d Cir. 2012). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." (citations omitted.) *United States ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 161 (2d Cir. 2023).

The district court also "has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for...disobeying the court's orders." (quotations omitted). *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013). A court may exercise its inherent power to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and has "the ability to fashion an appropriate sanction for conduct which abuses the judicial process.... [O]utright dismissal of a lawsuit...is within the court's discretion." (citations omitted.) *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023).

"Whether a litigant was at fault or acted willfully or in bad faith are questions of fact, and we review the District Court's determinations for clear error." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). Evaluating a court's exercise of discretion under Rule 37, this Court considers several factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of...noncompliance." *Id.*

For dismissal under Rule 41(b) for failure to comply with the Federal Rules of Civil Procedure or a court order, a court considers: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further

delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard...and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." (citations omitted.) *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).

## ARGUMENT

### I. Plaintiff has waived several of the arguments he raises on appeal by failing to present them to the district court.

Plaintiff did not raise several of his arguments on appeal in response to Defendants' Third Motion. This Court should hold that these arguments are waived.

This Court generally does not consider arguments that were not properly raised below.[6] "It is well settled that arguments not [properly] presented to the district court are considered waived [or forfeited] and generally will not be considered for the first time on appeal." *United States v. Gomez*, 877 F.3d 76, 94-95 (2d Cir. 2017). *E.g.*, *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 327–28 (2d Cir. 2002). This Court has generally declined to exercise discretion "where the forfeited argument was available to the parties below and they proffer no reason for their failure to raise the arguments below." *Gomez*, 877 F.3d at 95.

[6] This Court may consider arguments not properly raised "(1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding." *Caiola*, 295 F.3d at 327. Neither exception applies here.

### A. Plaintiff has waived his argument that terminating sanctions are unavailable to remedy discovery abuses absent a violation of a discovery order.

On appeal, Plaintiff argues that the district court could not issue terminating sanctions in response to Plaintiff's submission of a false interrogatory response because "there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)." (Opening Br. 32.) Plaintiff also argues that Rule 37 is the only vehicle for dismissing a complaint for "noncompliance with discovery obligations." (*Id.*) However, in his Opposition, Plaintiff never argued that the absence of a discovery order precluded dismissal of the complaint. Nor did he argue that Rule 37 is the exclusive vehicle for issuing terminating sanctions to remedy discovery abuses, or cite to any of the case law regarding Rule 37(b)'s procedural requirements. Instead, his argument regarding the interrogatory response was, in essence, that "Plaintiff did not lie." (A-250-A-251.) While Plaintiff broadly claimed that he "ha[d] not violated th[e] Court's orders," this was insufficient to give the district court notice of the specific, technical arguments he now raises regarding Rule 37's requirements.

Because Plaintiff never presented these arguments to the district court, this Court should hold that they are waived and decline to consider them.

**B. Plaintiff has waived his due process arguments.**

On appeal, Plaintiff argues at length that the district court's dismissal violated due process because it was a "punitive" sanction and because his misconduct did not bear on the merits of his claims. (Opening Br. 50-55.) Plaintiff's Opposition raised none of the detailed arguments he now raises and cited no due process case law. Its only reference to due process was a single sentence—with no citations—that read "[d]ismissing this case would not only be an abuse of discretion, but a violation of due process." (A-250.) However, read in context, Plaintiff's due process argument below appears to have been only that it would violate due process to dismiss the case absent a finding that he had violated the district court's order regarding anonymity. (*Id.*) Indeed, Plaintiff conceded explicitly that dismissal would be warranted if the district court concluded that he had violated its orders, writing, "We agree that if there were evidence that Plaintiff violated a Court [O]rder, let alone intentionally violated a Court [O]rder, his case would be subject to dismissal." (A-258.)

Because Plaintiff did not raise any of the specific due process arguments he now raises, including his detailed arguments regarding *Hovey v. Elliott* and *Hammond Packing Co. v. Arkansas*, 212 U.S. 211 (1909), and because he conceded that dismissal was an appropriate remedy for violating the district court's orders, this Court should hold that his due process arguments are waived.

### C. Plaintiff waived his argument that the district court erred by enforcing compliance with the Magistrate Judge's Order before ruling on his Rule 72(a) objections.

Plaintiff appears to argue on appeal that the district court was required to resolve his Rule 72(a) objections to the Magistrate Judge's Order prior to issuing terminating sanctions. However, he did not raise this argument below. His Opposition did not cite Rule 72, did not alert the district court to any pending objections, and did not suggest that a ruling on his Rule 72 objections would be required before a ruling on the Third Motion. Instead, his primary argument below was that he had not violated the order—not that it was invalid or that he was not required to comply while the objection was pending.

Even if the argument were not waived, Plaintiff's contention that the district court erred by not ruling on his Rule 72.2 Objection is meritless. Plaintiff's Rule 72.2 Objection was improper because he did not oppose Jane's underlying motion. He therefore waived the arguments in his Rule 72.2 Objection. *E.g.*, *Borden v. Sec'y of Health & Hum. Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the [M]agistrate, 'not only their "best shot," but all of their shots.'").

Next, as Plaintiff's Opening Brief recognizes, the district court impliedly adopted the Magistrate Judge's Order and rejected any pending objections when it entered judgment. (Opening Br. 26.) "[W]hen a district judge enters an order

disposing of a case without expressly ruling on a pending objection filed pursuant to Federal Rule of Civil Procedure 72(a), the judgment entered pursuant to that order functions as a final order overruling the objection." *Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

## II. Plaintiff's arguments regarding the merits of the Anonymity Orders are not relevant because even if the orders were subject to reversal, he was still required to comply with them.

