# No. 26-830

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SAIFULLAH KHAN,
*Plaintiff-Appellant,*

*v.*

YALE UNIVERSITY,
PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN,
JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN,
LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER,
SARAH DEMERS, JANE DOE, CAROLE GOLDBERG,
AND UNKNOWN PERSONS,
*Defendants-Appellees.*

*ON APPEAL FROM*
*THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF CONNECTICUT*
(*Dooley, J.*), *No. 3:19-cv-1966* (*KAD*)

# Reply Brief for Plaintiff-Appellant Saifullah Khan

Alexander T. Taubes, Esq.
LAW OFFICES OF ALEXANDER T. TAUBES, PLLC
470 James Street, Suite 007
New Haven, CT 06513
Tel. 203-909-0048
Email: alextt@gmail.com

# TABLE OF CONTENTS


**Page**

**Table of Authorities** ........ **iii**

**Preliminary Statement** ........ **1**

**Argument** ........ **2**

**I. MR. KHAN DISOBEYED NO DISCOVERY ORDER** ........ **3**

A. A completion date is not an order requiring specified discovery, and Rule 37(a)(4) does not make it one ........ 4

B. Inherent power is a backstop, and it demands findings the court never made ........ 6

C. Appellees' new facts are not findings, and the record refutes them ........ 8

D. The Rules already supply the remedies ........ 10

**II. NO SPEECH "VIOLATION" SUPPORTS THIS JUDGMENT** ........ **11**

A. After the June 19 Order, Mr. Khan named no one, and the order does not reach the strangers who did ........ 11

B. The collateral-bar rule does not save an order whose validity no judge ever decided ........ 15

C. Appellees barely defend the order ........ 18

**III. EVEN TAKING EVERY FINDING AS GIVEN, THE COURT WEIGHED NO LESSER SANCTION** ........ **19**

A. The opinion ignores the six alternatives the movants proposed ........ 19

B. The remaining factors drew conclusions, not analysis ........ 21

**IV. THE CLAIMS AGAINST YALE FELL WITHOUT A SEPARATE REASON** ... **23**

**V. A "TOTALITY" OF FAILED PREDICATES IS STILL A FAILURE** ........ **24**

**VI. NOTHING ORDERED WAS WITHHELD, SO *HAMMOND PACKING* HAS NOTHING TO PRESUME** ........ **25**

**Conclusion** ........ **27**

**Certification of Compliance** ........ **29**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
555 F.3d 298 (2d Cir. 2009) (per curiam) ........ 5

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984) ........ 3

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.*,
710 F.2d 940 (2d Cir. 1983) ........ 18

*Carroll v. President & Comm'rs of Princess Anne*,
393 U.S. 175 (1968) ........ 17

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........ 6, 7, 9

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) ........ 14

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991) ........ 5

*DLC Mgmt. Corp. v. Town of Hyde Park*,
163 F.3d 124 (2d Cir. 1998) ........ 6

*Dodson v. Runyon*,
86 F.3d 37 (2d Cir. 1996) ........ 11, 21

*Doe v. Mast*,
173 F.4th 524 (4th Cir. 2026) ........ 14, 15, 18, 19

*In re Dow Jones & Co.*,
842 F.2d 603 (2d Cir. 1988) ........ 18

*Fielding v. Tollaksen*,
510 F.3d 175 (2d Cir. 2007) ........ 17

*Garcia v. Berkshire Life Ins. Co. of Am.*,
569 F.3d 1174 (10th Cir. 2009) ........ 25

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*,
143 F.4th 51 (2d Cir. 2025) ........ 21

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)....15

*Hammond Packing Co. v. Arkansas*,
212 U.S. 322 (1909)....25, 26

*Hovey v. Elliott*,
167 U.S. 409 (1897)....26

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)....24, 25, 26

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014)....14

*Khan v. Yale Univ.*,
347 Conn. 1 (2023)....8

*Khan v. Yale Univ.*,
27 F.4th 805 (2d Cir. 2022)....9

*Khan v. Yale Univ.*,
85 F.4th 86 (2d Cir. 2023)....1

*Koon v. United States*,
518 U.S. 81 (1996)....2, 24

*LeSane v. Hall's Sec. Analyst, Inc.*,
239 F.3d 206 (2d Cir. 2001)....22

*Lucas v. Miles*,
84 F.3d 532 (2d Cir. 1996)....22

*Marquez v. Silver*,
96 F.4th 579 (2d Cir. 2024)....17

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
55 F.3d 34 (2d Cir. 1995)....4

*Mitchell v. Lyons Pro. Servs., Inc.*,
708 F.3d 463 (2d Cir. 2013)....7, 21

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976) (per curiam)....22

*Nat'l Socialist Party of Am. v. Vill. of Skokie*,
432 U.S. 43 (1977) (per curiam)....16

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*,
682 F.2d 802 (9th Cir. 1982)........................................................................25

*R.W. Int'l Corp. v. Welch Foods, Inc.*,
937 F.2d 11 (1st Cir. 1991)........................................................................5, 24

*Regal Knitwear Co. v. NLRB*,
324 U.S. 9 (1945)........................................................................13

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023)........................................................................7, 8

*Salahuddin v. Harris*,
782 F.2d 1127 (2d Cir. 1986)........................................................................3, 5, 6

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999)........................................................................4, 7

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)........................................................................18

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130 (2d Cir. 2007)........................................................................19, 21, 24, 28

*Smalls v. Cnty. of Suffolk*,
718 F. App'x 16 (2d Cir. 2017) (summary order)........................................................................27

*Societe Internationale v. Rogers*,
357 U.S. 197 (1958)........................................................................6, 26