Plaintiff argues at length that the Anonymity Orders were constitutionally infirm or otherwise subject to reversal. However, whether those orders were correct is not relevant to whether the district court acted within its authority in dismissing the case because it is a "basic proposition that all orders…of [C]ourts must be complied with." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "Persons who make private determinations of the law and refuse to obey an order generally risk [sanctions] even if the order is ultimately ruled incorrect." *Id.* "The orderly and expeditious administration of justice" depends on this rule. *Id.,* at 459. Thus, Plaintiff was required to adhere to the Anonymity Orders even if they were incorrect (they were not), unless and until they were overturned. *E.g.*, *id.* at 458; *See also*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.").

Contrary to Plaintiff's contention, *Maness* does not excuse compliance. (Opening Br. 28.) There, the Supreme Court observed that a witness ordered to reveal information during trial has a choice between compliance prior to review of the order and resistance to the order with the possibility of an adjudication of contempt. Citing *Maness*, this Court has explained that "all litigants…have an obligation to comply with court orders. When they flout that obligation they…must suffer the consequences of their actions." *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). Indeed, Plaintiff recognized this basic principle below when he represented to the district court that he "agree[d] that if there were evidence that Plaintiff violated a Court order,…his case would be subject to dismissal." (A-258.)

As a result, this Court need not reach Plaintiff's arguments regarding the merits of the Anonymity Orders if it concludes that the district court did not abuse its discretion in dismissing the case based on the non-compliance and misconduct the district court cited.

## III. The district court did not abuse its discretion when it dismissed Plaintiff's action pursuant to Rules 37 and 41 and/or its inherent authority.

As Plaintiff's briefing below recognized, the sanction of dismissal "is appropriate in the event of 'flagrant bad faith,' *NHL v. Metro. Hockey Club,* 427 U.S. 639, 640 (1976), or where 'a party abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of

the process." (A-241.) That is precisely the basis on which the district court dismissed Plaintiff's action, and its decision was amply supported by the law and its factual findings.

In its decision, the district court cited Rules 26 through 37 of the Federal Rules of Civil Procedure for the proposition that "parties are obligated to adhere to their disclosure obligations of both the helpful and unhelpful." (SPA-1.) It also cited its inherent powers. It observed that "where that process is so corrupted by one party's failure or refusal to play by the rules, the process breaks down and the search for justice, whatever form it might have taken, is lost. Such is this case." (*Id.*) The district court considered "five buckets" of misconduct in dismissing the action. These included

- Plaintiff's violation of the Anonymity Orders by encouraging others to identify Jane;

- Plaintiff's false interrogatory response;

- Plaintiff's withholding of "damning" documents under a "specious" assertion of attorney-client privilege and the preparation of a highly misleading privilege log that suggested "an intent to conceal…probative and relevant evidence";

- Multiple instances of dishonesty before the district court and appellate courts, including failing to disclose that he possessed a recording of the UWC hearing to Defendants, the district court, this Court, and the Connecticut Supreme Court; and,

- Plaintiff's "document dump" of over 70,000 pages of largely irrelevant materials.

(SPA-13-SPA-27.)

In exercising its discretion, the district court appropriately weighed the very factors Plaintiff cites in his Opening Brief, (Opening Br. 44-49), including duration, notice, prejudice, the balance between docket management and the right to be heard, and the adequacy of lesser sanctions.[7]

### A. Duration and notice

Plaintiff admits that Rule 41 dismissals are appropriate for "sustained defiance after unmistakable warnings." (Opening Br. 45.) The district court described persistent misconduct by Plaintiff, (SPA-3-SPA-8, SPA-13-SPA-27), and its repeated warnings that his misconduct could have consequences, including dismissal (SPA-29). The district court observed that "Plaintiff ha[d] willfully ignored the Court's orders – despite multiple warnings – and engaged in escalating misconduct for a prolonged period." (SPA-30.)

### B. Prejudice

The district court recognized that Defendants were prejudiced by Plaintiff's misconduct, observing that Plaintiff had "so corrupted" the process by his failure or refusal "to play by the rules," that "the search for justice…is lost." (SPA-1.)

---

[7] The district court was not required to separately discuss each factor. *See LeSane*, 239 F.3d at 209 (Second Circuit does not require discussion of Rule 41(b) factors on the record); *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (same).

The district court found that Plaintiff's "inaccurate and false sworn Interrogatory responses reveal that Plaintiff will withhold damaging information in discovery *so as to increase the likelihood of his success on the merits*." (SPA-28; emphasis added.) It was "hard to overstate" Plaintiff's misconduct in attempting to conceal his communications with Peter Roe, concluding that "Defendants reasonably assert that the entirety of the privilege log is now subject to challenge – *a costly, time-consuming and resource draining undertaking* – all occasioned because Plaintiff has demonstrated that he cannot be relied upon to simply tell the truth." (SPA-28-SPA-29, emphasis added.)

Plaintiff does not address his indirect publication of Jane's name in his discussion of prejudice. The district court found it "shocking" that Plaintiff used "precisely the same method found by this Court to be egregious and intentional" to again publicize Jane's name and concluded that he would not be deterred. (SPA-28.) This conduct plainly prejudiced Defendants by causing the very harms the anonymity orders sought to prevent. Moreover, Plaintiff's actions caused significant delay in a case filed in 2019 and based on events that are already eleven years old.

**C. Balance between docket management and right to be heard**

The district court's attempt to afford Plaintiff his day in court is evident in its denials of the first two motions to dismiss. After hearing the First Motion, the district court entered an order prohibiting Plaintiff from identifying Jane in any social media

communication or elsewhere. (SPA-34.) In denying the Second Motion, the district court concluded that it could have dismissed the action, but nevertheless denied the motion hoping that Plaintiff's misconduct would cease knowing that his misconduct was fodder for cross-examination. (SPA-70-SPA-71.) Considering this history of restraint, the fourth factor weighs heavily in favor of dismissal.