*Spencer v. Doe*,
139 F.3d 107 (2d Cir. 1998)........................................................................22

*State v. Khan*,
355 Conn. 658 (2026)........................................................................14

*United States v. Cutler*,
58 F.3d 825 (2d Cir. 1995)........................................................................16

*United States v. Robin*,
553 F.2d 8 (2d Cir. 1977) (en banc) (per curiam)........................................................................28

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947)........................................................................16

*Walker v. City of Birmingham*,
388 U.S. 307 (1967)........................................................................15, 17

*West v. Goodyear Tire & Rubber Co.*,
167 F.3d 776 (2d Cir. 1999)....28

*Wilson v. Citigroup, N.A.*,
702 F.3d 720 (2d Cir. 2012) (per curiam)....3

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
564 F.3d 110 (2d Cir. 2009)....3, 7

*Yee v. City of Escondido*,
503 U.S. 519 (1992)....3

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020)....7, 10

**Rules**

Fed. R. App. P. 30(a)(2)....1

Fed. R. Civ. P. 37....passim

Fed. R. Civ. P. 37(a)(4)....4

Fed. R. Civ. P. 37(a)(5)(A)....11

Fed. R. Civ. P. 37(b)....3, 5, 24, 26

Fed. R. Civ. P. 37(d)(1)(A)(ii)....5

Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment....5

Fed. R. Civ. P. 41(b)....6

Fed. R. Civ. P. 72(a)....17, 27

## PRELIMINARY STATEMENT

Saifullah Khan filed this case nearly seven years ago, and no jury has heard it. The only jury ever to hear Jane Doe's accusation acquitted him on every count. (SPA-2.) Yale expelled him anyway, after a hearing at which no witness was sworn, his lawyer could neither ask questions nor object, and Yale made no record. (SPA-26; A-117–18 ¶¶ 78–79.) He sued and won on appeal: this Court restored his claims against Doe for what she said there. *Khan v. Yale Univ.*, 85 F.4th 86, 102 (2d Cir. 2023). Then the district court dismissed every claim, against every defendant, with prejudice, as a sanction. (SPA-1; SPA-32.)[1]

The court never found the claims meritless. It found him disobedient, yet identified no discovery order he disobeyed. No order compelled a different interrogatory answer or the privileged messages, and he met his production deadline. (SPA-13; A-40.) In June 2024, a magistrate judge barred him from disclosing Doe's identity "directly or indirectly." (SPA-49.) After that, he never named her. Strangers did, repeating a name that appears in the certified transcript of his public criminal trial. (SPA-71.) Denying mandamus, this Court expected "appropriately expeditious" consideration of Mr. Khan's challenges to that very order. (SPA-52.) The district court enforced the order against Mr. Khan—for others' speech—while promising

[1] "Br." refers to the Brief for Defendants-Appellees (Dkt. 41.1); "SA" to Appellees' supplemental appendix (Dkt. 40); "Opening Br." to Mr. Khan's opening brief (Dkt. 25.1). Appellees' complaint about the appendix (Br. 2 n.1) seeks no relief, and the Court may rely on any part of the record. Fed. R. App. P. 30(a)(2).

three times, in writing, to decide Mr. Khan's challenges. (SPA-53; SPA-65 n.10; SPA-71 n.14.) Twenty months after he objected (A-124), without resolving those challenges, it dismissed his case for violating the order instead.

The Court can vacate without disturbing a single finding or reaching the First Amendment. Every Appellee supplied lesser sanctions as an alternative to dismissal: fees and six alternatives, from preclusion to a jury instruction. (A-202; A-235–37.) The opinion ignored them; it "can discern no lesser sanction." (SPA-30.) It never says why claims about Yale's own hearing had to fall. And it relied on five grounds only "to varying degrees" (SPA-27), never saying which, if any, would suffice alone.

Appellees answer by rewriting the opinion. They find a violated "order" in a scheduling target no one invoked below, supply facts the court never found, and recast Mr. Khan's argument—no violated order, no dismissal—as a confession. (A-258.) Judged by the reasons the court gave, the judgment punishes a man for other people's speech and for conduct no order addressed. It should be reversed, or at least vacated, so that a judge finally decides his objections and a jury finally hears his case.

## ARGUMENT

This judgment rests on legal error, and legal error gets no deference. A court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). Appellees' own standard says

so. (Br. 20.) Everything else gets review "more exacting than under the ordinary abuse-of-discretion standard," because the court was "accuser, fact finder and sentencing judge" all in one. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009) (internal quotation marks omitted). It questioned Mr. Khan itself, calling its conclusion "pretty obvious" before he answered. (A-372:3–16.) And because the sanction punishes speech, this Court must "make an independent examination of the whole record." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (internal quotation marks omitted). Appellees answer neither rule. Their own standard-of-review case reversed a sanction because the lawyers "disobeyed no order of the district court," the court made no "explicit finding" of bad faith, and no one gave notice of "the standard by which that conduct will be assessed." *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724–25 (2d Cir. 2012) (per curiam) (internal quotation marks omitted). The same defects run through this judgment.

## I. Mr. Khan disobeyed no discovery order.

Rule 37(b) sanctions "require the violation of an explicit court order." *Salahuddin v. Harris*, 782 F.2d 1127, 1133 (2d Cir. 1986). He made that point below, as Appellees concede: he argued that he "ha[d] not violated th[e] Court's orders," which they call "his primary argument below." (Br. 23, 25.) They say he never tied it to the absence of a discovery order (Br. 23), but "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim." *Yee v. City of Escondido*, 503 U.S. 519, 534

(1992). Appellees, who invoke his "subject to dismissal" sentence as a concession on seven pages, cannot also say the principle it states was never raised.