Plaintiff's reliance on *Lucas v. Miles*, 84 F.3d 532, is misplaced. (Opening Br. 47.) There, the district court dismissed the *pro se* plaintiff's supplemental complaint because it was filed after the expiration of the deadline. This Court concluded that the late filing did not further congest the docket since the initial complaint had been pending for nearly 22 months.

*Lucas* is not applicable here. Since remand from this Court, this action has required overwhelming court intervention due to Plaintiff's misconduct. (A-11-A-52.) The district court ruled on three motions to dismiss, and the parties were referred to the Magistrate Judge in May 2024 for "pretrial management, discovery oversight, and scheduling," based in large part on Plaintiff's conduct. (ECF 68, 74-75, 110, 123, 130; A-202; SPA-1.) The Magistrate Judge held numerous conferences with the parties to prepare this case for trial. (ECF 120, 174, 192, 240, 256, 263, 272, 286, 296, 306, 330.) Plaintiff's misconduct plainly congested the district court's docket.

## D. Adequacy of lesser sanctions

Plaintiff's assertion that the district court did not consider any lesser sanctions is incorrect. (Opening Br. 48-49) The last four pages of the decision discuss the rationale behind the dismissal. (SPA-27-SPA-31.) The district court made factual findings showing that no sanction short of dismissal was appropriate. After discussing Plaintiff's multiple instances of misconduct, the district court found that it could "discern no lesser sanction to address the repeated and escalating misconduct by Plaintiff in this case. He has been fairly warned, warnings which he did not heed." (SPA-30-SPA-31.) That finding must be read in the context of the district court's prior imposition of lesser measures intended to deter substantially similar misconduct.

Plaintiff cites *Mitchell*, 708 F.3d, in arguing that the district court failed to consider lesser sanctions. (Opening Br. 48-49.) *Mitchell* is distinguishable. There, it was misconduct on the part of the plaintiffs' counsel, rather than the plaintiffs themselves, that led to dismissal. *Id.* at 466-67. This Court questioned whether alternative sanctions not involving serious harm to counsel's clients were adequately considered, noting that the district court made no findings as to whether the delays leading to dismissal were solely a result of counsel's actions or his client's. *Id.* at 468-69. Here, by contrast, the district court found that Plaintiff himself was responsible for much of the misconduct, and that his misconduct bore directly on his

candor. This included findings that Plaintiff made dishonest statements to the district court, (SPA-5 n. 7; SPA-28), and likely falsely led multiple courts, including this Court, to believe that no recording of the UWC proceedings existed (SPA-26-SPA-27). The district court reasonably concluded that no sanction short of dismissal would be effective.

## IV. The district court was entitled to rely on each of the instances of misconduct it cited in dismissing the complaint.

Rather than focusing on the totality of misconduct the district court cited, Plaintiff's arguments largely treat the misconduct piecemeal. Many of his arguments are waived. *See*, *infra*, Section I. Others invite this Court to improperly evaluate the district court's factfinding and credibility determinations. All are without merit.

### A. The district court properly found that Plaintiff had violated its Anonymity Orders.

For the reasons already discussed, Plaintiff's arguments regarding the merits of the Anonymity Orders are irrelevant: He was bound to comply with them. In any event, Plaintiff's arguments regarding the validity of those orders are wrong, and the district court properly concluded that he violated them.

#### 1. The Anonymity Orders were appropriate.

As Plaintiff acknowledged below, "there is an inherent authority for courts to regulate the conduct of trial participants." (A-282:24-25.) Courts have "the power to regulate the conduct of the parties before the court." *Sierra Club v. U.S. Army*

*Corps of Eng'rs*, 776 F.2d 383, 389–90 (2d Cir. 1985). That power includes the right to restrict speech. First Amendment rights "may be subordinated to other interests that arise in" the court's process. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984). Indeed, "[i]n the conduct of a case, a court often finds it necessary to restrict the free expression of participants." *Id.* As this Court has observed, "it is the obligation of the federal courts to ensure that a defendant receive a fair trial by an impartial jury." *Application of Dow Jones*, 842 F.2d 603 (2d Cir. 1988). The Second Circuit has distinguished between orders restricting speech by court participants and orders restricting speech by others, such as the media. *Id.* at 608-09.

The Anonymity Orders are appropriate under this well-established precedent. The orders only prohibited Plaintiff from identifying Jane, not from talking about the case, and were therefore tailored to the specific harm the court sought to prevent. The district court's concerns were well-founded because Plaintiff's prior posts had identified Jane as the "Jane Doe" in this case. (ECF 74, at 62.) Moreover, Plaintiff himself initially represented that anonymity was necessary "to protect [Jane] from a [] public pillorying." (A-96.) The district court acted well within its discretion to protect Jane's anonymity by prohibiting Plaintiff from identifying her.

More fundamentally, Plaintiff's own statements established that Plaintiff was disseminating Jane's name to harass Jane so that she would cave to his demand that she "admit[] to falsely accusing [him] of rape." (ECF 74 at 17.) Plaintiff wrote:

> I will do everything I can to get [Jane] to break…. I will make absolutely sure that her name goes into news articles. And I will spend thousands of dollars to keep those articles circulating on the internet for years to come. Not only her name, but I will ensure that her mother in [Jane's home state] finds out as well, via mail. And, of course, I will take her to trial as well…after she has had 7 hours of grilling by my attorneys that are legally allowed to defame her in a deposition.

(ECF 114 at 20.) The district court relied on that email to conclude that Plaintiff "was dishonest with" it about harassing Jane, (SA-88:11–13), and it appropriately concluded that Plaintiff sought "to harass and intimidate others." (SA-50:8–9.) The Magistrate Judge relied on that finding in issuing its Order. (SPA-39.) These findings amply support the Anonymity Orders.

### 2. Plaintiff violated the Anonymity Orders.

The district court correctly concluded that Plaintiff's claim that his conduct did not violate the Anonymity Orders was "utterly specious." (SPA-69.)