### A. A completion date is not an order requiring specified discovery, and Rule 37(a)(4) does not make it one.

Appellees' substitute for a violated order is a theory never made below: that the December 2023 scheduling order—which said "written discovery will be substantially completed by July 29, 2024"—was violated because Rule 37(a)(4) treats an incomplete answer as no answer. (Br. 19, 41; ECF 68; ECF 67 at 7 (§ V.E.5); A-11–12.) It fails three times over.

It was never presented. The movants' motion, reply, and supplement do not mention it, and the opinion never finds the July 29 target violated. (*See* SPA-1–31.) This Court does not affirm a sanction on findings the district court never made. *See Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 41 (2d Cir. 1995). Appellees acknowledge the rule. (Br. 56 n.9.) And "only conduct explicitly referred to in the instrument providing notice is sanctionable." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

It cuts the rule short. Appellees quote Rule 37(a)(4) as providing that "an evasive or incomplete . . . response must be treated as a failure to . . . respond." (Br. 41.) They omit the rule's first six words: "For purposes of this subdivision (a)." Fed. R. Civ. P. 37(a)(4). Subdivision (a) governs motions to compel. Rule 37(d) allows sanctions without a prior order when a party

"fails to serve its answers" at all—"the total non-compliance with which Rule 37(d) is concerned." Fed. R. Civ. P. 37(d)(1)(A)(ii); *id.* advisory committee's note to 1970 amendment. The provision Appellees quote presupposes the motion that was never filed.

It misreads the order. Doe's counsel called the answer "deficient" in June 2024 (SA-20) and wrote on August 6 (A-337:8–13), yet no one moved to compel or claimed that the July 29 date was violated. Every party missed that date; Yale finished its own production six months later. (A-33–35; SPA-54.) A target date for "substantially complet[ing]" written discovery is not a "clearly articulated order of the court requiring specified discovery." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991). This Court has called it "fanciful" "[t]o imply an order to compel discovery" from orders including one "setting a discovery deadline." *Salahuddin*, 782 F.2d at 1132. The First Circuit, "disinclined to allow broad-brush scheduling orders to serve as snares," reversed such a dismissal: "[i]n the absence of a preexisting order to compel," the court "had no authority under Rule 37(b)(2) to dismiss the case." *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 18–19 (1st Cir. 1991). Appellees' own Rule 37 case affirmed dismissal only after the plaintiff defied orders to answer interrogatories despite repeated warnings, a lesser sanction, and one last chance. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 300–03 (2d Cir. 2009) (per curiam).

The production predicate fails for a simpler reason: it was compliance, not disobedience. The magistrate judge ordered Mr. Khan to complete his

production by February 21, 2025, then extended the date to February 28 on the parties' joint motion; he produced on February 27. (SPA-13; SPA-54; A-40.) The search terms were Yale's and Doe's, by agreement. (ECF 261 at 1; SPA-54.) The court faulted what was produced, not when, and declined, "on the present record," to infer an intent "to forestall impending depositions or the conclusion of discovery." (SPA-27–28.) Producing too much, on time, is not disobeying an order to produce.

### B. Inherent power is a backstop, and it demands findings the court never made.

Appellees fall back on inherent power (Br. 42–43), but where Rule 37 governs, inherent power does not take over. A court's power to dismiss "because of noncompliance with a production order depends exclusively upon Rule 37," and reliance on Rule 41, which "cannot easily be interpreted to afford a court more expansive powers than does Rule 37," or on inherent power "can only obscure analysis of the problem before us." *Societe Internationale v. Rogers*, 357 U.S. 197, 207 (1958). *Salahuddin* applied that holding to reject Rule 41(b) as a substitute where, as here, no order compelled the discovery. 782 F.2d at 1133–34.

Nor does *DLC*'s statement that a rule providing for sanctions "does not limit a court's inherent power to fashion sanctions" help them. (Br. 42 (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)).) *DLC* took that from *Chambers*, which added that when bad-faith conduct "could be adequately sanctioned under the Rules, the court

ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). In *Yukos*, where movants alleged deposition perjury and withholding but identified no violated order, this Court affirmed the denial of sanctions under Rule 37 and inherent power. In discovery, it held, that power "should be exercised with even more restraint than usual"; it "should serve only as a useful backstop against discovery abuses that do not clearly violate Rules 26(g) and 37." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234–37 (2d Cir. 2020). Appellees call it a gap-filler (Br. 43); an interrogatory answer, a privilege log, and a production are what those Rules govern, not gaps in them.

Inherent power also demands a specific finding of bad faith—conduct "motivated by improper purposes"—on "clear evidence" and with "a high degree of specificity in the factual findings." *Wolters Kluwer*, 564 F.3d at 114; *see Schlaifer Nance*, 194 F.3d at 336–38; *see also Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013). The opinion makes no such finding: it recited three sources of power and proceeded "[u]nder whatever authority" (SPA-8–11), and "bad faith" appears only in its statement of the law and of the parties' positions (SPA-9, 12, 14). Nor could the production support one. The court called it a "document dump," declined to infer any intent to delay, and located the "misconduct" in "the production itself." (SPA-27–28.) A finding of misconduct without a finding of improper purpose is not a finding of bad faith. Even an implicit finding "is not enough." *Rossbach v. Montefiore*

*Med. Ctr.*, 81 F.4th 124, 143–44 (2d Cir. 2023) (vacating sanctions against counsel) (cited at Br. 21).