The district court prohibited Plaintiff from "identify[ing] Jane Doe in any social media communication or elsewhere." (ECF 91.) The Magistrate Judge then prohibited Plaintiff from "directly or indirectly (including through his counsel) publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform." (SPA-49.)

Immediately after the Magistrate Judge issued her Order, Plaintiff nevertheless made a series of "posts [that] were designed to and did in fact cause others to" post Jane's name. (SPA-70.) Plaintiff incited his followers by falsely claiming that he had been "gagged" and emphasizing that the Magistrate Judge's Order only "applie[d] to [him]." (ECF 123 at 32-33.) When one of Plaintiff's followers wrote, "Hoping one day [Jane's] name can be revealed so that her and others like her are shamed," Plaintiff responded, "I'm doing my part. [*H*]*opefully others contribute in their own way*." (*Id.* at 34 (emphasis added).) Plaintiff also tagged "Blogger A," who had posted Jane's name and photo in response to Plaintiff's Christmas posts, with the comment that the order only applied to Plaintiff. (*Id.* at 12, 34.) Blogger A then reposted Jane's name and photo. (*Id.* at 37.)

The district court correctly concluded that Plaintiff "was the impetus behind the disclosure, and through his words and deeds, manipulated his 'followers' to achieve his desired result. His protestations to the contrary are belied by the entirety of the record before the Court and are otherwise not credible." (SPA-70.) Plaintiff's posts thus violated the Magistrate Judge's Order that he not indirectly identify Jane's name.

Plaintiff then incited his followers to post Jane's name a second time immediately after the district court explained that Plaintiff's original incitement was

a violation of the Magistrate Judge's Order. On January 29, 2025, the district court held

> it is axiomatic that one method of acting "indirectly" is through the conduct of others. Plaintiff's posts were designed to and did in fact cause others to act in a fashion that violated the [Magistrate Judge's] Order. He was the impetus behind the disclosure, and through his words and deeds, manipulated his "followers" to achieve his desired result. His protestations to the contrary are belied by the entirety of the record before the Court and are otherwise not credible.

(SPA-70.) The district court exercised restraint by not dismissing the case at this stage because, "[p]erhaps out of an ill-conceived well-spring of hope, the Court believed [a lesser sanction] would serve to deter Plaintiff from further misconduct." (SPA-8.)

Plaintiff was not deterred, however. Beginning just days after the January 29th decision, Plaintiff posted four links to a video in which he advocated naming Jane. (ECF 333-3.) In that video, Plaintiff stated:

- "[The fact that [m]y name is all over the media" [and] "[h]er name is not" "is *more problematic* from the perspective of I was found not guilty."
- "If you're going to accuse somebody and ruin their life, *your name should be attached* to your lies or your truth."
- "My name is all over the media. *Her name is not*."

(ECF 333-2.) Users then posted Jane's name in the comments on the video. (ECF 333-4.) The district court found that Plaintiff's defense of these actions amounted

to "the same specious argument that the Court expressly rejected when ruling on the earlier motion." (SPA-15.)

Putting aside the Magistrate Judge's Order, which explicitly prohibited "indirect[]" identification of Jane, both instances of Plaintiff's incitement violated the Court's Order prohibiting him from "identify[ing] Jane Doe in any social media communication or elsewhere." (ECF 91.) "A party may be held liable for knowingly aiding and abetting another to violate a [C]ourt [O]rder," including by aiding and abetting and/or inducing, encouraging, etc. third parties to do what the party is prohibited from doing. *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935 (9th Cir. 2014); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors…."). "The duty of [a party] [is] obedience not only to the letter, but to the spirit, of the order." *E.g.*, *S.E.C. v. Okin*, 137 F.2d 862, 864 (2d Cir. 1943) (emphasis added).

Additionally, Plaintiff's argument that he did not have to comply with the Magistrate Judge's Order is baseless. Rule 72(a) orders from magistrate judges are binding when issued and are as controlling as a district court's order. *E.g.*, *Rouviere v. DePuy Orthopaedics, Inc.*, No. 1:18-CV-4814-GHW, 2025 WL 1664673, at *12 (S.D.N.Y. June 12, 2025), *aff'd*, No. 25-1542, 2025 WL 4671388 (2d Cir. Dec. 18, 2025).

Plaintiff engaged in a widespread, unrelenting campaign to disseminate Jane's name in violation of the Anonymity Orders. The district court did not abuse its discretion by dismissing Plaintiff's claims in light of Plaintiff's repeated defiance of its orders.

### B. The district court was entitled to rely on Plaintiff's discovery misconduct.

On appeal, Plaintiff argues that the district court could not consider his egregious discovery misconduct when evaluating whether dismissal was appropriate. Many of his arguments improperly invite this Court to act as a factfinder and to re-weigh credibility determinations the district court made after hearing testimony from Plaintiff. Others are procedural, including his argument that Rule 37 was the only vehicle for issuing sanctions under these circumstances. That argument is waived, *see infra* Section I(A), and, like all of his arguments regarding his discovery misconduct, it is without merit.

#### 1. Plaintiff lied in his interrogatory response.

The district court correctly concluded that Plaintiff knowingly provided a false answer to Jane's interrogatory asking him about other sexual misconduct of which he had been accused. The district court found Plaintiff's claims that he did not lie "simply not credible" and observed that they "strain[ed] credulity beyond its breaking point." (SPA-18-SPA-19, SPA-28.)

This Court should reject Plaintiff's invitation to disturb the district court's credibility determination on appeal. It is well established that this Court may not "second-guess [] the trial court's credibility assessments…." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 528 (2d Cir. 2004) (quotation omitted); *e.g.*, *Residential Fences Corp. v. Rhino Blades, Inc.*, No. 24-897-CV, 2025 WL 583323, at *1 (2d Cir. Feb. 24, 2025).