### C. Appellees' new facts are not findings, and the record refutes them.

*The 22 Roe entries.* The opinion never mentions them. Appellees' claim that Mr. Khan "has continued to withhold 22 Roe communications identified on his privilege log" (Br. 13; *see* Br. 53, 54–55) is their side of a June 24, 2025 joint status report; his side responded that the documents had been produced, "with the apparent exception of documents that Plaintiff is willing to produce if they were inadvertently omitted." (ECF 360 at 1–2.) When the case was dismissed, every side had a motion to compel pending, and the dismissal mooted them all. (SPA-74; A-43, 48–51; A-381:1–2.)

*The recording.* Yale's procedures produced no record of a hearing that decided a student's future, and Yale admits it. (A-118 ¶ 79.) The Connecticut Supreme Court held that against the proceeding. *Khan v. Yale Univ.*, 347 Conn. 1, 45–46 (2023). This judgment counts it against the one person who kept one. Appellees say the UWC recording "was never produced because Plaintiff claimed it contained privileged conversations with his attorney." (Br. 53.) The audio captured Mr. Khan's conversations with his lawyer, so it was logged as privileged on the agreed date, as Appellees' counsel confirmed (A-363:22–364:10), and a transcript was produced with those conversations redacted (A-253–54; SPA-54). Nor did Mr. Khan "t[ell] the Connecticut Supreme Court that such a recording did not exist." (Br. 13.)

The court found no such statement. It found that he made arguments "premised on the fact that there was no record of the UWC proceedings" and "permitted the courts to be under the false impression that there was no existing recording." (SPA-26–27.) And the court found it "impossible to know whether" disclosure would have changed the appeal. (*Id.*) Those courts ruled on the pleadings. *See Khan v. Yale Univ.*, 27 F.4th 805, 816 n.13 (2d Cir. 2022). His 2018 denial to the panel that he was recording may bear on his credibility at trial; it was not an abuse of the judicial process, which is what inherent power polices. *Chambers*, 501 U.S. at 54 & n.16 (sanctions rested on "the fraud he perpetrated on the court"; no opinion on conduct "relating to the underlying" dispute).

*Immigration counsel.* The finding Appellees repeat (Br. 14) does not follow from its premises. That Attorney Formica gave no such advice does not show that no lawyer did; at the October 2024 hearing counsel pointed to another lawyer in his office (SPA-25), and the opposition named her (A-252). The court said it might "make arrangements for Attorney Charnin to be here" (A-392:23–24), then made the finding without hearing from her. And no finding explains what the statement could have gained: USCIS had asked for the transcript (SPA-51), and he had submitted unredacted versions in 2021 (SPA-25).

*The testimony.* Appellees say Mr. Khan's explanations on appeal "simply do not match his testimony below." (Br. 40.) His sworn testimony was that he read the interrogatory to reach formal charges—in the court's

own words at the hearing, "either . . . a criminal charge or a formal charge with the UWC." (A-373:8–11; *see* A-366:9–16.) The court did not believe him. (SPA-19; SPA-28.) He does not ask this Court to reweigh that finding. As to the later-surfaced complaints Appellees offer as proof of a knowing lie (Br. 11 (citing ECF 333-11, -13)), the court found it "unclear the extent to which Plaintiff knew the identities of these women or the specifics of their allegations." (SPA-18 n.10.)

### D. The Rules already supply the remedies.

Every accusation the court cited came from Yale's own files, published newspaper articles, or records Mr. Khan authorized Appellees to obtain. (SPA-16–18; A-245; A-250; A-366:1–3.) Rule 37 supplied the remedy for an incomplete answer. The magistrate judge set, and repeatedly extended, deadlines for motions to compel. (A-34; A-39–40.) Doe filed two motions to compel. Neither concerned Interrogatory 10. (A-48–49, 51.) Nor may movants excuse the missing motion by the misconduct they allege: no "such exception exists." *Yukos*, 977 F.3d at 234–35. Even taking the falsity finding as given, the answer concerned accusations Appellees now hold, so any remedy lies at trial; nothing here was fabricated. *Yukos* affirmed a district court that left alleged discovery perjury to impeachment at trial. 977 F.3d at 236–37. In January 2025 the district court took the same course, leaving Mr. Khan's "conduct throughout the litigation" to cross-examination at trial. (SPA-71.)

The privilege log is the predicate Appellees press hardest. (Br. 43–46.) Counsel took responsibility for the privilege position: "to the extent that the Court believes the position was frivolous, that's on me." (A-345:20–25.) Counsel withdrew it and produced the messages "on the eve of oral argument" on the motion to compel (SPA-19)—"Attorney Taubes's sound legal judgment carrying the day," in the court's words (A-341:15–20). Rule 37 prices that exact sequence. When "the disclosure or requested discovery is provided after the motion was filed," the Rule provides for the movant's reasonable expenses—"after giving an opportunity to be heard," and subject to three exceptions—from "the party or attorney advising that conduct, or both." Fed. R. Civ. P. 37(a)(5)(A). The Rule names the remedy and the attorney; the court considered neither. *Dodson v. Runyon* does not help Appellees: it vacated a dismissal because the rule binding a client to counsel's acts "does not relieve the district court of the obligation to consider . . . especially the suitability of lesser sanctions," including "whether the sanctions should be aimed primarily against the party or the attorney." 86 F.3d 37, 40 (2d Cir. 1996).

## II. No speech "violation" supports this judgment.

### A. After the June 19 Order, Mr. Khan named no one, and the order does not reach the strangers who did.

Mr. Khan has not named Doe since the June 19 Order. Appellees identify no post in which he did; every later post naming her that they cite

was someone else's. (Br. 10, 36–37.) Their rule that orders must be obeyed until set aside (Br. 26–27) presupposes disobedience. Their fallback, the district court's March 2024 order that he not "identify" Doe (Br. 38 (citing ECF 91); SPA-34), fails for the same reason: he identified no one. It also lasted only "until [rulings on the pending motions] are issued" (SPA-63), and those rulings came in 2024. (SPA-69.) Reaching other people's posts takes the word "indirectly," which appears only in the magistrate judge's order (SPA-49), and the court's finding rested on that word (SPA-69–70).