Moreover, Plaintiff's post-hoc explanations on appeal of why he offered false and misleading answers to the interrogatory simply do not match his testimony below. Jane issued an interrogatory asking Plaintiff to "identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them." (SA-138.) On appeal, Plaintiff appears to argue that he did not include in his response the several individuals who had raised complaints against him because he could not "identify" them by name. (Opening Br. 35.)

But that is not what Plaintiff testified under oath when questioned by the district court. Instead, he testified that "he interpreted the Interrogatory as only including circumstances where he had been charged criminally." (SPA-18.) The district court correctly concluded that this explanation was "simply not credible." As the district court noted, the Defendants had "specifically challenged the Interrogatory response" in a letter to Plaintiff's counsel and had directed Plaintiff to

a video in which he stated that "'there were about twenty different complaints against him' after he returned to Yale." (SPA-18.) After consulting Plaintiff, Plaintiff's counsel confirmed the original answer. (Opening Br. 13.) The district court had a clear basis to conclude that Plaintiff knew that the interrogatory was not limited to circumstances in which had been charged criminally, and to conclude that his testimony to the contrary was not credible.

#### 2. The district court was entitled to consider Plaintiff's false answer and his other discovery misconduct.

Plaintiff also argues on appeal that his knowingly false and misleading answer to this critical interrogatory is not sanctionable because he did not violate a discovery order. He asserts that "[w]hether a complaint may be dismissed for noncompliance with discovery obligations 'depends exclusively upon Rule 37.'" (Opening Br. 32, quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 207 (1958)). Even if Plaintiff had not waived that argument by failing to raise it below, *see infra* Section I(A), the argument is wrong on the facts and the law.

As an initial matter, Plaintiff did violate an order. A Scheduling Order required "written discovery [to] be substantially completed by July 29, 2024." (ECF 67 and 68.) Under Rule 37(a)(4), "an evasive or incomplete…response must be treated as a failure to…respond." Therefore, Plaintiff's affirmatively false response was tantamount to an unexcused failure to comply with the order requiring substantial completion of discovery in 2024.

Plaintiff is also wrong that Rule 37 is the exclusive vehicle for remedying discovery abuses involving affirmatively dishonest representations. The case on which Plaintiff principally relies, *Societe Internationale*, concerned a litigant's failure to comply with a pre-trial discovery order, not the submission of a knowingly false discovery response. *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 198 (1958). Notably, it was established in that case that the "failure to comply ha[d] been due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Id.* at 212. Under those circumstances, the district court held, neither Rule 37 nor courts' inherent powers authorized dismissal. *Societe International* did not hold, however, that inherent powers sanctions are unavailable to remedy willful or fraudulent discovery abuses, such as knowingly false responses to interrogatories, merely because Rule 37 also authorizes discovery sanctions. As this Court has observed, "the fact that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by the statute or rule." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).

Indeed, this Court has already rejected the argument that Rule 37 provides the sole remedy for discovery abuses. In *DLC Mgmt. Corp.*, the district court held that

inherent power sanctions were available where the "defendants had acted in 'conscious disregard of their discovery obligations,'" and explicitly rejected the argument that "the sanctions were 'procedurally flawed' because they could not have been granted pursuant to [Rule] 37, which requires violation of a court's order to produce discovery." *Id.,* at 135. It reasoned that this "argument overlooks the fact that federal courts have 'well-acknowledged inherent power to levy sanctions in response to abusive litigation practices.'" *Id.* at 135-36 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Thus, while "[i]nherent power sanctions are…not a primary mechanism by which a party can obtain relief for a discovery abuse," they remain "a useful backstop" that courts may use to fill gaps in Rules 26(g) and 37. *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235–36 (2d Cir. 2020).

For these reasons, it was appropriate for the district court to consider Plaintiff's discovery abuses—which, it found, suggested an intention to "withhold damaging information in discovery so as to increase the likelihood of his success on the merits" (SPA-28)—as part of the totality of misconduct warranting sanctions pursuant to the district court's inherent authority.

**3. Plaintiff tried to conceal "damning" evidence through "specious" privilege assertions.**

Plaintiff seeks to portray the Peter Roe communications as an ordinary privilege dispute that ended when he voluntarily produced documents before the district court ruled on Yale's motion to compel. (Opening Br. 37-38.) But for

months, Plaintiff withheld hundreds of communications with Roe under privilege claims that the district court ultimately found were not even arguably valid, using descriptions that intentionally concealed damaging evidence.

Plaintiff argues that his privilege log disclosed the communications and the basis for withholding them, that he voluntarily produced the documents before any court had ordered him to do so, and that his privilege claims were supported by *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). (Opening Br. 37-39.) None of these arguments has merit.

Plaintiff's egregious, intentional misconduct bore directly on the district court's concern that "there was no viable path forward for a fair and just adjudication" of his claims. The withheld communications included text messages between Plaintiff and Roe, in which they planned a sexual encounter with a woman who would later claim Plaintiff assaulted her. Plaintiff's privilege log falsely described these communications as "khan and legal team discuss post-trial logistic, FACE matters, media and related info." (SPA-22.) And the log falsely claimed they were entitled to "work product protection because this discussion was at the direction of attorneys and in preparation for litigation." (*Id.*) The district court concluded that this assertion was "sanctionable on its face" and that, "given the damning nature of the communications in the context of this litigation—a claim that Jane Doe falsely

accused Plaintiff of sexual assault," evidenced "an intent to conceal…probative and relevant evidence." (*Id.*)

Plaintiff's insistence that the privilege log disclosed the communications, (Opening Br. 37-38), misses the point: By describing a conversation about a planned sexual encounter as "legal strategy," he intentionally concealed the contents of the communications, rather than disclosing them. The descriptions also raised questions about whether Plaintiff had improperly withheld other documents as privileged. Reviewing those other privilege claims would require the "costly, time-consuming and resource draining undertaking," as the district court recognized. (SPA-29.) The district court appropriately considered this misconduct in fashioning a remedy because it bore directly on whether Plaintiff's repeated instances of dishonesty made it impossible to fairly adjudicate the case on the merits.