The June 2024 posts Appellees lead with—"I'm doing my part," and the tag of a user who then posted Doe's name (Br. 36)—were adjudicated in January 2025. The court found the violation willful, declined to dismiss, and left Mr. Khan's conduct to cross-examination at trial. (SPA-6–8; SPA-70–71.) Appellees now ask this Court to affirm, on that conduct, the dismissal the district court refused to impose for it.

That ruling also read "indirectly" to reach followers who acted on Mr. Khan's posts (SPA-69–70), and the opinion now faults him for not seeking reconsideration (SPA-28). But the same ruling called the June 19 Order's validity "irrelevant to the pending motions" (SPA-67) and promised to decide his objection "in a separate decision" (SPA-65 n.10). The order's validity awaited that decision, and the reading of "indirectly" is a premise of the judgment under review, open to challenge here without a motion for reconsideration.

What came after was a reposted interview. It disclosed nothing. The court's own account of the interview proves the point: Mr. Khan "lamented his inability to publicly disclose Doe's name." (SPA-14–15.) A man complaining that he cannot say a name has not said it. One repost's caption, "Next, naming the infamous Jane Doe!" (SPA-15), announced what his pending challenge to the pseudonym ruling sought (A-124); as the opposition explained, "[i]f the motion is granted, Ms. Doe will be named." (A-243.)

The theory that remains is that Mr. Khan answers for strangers. Appellees call it incitement, or aiding and abetting. (Br. 36, 38.) The page before the one they cite forbids an order "so broad as to make punishable the conduct of persons who act independently." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945). Calling followers "manipulated" (SPA-70) does not make them agents. The court disclaimed a gag—"He's not restricted from speaking about the case"—and then found that he reposted the interview "quite intentionally" because "he knows the people who are going to see it are the exact same people who did what he wanted them to do last time, which is to publish her name." (A-314:18–25.) That is liability for the predicted reactions of an audience, and what the audience did was lawful. The Fourth Circuit, sustaining a "directly or indirectly" order, said the enjoined parties "engaged with the media without violating" it: CBS showed a protected child's photograph, but they "did not authorize" that and

"themselves never disclosed" the names. *Doe v. Mast*, 173 F.4th 524, slip op. at 22 (4th Cir. 2026), *cert. denied*, No. 26-226 (U.S. Oct. 19, 2026).

February is weaker still. For June, Appellees identify the user Mr. Khan tagged, who then reposted the name. (Br. 36.) For February they identify only "[u]sers" commenting on the blogger's video after he shared it. (Br. 37; A-310:6–8.) The court's own test was "a direct line between what he says and their further disclosure." (A-315:13–17.) The opinion inferred that line—"[n]ot surprisingly, in response"—from a caption and an audience. (SPA-15.) Appellees' own authority traced a party's fuel and ships to the vessels that committed the violations. *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 948–49 (9th Cir. 2014).

Doe testified at Mr. Khan's public trial under her full name, which was "available to the public in the official court transcripts." *State v. Khan*, 355 Conn. 658, 662–63 & n.3 (2026). The magistrate judge's contrary understanding was mistaken (A-30), and by November 2024 a certified transcript naming Doe was available. (SPA-71.) The Constitution forbids sanctions "on the publication of truthful information contained in official court records open to public inspection." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975).

The Court need not reach those questions; the order's text forecloses the reading that raises them. It bars disclosure "directly or indirectly (including through his counsel)" (SPA-49), and its author held Doe entitled to an order "restricting Khan (and his counsel) from publicly identifying

her" (SPA-45)—what he discloses, not what strangers do. So read, it leaves him the freedom *Mast* relied on to find such an order narrowly tailored—to "discuss the case in the court of public opinion," slip op. at 21—and he obeyed it. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

### B. The collateral-bar rule does not save an order whose validity no judge ever decided.

*Walker*—the leading collateral-bar case, which Appellees never cite—reserved the case of litigants who, "before disobeying the injunction, had challenged it" and "had been met with delay or frustration of their constitutional claims." *Walker v. City of Birmingham*, 388 U.S. 307, 318 (1967). That describes Mr. Khan when he made the February 2025 reposts this judgment sanctions. (*See* Br. 37.) He objected within two weeks (A-124), and his emergency motions to vacate or stay the order won only leave to give immigration authorities a transcript (A-25–29). This Court then denied mandamus, expecting his challenges to be considered "in an appropriately expeditious manner, mindful of the November 25, 2024 deadline" for his immigration filing. (SPA-52.) Its first stated reason was that he "ha[d] not demonstrated that he lacks an adequate, alternative means of obtaining relief." (*Id.*) That means was the objections no judge ever decided. The district court met the deadline, deferred the rest, and promised to decide both objections "together." (SPA-53.) Those reposts came seven months into

that wait. Twenty months and three written assurances after he objected, the objections were still undecided when his case was dismissed. (SPA-53; SPA-65 n.10; SPA-71 n.14.)

A prior restraint demands "strict procedural safeguards, including immediate appellate review"; "[a]bsent such review," it must be stayed. *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44 (1977) (per curiam) (citation omitted). The order instead stayed "in full force and effect." (A-28; SPA-73.) This Court applies the bar to one who "failed utterly to make any good faith effort" to seek "modification of the orders in district court" or "a writ of mandamus." *United States v. Cutler*, 58 F.3d 825, 833 (2d Cir. 1995). Mr. Khan sought both and got no ruling on validity.