None of the case law Plaintiff cites remotely justifies his assertion of privilege, much less their false description in the privilege log. *Kovel* cautioned that attorneys cannot transform all communications with nonlawyers into privileged communications merely by placing them "on their payrolls," 296 F.2d at 921. And it distinguished communications made to a nonlawyer before the involvement of counsel. *Id.* at 922. Here, Plaintiff communicated with Roe before Attorney Margaret Valois became involved and Plaintiff himself proposed Roe's role as a "paralegal." (ECF 371-1, at 5.) Importantly, the privilege protects communications

made "for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *In re Cnty. of Erie*, 473 F.3d 413, 419–20 (2d Cir. 2007). Plaintiff's discussions of "[r]ape fantasies and strategizing a three-way sexual encounter cannot, in good faith," be viewed "as…subject to the privilege." (SPA-24.)

Nor can Plaintiff avoid the consequences of this misconduct by blaming his attorney. (Opening Br. 38.) As this Court recognized in *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996), courts must consider whether counsel's conduct advanced the client's strategic interests because a client is "ordinarily bound by the acts of his lawyer." *Dodson* distinguished attorney misconduct undertaken for the apparent benefit of the client, observing that dismissal may be appropriate in such circumstances. *Id.* at 40 n.3. Nor is this case comparable to *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012), where counsel's conduct reflected negligence rather than an effort to obtain an unfair advantage. Here, Plaintiff's privilege assertions served to conceal highly damaging evidence, and was part and parcel of the escalating pattern of misconduct justifying the dismissal.

**4. Plaintiff concealed his possession of a secret UWC recording.**

Plaintiff claims that he disclosed the existence of the recording of the UWC proceedings on the agreed deadline and argues that "his case cannot be dismissed

because he preserved the only record of it." (Opening Br. 41.) The district court did not dismiss his action because Plaintiff *made* the recording; rather, it found he engaged in misconduct by *concealing* it from Defendants, the district court, this Court, and the Connecticut Supreme Court. (SPA-26-SPA-27.)

The district court expressed particular concern that the Connecticut Supreme Court relied on Plaintiff's false representation about the existence of a recording in finding that Plaintiff's "'ability to appeal was severely constrained by the absence of *any* recording….' *Khan*, 347 Conn. at 46." (emphasis in original) (SPA-26.) At the time of the Supreme Court's decision in 2023, Plaintiff possessed a recording of the UWC proceedings, which, as the district court found, contradicted claims made to the Connecticut Supreme Court and this Court that it was "unclear" whether witnesses were placed under oath and that Plaintiff requested, but was denied, a transcript or recording of the hearing. (SPA-26-SPA-27.)

Plaintiff suggests that his failure to divulge the existence of the recording during his appeal was harmless because "Yale made no record." (Opening Br. 42.) The district court acknowledged that the issues on appeal may not have been decided differently if the secret recording had been disclosed. But that was not the issue: Plaintiff committed grave misconduct in "permit[ting] the courts to be under the false impression that there was no existing recording." (SPA-27).

The district court found other instances of dishonesty by Plaintiff. Plaintiff represented to Magistrate Judge that he had been advised by his "retained immigration counsel" to submit certain documents to immigration authorities and argued that no one should interfere with his counsel's representation. When Plaintiff was directed to bring the attorney who had represented him at the immigration hearing, he brought an attorney who had not represented Plaintiff in years. The attorney denied that he had given the advice Plaintiff claimed. In fact, Plaintiff appeared *pro se* in the immigration proceeding. (SPA-25.) The district court concluded that Plaintiff's assertions about his immigration counsel's advice was "clearly false" in light of his *pro se* status. (*Id.*) Plaintiff faults the district court for dismissing the action before hearing testimony from Plaintiff's other attorneys and claims that the advice came from a different attorney. (Opening Br. 43.) The district court did not need to hear from other attorneys to conclude that Plaintiff had lied to the court.

**5. Plaintiff produced thousands of irrelevant documents on the eve of depositions.**

On February 27, 2025, just two weeks before the first scheduled deposition date, Plaintiff produced 70,305 pages of documents, more than five times the documents that had been produced up to that time. (SA-133, ¶4; A-323:15–19.) Reviewing the production, Defendants discovered that the production included

pornography;[8] store advertisements; restaurant recommendations, Uber receipts, credit card payment reminders; newsletters and announcements dating back to 2012; and nearly 12,000 emails from an advocacy organization. (SA-133-SA-134, ¶¶6–7; ECF 333-7.) Even resolving close calls in favor of relevance, Defendants found that about 85% of the production was irrelevant and non-responsive. (SA-133, ¶4–5.)

Facing dismissal below, Plaintiff submitted nothing to dispute Defendants' review. Instead, he acknowledged that "some documents, videos, and photos" had been "inadvertently produced." (A-248.) At the hearing, Plaintiff's counsel defended the production on the ground that every document hit on Defendants' search terms. (A-318:13–14.)

The district court found that Plaintiff did "not meaningfully disagree" that the documents were largely irrelevant and that it was "difficult to discern any legitimate decision to err on the side of production" for materials such as "random advertisements." (SPA-14.) It concluded that the production had "all the hallmarks of a classic 'document dump.'" (SPA-27.) The district court also found that Plaintiff, by joining the February 18 motion, had "implicitly assur[ed]" Defendants that his remaining production "could be meaningfully reviewed in three days." (SPA-13 n.9.) Although the district court declined to infer that Plaintiff specifically

[8] Some, but not all, of the pornographic images were related to items Plaintiff withheld on his privilege log. (SA-134, ¶8.)

intended to delay depositions or the close of discovery, it found that the production had that "absolutely predictable" effect and that "the misconduct was in the *production itself* of largely unresponsive and irrelevant documents." (emphasis in original) (SPA-27–28.) The district court's findings were supported by substantial, unrebutted evidence.