Appellees' own authority also separates punishment from remedy. *United Mine Workers* upheld criminal-contempt convictions for disobeying an order issued with jurisdiction, but recognized that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293–95 (1947). A dismissal that remedies a violation falls with the order violated. No finding says what the February comments obstructed, or why ending every claim cured it. On any view, the judgment cannot rest on an order whose validity no Article III judge has decided, and this Court can say so without deciding it.

Nor did Mr. Khan waive anything by not reminding the court of objections it had promised to decide. Appellees say his opposition "did not

alert the district court to any pending objections." (Br. 25.) The court needed no alert. Rule 72(a) supplies its own preservation rule: a party may not assign as error a defect "not timely objected to." He objected on time (A-124), and again when the restraint was extended to the certified trial transcript (A-172).[2] *Fielding v. Tollaksen* (Br. 25–26) deems the judgment to overrule pending objections so that this Court can review the order, 510 F.3d 175, 179 (2d Cir. 2007); a ruling deemed made in the judgment that punished him is the "frustration" *Walker* reserved.

The clause every speech "violation" rests on was not in Doe's motion at all. Doe asked for an order that Mr. Khan "shall not identify Jane Doe in any social media communication or elsewhere." (SPA-45.) The magistrate judge added a prohibition on disclosure "directly or indirectly." (SPA-49.) That clause was her own; no party had proposed it. So Appellees' fallback—that Mr. Khan "waived the arguments in his Rule 72.2 Objection" by not opposing Doe's motion (Br. 25)—fails. An order in this field "must be couched in the narrowest terms that will accomplish the pin-pointed objective." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968). And the prior-restraint question was squarely before her: she decided it under its own heading (SPA-47–48) and recognized that counsel

[2] The opening brief (at 25) misdescribed *Marquez v. Silver*, 96 F.4th 579 (2d Cir. 2024). The dismissal there was with prejudice, No. 18-cv-7315, ECF 446 (S.D.N.Y. Feb. 21, 2023), and this Court dismissed the appeal without prejudice. *Marquez* concerned interlocutory rulings unrelated to the sanction—rulings "immaterial" if it stood. *Id.* at 583. Here the question is whether the sanction itself rests on a violation, which turns on what the June 19 Order reached.

had "preserved his objection to future 'gag orders'" (SPA-48). The district court never found a waiver. It promised a ruling.

### C. Appellees barely defend the order.

Their authorities do not reach the order. *Seattle Times* sustained a protective order "limited to the context of pretrial civil discovery" that did "not restrict the dissemination of the information if gained from other sources." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984). Mr. Khan knew Doe's identity before this litigation; the magistrate judge so found. (SPA-46.) So *Seattle Times*'s "good cause" standard "does not apply." *Mast*, slip op. at 13–14. A court may police misuse of its own files, but it "generally has no such power to prohibit dissemination of the information itself, stripped of its judicial garb, if that information has been gathered independently of judicial processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983). The magistrate judge's own authority defeats her conclusion: "an order objected to by the [individual gagged] is properly characterized as a prior restraint." *In re Dow Jones & Co.*, 842 F.2d 603, 609 (2d Cir. 1988) (quoted at SPA-47–48). Her contrary holding rested on one premise—"Plaintiff did not object." (SPA-48.) Two weeks later he did (A-124), and no judge revisited the premise.

Appellees' remaining justification—Mr. Khan's earlier statements about Doe (Br. 35)—is not a finding that this restraint was narrowly tailored to a compelling interest. The pseudonym test "does not grant the court license to censor" a party's "right to speak about that identity in the public

sphere." *Mast*, slip op. at 14. Appellees cite no case dismissing an action because third parties repeated a public name; the district court itself acknowledged that "there may be no case on all fours with this one." (SPA-68.)

## III. Even taking every finding as given, the court weighed no lesser sanction.

Dismissal is "the sanction of last resort," and "if the Court can fashion lesser sanctions to address the party's misconduct, lesser sanctions should be chosen." (SPA-11.) The opinion recited that rule and skipped the step. Where a district court "chose between the extremes of the status quo and dismissal," with "no findings or explanation," this Court vacated: "the severity of sanction must be commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139–40 (2d Cir. 2007).

### A. The opinion ignores the six alternatives the movants proposed.

Before dismissing, the court imposed no lesser sanction. Appellees say its one sentence on alternatives "must be read in the context of the district court's prior imposition of lesser measures" (Br. 32), but no sanction was imposed for the 2023 posts (SPA-70–71). The "lesser measures" Appellees name (Br. 1) are a referral for "pretrial management, discovery oversight, and scheduling" (SPA-13)—case management, not a sanction—and the January 2025 ruling. That ruling found a willful violation, declined to dismiss, and explained why: "Defendants do not, in the alternative, seek any

sanction other than dismissal. And the Court is without sufficient information to assess whether other sanctions, to include financial sanctions, would be appropriate." (SPA-71.) It allowed cross-examination at trial "[w]hether considered a 'sanction' or simply a pre-trial ruling." (*Id.*) Appellees' bracketed "[a lesser sanction]" (Br. 37) replaces the opinion's words, "such a prospect"—the prospect of that cross-examination. (SPA-8.) No fine, fee award, preclusion order, or instruction followed.