Plaintiff's main argument on appeal continues to confuse documents that hit on search terms with documents responsive to discovery requests. (Opening Br. 39-40.) "[T]o produce all non-privileged documents that contain…proposed search terms without a responsiveness review is inappropriate." *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22-CV-5974 (JPC) (KHP), 2025 WL 722853, at *1 (S.D.N.Y. Mar. 5, 2025). Moreover, Plaintiff's counsel had told the Magistrate Judge that he "review[ed] everything" before producing it. (ECF 293, at 6:25.)

Plaintiff's reliance on *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 821 (D.C. Cir. 2009), to suggest that the volume of documents captured by agreed search terms cannot establish bad faith is misplaced. (Opening Br. 40.) *Fannie Mae* addressed whether the requesting parties acted in bad faith by selecting search terms that captured approximately 80% of the producing agency's emails. The district court found that the volume of results alone did not establish that the requests were improper. *Id.* 820-21. It did not hold that a producing party may turn over every

document captured by search terms without reviewing the documents for responsiveness.

Plaintiff's insistence that no discovery order was violated and that lesser remedies were available overlooks the basis of the district court's decision. (Opening Br. 40-41.) The district court did not conclude that the "document dump" independently warranted dismissal. Instead, it considered the production alongside the totality of Plaintiff's other misconduct, expressly stating that it relied on the various incidents "to varying degrees." (SPA-27.) The district court was entitled to consider the burden and disruption caused by this production in assessing Plaintiff's conduct throughout discovery and whether lesser sanctions would suffice.

## V. Plaintiff's due process rights were not violated.

Plaintiff argues at length that he was denied due process. Even if those arguments were not waived, *see infra* Section I(B), they lack merit. And, as an initial matter, the Court need not reach this argument if it concludes that Plaintiff failed to comply with the Anonymity Orders. Plaintiff conceded below that dismissal was an appropriate remedy if he violated the court's orders.

In any event, Plaintiff was afforded due process. Due process demands that a litigant receive notice of "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."

*Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). Due process also requires that a litigant receive an opportunity to be heard. *Id*. at 334. However, "[t]he opportunity to be heard does not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing." *Id*. at 335.

Here, Plaintiff received ample notice of the authority under which Defendants sought sanctions. The Third Motion cited each of the bases on which the district court ultimately relied. Plaintiff also received notice of the specific conduct underlying the sanctions. The district court relied on the very conduct the Defendants cited at length in their Third Motion, and which Plaintiff sought to address in his Opposition. *See id*. at 334-35.

Plaintiff received an opportunity to be heard. In addition to hearing argument on the Third Motion, the district court required Plaintiff to testify. Plaintiff did not seek an evidentiary hearing or seek to supplement the record with additional evidence. In fact, he included no affidavits with his Opposition. To the extent he now believes that additional procedural safeguards were required, he waived those arguments by failing to make any request to the district court.

Plaintiff appears to argue, in essence, that due process was violated because he did nothing wrong. He claims that "nothing was hidden"; "[t]he Roe texts are produced"; and the UWC "recording and its transcript are produced." (Opening Br. 50.) Plaintiff appears to argue that terminating sanctions are not available because

he was ultimately forced to produce materials that he had knowingly concealed. That is wrong as a factual matter because Plaintiff still has not produced everything Defendants were entitled to receive in discovery. There are at least 22 Roe communications listed on the privilege log that were not produced, (ECF 360), and the recording of the UWC proceedings was never produced because Plaintiff claimed it contained privileged conversations with his attorney (A-28-A-29). Plaintiff's attempts to conceal evidence therefore were not cured when he made a partial production of Roe communications.

Plaintiff principally relies on case law derived from the Supreme Court's decision in *Hovey v. Elliott*, 167 U.S. 409 (1897). There, the Supreme Court held that a court could not strike a defendant's answer and enter default as punishment for contempt. *Id*. at 413-14. However, as the Ninth Circuit has explained, this holding was limited in *Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909). In *Hammond*, the Supreme Court found the entry of default a permissible sanction for the defendant's failure to comply with a court order to produce documents, reasoning that "one may reasonably infer from the suppression of relevant evidence that the defendants' case is lacking in merit." *Phoceene Sous-Marine, S.A.*, 682 F.2d at 806. Where, as in this case, a court has concluded that a litigant has engaged in affirmative deception, the *Hovey*-*Hammond* line of cases stand for the simple proposition that terminating sanctions are not warranted if "the deception was wholly unrelated to

the matters in controversy." *Phoceene Sous-Marine*, 682 F.2d at 806. Where, however, the litigant's "deceptions concerned the issues in controversy," dismissal is an appropriate sanction. *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1182 (10th Cir. 2009).

Here, dismissal was consistent with due process because Plaintiff's repeated violations of court orders and attempts to conceal damaging evidence were closely related to the merits of his case. This distinguishes this case from the Ninth Circuit's decision in *Phoceene Sous-Marine*. (Opening Br. 51.) There, the defendant deceived the court by sending a telegram purportedly authored by a physician, and actually authored by his sister prior to defendant's consultation with the physician, indicating that he was unable to attend trial due to illness. 682 F.2d at 804-05. Since the deception was not related to the merits of the controversy, but rather to the peripheral matter of whether the defendant was too ill to attend trial, no legitimate inference regarding the merits could be drawn, and thus the entry of default was impermissible. *Id.* at 806. Here, however, Plaintiff's misconduct was directly related to the controversy because it concerned, among other things, "damning" evidence regarding past instances of alleged sexual misconduct. Plaintiff's continued withholding of certain Roe communications after producing hundreds of others that debased women and discussed sexual exploits (including non-consensual) supports an inference that the remaining 22 withheld communications

are likewise damaging to the merits of his claims. Indeed, given Plaintiff's misrepresentations, the district court concluded: "Defendants reasonably assert that the entirety of the privilege log is now subject to challenge…." (SPA-29.)