The disputes behind three of the opinion's five grounds (SPA-11–12) predated that ruling: Roe messages had been logged as privileged since May 2024 (Br. 12), Doe's counsel had called the interrogatory answer deficient that June (SA-20), the recording had been logged that July (A-363–64), and the USCIS hearing was held that October (SPA-51). The January ruling addressed none of them. (SPA-56–72.) What came after it was evidence, and Mr. Khan supplied it. By Doe's counsel's account, some material on the other accusations "first arrived" in his February 2025 production—the "document dump" itself. (A-337:24–338:2; *see* A-322:25–323:2; SPA-27.) His June production delivered the Roe messages the court called "damning." (SPA-22; Br. 12.) The rest was reposts of an interview that named no one. That is what Appellees call restraint that failed. (Br. 1–2, 32.) The opinion never says why evidence in Appellees' hands made a fair trial impossible (SPA-29).

The movants then supplied what the court said it lacked—fees and, if the court "nevertheless disagree[d]" with dismissal, six alternatives:

discovery into Mr. Khan's conduct; a bar on his own discovery; preclusion of two damages categories; preclusion of his February 2025 production and the recordings; a misconduct instruction; and admission of the other accusations without further foundation. (A-235–37.)[3] The opinion ignores them.

In *Shcherbakovskiy*, too, "the district court did not consider the efficacy of lesser sanctions," and this Court vacated. 490 F.3d at 139. A district judge should dismiss "only when he is sure of the impotence of lesser sanctions." *Dodson*, 86 F.3d at 39 (internal quotation marks omitted). Parties who "repeatedly flouted the district court's orders" and "withheld relevant documents that were potentially damaging to their case" drew "a modest $50,000 in attorneys' fees and three adverse inference instructions." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51, slip op. at 44 (2d Cir. 2025). A court that "can discern no lesser sanction" (SPA-30) has not considered the six on its docket. That he opposed them (A-260–61), as a party denying misconduct must, while telling the court that "lesser sanctions remain available" (ECF 377 at 10), changes nothing. The court had to weigh them. This Court cannot affirm when it cannot tell "whether these alternatives were ever considered." *Mitchell*, 708 F.3d at 469.

### B. The remaining factors drew conclusions, not analysis.

The opinion recited the clear-and-convincing standard for bad faith (SPA-9) and never found it met. Appellees never mention that burden. They

[3] The opening brief's account of alternatives (Opening Br. 15, 48) described the December 2025 hearing; the motion itself proposed the six. (A-235–37.)

quote instead the opposition's statement that dismissal is appropriate for "flagrant bad faith" (Br. 27–28 (quoting A-241)), but the case it cited upheld a finding of "flagrant bad faith" after a party defaulted on an order to act by a date certain. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 643 (1976) (per curiam) (internal quotation marks omitted). The production deadline Mr. Khan was given, he met. *See* Part I.A.

Appellees never cite *Spencer v. Doe*, 139 F.3d 107, 112–13 (2d Cir. 1998)—the test the court recited (SPA-10) and did not apply. They argue instead that a court need not discuss the factors on the record. (Br. 29 n.7.) In both cases they cite, this Court performed the analysis the district court had not, and vacated the dismissal. *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209–11 (2d Cir. 2001); *Lucas v. Miles*, 84 F.3d 532, 535–36 (2d Cir. 1996). The opinion's one sentence applying its Rule 37 factors (SPA-30) states conclusions.

*Duration.* This factor measures "the duration of the plaintiff's failure to comply with the court order." (SPA-10.) Apart from the opinion's narrative, Appellees offer only its phrase "for a prolonged period." (Br. 29 (quoting SPA-30).) The one violation adjudicated before this motion—the June 2024 posts—had drawn its remedy in January 2025. (SPA-70–71.) Nothing after that named Doe, and no discovery order was violated at all. *See* Parts I.A, I.D, II.A.

*Notice.* Of the six sources the opinion lists (SPA-29), five concerned Doe's identity and his posts, and one concerned confidential documents

(ECF 197 at 6). None warned that an interrogatory answer, a privilege log, or an overinclusive production could end the case.

*Prejudice.* When the movants sought dismissal, they had "finished reviewing" the production (A-213) and had agreed to ten hours to depose Mr. Khan (A-44)—a deposition not yet taken in December 2025 (A-373:25–374:2). No finding identifies a question they lost the chance to ask. The delay Appellees charge to Mr. Khan (Br. 30) is not his. The case is old because it spent years, its schedule stayed by court order, on an appeal Mr. Khan won (ECF 47 at 3; SPA-2–3), and the latest delay came from a stay the court entered on its own motion (A-52–53)—"the last six months is on me," the court acknowledged (A-379:3–5). What remains—that Appellees "do not know what they do not know" (SPA-29)—is what the pending motions to compel were for, and the dismissal mooted them. (SPA-74.) And in January 2025 the court found that the certification of a trial transcript naming Doe "reduce[d] the prejudice to Doe which can be attributed to Plaintiff's conduct." (SPA-71.)

*Balance.* The opinion recites this factor (SPA-10) and never returns to it.

## IV. The claims against Yale fell without a separate reason.

The opinion gives no reason specific to the claims against Yale and its twelve officials; its four pages on the sanction (SPA-27–31) never mention Yale or its confidentiality interest. The January 2025 passage Appellees cite (Br. 56 (citing SPA-67)) only summarizes Yale's own motion. The interest Appellees describe is Yale's institutional interest in encouraging

complainants to come forward. (Br. 56–58.) That is a policy, not prejudice to Yale's defense of these claims, and it supports no inference that Yale's 2018 proceeding was fair. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). Nor do the discovery disputes Appellees say were "directed at" Yale (Br. 56 n.10) show that its 2018 process was fair. Yale itself pleaded the naming only to limit remedies: "unclean hands" against equitable relief and, for any award, "the after acquired evidence doctrine." (A-120–22.) This Court has vacated for exactly this omission: where withheld documents "appear[ed] to relate only to" a counterclaim, "the district court dismissed appellant's complaint as well, again without findings or other explanation." *Shcherbakovskiy*, 490 F.3d at 140.