Plaintiff argues that dismissal improperly rests on character analysis and a judgment that Plaintiff cannot be trusted, complaining that the district court quotes Plaintiff's "most inflammatory private messages at length." (Opening Br. 51.) However, a fair reading of the decision reveals that the district court focused on Plaintiff's misconduct during the litigation and properly weighed it to evaluate whether a lesser sanction was feasible. After weighing this evidence, the district court found "Plaintiff will withhold damaging information in discovery so as to increase the likelihood of his success on the merits." (Opening Br. 52; SPA-28.) Even if Plaintiff had not waived this argument, there is no due process violation under *Hammond*, and dismissal was appropriate.

## VI. The district court properly dismissed the entire action

Without analysis, Plaintiff claims that dismissal cannot stand because it is not known whether the district court would have imposed the same sanction absent reliance on purportedly invalid factors. (Opening Br. 56.) The principal case Plaintiff cites, *Koon v. United States*, 518 U.S. 81 (1996), concerned criminal

sentencing guidelines and is therefore inapposite.[9] Plaintiff's misconduct was so extensive that the district court's dismissal is not an abuse of discretion even if this Court concludes that the district court could not rely on discrete aspects of misconduct.

Plaintiff argues that "[e]xtinguishing the Yale claims to protect Doe's pseudonym inverts the required fit between the wrong and remedy." (Opening Br. 57.) Plaintiff ignores Yale Defendants' interest in protecting Jane's anonymity.[10] When denying the First and Second Motions, the district court recognized that, separate from Jane's motion, Yale Defendants had "detail[ed] the harm that Plaintiff's violation caused to all Defendants through its effect on Yale's confidentiality policies with respect to sexual assault reporting…." (SPA-67.)

---

[9] The string cite case, *Sakon v. Andreo*, 119 F.3d 109 (2d Cir. 1997), concerned an award of attorneys' fees and expenses under Fed. R. Civ. P. 54(d), and thus is inapplicable. *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34 (2d Cir. 1995), discussed imposition of sanctions against an attorney under the district court's inherent power, and the section cited by Plaintiff states that the Second Circuit could not uphold an exercise of inherent authority based on findings that were not relied upon by the district court in deciding to impose sanctions. *Id.* at 41. Neither *Sakon* nor *Milltex Industries* support Plaintiff's position.

[10] Plaintiff also ignores the discovery misconduct described above that was directed at, and prejudiced, Yale Defendants.

Yale is invested in protecting the confidentiality and privacy of students involved in sexual misconduct complaints. As Yale's Statement on Confidentiality of UWC Proceedings explains:

> The purpose of confidentiality is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer…. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process.[11]

(ECF 7-2 at 1.) Plaintiff's violation of the district court's orders protecting Jane's anonymity affects Yale's efforts to address complaints of sexual misconduct. If Plaintiff is permitted to repeatedly flout the Anonymity Orders without consequence, victims of sexual misconduct in the Yale community will be reticent to register complaints and witnesses will be cautious about coming forward. Indeed, the Magistrate Judge observed that "the risk of a 'chilling effect' would certainly increase if there was some blanket rule that university students who complain about sexual assault could be publicly named by the accused in a collateral attack." (SPA-44.) Numerous other federal courts have recognized the importance of safeguarding

---

[11] Yale Defendants supported Plaintiff's motion for pseudonymity. (ECF 9.) Granting Plaintiff's motion, the district court noted the parties' acknowledgement of Yale's policies concerning confidentiality. (SPA-33.)

the anonymity of those who lodge Title IX complaints of sexual misconduct. *See*, *Doe v. Trustees of Columbia Univ. in the City of New York*, 2025 WL 2476304 (S.D.N.Y. Aug. 28, 2025); *Metcalf v. Yale University*, 2017 WL 627423 (D. Conn. Feb. 15, 2017); *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022).

Contrary to Plaintiff's argument, the interest in Jane's pseudonymity is not limited to Jane, and along with the totality of Plaintiff's misconduct, and the district court properly dismissed the entire action.

## CONCLUSION

The district court found that Plaintiff corrupted the litigation process by his failure or refusal to play by the rules. Plaintiff was not deterred by twice narrowly escaping dismissal, by repeated warnings to abide by court orders, or by the prospect of vigorous cross-examination on his credibility. Instead, he escalated his pattern of egregious misconduct. He continued to violate the Anonymity Orders. He hid damning communications in a privilege log. He lied to the district court, the Magistrate Judge, the Connecticut Supreme Court, and this Court with impunity. He lied in a sworn interrogatory response and then provided contradictory reasons for doing so.

Given the totality of Plaintiff's misconduct, the district court acted well within its discretion in dismissing this case. As the district court stated, the process broke

down "and the search for justice, whatever form it might have taken, [was] lost." This Court should affirm the district court's sound decision.

Should, however, this Court remand, it should be to Judge Dooley. Plaintiff has not made the requisite showing to reassign the case to a different district judge.

Dated: October 29, 2026

/s/ Brendan Gooley
BRENDAN GOOLEY
JAMES M. SCONZO
CARLTON FIELDS, P.A.
*Attorneys for Defendant-Appellee Jane Doe*
One State Street, Suite 1800
Hartford, Connecticut 06103
(860) 392-5000

/s/ Giovanna Tiberii Weller
PATRICK M. NOONAN
GIOVANNA TIBERII WELLER
MARIA LAURATO
CARMODY TORRANCE SANDAK & HENNESSEY LLP
*Attorneys for Defendants-Appellees Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers and Carole Goldberg*
195 Church Street
New Haven, Connecticut 06510
(203) 777-5501

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 13,547 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 29, 2026

_/s/ *Giovanna Tiberii Weller*________
Giovanna Tiberii Weller