## V. A "totality" of failed predicates is still a failure.

A total is only as sound as its parts. Appellees' answer to all of this is the "totality" (Br. 33), but under Rule 37(b)(2) the "totality" "would justifiably weigh" only after movants "secured a Rule 37(a) order or its equivalent" and an "ensuing violation of that order." *R.W. Int'l*, 937 F.2d at 19. The factors the court recited measure "noncompliance" (SPA-30), and the opinion identifies no discovery order that was disobeyed. The court relied on its predicates "to varying degrees" (SPA-27) and never said which, if any, would suffice alone. When some fall, vacatur follows unless this Court can say the same sanction would have issued without them. *See Koon*, 518 U.S. at 113.

## VI. Nothing ordered was withheld, so *Hammond Packing* has nothing to presume.

Appellees accept the test: a merits-ending sanction is permissible where the misconduct "concerned the issues in controversy," supporting an inference that the claims lack merit. (Br. 54 (quoting *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1182 (10th Cir. 2009)).) *Garcia* affirmed dismissal for fabricated evidence going to the merits. 569 F.3d at 1177–78, 1182. No evidence here was fabricated, and the answer the court found false omitted accusations by other people about other years. Rule 37 imposes the same limit: a sanction must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707.

Begin with the other half of Appellees' test: a merits-ending sanction is impermissible where "the deception was wholly unrelated to the matters in controversy." (Br. 53–54 (quoting *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)).) Posts about a pseudonym, a statement about who advised an immigration filing, and an overinclusive production have nothing to do with whether Yale's 2018 process was fair or whether Doe's 2018 statements were true.

The claims against Yale ask whether its 2018 UWC proceeding was infected by gender bias and broke Yale's promises of fair process. Its core facts are admitted: Doe appeared remotely, Mr. Khan listened from another room, his advisor could neither ask questions nor object, and Yale made no

recording. (A-117–18 ¶¶ 77–79; *see also* ECF 109 at 8–9 ¶¶ 77–78.) None of that rests on his word. The one supposedly concealed item bearing on that process—the UWC recording—shows that the witnesses were not sworn. (SPA-26.) The claims against Doe ask whether her 2018 statements were false and malicious. Whatever use Appellees may make at trial of accusations by other people about other years, none of it is hidden. It is in Appellees' hands, available for the cross-examination the court prescribed in January 2025. (SPA-71.) *Hammond Packing* permits a presumption of "bad faith and untruth" from "the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause." *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909). "A proper application of Rule 37(b)(2) will, as a matter of law, support such a presumption." *Ins. Corp. of Ir.*, 456 U.S. at 706. No order to produce was disobeyed; the entries still disputed sat in motions the dismissal mooted. (SPA-74.) Without a presumption, what is left is punishment, which *Hovey v. Elliott*, 167 U.S. 409, 413–14 (1897), condemned; those "constitutional limitations" reach dismissal of "an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe*, 357 U.S. at 209. Appellees call *Hovey* a defendant's case (Br. 53); *Societe* was a plaintiff's.

Mr. Khan pressed due process below. Appellees say the opposition addressed it in "a single sentence—with no citations." (Br. 24.) The very next sentence stated the opposition's thesis: "The Plaintiff has not violated this Court's orders, much less has he intentionally done so." (A-259.) Its

statement of the law quoted the prerequisites to dismissal—"notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard." (A-241 (internal quotation marks omitted) (quoting *Smalls v. Cnty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017) (summary order)).) The punitive character of the sanction was pressed, and decided, in the prior round: Mr. Khan argued that "criminal contempt proceedings would be required" (SPA-67–68); the court disagreed (SPA-68); and the March 2026 opinion built on that ruling (SPA-6–8).

Appellees also say Mr. Khan had notice and a hearing. (Br. 52.) He was warned that disclosing Doe's identity could cost him the case (SPA-49); no warning reached the discovery conduct. *See* Part III.B. At the hearing the court asked him whether he meant his reposts to get followers to name Doe. He answered "No" and offered to explain. The court stopped him: "No, you have a lawyer to make the arguments for you." (A-372:3–16.) Appellees fault him for attaching no affidavits (Br. 16, 52), but the movants bore the burden of clear and convincing proof (SPA-9).

## CONCLUSION

The judgment should be reversed and the case remanded with instructions to deny the third motion for judgment of dismissal, reinstate every claim against every defendant, decide Mr. Khan's Rule 72(a) objections, and proceed to trial. Alternatively, the judgment should be vacated and the case remanded with instructions to decide the objections

first and to confine any renewed sanctions proceeding to sanctions short of dismissal or its equivalent. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779–81 (2d Cir. 1999). At a minimum, the judgment should be vacated as to the Yale defendants. On any remand, the case should be reassigned, so that a judge who has not already enforced the order with a final judgment decides, for the first time, whether it was valid. *See Shcherbakovskiy*, 490 F.3d at 142 (reassigning where the judge had called a party's denial a "lie"); *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc) (per curiam); Opening Br. 57–58.

Dated: New Haven, Connecticut
November 18, 2026

Respectfully submitted,

PLAINTIFF-APPELLANT
SAIFULLAH KHAN

/s/ Alexander T. Taubes
Alexander T. Taubes, Esq.
470 James Street, Suite 007
New Haven, CT 06513
Tel. (203) 909-0048
Email: alextt@gmail.com

*Attorney for Plaintiff-Appellant Saifullah Khan*

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 6,944 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Palatino font.

Dated: November 18, 2026

/s/ Alexander T. Taubes
Alexander T. Taubes, Esq.